# EXHIBIT A

1  CHAPMAN, POPIK & WHITE, LLP
   J. Michael Matthews, State Bar No. 71848
2  jmm@chapop.com
   Benjamin J. Riley, State Bar No. 226904
3  briley@chapop.com
   650 California Street, 19th Floor
4  San Francisco, CA 94108
   Telephone: (415) 352-3000
5  Facsimile: (415) 352-3030

6  Attorneys for Defendant and
   Counter-Claimant Oliver Hilsenrath

7



I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By
Date JUL 17 2007

FILED

NOV 3 0 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11

12  JANVRIN HOLDINGS LIMITED,              )  No. C02-1068 CW
    CROSSGAR LIMITED, and RYBURN          )
13  LIMITED,                               )  NOTICE OF MOTION AND MOTION
                                           )  FOR LEAVE TO FILE ANSWER/
14          Plaintiffs,                    )  AMENDED COUNTERCLAIM/THIRD
                                           )  PARTY COMPLAINT;
15  v.                                     )  MEMORANDUM OF POINTS &
                                           )  AUTHORITIES IN SUPPORT
16  DR. OLIVER HILSENRATH, et al.,         )  THEREOF
                                           )
17          Defendants.                    )  Date:  January 12, 2007
                                           )  Time:  10:00 a.m.
18  ───────────────────────────────        )  Courtroom 2, 4th Floor
    AND RELATED CROSS-ACTION.              )
19  ───────────────────────────────        )  Complaint Filed:  March 5, 2002

20

21                          **NOTICE OF MOTION**

22  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23          Please take notice that on January 12, 2007, at 10:00 a.m., Defendant/Counter-claimant

24  Oliver Hilsenrath will and does hereby move this court for leave to file an Answer/Amended

25  Counterclaim/Third Party Complaint in the form attached to this notice and motion as Exhibit 1.

26  This motion is made in the interests of justice, after Mr. Hilsenrath and counsel have conducted

1  extensive investigation that enables them: 1) to state more specifically the facts and circumstances

2  giving rise to the existing counter-claim, which Mr. Hilsenrath proposes to restate; 2) to identify all

3  of the parties involved in the conduct giving rise to the counter-claim; and 3) to determine that the

4  conduct of counter-defendants and proposed third party defendants damaged the interests of

5  Hana Hilsenrath, Mr. Hilsenrath's wife.  Thus it is that by way of the proposed amended pleading

6  Mr. Hilsenrath proposes to state his counterclaim in more detail, add third party defendants, and

7  add Hana Hilsenrath as a third party plaintiff.

8       This motion is based on this notice, the Memorandum of Points & Authorities filed

9  concurrently, the proposed amended pleading, attached to this notice as Exhibit 1, and any other

10  evidence or argument that may be presented at the hearing of the motion.

11

12                CHAPMAN, POPIK & WHITE, LLP

13                By: _____

14                      J. Michael Matthews

15                Attorneys for Defendant/Counter-
               claimant/Proposed Third Party Complainants
               Oliver and Hana Hilsenrath

16

17  ### MEMORANDUM OF POINTS AND AUTHORITIES

18  **Introduction/Factual and Procedural Background**

19       Plaintiffs are off-shore "shelf companies" operated by Equity Trust (Jersey) Limited, a

20  Jersey Island trust company, for the benefit of two individuals, David Dahan and Haim Haruvi,

21  citizens of Israel.  In their original complaint in this action, plaintiffs/Equity Trust sued any and all

22  individuals or entities who were in any way connected with their entry into a settlement agreement

23  with U.S. Wireless Corporation in 2001.  Plaintiffs'/Equity Trust's theory was that the defendants

24  had been aware of an internal investigation taking place at the time of the settlement with U.S.

25  Wireless, and that defendants' failure to disclose true facts at the time of the settlement constituted

26

1  fraud and various violations of securities laws. All defendants were dismissed by this court, except

2  Oliver Hilsenrath, the former CEO of U.S. Wireless.

3       The true facts that underlie this action are far more complex and alarming than any of the

4  pleadings reveal. This lawsuit is the latest effort by plaintiffs/Equity Trust and their current

5  attorneys, Glenn Westreich/Nixon Peabody to effect a fraud on this court and to avoid the

6  consequences of their own acts, which led to the downfall of U.S. Wireless and losses to countless

7  investors including Hana and Oliver Hilsenrath. As set forth in the answer, amended counterclaim,

8  and third party complaint which Hana and Oliver Hilsenrath seek leave to file, and in the exhibits

9  attached to it:

10       1.  Equity Trust managed the investments and financial affairs not only of Dahan and

11  Haruvi, using plaintiffs Janvrin, Crossgar, Ryburn and other "shelf companies," but also of the

12  Hilsenraths, and several other directors of/major investors in U.S. Wireless. All of these

13  individuals, through Equity Trust companies, held substantial interests in U.S. Wireless.

14       2.  In 1999, Equity Trust, Dahan and Haruvi, through Janvrin, Crossgar and Ryburn,

15  mounted a proxy fight; Mr. Hilsenrath and U.S. Wireless management had shareholder confidence

16  and defeated the proxy fight.

17       3.  The conflict continued into 2000, after the defeat of the proxy fight. Indeed, in the

18  middle of that year, Equity Trust, for Dahan and Haruvi, and acting through plaintiffs Janvrin,

19  Crossgar and Ryburn, retained Westreich and his then firm Lillick & Charles to file three lawsuits,

20  each of which was venued in this court and assigned to this judge. To gain an advantage in the

21  dispute, Dahan demanded that Equity Trust hand over to him and his attorneys financial

22  information about the Hilsenraths which Equity Trust was bound to keep confidential. Though it

23  had twice obtained advice of counsel that it had a conflict of interests and needed to protect the

24  Hilsenraths' information, Equity Trust told Dahan it had decided to be "totally on his side" in the

25  litigation. In November 2000 it began sending the Hilsenraths' private information to Dahan and

26  Westreich, and in early December it held a meeting in London at which it turned over to Dahan,

1   Haruvi, and Westreich all of the Hilsenraths' files.  The group decided to use this "problematic

2   material" to blackmail Oliver Hilsenrath and U.S. Wireless, and began the effort at a Case

3   Management Conference held in this court and before this judge on December 15, 2000.

4       4.      In the maintenance of trusts with Equity Trust the Hilsenraths had done nothing

5   wrong.[1]  Nevertheless, in using the information Equity Trust had turned over, Dahan, Haruvi,

6   Westreich, Lillick & Charles and Equity Trust had unleashed the whirlwind.  The Hilsenraths' files

7   were delivered to U.S. Wireless, and an investigation ensued.  Oliver Hilsenrath was relieved as

8   CEO of the company, the market reacted, and U.S. Wireless failed.

9       If the court reviews Equity Trust's/plaintiff's second amended complaint, filed by

10  Westreich,  it will see that, ironically, Equity Trust/plaintiffs contend that Mr. Hilsenrath failed to tel

11  them about the investigation underway at the time they entered into the settlement of the earlier

12  litigation.  In fact, as set forth above, and as set forth in detail in the proposed new pleading, Equity

13  Trust/plaintiffs/Westreich themselves were the source of the investigation, and brought about the

14  very failure of the company about which they now complain.

15       Oliver Hilsenrath filed an answer to the second amended complaint on October 14, 2005,

16  and included a counterclaim based what he knew then of these facts.  Since that time, he and

17  counsel have engaged in hours and hours of investigation into this case, and have reviewed boxes

18  and boxes of documents obtained from various sources, mostly through the U.S. government.

19  Through this process Mr. Hilsenrath and counsel have come to understand in detail what was done

20  by Equity Trust, using plaintiffs, with the active participation of Westreich and his firms.  Mr.

21  Hilsenrath now seeks leave to amend his counter-claim, to state it in more detail, and to join new

22  parties as third party defendants.  In a sense, the third parties are already here:  Equity Trust,

23

---

24      [1] It is worth noting to this court that the U.S. Attorney's office initially concluded that
    Oliver Hilsenrath had violated various securities laws in the use of the off-shore companies, and it
25  requested that the Swiss government freeze assets the Hilsenraths had on deposit in the country.
    The Swiss complied.  Since then, the government has concluded it was wrong, and has asked the
26  Swiss to unfreeze the assets.

1 Westreich, and his law firm. Mr. Hilsenrath and his wife, Hana, also seek to add Hana as a

2 counter-claimant/third party plaintiff, since she was a signatory to the Equity Trust agreements, and

3 co-owned the assets which were destroyed by all of these parties. Under the federal policy that

4 strongly favors resolving a case on its merits, and freely permits the amendment of complaints to

5 accomplish this objective, this motion should be granted.

6 ### Nature of the Proposed Amendment

7 A copy of the proposed answer, first amended counterclaim and third party complaint is

8 attached as Exhibit 1. There are three purposes of this amendment. First, Oliver Hilsenrath seeks

9 to clarify and expand the factual basis for his claims against the existing plaintiffs, based on new

10 information and documents he has accumulated. Second, Mr. Hilsenrath seeks to add as

11 defendants Equity Trust, for wrongfully divulging the confidential information, and attorney Glenn

12 Westreich and his firm, Nixon Peabody, for wrongfully using the information. Finally, Oliver

13 Hilsenrath's wife, Hana Hilsenrath, seeks to join her husband as a counter claimant/third party

14 plaintiff because her confidential, private information was also revealed without her consent.

15 Mr. Hilsenrath does not propose to change the answer he earlier filed; the answer that is a

16 part of the proposed amended pleading is identical to his original answer.

17 ### Argument

18 Under Rule 15(a) of the Federal Rules of Civil Procedure, the Court is empowered to

19 grant leave to amend a complaint, and such leave "shall be freely given when justice so requires."

20 As the Ninth Circuit has stated, this policy is to be applied with "extreme liberality." *Eminence*

21 *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Furthermore, "where

22 there is lack of prejudice to an opposing party and the amended complaint is obviously not

23 frivolous or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a

24 motion." *Hurn. v. Retirement Trust Fund of Plumbing, Heating & Piping Industry of So.*

25 *Calif.*, 648 F.2d 1252, 1254 (9th Cir. 1981). Under this governing authority, leave to amend

26 should be granted so the counterclaim may incorporate the three changes discussed above.

1  **A.    Under Rule 15, Mr. Hilsenrath should be granted leave to expand and clarify the general allegations that form the basis for his counterclaim.**

2

3      The filing of a lawsuit "warns the defendant to collect and preserve his evidence in

4  reference to . . . the *whole transaction* described in it." *Martell v. Trilogy, Ltd.*, 872 F.2d 322,

5  326 (9th Cir. 1989).   As a result, defendants are aware that claims regarding that transaction may

6  be amended and that the form of relief and law relied upon are not confined to their original

7  statement. *Id.*; *see also In re Coastal Plains, Inc.*, 179 F.3d 197, 216 (5th Cir. 1999).   Under

8  Rule 15(c)(2), amended pleadings "relate back" as to existing parties if the claim or defense arises

9  out of the same transaction set forth in the original pleading.

10     The October 2005 counterclaim against plaintiffs Janvrin, Crossgar and Ryburn consists of

11 five paragraphs of general allegations that state that plaintiffs and their principals and agents

12 received Hilsenraths' personal, confidential information from Equity Trust at the London meeting in

13 December 2005.   At the time the counterclaim was drafted, Mr. Hilsenrath and his attorneys had

14 only just discovered information relating to the London meeting.   Since that time, however, Mr.

15 Hilsenrath and his counsel have obtained additional information—including certain of the specific

16 documents that plaintiffs/Equity Trust/Westreich wrongfully obtained and used—that indicates that

17 plaintiffs, their attorneys and Equity Trust conspired extensively to use Hilsenraths' confidential

18 information in an attempt to gain the upper hand in the litigation and settlement discussions that

19 preceded the U.S. Wireless bankruptcy.

20     Consequently, Mr. Hilsenrath is now prepared to describe in fuller detail in his

21 counterclaim the events and circumstances of the breach of trust by Equity Trust, plaintiffs,

22 Westreich and his firms, as well as the resulting harm he and his wife suffered. The proposed

23 amended pleading provides a detailed history of these parties' acts and the damages they caused.

24 The amended counterclaim will clarify the issues presented for the court's consideration, and thus

25 will simplify issues for trial.

26

1    Plaintiffs/counter-defendants cannot make a tenable claim that they would be prejudiced

2  by this amendment.  The October 2005 counterclaim, currently operative, clearly put counter-

3  defendants on notice that evidence related to the London meeting and the use of Hilsenrath

4  information should be preserved.  For all these reasons, the motion to amend the counterclaim as

5  against plaintiffs Janvrin, Crossgar and Ryburn should be granted.

6  **B.     Under Rules 13, 19 and 20, Mr. Hilsenrath should be permitted to join as
         defendants the third parties that obtained and divulged the Hilsenraths'
7         confidential financial information to plaintiffs.**

8    Rule 13(h) permits the joinder of additional parties to a counterclaim "in accordance with

9  the provisions of Rules 19 and 20."  Rule 19 in turn permits the joinder of parties "whose joinder

10  will not deprive the court of jurisdiction" and who are needed for just adjudication of the lawsuit, if

11  complete relief cannot be according among the existing litigants.   Rule 20 allows for permissive

12  joinder of defendants "if there is asserted against them [any claim] . . . arising out of the same

13  transaction [or] occurrence . . . ."  Moreover, "under the Rules, the impulse is toward entertaining

14  the broadest possible scope of action consistent with fairness to the parties; joinder of claims,

15  parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715,

16  724 (1966).[2]

17    The conspiracy of Equity Trust and Westreich to use confidential Hilsenrath information to

18  blackmail Oliver Hilsenrath and U.S. Wireless clearly arises out of the same transaction/

19  occurrence that is the subject of the current counterclaim.  Moreover, adding these parties will not

20  deprive the court of jurisdiction, since federal questions are presented both by the second

21  amended complaint and by the proposed counterclaim/third party complaint.

22

23

24      [2]Adding Equity Trust as a third party defendant does not really expand the claims asserted.

25  As the exhibits to the proposed answer, amended counterclaim/third party complaint reveal,
   Equity Trust is already here in the action; it created, operates and maintains the plaintiffs, three of

26  its "shelf companies."

**C.    Hana Hilsenrath should be allowed to assert her claims for invasion of privacy and related torts.**

Rule 20(a) permits joinder of additional plaintiffs if they assert any right to relief arising out of the same transaction that is the subject of the pending lawsuit.  Here, Hana Hilsenrath, wife of Oliver Hilsenrath, seeks leave to join the action as a third-party plaintiff against Janvrin, Crossgar and Ryburn, and the proposed third-party defendants, to assert the same claims as her husband. Mrs. Hilsenrath was a signatory to the agreements with Equity Trust, and co-owner of the assets destroyed as a result of the counter-defendants'/third party defendants' conduct.

Dated:  November 30, 2006

CHAPMAN, POPIK & WHITE, LLP

By: _____
J. Michael Matthews

Attorneys for Defendant/Counter-
Claimant/Proposed Third Party Complainants
Oliver and Hana Hilsenrath

G:\JMM\Hilsenrath\Pleadings\Motion to file amd complaint etc.wpd

1

<u>PROOF OF SERVICE</u>

2

I, the undersigned, declare:

3

I am employed in the City and County of San Francisco, California. I am over the age of

4

eighteen years and not a party to the within entitled action. My business address is Chapman,

5

Popik & White, 650 California Street, 19th Floor, San Francisco, CA 94108.

6

On November 30, 2006, I served the following document(s):

7
8

NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE ANSWER/ AMENDED
COUNTERCLAIM/THIRD PARTY COMPLAINT; MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT THEREOF

9

on the parties involved addressed as follows:

10
11
12
13
14

**Attys for Pltff Janvrin Holdings**
**Cross-Def Crossgar Unlimited**
**Plaintiff and Counter-Def Ryburn Limited**
Beth L. Mitchell and Glenn Edward Westreich
Nixon Peabody LLP
Two Embarcadero Center, Suite 2700
San Francisco, CA  94111-3996
415/984-8200
415-984-8300 (fax)

15
16

X  **BY PERSONAL DELIVERY:** The within document(s) were served by hand in
an envelope addressed to the addressee(s) above on this date.

17

_____  **BY MAIL:**  By placing a true copy thereof enclosed in a sealed envelope with
postage fully prepaid, in the United States mail, at San Francisco, California

18
19

_____  **BY FEDERAL EXPRESS OVERNIGHT DELIVERY:** I caused each
envelope, with delivery fees provided for, to be deposited in a box regularly
maintained by Federal Express.

20
21
22

_____  **BY FACSIMILE:** By use of a facsimile number 415/352-3030, I served a copy
of the within document(s) on the above interest parties at the facsimile numbers
listed above. The transmission was reported as complete and without error. The
transmission report was properly issued by the transmitting facsimile machine.

23

I declare under penalty of perjury that the foregoing is true and correct.
Executed on November 30, 2006 at San Francisco, California.

24
25

_____
Denise Brasher

26

**EXHIBIT 1**

1  CHAPMAN POPIK & WHITE, LLP
   J. MICHAEL MATTHEWS (State Bar No. 71848)
2  jmm@chapop.com
   MERRI A. BALDWIN (State Bar No. 141957)
3  mbaldwin@chapop.com
   BENJAMIN J. RILEY (State Bar No. 226904)
4  briley@chapop.com
   650 California Street, Suite 1900
5  San Francisco, California 94108
   Telephone: (415) 352-3000
6  Facsimile: (415) 352-3030

7  Attorneys for Defendant/Counter-
   claimants/Third-party complainants
8  OLIVER HILSENRATH and HANA
   HILSENRATH

9

10               UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                     OAKLAND DIVISION

13

14  JANVRIN HOLDINGS LIMITED,          Case No. C 02 1068 CW (BZ)
    CROSSGAR LIMITED, and RYBURN
15  LIMITED,                           [Proposed]
                                       ANSWER TO SECOND AMENDED
16             Plaintiffs,             COMPLAINT; AMENDED COUNTER-
                                       CLAIM AND THIRD PARTY
17      vs.                            COMPLAINT OF OLIVER AND HANA
                                       HILSENRATH
18  DR. OLIVER HILSENRATH, et al.,
                                       [JURY TRIAL DEMAND]
19             Defendants.

20

21  I.    JURY DEMAND

22          Defendants Oliver and Hana Hilsenrath reiterate Oliver Hilsenrath's demand

23  for trial by jury in this action, and Hana Hilsenrath herself demands trial by jury.

24  II.   ANSWER TO SECOND AMENDED COMPLAINT

25          Defendant Oliver Hilsenrath hereby answers the Second Amended Complaint

26  (which is not stated against Hana Hilsenrath) on file in this action as follows:

27          Pursuant to FRCP 8(b), defendant Oliver Hilsenrath denies that plaintiffs or

28
                                                                        Page 1

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1   any of them are entitled to the damages or relief they or any of them seeks, or to any damages

2   or relief at all, and generally denies each and every allegation of the Second Amended

3   Complaint, except those allegations set forth below:

4         1.    Answering Paragraph 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 19, 20, 21, 51,

5   52, 55, 56, 58, 59, 63, 90, 117, defendant Oliver Hilsenrath admits the allegations of these

6   paragraphs.

7         2.    Answering Paragraph 5, defendant Oliver Hilsenrath admits all

8   allegations of this paragraph, except that he denies that as of the date of this answer, he is

9   currently residing in Israel.

10         3.    Answering Paragraph 15, defendant Oliver Hilsenrath admits only that

11   Ed Rosmer was, to the best of defendant's knowledge, an officer of WT Holding Inc., and that

12   he attended meetings of the U.S. Wireless Board of Directors.

13         4.    Answering Paragraph 22, defendant Oliver Hilsenrath admits only that

14   the referenced legal actions were filed.

15         5.    Answering Paragraphs 24, 25, and 26, defendant Oliver Hilsenrath

16   admits only that documents existed and were signed pertaining to "Consulting Agreements"

17   and "Option Agreements," and that those documents say what they say.

18         6.    Answering Paragraph 27, 28 and 29, defendant Oliver Hilsenrath admits

19   only that statements with the SEC were filed and that those statements say what they say.

20         7.    Answering Paragraph 35, defendant Oliver Hilsenrath admits only that

21   documents existed and were signed pertaining to an Exchange Offer Agreement and

22   Memoranda and Exchange election, and that the documents say what they say.

23         8.    Answering Paragraph 37 and 38, defendant Oliver Hilsenrath admits

24   only that statements with the SEC were filed and that those statements say what they say.

25         9.    Answering Paragraph 41, 43, 44, 45, and 47, defendant Oliver

26   Hilsenrath admits only that documents existed and were signed pertaining to a "Confidential

27   Settlement Agreement and Mutual Release" and that the documents say what they say.

28

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    10.    Answering Paragraphs 48, defendant Oliver Hilsenrath admits only that

2  documents existed and were signed pertaining to a "letter agreement," and that those

3  documents say what they say.

4    11.    Answering Paragraph 54, defendant Oliver Hilsenrath admits only that a

5  press release was issued, and that it said what it said.

6    12.    Answering Paragraph 62, defendant Oliver Hilsenrath admits only that a

7  document entitled "Charter for the Audit Committee of the Board of Directors of U.S.

8  Wireless Corporation" existed, and that it said what it said.

9    13.    Answering Paragraphs 64 and 65, defendant Oliver Hilsenrath admits

10  only that statements with the SEC were filed and that those statements say what they say.

11    14.    Answering Paragraph 66, defendant Oliver Hilsenrath admits only that

12  David Klarman was asked to resign.

13    15.    Answering Paragraphs 69 and 70, defendant Oliver Hilsenrath admits

14  only that statements with the SEC were filed and that those statements say what they say.

15    16.    Answering Paragraph 89, defendant Oliver Hilsenrath incorporates by

16  reference his responses to Paragraphs 47 and 48 of the Second Amended Complaint.

17  **III.    AFFIRMATIVE DEFENSES**

18    1.    Plaintiffs lack standing to pursue the claims they are pursuing.

19    2.    Plaintiffs' claims are barred by various Statutes of Limitations.

20    3.    Plaintiffs' claims are barred by the "litigation privilege" of California

21  Civil Code Section 47(b).

22    4.    Plaintiffs themselves, individually and through their agents and

23  representatives, made a full, unhindered investigation into the matters about which they have

24  brought their claims, and are presumed to have relied on their independent investigation in

25  entering into any transactions with any defendant.

26    5.    Plaintiffs themselves had and have unclean hands, and are barred from

27  any relief.

28

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1     6. Plaintiffs themselves were and are *in pari delicto*, and are barred from

2    any relief.

3     7. ·Plaintiffs themselves, individually and through their agents, committed

4    fraud in their negotiations prior to executing the documents upon which they base their

5    claims, rendering those documents void or voidable and barring plaintiffs' claims.

6     8. Plaintiffs themselves, individually and through agents, breached various

7    duties they owed defendants, including statutory duties imposed on them by U.S. and foreign

8    law, and committed invasion of privacy and conspiracy among other torts/crimes, barring

9    them from any relief.

10    9. Plaintiffs, individually and through agents, subjected defendant Oliver

11   Hilsenrath to economic and personal duress, prior to his executing the documents upon which

12   plaintiffs base their claims, rendering those documents void or voidable, and barring

13   plaintiffs' from any relief.

14    10. Plaintiffs' claims are barred by the doctrine of laches.

15    11. Plaintiffs' claims are barred by the doctrine of estoppel.

16    12. Plaintiffs' claims are barred by the doctrine of waiver.

17    13. Defendant Oliver Hilsenrath is entitled to an equitable set-off against

18   any damages for which he might otherwise be liable, in the amount of damages caused by

19   plaintiffs' own breaches of duty.

20   **IV. AMENDED COUNTERCLAIM/THIRD PARTY COMPLAINT**

21    By way of counter-claim/third party complaint, defendant/counter-

22   claimant/third party complainant Oliver Hilsenrath, and counter-claimant/third party

23   complainant Hana Hilsenrath complain of cross-defendants Janvrin Holdings Limited,

24   Crossgar Limited, and Ryburn Limited and third party defendants Equity Trust (Jersey)

25   Limited, Glenn Westreich, and Nixon Peabody LLP, and each of them, as follows:

26    **A. Introduction**

27    In May of 2000, Equity Trust, Glenn Westreich of Lillick & Charles/Nixon

28

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1   Peabody LLP, David Dahan, Haim Haruvi, and the nominal plaintiffs in this case, Janvrin

2   Holdings Limited, Crossgar Limited, and Ryburn Limited, began to implement a plan to use

3   personal records and assets of Oliver and Hana Hilsenrath to blackmail a publicly traded

4   company, U.S. Wireless Company Inc. Equity Trust is a trust company based on the Island

5   of Jersey; in 1996 it undertook to manage, protect and augment the assets of the Hilsenraths,

6   Israeli citizens, and it promised to maintain the privacy and confidentiality of the Hilsenrath

7   holdings. Westreich is a California attorney and partner in two prestigious law firms, Lillick

8   & Charles and Nixon Peabody LLP. Despite the legal and ethical restraints upon them,

9   Equity Trust and Westreich, acting through and on behalf of the plaintiffs in this case,

10  knowingly decided to take the private information that the Hilsenraths had entrusted to their

11  fiduciary, Equity Trust, and use it to try to blackmail the Hilsenraths and U.S. Wireless into

12  settlement of three actions that were pending in this court and before this judge, Hon. Claudia

13  Wilken. E-mails and faxes flew, conversations occurred, and in early December 2000, senior

14  officers of Equity Trust met in London with their co-conspirators and delivered to them all of

15  the financial records Equity Trust maintained for the Hilsenraths. In a hallway conference

16  after a case management conference held before this court and before this judge, Westreich

17  informed counsel for U.S. Wireless that he had "problematic material" involving Oliver

18  Hilsenrath. Before he was done, Westreich and Equity Trust had destroyed a publicly traded

19  company that was just at the beginning of its growth.

20          The assets that Oliver and Hana Hilsenrath entrusted to Equity Trust are, and

21  were always, legitimately held and well earned. The Equity Trust/Westreich scheme to

22  blackmail occurred in the very background of this litigation in Federal Court. The outcome of

23  the scheme was the collapse of US Wireless Corporation and a loss to the Hilsenraths which

24  exceeds $500 million. This counterclaim/third party complaint addresses the blackmail

25  scheme, the abuse of the Federal Court as the stage for the blackmail and the overwhelming

26  loss to the Hilsenrath family.

27

28

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

**B.    General Allegations**

I.    Parties

1.    Counter-claimants/third party complainants Oliver and Hana Hilsenrath (referenced collectively as "the Hilsenraths") at all times relevant to this counter-claim/third party complaint have maintained their domicile in Israel.

2.    The Hilsenraths are informed and believe, and on that basis allege, that Equity Trust (Jersey) Limited ("Equity Trust") is an entity based on the Channel Island of Jersey which has succeeded to all of the assets, liabilities and activities of Matheson Trust Company (Jersey) Limited, Insinger Trust Company Limited, Insinger de Beaufort Trust Company Limited, and Equity Trust Company Limited, entities with which the Hilsenraths did business, as more particularly alleged below.

3.    The Hilsenraths are informed and believe, and on that basis allege, that, Equity Trust and/or its predecessors entered into Company Management Agreements with David Dahan ("Dahan") and Haim Haruvi ("Haruvi"); that Equity Trust created, administered and controlled various companies for Dahan and Haruvi; and that on their behalf Equity Trust administers and controls the plaintiffs in this action, Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited.

4.    The Hilsenraths are informed and believe, and on that basis allege, that there is a unity of interest between Equity Trust on the one hand and plaintiffs Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited on the other; that there is interlocking control of these entities and Equity Trust; and that in the creation, operation and administration of Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited Equity Trust has disregarded their separate corporate forms.  Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited Equity are alter egos of Equity Trust, and it would be unjust if the court were not to disregard the corporate distinctions between them and Equity Trust.

5.    Glenn Westreich ("Westreich") is an individual and an attorney who resides and does business in the Northern District of California.

Page 6

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
*Case No. C 02 1068 CW (BZ)*

239797.1

1    6.    The Hilsenraths are informed and believe, and on that basis allege, that

2    at times relevant to this counter-claim/third party complaint Westreich was a partner of

3    Lillick & Charles, and that he is currently a partner of Nixon Peabody LLP, which has

4    assumed all of the rights, obligations, and liabilities of Lillick & Charles. At all times

5    referenced in this pleading, Westreich was acting within the scope of his authority first as a

6    partner of Lillick & Charles and then as a partner of Nixon Peabody LLP. Moreover, Nixon

7    Peabody LLP has ratified all of the acts of Glenn Westreich set forth in this pleading.

8    II.    Factual Allegations

9    7.    In May, 1996, Oliver Hilsenrath incorporated Labyrinth

10    Communications, a company by which he planned to develop, implement and market a

11    technology by which cell phone users dialing the emergency number "911" could be

12    physically located, much as the location of "911" callers over "hard lines" are located by the

13    "911" operators.

14    8.    In July of 1996, by means of a "reverse merger," Labyrinth

15    Communications was merged into ATOY, a publicly traded company listed on the NASDAQ

16    stock exchange. After the merger, ATOY was renamed U.S. Wireless Corporation ("U.S.

17    Wireless"). As result of the merger, U.S. Wireless became a publicly traded company. As an

18    additional result of the merger, the Hilsenraths became approximately 40% owners of the

19    issued stock of U.S. Wireless. Oliver Hilsenrath remained with the merged companies and

20    became Chief Executive Officer of U.S. Wireless.

21    9.    Prior to July, 1996, as U.S. Wireless and ATOY were negotiating the

22    "reverse merger," Oliver Hilsenrath became acquainted with Dahan and Haruvi. The

23    Hilsenraths are informed and believe, and on that basis allege, here, and as set forth above

24    and below in more detail, that by means of trust instruments and/or other agreements Dahan

25    and Haruvi are beneficiaries for whom Equity Trust created and administers Janvrin Holdings

26    Limited, Crossgar Limited, and Ryburn Limited, plaintiffs in this action, and that Dahan and

27    Haruvi are actual beneficial owners of one or more of these companies.

28

Page 7

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1      10.     Prior to July, 1996, as U.S. Wireless and ATOY were negotiating the

2  "reverse merger," Dahan had urged Oliver Hilsenrath, who is a citizen of Israel, to consider

3  joining him as a client of Equity Trust and engaging it to manage his personal and family

4  assets and financial affairs. Dahan indicated that it is common for citizens with multi-

5  national business affairs to use such trusts, and offered personally to assist the Hilsenraths in

6  managing at least a portion of their business affairs. Dahan introduced Oliver Hilsenrath to

7  Melvyn Kalman ("Kalman") and John Perkins ("Perkins"), senior trust officers of a trust

8  company then known as Matheson Trust Company (Jersey) Limited, located in the Channel

9  Island of Jersey, off the coasts of England and France.

10      11.     The Hilsenraths are informed and believe, and on that basis allege, that

11  when Matheson Trust Company (Jersey) Limited first contacted them, it was a part of the

12  Jardine Matheson Group of Trust Companies, a group which held six principal operating

13  companies located in the Jersey Islands, Bermuda, British Virgin Islands, Hong Kong,

14  Labuan, Malaysia and Mauritius, all of which provided asset management through the use of

15  trusts and corporate structures established in and administered from stable, neutral and low

16  tax jurisdictions. Since this first contact, Matheson Trust Company (Jersey) Limited was

17  acquired by and/or began to do business as Insinger Trust Company Limited. Insinger Trust

18  Company Limited changed its name on July 20, 2001 to Insinger de Beaufort Trust Company

19  Limited, which then, on July 18, 2003, changed its name to Equity Trust Company Limited.

20  Equity Trust Company Limited merged with Equity Trust (Jersey) Limited on November 19,

21  2003. Throughout this corporate evolution, and until the termination of the employment of

22  Kalman and Perkins, the Hilsenraths maintained contact with these trust companies through

23  Kalman and/or Perkins, who remained trust officers of the successive companies. As set

24  forth above, Equity Trust has succeeded to all of the assets, liabilities and activities of the

25  trust companies with which the Hilsenraths entered into various trust relationships. The

26  Hilsenraths in this pleading reference Matheson Trust Company (Jersey) Limited, Insinger

27  Trust Company Limited, Insinger de Beaufort Trust Company Limited, Equity Trust

28

Page 8

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1  Company Limited, and Equity Trust (Jersey) Limited collectively as "Equity Trust."

2      12.    In May of 1996, having been referred to the Hilsenraths by Dahan,

3  Perkins, on behalf of Equity Trust, placed a telephone call to Oliver Hilsenrath at his home in

4  Alamo, California, to solicit him and his family to do business with Equity Trust.  Two days

5  after this call, Perkins, on the letterhead of Equity Trust, further solicited the Hilsenraths'

6  business by mailing to Oliver Hilsenrath at his home in Alamo, California, a brochure

7  describing the services that Equity Trust could provide to the Hilsenraths.  Among the

8  services he proposed that Equity Trust provide the Hilsenraths was to incorporate and manage

9  companies pursuant to a trust relationship to be created between the Hilsenraths and Equity

10  Trust.

11      13.    On May 22, 1996, expecting that the company would hold, administer,

12  protect and ultimately augment their family's assets, Oliver and Hana Hilsenrath entered into

13  the first of more than one written Company Management Agreements with Equity Trust.

14  The trust company agreed to create and administer a "shelf company" for the benefit of the

15  Hilsenraths.  In entering into this agreement, and in each agreement into which it entered with

16  the Hilsenraths, Equity Trust assumed a relationship of trust with the Hilsenraths, and in

17  connection with that relationship owed the Hilsenraths a fiduciary duty.  Moreover, pursuant

18  to the terms of the agreement, Equity Trust agreed it would be liable to the Hilsenraths for

19  fraud, willful misconduct, and/or gross negligence, and for breach of trust should any such

20  fraud, willful misconduct and/or gross negligence occur.

21      14.    In addition to having the Hilsenraths execute the May 22, 1996

22  Company Management Agreement, Equity Trust required them to complete a Client

23  Acceptance Form, which both sides then executed, and which, together with the Company

24  Management Agreement, reflects the written agreement between Equity Trust and the

25  Hilsenraths.  In the Client Acceptance Form, Equity Trust agreed that all information

26  provided to it would remain confidential.

27      15.    In accordance with their written agreements with the Hilsenraths,

28

Page 9

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    Equity Trust retained control over the "shelf companies" created for the Hilsenraths, having

2    sole responsibility for the appointment of directors of the companies and for the creation of

3    banking relationships, and complete authority to make all major decisions regarding the

4    companies' activities, including the administration of the companies' financial affairs.

5         16.    In accordance with their agreements with the Hilsenraths, Equity Trust

6    created, administered and controlled for the Hilsenraths the following companies: Aida

7    Holdings, Ltd., later renamed Borazon Holdings; Telecom Associates; Star Anise; and Oliver

8    Hilsenrath Family Investment Ltd.

9         17.    In 1996, in conjunction with their entering into the first Company

10    Management Agreement with Equity Trust, the Hilsenraths executed a power of attorney

11    giving Dahan the authority to execute trades and administer investments for Aida Holdings,

12    Ltd.; the Hilsenraths are further informed and believe that Dahan did so at various times after

13    May of 1996. This power of attorney expired in 1997.

14         18.    Hana and Oliver Hilsenrath, in entering into these relationships with

15    Equity Trust, expected the trust company to provide stable investment mechanisms by which

16    the financial affairs of their family would be administered by people they understood to be

17    expert in international business affairs. They understood Equity Trust would protect their

18    family assets, make wise decisions about how to invest them, and at all times act prudently,

19    putting the financial security of Hana and Oliver Hilsenrath and their children first. The

20    Hilsenraths understood themselves to be creating mechanisms by which their assets could be

21    distributed to their children, in an orderly fashion, should they die or become incapacitated.

22    Finally, in creating these relationships they wanted to build a relationship with Dahan and

23    other major investors in U.S. Wireless, who they believed were key to the company's

24    ultimate financial success and who pledged long term support of the newly founded company.

25         19.    In July of 1996, at the time of or shortly after the "reverse merger,"

26    Equity Trust and Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, entered

27    into agreements with U.S. Wireless by which the companies would provide market and

28

Page 10

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1  industry advisory and support services to U.S. Wireless.  In connection with this agreement,

2  and for the benefit of Dahan and Haruvi, who were acting through Equity Trust, Crossgar

3  Limited and Ryburn Limited, were granted a three-year option to purchase 1.2 million shares

4  of the company, Janvrin Holdings Limited received shares of stock in the company, and all

5  three companies were to be paid various fees by U.S. Wireless.

6          20.    Over the next two years, in accordance with the terms of this agreement

7  with U.S. Wireless, Dahan and Haruvi, acting through Equity Trust, Crossgar Limited and

8  Janvrin Holdings Limited, earned various fees/commissions for introducing other investors to

9  the company, and for facilitating the buyout of "seed" investors by a new set of shareholders.

10         21.    In 1999, Dahan and Haruvi, through Equity Trust and Janvrin Holdings

11 Limited, Crossgar Limited, and Ryburn Limited, mounted a proxy fight by which they sought

12 to oppose critical new financing for U.S. Wireless.  Oliver Hilsenrath had the support of a

13 majority of the company's shareholders and defeated the proxy fight.

14         22.    On March 2, 2000, after the proxy fight, the Board of Directors of U.S.

15 Wireless determined that the option to purchase 1.2 million shares, granted in 1996, had

16 expired and further determined that Dahan and Haruvi, through Equity Trust, Janvrin

17 Holdings Limited, Crossgar Limited and Ryburn Limited had breached their prior agreement

18 with U.S. Wireless to provide market and industry advisory and support services.  The board

19 authorized the company to commence litigation.  In conjunction with this decision, U.S.

20 Wireless held up payments otherwise due to Dahan and Haruvi, through Equity Trust, Janvrin

21 Holdings Limited, Crossgar Limited and Ryburn Limited; U.S. Wireless elected to escrow the

22 funds rather than pay them, and refused to remove restrictive legends on shares of stock

23 owned by Janvrin Holdings Limited, thereby blocking sale of the stock.

24         23.    U.S. Wireless filed an action against Janvrin Holdings Limited,

25 Crossgar Limited and Ryburn Limited on May 22, 2000 in the Superior Court of California

26 for the County of Contra Costa. This action was never served, and was dismissed without

27 prejudice on October 26, 2000, after U.S. Wireless had filed counter-claims in the Federal

28

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1 | Actions referenced below.

2 | 24.    When he realized that U.S Wireless was withholding payments to

3 | Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, and would not release

4 | share restrictions to allow a stock sale, Dahan decided to try to gain an advantage in the

5 | dispute. Aware of the Hilsenraths' relationship to Equity Trust, Dahan decided to use his

6 | own relationship to Equity Trust as a lever to gain access to the Hilsenraths' confidential

7 | financial information. As reflected by the documents in collective Exhibit A, on May 25,

8 | May 26, June 1, June 5, June 6, and June 13, 2000, Dahan contacted various persons at

9 | Equity Trust, including Linda de la Coeur, Celine Gimenez, and Melvyn Kalman, demanding

10 | that Equity Trust transmit to him confidential written information from the Hilsenrath files

11 | maintained by Equity Trust.

12 | 25.    During this time period, as reflected by Exhibit B, on May 26, 2000,

13 | Oliver Hilsenrath affirmed in writing earlier directions he had given to Equity Trust, that it

14 | was not authorized to release any information to anyone about the Hilsenraths' financial

15 | situation.

16 | 26.    Concerned about this conflict between two of its fiduciaries, as reflected

17 | by Exhibit C, on June 5, 2000, David Chalmers-Hunt of Equity Trust contacted counsel,

18 | Steve Meiklejohn of Ogiers & Le Masurier in Janvrin Holdings Limited, Crossgar Limited,

19 | and Ryburn Limited Equity Jersey, who advised him that he should not disclose any

20 | information in the Hilsenraths' files.

21 | 27.    On June 17, 2000, Equity Trust retained an attorney, Steven J. Glusband

22 | of Carter, Ledyard & Milburn in New York City to represent Janvrin Holdings Limited,

23 | Crossgar Limited and Ryburn Limited in dealings with U.S. Wireless. Without further

24 | authority from Equity Trust, Mr. Glusband's colleague, William Sloane, retained Westreich

25 | and Lillick & Charles to associate with his firm and to prosecute claims for Janvrin Holdings

26 | Limited, Crossgar Limited and Ryburn Limited on behalf of Equity Trust. Apparently

27 | unaware of the U.S. Wireless action pending in Contra Costa County, on June 30, 2000, Mr.

28 |

Page 12

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1  Sloan and Mr. Westreich, acting for their firms and for Equity Trust, filed three separate

2  lawsuits in this court: *Janvrin Holdings Ltd. v. U.S. Wireless,* action # 00-CV-02334-CW;

3  *Crossgar Ltd. v. U.S. Wireless,* action # 00-CV-02335-CW; and *Ryburn Ltd. v. U.S. Wireless,*

4  action # 00-CV002346-CW. These actions are identified in paragraph 22 of the Second

5  Amended Complaint in this action and will be referenced in this counter-claim/third party

6  complaint as they are in that paragraph, i.e., as the "Federal Actions."

7       28.    On July 3, 2000, Beth Applebaum, Westreich's colleague, faxed Equity

8  Trust copies of the three complaints that had been filed. As reflected by Exhibit D, on July

9  12, 2000, in reply, Kalman and Perkins sent Mr. Glusband a letter, expressing dismay that

10  lawsuits had been filed without their authority. They reminded Mr. Glusband that they,

11  Kalman and Perkins, were directors of the three companies and that they had previously told

12  him in a telephone call that they alone could act for the companies. They instructed Mr.

13  Glusband to contact Ms. Applebaum and inform her that the filing of Federal Actions had

14  been unauthorized. They closed by indicating that they authorized no further actions until

15  they knew what fees were likely to be incurred in the litigation.

16       29.    Continuing to be concerned about the conflict between their fiduciaries,

17  i.e., Dahan and the Hilsenraths, Kalman and Perkins again sought legal advice from Ogiers &

18  Le Masurier. As reflected by Exhibit E, on July 28, 2000, in a memo to their file, they

19  memorialized both the legal advice they had received – that there was a conflict – and their

20  decided course of action – to withdraw from representation of the Hilsenraths' interests. At

21  that time, they thought, they would be "transferring out" the Hilsenrath files. These files

22  were never "transferred out."

23       30.    On August 25, 2000, describing the conflict situation, Kalman sent

24  Dahan the following fax memo, a copy of which is attached as Exhibit F:

25      Dear David [Dahan]:

26

27      I have been very concerned that the legal dispute between Janvrin, Ryburn and
    Crosgar [sic] with Oliver and David K. [David Klarman, General Counsel of

28      U.S. Wireless] may have created a **conflict of interest in this office.**

Page 13

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

I have taken legal advice from Tim Le Coq of Ogiers and he has confirmed that if this case goes to court we could be embarrassed. There is nothing illegal about providing management and advisory services to two parties involved in a dispute. However, I am advised that Courts everywhere do not approve of such a situation, as **it is almost impossible to maintain a clear distinction between the two parties.**

**Having given the matter much thought I have decided to be totally on your side and to have nothing to do with Oliver or David** (Emphases added)

31.    The Hilsenraths are informed and believe, and on that basis allege, that sometime between July 12, 2000 and August 25, 2000, Equity Trust ratified the acts of Mr. Sloane and Westreich in commencing the Federal Actions, retained them as counsel for Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, and authorized the prosecution of the cases.

32.    The Hilsenraths are informed and believe, and on that basis allege, that after July 12, 2000 Equity Trust, through Kalman, Perkins, and/or other employees, had conversations with Dahan and others, including Westreich, in which they revealed confidential information regarding the Hilsenraths' assets and past trust transactions.

33.    To the best of the Hilsenraths' knowledge, neither Equity Trust nor they themselves engaged in any illegal conduct in the creation and operation of the Equity Trust "shelf companies." In the companies the Hilsenraths held assets that included in excess of 5 million shares and options of U.S. Wireless obtained legitimately and for consideration either at the time of the "reverse merger" or through Mr. Hilsenrath's employment as an executive of the company. Mr. Hilsenrath also received his regular monthly salary payments from U.S. Wireless in the companies. In seeking to obtain the Hilsenraths' confidential information, and in actually obtaining it, Dahan, Haruvi, Kalman, Perkins, Equity Trust, and Westreich were seeking to have and use confidential information as to the actual financial condition of the Hilsenraths, and to manufacture evidence of impropriety that in fact the Hilsenraths had and maintained an "off shore" trust. They sought this information not because they themselves believed there was any impropriety in the maintenance of the "off shore"

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1 relationships, but rather because they believed they could embarrass Oliver Hilsenrath and

2 members of the US Wireless Board, and put pressure on them, simply because the

3 relationships existed.

4      34.    The Hilsenraths did not violate any laws, including securities and tax

5 laws, in their relationship with Equity Trust and in their conduct of their business affairs.

6 Moreover, as to the business affairs Equity Trust conducted on their behalf, the Hilsenraths

7 relied on Equity Trust and other domestic advisors to counsel them on their legal obligations.

8 They never hid from Equity Trust or any of these advisors any of the facts related to Equity

9 Trust or its activities, nor did they dispute Equity's decisions on management, appointment of

10 directors, secretaries or representations to authorities.

11      35.    Beginning on August 25, 2000, at the latest, when Equity Trust decided

12 to be "totally" on Dahan's side, Equity Trust and Dahan accelerated their efforts to obtain and

13 use confidential Hilsenrath information to gain an advantage in the dispute between U.S.

14 Wireless and Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited. To try to put

15 pressure on the Board of Directors of U.S. Wireless, they approached one of the company's

16 directors, David Tamir. They made various statements about the Hilsenraths' relationship to

17 Equity Trust, and disclosed to Mr. Tamir confidential information about the Hilsenraths'

18 business dealings with Equity Trust. The approach backfired; rather than approach the Board

19 of Directors or Mr. Hilsenrath, Tamir resigned from the board and sold his shares in U.S.

20 Wireless, which had also been held by Equity trust through a "shelf" company.

21      36.    Having had no success in the approach to Tamir, Equity Trust and

22 Dahan arranged for a conference call with certain members of the Board of Directors of U.S.

23 Wireless including Irvin Gross. Again they made various statements about the Hilsenraths'

24 relationship to Equity Trust, and disclosed confidential Equity Trust information. Gross

25 reacted much like Tamir, except that he was the holder of a very large block of restricted

26 shares of stock in U.S. Wireless. To effect a sale of his stock, Gross pledged the stock as

27 security for a loan with Merrill Lynch, upon which he defaulted. Merrill Lynch reacted by

28

Page 15

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    selling all of the Gross shares on the open market, causing the share price of U.S. Wireless to

2    plunge, in just ten days, from approximately $15.00 per share to approximately $4.00 per

3    share.

4        37.    Equity Trust was the moving party behind these efforts. Since the

5    company had decided to be "totally on Dahan's side," Kalman, on November 6, 2000,

6    (Exhibit G) instructed Linda de la Cour, a Senior Administrator of Equity Trust, to forward

7    confidential Hilsenrath documents to an attorney for Dahan in Israel, Amos Bentzur. In a

8    masquerade to hide his activities, Kalman instructed Ms. de la Cour to inform Bentzur that

9    she was sending the documents pursuant to the terms of the power of attorney Mr. Dahan had

10   had. However, as Kalman and Equity Trust knew well (and as Mr. Hilsenrath had confirmed

11   in May, 2000), that power of attorney had expired in 1997 (three years before), and had

12   applied to trades in only one of Equity Trust's "shelf companies," Aida Holdings Limited.

13   Ms. de la Cour sent Mr. Bentzur the trading records for Borazon, Telecom Associates, Stare

14   Anise and the Oliver Hilsenrath Family Investments companies. Immediately upon his

15   receipt of this information on November 6, 2000, Mr. Bentzur forwarded the confidential

16   Hilsenrath information he received to Dahan and to Westreich.

17       38.    The effort continued. Various interested parties arranged to meet in

18   London in early December 2000 at the Euston Park Plaza Hotel. On November 30,

19   Westreich and Ms. Applebaum traveled to London on a Virgin Atlantic flight. Mr. Glusband,

20   Kalman, Perkins, Dahan, Haruvi, Mr. Bentzur and others arrived by the next day. The parties

21   conferred on December 1, 2, 3 and 4, and met on at least one of those days. Kalman and

22   Perkins were present as representatives of Equity Trust and as directors of Janvrin Holdings

23   Limited, Crossgar Limited and Ryburn Limited; Dahan and Haruvi were present as

24   beneficiaries the companies and clients of Equity Trust; Westreich, Mr. Glusband, and Ms.

25   Applebaum were present as counsel to Equity Trust, Janvrin Holdings Limited, Crossgar

26   Limited and Ryburn Limited; Mr. Bentzur was present as counsel to Dahan.

27       39.    At the time of these conferences and meeting(s), Equity Trust, Kalman

28

Page 16

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1   and Perkins continued as fiduciaries to the Hilsenraths, and continued to be obligated to the

2   Hilsenraths to preserve their interests and confidences, both at law and pursuant to the terms

3   of Equity Trust's agreements with the Hilsenraths.  Equity Trust continued to have a conflict

4   of interests.

5          40.    Kalman and Perkins brought Equity Trust's confidential Hilsenrath files

6   to the London meeting(s).  They delivered these files to Westreich and Applebaum.  The

7   parties reviewed the materials and discussed how best to use them.  They discussed using the

8   files to try to put pressure on Mr. Hilsenrath and U.S. Wireless, hoping that U.S. Wireless

9   would settle the Federal Actions rather than risk disclosure that its CEO held shares of stock

10  in a foreign trust.  Mr. Bentzur cautioned the group against this plan, expressing a concern

11  that the parties themselves might destroy the value of their own holdings.  The rest of the

12  group ignored this advice and ultimately decided that, among other things, Westreich would

13  approach counsel for U.S. Wireless and make veiled threats that he and his clients had

14  evidence of irregularities by Mr. Hilsenrath that would jeopardize the continued existence of

15  the company.  Westreich told everyone that there was to be a Case Management Conference a

16  week later.  He said that at the conference he could approach counsel for U.S Wireless and

17  tell him he had some embarrassing material involving the Hilsenraths, and that counsel and

18  the company might want to settle to avoid its becoming public.  Everyone, save Mr. Bentzur,

19  endorsed this plan.

20         41.    On December 5, 2000, Westreich and Ms. Applebaum left London,

21  returning to San Francisco with the confidential Hilsenrath files.  As reflected by Exhibit H,

22  three days later, on December 8, 2000, Linda de la Coeur of Equity Trust, on behalf of

23  Kalman, faxed further confidential documents to Westreich.  In sending the materials, making

24  reference to the plan the parties had developed in London, Ms. de la Coeur stated:

25         Dear Glenn:

26         Litigation Crossgar Limited/Ryburn Limited/Janvrin Holdings Limited

27

28         Following a search through further files, Melvyn has asked me to forward the

                                                                            Page 17

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    enclosed correspondence that he thinks may be of benefit for your meeting
     Friday. I would appreciate if you would acknowledge receipt of these papers
2    as they are relevant to the litigation.

3    Meanwhile, Melvyn looks forward to hearing about a successful meeting.

4

5    On December 14, 2000, Ms. Appelbaum sent this same confidential information to Mr.

6    Bentzur, Dahan and Haruvi.

7        42.    In the week before the Case Management Conference on December 15,

8    2000, Westreich and Ms. Applebaum reviewed the confidential documents they had received,

9    and conferred with Kalman, Dahan, Haruvi, and Mr. Glusband about their plans to use it to

10   blackmail a settlement out of U.S. Wireless.

11       43.    The Case Management Conference was held on December 15, 2000,

12   before Judge Claudia Wilken of this court. After the conference, Westreich began to

13   implement the parties' blackmail plan. When he returned to his office, he conferred with Ms.

14   Applebaum about his efforts, and placed a call to Dahan and Haruvi.

15       44.    On December 19, 2000, Westreich and Applebaum had a conference

16   call with their clients that lasted over an hour and a half. Among the subjects discussed was

17   Westreich's approach to U.S. Wireless's attorney and the threats he had made. Indeed, as

18   reflected by Exhibit I, in setting the agenda for this conference call, Alon Rosenberg, a

19   colleague of Mr. Bentzur in Israel, and an attorney in the Bentzur law firm, e-mailed

20   Westreich as follows:

21       Dear Glenn,
         Good Morning
22

23       I have talked with Amos [Bentzur] about the scheduled conference call and we
         could do it either today (Tuesday) 11:00 (your time) or at 14:00 Wednesday
24       (your time)
             *         *         *         *         *         *
25       3. Arbitration -- did you mention to Oliver's Counsel any of the "problematic
         Material" we might be holding before or during the Case Management
26       Statement? [sic] If so, was there any reaction? (David [Dahan] would
         appreciate a full account of this procedure.)
27

28                                                                        Page 18

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

45.     The Hilsenraths are informed and believe, and on that basis allege, that as counsel for Equity Trust, and its companies Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, and in furtherance of the agreement he had reached with these entities, to use confidential Hilsenrath information to blackmail a settlement out of U.S. Wireless, Westreich disclosed confidential Hilsenrath information he had received from Equity Trust to the associate general counsel of the company, and to various others including directors of the company and their attorneys.

46.     Contrary to the allegations they have made in the Second Amended Complaint on file in this action, Westreich and Equity Trust, acting through the plaintiffs in this action, Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, were themselves the source of the confidential information that led to the failure of U.S. Wireless.

**C.     Claims for Relief**

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief, stated by Oliver Hilsenrath, against Counter-defendants/Third Party Defendants Equity Trust, Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited)**

47.     Oliver Hilsenrath incorporates into this claim for relief all of the allegations of paragraphs 1-46 of this amended counterclaim/third party complaint.

48.     There is a controversy between Plaintiffs/Equity Trust and Oliver Hilsenrath regarding the actual terms and conditions of the agreement giving rise to this dispute. In Paragraphs 41-48 inclusive of the Second Amended Complaint, plaintiffs/Equity Trust, through their counsel Westreich and Nixon Peabody LLP, set forth the terms and conditions of an alleged settlement agreement into which they allege they entered with U.S. Wireless. In fact, these allegations do not reflect the actual or the complete terms of the 2001 settlement agreement between plaintiffs/Equity Trust and U.S. Wireless

49.     Dahan himself set forth the actual terms of the settlement with U.S. Wireless in a June 30, 2005 letter to Grant Brown at Equity Trust:

Page 19

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1
2
3

In order to eliminate any doubt I [Dahan] hereby remind you [Equity Trust] of the general terms of the settlement of the aforementioned litigation. Insinger Trust of then, released US Wireless et al of any claims against the reception by Insinger Trust of:

4

i.        2,500,000 shares of USWC with certain registration rights

5
6
7

ii.       USD 4,500,000 in the form of USD 1,500,000 to be paid from the US Wireless account to Janvrin and USD 3,000,000 to be paid to Dyke/Rockvale from a settlement escrow established by US Wireless management, as well as a conditional personal guarantee of 750,000 options of USWC stock by the CEO of the company

8
9

iii.      The funds were all paid except USD 660,000 by USWC to Janvrin

10      50.    Thus, contrary to the allegations set forth in the Second Amended

11  complaint on file in this action, there were additional terms to the settlement, not reflected in

12  the document to which that pleading makes reference, including U.S. Wireless's release of

13  escrowed funds in the amount of $3,000,000, to be paid to Equity Trust companies Dyke and

14  Rockvale, and a personal guarantee of U.S. Wireless's performance, given by Oliver

15  Hilsenrath and secured by 750,000 options he had to purchase U.S. Wireless stock.

16      51.    Both Plaintiffs/Equity Trust and Westreich are aware that the

17  allegations of the Second Amended Complaint are inaccurate. Thus, for example, on June 13,

18  2001, soon after the settlement agreement had become effective, Equity Trust instructed The

19  Royal Bank of Scotland, at which it maintained an account for Dyke Limited, a Dahan "shelf

20  company" to wire $100,000 in funds from its account #1028-50181249 to the Lillick &

21  Charles General Account #200001 766 at Citibank in San Francisco.

22      52.    Oliver Hilsenrath is entitled to this court's declaration: that the actual

23  terms of the settlement agreement alleged in the Second Amended Complaint to exist are *not*

24  as the Plaintiffs/Equity Trust and Westreich have represented to this court, but include the

25  terms and conditions set forth in Paragraph 49 above; that the only element of the settlement

26  not performed was a payment of $660,000 due from U.S. Wireless to Plaintiff Janvrin

27  Holdings, and that Oliver Hilsenrath himself performed all conditions of the settlement on his

28

Page 20

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1  part to be performed.

2          WHEREFORE Oliver Hilsenrath prays relief as set forth below.

3

4  ### SECOND CLAIM FOR RELIEF
   **(Breach of Written Contract, against Third Party Defendant Equity Trust)**

5          53.    The Hilsenraths incorporate into this claim for relief all of the

6  allegations of paragraphs 1-46 of this amended counterclaim/third party complaint.

7          54.    In delivering confidential Hilsenrath information to Dahan, Haruvi,

8  Westreich, Applebaum, Lillick & Charles, Nixon Peabody LLP, and Bentzur, Equity Trust

9  breached its trust obligations and its written agreements with the Hilsenraths to protect their

10  assets and preserve the Hilsenraths' confidences.

11          55.    As a legal result of Equity Trust's breach of trust and of written

12  agreements, the Hilsenraths have been damaged in an amount equal to the value of their U.S.

13  Wireless stock and options, at the time of the breach, i.e., $518,000,000 plus other damages to

14  be proved at trial.

15          WHEREFORE the Hilsenraths pray relief as set forth below.

16

17  ### THIRD CLAIM FOR RELIEF
   **(Breach of Fiduciary Duty, against all Counter-Defendants/Third Party Defendants)**

18          56.    The Hilsenraths incorporate into this claim for relief all of the

19  allegations of paragraphs 1-55 of this amended counterclaim/third party complaint.

20          57.    In delivering confidential Hilsenrath information to Dahan, Haruvi,

21  Westreich, Applebaum, Lillick & Charles, Nixon Peabody LLP, and Bentzur, Equity Trust

22  breached its fiduciary duties to the Hilsenraths.

23          58.    Westreich, Nixon Peabody LLP (as successor to Lillick & Charles),

24  Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited conspired with Equity Trust

25  to breach the fiduciary duties Equity Trust owed the Hilsenraths.

26          59.    As a legal result of Equity Trust's breach of fiduciary duties, and all

27  parties' conspiracy to breach the duties, the Hilsenraths have been damaged in an amount

28

Page 21

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1  equal to the value of their U.S. Wireless stock and options, at the time of the breach, i.e.,

2  $518,000,000, plus other damages to be proved at trial.

3        WHEREFORE the Hilsenraths pray relief as set forth below.

4  ### FOURTH CLAIM FOR RELIEF

5  **(Invasion of Privacy, against all Counter-Defendants/Third Party Defendants)**

6        60.    The Hilsenraths incorporate into this claim for relief all of the

7  allegations of paragraphs 1-59 of this amended counterclaim/third party complaint.

8        61.    The Hilsenraths had an expectation that Equity Trust would keep their

9  confidential financial and personal information private.

10        62.    In obtaining and using the Hilsenraths' confidential financial and

11  personal information, to their own business ends, Counter-Defendants/Third Party

12  Defendants invaded the Hilsenraths' privacy.

13        63.    As a legal result of Equity Trust's invasion of privacy, the Hilsenraths

14  have been damaged in an amount equal to the value of their U.S. Wireless stock and options,

15  at the time of the breach, i.e., $518,000,000 plus other damages to be proved at trial.

16        64.    Hana Hilsenrath is a mother of six children, 4 of whom are minors, and

17  does not work outside the home.  As a legal result of the invasion of privacy by Counter-

18  Defendants/Third Party Defendants, she has suffered fear, anguish, and illness; has been

19  exposed to personal threats by shareholders of U.S. Wireless; and has suffered constant fear

20  of bodily injury to and/or attack upon her children as the result of deliberate and explicit

21  threats.  She has also seen the structure and security of her family threatened by the disclosure

22  of her family's private information, and has lost the vast majority of her personal wealth.  She

23  has suffered general damages in an amount to be proved at trial.

24        65.    The Hilsenraths discovered the invasion of privacy by Counter-

25  Defendants/Third Party Defendants within one year prior to filing their Answer/Counterclaim

26  in this action.

27        66.    The Hilsenraths are entitled to exemplary damages from Counter-

28  Defendants/Third Party Defendants, and each of them, on account of their fraudulent,

Page 22

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    oppressive and malicious conduct, in amounts that the Hilsenraths will prove at trial.

2          WHEREFORE, the Hilsenraths pray relief as set forth below.

3

### FIFTH CLAIM FOR RELIEF
4
### (RICO, against all Counter-Defendants/Third Party Defendants)

5          67.    The Hilsenraths incorporate into this claim for relief all of the

6    allegations of paragraphs 1-66 of this amended counterclaim/third party complaint.

7          68.    In their breach of trust, breach of fiduciary duties, invasion of privacy

8    and attempts to extort a settlement through the use of confidential activities; in its transfer of

9    confidential and protected information, indirectly and directly, through the use of telephone

10   lines; in their interference with the lawful business of U.S. Wireless, a registered and publicly

11   traded company in the U.S.; in their use and transfer of funds derived through extortion and

12   unlawful activity; and in their approach to U.S. Wireless directors and its other activities

13   related to the registered sale of U.S. Wireless securities; Equity Trust, Westreich and Lillick

14   & Charles/Nixon Peabody engaged in racketeering activities as that term is defined in the

15   U.S. Racketeering Influenced and Corrupt Organizations Act. Further, in their meetings,

16   conversations and use of Equity Trust's alter egos Janvrin Holdings Limited, Crossgar

17   Limited, and Ryburn Limited Equity, Equity Trust, Westreich and Lillick & Charles/Nixon

18   Peabody engaged in a pattern of racketeering activities and a created and conducted a

19   racketeering enterprise.

20         69.    Equity Trust and its alter egos, Janvrin Holdings Limited, Crossgar

21   Limited, and Ryburn Limited, Dahan, Haruvi, Westreich, Lillick & Charles and Nixon

22   Peabody have conspired with each other in engaging in these racketeering activities and in the

23   operation of the racketeering enterprise.

24         70.    As a legal result of these violations by Equity Trust, Janvrin Holdings

25   Limited, Crossgar Limited, and Ryburn Limited, Westreich, Lillick & Charles and Nixon

26   Peabody, the Hilsenraths are entitled to damages as set forth in paragraphs 55, 59, and 63

27   above, i.e., to $518,000,000, and to have those damages trebled, plus their attorneys fees in

28
                                                                         Page 23

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1   the defense of the claims against them and the prosecution of this amended counterclaim/third

2   party complaint.

3        WHEREFORE, the Hilsenraths seek damages as follows:

4   **V.    PRAYER**

5        A.    By way of his answer, including affirmative defenses, Oliver Hilsenrath

6   prays that plaintiffs take nothing and have no relief by way of their Second Amended

7   Complaint.

8        B.    By way of their amended counterclaim/third party complaint, Hana and

9   Oliver Hilsenrath pray relief as follows:

10        1.    That this court declare, by way of Oliver Hilsenrath's cause of action

11   for Declaratory Relief, that:  there were certain additional terms to the Settlement Agreement

12   between plaintiffs and U.S. Wireless, as alleged in Paragraphs 41-48 of the Second Amended

13   Complaint, which were not included in the writings to which these Paragraphs make

14   reference; that among these terms was an agreement that U.S. Wireless would release

15   escrowed funds in the amount of $3,000,000, to be paid to Equity Trust companies Dyke and

16   Rockvale, and that Oliver Hilsenrath would secure a personal guarantee of U.S. Wireless's

17   performance, with 750,000 options he had to purchase U.S. Wireless stock;  and that U.S.

18   Wireless/Oliver Hilsenrath performed each of these additional terms of the Agreement, save a

19   payment of $660,000 due from U.S. Wireless to Equity Trust/Janvrin Holdings Limited.

20        2.    That Hana and Oliver Hilsenrath recover as damages from Equity Trust

21   the sum of $518,000,000, plus other damages proved at trial, as a result of Equity Trust's

22   breach of trust and written agreements between it and the Hilsenraths.

23        3.    That Hana and Oliver Hilsenrath recover, from Counter-

24   Defendants/Third Party Defendants, and each of them, the sum of $518,000,000, plus other

25   damages proved at trial, on account of these parties' breach of fiduciary duty/conspiracy to

26   breach fiduciary duty, and invasion of privacy.

27        4.    That, according to proof, Hana Hilsenrath recover general damages, as a

28

Page 24

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1   result of Counter-Defendants'/Third Party Defendants' invasion of privacy.

2          5.      That on account of Counter-Defendants/Third Party Defendants'

3   violation of the RICO act, Oliver and Hana Hilsenrath recover from them and each of them,

4   the sum of $518,000,000, plus other damages proved at trial, and to have those damages

5   trebled, plus their attorneys fees in the defense of the claims against them and the prosecution

6   of this amended counterclaim/third party complaint.

7          5.      That the Hilsenraths recover prejudgment interests on the sums awarded

8   them as damages.

9          6.      That the Hilsenraths recover exemplary damages from Counter-

10  Defendants/Third Party Defendants, and each of them, on account of their fraudulent,

11  oppressive and malicious conduct, in amounts proved at trial.

12         C.      By way of this answer and amended counterclaim/third party complaint,

13  the Hilsenraths' pray relief as follows:

14         7.      That the Hilsenraths recover their costs of suit, including attorneys'

15  fees; and

16         8.      That this Court award such other and further relief as it deems proper.

17

18  Dated:  November 30, 2006              Respectfully submitted,

19                                        Chapman Popik & White LLP

20

21                                        By:_____

22                                           J. MICHAEL MATTHEWS
                                             Attorneys for Defendant
23                                           OLIVER HILSENRATH, and Counter-
                                             Claimants/Third Party Plaintiffs OLIVER
24                                           AND HANA HILSENRATH

25

26

27

28                                                                        Page 25

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

**EXHIBIT A**



**Matheson Trust Company (Jersey) Limited**

A Member of the Jardine Matheson Group

File note

| | | |
|---|---|---|
| Author | Linda de la Cour | 25 May 2000 |
| Client | Dyke Limited | LDC/SMS/CO1280 |

**Telephone conversation with DD**

DD requested that I send him information in respect Izia Limited (Borazon Limited). He wanted the original power of attorney giving the Investment Manager powers and also the cancellation of the power of attorney. He asked that this be faxed to his friend HH on 00 972 36430852. I advised him that I was not the administrator for this Company and would have to refer it to the administrator and ask her to arrange to fax the information to him.

I also advised DD that I wanted to send a fax to him in respect of various matters. He said that he did not want to receive a fax. I therefore advised him that on looking over the portfolio at Salomon Smith Barney Inc for the Company DY Limited, the valuation was showing a credit line of $6,661,539,78, although the net value of the portfolio was $6,361,400.14. He said this was nothing to worry about he was totally aware of the situation and there was no problem.

In respect of the Company NY Limited, I advised him that we had received a form W8 for Investec for completion. He asked me to contact Coby Shapira at Salomon Smith Barney Inc. in respect of this form. I also advised him that there was only a balance of US$124.63 on the account and suggested that maybe it should be closed and the proceeds transferred to a bank account.

Linda de la Cour.

0795

EXHIBIT _A_

**From:**      Linda De La Cour
**To:**        cgi
**Date:**      5/25/00 4:19pm
**Subject:**   borazon

David Dahan has requested a copy of the Power of Attorney and the cancellation of the Power.
(Company formerly Aida) Please fax on a blank fax to to him on 00 972 36430 852.

Many thanks

Linda

JAG 01792

CONFIDENTIAL PURSUANT
TO SECTION 24 (d)
02880

| Celine Gimenez - David Dahan | AMAZON CO 132 | Page 1 |

**From:**       Celine Gimenez
**To:**          Hilsenrath, Oliver
**Date:**        5/26/00 9:28am
**Subject:**     David Dahan

Please be advised that David Dahan has called our offices yesterday to request copies of the Power of Attorney and the cancellation of the same Power of Attorney to be faxed to him on blank paper.

Kindly confirm that it is in order to do so.

Thank you for your assistance.

*Celine*

O. HILSENRATH

001 925 785 8812

**JAG 01791**

CONFIDENTIAL PURSUANT
TO SECTION 24 (d)
02879

File note

**Matheson Trust Company (Jersey) Limited**

A Member of the Jardine Matheson Group

| | | |
|---|---|---|
| Author | Linda de la Cour | 1st June 2000 |
| Client | Dyke Limited | LDC/ZTY/CO1280 |

**Telephone conversation with Claudia (approximately 3.50pm)**

DD phoned and asked if I had any success in finding the Power of Attorney, the cancellation of the Power and also the information on the receipt of approximately $55-56,000 for Onvoy Limited between October 1997 and March 1998. I advised DD that as we had been in conversations with himself and John Perkins and that I was searching for the Power of Attorney. I had not had time and did not know when I would be able to confirm the information on Onvoy Holdings Limited. However, I advised him that I had found a Power of Attorney authorising DD to deal but at that time I could not find a cancellation of the Power. DD proceeded to laugh and said words to the effect that wouldn't that be good if the cancellation was not found. I advised DD that there was no way I would be able to have the Power of Attorney and cancellation sent out to him this afternoon as we still had to refer it to the lawyers but hopefully, we could forward it tomorrow.

Linda de la Cour

2301



**Matheson Trust Company (Jersey) Limited**

A Member of the Jardine Matheson Group·

*File note*

Author    Linda de la Cour                                              02 June 2000

Client    Dyke Limited                                                  LDC/ZTY/CO1280

*Telephone conversation with JHP*

JHP called and asked how I was getting on with finding the Power of Attorney and cancellation. I advised him that I had found the Power of Attorney but was having trouble finding a cancellation. On giving JHP information as to the company that the Power of Attorney was in respect of, JHP suggested that we find out when or if the account had been closed which would rescind the Power anyway.

He also suggested that if we could not find a closure date of the account we could revoke the Power of Attorney by taking the date from the file where OH advised that DD should have no say in his affairs.

If the account had not been closed we should write to Schroders and confirm that the Power had been now cancelled.

JHP advised that one way or another we should make sure that the Power was cancelled both by ratifying the decision by minute and also copying the Power and making clear on the Power by scoring through it with double line and marking it cancelled or superseded.

The phone conversation was ended but then JHP phoned back and said that he was still very concerned as to why DD wanted the Power at this late stage knowing that it had been cancelled. JHP suggested that DCH phone the lawyers and ask in principal whether DD is legally entitled to the document. However, JHP asked that we delay sending anything out to DD today. To this end he asked that I prepare a fax to DD advising that we were still in the process of gathering the documents together but that JHP as a director of Aida Limited would like to know in writing, why he needs the Power of Attorney at this late stage knowing that it has already been rescinded.

I confirmed with JHP that I would let DCH know the situation and ask that he discuss the matter with the lawyers.


Linda de la Cour



**Matheson Trust Company (Jersey) Limited**

A Member of the Jardine Matheson Group

File note

Author  Linda de la Cour

6 June 2000

Client  Dyke Limited

LDC/MFE/CO1280

I had a telephone conversation with Claudia. DD phoned and asked if I had faxed through to him the Power of Attorney and irrevocation requested last week. I asked him if he had received my fax sent to him on Friday 2 June. He said yes, he had received something about John Perkins being on holiday. I advised him that in the fax I had requested that he advise us in writing as to why he needed the Power of Attorney. David then asked why I was making things so difficult for him and why I was protecting Oliver Hilsenrath. He then proceeded to tell me that he was the first client within the company, he had introduced Oliver Hilsenrath, he had introduced many people to the company over the years. Therefore, why was I protecting other clients and not helping him. I refused to get into a discussion about this and asked him if he could please just fax to us a written request for the Power of Attorney, giving his reasons as to why he wanted it. He said that his English was not good enough to produce this in writing and it would cost him an awful lot of trouble to have to find someone to draft it for him. He asked that I draft the fax and send it to him, he would sign it and fax it back to us.



I terminated the telephone conversation and proceeded to refer the phone call to JHP, who dictated a reply fax to David.

Linda de la Cour

2304

**Matheson Trust Company (Jersey) Limited**

A Member of the Jardine Matheson Group

Jardines

File note

| Author | Linda de la Cour | 13 June 2000 |
|---|---|---|
| Client | Dyke Limited | LDC/ZTY/CO1280 |

### Telephone conversation with David Dahan

I took a call from DD who requested that I arrange a transfer of $20,000.00 from the account of Dyke Limited at Saloman Smith Barney Inc to the account of Dyke Limited at Matheson Bank International Limited. From this account I should arrange a transfer of $15,000.00 to the Pelican Consulting Account with Cobi which would be recorded as a shareholders loan. DD requested that I ask the bank to make the payment specifically to day on the understanding that funds were coming through.

DD asked if John had made a decision as to whether he would fax through the Power of Attorney in respect of Aida Limited (Borazon Limited). I said that I hadn't discussed this with John to date but would mention it to him, DD then asked that JHP would give him a call his car mobile: 00 380 5032 31994

DD again asked if we had found out any information in respect of the transfer of 200,000 US Wireless shares from the account of Onvoy Limited to Aida Limited. He thought that this was sometime in 1997 but could not confirm the date. I said that we were looking through the historic files and were trying to locate this for him.



Linda de la Cour

**EXHIBIT  B**

| From: | Oliver Hilsenrath <Oliver@uswcorp.com> |
|-------|----------------------------------------|
| To: | Celine Gimenez <cgimenez@MathesonTrust.co.uk> |
| Date: | 5/26/00 3:02pm |
| Subject: | RE: David Dahan |

Dear Celine,

I certainly DO NOT authorize any transfer of information to David Dahan or
Haim Hanuvi or any other party. This includes information of my family as
well as my company's affairs (US Wireless Corporation).
The above 2 gentlemen are sued by US Wireless for misconduct and are
collecting information illegally through you.
Further the 2 of them were recently charged, convicted and jailed for
securities fraud in Israel and are under close scrutiny in both Israel as
well as in the USA.
Please advise your other colleagues against further requests for
information. All those requests should be TURNED DOWN and they should be
advised of the illegal nature of these requests.
Your diligence is appreciated.

Warm regards,
Oliver Hilsenrath

——Original Message——
From: Celine Gimenez [mailto:cgimenez@MathesonTrust.co.uk]
Sent: Friday, May 26, 2000 1:29 AM
To: Oliver@uswcorp.com
Subject: David Dahan


Please be advised that David Dahan has called our offices yesterday to
request copies of the Power of Attorney and the cancellation of the same
Power of Attorney to be faxed to him on blank paper.

Kindly confirm that it is in order to do so.

Thank you for your assistance.

Celine

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
This email is confidential and may be protected by legal privilege. If you
are not the intended recipient, do not copy or disclose its content, but
contact the sender immediately. Whilst we run antivirus software on all
internet emails we are not liable for any loss or damage. The recipient is
advised to run their own antivirus software.

www.mimesweeper.com
•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

JAG 01789

CONFIDENTIAL PURSUANT
TO SECTION 24 (d)
02877

**EXHIBIT C**



**Matheson Trust Company (Jersey) Limited**

A Member of the Jardine Matheson Group

File note

Author    Marcelene Cullinane                                    10 August 1999

Client    Borazon Limited (formerly Aida)              MAC/2095/2545/2609/2465
          Oliver Hilsenrath Family Investments Limited
          Star Anise Limited
          Telecomm Associates Limited


**Telephone call from David Dahan**

I received a message from David Dahan requesting up to date cash statements in respect of Aida Limited. It was noted that the company was not referred to by its new name, ie Borazon Limited.

I contacted Oliver Hilsenrath to ascertain whether DD was entitled to received such information, bearing in mind his message to us last year stating that DD should not receive any documentation connected with his companies. He confirmed that DD should not receive any documentation/information relating to his companies as previously stated.


**M A Cullinane**


JAG 01902

CONFIDENTIAL PURSUANT
TO SECTION 24 (d)
02990



**Matheson Trust Company (Jersey) Limited**

*A Member of the Jardine Matheson Group*

File note

---

| | | | |
|---|---|---|---|
| Author | David Chalmers-Hunt | | 5 June 2000 |
| Client | Borazon Limited (ex Aida Limited) | | DCH/SMS/CO1327 |

At the request of JHP I telephoned Steve Meiklejohn at Ogiers to ascertain the Company's position with regard to David Dehan's request for a copy of the power of attorney issued by the Company, together with a copy of the revocation of the power of attorney in respect of which authority David Dehan was the donee. Steve Meiklejohn commented that in his opinion the Directors of Borazon Limited were not obliged to submit further copies of the documentation to the donee as in his opinion the revocation of the power of attorney meant that any entitlement the donee had, ceased as at the date of the revocation and which would include the right to further copies. He suggested that the Directors simply confirm the date the power of attorney was issued and also confirm when the power of attorney was revoked.

However, he also commented that if the matter got to court the court might take the view that it was not unreasonable for the donee to ask for a copy of the original documentation *if the donee required evidence of his authority during the period that the power of attorney was in force*. If the donee became aggressive in his stance for a copy, then Steve suggested that we persuade our client that the client was not gaining a lot by requesting the Directors not provide a copy of the power of attorney and revocation. (After all they were factually issued in the first place).

Steve closed by saying that he considered our best stance at the moment was to say that the Directors were under no obligation to provide further copies of the power of attorney.

David Chalmers-Hunt.

JAG 01775

CONFIDENTIAL PURSUANT
TO SECTION 24 (d)
02863

**EXHIBIT___C__**

**EXHIBIT  D**



## Matheson Trust Company (Jersey) Limited

A member of the Jardine Matheson Group

P O Box 316                Telephone: 01534 886111
Jardine House              Facsimile: 01534 888118
1 Wesley Street            Telex:     4192012 JARJSY G
St Helier
Jersey JE4 8UD
Channel Islands

**Private and Confidential**

Mr Steven J Glusband                                     12 July 2000
Carter, Ledyard & Milburn
2 Wall Street                                            Our ref: JHP/PA1
New York
NY 10005                                                 Your ref: JAN06001
USA

**By facsimile and mail 001 212 732 3232**

*Dear Mr Glusband*

**Ryburn Limited v US Wireless Corporation et al**
**Crossgar Limited v US Wireless Corporation et al**
**Janvrin Holdings Limited v US Wireless Corporation et al**

I am writing to you in my capacity as one of the Directors of the above three companies, namely Ryburn Limited, Crossgar Limited and Janvrin Holdings Limited.

You will recall that when we last spoke over the telephone I informed you that, together with my co-Director Mr Melvyn Kalman, we would be contacting Dr Oliver Hilsenrath, the Chief Executive Officer of US Wireless Corporation ("USWC") with a view to establishing why Mr David Klarman, the General Counsel of USWC appeared unwilling to approve the removal of the Securities Act restrictive legend from Janvrin Holdings Limited's share certificate to enable the sale of Janvrin's holding of 367,200 shares of common stock of USWC. During that somewhat brief conversation you commented "I take my hat off to you." Consequently we believed that you clearly understood that we would be pursuing the matter and furthermore, that neither you or anyone else in your firm would be taking any action on behalf of the three companies concerned, and certainly not without prior consultation with us, the Directors.

We subsequently received two fax transmissions from William H Sloane, the first of which was thirty pages enclosing drafts of the Complaints in the matters involving Janvrin and Ryburn, and a letter dated 26th June, 2000 sent to Patricia A Murphy, Corporate Litigation Counsel for USWC re: Janvrin Holdings Limited. The second fax was fifteen pages in respect of a draft of the Complaint in the matter involving Crossgar Limited. This fax was also sent to Mr Haim Haruvi and in the covering fax Mr Sloane requested confirmation of certain facts concerning Crossgar, as well as copies of certain documents and other papers. These papers were not provided from this office and I can therefore only assume that you received them direct from Mr Haruvi.

As the Complaints were only drafts, as stated by Mr Sloane, I was surprised when the next communication I received in this matter was a fax dated 3rd July, 2000 from Beth L Applebaum of Lillick & Charles LLP, to which was attached a copy of a fax from her to Mr David Dahan and copies of the three Complaints that were filed on 30th June, 2000 according to her letter of that date, in the United States District Court Northern District, against USWC, Dr Oliver Hilsenrath and David Klarman.

Although we are Directors of the three Plaintiff companies, we received no communication from either yourself, William Sloane or anyone from Lillick & Charles LLP, as Attorneys for the Plaintiff of your intention to actually file these Complaints with the Court.

I should like to refer you to a previous telephone conversation I had with you approximately four weeks ago when you called me, I understand at the express wish of Mr David Dahan. During that conversation I advised you that Mr Dahan had no authority to give you or your firm instructions on behalf of the companies and that you should only act on the instructions of the Directors of the companies concerned. I also informed you that

A Trust Corporation registered in Jersey, Channel Islands. Registered No: 42712

**EXHIBIT** ___

the companies involved are in fact owned by Discretionary Trusts, not beneficially owned by Mr Dahan personally and for this further reason you could and should not act on Mr Dahan's instructions.

In the circumstances I am concerned that both your firm and Lillick & Charles LLP have taken the step of filing the three Complaints without any discussion and the express prior authority of the Directors of the Plaintiff companies. This is notwithstanding the fact that I signed three faxes on behalf of the companies concerned, dated 19th June, 2000 appointing your firm to act as Counsel in relation to matters concerning LSWC. The initiation of legal action through the US Court is a very serious step to take and I should therefore like to ask on whose authority and/or instructions you proceeded on behalf of the Plaintiff companies.

Secondly, I should be obliged if you would let me know what, if any, arrangements have been made concerning your firm's and Lillick & Charles LLP's legal and professional fees for drafting the three Complaints, filing the same with the Court and for dealing in the future with what could potentially be a lengthy and expensive action against USWC, Dr Oliver Hilsenrath and David Klarman as the Defendants.

Thirdly, in relation to the same matter, will you please provide me with an indication of the sum which is likely to be incurred in respect of legal and professional fees for dealing with these matters. At this point, I should like to stress that, not only have the Directors not instructed you to issue these proceedings against the Defendants, but neither have we discussed or agreed with you or your firm, your terms of engagement, including your fees.

As already mentioned, in our opinion these are all matters of a serious nature and must be addressed before any further action is contemplated.

In the meantime please ensure that Mr Sloane and Ms Applebaum are made aware that you are not authorised by us to proceed any further in relation to the action against USWC, Dr Oliver Hilsenrath and David Klarman without the express written authority and instructions of myself or Mr Melvyn Kalman as Directors of the three companies concerned, once our above concerns and queries have been answered satisfactorily.

I look forward to hearing from you shortly.

Yours sincerely

John H Perkins
Director

Melvyn Kalman
Director

cc: Mr David Dahan
    Mr Haim Haruvi
    Ms Beth Applebaum
    Adv. Tim Le Cocq

**EXHIBIT E**

FROM :

FAX NO. :

21 2000 08:30PM P1



Matheson Trust Company (Jersey) Limited

A Member of the Jardine Matheson Group

Memorandum

| | | |
|---|---|---|
| To | Celine Gimenez - c.c. Melvyn Kalman, David Chalmers-Hunt, Peter Zajac | 28 July 2000 |
| From | John H Perkins | JHP/MFE/CO857 |

**Oliver Hilsenrath and David Klarman**

Having identified a potential conflict of interest the Directors, JHP and MK, have taken advice from Ogiers & Le Masurier concerning our position acting as Officers of various BVI companies, including those of which the above-named are the beneficial owners and which entities own shares in US Wireless Corporation.

As a result, we have taken the decision to resign as Officers of the OH/DK owned companies and we will cease to provide any further services, including administration address, nominee shareholders, signatories over the accounts, etc.

OH was advised of our decision during a telephone conversation on 27 July and JHP will be writing formally to OH/DK requesting them to nominate alternative officers who we will appoint in our stead. There is, however, another option and it may be that the beneficial owners will request us to close down their companies altogether and transfer the assets out.

To the best of my recollection, OH beneficially owns Borazon Limited and Oliver Hilsenrath Family Investments Limited and DK owns KS Legal Consultants Limited (and possibly Craiglands Limited?) There are also at least two other entities which were formed last year at the request of DK, namely US Wireless International Inc and another BVI company (name to be identified).

In the light of current developments, I should be grateful if Celine would ensure that all of the companies' book-keeping records are posted 100% to date and also request Corporate Department to ensure that the statutory records are in order as we will either be transferring these cases out very shortly, or possibly winding them down, as mentioned above.

At the same time, Celine please check the outstanding fees' position and advise me of the outcome.

Thanks and regards

J. Perkins

Please also see attached copy faxes recently rec'd. per OH.

EXHIBIT  E

**EXHIBIT F**



25/08 '00 10:24 FAX 870938                                                        ☒001

  **Matheson Trust Company (Jersey) Limited**                    Facsimile

A Member of the Jardine Matheson Group

P O Box 316
Jardine House
1 Wesley Street
St. Helier
Jersey JE4 8UD
Channel Islands

**To**                    David Daham

**Facsimile Number**      00 380 572 196 802

**From**                  Melvyn Kalman

**Date**                  25 August 2000

**Our Ref**               MK/KBD

**Number of Pages**       2 (including this sheet)

**PRIVACY AND CONFIDENTIALITY NOTICE**
The information contained in this facsimile is intended for the named recipients only. It may contain privileged and confidential information and if you are not the intended recipient, you must not copy, distribute or take any action in reliance on it. If you have received this facsimile in error, please notify us immediately by telephone on 44 - 1534 - 888111 and return the original to the sender by mail. We will reimburse you for the postage and cost of the telephone call.

**Message**

**Dear David**

I have been very concerned that the legal dispute between Janvrin, Ryburn and Crosgar with Oliver and David K. may have created a conflict of interest in this office.

I have taken legal advice from Tim Le Cocq of Ogiers and he has confirmed that if this case goes to court we could be embarrassed. There is nothing illegal about providing management and advisory services to two parties involved in a dispute. However, I am advised that Courts everywhere do not approve of such a situation, as it is almost impossible to maintain a clear distinction between the two parties.

Having given the matter much thought I have decided to be totally on your side and to have nothing to do with Oliver or David. I have arranged to stop being a director on their companies and internally to have nothing to do with their management. Although John is on holiday this week and I am away next week, John will be doing the same. Someone else in the office will look after their activities.

As a result, I am not able to talk to you about any companies belonging to either Oliver or David. I would now ask you to understand my position and my wish not to do anything which would be attacked by Oliver's lawyers. Any such attack may prove costly.

A Trust Corporation registered in Jersey, Channel Islands. Registered No: 42712

1

**EXHIBIT** _F_

**EXHIBIT  G**

# INSINGER <sup>de</sup>BEAUFORT

Insinger Trust Company Limited

P.O. Box 316
Jardine House 2 Wesley Street
St Helier Jersey JE4 8UD
Channel Islands
Tel. +44 (0)1534 888 111

**FAX**

| | | |
|---|---|---|
| TO | : | Amos Bentzur |
| COMPANY | : | Attorneys at Law |
| FAX NUMBER | : | 00 972 3687 2255 |
| FROM | : | Linda de la Cour |
| SUBJECT | : | Aida Holdings Limited |
| OUR REFERENCE | : | LDC/1483 |
| DATE | : | 6 November 2000 |

**NUMBER OF PAGES** : 17

Dear Mr Bentzur

**AIDA HOLDINGS LIMITED**

My Director Melvyn Kalman has asked me to fax to you the attached documents in respect of the Power of Attorney on the above Company. Whilst writing I would like to advise that a Courier package is being forwarded to you in respect of the litigation.

Yours sincerely
Insinger Trust Company Limited

Linda de la Cour
Senior Administrator

The information contained in this facsimile message is intended only for the use of the person or entity to whom it is addressed and may contain information that is confidential and may be legally privileged and exempt from disclosure under applicable laws. If you read this message and are not the addressee you are notified that use, dissemination, distribution or reproduction of this message is prohibited. If you have received this message in error, please notify us immediately and return the original message to us.

Formerly Matheson Trust Company (Jersey) Limited
Registered in Jersey. Channel Islands, 42712

Fax +44 (0)1534 888 118
E-mail info@rstrust@je.insinger.com

EXHIBIT ___ 

**EXHIBIT  H**

# INSINGER ᵈᵉBEAUFORT

Insinger Trust Company Limited

P.O. Box 316
Jardine House 1 Wesley Street
St Helier Jersey JE4 BUD
Channel Islands
Tel. +44 (0)1534 888 111

**FAX**

| | | |
|---|---|---|
| TO | : | Glenn Westreich |
| COMPANY | : | Lillick and Charles |
| FAX NUMBER | : | 001 415 984 8300 |
| FROM | : | Linda de la Cour |
| SUBJECT | : | Litigation |
| OUR REFERENCE | : | LDC/1483 |
| DATE | : | 8 December 2000 |

**NUMBER OF PAGES** : 20

---

Dear Glenn

**Litigation Crossgar Limited/Ryburn Limited/Janvrin Holdings Limited**

Following a search through further files, Melvyn has asked me to forward the enclosed correspondence that he thinks may be of benefit for your meeting on Friday. I would appreciate if you would acknowledge receipt of these papers as they are relevant to the litigation.

Meanwhile Melvyn looks forward to hearing about a successful meeting.

With kind regards.

Yours sincerely
Insinger Trust Company Limited

Linda de la Cour
Senior Adminstrator

---

The information contained in this facsimile message is intended only for the use of the person or entity to whom it is addressed and may contain information that is confidential and may be legally privileged and exempt from disclosure under applicable laws. If you read this message and are not the addressee you are notified that use, dissemination, distribution or reproduction of this message is prohibited. If you have received this message in error, please notify us immediately and return the original message to us.

Formerly Matheson Trust Company (Jersey) Limited
Registered in Jersey, Channel Islands. 42712

Fax +44 (0)1534 888 118
E-mail infojrstrust@je.insinger.com

**EXHIBIT   H**

**EXHIBIT I**

## Rosenberg Alon, adv.

**From:**      Rosenberg Alon, adv. <alon@bentzurlaw.co.il>
**To:**        Glenn Westreich <gwestreich@lillick.com>
**Cc:**        <BAppelbaum@LILLICK.com>; David Dahan <dazid@isdn.net.il>
**Sent:**      רבמצד 19 שילש םוי 2000 18:36
**Subject:**   Telephone meeting

Dear Glenn,

Good Morning

I have talked with Amos about the scheduled telephone conference and we could do it either today (Tuesday) 11:00 (your time) or at 14:00 Wednesday (your time).

These are the following applicable telephone numbers:

**Amos's home phone -  00-972-3-6421021**
**Amos's mobile phone - 00-972-50-270800**

In addition, the following are several crucial points that Amos wishes to discuss with you:

1.   **Service** - can we make sure that if we agree to accept service by DD & HH the trial date shall be set before the end of the summer? (The options are due to expire on the 31st of July, 2001, hence the urgency) If not, is it wise to agree to such service before ensuring that any unwanted tricks pop up?

2.   **Injunction** - in relation to the motion to extend the expiration date of the Options, when do you think would be the best timing to do so. Our clients feel that due to extensive sale of shares by insiders as well as affiliates the matters have become urgent and they would like to put an emphasis on the fact that Oliver, Klarman and Co. are selling their shares with no restrictions (Global Technologies have sold over 1,100,000 shares during the time period of November/December alone, some of the acting directors as well as past directors from US Wireless have also disposed of a great number of their shares) whilst doing their utmost to prevent DD & HH from exercising their own right to sell their shares! Everybody else including them bringing the share to -+5$ per share, (bearing in mind that the initial filing by Janvrin, which was rejected, was when the stock was at $20)

3.   **Arbitration** - did you mention to Oliver's Counsel any of the "problematic Material" we might be holding before or during the Case Management Statement? If so, was there any reaction? (David would appreciate a full account of this procedure).

4.   **Settlement meeting** - as to a possible settlement meeting would you elaborate as to the discussion you had with the other party? And what would you recommend doing next about it? Should we first - file the above motion or would you advise to first initiate such settlement meeting and/or wait for a deposition timetable?
We feel, as you know, that DD & HH pressure should be mounted from all directions so that we don't find ourselves in the situation in which things would be in their favor with no way of "cashing" such award. (currently US Wireless has no funds, nor revenue, thus making the situation extremely urgent):

Finally, any issue that you have in mind, that needs to be discussed.

In addition, we are unaware as to the outcome of Friday's Case Management Conference, so if you could send (via email or fax) any court transcript or other written document that reflects the Statement's progress.

Sincerely,

Alon

Alon Rosenberg, adv.

Amos Bentzur & Co. Attorneys at Law
48 Derech Petach-Tikva st, Tel-Aviv 66184, Israel

EXHIBIT __I__

19/12/00