**EXHIBIT B**

1  ROGERS JOSEPH O'DONNELL & PHILLIPS
   J. MICHAEL MATTHEWS (State Bar No. 71848)
2  S. AMBER LEE (State Bar No. 197329)
   311 California Street
3  San Francisco, California 94104
   Telephone:  415.956.2828
4  Facsimile:  415.956.6457

5  Attorneys for Defendant
   OLIVER HILSENRATH
6

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
      RICHARD W. WIEKING
   Clerk, U.S. District Court
   Northern District of California

                              Deputy Clerk
Date  7 -18- 07

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  SECURITIES AND EXCHANGE           Case No. C-03-3252-WHA
    COMMISSION,
                                      **DECLARATION OF OLIVER
12              Plaintiff,            HILSENRATH IN OPPOSITION TO
                                      PLAINTIFF'S APPLICATION FOR**
13       vs.                          **ENTRY OF DEFAULT JUDGMENT
                                      AGAINST HILSENRATH**
14  OLIVER HILSENRATH, et al.,

15              Defendants.           Date:   June 23, 2005
                                      Time:  8:00 a.m.
16                                    Judge: Hon. William H. Alsup
                                      Courtroom:  9
17

18       I, Oliver Hilsenrath, declare as follows:

19           1.    I am an Israeli citizen and am one of the named defendants in the

20  above-entitled action.  I make the following statements of my own personal knowledge; if

21  called as a witness in this matter, I could and would testify on these matters exactly as set

22  forth below.

23           2.    I understand that plaintiff Securities and Exchange Commission

24  ("SEC") has taken the position that in October 2003, I was served with various documents

25  filed or issued in this case, including a copy of the SEC's complaint and summons, by a

26  process server at my residence in Tel Aviv, Israel.  That is simply not true.  As of today's

27  date, I have not been served, personally or otherwise, with a copy of the complaint or

28  summons filed or issued in this case.

                                                                           Page 1

1    3.    I have reviewed the delivery confirmation form presumably filled out

2    by the process server who claims to have served me. Aside from the obvious fact that I never

3    received any complaint or summons, as the process server and the SEC allege, the process

4    server's version of the alleged service could not have occurred.

5    4.    In October 2003, when the process server allegedly served me, my

6    family and I were living in a large apartment complex in Tel Aviv, Israel. The complex

7    consisted of several buildings and approximately 200 apartments. Our address was:

8    *Steimasky, Building 2, Apartment 42*

9    Our apartment complex had tight security, with a 24-hour guard and restricted access to any

10    non-resident. Because a high-profile Israeli politician resided in the complex, and generally

11    because of security concerns in Tel Aviv, the building, its guards and its tenants enforced a

12    strict security protocol, particularly for any non-resident of the building who wished to gain

13    entry.

14    5.    To attempt to contact any resident in the building, a visitor had to enter

15    the lobby of the building through secure doors, identify himself or herself to the guard, and

16    then identify the resident whom the person wished to visit. The visitor could go no further.

17    The guard would next contact the identified resident by Intercom and would inquire whether

18    the resident authorized the person's entry. Then, and only then, would the guard allow the

19    visitor access to the elevator leading to the apartments above. A visitor could not have gained

20    access by identifying another resident and then seeking to go to an apartment other than the

21    resident's, since the visitor could not go up without the permission of a resident, and no one

22    would have given permission to strangers to enter. Similarly, because of security concerns,

23    no one answered the door to a knock, since the failure of the guard to announce the visitor,

24    prior to that knock, would have been alarming.

25    6.    A visitor could not have gained access through the garage. The garage

26    door was controlled by a gate for which a tenant had to enter a remote wireless code to gain

27    access, and the garage gate was under video surveillance at all times. Moreover, no resident

28    would have allowed a stranger to enter the building as he/she pulled into the garage, for any

Page 2

1    unauthorized entry would have been an obvious and immediate security concern.

2           7.     Neither any member of my family nor I ever gave access, or was asked

3    to give access, to any process server.  Neither my wife nor any of my children would have

4    granted any stranger access to our building, let alone to our apartment.

5           8.     At no time was I "ducking" service of any pleading in this or any other

6    case. I simply did not know that the SEC had filed this action against me until November

7    2003, approximately one month after the alleged service occurred. By sheer chance, I came

8    across an entry in the online docket in the government's criminal case against me, which

9    indicated that an entry of default was being sought against me.  That was the first notice that I

10   had of this case. I immediately instructed my attorneys to investigate the case and to seek to

11   have my default set aside and accept service.

12          9.     Between December 2003 and January 2004, I and my American and

13   Israeli attorneys continued our efforts to have the SEC properly serve me with its complaint

14   and summons.  In December 2003, Robert Friese at Shartsis, Friese & Ginsburg LLP, and

15   Mike Shepard of Heller Ehrman, my attorneys in the United States, met with staff of the U.S.

16   attorney's office and also spoke to John Yun at SEC, in an effort to have my default set aside.

17   On December 18, 2003, Mr. Friese wrote to Mr. Yun, again, urging Mr. Yun to set aside the

18   default. A true and correct copy of Mr. Friese's December 18, 2003 letter is attached hereto

19   as **Exhibit A**. On December 23, 2003, Mr. Yun responded to Mr. Friese letter, indicating his

20   unwillingness to set aside the default.  A true and correct copy of Mr. Yun's December 23,

21   2003 letter is attached hereto as **Exhibit B**.

22         10.    On December 31, 2003, Eitan Maoz at Porfessor David Libai & Co., my

23   attorneys in Israel, wrote to Brian Zeitman, the division director at the Department of Legal

24   Aid, the Courts Administration, in Jerusalem. I understand that Mr. Zeitman and the

25   Department of Legal Aid is the entity responsible for executing service in Israel. A true and

26   correct copy of Mr. Maoz's December 31, 2003 letter is attached hereto as **Exhibit C**.

27         11.    On January 11, 2004, I personally wrote to Mr. Yun.  I informed him

28   again that I had not been served, and that I did not have a clear understanding of the SEC's

1  claims against me. I indicated my willingness to accept service and offered Mr. Yun the

2  option of serving me through my lawyers, by delivering the documents to Mr. Friese in the

3  United States or David Libai & Co. in Israel, both of whom were authorized to accept service

4  on my behalf. I provided Mr. Yun with the addresses for both attorneys. A true and correct

5  copy of my January 11, 2004 letter is attached hereto as **Exhibit D.**

6          12.    I understand that, also on January 11, 2004, prompted by Eitan Maoz's

7  letter of December 31, 2003 (Exhibit C to this declaration), Brian Zietman, the division

8  director at the Department of Legal Aid, wrote to the District Court for the Northern District

9  of California, requesting that the documents be re-sent to the Central Authority so that service

10  could be attempted again. A copy of Mr. Zietman's January 11, 2004 letter is attached hereto

11  as **Exhibit E.**

12          13.    In December 2004, I returned to the United States to actively participate

13  in defending myself against the criminal case brought against me by the United States

14  Attorney's Office. I wish to defend the instant civil action on the merits, and if given the

15  opportunity, intend to do so.

16

17          I declare under penalty of perjury that the foregoing is true and correct.

18  Executed this _9_ day of June, 2005, at _Danville_ California.

19

20

21                              Oliver Hilsenrath

22

23

24

25

26

27

28

Page 4.

# EXHIBIT A

# SHARTSIS, FRIESE & GINSBURG LLP

ROBERT CHARLES FRIESE
ARTHUR J. SHARTSIS
MARY JO SHARTSIS
DOUGLAS L. HAMMER
RONALD HAYES MALONE
JOEL ZELDIN
JOHN P. BROADHURST
DAVID R. KREMER
CHARLES R. RICE
ANTHONY B. LEUIN
ROBERT E. SCHABERG
TRACY L. SALISBURY
JEFFREY A. O'CONNELL
CAROLYN R. OOEHAN
JONATHAN M. KENNEDY
ADAM HARBER
STEVEN O. GASER
BARBARA W. STARMAN
ZEENA C. CHAN
GEOFFREY W. HAYNES
CHRISTOPHER J. ROWHURT
CAROLYN S. REISER
ROBERT CHARLES WARD
JAMES P. MARTIN
JAHAN P. RAISSI
FRANK A. CIALONE
JOHN F. MILANI
NEIL J. KOREN
ERICK C. HOWARD
ALISSA A. CRACKO
ANTHONY J. CALDWELL
AMY L. REIFFENREIDE
GREGG S. FARAPO
MILLIE LAUREN CROO
TRACY A. DONSEY
LATISHA R. BROWN
JAMES J. FROLIK
RICHARD F. MUNZINGER
CECILY D. FESTENKOUR
HANNAH R. DUNN
CHRISTINA R. MOGELSSON
MATTHEW J. OLOCK

EIGHTEENTH FLOOR
ONE MARITIME PLAZA
SAN FRANCISCO, CALIFORNIA 94111

TELEPHONE
(415) 421-8500

FACSIMILE
(415) 421-2922

WEBSITE
www.sfglaw.com

SENIOR COUNSEL
ALAN J. ROBIN

COUNSEL
MONIQUE V. ALONSO
WINNIFRED C. WARD
JOAN L. GRANT
ELLYN T. ROBERTS
MARY KAY KENNEDY
DONNA M. HEISLING
SUSAN M. LYDEMAN

December 18, 2003

*VIA FACSIMILE AND U.S. MAIL*

John Yun, Esq.
U.S. Securities and Exchange Commission
San Francisco District Office
44 Montgomery Street, 11th Floor
San Francisco, CA 94104-4613

Re:    *Securities and Exchange Commission v. Oliver Hilsenrath, et al.*
       USDC, Northern District of California, Case No. 3:03-cv-03252

Dear John:

    This letter follows our recent telephone conversations and meeting with staff of the U.S. Attorney's office, and responds to your voicemail of yesterday.

    As you know from our prior conversations, we have been approached by Dr. Hilsenrath to represent him separately, and have been exploring whether we could come into the SEC's case against him of record. Since we have not been able to come to an arrangement which allows us to appear of record, I suggested that we meet with representatives of both agencies and with Dr. Hilsenrath's criminal defense counsel, Michael Shepard of the Heller Ehrman law firm, to see if a negotiated resolution of the matter could be achieved. While that dialogue is ongoing, I understand from your voicemail message that the SEC is not willing to stay the civil action while the criminal action proceeds. We now understand that the prospect of Dr. Hilsenrath's not challenging the adequacy of service, but rather agreeing to be deemed served as of a mutually agreed date, is not something to which the SEC would agree. This is disappointing since I had hoped that Dr. Hilsenrath could avoid unnecessary motion practice, given what we understand is a real issue concerning whether effective service has been made.

    When Dr. Hilsenrath learned that the SEC was contending that service upon him had been made he contacted us to discuss our representing him. We agreed to do so only for limited purposes in the hope that either a negotiated resolution of both the civil and criminal matters

Dbtf!4;14.dw14363.X I B!!!!!Epdvn fou67!!!!!!Gjrhe!170l: 03116!!!!!Qbhf !8!pg2:

John Yun, Esq.
December 18, 2003
Page 2

could be worked out or, in the alternative, that an acceptable agreement allowing us to represent
him of record could be achieved. Under the circumstances he has asked us to assist him in
attempting to find other counsel, which we have not as yet been able to achieve. Our law firm
will agree to stay as counsel for purposes of the attempt to resolve both matters through
negotiation, a process which we hope to know the result of in the coming weeks.

Since you advised us yesterday that the only mechanism to eliminate the service of
process issue would be for Dr. Hilsenrath to move to set aside the default, we have forwarded
that information to him. While he is attempting to secure counsel of record in the matter, we
request that you not seek to reduce the default to judgment so as to allow Dr. Hilsenrath to
challenge the alleged service.

Concerning the response to be made to the presentation at the U.S. Attorney's office,
Dr. Hilsenrath expects to have something which substantially contradicts much of the
presentation. In the hope that this may allow for a more constructive resolution of this case than
engaging in motion practice, we look forward to being in touch with you and others in the very
near future. Given the complexity of the matter, and to avoid any misunderstanding, it may be
useful to have written clarification of your position, including reference to how long you would
be willing to defer the attempt to obtain judgment on the default. Thank you for your
cooperation.

Sincerely yours,

Robert Charles Friese

RCF:elw
cc:    Michael Shepard, Esq.
       Dr. Oliver Hilsenrath

# EXHIBIT B

Dbt f !4;14.dw 14363.X I  B!!!!!Epdvn f ou67!!!!!!Gjfhe!170! : 03116!!!!!Qbhf !: !pg2:



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**SAN FRANCISCO DISTRICT OFFICE**
44 MONTGOMERY STREET
SUITE 1100
SAN FRANCISCO, CALIFORNIA 94104

December 23, 2003

**By Telecopy**
Robert Charles Friese, Esq.
Shartsis, Friese & Ginsburg
One Maritime Plaza, 18ᵗʰ Flr.
San Francisco, CA 94111

        Re:    *S.E.C. v. Hilsenrath, et al.*
               *Civ. C-03-3252-WHA*

Dear Bob:

        Thank you for your letter of December 18, 2003. With respect to any motion by Mr. Hilsenrath to set aside the default, our position is that he must act diligently if he has any grounds for doing so. With respect to seeking a default judgment, the Commission does not currently anticipate having such a motion ready before January 29, 2004. If such a motion is ready before that date, we will – as a professional courtesy – advise you that the motion is going to be filed.

        On the issue of settlement, the Commission does not currently see the need to conduct negotiations in light of the entry of a default against Mr. Hilsenrath. Our participation in the December 10ᵗʰ meeting was for the limited purpose of assisting the United States Attorney in efforts to obtain Mr. Hilsenrath's voluntary return to this country. If he had agreed to return promptly to the United States with his assets, the Commission might have considered showing some flexibility with respect to lifting the default. Unfortunately, the discussions during that meeting did not give us much optimism that Mr. Hilsenrath intends to waive extradition.

        Please feel free to call me at (415) 705-2468 with any questions. Have a nice Christmas.

                                        Best regards,

                                        John

                                        John S. Yun
                                        District Trial Counsel

# EXHIBIT C

Dbt f !4;14 dw 14363 X | B!!!!!Epdvn f ou67!!!!!Gjme!170i: B116!!!!!Qbhf !22!pg2

**Prof. David Libai**

Advocates

Amot Mishpat Building, 8 Shaul Hamelech Blvd., Tel-Aviv 64733, Tel: 03-6090101, Fax: 03-6090077
e-mail: libai@libai-advocates.co.il

David Libai
Eitan Maoz
Daphne Libai
Iris Ben-Gad
Gil Eisher
Gali Pollack-Ron
Christina Hilou-Asaad
Tsachy Grossman
Ohad Gordon

Tel-Aviv, December 31, 2003
**By fax  02-6556846**
**Highly urgent**

Advocate Brian Zeitman
The Department of Legal Aid
The Courts Administration
22 Kanfei Nesharim street
Jerusalem

Dear Sir,

### Re.: Dr. Oliver Hilsenrath

I am approaching you on behalf of my client, Dr. Oliver Hilsenrath, in the following matter:

1. My client is a citizen and resident of Israel who lives in Tel-Aviv at his registered address – 42 Steimatzky street.

2. A few weeks ago, my client found out by chance while surfing the Internet, that a certain civil suit had been filed against him by the SEC authorities in the USA.

3. My client immediately contacted an attorney in the USA, who investigated the matter and discovered that the SEC authorities had indeed filed suit against Dr. Hilsenrath and that, according to the SEC, the legal documents had been served to Dr. Hilsenrath by means of legal aid in Israel.

4. The attorney further elicited that the SEC authorities have applied to the local court, or will do so in the near future, for it to grant a ruling in the absence of defense, and that the matter concerns a most significant suit of vast amounts.

Dbt f !4;14.dw 14363.X I B!!!!!Epdvn f ou67!!!!!Gjrhe!17 01. 03116!!!!!Qbhf !23!pg2:

**Prof. David Libai**
Advocates

5.  The SEC authorities rejected outright the American attorney's request that
    they refrain, in the meantime, from seeking a ruling in the absence of defense
    until the question of the delivery is cleared up, and they insist on continuing
    the procedure.

6.  Dr. Hilsenrath strongly denies that he or any of his family members ever
    received any process of court whatsoever in connection with the
    aforementioned suit. Until now, my client has no knowledge of what
    procedure is being taken against him, nor of the nature of the claims raised
    therein.

7.  Copies of the documents on which the SEC base its claims that the suit was
    filed to Dr. Hilsenrath, were attached to the material submitted to the
    American court, and have been brought to my attention. After examining
    them, it appears that the argument regarding service of process is based on a
    Confirmation of Delivery form, a copy of which is attached to my letter.

8.  This form is fundamentally flawed, and raises substantial question marks as to
    the execution of delivery:
    a.  The details of the courier who allegedly executed delivery do not
        appear anywhere on the form.
    b.  The form is unsigned.
    c.  None of the delivery details on the form, which could provide details
        of the process, are given in the accepted manner.
    d.  In the section of the form, where the details of the recipient and the
        name of the person delivering should appear, the following is written
        in handwriting: "I placed it in the postbox after the abovementioned
        woman refused to accept it".

9.  Since Dr. Oliver Hilsenrath is not a female, and since his wife has never
    accepted delivery of any document, and has certainly never refused to sign
    any document – it is difficult to assume that the anonymous courier did in fact
    reach the correct address and did indeed serve process.

Dbt f !4;14.dw 14363.X I  B!!!!!Epdvn-f ou67!!!!!!Gjrhe!1701: 03116!!!!!Qbhf !24!pg2:

**Prof. David Libai**
Advocates

10. Under the law, even if the anonymous courier did reach the correct address, it was still his legal obligation to furnish exact details of the woman who – allegedly – refused to sign the service of process, so that the matter can be investigated in the customary way.

11. In the circumstances of the matter, the aforementioned Confirmation of Delivery, does not, on its face, constitute proof of delivery and does not provide even minimal certainty regarding the execution of the delivery.

12. Since this is an extremely urgent matter, and in view of the fact that the SEC authorities on issuing a ruling without defense against a citizen and resident of Israel in connection with huge amounts – you are requested to urgently approach the authorities and to advise them that the matter of the delivery is being clarified, and that until otherwise informed, you cannot confirm that the delivery was lawfully executed.

13. The SEC will be able to save considerable time by serving the documents directly to our office, following which we will have them sent immediately to Dr. Hilsenrath. In the event that the authorities are not interested in serving process once again – I request that you advise us immediately of the details of that unknown courier who claims to have delivered the material to Dr. Hilsenrath, so I can question him in court in the framework of a process that we will instigate in this matter, in accordance with the stipulations of Regulation 491 of Civil Procedure – 1984. The a foregoing does not derogate from our abovementioned request that you urgently contact the SEC authorities advising them that an examination is now being held into the delivery, and that you are unable at the moment to confirm the correct serving of process.

For your most urgent attention.

Yours sincerely,

*Eitan Maoz*

Eitan Maoz, Advocate

3

Dbt f !4;14.dw 14363.X I  B!!!!!Epdvn f ou67!!!!!!Gjrhe!1701: 03116!!!!!Qbhf !25!pg2:

# EXHIBIT D

Dbt f !4;14.dw 14363.X I B!!!!!Epdvn f ou67!!!!!!Gjrhe!170!: 03116!!!!!Qbhf !26!pg2:

Dr. Oliver Hilsenrath
C/O Prof. David Libai & Co., Advocates
Amot Mishpat Building, 8 Shaul Hameleck Blvd., Tel-Aviv 64733, Tel: +972-3-6090101, Fax: +972-3-6090077

January 11, 2004

Mr. John Yun, Esq. - District Trial Attorney
U.S. Securities and Exchange Commission / San Francisco District Office
44 Montgomery Street, Suite 1100
San Francisco, California 94104
Tel: +1 415 705 2468

Re: SEC v. Hilsenrath et al., Civ. C-03-3252-WHA

Dear Mr. Yun,

In early November I accidentally found out from an open publication, of a claim that I was
served with a civil lawsuit by the SCC and that I have not responded accordingly.

First I would like to let you know that no service of any documents concerning the above was
ever handed to me. Therefore till this very day I do not have a clear and precise understanding
of the claims or charges brought against me in this action.

Immediately upon finding out that a claim of service exists, I have requested that a person
from the law firm Heller, Ehrman & McAuliffe be sent to the court in San Francisco to obtain
the relevant documentation and requested that Mr. Robert C. Friese, of Shartsis, Friese and
Ginsburg contact you personally and to arrange service.

To date I was not able to secure adequate legal representation in California, however I am
making efforts to obtain such representation soon. I am therefore contacting you personally
with the request to serve me in one of two reliable and possibly agreed methods, which would
allow me to get hold of the SEC's relevant documents and take the necessary steps to defend
myself.

These methods can be (1) delivery of documents to the office of Mr. Robert C. Friese of
Shartsis, Friese and Ginsburg in San Francisco (at One Maritime Plaza, 18th Flr., San
Francisco, CA 94111, or (2) delivery of documents to my attorneys in Israel: Professor David
Libai and Co. at: Amot Mishpat Building, 8 Shaul Hameleck Blvd., Tel-Aviv 64733, Tel:
+972-3-6090101.

As I assume that you are interested in a fair and comprehensive verification of the SEC's
concerns regarding US Wireless Corporation, I am sure that you will agree to one of the
above service methods, rather than to reducing this entire case to one of a disconnect in
international delivery of documents.

I also respectfully request that the Commission refrain from seeking a default judgment
before I receive the service package and have the chance to respond to the charges. If
however the Commission decides to file such motion, I request that you attach this letter to
the motion and any correspondence on this case (SEC v. Hilsenrath et al., Civ. C-03-3252-
WHA).

Very truly yours,

Dr. Oliver Hilsenrath

# EXHIBIT E

Dbt f !4;14.dw 14363.X I B!!!!!Epdvn f ou67!!!!!!Gjrhe!1701: 03116!!!!!Qbhf !28!pg2:



FILED

JAN 2 9 2004

## STATE OF ISRAEL
## DIRECTORATE OF COURTS

Jerusalem
11/01/04

Our file: 1-490/03

Richard W. Wieking
US District Court for the Northern District of California,
450 Golden Gate Avenue
San Francisco, California  94102
U. S. A.

03-3252 WHA

Dear Sir,

Subject: **Your request for Service of Documents abroad according to the Hague Convention of serice abroad of judicial and extrajudicial documents in civil or commercial matters, signed at the Hague, 15th November 1965**
Your request dated 21st August 2003

Further to my letter of 27th October 2003 confirming service of documents, please find attached a letter which I received from Adv. Eitan Moaz concerning your request for the service of documents on Mr. Oliver Hilsenrath. This letter is self explanatory.

I order to avoid a lengthly clarification process concerning the circumstances of the service of the documents on Mr Hilsenrath, I suggest that you re-issue the documents to my office and I will make sure that service of the documents to Mr. Hilsenrath will be immediately accomplished.

Sincerely ,

Brian Zietman,
Division Director,
Legal Assistance to Foreign Countries

CC to John Yun

Brian Zietman
Division Director
Legal Assistance to
Foreign Countries(1)

---

22 Kanfei Nesherim St., Jerusalem 95464, ISRAEL
Tel: (972)(2)-6556843, Fax: (972)(2)-6556846

Dbt f !4;14.dw 14363.X I  B!!!!!Epdvn f ou67!!!!!!Gjrhe!1701: 03116!!!!!Qbhf !29!pg2:

**Prof. David Libai**
Advocates
Amot Mishpat Building, 8 Shaul Hamelech Blvd., Tel-Aviv 64733, Tel: 03-6090101, Fax: 03-6090077
e-mail: libai@libai-advocates.co.il

David Libai
Eitan Maoz
Daphne Libai
Iris Ben-Gad
Gil Eshet
Gali Pollack-Ron
Christina Hilou-Asaad
Tsachy Grossman
Ohad Gordon

Tel-Aviv, December 31, 2003
**By fax  02-6556846**
**Highly urgent**

Mr. Brian Zeitman
The Department of Legal Aid
The Courts Administration
22 Kanfei Nesharim street
<u>Jerusalem</u>

Dear Sir,

### Re.: <u>Dr. Oliver Hilsenrath</u>

I am approaching you on behalf of my client, Dr. Oliver Hilsenrath, in the following matter:

1. My client is a citizen and resident of Israel who lives in Tel-Aviv at his registered address – 42 Steimatzky street.

2. A few weeks ago, my client found out by chance while surfing the Internet, that a certain civil suit had been filed against him by the SEC authorities in the USA.

3. My client immediately contacted an attorney in the USA, who investigated the matter and discovered that the SEC authorities had indeed filed suit against Dr. Hilsenrath and that, according to the SEC, the legal documents had been served to Dr. Hilsenrath by means of legal aid in Israel.

4. The attorney further elicited that the SEC authorities have applied to the local court, or will do so in the near future, for it to grant a ruling in the absence of defense, and that the matter concerns a most significant suit of <u>vast amounts</u>.

Dbt f !4;14.dw.14363.X I B!!!!!Epdvn f ou67!!!!!!Gjfhe!170!: 03116!!!!!Qbhf !2: !pg2:

**Prof. David Libai**
Advocates

5. The SEC authorities rejected outright the American attorney's request that they refrain, in the meantime, from seeking a ruling in the absence of defense until the question of the delivery is cleared up, and they insist on continuing the procedure.

6. Dr. Hilsenrath strongly denies that he or any of his family members ever received any process of court whatsoever in connection with the aforementioned suit. Until now, my client has no knowledge of what procedure is being taken against him, nor of the nature of the claims raised therein.

7. Copies of the documents on which the SEC base its claims that the suit was filed to Dr. Hilsenrath, were attached to the material submitted to the American court, and have been brought to my attention. After examining them, it appears that the argument regarding service of process is based on a Confirmation of Delivery form, a copy of which is attached to my letter.

8. This form is fundamentally flawed, and raises substantial question marks as to the execution of delivery:
    a. The details of the courier who allegedly executed delivery do not appear anywhere on the form.
    b. The form is unsigned.
    c. None of the delivery details on the form, which could provide details of the process, are given in the accepted manner.
    d. In the section of the form where the details of the recipient and the name of the person delivering should appear, the following is written in handwriting: "I placed it in the postbox after the abovementioned woman refused to accept it".

9. Since Dr. Oliver Hilsenrath is not a female, and since his wife has never accepted delivery of any document, and has certainly never refused to sign any document − it is difficult to assume that the anonymous courier did in fact reach the correct address and did indeed serve process.