**EXHIBIT D**

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California

_____
            Deputy Clerk
Date  7-18-07

FILED
JUN 1 8 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

PLAINTIFFS *IN PRO PER*

TEH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

HANA HILSENRATH AND OLIVER
HILSENRATH,

     Plaintiffs,

         v.

NIXON PEABODY LLP, GLENN
WESTREICH, BETH MITCHELL, AND
DOES 1-10,

     Defendants.

Case C 07 3193

OLIVER HILSENRATH DECLARATION IN
SUPPORT OF PLAINTIFFS' PETITION
FOR LEAVE TO FILE "COMPLAINT FOR
MALICIOUS PROSECUTION, CIVIL
CONSPIRACY AND EXTORTION"
PURSUANT TO CIVIL CODE §1714.10

    I, Oliver Hilsenrath, declare the following to be true under
penalty of perjury:

  The EXHIBITS listed below by numbers are true copies of pleadings,
documents and testimony obtained in the course of the following
litigations:

  1. Case No 3:03-cr-00213-WHA USA v. Hilsenrath, et al
  2. Case No 4:02-cv-01068-CW-BZ Janvrin Holdings Limited et al v.
     Hilsenrath et al

1

2          **LIST OF EXHIBITS: HILSENRATH ET AL V. NIXON ET AL**

3    **NO. OF EXHIBIT**

4    1.   2006 Declaration of Sean Broderick/Barry Portman – Federal
5         Public Defender re: meting of Westreich from Nixon Peabody
6         with the trust executives in London to retrieve Hilsenrath
7         confidential records as tool for extortion.

8
9    2.   2007 Declaration of David Dahan re: Nixon meeting with trust
         executives to retrieve Hilsenrath records with objective to
10        get Hilsenrath fired.

11

12   3.   2000 Westreich, Mitchell (Appelbaum) and Glusband's
13        itineraries of arrival to the London meeting re the extortion
         planning sessions.
14

15   4.   2000, November 6 – Cover page of the first package of
16        extortion documents for Westreich and Mitchell via Benzur (17
17        pages of Hilsenrath records) – before the London meeting.

18
19   5.   2000 December transfer of a second package of 21 pages of
         Hilsenrath records to Nixon (Lillick) and Beth Mitchell
20        (Appelbaum) with wishes of success to the extortion meting
21        with the US Wireless attorneys (same meeting referred to in
22        Rosenberg's letter below).

23
24   6.   2000 Letter of Rosenberg from Benzur office to Westreich
         asking if Westreich has already commenced the extortion and
25        asking what were the initial results.
26

27   7.   2001 Several kickback payments of $100,000 each to Nixon
28        Peabody (then Lillick and Charles) from Equity trust (then

Insinger de Beaufort) in the 2001 timeframe contemporaneous with the firing of Hilsenrath from post as CEO. Dyke was not a client of Nixon Peabody's but a "hub" in Equity Trust's control and identified as the alleged recipient of the extortion money.

8. 2005 Excerpts of the court reporter's transcript of a two day deposition of John Perkins, executive of Janvrin and Equity trust and Nixon, Westreich Mitchell head co-conspirator in the Hilsenrath extortion / malicious prosecution. The presiding Jersey judicial officer stops the deposition on ground of Perkins's self-incrimination.

9. 2006 Letter of AUSA Laurel Beeler to DOJ/OIA requesting to find the extortion documentation at Equity Trust (Janvrin's host) – Nixon's co-conspirators.

10. 2007 Letter of Equity to the Jersey Attorney General stating that the extortion documents cannot be found at Equity Trust (Janvrin's host) anymore.

11. 2002 Excerpts of second amended complaint of Janvrin et al against Hilsenrath et al. In this second phase of their malicious prosecutions Nixon et al are claiming that they had no knowledge of an internal investigation of Hilsenrath by US wireless when entering into the extorted settlement. The internal investigation was none but the one they themselves instigated.

12. 2007 CMC statement of Westreich from Nixon Peabody announcing that his clients, Janvrin et al, all Equity Trust entities, are defunct since 2006.

1   13. 2007 Order of Judge Claudia Wilken dismissing the *Janvrin* case
2         for failure of the plaintiff to prosecute or to comply with an
3         order of the court (no-show) of Janvrin et al in court (found
4         to be defunct since a year earlier) and entering default as to
           the Hilsenrath counterclaim.

Dated: June 18, 2007

         Respectfully submitted,

         OLIVER HILSENRATH

1
2
3
4
5
6
7
8
9

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  JANVRIN HOLDINGS LTD. et al.,            )   No. 4:02-cv-01068
                                            )
11         Plaintiff,                       )   DECLARATION OF SEAN
                                            )   BRODERICK
12      v.                                  )
                                            )
13                                          )
    OLIVER HILSENRATH, et al.,              )
14                                          )
15         Defendant.                       )
    _____)
16

17  I, Sean Broderick, declare the following to be true under penalty of perjury:

18  1.  I am a paralegal employed by the Federal Public Defender, Northern District of
19      California. I have also previously worked as a professional investigator;

20  2.  In May 2006, I was assigned to assist AFPD Steven Kalar in the defense of Oliver
21      Hilsenrath in the case of *United States v. Oliver Hilsenrath*, CR 03-0213 WHA;

22  3.  On May 24 and 25th, Mr. Kalar and I interviewed David Dahan in London, England;

23  4.  During these interviews, Mr. Dahan described a meeting in London that took place
24      in late 2000;

25  5.  Mr. Dahan explained that the purpose of this London meeting was to prepare for
26      civil litigation involving the trusts and Oliver Hilsenrath;

27  6.  Mr. Dahan attended this 2000 London meeting;

28  7.  Mr. Dahan stated that Melvyn Kalman from the Jersey trust attended the first London

*Janvarin*, CR 4:02-cv-01068
BRODERICK DECL
RE: DAHAN AND LONDON MEETINGS



meeting;

8. Mr. Dahan stated that Glenn Westreich – an attorney for the Jersey trust from Nixon Peabody – attended this London meeting;

9. Mr. Dahan stated at that 2000 London meeting, he was aware that Kalman gave private documents from a trust associated with Hilsenrath to Glenn Westreich;

10. Mr. Dahan stated he inquired about this release of these documents to Westreich, and that Mr. Kalman instructed him to mind his own business. Mr. Dahan stated that Kalman explained it was Kalman's ultimate decision on how to protect the trusts;

11. Mr. Dahan said that he was aware that Glenn Westreich took copies of these private trust papers disclosed by Kalman back to the United States;

12. Mr. Dahan stated that he was aware that Westreich showed these trust documents to Patricia Murphy – counsel for U.S. Wireless – and demanded a settlement in a civil action.

Respectfully submitted,

Dated: March 13, 2007

                                           BARRY J. PORTMAN
                                           Federal Public Defender
                                         . Northern District of California

                                           SEAN BRODERICK
                                           Paralegal

OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
oliver_hilsenrath@sbcglobal.net

COUNTERCLAIMANT *IN PRO PER*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANVRIN HOLDINGS LTD et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DR. OLIVER HILSENRATH, et al.<br><br>Defendants.<br>_____<br>HANA AND OLIVER HILSENRATH<br><br>Counterclaimants,<br><br>v.<br><br>JANVRIN HOLDINGS LTD et al.,<br><br>Counter-Defendants. | Case No. C 02-1068 CW (BZ)<br><br><br>**DECLARATION OF DAVID DAHAN** |

I, David Dahan, declare the following to be true under penalty of perjury:

1.  I am a financial advisor and had a financial interest in Janvrin in the relevant timeframe of November 2000- June 2001.

2.  In May 2006, I was contacted by the office of the federal public defender in San Francisco to testify on events preceding the collapse of US Wireless Corporation. I agreed to meet with Mr. Kalar and Mr. Broderick assigned to the case and I provided the following information which I declare to be true and accurate:

3. Between November 25 and December 1, 2000 I participated at a strategy meeting on the Janvrin v. US Wireless and Hilsenrath case at the Shaw Park Plaza Hotel in London.

4. Present at the meeting were officers of Equity Trust (Insinger de Beaufort - at that time) Melvyn Kalman and John Perkins and their attorneys in that case from Nixon Peabody of California, Glenn Westreich and Beth Appelbaum.

5. I was present and represented by my personal attorney Amos Ben-Zur.

6. At the meeting Kalman and Perkins discussed and transferred confidential personal files of Oliver Hilsenrath and his family to the Nixon Peabody attorneys for Janvrin. These files were obtained from the Hilsenrath family trusts also held with Equity Trust (or Insinger de Beaufort at that time).

7. Those files included primarily the records of the trust companies by the name of Aida/Borazon and Oliver Hilsenrath Family Investments Limited (OHFI) in which the Hilsenraths were holding significant US Wireless stock. The Equity Trust officials and I were all well aware of the legitimate origins of the Hilsenrath stock held in those trusts.

8. The abovementioned confidential Hilsenrath records were handed to the Nixon Peabody attorneys with the objective to impeach Hilsenrath with his holdings in offshore trusts and get CEO Hilsenrath fired. Hilsenrath was identified as the primary hurdle in the Janvrin litigation.

9. My personal attorney, Mr. Ben-Zur voiced the warning that the transfer of confidential records was "playing with fire" and could backfire to destroy US Wireless and result in everybody's loss. Mr. Kalman explained however that it was his decision on how to best protect the interests of Janvrin, Ryburn and Crossgar.

2



10. Mr. Kalman arranged photocopies of the Aida/Borazon; OHFI, etc. confidential Hilsenrath files at the hotel's business lounge and handed them to the Nixon Peabody attorneys for Janvrin – to take to the United States.

11. Glenn Westreich took the copies of the Hilsenrath records to the United States and reported to me that he presented them to US Wireless outside counsel Joshua Kolton and to Patricia Murphy, in house counsel for the US Wireless Board of Directors, at the following Case Management Conference in December 2000.

Respectfully submitted

Dated: April 28, 2007

David Dahan

**From:**    "Beth Appelbaum" <BAppelbaum@LILLICK.com>
**To:**    <haimhar@hotmail.com>; <dazid@isdn.net.il>
**Cc:**    "Glenn Westreich" <GWestreich@LILLICK.com>
**Sent:**    Thursday, November 16, 2000 3:55 PM
**Subject:**    Itinerary

Haim and David,

Glenn and I will be arriving at London Heathrow at 10:30 am on Thurs., November 30, 2000 on Virgin Atlantic flight #20. We will be leaving London on Dec. 5, 2000 at 11:00 am. Our flights are refundable so we can change them, assuming availability. I spoke with Steve Glusband earlier today and he thinks he will be meeting us in London on December 1 or December 2.

Thanks,
Beth

Beth Appelbaum
bappelbaum@lillick.com





## INSINGER *de* BEAUFORT

**Insinger Trust Company Limited**
P.O. Box 316
Jardine House 1 Wesley Street
St Helier Jersey JE4 8UD
Channel Islands
Tel. +44 (0)1534 888 111

**FAX**

| TO | : Amos Bentzur |
| COMPANY | : Attorneys at Law |
| FAX NUMBER | : 00 972 3687 2255 |
| FROM | : Linda de la Cour |
| SUBJECT | : Aida Holdings Limited |
| OUR REFERENCE | : LDC/1483 |
| DATE | : 6 November 2000 |

**NUMBER OF PAGES** : 17

Dear Mr Bentzur

**AIDA HOLDINGS LIMITED**

My Director Melvyn Kalman has asked me to fax to you the attached documents in respect of the Power of Attorney on the above Company. Whilst writing I would like to advise that a Courier package is being forwarded to you in respect of the litigation.

Yours sincerely
Insinger Trust Company Limited

*[signature]*

Linda de la Cour
Senior Administrator

The information contained in this facsimile message is intended only for the use of the person or entity to whom it is addressed and may contain information that is confidential and may be legally privileged and exempt from disclosure under applicable laws. If you read this message and are not the addressee you are notified that use, dissemination, distribution or reproduction of this message is prohibited. If you have received this message in error, please notify us immediately and return the original message to us.

Formerly Matheson Trust Company (Jersey) Limited
Registered in Jersey, Channel Islands, 42712

Fax +44 (0)1534 888 118
E-mail infojrstrust@je.insinger.com

Exhibit 4

# LILLICK & CHARLES LLP

*TWO EMBARCADERO CENTER, SUITE 2700*
*SAN FRANCISCO, CA 94111-3996*
Phone:(415) 984-8200 • Fax: (415) 984-8300

December 14, 2000

## *FAX TRANSMITTAL*

Re:   **U.S. Wireless adv. Janvrin Holding Limited, et al.**
      **Our File No. 13698 110558**

| FROM: | Beth L. Appelbaum, Esq. | PHONE: | (415) 984-8440 |
|---|---|---|---|
| TO: | Mr. Amos Ben Sur | PHONE: | 011-972-3-687-2030 |
| | | FAX: | **011-972-3-687-2255** |
| TO: | Mr. David Dahan | FAX: | **011-380-572-196-802** |
| | | PHONE: | 011-380-572-196-801 |
| TO: | Mr. Haim Haruvi | FAX: | **011-972-3-643-0852** |
| | | PHONE: | 011-380-572-196-801 |

IF THERE ARE ANY QUESTIONS REGARDING THIS FAX, PLEASE CONTACT THE LILLICK & CHARLES LLP FAX DESK AT (415) 984-8355.

**No. of pages including this:** 21

**Originals will not follow.**

**MESSAGE:**

291102.1

CONFIDENTIALITY NOTICE: THE INFORMATION CONTAINED IN THIS FAX FROM THE LAW FIRM OF LILLICK & CHARLES LLP MAY BE CONFIDENTIAL AND ALSO MAY BE LEGALLY PRIVILEGED AS AN ATTORNEY-CLIENT COMMUNICATION. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE ADDRESSEE, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER THIS FACSIMILE TO ITS INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, DISCLOSURE, COPYING OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

For Lillick Use: Sent By: _____ Date: _____ Time: _____ am/pm    File #: 169044 / 916    110558

Exhibit 5



**INSINGER** <sup>de</sup>**BEAUFORT**

Insinger Trust Company Limited

**FAX**

| | | |
|---|---|---|
| TO | : | Glenn Westreich |
| COMPANY | : | Lillick and Charles |
| FAX NUMBER | : | 001 415 984 8300 |
| FROM | : | Linda de la Cour |
| SUBJECT | : | Litigation |
| OUR REFERENCE | : | LDC/1483 |
| DATE | : | 8 December 2000 |

P.O. Box 316
Jardine House 1 Wesley Street
St Helier Jersey JE4 8UD
Channel Islands
Tel. +44 (0)1534 888 111

**NUMBER OF PAGES : 20**

Dear Glenn

**Litigation Crossgar Limited/Ryburn Limited/Janvrin Holdings Limited**

**Following a search through further files, Melvyn has asked me to forward the enclosed
correspondence that he thinks may be of benefit for your meeting on Friday. I would
appreciate if you would acknowledge receipt of these papers as they are relevant to the
litigation.**

**Meanwhile Melvyn looks forward to hearing about a successful meeting.**

With kind regards,

Yours sincerely
Insinger Trust Company Limited

Linda de la Cour
Senior Administrator

The information contained in this facsimile message is intended only for the use of the person or entity to whom it is addressed and
may contain information that is confidential and may be legally privileged and exempt from disclosure under applicable laws. If you
read this message and are not the addressee you are notified that use, dissemination, distribution or reproduction of this message
is prohibited. If you have received this message in error, please notify us immediately and return the original message to us.

Formerly Matheson Trust Company (Jersey) Limited
Registered in Jersey, Channel Islands, 42712

Fax +44 (0)1534 888 118
E-mail info@trust@je.insinger.com

## Rosenberg Alon, adv.

**From:**  Rosenberg Alon, adv. <alon@bentzurlaw.co.il>
**To:**  Glenn Westreich <gwestreich@lillick.com>
**Cc:**  <BAppelbaum@LILLICK.com>; David Dahan <dazid@isdn.net.il>
**Sent:**  רבמצד 19 שישי םוי 2000 18:36
**Subject:**  Telephone meeting

Dear Glenn,

Good Morning

I have talked with Amos about the scheduled telephone conference and we could do it either today (Tuesday) 11:00 (your time) or at 14:00 Wednesday (your time).

*These are the following applicable telephone numbers:*

**Amos's home phone -  00-972-3-6421021**
**Amos's mobile phone - 00-972-50-270800**

In addition, the following are several crucial points that Amos wishes to discuss with you:

1.  **Service -** can we make sure that if we agree to accept service by DD & HH the trial date shall be set before the end of the summer? (The options are due to expire on the 31st of July, 2001, hence the urgency)  If not, is it wise to agree to such service before ensuring that any unwanted tricks pop up?

2.  **Injunction -** in relation to the motion to extend the expiration date of the Options, when do you think would be the best timing to do so. Our clients feel that due to extensive sale of shares by insiders as well as affiliates the matters have become urgent and they would like to put an emphasis on the fact that Oliver, Klarman and Co. are selling their shares with no restrictions (Global Technologies have sold over 1,100,000 shares during the time period of November/December alone, some of the acting directors as well as past directors from US Wireless have also disposed of a great number of their shares) whilst doing their utmost to prevent DD & HH from exercising their own right to sell their shares!  Everybody else including them bringing the share to -+5$ per share. (bearing in mind that the initial filing by Janvrin, which was rejected, was when the stock was at $20)

3.  **Arbitration -** did you mention to Oliver's Counsel any of the "problematic Material" we might be holding before or during the Case Management Statement?  If so, was there any reaction? (David would appreciate a full account of this procedure).

4.  **Settlement meeting -** as to a possible settlement meeting would you elaborate as to the discussion you had with the other party?  And what would you recommend doing next about it?
Should we first - file the above motion or would you advise to first initiate such settlement meeting and/or wait for a deposition timetable?
We feel, as you know, that DD & HH pressure should be mounted from all directions so that we don't find ourselves in the situation in which things would be in their favor with no way of "cashing" such award. (currently US Wireless has no funds, nor revenue, thus making the situation extremely urgent).

Finally, any issue that you have in mind, that needs to be discussed.

In addition, we are unaware as to the outcome of Friday's Case Management Conference, so if you could send (via email or fax) any court transcript or other written document that reflects the Statement's progress.

Sincerely,

Alon

Alon Rosenberg, adv.

Amos Bentzur & Co.  Attorneys at Law
48 Derech Petach-Tikva st, Tel-Aviv 66184, Israel


Exhibit 6  19/12/00

**Dyke payments to NIXON**

Various payments received by NIXON directly and indirectly from Dyke Limited in the relevant timeframe of the USWC scandal: Spring – Summer 2001



| Account Number: | 1028-501^749 | THE ROY_L BANK OF SCOTLAND |
| Date: | 13/06/20u1 | _ TERNATIONAL |
| Our Reference: | 5362408 | |

Jersey Branch,
PO Box 64,
71 Bath Street, St. Helier,
Jersey, JE4 8PJ.
Channel Islands.
Tel: 01534 285200, Fax: 01534 285222.
24 Hour Telephone Banking: 01534 724165.

**INSINGER TRUST COMPANY LIMITED**
**P O BOX 546**
**28-30 THE PARADE**
**ST. HELIER**
**JERSEY  JE4 8XY**

## WE CONFIRM THE FOLLOWING PAYMENT ON YOUR BEHALF ON 13/06/2001

| | |
|---|---|
| WE SHALL DEBIT: | USD    100,000.00 |
| VALUE DATE | 13/06/2001 |
| OUR CHARGES OF: | USD        54.94 |
| FOR | SWIFT CHARGE |
| FROM: | 1028-50181249      USD<br>DYKE LIMITED |
| BENEFICIARY DETAILS: | 200001766<br>LILLICK & CHARLES GENERAL ACCOUNT |
| HELD AT: | CITIBANK FSB<br>SAN FRANCISCO |
| PAID VIA: | HARRIS BANK INTERNATIONAL<br>NEW YORK |
| OTHER INSTRUCTIONS: | TT LILLICK & CHARLES |

*posted*
*AC/*
*20/6/01*

This confirmation does not require a signature

3717

Account Type: Cash Management Account
Account Number: 1028-501 249
Currency: U.S. DOLLAR
Date: 02/07/2001

**THE ROYAL BANK OF SCOTLAND**
INTERNATIONAL

*Jersey Branch,*
*PO Box 64,*
*71 Bath Street, St. Helier,*
*Jersey. JE4 8PJ.*
*Channel Islands.*
*Tel: 01534 285200. Fax: 01534 285222.*
*24 Hour Telephone Banking: 01534 724363.*

INSINGER TRUST COMPANY LIMITED
P O BOX 546
26-30 THE PARADE
ST. HELIER
JERSEY JE4 8XY

| | |
|---|---|
| Statement Number: | 007 Of 2001 |
| Opening Balance: | 36,973.30CR |
| Total Paid In: | 273,030.92CR |
| Total Withdrawn: | 246,368.99DR |
| Closing Balance: | 63,635.23CR |

| 2001 | Transactions: | Value Date: | Withdrawn: | Paid In: | Balance: |
|---|---|---|---|---|---|
| 31-May | BALANCE FORWARD | | | | 36,973.30CR |
| 06-Jun | OPO- PELICAN CONSULTING | | 20,000.00 | | |
| | OUR REFERENCE - 5325787 | | | | |
| 06-Jun | CHG- SWIFT CHARGE | | 56.51 | | 16,916.79CR |
| | OUR REFERENCE - 5325787 | | | | |
| 07-Jun | TRF- OJY/C01280 | | 200.00 | | 16,716.79CR |
| | OUR REFERENCE - 5334044 | | | | |
| 13-Jun | REV- TRF- DUPLICATE PYT | 06-Apr | 72,000.00 | | |
| | OUR REFERENCE - 5058549 | | | | |
| 13-Jun | TRF- DUPLICATE PYT | 06-Apr | | 72,000.00 | |
| | OUR REFERENCE - 5058549 | | | | |
| 13-Jun | CHG- INWARD PAYMENT CHG | 12-Jun | 9.61 | | |
| | OUR REFERENCE - 5361317 | | | | |
| 13-Jun | IPO- /RFB/SWF OF 01/06/12 | 12-Jun | | 100,000.00 | |
| | OUR REFERENCE - 5361317 | | | | |
| 13-Jun | OPO- TT LILLICK & CHARLES | | 100,000.00 | | |
| | OUR REFERENCE - 5362409 | | | | |
| 13-Jun | CHG- SWIFT CHARGE | | 54.94 | | 16,652.24CR |
| | OUR REFERENCE - 5362409 | | | | |
| 14-Jun | TRF- djy/co1483 | | | 100,000.00 | |
| | OUR REFERENCE - 5368752 | | | | |
| 14-Jun | TRF- OJY/C012B0 | | 50,000.00 | | 66,652.24CR |
| | OUR REFERENCE - 5368775 | | | | |
| 22-Jun | OPO- TT V MARGARYTA | | 1,000.00 | | |
| | OUR REFERENCE - 5410209 | | | | |
| 22-Jun | CHG- SWIFT CHARGE | | 24.04 | | 65,628.20CR |
| | OUR REFERENCE - 5410209 | | | | |

**For your convenience, statements now show details of fixed contracts at each renewal.**

MMD - Money Market Deposit  CHG - Charges  TRF - Internal Transfer  OPO - Outward Payment  INT - Interest  IPO - Inward Payment
CR - Credit Balance  DR - Debit Balance  REV - Reversal  FX - Foreign Exchange  D/D - Direct Debit
BAC - Automated Credit  CHQ - Cheque  S/O - Standing Order  BGC - Bank Giro Credit  DFT - Draft Issue

Note: Unless otherwise stated, value date = transaction date

3712

DATE RECONCILED 4 9 01
RECONCILED BY
REVIEWED BY
PRINT ATTACHED

# INSINGER *de*BEAUFORT

**FILE NOTE**

AUTHOR : Linda de la Cour

~~TELEPHONE CONVERSATION WITH~~
DATE : 17/5/01.

CLIENT: Dyke Ltd.

From 994,000 received in to Dyke
pay as follows. from RBSI Bank A/c.

1. 100,000 to Janunin. —7 to Lillick + Charles.
2. 447,000 to Rockvale.
3. 400,000 t. S.S.B A/c Dyke.

1056

SIGNED

# INSINGER deBEAUFORT

## MEMO

TO      : Linda de la Cour
FROM    : Melvyn Kalman
DATE    : 17 May 2001

Please note that an amount of $994,000 is being transferred to Dyke Limited and can be treated as income, i.e. consultancy fees.

Please arrange for $100,000 to be transferred to Janvrin and thereafter, for Janvrin to pay $100,000 to Lillick & Charles.

Please then transfer from Dyke an amount of $447,000 to Rockvale.

Dyke then to transfer $400,000 to Solomon Smith Barney.

Melvyn Kalman

actioned 17/5/01.

**RKV591**

```
1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                     SAN FRANCISCO DIVISION

4

5    - - - - - - - - - - - - - - - )

6    UNITED STATES OF AMERICA,        )

7               Plaintiff,            )

8                                     )   CASE NO.

9    V.                           )   CR 03-0213 WHA

10                                    )

11   OLIVER HILSENRATH,               )

12              Defendant.            )

13   - - - - - - - - - - - - - - - )

14

15

16            DEPOSITION OF JOHN HENRY PERKINS

17                FRIDAY, JULY 29, 2005

18            PAGES 275 - 507; VOLUME 2

19

20

21            BEHMKE REPORTING & VIDEO SERVICES

22            BY:  PAULA S. BEHMKE, CSR NO. 6284

23                          1320 ADOBE DRIVE

24                PACIFICA, CALIFORNIA 94044

25                          (650) 359-3201
```

275



1

2

3

4

5

6

7

8     Deposition of JOHN HENRY PERKINS, taken on behalf of

9     Plaintiff, at Law Officers' Department, Morier House,

10    St. Helier, Jersey, Channel Islands, commencing at

11    9:05 A.M., FRIDAY, JULY 29, 2005, before Paula S.

12    Behmke, Certified Shorthand Reporter No. 6284, pursuant

13    to Court Order.

14

15

16

17

18

19

20

21

22

23

24

25

276

```
1    APPEARANCES OF COUNSEL:

2    FOR PLAINTIFF, UNITED STATES OF AMERICA:

3        UNITED STATES DEPARTMENT OF JUSTICE

4        KEVIN V. RYAN, UNITED STATES ATTORNEY

5        BY:  LAUREL D. BEELER, ATTORNEY AT LAW

6        450 Golden Gate Avenue, 11th Floor

7        San Francisco, California 94102

8        Telephone:  (415) 436-6765

9

10   FOR DEFENDANT, OLIVER HILSENRATH:

11       ROGERS, JOSEPH, O'DONNELL & PHILLIPS

12       BY:  ROBERT J. BREAKSTONE, ATTORNEY AT LAW

13            EDWIN K. PRATHER, ATTORNEY AT LAW

14       311 California Street, 10th Floor

15       San Francisco, California 94104

16       Telephone:  (415) 956-2828

17

18   ALSO PRESENT:

19       VISCOUNT SUBSTITUTE PAUL MATTHEWS

20       OLIVER HILSENRATH

21       PHILLIP VILLANUEVA

22       JUAN SAAVEDRA

23       GORDON POLLOCK

24       JOSEPH DONOVAN, Videotape Operator

25
```

277

1    Q.    And Dahan and Haruvi, they signed as CEO and

2    president of Pelican Securities & Investments and

3    Pelican Consulting; is that correct?

4    A.    Yes.

5    Q.    So apparently Matheson had been taking legal

6    action against one of its own clients since at least

7    2001; isn't that correct?

8    A.    Yes.

9    Q.    And through that entire time it was acting as a

10   trustee over Mr. Hilsenrath's trust; isn't that correct?

11   A.    I believe that was the case, yes.

12   Q.    How can that be?

13   A.    Well, the only thing I would say is that -- and

14   again, it's not trying to pass the buck, but by that

15   time Mr. Kalman had taken primary responsibility for the

16   relationship.  We'd indicated previously there was a

17   conflict of interest.  And initially we, if you like,

18   came down on the side of continuing to act for Mr. Dahan

19   and Mr. Haruvi once realizing there was a conflict.

20   Q.    And I think we've established that the attorney

21   representing the plaintiffs was Mr. Glen Westreich; is

22   that correct?

23   A.    Yes.

24   Q.    I think we've established that you met Mr. Glen

25   Westreich in early 2000 at a meeting in London, in which

```
 1    yourself and certainly Mr. Kalman on the Matheson side
 2    were present, and Mr. Dahan and Mr. Haruvi, they were
 3    also present; isn't that right?
 4        A.    That's correct.
 5        Q.    And Mr. Hilsenrath did not attend that meeting.
 6        A.    He did not.
 7        Q.    Doesn't it appear that Insinger had a conflict
 8    in that it was supporting legal action by some of its
 9    clients against other of its clients?
10        A.    The way I see it, we didn't have much choice in
11    the matter.  We -- we were requested by clients to take
12    action.  They -- they, I believe, gave us sufficient
13    proof that they -- that they had a litigious action to
14    bring, and so we -- because we administered the
15    companies on their behalf, which owned the shares which
16    were the subject of the dispute, under legal advice we
17    felt we had to proceed with the action.
18        Q.    Did Matheson ever provide information to Dahan
19    or Haruvi or Westreich in relation to Oliver Hilsenrath
20    or any of his entities?
21        A.    Well, that's quite a sweeping question, any
22    information.  I don't think we gave -- I don't recall
23    giving specific information, such as has been referred
24    to before as in specific, you know, entire assets of
25    Aida Holdings.  For example, I don't think we would have
```

469

1    discussed anything in detail.

2        Q.   Was information about Oliver Hilsenrath

3    provided?

4        A.   I don't recall any -- anything specific.   I

5    don't really think that was the -- the subject of the

6    discussions.   The discussion was either how to recover

7    stock or options or perhaps proceeds which Mr. Dahan and

8    Mr. Haruvi thought they were entitled to.   So it was

9    really in that context.

10       Q.   Were any records relating to Oliver Hilsenrath

11   or his entities provided to any of those who attended

12   the meeting?

13       A.   Not to my recollection, no.

14       Q.   Just off the record for a second.

15            Back on the record.

16            I hand you what has been previously marked as

17   Defense Exhibit 212, which appears to be a fax to Amos

18   Bentzur, B-e-n-t-z-u-r, Attorney at Law, from Linda

19   de la Cour, Insinger de Beaufort; the subject is Aida

20   Holdings, and the date is 6 November 2000.

21       A.   Correct.

22       Q.   What does this refer to?  What attached -- what

23   attached documents are being provided to Mr. Amos

24   Bentzur?

25       A.   It says it's going to fax the attached

470

1    documents in respect of the power of attorney in

2    relation to Aida Holdings Limited.  And it goes on to

3    say that a courier package is being forwarded to

4    Mr. Bentzur in respect to the litigation.  And attached

5    are documents relating to Telecom Associates, which are

6    from the Matheson or the Equity records, stating that

7    Mr. Hilsenrath is the client, and giving the registered

8    and administration addresses, details of the officers,

9    and giving the financial year-end.  Just showing the

10    issued share capital, one share of Telecom Associates.

11         Then there's a -- internal ledger print showing

12    the various nominal accounts with some balances on.

13         It looks like similar information with respect

14    to Star Anise Limited.  There's a Morgan Stanley Dean

15    Witter statement for the month ending 30th April 2000 in

16    regard to Star Anise, showing holdings and daily

17    activity.

18         There's some statements in relation to Borazon

19    Limited, showing basic company information and also

20    internal nominal ledger prints with balances on.

21    There's a statement for Borazon Limited, showing

22    relationships in regard to other entities, including

23    Aida Holdings Limited, showing the -- the bankers being

24    Matheson Bank International, and also brokerage accounts

25    with Morgan Stanley, Stuart Coleman, and Spear Leeds

471

1    Kellog.

2         Do you want me to keep going?

3    Q.   No, that's all right.

4         Going back to the first page, Amos Bentzur,

5    wasn't he the attorney representing Dahan?

6    A.   Well, he -- he was known to David Dahan and he

7    was certainly present at the meeting in London.

8    Q.   So although the caption says it's Aida Holdings

9    Limited, and the paragraph that refers what's being

10   forwarded seems to indicate that "Kalman has asked me to

11   fax documents relating to a power of attorney on the

12   above company," would you agree with me that much of the

13   information that is being conveyed concern other

14   entities other than Aida Holdings?

15   A.   Yes, it does.

16   Q.   And also we have seen previously numerous --

17   numerous instructions from Mr. Hilsenrath to various

18   Matheson/Insinger trust people not to disclose

19   information to Mr. Dahan.  Isn't that an accurate

20   statement?

21   A.   Yes.

22   Q.   What is going on here?

23   A.   Well, all I can say is that I did not send that

24   fax, it was Linda de la Cour, and she sent it apparently

25   on the instructions of Mr. Melvyn Kalman.  I don't

472

1    recall having seen any of this documentation before, so

2    I wasn't aware of it.

3        Q.    You have worked in and on behalf of Matheson,

4    Insinger de Beaufort, and -- and Equity for how many

5    years, sir?

6        A.    Sixteen and a half.

7        Q.    You were aware of what the responsibilities and

8    fiduciary obligations are of trust companies --

9        A.    Yes.

10        Q.    -- isn't that correct?

11              Based upon your experience and your

12    professional dealings with many clients and trust

13    companies, do you believe that your employer had a

14    conflict of interest with Mr. Hilsenrath and breached

15    its fiduciary obligations as a result of the information

16    we have shown you here today?

17        VISCOUNT SUBSTITUTE MATTHEWS:    Could I just

18    interrupt at this point.    It seems to me -- I want to

19    find out the relevance of this in relation to these

20    particular criminal proceedings, and it seems to me that

21    you're asking this client to incriminate his former

22    employer.

23        MR. BREAKSTONE:    I'll be happy to discuss this with

24    you, but it's not a relevant objection.

25              Mr. Dahan and Mr. Haruvi were primary investors

473

**U.S. Departm    .t of Justice**

*United States Attorney*
*Northern District of California*

---

| | |
|---|---|
| *11th Floor, Federal Building* | *(415) 436-7200* |
| *450 Golden Gate Avenue, Box 36055* | |
| *San Francisco, California 94102-3495* | *FAX:(415) 436-7234* |

December 12, 2006

**BY FEDERAL EXPRESS, EMAIL AND FACSIMILE TO 202/514-0080**

Ruth Payne, Esq.
Office of International Affairs
United States Department of Justice
1301 New York Avenue N.W.
Washington, D.C. 20005

> Re:    Fourth Supplemental Request for Assistance in the Prosecution and Continuing
> Investigation of Oliver Hilsenrath

Dear Ms. Payne:

On August 9, 2006, Paul Joseph sent a third supplemental request to Jersey regarding additional documents that Oliver Hilsenrath's prior attorney, Steve Kalar, sent to me. Those documents (a) came from Equity Trust in Jersey, the Channel Islands, (b) were responsive to our original MLAT request dated November 10, 2003, and (c) were not produced by Equity to the Jersey authorities, and thus were not provided to us. The documents include admissions by trust officers that they had a conflict of interest with Hilsenrath and other trust clients, characterization of the trusts as tax exempt accounts, and possible impeachment material of our main cooperating witness, Klarman.

As a result, Equity Trust reviewed its files again, and produced more documents that the Jersey authorities sent to us in November.

Following that production, Oliver Hilsenrath provided me with the enclosed court pleading. Attached to that pleading are additional documents that are responsive to our original MLAT request and were not provided by Equity Trust. (Some of the attached documents were provided, and you can tell those documents because they bear the bates range JAG, which shows that they came from the Jersey Attorney General's Office.)

According to Oliver Hilsenrath, he has more documents that were provided in civil discovery that Equity Trust did not provide in response to the MLAT request. As I mentioned in my third request, the documents that he identifies are important to the investigation here, and the parties cross-examined witnesses during the depositions about topics in the documents.

1. Description of Evidence Sought.

Therefore, I submit this fourth supplemental request for documents that we asked for in our original MLAT requests and that were not provided. As you can see by the court pleading that Mr.

Letter to Ruth Payne, Esq.
December 12, 2006
Page 2

Hilsenrath provided, the allegation is that Equity Trust provided Mr. Hilsenrath's private information in an attempt to give other clients of Equity an upper hand in their litigation against Mr. Hilsenrath. Issues about those clients – according to Mr. Hilsenrath's former attorney Steve Kalar – are relevant to Mr. Hilsenrath's defense.

Accordingly, not only should Equity Trust provide the documents (including any additional documents), but also it should provide an explanation about why documents were not provided in response to our previous MLAT requests.

Rebecca Boxall of the Jersey Attorney General's Office sent a supplementary notice to Equity dated August 17, 2006. That notice sufficiently describes the documents that are responsive to our original MLAT requests, so I do not reiterate our request here. You may also refer to Paul Joseph's request to the Attorney General dated August 9, 2006, which reiterates all of our requests for documents. Ms. Boxall is familiar with our request, as we have spent substantial time coordinating with the Jersey authorities about the production of these documents.

    2. Depositions.

We previously conducted depositions, but – depending on how Equity Trust responds – we may want to depose the witnesses further. I refer to the witnesses and procedures set forth in our prior request for assistance dated April 19, 2005.

    3. Conclusion.

Equity Trust has not provided all documents that we requested in our prior requests for assistance. We look forward to receiving the missing information promptly and an explanation for the omission. Because we have a January 29, 2007, trial date, this matter is urgent. We appreciate how helpful the Jersey authorities have been, and how promptly they have been able to respond to our requests in the past.

                Very truly yours,

                KEVIN V. RYAN
                United States Attorney


                LAUREL BEELER
                Assistant United States Attorney

Enclosures



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*11th Floor, Federal Building*                              *(415) 436-6763*
*450 Golden Gate Avenue, Box 36055*
*San Francisco, California 94102*                        *FAX:(415) 436-7234*

April 9, 2007

Mr. Oliver Hilsenrath
822 Eastbrook Court
Danville, CA 94506

Dear Mr. Hilsenrath:

Enclosed is a copy of a letter dated March 5, 2007, from Equity Trust in response to the letters I sent them with your exhibits, asking for the file to be reviewed again in response to our MLAT request.

Very truly yours,

KEVIN V. RYAN
United States Attorney

LAUREL BEELER
Assistant United States Attorney

Enclosure



# EQUITY TRUST

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box S46
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email    infoje@equitytrust.com

Law Officer's Department
Morier House
St Helier
Jersey JE1 1DD

Attn. Rebecca Boxall

2 March 2007



LAW OFFICERS DEPT.

– 5 MAR 2007

Our ref    :    JEV/VLO
Subject    :    Investigation of Fraud (Jersey) Law, 1991 - Oliver Hilsenrath

Dear Ms Boxall

We refer to our letter dated 29 January 2007.

We have now completed a review of our files in relation to the documents exhibited to the Notice of Motion enclosed with your letter dated 3 January 2007, and advise as follows in further response in relation to Exhibit's E, G & H:

## Exhibit E

Whilst we have been unable to confirm whether this document was produced at an earlier date in response to a Production Notice or Supplementary Notice, to the best of our knowledge and belief we believe that a copy of a version of this document (which does not contain the hand written notes at the bottom of the page) was produced in response to the Supplementary Notice dated 13 October 2005.

## Exhibit G

We have been unable to locate this document on our files and therefore to the best of our knowledge we believe that the document has not been produced by Equity for this reason.

## Exhibit H

We confirm that we have been unable to locate this document on our files and therefore to the best of our knowledge we believe that the document has not been produced by Equity for this reason.

Yours sincerely

Justine Every
In-house Legal Counsel
Equity Trust (Jersey) Limited

Regulated by the Jersey Financial Services Commission and registered under the Financial Services (Jersey) Law 1998
Registration No. 57583



1   Glenn E. Westreich (State Bar Number: 100457)
2   Beth Appelbaum Mitchell (State Bar Number: 187460)
    NIXON PEABODY LLP
3   Two Embarcadero Center, Suite 2700
    San Francisco, CA 94111-3996
4   Telephone: (415) 984-8200
    Facsimile: (415) 984-8300
5
6   Attorneys for Plaintiffs
    JANVRIN HOLDINGS LIMITED,
7   CROSSGAR LIMITED and RYBURN LIMITED

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  JANVRIN HOLDINGS LIMITED,              Case No. C02 1068 CW
    CROSSGAR LIMITED, and RYBURN
12  LIMITED,                               **SECOND AMENDED COMPLAINT**

13                   Plaintiffs,           **[JURY TRIAL DEMANDED]**

14       vs.

15  DR. OLIVER HILSENRATH, DAVID
16  KLARMAN,  DALE STONE, BARRY WEST,
    DENNIS FRANCIS, DAVID ROBKIN, LOUIS
17  GOLM, JAMES S. EISENSTEIN, PATRICIA
    MURPHY, DONALD ZERIO, and ED
18  ROSNER,

19                   Defendants.

20

21       Plaintiffs Janvrin Holdings Limited, Ryburn Limited and Crossgar Limited (collectively

22  "Plaintiffs"), by their attorneys NIXON PEABODY LLP, as and for their Second Amended Complaint

23  ("Complaint") against Oliver Hilsenrath, David Klarman, Dale Stone, Barry West, Dennis Francis,

24  David Robkin, Louis Golm, James S. Eisenstein, Patricia Murphy, Donald Zerio, and Ed Rosner

25  ("Defendants"), allege as follows:

26

27

28

SECOND AMENDED COMPLAINT                    -1-
CASE NO. C02 1068 CW




1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

This is an action for fraud, misrepresentation, breach of fiduciary duties and securities violations arising out of Defendants' fraudulent acts and omissions in inducing Plaintiffs to enter into a Settlement Agreement whereby Plaintiffs released claims of a value in excess of $70 million against U.S. Wireless Corporation ("U.S. Wireless"), and Defendants Hilsenrath and Klarman, in exchange primarily for U.S. Wireless stock.

More particularly, unbeknownst to Plaintiffs, while negotiations headed by Defendants Murphy, Hilsenrath and Klarman leading to the execution of the Settlement Agreement were pending, U.S. Wireless's Board of Directors was conducting an investigation into misconduct by Defendants Hilsenrath and Klarman relating to misstatements within the Company's financial statements and securities filings, the results of which clearly would have a severely negative impact on the value of U.S. Wireless's stock. Instead of disclosing this material information to Plaintiffs, Defendants Murphy and Hilsenrath negotiated the terms of the Settlement Agreement that specifically omitted these material facts with the full knowledge and consent of U.S. Wireless's Board of Directors – despite the fact that the Board was simultaneously investigating Defendant Hilsenrath for improprieties. Further, after the results of the investigation that confirmed that Defendants Hilsenrath and Klarman had committed wrongful acts that materially overvalued U.S. Wireless stock, the Board of Directors took the affirmative step of approving and ratifying the Settlement Agreement under which Plaintiffs' primary consideration was U.S. Wireless stock. By ratifying the Settlement Agreement, the Board of Directors represented that the terms of the Settlement Agreement were true and that U.S. Wireless would perform in accordance thereunder.

In addition to these material omissions, Director Defendants, through their agent Defendant Murphy and through ratification of the Settlement Agreement, made express representations and warranties in the Settlement Agreement which were false, and consequently, failed to pay Plaintiffs the full amount required under the Settlement Agreement and also failed to register certain shares of Plaintiffs' stock as set forth in the Settlement Agreement.

SECOND AMENDED COMPLAINT                            -2-
CASE NO. C02 1068 CW

1  Glenn E. Westreich (State Bar Number: 100457)
   Beth L. Appelbaum (State Bar Number: 187460)
2  NIXON PEABODY LLP
   Two Embarcadero Center, Suite 2700
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300

5  Attorneys for Plaintiffs:
   JANVRIN HOLDINGS LIMITED,
6  CROSSGAR LIMITED and RYBURN LIMITED

7

8              UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA ~ OAKLAND DIVISION

10

11 JANVRIN HOLDINGS LIMITED, CROSSGAR        Case No.: C02 1068 CW
12 LIMITED, and RYBURN LIMITED,
13             Plaintiffs,                   **PLAINTFFS' CASE MANAGEMENT
                                             CONFERENCE STATEMENT**
14     vs.
15 DR. OLIVER HILSENRATH, et al.             Date:    March 2, 2007
                                             Time:    1:30 p.m.
16             Defendants.                   Place:   Courtroom 2
                                             Judge:   The Hon. Claudia Wilken
17
18 AND RELATED CROSS-CLAIMS.
19

20     Dr. Hilsenrath, now appearing in *Pro Per,* and counsel for Plaintiffs conferred telephonically

21 and *via* e-mail regarding the filing of case management conference statements on Thursday February

22 22, 2007. At Dr. Hilsenrath's request, the parties are submitting separate statements.

23     **Plaintiffs' Statement:**

24     Following the Case Management Conference on February 9, 2007, Plaintiffs' counsel

25 contacted in writing all persons known to have been associated with Janvrin Holdings Limited,

26 Crossgar Limited and Ryburn Limited to advise them of the status of these proceedings and this

27 Court's requirement that representatives of these three entities appear in person at the next Case

28 Management Conference on March 2, 2007. On February 15, 2007, Plaintiffs' counsel was contacted

1  by Victoria Loraine, who identified herself as in-house counsel at Equity Trust, a firm that has been

2  associated with the three Plaintiffs herein. Ms. Loraine advised that it was her understanding that

3  these three entities were "struck off the corporate register of the British Virgin Islands" in 2006. She

4  stated that she would look further into the matter of the current status of Janvrin Holdings Limited,

5  Crossgar Limited and Ryburn Limited, or any successors, and that she would endeavor to provide

6  relevant documents. To date, Plaintiffs' counsel has not heard back from Ms. Loraine, despite efforts

7  to follow-up on the preceding call, nor has there been a response from anyone else contacted

8  following the last hearing. Plaintiffs' counsel has not been able to obtain any other information

9  regarding the status of these entities. Likewise, as of this time, Plaintiffs' counsel has received no

10  information that any person intends to attend the Case Management Conference on March 2, 2007 on

11  behalf of any of the three Plaintiff entities.

12      In view of Plaintiffs' longstanding non-payment of attorneys' fees and the complete

13  communication breakdown between Nixon Peabody LLP and Plaintiffs and Counter-Claim

14  Defendants, Nixon Peabody intends to move immediately to withdraw as counsel for Janvrin

15  Holdings Limited, Crossgar Limited and Ryburn Limited.

16      It is submitted this matter should be continued for an additional forty-five (45) to sixty (60)

17  days to allow time for a hearing on notice of Nixon Peabody's motion to withdraw, and for Plaintiffs

18  or their successors to appear and advise the Court as to their intentions regarding this litigation.

Respectfully submitted,

NIXON PEABODY LLP

Dated: February 23, 2007

By: _____
Glenn E. Westreich
Attorneys for Plaintiffs Janvrin Holdings
Limited, Crossgar Limited and Ryburn
Limited

1  Glenn E. Westreich (State Bar Number: 100457)
   Beth L. Appelbaum (State Bar Number: 187460)
2  NIXON PEABODY LLP
   Two Embarcadero Center, Suite 2700
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300

5  Attorneys for Plaintiffs:
   JANVRIN HOLDINGS LIMITED,
6  CROSSGAR LIMITED and RYBURN LIMITED

**FILED**

**MAR 1 2 2007**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

7

8                  UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

10

11  JANVRIN HOLDINGS LIMITED, CROSSGAR          Case No.:  C02 1068 CW (BZ)
12  LIMITED, and RYBURN LIMITED,

13              Plaintiffs,                      **CASE MANAGEMENT ORDER**

14       vs.

15  DR. OLIVER HILSENRATH, et al.

16              Defendants.

17  ─────────────────────────────────

18  AND RELATED CROSS-CLAIMS.

19

20       A Case Management Conference in the above-referenced matter was held on Friday March 2,

21  2007.  Glenn E. Westreich, Nixon Peabody LLP, appeared on behalf of Plaintiffs and Counter-

22  Defendants.  Edward Donahue, Carlson Calladine & Peterson, LLP, specially appeared on behalf of

23  Nixon Peabody LLP.  Oliver Hilsenrath appeared in *Propia Persona*.

24       The Court, having ordered at the prior Case Management Conference held on February 9,

25  2007 that representatives of Plaintiffs and Cross-Defendants Janvrin Holdings Limited, Crossgar

26  Limited and Ryburn Limited appear in person on March 2, 2007 if Plaintiffs wished to proceed with

27  prosecution of this lawsuit, and no appearances having been made, orders as follows:

28       1.    The Second Amended Complaint is hereby dismissed pursuant to Rule 41(b) of the



CASE MANAGEMENT ORDER; CASE NO. C02-1068 CW (BZ)

1    Federal Rules of Civil Procedure for failure of the Plaintiffs to prosecute this litigation;

2        2.    The default of Counter-Defendants Janvrin Holdings Limited, Crossgar Limited and

3    Ryburn Limited shall be entered by the clerk pursuant to Rule 55(a) of the Federal Rules of Civil

4    Procedure. Any application for entry of judgment against these Counter-Defendants shall be made to

5    Magistrate Judge Zimmerman on or before March 16, 2007;

6        3.    Nixon Peabody LLP is hereby permitted to withdraw as counsel for Plaintiffs and

7    Counter-Defendants Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited.

8        Nixon Peabody LLP shall serve this Order on Janvrin Holdings Limited, Crossgar Limited

9    and Ryburn Limited at the last known addresses of these parties, and papers filed in this action may

10   continue to be served on Nixon Peabody LLP for forwarding purposes pursuant to Rule 11-5(b) of

11   the Local Rules of Practice in Civil Proceedings before the United States District Court for the

12   Northern District of California.

13

14   Dated:    **MAR 1 2 2007**                    The Honorable Claudia Wilken

15                                                  U.S. District Court Judge

16

17

18

19

20

21

22

23

24

25

26

27

28