**EXHIBIT F**

```
OLIVER HILSENRATH
HANA HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net
```

FILED
07 JUL 11 PM 12:58
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

PLAINTIFFS *IN PRO PER*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

OLIVER HILSENRATH

Plaintiff,

v.

MIKE SHEPARD, HELLER EHRMAN LLP, AND DOES 1-5,

Defendants,

HANA HILSENRATH, NAMA HILSENRATH, LIOR HILSENRATH, ELLA HOPE HILSENRATH, ISAIAH BENJAMIN HILSENRATH, SAUL NATHANIEL HILSENRATH

Third Party Plaintiffs

Case No: C 07 3586 EDL

COMPLAINT FOR MALPRACTICE, NEGLIGENCE, BREACH OF "THE DUTY OF CARE", AIDING AND ABETTING BREACH OF CIVIL RIGHTS GRANTED BY THE 4TH, 5TH AND THE 6TH AMENDMENT OF THE CONSTITUTION

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST:
    RICHARD W WIEKING
Clerk, U.S. District Court
Northern District of California

                                Deputy Clerk
Date  7-18-07

INTRODUCTION

1. Plaintiff Oliver Hilsenrath and Third Party Plaintiffs Hana Hilsenrath et al. respectfully submit this current complaint in pro per.

2. Defendants' actions in this current complaint lead to the destruction of the Hilsenrath family assets and rendered hired legal representation inaccessible.

3. In 2003, the US government indicted Oliver Hilsenrath with tens of counts of embezzlement from his former employer US Wireless Corporation.
4. Hilsenrath and his family, Israeli and US citizens, lived at the time in Tel Aviv, Israel.
5. Hilsenrath hired Mike Shepard from Heller Ehrman within days from the issuance of the indictment to negotiate an agreement with the US government to enable him to return to the US and defend the charges.
6. Such agreement was reached in December 2004 upon which Hilsenrath and his family traveled to the US to defend the charges.
7. Shortly upon the Hilsenraths' return to the US, it turned clear that the allegations of embezzlement could not be substantiated and the US government changed the crux of the case to alleged tax evasion.
8. Such shift was however to be prevented by the Heller Ehrman agreement.
9. The sloppy wording of the Heller Ehrman agreement allowed the US government to abandon the embezzlement theory for which they sought the Hilsenraths and refocus on a new alleged tax case amid sworn statements from both Hilsenrath and Heller Ehrman that the return agreement prohibited such shift.
10. For 3 years, the US government leveraged on the ambiguous and sloppy Heller Ehrman language in the agreement, to freeze Hilsenraths assets all over the world, with no relation to the alleged embezzlement.
11. In 3 years, those assets were destroyed.
12. Hilsenrath ended defending a complex, white-collar criminal case in pro per.
13. That case was recently concluded in a settlement that requires $2 million in alleged civil taxes and penalties payments to the US government.

14. Those tax allegations were and are with no relation to any of the corporate fraud allegations that brought Hilsenrath to the US.

## JURISDICTION AND VENUE

15. Plaintiffs hired the services of Heller Ehrman from their home in Tel-Aviv, Israel, as citizens and residence of the State of Israel[1].
16. Shepard and Heller Ehrman are an individual and a corporation operating in San Francisco, California.
17. The Federal Court has jurisdiction over this case and the venue in the Northern District of California is adequate pursuant to *28 U.S.C. 1331, § 1332*.

## LIMITATION OF STATUTE

18. The *Hilsenrath* criminal case was concluded in July 2007.
19. A tolling agreement with Heller Ehrman is in place till July 15, 2007.
20. Therefore no limitations of statute are applicable as a defense to this complaint.

## THE PARTIES

**Plaintiffs and Third Party Plaintiffs (Jointly "the Plaintiffs")**

21. Plaintiff Oliver Hilsenrath and Third Party Plaintiff Hana Hilsenrath[2] are Israeli and United States citizens and residents of Tel Aviv, Israel. Plaintiffs temporarily reside in the State of California for the purpose of defending legal actions brought by the US government.

---

[1] The Hilsenraths are also US citizens and presently reside in California for the sole purpose of defending the US government's action.

[2] Husband and wife

HILSENRATH V. HEL                        -3-

22. Plaintiffs Hana and Oliver Hilsenrath (HILSENRATH) are both professionals with high academic degrees obtained in Israel.
23. Hana Hilsenrath has devoted her last 25 years solely to raising the family's 6 children and had at no time, any involvement in Mr. Hilsenrath's businesses.
24. Third Party Plaintiffs 2-6 are the Hilsenrath children, 4 of which are minors.
25. They are all present here in California accompanying their parents in their travel to the US to defend the US government charges, and stranded in this jurisdiction as the result of defendants' actions.
26. As a direct result of defendants' carelessness, plaintiffs' assets were unjustly frozen and lost.
27. More so, as the result of defendants' carelessness plaintiffs were sanctioned with $2 million of alleged civil taxes and penalties.

**Defendants**

28. Defendant Mike Shepard (SHEPARD) is a criminal defense attorney working for the lawfirm of Heller Ehrman LLP (HEL) in San Francisco California.
29. Does 1-5 are other persons related to the defendants that might be identified in the future.

### THE DUTY OF CARE

30. Defendants failed in their "duty of care" to plaintiffs to ensure that the legal pleadings on behalf of plaintiff, the return agreement with the US government, were legally sufficient.
31. The present complaint asserts "Professional Negligence" based on defendants' "fiduciary duty to represent plaintiff competently and diligently."

32. Plaintiffs have valid causes of action for legal malpractice against defendants.
33. Plaintiffs will demonstrate: (1) breach of the attorney's duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise[3]; (2) a proximate causal connection between the negligent conduct and the resulting injury[4]; and (3) actual loss or damage resulting from the negligence."

## ALLEGATIONS

34. In July 2003, the US government unsealed and published an indictment against Oliver Hilsenrath, a citizen of Israel and a then resident of Tel Aviv.
35. The indictment was generally alleging that Hilsenrath has embezzled millions of dollars from his employer US Wireless between 1996 and 2001.
36. Four years later those allegations proved to have been *baseless*.
37. Nevertheless, the US government presented in July 2003, in a press conference that it was seeking to extradite Hilsenrath in order to bring him to justice.
38. By a friend's recommendation Hilsenrath immediately in July 2003 contacted Shepard by telephone from Tel-Aviv with the objective to seek representation in the case.
39. From Tel Aviv, Hilsenrath paid an initial retainer, signed a retention agreement, and instructed Shepard to contact the US government.

---

[3] "Whatever tax..." where defendants knew those taxes should be restricted to taxes resulting from alleged fraud and the entire agreement was to preserve right applicable in an extradition process.

[4] It is undisputed that entire case of the US government ended up being the "Whatever loophole in Shepard's agreement resulting in both destruction of assets as well as the entire $2 million payment to the US government.

HILSENRATH V. HEL                    -5-

40. Shepard contacted AUSA Hartley West (WEST) at the San Francisco US attorney's office who gave Shepard the following information:
    i. The US government was interested in Hilsenrath's voluntary appearance in the US court without the need of extradition;
    ii. The government intended to supersede the indictment to add additional wire and mail fraud charges;
    iii. The government intended to add alleged tax evasion charges for monies resulting from the embezzlement and fraud charges;
    iv. AUSA West indicated that she would have liked to add money laundry charges but said she believed that such charges would not pass the dual criminality test with Israeli law.
41. More than a year later in November 2004, Shepard concluded an agreement with West for Hilsenrath's return.
42. The statement that "Oliver Hilsenrath and his family travel voluntarily to the United States to appear in federal court" governed the terms of the agreement.
43. Hilsenrath was waving by that any rights he might have had under the extradition treaty.
44. The return agreement served the purpose of protecting Hilsenrath on account of all rights conferred by the extradition treaty between Israel and the United States.
45. The Shepard-West agreement included:
    i. Pre-trial release conditions for Oliver Hilsenrath based on the surrender of 4 family member passports;
    ii. A bond guaranteed by Hana Hilsenrath through a power of attorney signed by Hana Hilsenrath in favor of HEL and Shepard to execute on the family's residence in Tel-Aviv.

    iii. A statement that the government has completed its superseding and there will be no more addition of charges after Hilsenrath's appearance in court.

    iv. A statement that the only item the government was still to add to the indictment was alleged tax charges for funds resulting from the fraud and embezzlement alleged in the indictment.

46. In a sworn declaration a year later in October 2005, Shepard states clearly that the understanding in the above agreement with the US government was that the addition of alleged tax charges would be limited to alleged taxes on funds allegedly resulting from the fraud scheme in the indictment.

47. Unfortunately Shepard's choice of words in the above agreement was "to add whatever taxes you have in process".

48. That sloppy, careless and unprofessional choice of words: "whatever tax…" proved to bear catastrophic consequences for the Hilsenraths in the following years.

49. AUSA West seized the opportunity in Shepard's sloppy "whatever".

50. Immediately after the Hilsenrath sizable family arrived in San Francisco, AUSA West sent an order to freeze internationally all Hilsenrath assets and savings in excess of $6.5 million.

51. Hilsenrath brought a series of motions targeted to prove that the frozen assets have no relation to the alleged fraud in the indictment and is cutting the Hilsenrath's lifeline in both the survival of the family away from home in California, as well as in hiring legal counsel to defend the government's case.

52. The court accepted Hilsenrath's assertion that the frozen funds were not related to the alleged embezzlement and fraud, but stated that given Shepard's "whatever tax" the government can still pursue all of Hilsenrath's assets and savings for tax allegations.

53. This was the sum of all fears for the Hilsenraths: to be lured into this jurisdiction by bogus fraud allegations just in order to fall into a fiscal trap.
54. This was exactly what the Shepard - West agreement was meant to prevent.
55. In a court hearing on the subject, Judge William H. Alsup, concluded that there is a striking disparity between Shepard's declaration that the agreement was intended to restrict alleged tax charges to funds resulting from the alleged fraud vis-a-vis his wording "whatever tax…"
56. Judge Alsup proceeded to permit the government to prosecute alleged tax with no relation to the alleged fraud while stating: "Hilsenrath might have a malpractice case against Shepard…"
57. The Hilsenrath assets stayed frozen in several international jurisdictions while crippling the Hilsenraths' business and their partners in several European countries.
58. The freeze went beyond bank accounts to living operations, to irreparable liquidation of assets.
59. Due to the lack of funds, Oliver Hilsenrath ended up representing himself in the complex, high-risk white-collar criminal case.
60. In July 2007, the Criminal case against Hilsenrath was concluded and settled.
61. Mr. Hilsenrath and the US government agreed that Hilsenrath (1) underpaid approximately $20,000 of taxes related to part of his salary and (2) did not disclose the same in his company's annual the same report.
62. Nevertheless, Oliver Hilsenrath was committed to payment of $2 million of civil taxes and penalties allegedly owed to the United States, and not related to the indictment but related to Shepard's "whatever".

63. This payment was presented as a condition of the US government to dismiss the criminal charges and was entirely rooted in the "whatever tax..." miswording.
64. Shepard's careless and sloppy "whatever tax" practically annulled the agreement targeted to --
    i. Restrict tax allegations to only clearly alleged and publicly disclosed charges and --
    ii. Prevent a torturous and murky fishing escapade of the government after the Hilsenraths' appearance in this jurisdiction.
65. Shepard's failure to do so caused in summary:
    i. Loss of $2 million to the US government
    ii. Created an opportunity to prosecute Oliver Hilsenrath on charges understood not to be brought, while prolonging the case another 2 years.
    iii. Created the opportunity for the government to internationally freeze Hilsenrath assets on account of alleged tax charges against the spirit of the agreement.

### FIRST CAUSE OF ACTION
### (Refund of legal fees)

Plaintiffs incorporate each of the above paragraphs by reference.
66. Defendants provided sloppy and unprofessional legal service and breached their duty of care to the plaintiff while causing catastrophic damage.
67. Plaintiff are entitled to have defendants refund all legal fees paid in relation to HEL's representation in this matter in the amount of $200,000.

WHEREFORE, plaintiffs pray relief as set forth below.

### SECOND CAUSE OF ACTION
### (Constructive trust re refund of legal fees)

Plaintiffs incorporate each of the above paragraphs by reference.

HILSENRATH V. HEL                           -9-

68. Defendants provided sloppy and unprofessional legal service and breached their duty of care to the plaintiff while causing catastrophic damage.
69. Plaintiffs are entitled to a constructive trust on all legal fees paid to HEL between 2003 to 2005.

WHEREFORE, plaintiffs pray relief as set forth below.

### THIRD CAUSE OF ACTION

*(Refund of payments to the United States)*

Plaintiffs incorporate each of the above paragraphs by reference.

70. Defendants provided sloppy and unprofessional legal service and breached their duty of care to the plaintiff while causing catastrophic damage.
71. Based on defendants unprofessional conduct, the Hilsenraths lost the protection of the return agreement with the government when deciding to travel to the US.
72. Based on defendants' unprofessional conduct, the US government was able to shift the focus of its initial charges to a tax-allegations case and impose a $2 million payment on plaintiffs.
73. Plaintiff are entitled to have defendants refund all fines resulting from their careless and unprofessional conduct in the amount of $2 million.

WHEREFORE, plaintiffs pray relief as set forth below.

### FOURTH CAUSE OF ACTION

*(Refund of "tax"-related frozen assets)*

Plaintiffs incorporate each of the above paragraphs by reference.

74. By their breach of the duty of care, defendants aided and abetted the breach of plaintiffs' right to property pursuant to the 4th and 5th amendment of the constitution.
75. Plaintiffs were collectively deprived of their property and savings due to a government action solely based on defendants sloppy representation, lack of care and unprofessional

HILSENRATH V. HEL                -10-

handling of the Hilsenrath return agreement in which they failed to confer the said protections of an extradition waiver.

76. By that defendants paved the way for the US government to effect an improper international freeze of assets that lead to the destruction of most Hilsenrath family savings.

77. Plaintiffs are entitled to this Court's order to compensation in the value of all assets, related to the "whatever tax..." that were lost in value of at least $7.3 million and other damages according to proof.

WHEREFORE, plaintiffs pray relief as set forth below.

## FIFTH CAUSE OF ACTION
### (Constructive trust re "tax"-related frozen assets)

Plaintiffs incorporate each of the above paragraphs by reference.

78. Defendants' conduct enabled the US government to effect a tax-allegations related international freeze of assets starting April 2005.

79. Plaintiffs are entitled to this Court's order of a constructive trust on all assets frozen by the US government as the result of defendants' "whatever tax..." agreement.

WHEREFORE, plaintiffs pray relief as set forth below.

## SIXTH CAUSE OF ACTION
### (Recovery of damages as the result of breach of due process in violation of the 6th amendment)

Plaintiffs incorporate each of the above paragraphs by reference.

80. Defendants' aided and abetted the breach of plaintiff's right of due process pursuant to the 6th amendment of the US Constitution.

81. The freeze of alleged tax related assets denied Plaintiffs ability to hire legal counsel to defend the charges brought by

the US government and to prosecute even this very present complaint other than in pro per.

82. As the result, plaintiffs have suffered damages in the amount of a $2 million payment to the US government that should have been avoided if the plaintiffs had (1) a properly worded return agreement and (2) the funds to hire proper legal counsel- funds unavailable as the result of HEL's lack of care.

83. Plaintiffs are seeking additional compensation according to proof.

WHEREFORE, defendants pray relief as set forth below.

## SEVENTH CAUSE OF ACTION
### (Prolonged case for additional two years)

Plaintiffs incorporate each of the above paragraphs by reference.

84. The US government determined that its case was without base by summer 2005 and shifted its focus to a fiscal case.

85. This shift was possible solely due to defendants' sloppy and unprofessional representation of plaintiffs and its sloppy wording of "whatever taxes…"

86. Plaintiffs are entitled to recover all expenses, losses and legal fees incurred in relation to defendants' actions that prolonged the government's case for another two years.

WHEREFORE, defendants pray relief as set forth below.

## PRAYER

By way of this complaint plaintiffs pray relief as follows:

87. That this Court order defendants to pay plaintiffs an amount of not less than $200,000 - equal to all the legal fees paid to HEL.

88. That this Court order a constructive trust over all legal fees paid to HEL.

89. That this Court order defendant to pay plaintiffs a sum no less than $2 million – equal to the payments imposed by the government by leveraging on defendants' incompetent wording of the return agreement.

90. That this Court order defendants to pay plaintiffs an amount of not less than $7.3 million – equal to all their frozen and destroyed assets.

91. That this Court order a constructive trust over all frozen and lost assets as the result of the government's leverage on defendants' incompetent wording of the return agreement.

92. That this Court order defendants to further compensate plaintiff for being deprived of the right to due process, legal counsel of choice in the criminal case and other case as the result of the crippling effect of the "whatever tax…" in the amount of at least $2 million.

93. That this Court order defendants to further reimburse plaintiffs for damages incurred as the result of the prolongation of the criminal case for additional 2 years according to proof.

94. That this Court award further relief according to proof.

95. That this Court award such other and further relief as it deems proper.

Dated: July 10, 2007


Respectfully submitted,


_Hilsenrath Hana_                                    _[signature]_
HANA HILSENRATH                                      OLIVER HILSENRATH