# EXHIBIT H

1  Glenn E. Westreich (State Bar Number: 100457)
   Beth L. Appelbaum (State Bar Number: 187460)
2  NIXON PEABODY LLP
   Two Embarcadero Center, Suite 2700
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300

5  Attorneys for Plaintiffs
   JANVRIN HOLDINGS LIMITED,
6  CROSSGAR LIMITED and RYBURN LIMITED

7

**FILED**

MAR - 5 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11  JANVRIN HOLDINGS LIMITED, CROSSGAR        Case No.   **C02   1068**
    LIMITED, and RYBURN LIMITED,
12
                    Plaintiffs,              COMPLAINT
13
        vs.                                  [JURY TRIAL DEMANDED]  **PJH**
14
    DR. OLIVER HILSENRATH, DAVID
15  KLARMAN, DALE STONE, BARRY WEST,
    DENNIS FRANCIS, DAVID ROBKIN, LOUIS
16  GOLM, JAMES S. EISENSTEIN, PATRICIA      
    MURPHY, DONALD ZERIO, ED ROSNER,
17  PEPPER HAMILTON LLP, AMERICAN
    TOWER CORPORATION, a Delaware            I hereby certify that the annexed
18  Corporation, LIBERTY VENTURE PARTNERS,   instrument is a true and correct copy of
    INC., COZEN & O'CONNER, WT HOLDINGS,     the original on file in my office.
19  and HASKELL & WHITE LLP                  ATTEST:
                                             RICHARD W. WIEKING
20                  Defendants.              Clerk, U.S. District Court
                                             Northern District of California
21                                           By
                                             Date
22          Plaintiffs Janvrin Holdings Limited, Ryburn Limited and Crossgar Limited (collectively, "the

23  Plaintiffs"), by its attorneys NIXON PEABODY LLP, as and for its Complaint against Oliver

24  Hilsenrath, David Klarman,  Dale Stone, Barry West, Dennis Francis, David Robkin, Louis Golm,

25  James S. Eisenstein, Patricia Murphy, Donald Zerio, Ed Rosner, American Tower Corporation,

26  Liberty Venture Partners, Inc., Cozen & O'Conner, WT Holdings, Pepper Hamilton LLP and Haskell

27  & White LLP ("Defendants"), allege as follows:

28

COMPLAINT                                                                          S334408.4

1                                    **INTRODUCTION**

2          This is an action for fraud, misrepresentation, breach of fiduciary duties and securities

3    violations arising out of Defendants' fraudulent acts and omissions in inducing Plaintiffs to enter into

4    a Settlement Agreement whereby Plaintiffs released claims of a value in excess of $70 million against

5    U.S. Wireless Corporation ("U.S. Wireless"), and Defendants Hilsenrath and Klarman, in exchange

6    primarily for U.S. Wireless stock.  Notwithstanding their knowledge that the Settlement Agreement

7    contained misrepresentations of fact, and that Defendants had omitted to advise Plaintiffs of material

8    information, this Settlement Agreement was specifically approved and ratified by U.S. Wireless's

9    Board of Directors.  More particularly, unbeknownst to Plaintiffs, while negotiations leading to the

10   execution of the Settlement Agreement were pending, U.S. Wireless's Board of Directors was

11   conducting an  investigation into misconduct by certain members of management of U.S. Wireless,

12   including particularly Defendants Hilsenrath and Klarman, and misstatements on the Company's

13   financial statements and securities filings, the results of which clearly would have a severely negative

14   impact on the value of U.S. Wireless's stock.  Instead of disclosing this material information to

15   Plaintiffs, the Board of Directors approved and ratified the Settlement Agreement under which

16   Plaintiffs' primary consideration was U.S. Wireless stock.  In essence, in order to escape liability to

17   Plaintiffs and avoid a trial of their claims, the U.S. Wireless Board of Directors used U.S. Wireless's

18   stock as "currency" with which to settle Plaintiffs' claims, notwithstanding the fact that they knew

19   that this "currency" was effectively worthless.

20          In addition to these material omissions, Defendants made express representations and

21   warranties in the Settlement Agreement which were false, and consequently, failed to pay Plaintiffs

22   the full amount required under the Settlement Agreement and also failed to register certain shares of

23   Plaintiffs' stock as set forth in the Settlement Agreement.   Approximately two months after entering

24   into the Settlement Agreement, NASDAQ halted trading of U.S. Wireless stock as a result of the

25   ongoing investigation into the misconduct of U.S. Wireless management, and shortly thereafter, U.S.

26   Wireless's stock was delisted by NASDAQ.  On or about August 29, 2001 U.S. Wireless filed a

27   Petition under Chapter 11 of the U.S. Bankruptcy Code.

28   / / /

# PARTIES

## A.    PLAINTIFFS

1.    Plaintiff Janvrin Holdings Limited ("Janvrin") is a British Virgin Islands corporation with its principal place of business located at P.O. Box 316, Jardine House, 1 Wesley Street, St. Heiler, Jersey, JE4 8UD, Channel Islands.

2.    Plaintiff Ryburn Limited ("Ryburn") is a British Virgin Islands corporation with its principal place of business located at P.O. Box 316, Jardine House, 1 Wesley Street, St. Heiler, Jersey, JE4 8UD, Channel Islands.

3.    Plaintiff Crossgar Limited  ("Crossgar") is a British Virgin Islands corporation with its principal place of business located at P.O. Box 316, Jardine House, 1 Wesley Street, St. Heiler, Jersey, JE4 8UD, Channel Islands.

4.    U.S. Wireless is headquartered in San Ramon, California and was incorporated in the State of Delaware in February 1993.  U.S. Wireless was engaged in the development of network-based location systems designed to enable wireless carriers and others to provide their customers with services such as enhanced 911, live-navigation assistance, enhanced 411, and asset and vehicle tracking.

## B.    DEFENDANTS

### 1.    The Officer and Director Defendants

5.    Defendant Dr. Oliver Hilsenrath ("Hilsenrath") was the Chief Executive Officer and a director of U.S. Wireless during all relevant times alleged herein.  As all relevant times, upon information and belief, Defendant Hilsenrath was a resident of the State of California.  Plaintiffs are informed and believe that Defendant Hilsenrath currently resides in Israel.

6.    Defendant David Klarman ("Klarman") was the Vice President, General Counsel and Secretary of U.S. Wireless.  Upon information and belief, Defendant Klarman is a resident of the State of California.

1    7.    Upon information and belief, Defendant Donald Zerio ("Zerio") was the Chief

2    Financial Officer of U.S. Wireless during all relevant times alleged herein. Upon information and

3    belief, Defendant Zerio is a resident of the State of California.

4    8.    Defendant Patricia Murphy ("Murphy") was the General Counsel of U.S. Wireless

5    during the negotiations leading to the preparation and execution of the subject Settlement Agreement.

6    Defendant Murphy is a resident of the State of California.

7    9.    Defendant Dale Stone ("Stone") was a director of U.S. Wireless at all relevant times

8    alleged herein. Upon information and belief, defendant Stone is a resident of the State of California.

9    10.    Defendant Barry West ("West") was a director of U.S. Wireless at all relevant times

10    alleged herein. Upon information and belief, defendant West is a resident of the State of Virginia.

11    11.    Defendant Dennis Francis ("Francis") was a director of U.S. Wireless at all relevant

12    times alleged herein. Upon information and belief, defendant Francis is a resident of the State of

13    California.

14    12.    Defendant David Robkin ("Robkin") was a director of U.S. Wireless at all relevant

15    times alleged herein. Upon information and belief, defendant Robkin is a resident of the State of

16    Pennsylvania.

17    13.    Defendant Louis Golm ("Golm") was a director of U.S. wireless at all relevant times

18    alleged herein. Upon information and belief, defendant Golm is a resident of the State of California

19    14.    Defendant James S. Eisenstein ("Eisenstein") was a director of U.S. Wireless at all

20    relevant times alleged herein. Upon information and belief, defendant Eisenstein is a resident of the

21    State of Florida.

22    15.    Defendants Hilsenrath, Klarman, Murphy, Zerio, Stone, West, Francis, Robkin, Golm

23    and Eisenstein are sometimes collectively referred to herein as the "Officer and Director

24    Defendants."

25    **2.    Law Firm Defendants**

26    16.    Defendant Pepper Hamilton LLP ("Pepper Hamilton") served as U.S. Wireless's

27    outside legal counsel for securities issues at all relevant times alleged herein. Plaintiffs are informed

28    and believe that Pepper Hamilton's principal place of business is in Philadelphia, Pennsylvania.

1    Upon information and belief, Pepper Hamilton advised U.S. Wireless on securities issues directly

2    relating to the stock at issue in this litigation, as more fully described herein.

3        17.    Upon information and belief, Defendant Cozen & O'Conner served as U.S. Wireless's

4    outside legal counsel in connection with the investigation undertaken by U.S. Wireless into the

5    misconduct by U.S. Wireless management, and assisted and advised U.S. Wireless and the

6    Defendants in connection with the preparation and ratification of the settlement with the Plaintiffs.

7    Defendant Cozen & O'Conner ratified the conduct of the Board of Directors complained of herein.

8    Plaintiffs are informed and believe that Cozen & O'Conner's principal place of business is in

9    Philadelphia, Pennsylvania.

10            **3.    Financier Defendants**

11        18.    Defendant American Tower Corporation ("American Tower") is a wireless and

12    broadcast infrastructure corporation with its principal place of business in Boston, Massachusetts, and

13    with regional offices located throughout the United States, including in San Francisco, California.

14    American Tower is incorporated in the State of Delaware.  Plaintiffs are informed and believe that,

15    by reason of its investments in U.S. Wireless, American Tower was entitled to and did in fact have

16    representation on the Board of Directors of U.S. Wireless through Defendant Eisenstein, who is Chief

17    Development Officer of American Tower, and that American Tower was aware of and ratified the

18    conduct of the Board complained of herein.

19        19.    Plaintiffs are informed and believe that Defendant Liberty Venture Partners, Inc.

20    ("Liberty Venture") is a corporation which engages in venture capital funding, with its principal place

21    of business in Philadelphia, Pennsylvania, and doing business throughout the United States.

22    Plaintiffs are informed and believe that, by reason of its investments in U.S. Wireless, Liberty

23    Venture was entitled to and did in fact have representation on the Board of Directors of U.S. Wireless

24    through Defendant Robkin, who is a founder and principal of Liberty Venture, and that Liberty

25    Venture was aware of and ratified the conduct of the Board complained of herein.

26        20.    Upon information and belief, Defendant Ed Rosner ("Rosner") is an agent and/or

27    employee of Liberty Venture and was acting on its behalf in connection with the matters complained

28

1    of herein. Plaintiffs are informed and believe that Defendant Rosner is a resident of the State of

2    Pennsylvania.

3         21.    Upon information and belief, Defendant WT Holdings, Inc. ("WT Holdings") is a

4    Delaware corporation that transacts business throughout the United States. Plaintiffs are informed and

5    believe that, by reason of its investments in U.S. Wireless, WT Holdings was entitled to and did in

6    fact have representation on the Board of Directors of U.S. Wireless and that WT Holdings was aware

7    of and ratified the conduct of the Board complained of herein.

8              **4.    The Accounting Firm Defendants**

9         22.    Defendant Haskell & White LLP is a California partnership with its principal place of

10   business located in Orange County, California. Upon information and belief, Defendant Haskell &

11   White served as U.S. Wireless's outside accountant at all relevant times herein and advised U.S.

12   Wireless regarding many of the questionable transactions alleged herein.

13

14   **C.    AGENTS**

15        23.    At all relevant times mentioned herein, each defendant was the agent, employer and/or

16   joint venturer of each remaining defendants, and in doing the acts hereinafter alleged, was acting

17   within the scope of that agency, employment, and/or joint venture with their permission and consent.

18   Each defendant acted both directly and indirectly through its agents and employees.

19   **D.    AIDERS AND ABETTORS**

20        24.    At all times mentioned herein, each of the defendants was the agent, servant, partner,

21   aider and abettor, co-conspirator, and/or joint venturer of each of the remaining defendants herein.

22   They were at all times operating and acting within the purpose and scope of said agency, service,

23   employment, partnership, conspiracy, and/or joint venture and rendered substantial assistance and

24   encouragement to the other defendants, knowing that their conduct constituted a breach of duty.

25        25.    Upon information and belief, Defendant Pepper Hamilton aided and abetted the

26   scheme by, *inter alia*, failing to maintain and monitor the integrity of the stock-related transactions

27   that U.S. Wireless entered into, including the Settlement Agreement with Plaintiffs, knowingly

28   tolerating U.S. Wireless's failure to timely file appropriate registration statements with the SEC and

1    otherwise comply with the Securities Laws, and knowingly acquiescing in the preparation and

2    execution of the Settlement Agreement which included false and misleading statements and which

3    excluded material information.

4           26.      Upon information and belief, Defendant Cozen & O'Conner aided and abetted the

5    scheme by, *inter alia*, advising U.S. Wireless on the investigation being conducted into certain of its

6    management and failing to advise U.S. Wireless of its duty to inform plaintiffs and others about

7    material information which could adversely affect the Company. In addition, upon information and

8    belief, Cozen & O'Conner knowingly encouraged U.S. Wireless to enter into a Settlement Agreement

9    which excluded material information.

10           27.      Defendant Haskell & White aided and abetted the scheme by, *inter alia*, issuing audit

11    opinions on and preparing U.S. Wireless's financial statements which contained false and misleading

12    statements, which were included in U.S. Wireless's filings with the Securities Exchange Commission

13    ("SEC").

14                                 **JURISDICTION AND VENUE**

15           28.      This Court has jurisdiction over this subject matter of this action pursuant to 28 U.S.C.

16    § 1332, because the matter in controversy exceeds the sum of $75,000, exclusive of interest and

17    costs, and is between citizens of a state and citizens or subjects of a foreign state.

18           29.      This Court also has jurisdiction over this subject matter pursuant to 15 U.S.C. § 78aa,

19    as amended, because the Complaint states a claim under the Securities Exchange Act of 1934.

20           30.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because the

21    Defendants reside in this judicial district and/or a substantial part of the events or omissions giving

22    rise to the claims occurred in this judicial district.

23                                 **FACTUAL ALLEGATIONS**

24

25      **A.**      **THE UNDERLYING ACTIONS**

26           31.      On or about July 7, 2000, Plaintiffs Janvrin, Crossgar and Ryburn each brought

27    separate complaints against U.S. Wireless, Hilsenrath and Klarman in the United States District Court

28    for the Northern District of California arising out of the breaches by U.S. Wireless, Hilsenrath and

1   Klarman of consulting agreements, options agreements, breach of the duty to transfer stock, and

2   breach of fiduciary duty (Case Nos. C00 2334, C00 2336 AND C00 2346) (hereafter "Federal

3   Actions").  As a result, U.S. Wireless brought counterclaims against Janvrin, Crossgar, Ryburn,

4   Pelican Securities, Pelican Constructing U.S.A., David Dahan ("Dahan") and Haim Haruvi

5   ("Haruvi") (the "Counterclaims").

6      32.    These Federal Actions arise from actions taken by U.S. Wireless, Hilsenrath and

7   Klarman which substantially decreased the value of Janvrin, Ryburn and Crossgar's options to

8   purchase over one million shares of U.S. Wireless' common stock and which deprived Janvrin,

9   Ryburn and Crossgar of any meaningful value of their registration rights with respect to those shares,

10  as described below.

11              **1.    Crossgar and Ryburn Complaints**

12     33.    On or about January 1, 1997, Crossgar and Ryburn entered into two separate

13  Consulting Agreements with U.S. Wireless by which U.S. Wireless engaged Crossgar and Ryburn as

14  consultants. As compensation for its consulting services, Crossgar was granted an option to purchase

15  200,000 shares of U.S. Wireless stock under an Option Agreement.  Ryburn was granted an option to

16  purchase 1,000,000 shares of U.S. Wireless stock.  The options were exercisable until July 30, 2001.

17     34.    The Option Agreements further granted Crossgar and Ryburn certain "piggy-back"

18  registration rights under which if U.S. Wireless proposes to register any of its securities under the

19  Securities Act of 1933, U.S. Wireless must give Crossgar and Ryburn notice of such intent and the

20  opportunity to register its shares for resale under U.S. Wireless's registration statement.

21     35.    U.S. Wireless also agreed, vis-à-vis the Option Agreement, to have prepared and filed,

22  within one year of the date of the Option Agreement, a registration statement with the SEC which

23  registers the resale of the underlying shares subject to Crossgar's and Ryburn's options.  U.S.

24  Wireless further agreed to use its best efforts to have such registration statement declared effective in

25  a timely manner.

26     36.    In September 1997, U.S. Wireless filed a registration statement with the SEC which

27  covered the sale of up to 3,078,000 shares of U.S. Wireless stock, including the shares underlying

28

1 | Crossgar's and Ryburn's options. Thereafter, Ryburn exercised its option, in part, with respect to
2 | 100,000 shares of U.S. Wireless, which it then sold.

3 |     37.    On July 2, 1999, after the September 1997 registration had been declared effective,
4 | U.S. Wireless filed a second registration statement with the SEC, which covered the sale of up to
5 | 2,000,000 shares of U.S. Wireless stock, issuable upon the exercise of options, granted to officers,
6 | employees and directors of U.S. Wireless.

7 |     38.    On August 3, 1999, after the July statement was declared effective, U.S. Wireless filed
8 | an amendment to the registration statement filed on September 26, 1997, requesting the *de-*
9 | *registration of the resale of the shares subject to Crossgar's and Ryburn's options.*

10 |     39.    The withdrawal of this registration statement effectively prevented Crossgar and
11 | Ryburn from exercising their options and selling the underlying shares of stock. Despite repeated
12 | requests to re-register the shares underlying the options, U.S. Wireless refused to do so.

13 |     40.    As a result of U.S. Wireless's wrongful acts, Crossgar sustained damages of at least
14 | $10,100,000 principal. Crossgar was granted an option to purchase 200,000 shares of U.S. Wireless'
15 | stock at $2/per share. Thereafter, U.S. Wireless wrongfully withdrew its registration statement
16 | covering Crossgar's options, effectively preventing Crossgar from exercising its options and thereby
17 | rendering them worthless.

18 |     41.    From the time of this wrongful withdrawal to the time Crossgar filed its Complaint,
19 | U.S. Wireless' stock was trading at $52.50/per share, making the value of Crossgar's 200,000 options
20 | $10,500,000. Crossgar would have had to pay $400,000 to exercise its option to purchase these
21 | shares ($2/per share x 200,000 shares). Subtracting the amount Crossgar would have had to pay to
22 | exercise its options to purchase from the total value of its options, the total damages calculation is not
23 | less than $10,100,000 principal, plus interest thereon at 10% per annum from August 3, 1999.

24 |     42.    Ryburn sustained damages of at least $45,450,000 principal. Ryburn was granted an
25 | option to purchase 1,000,000 shares of U.S. Wireless' stock at $2/per share. Ryburn exercised its
26 | options to purchase 100,000 of these shares, leaving it with options as to 900,000 shares at the time
27 | that U.S. Wireless wrongfully withdrew its registration statement covering Ryburn's options,
28 | effectively preventing Ryburn from exercising its options and thereby rendering them worthless.

1    43.    From the time of this wrongful withdrawal to the time Ryburn filed its Complaint,

2    U.S. Wireless' stock was trading at $52.20/per share, making the value of Ryburn's 900,000 options

3    $47,250,000. Ryburn would have had to pay $1,800,000 to exercise its option to purchase these

4    shares ($2/per share x 900,000 shares). Subtracting the amount Ryburn would have had to pay to

5    exercise its options to purchase from the total value of its options, the total damages calculation is not

6    less than $45,450,000 principal, plus interest thereon at 10% per annum from August 3, 1999.

7                    **2.    Janvrin's Complaint**

8    44.    In 1998, pursuant to an Exchange Offer Agreement and Memorandum and an

9    Exchange Election, Janvrin was to receive a total of 918,000 shares of U.S. Wireless stock, to be

10    acquired in accordance with a vesting schedule. The U.S. Wireless shares were to be provided to

11    Janvrin in exchange for stock in Labyrinth Communication Technologies Group, Inc. ("Labyrinth").

12    45.    These shares were "restricted securities" pursuant to Rule 144 of the Securities Act of

13    1933 ("Rule 144") in that the stock certificates contained a legend prohibiting the sale or transfer of

14    the stock in the absence of an effective registration statement on file with the SEC or an opinion of

15    counsel stating that no such registration is required.

16    46.    In October 1999 and February 2000, Janvrin filed Forms 144 with the Securities

17    Exchange Commission ("SEC") to effect the sale of some of its restricted U.S. Wireless stock, and

18    sought opinion letters from U.S. Wireless. Despite repeated requests to U.S. Wireless, U.S. Wireless

19    delayed in issuing an opinion for both transactions. Consequently, counsel for Janvrin prepared an

20    opinion letter which U.S. Wireless eventually consented to use after much delay.

21    47.    In April 2000, Janvrin filed a Form 144 to effect the sale of 367,200 shares of its U.S.

22    Wireless stock and again sought the required opinion letter from U.S. Wireless. Despite repeated

23    requests, U.S. Wireless refused to issue an opinion letter or accept an opinion letter from counsel for

24    Janvrin on the purported ground that there was pending litigation between Janvrin and U.S. Wireless.

25    Janvrin was not aware of any pending litigation at that time and, in fact, was never served with any

26    Complaint until it was served with the counterclaim.

27

28

COMPLAINT                                          -10-                                    S334408.4

48. Janvrin's damages total at least $7,803,000 principal. On or about April 28, 2000, Janvrin filed a Form 144 with the SEC for the sale of 367,200 shares of U.S. Wireless stock, and sought the required opinion letter from U.S. Wireless, which U.S. Wireless refused to provide.

49. On the date that Janvrin filed its Form 144 and was effectively prevented from selling its shares due to the wrongful denial of U.S. Wireless to issue the required opinion letter, the value of the subject stock was $21.25. Thus the total damages suffered by Janvrin are not less than $7,803,000 principal, plus interest thereon at 10% per annum from June 2000.

## B. NEGOTIATION OF THE SETTLEMENT AGREEMENT

50. On or around March 13, 2001, Janvrin, Ryburn, Crossgar, Dahan, Haruvi, Pelican Securities, and Pelican Consulting, on the one hand, and U.S. Wireless, Hilsenrath and Klarman on the other (collectively, "the Parties") entered into a Confidential Settlement Agreement and Mutual Release ("Settlement Agreement").

51. The Settlement Agreement sets forth numerous obligations that must be satisfied by U.S. Wireless and Defendants Hilsenrath and Klarman as conditions precedent to the dismissal of the Federal Actions with prejudice. Such obligations include, in relevant part:

    a) The issuance of 2,132,800 shares of registrable common stock by U.S. Wireless to Janvrin, Ryburn and Crossgar;

    b) U.S. Wireless's payment of the total sum of $1.5 million in equal parts to Ryburn, Crossgar and Janvrin;

    c) U.S. Wireless's preparation and filing with the SEC within 30 days of the Closing Date of the Settlement Agreement of a registration statement on Form S-3 with respect to specific shares described in the Settlement Agreement as "Registrable Securities;"

    d) U.S. Wireless also agreed to dismiss the Counterclaims with prejudice.

52. "Registrable Securities" are defined in the Settlement Agreement as 2,500,000 shares of U.S Wireless common stock compromising the 2,132,800 shares described above to be issued to Janvrin, Ryburn and Crossgar pursuant to the Settlement Agreement, plus an additional 367,200

1   shares of U.S. Wireless common stock already held by Janvrin, and subject to the provisions of Rule

2   144.

3       53.    With respect to the "Registrable Securities," U.S. Wireless specifically covenanted

4   and represented as follows:

> "k.    (i) Within 30 days after the Closing Date U.S. WIRELESS shall
> prepare and file with the SEC a registration statement on Form S-3
> (the "Registration Statement") with respect to the shares described in
> subparagraphs (d)(iii), (e) and (g) above (the "Registrable
> Securities"), shall cause the Registration Statement to become
> effective, and shall use its best efforts to keep the Registration
> Statement effective until the sale and distribution of the Registrable
> Securities has been completed. U.S. WIRELESS represents, warrants
> and covenants to JANVRIN, RYBURN, CROSSGAR, DAHAN,
> PELICAN SECURITIES AND PELICAN CONSULTING that U.S.
> WIRELESS is eligible to register the Registrable Securities on Form S-
> 3 as of the date of this Agreement and shall remain eligible to so
> register the Registrable Securities at all times relevant to this
> Agreement;"

13      54.    At all times during the course of negotiations leading to the Settlement Agreement,

    counsel for U.S. Wireless, Hilsenrath and Klarman informed Plaintiffs that "securities counsel" for

    U.S. Wireless, Pepper Hamilton LLP, was reviewing the terms of the Settlement Agreement in

    connection with the stock at issue and representations made in the Settlement Agreement relating

    thereto.

        55.    The Settlement Agreement also provides that it is subject to the approval of the U.S.

    Wireless Board of Directors. As evidenced by the parties' execution and partial performance of the

    Settlement Agreement, the Board of Directors, comprised of Defendants Hilsenrath, Klarman, Stone,

    West, Francis, Robkin, Golm and Eisenstein ("Director Defendants") approved the Settlement

    Agreement. Plaintiffs are informed and believe that one of the motives of the Director Defendants in

    approving the Settlement Agreement was to avoid liability not only by U.S. Wireless, but also by

    themselves individually should Plaintiffs in the underlying action have proceeded with discovery into

    the fraudulent conduct underlying the Crossgar, Ryburn and Janvrin complaints.

        56.    The Settlement Agreement also sets forth a schedule pursuant to which U.S. Wireless,

    Hilsenrath and Klarman were required to pay Ryburn, Crossgar and Janvrin. The payment schedule

    is as follows:

<div style="margin-left:2em">

**a)**    $500,000 to be paid on the closing date;

**b)**    $333,333.34 on or before April 1, 2001 ("the First Installment");

**c)**    $333,333.34 on or before July 1, 2001 ("the Second Installment"); and

**d)**    $333,333.34 on or behalf October 1, 2001 ("the Third Installment").

</div>

57.    By letter agreement, the deadlines for payment of the Second and Third Installments were subsequently extended to October 1, 2001, and January 1, 2002, respectively. This extension was specifically at the request of Defendants. By virtue of this request and subsequent modification of the payment terms, Defendants implicitly represented that U.S. Wireless would have the ability to make payments as they came due.

58.    In addition to relying on Defendants' representations that U.S. Wireless was financially secure, Plaintiffs also reviewed and relied upon U.S. Wireless's financial statements and SEC filings which painted a picture of a company in healthy financial condition with great prospects with respect to its technology.

59.    Defendants continued to make public representations about U.S. Wireless's financial security both before and after execution of the Settlement Agreement. For example, in U.S. Wireless's 10KSB, filed with the SEC in July 2001, the Company's cash position was "projected to sustain the Company . . . through the third quarter of fiscal year 2002." This would extend far beyond the last date on which payment was due under the Agreement.

60.    On the Closing Date of the Agreement, U.S. Wireless made payment of $500,000.00, and transferred to Janvrin, Ryburn and Crossgar 2,132,800 shares of U.S. Wireless common stock, as agreed. U.S. Wireless also dismissed its Counterclaims with prejudice.

61.    U.S. Wireless failed to pay Plaintiffs any portion of the Second or Third Installment.

62.    Hilsenrath and Klarman also failed to pay Plaintiffs any portion of the Second or Third Installment.

1    **C.    THE MATERIAL TERMS DEFENDANTS FAILED TO DISCLOSE**

2        63.    Following the Closing Date of the Settlement Agreement, Plaintiffs first became

3    aware that an inquiry into acts of wrongdoing by U.S. Wireless management was being conducted

4    pursuant to instructions from the U.S. Wireless Board of Directors. Plaintiffs were advised that this

5    inquiry was being conducted pursuant to instructions from the Board, and that such investigation had

6    been pending during the course of discussions leading to the settlement between the Parties.

7        64.    On or about May 26, 2001, U.S. Wireless issued a press release, which provided in

8    pertinent part as follows:

9            **SAN RAMON, Calif., May 26** – U.S. Wireless Corporation (Nasdaq:
            USWC, Frankfurt: USP), announced today that the Executive
10           Committee of its Board of Directors has replaced Dr. Oliver Hilsenrath
            as the Company's Chairman and Chief Executive Officer. The
11           Executive Committee elected Louis Golm as the Chairman of the
            Board, and named Dennis Francis, a member of the Board of Directors,
12           as its Chief Executive Officer . . . .

13           The Company noted that these changes were made in response to an
            investigation by the Audit Committee of the Board of Directors, which
14           uncovered various irregularities. These include cash payments,
            issuances of stock options with insufficient documentation to establish
15           (i) the basis for the transactions or (ii) that the transactions had been
            approved by the Board of Directors. Certain of these payments and
16           issuances were made to entities that the Executive Committee of the
            Board of Directors believes may be affiliated with Dr. Hilsenrath and
17           another former executive officer of the Company and were not
            disclosed as required in Securities and Exchange Commission filings.
18

19       65.    Plaintiffs are informed and believe that the person referred to as "another former

20   executive officer" in the May 26, 2001 press release was Defendant Klarman.

21       66.    On or about May 29, 2001, NASDAQ halted trading of U.S. Wireless stock and

22   requested additional information in connection with respect to the alleged wrongdoing by U.S.

23   Wireless management.

24       67.    On or about June 22, 2001, in response to Plaintiffs' repeated requests for U.S.

25   Wireless to register the Registrable Securities as required under the Settlement Agreement, U.S.

26   Wireless's counsel confirmed U.S. Wireless's inability to file a Form S-3 to register the shares.

27   Counsel advised that this inability to register the shares was a result of U.S. Wireless's failure in the

28   year 2000 to timely file with the Securities Exchange Commission ("SEC") a proxy statement for the

1  December 11, 2000 shareholders meeting. U.S. Wireless's counsel further stated that as a result, U.S.

2  Wireless would instead be required to file a Form S-1.

3      68.    On August 29, 2001, U.S. Wireless filed a Chapter 11 bankruptcy petition.

4      69.    On September 21, 2001, U.S. Wireless's stock was delisted by NASDAQ.

5      70.    To date, U.S Wireless still has not filed the Form S-3 registration statement with the

6  SEC as required under the Settlement Agreement, or otherwise attempted to register Plaintiffs'

7  shares, nor have U.S. Wireless, Hilsenrath or Klarman paid Plaintiffs any portion of the Second or

8  Third Installment.

9      **D.    THE ACCOUNTANT'S MISREPRESENTATIONS**

10     71.    Upon information and belief, Haskell & White acted as the accountants of U.S.

11  Wireless at all relevant times herein. In this role, Haskell & White prepared and created the financial

12  statements, information and filings submitted on behalf of U.S. Wireless to the SEC.

13     72.    As a result of the services it rendered to U.S. Wireless, Haskell & White's personnel

14  were frequently in contact with U.S. Wireless's internal personnel, including its Board of Directors,

15  and had continual access to and knowledge of U.S. Wireless's confidential financial and business

16  information. Thus, Haskell & White knew or should have known the true facts concerning U.S.

17  Wireless's actual financial condition and knew or should have known of the misconduct of U.S.

18  Wireless management.

19     73.    Haskell & White allowed U.S. Wireless to file with the SEC financial statements that

20  contained material misrepresentations in order to sustain the illusion of viability. However, the true

21  state of U.S. Wireless's financial condition was eventually revealed in an amendment to U.S.

22  Wireless's Form 10KSB, filed with the SEC on July 12, 2001:

23

24          "As a result of the investigation, the Company determined that certain transactions
            had been improperly recorded in the Company's historical financial statements either
25          as a compensation expense or as offering costs related to financing activities, based
            upon representations by the Company's former Chief Executive Officer and former
26          General Counsel."

27  The report further states:

28

COMPLAINT                              -15-                              S334408.4

1    "The impact on the Company's balance sheet as of December 31, 1999, as compared
     to the previously reported amounts, is as follows:

2        • Accrued liabilities are increased by $530,000.
         • Paid in capital is increased by $5,599,012.

3        • Accumulated deficit is increased by $6,129,012."

4    Finally, it provides:

5    "As described in detain in Note 2 to the condensed consolidated financial statements,
     in May 2001 the Company announced that it had completed an investigation that

6    resulted in the termination of the Company's former Chief Executive Officer and the
     resignation of the Company's former General Counsel. As a result of the

7    investigation, the Company determined that the **original accounting treatment** for
     certain transactions was incorrect, and accordingly, has restated the previously

8    reported amounts."

9    74.    The fact that U.S. Wireless had to restate its financial statements confirmed that the

10   financial statements originally issued were materially misleading.

11   75.    Haskell & White advised U.S. Wireless regarding its financial record keeping, its

12   compliance with GAAP, and its compliance with SEC financial reporting requirements. By virtue of

13   its knowledge that the information and advice given to U.S. Wireless would be reported in its

14   financial statements and SEC filings, Haskell & White intended such statements to influence

15   potential investors and for potential investors to rely on such statements.

16   76.    As a result of the conduct described above, the share price for U.S. Wireless stock was

17   artificially inflated. Further, the misleading financial statements prepared by Defendants falsely

18   indicated that U.S. Wireless had sufficient financial resources to continue its operations into the

19   foreseeable future. Plaintiffs reviewed and relied upon these financial statements in agreeing to

20   accept shares of U.S. Wireless stock as consideration for entering into the Settlement Agreement.

21   Had Plaintiffs known that U.S. Wireless stock was misrepresented to be worth substantially more

22   than its true value, and that U.S. Wireless as a corporation lacked sufficient financial resources to

23   continue as a going concern, Plaintiffs would not have accepted any stock as part of consideration

24   given for a release.

25   / / /

26   / / /

27   / / /

28   / / /

COMPLAINT                                    -16-                                    S334408.4

1

## FIRST CAUSE OF ACTION

2

### (Actual Fraud – Intentional Misrepresentation of Fact [Civil Code § 1710(1)])

3      77.    Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 76 of

4  the Complaint, as if fully set forth herein.

5      78.    In negotiating and executing the Settlement Agreement, Defendants represented,

6  warranted and covenanted to Plaintiffs that U.S. Wireless was eligible to register the "Registrable

7  Securities" as of the date it entered into the Settlement Agreement and that U.S. Wireless would

8  remain eligible to so register the Registrable Securities at all times relevant to the Settlement

9  Agreement.

10      79.    Defendants also represented and covenanted that U.S. Wireless would file a

11  registration statement on Form S-3 within 30 days of the Closing Date of the Settlement Agreement.

12      80.    Plaintiffs were advised that Defendant Pepper Hamilton, as securities counsel had

13  confirmed that all aspects of the transaction were in compliance with the applicable securities laws

14  and regulations.

15      81.    Plaintiffs were also advised that U.S. Wireless was in healthy financial condition, had

16  sufficient funding to last well beyond the last date of repayment of the amounts due under the

17  Settlement Agreement, and that U.S. Wireless had tremendous future prospects and viability.

18      82.    The representations made by Defendants were patently false.  The true facts were that

19  the "Registrable Securities" were not registrable through the filing of the form S-3 at the time the

20  Settlement Agreement was entered into, and could not and would not have been so registrable at any

21  time subsequent, as warranted and covenanted by U.S. Wireless in the Settlement Agreement.

22      83.    Defendants also omitted and failed to disclose the material fact that while discussions

23  leading to the negotiation and execution of the Settlement Agreement were pending, the Director

24  Defendants had ordered and were conducting an investigation into serious misconduct by U.S.

25  Wireless's management.  Had Plaintiffs known of the pending investigation, the results of which

26  clearly would have a serious impact on U.S. Wireless and the value of its stock, Plaintiffs would not

27  have entered into a settlement agreement whereby their primary consideration consisted of U.S.

28

1    Wireless stock. Instead of disclosing this material fact to Plaintiffs, however, the Director

2    Defendants approved and ratified the Settlement Agreement.

3        84.    Further, while the settlement negotiations were pending, Defendants represented to

4    Plaintiffs that the financial condition of U.S. Wireless was far stronger than it actually was, and that

5    the value of U.S. Wireless's stock was much higher than its true worth, as evidenced by a July 2001

6    Amendment to U.S. Wireless's 10KSB, restating the financials of the company to increase

7    accumulated deficit by over $6 million. The financial statement directly attributes this need to re-

8    state the financial statements to the investigation that was conducted into the misconduct by U.S.

9    Wireless management. "As a result of the investigation, the Company determined that certain

10   transactions had been improperly recorded in the Company's financial statements either as

11   compensation expense or as offering costs relating to financing activities, based upon representations

12   by the Company's former Chief Executive Officer and former General Counsel."

13       85.    Defendants affirmatively misrepresented the financial condition of U.S. Wireless,

14   knowing that the company was in substantially worse financial condition than as represented in its

15   filings with the SEC, and that the investigation that was ongoing into misconduct by U.S. Wireless

16   management would potentially ruin U.S. Wireless's long-term prospects and completely and

17   substantially devalue the price of its stock.

18       86.    When Defendants made the above-referenced representations and omissions,

19   Defendants knew or should have known them to be false and made these representations and

20   omissions with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to compromise

21   the claims against Defendants asserted in the Federal Actions and enter into a Settlement Agreement

22   comprised primarily of U.S Wireless stock.

23       87.    At the time these representations were made by Defendants, and at the time Plaintiffs

24   took the actions herein alleged, Plaintiffs were ignorant of the fact that U.S. Wireless was not eligible

25   to register the "Registrable Securities" with the SEC on Form S-3, and Plaintiffs were unaware of the

26   pending investigation commissioned by the Director Defendants into misconduct by U.S. Wireless

27   management. Plaintiffs reasonably and justifiably relied upon the representations and omissions

28   made by the Defendants.

88.    Defendants, by their conduct, fraudulently concealed from Plaintiffs and failed to disclose all material facts regarding the transfer of stock under the Settlement Agreement and the stability of the company. Defendants engaged in this conduct with the intent to deceive, manipulate and defraud, or with a reckless disregard for the consequences of the above-mentioned conduct on Plaintiffs.

89.    In reliance on the foregoing representations and omissions, Plaintiffs were induced to and did enter into the Settlement Agreement with Defendants. Had Plaintiffs known that U.S. Wireless was not eligible to register the shares that Plaintiffs received in consideration for releasing their claims in the Federal Actions, Plaintiffs would not have entered into the Settlement Agreement. Similarly, had Plaintiffs known of the pending investigation, the results of which clearly would have a serious impact on U.S. Wireless and the value of its stock, Plaintiffs would not have entered into a Settlement Agreement whereby the consideration received consisted primarily of U.S. Wireless stock, which would soon be rendered worthless.

90.    Defendants had a duty to disclose fully all material facts to Plaintiffs, yet omitted to disclose all such material facts to Plaintiffs. Defendants made misrepresentations and omissions of material facts, knowing such facts were material and/or were false, intending to induce Plaintiffs to act thereon. Plaintiffs were induced to enter into the Settlement Agreement in reliance on these misrepresentations and omissions.

91.    As a direct and proximate result of the Defendants' intentional and fraudulent material misrepresentations and omissions alleged above, Plaintiffs entered into the Settlement Agreement with Defendants, giving as consideration therefor the release of claims Plaintiffs had against Defendants of in excess of $70 million as asserted in the Federal Actions. Plaintiffs thus have been damaged in an amount in excess of the jurisdictional minimum of this Court and to be determined at trial, but in any event in excess of $70 million.

92.    Had Defendants registered the Registrable Securities within 30 days of the Closing Date, as they were required to do by the Settlement Agreement, Plaintiffs could have re-sold the shares and obtained some value for them, albeit far less than the value which they believed the shares to have as of the date of entry of the Settlement Agreement, and far less than the value of the

1   consideration they provided to Defendants in entering the Settlement Agreement. However, as a

2   result of Defendants' failure to register the Registrable Securities, Plaintiffs were unable to re-sell

3   these shares, which have subsequently been rendered valueless.

4        93.    The aforementioned conduct of Defendants included intentional misrepresentations,

5   deceit, and concealment of material facts known to the Defendants with the intention on the part of

6   Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury and

7   was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

8   Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

9

10  <div align="center">**SECOND CAUSE OF ACTION**</div>

11  <div align="center">**(Negligent Misrepresentation of Fact [Civil Code § 1710(2)])**</div>

12       94.    Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 93 of

13  the Complaint, as if fully set forth herein.

14       95.    As set forth above, in negotiating and executing the Settlement Agreement Defendants

15  represented to Plaintiffs the material fact that U.S. Wireless was eligible to register the "Registrable

16  Securities" through the filing of Form S-3 as of the date it entered into the Settlement Agreement,

17  that U.S. Wireless would remain eligible to so register the Registrable Securities at all time relevant

18  to the Settlement Agreement, and that U.S. Wireless would so register the shares within 30 days of

19  the Closing Date of the Agreement.

20       96.    The representations made by Defendants were false. The true facts were that the

21  "Registrable Securities" were, in fact, not registrable as represented at the time the Settlement

22  Agreement was entered into, and have not been registrable at any time subsequent, as warranted and

23  covenanted by U.S. Wireless in the Settlement Agreement, and that U.S. Wireless would not and

24  could not register the shares within 30 days as it had covenanted to do, as a result of U.S. Wireless's

25  failure to timely file with the SEC a proxy statement for the December 11, 2000 shareholders'

26  meeting. Defendants either knew or should have known of this fact at the time they entered into the

27  Settlement Agreement.

28

---

97.  Defendants also omitted and failed to disclose the material fact that while discussions leading to the negotiation and execution of the Settlement Agreement were pending, the Director Defendants had ordered and were conducting an investigation into misconduct by U.S. Wireless's management, the results of which would clearly have a severe negative impact on U.S. Wireless and the value of its stock.

98.  Defendants also represented that U.S. Wireless was in healthy financial condition, had sufficient funding to last well beyond the last date of repayment of the amounts due under the Settlement Agreement, and that U.S. Wireless had tremendous future prospects and viability.

99.  When Defendants made these representations and omissions, Defendants had no reasonable grounds for believing them to be true or for failing to disclose such facts to Plaintiffs. Defendants knew or should have known that they had failed to timely file with the SEC a proxy statement for the December 11, 2000 shareholders meeting which would preclude U.S. Wireless from being eligible to file a Form S-3 as warranted under the Settlement Agreement.  Further, while negotiating and entering into the Settlement Agreement, Defendants were aware of the investigation being conducted into misconduct by U.S. Wireless management and that the results of such investigation which have a substantial negative impact on the value of U.S. Wireless's stock. There was no reasonable basis for defendants to withhold this material information.

100.  Defendants made these representations and omissions with the intention of inducing Plaintiffs to act in reliance on these representations and omissions by compromising their claims in the Federal Actions and entering into a Settlement Agreement for which the primary consideration was stock.

101.  Plaintiffs, at the time these representations were made by Defendants and at the time Plaintiffs took the actions herein alleged, were ignorant of the falsity of Defendants' representations and believed them to be true.  In reliance on these representations, Plaintiffs were induced to and did enter into the Settlement Agreement with Defendants.  Had Plaintiffs known the actual facts, they would not have relinquished their claims against Defendants in exchange for stock which would soon be rendered worthless.

1    102.    Plaintiffs reasonably and justifiably relied upon the representations and omissions

2    made by the Defendants.  As a direct and proximate result of the Defendants' material

3    misrepresentations and omissions alleged above, Plaintiffs entered into the Settlement Agreement

4    with Defendants, giving as consideration therefor a release of any and all claims Plaintiffs had against

5    Defendants, and thus have been damaged in excess of the jurisdictional minimum of this Court and in

6    an amount to be determined at trial.

7    103.    The aforementioned conduct of Defendants included intentional misrepresentations,

8    deceit, and concealment of material facts known to the Defendants with the intention on the part of

9    Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury and

10    was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

11    Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

## THIRD CAUSE OF ACTION

### (Fraud by Fiduciary [Civil Code §§ 1709, 3333])

14    104.    Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 103 of

15    the Complaint, as if fully set forth herein.

16    105.    As officers and directors of U.S. Wireless, Hilsenrath, Klarman and the Director

17    Defendants owed fiduciary duties to Plaintiffs, as shareholders of U.S. Wireless.

18    106.    Hilsenrath, Klarman and the Director Defendants breached their fiduciary duties to

19    Plaintiffs by making fraudulent material misrepresentations and omissions as detailed above.

20    Specifically, in negotiating and executing the Settlement Agreement, Defendants represented to

21    Plaintiffs that U.S. Wireless was eligible to register the "Registrable Securities" as of the date it

22    entered into the Settlement Agreement through the filing of Form S-3, that U.S. Wireless would

23    remain eligible to so register the Registrable Securities at all time relevant to the Settlement

24    Agreement, and that U.S. Wireless would register the Registrable Securities within 30 days of the

25    Closing Date of the Settlement Agreement.

26    107.    The representations made by Defendants were in fact false.  The true facts were that

27    the "Registrable Securities" were not registrable at the time the Settlement Agreement was entered

28    into, and have not been registrable at any time subsequent, as warranted and covenanted by U.S.

1    Wireless in the Settlement Agreement, and that Defendants could not and would not register the

2    shares within 30 days of the Closing Date of the Settlement Agreement as they had covenanted to do.

3        108.    Defendants also omitted and failed to disclose the material fact that while discussions

4    leading to the negotiation and execution of the Settlement Agreement were pending, the Director

5    Defendants had ordered and were conducting an investigation into misconduct by U.S. Wireless's

6    management, the results of which clearly would have a severe negative impact on U.S. Wireless, and

7    the value of its stock.

8        109.    When Defendants made these representations and omissions, Defendants knew or

9    should have known them to be false and made these representations with the intention to deceive and

10    defraud Plaintiffs and to induce Plaintiffs to act in reliance on these representations in the manner

11    alleged herein, or with the expectation that the Plaintiffs would so act.

12        110.    Plaintiffs, at the time these representations were made by Defendants and at the time

13    Plaintiffs took the actions herein alleged, were ignorant of the falsity of Defendants' representations

14    and believed them to be true. Plaintiffs reasonably and justifiably relied upon the representations and

15    omissions made by the Defendants.

16        111.    In reliance on the foregoing representations and omissions, Plaintiffs were induced to

17    and did enter into the Settlement Agreement with Defendants.  Had Plaintiffs known that U.S.

18    Wireless was not eligible to register the "Registrable Securities," or that the Director Defendants

19    were conducting an investigation into misconduct by U.S. Wireless management, Plaintiffs would not

20    have entered into the Settlement Agreement.

21        112.    As a direct and proximate result of the Defendants' intentional and fraudulent material

22    misrepresentations and omissions alleged above, Plaintiffs entered into the Settlement Agreement

23    with Defendants, giving as consideration therefor the release of claims Plaintiffs had against

24    Defendants of in excess of $70 million as asserted in the Federal Actions.  Plaintiffs thus have been

25    damaged in an amount in excess of the jurisdictional minimum of this Court and to be determined at

26    trial, but in any event in an amount in excess of $70 million.

27        113.    The aforementioned conduct of Defendants included intentional misrepresentations,

28    deceit, and concealment of material facts known to the Defendants with the intention on the part of

1  Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury and

2  was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

3  Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

### FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty of Loyalty)

6    114.    Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 113 of

7  the Complaint, as if fully set forth herein.

8    115.    As officers and/or directors of U.S. Wireless, Hilsenrath, Klarman and the Director

9  Defendants, and each of them, owed to U.S. Wireless and its shareholders, including the Plaintiffs,

10  and each of them, a fiduciary duty of the highest good faith, integrity, and fair dealing.  This fiduciary

11  relationship existed at all relevant times herein, including at the time the parties were negotiating the

12  Settlement Agreement.

13    116.    Defendants, and each of them, breached their fiduciary duties of loyalty and due care

14  to U.S. Wireless and its shareholders, including the Plaintiffs, and each of them, through the acts and

15  omissions alleged herein including, *inter alia,*

16      (a)    Negligently or recklessly breaching their duty of care to manage and conserve

17  the business assets of U.S. Wireless while entering into a Settlement Agreement for which the

18  primary consideration would be useless without such business assets;

19      (b)    Failing to conduct, supervise and direct the business and affairs of U.S.

20  Wireless with reasonable and prudent care to ensure that contractual obligations of U.S. Wireless

21  could and would be fulfilled, including U.S. Wireless's obligations under the Settlement Agreement;

22      (c)    Fraudulently misrepresenting material facts to the Plaintiffs, including the

23  following:

24        (i)    that the shares of stock purchased in the Settlement Agreement were

25          registrable under the SEC;

26        (ii)    that U.S. Wireless would file forms with the SEC within 30 days of the

27          execution of the Settlement Agreement to register the stock purchased

28          in the Settlement Agreement; and

1                (iii)     Fraudulently omitting to disclose material facts to the Plaintiffs,

2                       including that U.S. Wireless's financial records falsely represented the

3                       financial company of the condition, and that Defendants Hilsenrath and

4                       Klarman were being internally investigated by U.S. Wireless for

5                       serious misconduct and their employment would likely be terminated.

6      117.    The conduct and inaction of Hilsenrath, Klarman and the Director Defendants was a

7 substantial factor in inducing the Plaintiffs to enter into the Settlement Agreement.

8      118.    The acts and omissions of Hilsenrath, Klarman and the Director Defendants, as

9 alleged herein, were a substantial factor in causing Plaintiffs to accept stock in exchange for

10 Plaintiffs' release of all claims against U.S. Wireless, Hilsenrath and Klarman.

11      119.    The Plaintiffs have been damaged by reason of Hilsenrath's, Klarman's and the

12 Director Defendants' breach of their fiduciary duties to U.S. Wireless and its shareholders, including

13 the Plaintiffs, and each of them, in an amount to be proved at trial.

14                      **FIFTH CAUSE OF ACTION**

15                      **(Breach of Contract)**

16      120.    Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 119 of

17 the Complaint, as if fully set forth herein.

18      121.    As set forth above, on or around March 13, 2001, the Parties entered into the

19 Settlement Agreement. Shortly thereafter, the Parties modified the contract in writing to provide that

20 the schedule of payments pursuant to the Settlement Agreement would be as follows: $333,333.34

21 on or before July 1, 2001 (the "First Installment"); $333,333.33 on or before October 1, 2001 (the

22 "Second Installment"); and $333,333.33 on or before January 1, 2001 (the "Third Installment").

23      122.    U.S. Wireless failed to pay Plaintiffs any portion of the Second or Third Installment.

24      123.    Hilsenrath and Klarman also failed to pay Plaintiffs any portion of the Second or Third

25 Installment.

26      124.    On or about June 22, 2001, in response to Plaintiffs' repeated requests for U.S.

27 Wireless to register the Registrable Securities as required under the Settlement Agreement, U.S.

28 Wireless's counsel confirmed U.S. Wireless's inability to file a Form S-3 to register the shares.

1    Counsel advised that this inability to register the shares was a result of U.S. Wireless's failure to

2    timely file with the Securities Exchange Commission ("SEC") a proxy statement for the

3    December 11, 2000 shareholders meeting.

4        125.    To date, U.S. Wireless still has not filed a registration statement with the SEC or

5    otherwise registered Plaintiffs' shares as required under the Settlement Agreement.

6        126.    Plaintiffs have performed all obligations on their part to be performed under the

7    Settlement Agreement and all subsequent modifications, or have been excused from further

8    performance by material breach of the Settlement Agreement by Defendants.

9        127.    As a direct and proximate result of Hilsenrath and Klarman's breach of the Settlement

10   Agreement, Plaintiffs have been damaged in an amount to be proved at trial.

11

12                            **SIXTH CAUSE OF ACTION**

13           **(Fraud – Rule 10b-5 under Section 10(b) of Securities Exchange Act of 1934)**

14       128.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 127 of

15   the Complaint, as if fully set forth herein.

16       129.    Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any

17   person to "use or employ, in connection with the purchase of sale of any security registered on a

18   national securities exchange or any security not so registered, any manipulative or deceptive device

19   or contrivance in contravention of such rules and regulations as the [SEC] may prescribe. 15 U.S.C.

20   § 78(b).

21       130.    To implement Section 10(b), the SEC adopted Rule 10b-5, which provides, in relevant

22   part:

23           "It shall be unlawful for any person, directly or indirectly …,

24           (a) [t]o employ any device, scheme, or artifice to defraud,

25           (b) to make any untrue statement of material fact or to omit to state a material fact

26               necessary in order to make the statements made, in the light of the circumstances

27               under which they were made, not misleading, or

28

---

1             (c) to engage in any act, practice, or course of business which operates or would

2                      operate as a fraud or deceit upon any person,

3          in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

4          131.    On or about March 13, 2001, Plaintiffs purchased, by and through the Settlement

5  Agreement, in exchange for the release of all claims and causes of action against U.S Wireless, and

6  Defendants Hilsenrath and Klarman, certain shares of stock from U.S. Wireless, as alleged above.

7          132.    In connection with the purchase of the Registrable Securities, Defendants Hilsenrath,

8  Klarman and the Director Defendants made material misrepresentations and omissions with the intent

9  to deceive and defraud Plaintiffs.  Specifically, Defendants omitted and failed to disclose in their

10  negotiations with plaintiffs, the fact that an investigation was ongoing into U.S. Wireless

11  management, the results of which could cause the price of U.S. Wireless Stock to plummet.

12  Defendants further misrepresented that U.S. Wireless had strong, strategic and long-term prospects,

13  which it did not, and that the company was in solid and healthy financial condition, which it was not.

14  Defendants also omitted to disclose to Plaintiffs that its financial records falsely represented the

15  financial condition of the company.

16          133.    Defendants fraudulently misrepresented facts to the Plaintiffs, and each of them,

17  through the acts alleged herein, by and through the provisions of the Settlement Agreement.

18          134.    As a result of all Defendants' material misrepresentations and omissions as alleged

19  herein, Defendants are liable to Plaintiffs, who are entitled to sue for damages as a result of

20  Defendants' disposition of the security.

21          135.    In addition, Defendant Haskell & White reviewed and prepared the financial records

22  and assisted in the preparation of U.S. Wireless's financial records and statements filed with the

23  SEC. These statements contained material misstatements of fact that influenced the price of U.S.

24  Wireless Stock and artificially increased the value of that stock. As of December 31, 1999, accrued

25  liabilities were understated by over $500,000, accumulated deficit was understated by over $6

26  million, and paid in capital was understated by $5,599,012. The failure to account for these debt

27  obligations falsely and inaccurately increased the value of U.S. Wireless stock. It was on this inflated

28

1 | stock value that Plaintiffs relied in entering into the Settlement Agreement whereby the primary

2 | consideration was U.S. Wireless stock.

3 |     136.   These misstatements later came to light in another securities filing of U.S. Wireless.

4 | Shortly after it had entered in to the Settlement Agreement. Specifically, U.S. Wireless was forced to

5 | file an amendment to its financial report restating previously reported amounts.

6 |
7 |
8 |
9 | > "As described in detain in Note 2 to the condensed consolidated financial statements, in May 2001 the Company announced that it had completed an investigation that resulted in the termination of the Company's former Chief Executive Officer and the resignation of the Company's former General Counsel. As a result of the investigation, the Company determined that the **original accounting treatment** for certain transactions was incorrect, and accordingly, has restated the previously reported amounts."

10 |     137.   Acting individually and pursuant to a common course of conduct, Defendant Haskell

11 | & White, directly and indirectly, induced the purchase of stock pursuant to the Settlement Agreement

12 | by making material misrepresentations. Defendant Haskell & White made statements which were, at

13 | the time and in light of the circumstances under which they were made, false and misleading with

14 | respect to such material facts, or which omitted to state material facts necessary in order to make the

15 | statements made, in light of the circumstances under which they were made, not misleading, and

16 | which Defendant Haskell & White knew or had reasonable grounds to believe were false and

17 | misleading.

18 |     138.   The representations, failures to disclose, misrepresentations and suppression of

19 | information herein alleged to have been made by Defendants, and each of them, were made with the

20 | intent to deceive, defraud and induce the Plaintiffs to purchase the stock.

21 |     139.   Plaintiffs, at the times of the actions of Defendants, and each of them, were ignorant of

22 | the falsity of the representations and ignorant of the existence of the facts misrepresented,

23 | undisclosed and suppressed.

24 |     140.   Plaintiffs sustained damages as a result of Defendants' acts, because they would not

25 | have purchased the stock in exchange for their release of claims against Defendants if they had been

26 | aware of Defendants' negligently and intentionally misleading statements and concealments.

27 |     141.   By reason of the foregoing, Defendants violated or participated in the violation of

28 | Rule 10b-5 under the Securities Exchange Act of 1934.

1

## SEVENTH CAUSE OF ACTION
### (Joint and Several Liability of Management Principals or Materially Aiding Personnel –
### California Corporations Code §25504)

2

3      142.    Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 141 of

4   the Complaint, as if fully set forth herein.

5      143.    Section 25401 of the California Corporations Code provides, in pertinent part: "It is

6   unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this

7   state by means of any written or oral communication which includes an untrue statement of a material

8   fact or omits to state a material fact necessary in order to make the statements made, in light of the

9   circumstances under which they were made, not misleading."

10     144.    Plaintiffs allege that on or about March 13, 2001, Plaintiffs purchased, by and through

11   the Settlement Agreement, certain shares of stock from U.S. Wireless in exchange for the release of

12   all claims and causes of action against Defendants.

13     145.    U.S. Wireless fraudulently misrepresented material facts to the Plaintiffs, and each of

14   them, through the acts and omissions alleged herein above. As a result of U.S. Wireless's fraudulent

15   material misrepresentations, and omissions of material facts that made its representations misleading,

16   as alleged herein, U.S. Wireless is liable to Plaintiffs under California Corporations Codes §§25401

17   and 25501. However, U.S. Wireless is a now defunct corporation that has filed for Chapter 11

18   bankruptcy.

19     146.    Notwithstanding U.S. Wireless's now defunct status, acting individually and pursuant

20   to a common course of conduct, Officer and Director Defendants aiding U.S. Wireless in its violation

21   of Corporations Code § 25401.

22     147.    Section 25504 of the California Corporations Code provides, in pertinent part:

23         "Every person who directly or indirectly controls a person liable under
           Section 25501 or 25503, every partner in a firm so liable, every
24         principal executive officer or director of a corporation so liable, every
           person occupying a similar status or performing similar functions,
25         every employee of a person so liable who materially aids in the act or
           transaction constituting the violation, and every broker-dealer or agent
26         who materially aids in the act or transaction constituting the violation,
           are also liable jointly and severally with and to the same extent as such
27         person, unless the other person who is so liable had no knowledge of or
           reasonable grounds to believe in the existence of facts by reason of
28         which the liability is alleged to exist."

---

1    148.    As alleged above, Plaintiffs are informed and believe and thereon allege that U.S.

2    Wireless violated Section 25401 of the California Corporations Code, thereby causing U.S. Wireless

3    to be liable to Plaintiffs pursuant to Section 25501.

4    149.    Officer and Director Defendants were, at the time of the acts alleged herein, principal

5    members of the management of U.S. Wireless and/or directors of U.S. Wireless. Acting individually

6    and pursuant to a common course of conduct, Officer and Director Defendants, directly and

7    indirectly, induced the purchase of stock pursuant to the Settlement Agreement by materially aiding

8    in the making of material misrepresentations and omissions by Defendant U.S. Wireless.

9    Specifically, Officer and Director Defendants omitted to disclose that Defendants Hilsenrath and

10    Klarman were being investigated by U.S. Wireless for serious misconduct and their employment

11    would likely be terminated, that such misconduct was related to the manipulation of the stock and

12    finances of the company, and that U.S. Wireless's financial records falsely represented the financial

13    condition of the company.

14    150.    For the purpose of inducing the purchase of stock by Plaintiffs, the Officer and

15    Director Defendants materially aided U.S. Wireless in the making of the statements and omissions

16    detailed above, which were, at the time and in light of the circumstances under which they were

17    made, false and misleading with respect to such material facts, or which omitted to state material

18    facts necessary in order to make the statements made, in light of the circumstances under which they

19    were made, not misleading, and which Officer and Director Defendants knew or had reasonable

20    grounds to believe were false and misleading.

21    151.    The materially aiding by Officer and Director Defendants in the representations,

22    failure to disclose, misrepresentations and suppression of information alleged to have been made by

23    U.S. Wireless was made with the intent to induce the Plaintiffs to purchase the stock.

24    152.    Plaintiffs, at the time of the actions of Officer and Director Defendants, were ignorant

25    of the falsity of the representations and ignorant of the existence of the facts misrepresented,

26    undisclosed and suppressed.

27    153.    Plaintiffs sustained damages as a result of Officer and Director Defendants' acts,

28    because they would not have purchased the stock in exchange for their release of claims against U.S.

1  Wireless if they had been aware of U.S. Wireless's misleading statements and concealment which

2  were known to, approved by, and carried out by Officer and Director Defendants.

3      154.    By reason of the foregoing, Officer and Director Defendants violated or participated in

4  the violation of Section 25504 of the California Corporations Code, thereby entitling Plaintiffs to

5  recover damages according to proof at trial.

6                              **EIGHTH CAUSE OF ACTION**
   **(Joint and Several Liability of Materially Assisting Persons – California Corporations Code**
7                                      **§25504.1)**

8

9      155.    Plaintiffs incorporate by reference and re-allege all of the foregoing paragraphs as

10 though fully set forth herein.

11     156.    Section 25504.1 of the California Corporations Code provides, in pertinent part:

12 "Any person who materially assists in any violation of Section 25110, 25120, 25130, 25133, or

13 25401, or a condition of qualification under Chapter 2 (commencing with Section 25110) of Part 2 of

14 this division imposed pursuant to Section 25141, or a condition of qualification under Chapter 3

15 (commencing with Section 25120) of Part 2 of this division imposed pursuant to Section 25141, or an

16 order suspending trading issued pursuant to Section 25219, with intent to deceive or defraud, is

17 jointly and severally liable with any other person liable under this chapter for such violation."

18     157.    Plaintiffs are informed and believe and thereon allege that U.S. Wireless violated or

19 participated in the violation of Section 25401 of the California Corporations Code, thereby causing

20 Defendant U.S. Wireless to be liable for damages to Plaintiffs pursuant to Section 25501, as set forth

21 more fully above.

22     158.    Defendants American Tower, Liberty Venture, Rosner, Cozen & O'Conner, WT

23 Holdings, Pepper Hamilton, and Haskell & White (law firm, financier, and accounting firm

24 defendants) materially assisted defendant U.S. Wireless in violating Section 25401.

25     159.    Acting individually and pursuant to a common course of conduct, law firm defendants,

26 directly and indirectly, induced the purchase of stock pursuant to the Settlement Agreement by

27 materially aiding in the making of material misrepresentations by U.S. Wireless which were, at the

28 time and in light of the circumstances under which they were made, false and misleading with respect

1  to such material facts, or which omitted to state material facts necessary in order to make the

2  statements made, in light of the circumstances under which they were made, not misleading, and

3  which law firm defendants knew or had reasonable grounds to believe were false and misleading.

4      160.    Specifically, law firm defendants failed to advise U.S. Wireless of its obligations to

5  disclose the ongoing investigation into management misconduct which could have a severe negative

6  impact on the value of the stock Plaintiffs were to receive in exchange for release of their claims.

7      161.    Acting individually and pursuant to a common course of conduct, financier

8  defendants, directly and indirectly, induced the purchase of stock pursuant to the Settlement

9  Agreement by materially aiding in the making of material misrepresentations by U.S. by ratifiying

10  the Settlement Agreement under which the principal consideration was U.S. Wireless stock, all the

11  while knowing that an investigation was going on that threatened the very existence of the company.

12      162.    For the purpose of inducing the purchase of stock by Plaintiffs, financier defendants

13  materially aided U.S. Wireless in the making of statements which were, at the time and in light of the

14  circumstances under which they were made, false and misleading with respect to such material facts,

15  or which omitted to state material facts necessary in order to make the statements made, in light of

16  the circumstances under which they were made, not misleading, and which law firm defendants knew

17  , or had reasonable grounds to believe were false and misleading.

18      163.    Acting individually and pursuant to a common course of conduct, accounting firm

19  defendant, directly and indirectly, induced the purchase of stock pursuant to the Settlement

20  Agreement by materially aiding in the making of material misrepresentations by U.S. Wireless by

21  preparing, creating and filing false and misleading financial statements concerning the condition and

22  value of U.S. Wireless, upon which Plaintiffs relied in entering into the Settlement Agreement.

23      164.    For the purpose of inducing the purchase of stock by Plaintiffs, accounting defendant

24  materially aided U.S. Wireless in the making of statements which were, at the time and in light of the

25  circumstances under which they were made, false and misleading with respect to such material facts,

26  or which omitted to state material facts necessary in order to make the statements made, in light of

27  the circumstances under which they were made, not misleading, and which accounting firm defendant

28  knew or had reasonable grounds to believe were false and misleading.

1    165.    Plaintiffs are informed and believe that the materially aiding by law firm, financier,

2  and accounting firm defendants in the representations, failure to disclose, misrepresentations and

3  suppression of information alleged to have been made by U.S. Wireless was made with the intent to

4  deceive and defraud Plaintiffs and induce the Plaintiffs to purchase the stock.

5    166.    Plaintiffs, at the time of the actions of the law firm, financier, and accounting firm

6  defendants, were ignorant of the falsity of the representations and ignorant of the existence of the

7  facts misrepresented, undisclosed and suppressed.

8    167.    Plaintiffs sustained damages as a result of the law firm, financier and accounting firm

9  defendants' acts, because they would not have purchased the stock in exchange for their release of

10  claims against U.S. Wireless if they had been aware of U.S. Wireless's misleading statements and

11  concealment of which U.S. Wireless was advised by the law firm and accounting defendants and

12  which were known to, approved by, and carried out by the law firm, financier and accounting firm

13  defendants.

14    168.    By reason of the foregoing, the law firm, financier and accounting firm defendants

15  violated or participated in the violation of Section 25504.1 of the California Corporations Code,

16  thereby entitling Plaintiffs to recover damages according to proof at trial.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as follows:

2    1.    For damages according to proof at trial;

3    2.    For punitive damages according to proof at trial;

4    3.    For costs of suit herein incurred;

5    4.    For reasonable attorneys' fees; and

6    5.    For such other and further relief as the court may deem proper.

7    ## DEMAND FOR JURY TRIAL

8    Plaintiffs hereby demand a jury trial on each and every claim and issue asserted in the

9    counter-claim as permitted by law.

10   DATED:  March ⎝⎞, 2002                    Respectfully submitted,

11                                             NIXON PEABODY LLP

12

13

14   By: _____
                                             Glenn E. Westreich
15                                           Attorneys for Plaintiffs
                                             JANVRIN HOLDINGS LIMITED,
16                                           RYBURN LIMITED and CROSSGAR
                                             LIMITED

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                              -34-                              S334408.4