# EXHIBIT A

## THE HILSENRATH COURT PROCEEDINGS

26 June 2007

Ian Kantor - Chief Executive Officer
Bas Kardol - Chairman
Insinger de Beaufort Holdings S.A.
Herengracht 537
1017 BV Amsterdam
P.O. Box 10820
1001 EV Amsterdam
The Netherlands
Tel +31 (0)20 5215 000
Fax +31 (0)20 5215 009

Dear Mr. Kantor and Mr. Kardel.

On behalf of Insinger de Beaufort Holdings S.A., you are hereby
served with a complaint filed against Insinger de Beaufort and
summons of the United States Federal Court in San Francisco,
California. [Case No. 3:07-cv-3312 CRB]

The Presiding Judge in this case is the Honorable Charles R.
Breyer.

This present correspondence represents proper service of summons
pursuant to the Hague Convention on the Service Abroad of
Judicial and Extra-Judicial Documents in Civil and Commercial
Matters, 28 U.S.C.A.

Pursuant to Article 10(a) of The Hague Service Convention the
Netherlands and Luxembourg, where Insinger's has its registered
office, has permitted service by international registered mail.

You are requested to file a response with the Court Clerk in San
Francisco, 450 Golden Gate Avenue - 16ᵗʰ Floor, no later than 20
days after the issuance of the summons.

I hereby alert you that upon failure to respond to this complaint
within 20 days, I will promptly file a petition for default
against you with the Federal Court.

Attached to this letter please find the following documents, with which I am obligated by the Federal Court to serve you:

1. Summons
2. Complaint and Exhibits A, B & C
3. Order setting initial case management conference
4. Filing Instructions
5. ECF Registration Handout
6. Notice of availability of Magistrate Judge
7. ADR Procedures

Best regards,

*H/O Hilsenrath*

Hana and Oliver Hilsenrath

# United States District Court
## NORTHERN DISTRICT OF CALIFORNIA

E-filing

HANA HILSENRATH AND OLIVER
HILSENRATH,

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

V.

EQUITY TRUST (JERSEY) LIMITED ET AL

# C 07 3312



TO: (Name and address of defendant)

EQUITY TRUST (JERSEY) LIMITED, CANDOVER INVESTMENTS PLC, INSINGER DE BEAUFORT SA,
JARDINE MATHESON HOLDINGS LIMITED, GRANT BROWN, MELVYN KALMAN, JOHN PERKINS,
CAROLINE BOUGEARD
Equity Trust House, P.O. Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands,UK
Insinger de Beaufort 131 Finsbury Pavement, London EC2A 1NT/UK.
Candover, 20 Old Bailey, London-EC4M 7LN , Jardine House, 33–35 Reid Street, Hamilton, Bermuda.

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506

an answer to the complaint which is herewith served upon you, within     20     days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in
the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking
CLERK

DATE JUNE 25, 2007

E-filing

(BY) DEPUTY CLERK

1  HANA HILSENRATH
   OLIVER HILSENRATH
2  822 Eastbrook Court
   Danville, CA 94506
3  Telephone: 925 212 6299
   Facsimile: 925 736 7571
4  ohlx@sbcglobal.net

5  PLAINTIFFS *IN PRO PER*

6

ORIGINAL
FILED

JUN 2 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

CRB

7

8              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
9

10 HANA HILSENRATH AND OLIVER      Case No.
   HILSENRATH,                     C 07    3312
11
        Plaintiffs,                COMPLAINT FOR THE VIOLATION OF
12                                 THE RACKETEER INFLUENCED AND
        v.                         CORRUPT ORGANIZATIONS (RICO) ACT
13                                 18 U.S.C.S. § 1961 ET SEQ.,
                                   HARBORING A CIVIL CONSPIRACY OF
14 EQUITY TRUST (JERSEY) LIMITED,  EXTORTION, INVASION OF PRIVACY,
   CANDOVER INVESTMENTS PLC,       AIDING AND ABETTING A MALICIOUS
15 INSINGER DE BEAUFORT SA, JARDINE PROSECUTION
   MATHESON HOLDINGS LIMITED, GRANT
16 BROWN, MELVYN KALMAN, JOHN
   PERKINS, CAROLINE BOUGEARD, AND
17 DOES 1-10,                      [JURY TRIAL DEMAND]

18      Defendants.

19 ----------------------------------

20                    INTRODUCTION

21

22 1.  In May 2007, in *Case No: 4:02-cv-1068 Janvrin Holdings Limited*
       *et al v. Hilsenrath et al.* the Federal Court determined that
23     Janvrin at al. invaded the Hilsenraths' privacy and proceeded
24     to blackmail Hilsenrath and his company, while causing
25     significant damage, financial and personal. The federal Court
26     concluded that Janvrin et al are to financially compensate the
27     Hilsenraths in damages and pretrial assessment on account of
28     their actions.

HILSENRATH V. CANDOVER, EQUITY ET AL.

2. Janvrin et al effected their scheme with no employees, management or facilities of their own. Janvrin et al effected their scheme by means of its harboring corporate parent over more than a decade, from 1996 to 2007.

3. Janvrin et al's harboring corporate parent provided the strategy and the means to plan and execute the conspiracy: the legal counsel the financing, the management and the employees.

4. Janvrin et al's harboring corporate parent did not change in substance over the relevant decade, although it changed names and control several times.

5. Nevertheless, with each change of name or control, Janvrin et al's parent remained fully committed to the conspiracy in subject.

6. At the very beginning of the conspiracy in 1996, Janvrin's harboring parent was known as (1) Matheson Trust (Jersey) and was controlled by Jardine Matheson Holdings Limited; (2) in 2000 it changed its name to Insinger de Beaufort Trust (Jersey) Limited and was controlled by Insinger de Beaufort SA and (3) in 2003 it changed its name again to Equity Trust (Jersey) Limited and turned over control to Candover Investments PLC.

7. The persons involved stayed the same over most of that decade.

8. By this present complaint, plaintiffs Hana and Oliver Hilsenrath are now seeking a judgment against the individual harboring parents of Janvrin et al. and their executives

## THE PARTIES

Plaintiffs

9. Plaintiffs Hana and Oliver Hilsenrath (referenced collectively as THE HILSENRATHS) are private individuals and professionals. The Hilsenrath family were the largest shareholders of US Wireless Corporation (USWC), a former publicly traded

California based company. Oliver HILSENRATH was the founder, Chairman and CEO of US Wireless Corporation.

Defendants

10. Equity Trust (Jersey) Limited (EQUITY) is a Jersey/UK based trust company and it is the owner and operator of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited (Janvrin at al).

11. Janvrin et al are three shell corporations set up, owned, financed, and operated by Equity.

12. At all relevant time to this complaint Equity Trust, under its various names, provided Janvrin et al with all personnel, directors, secretaries, nominee shareholders, legal advisers, banking facilities, funding, communication facilities and office facilities.

13. Janvrin et al never had management, interests, officers, funds or facilities other than those of-and-by Equity Trust.

14. Candover Investment PLC (CANDOVER) is an investment trust listed on the London Stock Exchange.

15. CANDOVER acquired the majority control over Insinger de Beaufort Trust (Jersey) Limited (INSINGER TRUST) through a management buyout and gave it its abovementioned new name Equity Trust (EQUITY). Candover have full and competent control over Equity since 2003.

16. Insinger de Beaufort Holdings SA (INSINGER) is an Anglo-Dutch banking group and owner of the Bank Insinger de Beaufort NV, a signatory on the US patriot Act for financial transparency.

17. INSINGER were the controlling owner of INSINGER TRUST between 2000 and 2003, when they sold INSINGER TRUST to CANDOVER.

18. INSINGER acquired Matheson Trust (Jersey) Limited in June 2000 from Jardine Matheson Holdings Limited and changed its name to INSINGER TRUST.

19. Jardine Matheson Holdings Limited (JARDINE) is a Hong-Kong
Based conglomerate and the original controlling owner of
Matheson Trust (Jersey) Limited sold to INSINGER in June 2000
as abovementioned.

20. Throughout the relevant decade 1996-2007 Matheson Trust,
Insinger Trust and Equity Trust operated in the same facility
with the same employee base in Jersey/UK and will be
referenced in this complaint with its present name Equity
Trust (Jersey) Limited (EQUITY TRUST).

21. At all relevant time to this complaint Melvyn Kalman (KALMAN),
John Perkins (PERKINS), Grant Brown (BROWN) and Caroline
Bougeard (BOUGEARD) were executives of both Equity Trust and
Janvrin et al.

22. Kalman left Equity Trust in 2003. Perkins left Equity Trust in
2005. Brown and Bougeard are still in both aforementioned
positions till the present day.

23. The California lawfirm Nixon Peabody LLP (NIXON) was hired as
a legal utensil to implement Equity's extortion plan in the
US.

## JURISDICTION AND VENUE

24. The Federal Court has jurisdiction over this case and the
venue in the Northern District of California is adequate
pursuant to 28 U.S.C. §1330, §1331, §1332.

25. Plaintiffs are US citizens and residents of the northern
district of California.

26. Defendants are foreign (non-US) corporations and foreign
citizens. The complaint refers to the solicitation of services
by Equity Trust of the plaintiffs and their company in the
United States. The subject of the complaint refers to
securities and corporate mater of US Wireless Corporation, a
publicly trades company operating out of San Ramon California.

27. This case is related to two other federal cases: *4:02-cv-01068-CW-BZ and 3:03-cr-00213-WHA*

## LIMITATIONS OF STATUTE

28. This present complaint regarding harboring of a criminal organization and of criminal acts culminated recently in defendants' malicious prosecution in the case Janvrin et al v. Hilsenrath et. al. (4:02-cv-1068 CW,BZ). Defendants' own case was dismissed by the Federal Court in Oakland, California on March 12, 2007 - three months ago. No limitations of statute are therefore applicable to this complaint.

## GENERAL ALLEGATIONS:

## ARCHITECTURE OF A CRIMINAL ORGANIZATION

29. Equity trust under its three relevant names (Matheson, Insinger and Equity) and under its three relevant controlling owners (Jardine Matheson, Insinger de Beaufort and Candover) have build and maintained a professional platform for hosting criminal activity and racketeering.

30. Equity Trust have refined and perfected a corporate architecture that allows performing criminal acts without the possibility of identifying the criminal behind the act. Plaintiffs have obtained ample documentation and ample forensic analysis to establish the inner works of the Equity trust's "protected hit and run" strategy. [Exhibit A]

31. This strategy is complex, and required planning and legal expertise over a decade, therefore it is unlikely to have unfolded without the supervision, awareness and hands-on participation of Equity Trust's controlling shareholders Jardine, Insinger and Candover, who also benefited from the fruits of this activity.

32. It is very likely that this "protected hit and run" strategy and corporate architecture can and is used to promote unlawful, criminal and even highly dangerous schemes all over the world, given the broad reach of Equity Trust and its variety of controlling owners.

33. STEP 1 in Equity's strategy is the set up of a Trust in Jersey. The trust owns the activity to be performed. It is unlisted and confidential.

34. In this current case a trust by the name of THE REVENGE TRUST was set up to extort the Hilsenraths and their company US Wireless.

35. STEP 2 The Trust is run by a trustee who himself is another company formed by Equity: in our case DERARD LIMITED formed in another jurisdiction such that the same laws or courts would not be able to deal with actions of REVENGE and DERARD.

36. STEP 3 The actual criminal activity will not be done by REVENGE or DERARD, but by a lower level SHELL CORPORATION that will be wholly owned by the Trust (in our Case REVENGE trust). Those shell corporation were too incorporated in a separate jurisdiction than Jersey/UK such as to confuse the legal jurisdictions and provide for lack of ability to sue or investigate all three in one place: such came to life Janvrin, Rayburn and Crossgar (case: *4:02-cv-1068 Janvrin Holdings Limited et al v. Hilsenrath et al.*) all incorporated in the British Virgin Islands (BVI).

37. STEP 4 To further protect the employees of Equity tasked with operating the criminal network, the Directors and Secretaries of the operating arm, in our case Janvrin et al, are also not personally exposed in the affairs of the shells. The actual directors and secretaries are another set of corporation, in our case Wesley Secretaries and CH Limited. These corporations

1   too are carefully formed in a different jurisdiction than
2   Revenge and Equity themselves.

3   38.  Step 5 The last protective layer of the criminal corporate
4        architecture are the shareholders: a person who might be or
         might act as a shareholder at the very remote end of the
5        structure (of say - Janvrin et al) could be found liable of
6        culpable for the criminal acts intended. Therefore an
7        additional protective layer is build in the form of a
8        shareholder nominee - another company, CN Limited in our case:
9        the virtual shareholder.

10              **MODUS OPERANDI OF THE CRIMINAL ORGANIZATION**

11  39.  The criminal organization when ready for business is
12       performing its various acts in far foreign countries, from
13       Jersey/UK, like California and the USA.

14  40.  Janvrin is next tasked to stealing documents, extorting,
         initiating multi million dollars malicious litigations etc.
15  41.  In the process it hires million Dollar American law firms and
16       advisors to implement the plan. Janvrin et al and other shell
17       corporations pay the attorneys. They are thus far removed from
18       Equity, Candover, Revenge and others who are to enjoy the
         fruits of the actions taken.
19
20  42.  Revenues from the crime are being transferred to overseas
         banks (Matheson bank, Royal Bank of Scotland, etc. in our
21       case) and then dissipate to other obscure corporations and
22       unknown persons.

23  43.  When however their scheme is uncovered, the damage identified
24       and the courts get involved, in our case the federal courts in
         San Francisco and Oakland, the criminal organization is
25       melting away with no traces left and no one liable.
26  44.  Such when the Hilsenraths in case: *4:02-cv-1068 Janvrin*
27       *Holdings Limited et al v. Hilsenrath et al* brought a
28

1   counterclaim against Janvrin – Equity Trust closed Janvrin et
2   al.

45.   The directors, the shareholder nominees and the structure
3     vanished: no corporations, no people, and no assets.

46.   When the Court in Oakland summoned the Janvrin litigants to
5     appear in court after 7 years of frivolous litigation: no one
6     showed up - there was nobody accountable - just a set of
7     insignificant corporations in half dozen foreign
8     jurisdictions.

47.   In a summary report of the forensic expert who has
9     investigated this case, he summarizes the inner works of the
10    Equity Trust criminal structure: "REVENGE trust sent an
11    threatening letter to Derard Limited about the court order to
12    appear in the Oakland federal court, Derard Limited then sent
13    another urgent and threatening letter to the shareholder
14    nominee CH Limited, who threatens in no ambiguous words the
15    director nominee of Janvrin, Ryburn and Crossgar who is CN
16    Limited. This latter sends a threatening answer back to
      Revenge Trust".

48.   However all of the above urgent correspondence is being
18    written up by the one and very same person at Equity Trust, in
19    that very same day, to that very same person, bears the same
20    unidentified signature of that person that signs without
21    identity for all the above: Revenge trust, Equity trust,
22    Janvrin, Rayburn, Crossgar, Derard Limited and CH Limited and
      CN Limited.[Exhibit B]

49.   The address of all companies and entities bearing the same
24    signature of the nameless signatory are one and the same: that
25    of Equity Trust (Jersey) Limited - 28-30 The Parade St.
26    Helier, Jersey/United Kingdom - the harboring host of the
      scheme.

50. The "system" has accomplished its purpose: there is no tangible person or entity accountable for evading the Federal order to show up in US court on this tortuous and malicious 7 years litigation.

51. Nonetheless, Kalman, Perkins, Brown, Bougeard and others were identified as acting behind the above criminal structure.

52. An inspection of the Equity Trust public information substantiates the concealment of Equity's top management (in its various incarnations).

53. Equity Trust[1], one of the largest financial trust companies has offices around the world (including in the United States), sales reps around the world, but no trace of top management: No Chairman, No CEO, No General Manager, No CFO, No General Counsel etc.

54. Plaintiffs allege that the *de facto* control of Equity trust, (formerly Insinger trust, formerly Matheson trust) and its modus operandi relies and stems from their controlling owners throughout the entire period of the alleged conspiracy (2000-2007).

55. Such, Candover facilitated a Management Buyout[2] when taking control of Insinger Trust in 2003; therefore their alliance with the so-called Insinger/Equity Management is self-understood.

56. Above and beyond, Insinger de Beaufort is a signatory to the US patriot act and therefore has and had a commitment to transparency in its main and subsidiary operations.

---

[1] http://www.equitytrust.com/content/index.htm

[2] http://www.internationallawoffice.com/Deals/Detail.aspx?r=2238

**THE FACTS**

57.  In March 2000, three Equity trust (then Matheson trust)
     corporations: Janvrin, Rayburn and Crossgar hired the US
     lawfirm of NIXON et al. to implement a scheme to improperly
     sell expired securities of US Wireless Corporation in the open
     market.

58.  The Equity shells Janvrin et al proceeded with Nixon's
     assistance to file litigation in federal court to provide the
     vehicle to coerce US Wireless and its management to give in to
     their pressure to trade the securities.

59.  In order to further their scheme, in and about November 2000,
     Janvrin et al. conspired[3] with NIXON at al and others to:
     a. unlawfully obtain, use and trade private financial
        records of the HILSENRATHS,
     b. blackmail the HILSENRATHS and others in his company with
        making those records public,
     c. impeach the company and hurt its publicly traded stock
     unless a favorable arrangement was made on behalf of Janvrin
     et al. and NIXON.

60.  Janvrin et al and Nixon personally and knowingly accessed
     confidential financial records of the HILSENRATHS held at
     Equity Trust. The retrieval of records occurred, but was not
     limited, to a week long effort in London, in which Equity
     executives Kalman and Perkins, Nixon personnel and Janvrin
     selected, retrieved and photocopied HILSENRATH family records

---

[3] **Unruh v. Truck Ins. Exch., 7 Cal. 3d 616, ***
To state a cause of action for conspiracy the complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting. (*Mox Incorporated v. Hrager, supra (debita) Memorandum Inc et a.* (1911) 17 Cal 2d 161 183 [110 P 2d 566]; see *Hoc v. Southern Pacific Co.* (1965) 233 Cal App 3d 50, 60-65 [33 Cal Rptr 658]); **Witkin,** *op. cit. supra,* Pleading, § 774, p. 2390.)

"Malice is properly pleaded by alleging the wrongful motive, intent or purpose." (3 Witkin, *op. cit. supra,* Pleading, § 766, at p. 2383.) A general allegation of such intent is sufficient to support a claim for exemplary damages. (*3 Witkin, op. cit. supra, Pleading, § 769, p. 2385.*)

1   and brought them back to California to put them to use as
2   decided between them.

3   61.  One of the 9 participants at the broadly attended London
4        documents-harvesting meeting describes the events in a sworn
5        affidavit:

6            "The abovementioned confidential Hilsenrath
7            records were handed to the Nixon Peabody
8            attorneys with the objective to impeach
9            Hilsenrath with his holdings in offshore
10           trusts and get the CEO Hilsenrath fired.
11           Hilsenrath was identified as the primary
12           hurdle in the Janvrin litigation."[4]

13  62.  On several documented occasions between December 2000 and
14       April 2001, defendants through their attorneys made specific
15       threats to employees and advisors of US Wireless stating that
16       they will disturb the company by use of the stolen records if
17       their demands were not met.

17  63.  Under the pressure of the above threats, the Board of
18       Directors of USWC (1) settled the dispute with Janvrin et al
19       on the basis of $4.5 million in cash, 2.5 million shares of
20       stock of USWC and 750,000 options of Mr. HILSENRATH's
21       holdings; and (2) launched a secret investigation of the above
22       allegations of impropriety against USWC's CEO Oliver
22       HILSENRATH as alleged by the Nixon et al.

23  64.  Money and stock were transferred to 5 different shell
24       corporations of Equity trust (then Insinger de Beaufort)

---

[4] **Wynn v. NBC, 234 F. Supp. 2d 1067.** The elements for a claim of tortious interference with contractual relations are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. As an element of a tortious interference with contractual relations claim, plaintiffs must plead facts sufficient to support an inference that defendants intended to cause the alleged breach

65. In May 2001 the USWC Board of Directors fired founder and CEO Oliver HILSENRATH as the result of that investigation.

66. USWC did not survive the dismissal of its CEO, and went bankrupt 6 weeks later, rendering useless the 2.5 million shares in the hands of Janvrin et al.

67. In March 2002, defendants Equity Trust, by means of Janvrin et al and their attorneys NIXON initiated a new, bogus, litigation against HILSENRATH.

68. This time defendants claimed that they were surprised and financially hurt by the investigation against HILSENRATH and the subsequent collapse of US Wireless.

69. This was a second, new phase of the extortion and ongoing malicious prosecution given that it was Equity and NIXON themselves that instigated the internal investigation in order to exercise pressure on HILSENRATH.

70. In 2005, upon the discovery of tangible evidence of the invasion of privacy, of the organized trade and use of HILSENRATH family financial documents, Hana and Oliver HILSENRATH filed a counterclaim against Janvrin et al in case No. *4:02-cv-1068 Janvrin Holdings Limited et al v. Hilsenrath.*

71. In 2007, the Court ordered representatives or trustees of Janvrin et al, Nixon Peabody's clients, to show up in Court, in person, if they wish to continue to prosecute their seven year old case.

72. The "case" was but a sophisticated cover-up scheme planned and executed by Equity, Janvrin and NIXON. Once the cover was of no use and possibly even a risk, no one from the British trust, NIXON's clients, would bother risk a trip to the United States.

73. Therefore the plaintiffs in that litigation [4:02-cv-1068] simply stood the Court up -- NO representative or trustee of Janvrin showed up.

74. The Court proceeded to dismiss Janvrin's complaint, and ordering Janvrin's default with respect to the HILSENRATH counterclaim.

75. Two weeks later in March 2007, Janvrin's attorneys from Nixon briefed the Court that Janvrin, Rayburn & Crossgar do not exist anymore for an unknown period of time.

76. Between 2005 and 2006, in a broad US government investigation it was determined that the documents used by NIXON at al and Janvrin, Rayburn and Crossgar to impeach Mr. HILSENRATH, were not related to improper financial transactions and, in fact, the USWC CEO did not engage in defrauding USWC or its shareholders.

77 The HILSENRATHS, who had the vast majority of their assets invested in USWC stock, lost the value of 6.5 million shares of USWC worth over $26 million at the company's last day of trade ever: May 29, 2001; Thus rendering the damage irreparable.

78. As further result of defendants' malicious prosecution, the HILSENRATHS lost a severance package, lost several years of wages and income and experienced severe adversity resulting form defendants' defamation.

79. Starting 2001, Equity personnel embarked in a process of destroying the documentation and correspondence between themselves and their attorneys Nixon Peabody on the abovementioned extortion plan and of the extortion documents made available to Nixon to use against US Wireless.

80. In June 2005, as part of a US government investigation prompted by the dismissal of Oliver Hilsenrath, CEO of US Wireless, the extortion documents resurfaced through a third party.

81. The objective of the document destruction by Equity was two fold: (i) to eliminate the evidence of their organized crime

1    and (2) to impeach Hilsenrath with his own stock transactions
2    and bury the Hilsenraths in a US government investigation.

3    82.   In 2006, the US government and the Jersey government initiated
4          their own investigation into the destroyed Equity Trust
           records.

5    83.   In early 2007, Equity Trust admitted in writing that the
6          Equity Trust records now available in the hands of the
7          Hilsenraths and the US government could not be located anymore
8          at Equity Trust.

9    84.   Perkins, director of Equity Trust, was interviewed about the
10         aforementioned London meeting and the above described
           conspiracy during a joint mission to Jersey/UK by the US
11         Attorney[5] in San Francisco and the Plaintiff in this complaint,
12         Oliver Hilsenrath.

13   85.   After denying his involvement, Perkins was confronted with a
14         copy of one of the extortion packages. At that point the
           presiding Jersey judicial officer stopped the interview to
15         prevent Perkins from self-incrimination and incrimination of
16         his employer (Equity Trust formerly Insinger Trust formerly
17         Matheson Trust) (see Exhibit C).

18

19                   **LEGAL ALLEGATION OF HARBORING**

20   86.   In *Greenbaum v. Islamic Republic of Iran, 451 F. Supp. 2d 90,*
21         *2006 U.S. Dist. LEXIS 57432 (D.D.C., August 10, 2006,*
           *Decided):*
22

23              "Civil conspiracy under California law consists
24              of formation and operation of the conspiracy
                and damage resulting to plaintiff from an act
25              or acts done in furtherance of the common
                design. It is not a cause of action, but a
26              legal doctrine that imposes liability on
27   _____

28   [5] Case 3:03-cr-00213-WHA USA v. Hilsenrath

persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration actionable *Greenbaum v. Islamic Republic of Iran, 451 F. Supp. 2d 90, 2006 U.S. Dist. LEXIS 57432 (D.D.C., August 10, 2006, Decided)*"

87.    In *Greenbaum v. Islamic Republic of Iran* -- Plaintiff was fatally hurt by terrorists that have used Iran as training grounds and while Iran also hosted and supported the honing of their skills without necessarily taking direct part in the terrorist act that brought to plaintiffs demise.

88.    While in the present complaint plaintiffs allege full-fledged involvement of Equity Trust (Jersey) Limited in Janvrin and Nixon's acts against them, in *Greenbaum v. Islamic Republic of Iran* the California Court suggests that full participation is not necessary to prove that Equity Trust (Jersey) Limited and the other defendants took part in the alleged conspiracy in order to be liable.

89.    The California Court states that it is sufficient to show that Equity Trust (Jersey) Limited et al hosted Janvrin, Ryburn Crossgar and Nixon and were aware of their actions in order to determine that by harboring they became co-conspirators.

90.    This is more so the case as here Equity Trust (Jersey) Limited et al provided the actual personnel, legal counsel, offices and payroll for the persons acting against plaintiffs.

LEGAL ALLEGATION OF VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO)[6] ACT

91.    In *Flores v. Emerich & Fike, 416 F. Supp. 2d 885* the Court clearly identified the element of a RICO allegation. The conduct of Equity Trust et al substantially meets the legal criteria for RICO in *Flores*.

92.    A violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C.S. § 1961 et seq., consists of the following elements:

   a. CONDUCT/PATTERN OF RACKETEERING ACTIVITY – Equity et al PREDICATE ACTS:

       i. **robbery of documents and records** through invasion of privacy,

       ii. **unlawful transmission of information** by means of wire and mail,

---

[6] 18 USCS § 1961

   (1) (1)  "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act [ 11 SCS § 802]), which is chargeable under State law and punishable by imprisonment for more than one year

   (2)  "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

A civil complaint under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. §§ 1961-1968, must at least allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property. Where a plaintiff alleges that a defendant has violated 18 U.S.C. § 1962(c) (conducting the affairs of a racketeering enterprise) and (d) (conspiring to commit racketeering), the plaintiff must show that the racketeering enterprise exists independently from the acts of racketeering. **Flores v. Emerich & Fike, 416 F. Supp. 2d 885**

      iii. **extortion,**

      iv. **unlawfully obtaining assets,**

      v. **unlawfully distributing assets** by means of mail and wire,

      vi. **recurring extortion** for the second time in the form of a bogus, malicious legal action,

      vii. implementation of a **cover-up scheme,**

     viii. **destruction of records,**

      ix. with objective of **obstruction of justice,**

      x. **entrapment,**

      xi. **tempering with a criminal investigation** and

     xii. **evading prosecution.**

b. ENTERPRISE – Equity et al have put in motion an elaborate and well-designed corporate system with multiple entities in multiple jurisdictions. All coordinated to harbor the executors of the scheme.

c. RELATEDNESS (*criminal acts that share similar purposes, results, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics*). – The decade long conspiracy was targeted and partly successful in obtaining unlawful assets and benefits from a US public company, its executives and their families by means of extortion and entrapment, obstruction of justice and malicious prosecution.

d. CONTINUITY (*closed period of repeated conduct or a threat of future criminal activity*). –

    i. Equity at al acted in closely timed multiple steps to execute its conspiracy

ii. As to the threat of future criminal activity, there
can be no doubt that Equity et al are operating an
efficient and lively criminal enterprise, to this
very day, committed to its very structure and
purpose.

iii. The very evidence of the above statement is well
displayed in Equity's evasion from prosecution as
exemplified in Exhibit A.

## FIRST CAUSE OF ACTION

### (Harboring a conspiracy in a scheme to blackmail)

Plaintiffs Hana and Oliver HILSENRATH reallege and incorporate into
this cause of action each and every paragraph in this complaint.

93. Defendants harbored and were full partners at the joint scheme
with Janvrin.

94. Janvrin et al relied on Equity Trust's facilities, funds and
personnel to actually work the conspiracy.

95. Janvrin et al were also long dead and closed while the bogus
conspiracy was continuing to seek to squeeze money from the
HILSENRATHS - all fueled and driven by Equity Trust to meet
their goals.

96. In a May 16 recommendation for judgment, the Federal court
recommended to award the Hilsenraths $15 million in damages
and prejudgment interest.

97. Equity et al have equal and separate responsibility towards
their victims; the Hilsenraths are therefore entitled to $15
million from defendants in damages and prejudgment interest.

WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth
below.

## SECOND CAUSE OF ACTION

### (Aiding and abetting[7] in a blackmail scheme as part of the prosecution of Janvrin v. Hilsenrath)

Plaintiffs Hana and Oliver HILSENRATH reallege and incorporate into this cause of action each and every paragraph in this complaint.

98.   Defendants aided and abetted a blackmail scheme that resulted in the abovementioned settlement agreement with US Wireless.

99.   Mr. HILSENRATH is entitled to this Court's declaration that defendant should compensate Mr. HILSENRATH in an amount equal to the extorted settlement, an amount of $7.5 million.

-------------------------

[7] **United States v. Barnett, 667 F.2d 835** An aider and abettor is liable for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded, although such consequence may not have been intended by him.

It is not essential that the accessory know the modus operandi of the principal. It is also not necessary that the person accused of aiding and abetting know all the details of the crime or all the persons who were perpetrating the crime

-------------------

**Chance World Trading E.C. v. Heritage Bank of Comm..., 2004 U.S. Dist.** To properly state a claim for aiding and abetting the tortious breach of a duty, a plaintiff must plead that a defendant: (1) had knowledge that another's conduct constitutes a breach of a duty; and (2) substantially assisted or encouraged that breach

Liability under a civil conspiracy requires a co-conspirator have an independent duty to a plaintiff. Tort recovery for civil conspiracy is only allowed against a party who already owes the duty, under substantive tort law, that was violated.

Under California law, there are two major distinctions between aiding and abetting and civil conspiracy which explain why an independent duty requirement is not an element of aiding and abetting. First, conspirators are held jointly liable for the tort committed, whereas aiders and abettors are not held liable as joint tortfeasors for the underlying tort. In a civil conspiracy, because liability is premised on the commission of a single tort, it is logical that all conspirators must be legally capable of committing the wrong. Second, in aiding and abetting, the defendant's conduct must be a substantial factor in causing the harm, while conspiracy requires no proof that the conspirator did anything that actually caused the harm. Consequently, a claim for aiding and abetting does not require that the defendant owe an independent duty to the plaintiff.

Under California law, the second element of civil aiding and abetting of a tort, substantial assistance, requires the plaintiff to allege that the actions of the aider/abettor proximately cause the harm on which the primary liability is predicated. In other words, the assistance must have been a substantial factor in causing the harm suffered

To properly state a claim for aiding and abetting the tortious breach of a duty, a plaintiff must plead that a defendant: (1) had knowledge that another's conduct constitutes a breach of a duty; and (2) substantially assisted or encouraged that breach.

WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth below.

### THIRD CAUSE OF ACTION

#### (Constructive trust - re Second Cause of Actions)

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

100. Mr. HILSENRATH is entitled to this Court's order imposing a constructive trust on all funds and consideration due to him from defendants in connection with the abovementioned 2001 Settlement Agreement.

WHEREFORE, plaintiff Oliver HILSENRATH prays relief as set forth below.

### FOURTH CAUSE OF ACTION

#### (Invasion of privacy as part of the prosecution of Janvrin v. Hilsenrath)

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

101. Defendants conspired and invaded Mr. and Mrs. HILSENRATH's privacy[8], reviewed and copied their personal information, and put it to their personal use. The invasion of privacy should be classified as "intrusion of seclusion"[9].

102. The theft of the private documents[10], their distortion and use to *slander per se*[11] and ultimate unlawful dissemination of the

---

[8] Intrusion into the seclusion of another: **Fisher v. Quality Hyundai, Inc., 2002 U.S. Dist.**

[9] That a plaintiff has received damages for his claim of unreasonable public disclosure of private facts does not preclude an award of damages for his claim of intrusion upon seclusion: **Doe v. High-Tech Inst., Inc., 972 P.2d 1060**

[10] The tort is completed with the obtaining of the information by improperly intrusive means: **Pearson v. Dodd, 133 U.S. App. D.C. 279**

[11] "Slander per se" categories include charges that the plaintiff has committed a serious crime ... the statement "you stole the money" has been held to be slander per se. **Hruby v. Kalina, 424 N.W.2d 130 (Neb. 1988) - Gilbert Law Summaries/Torts: Slander per se-special damages not required IS12431**

1  documents caused: (1) Mr. HILSENRATH's termination as CEO[12] –
2  loss of severance of $3.10 million, (2) indefinite stop of
3  trade of US Wireless stock – the HILSENRATHS' loss of value of
4  5.3 million shares of stock at $2.94/share at the last day of
   trade[13] – value of $15.58 million, (3) US freeze action of $7.3
5  million assumed embezzled per defendant's fake allegations,
6  (4) legal fees to attorneys of total $1.6 million and (5)
7  Personal time invested and self representation at
8  $275,000/annum[14] and a loadstar doubling the value of time
9  invested[15] and amounting to personal time, with loadstar of
   $3.2 million for the time-frame 2001 to 2007.
10
11 103. Plaintiffs seek DAMAGES (before exemplary damages) of $30.76
   million.
12 WHEREFORE, defendant Oliver and Hana HILSENRATH pray relief as set
13 forth below.
14
15                    **FIFTH CAUSE OF ACTION**
16     (Intrusion of seclusion as part of prosecution of Janvrin v.
                HILSENRATH – Exemplary Damages)
17
18 Plaintiff Oliver HILSENRATH realleges and incorporates into this
   cause of action each and every paragraph in this complaint.
19
20 [12] **Applied Equip. Corp. v. Litton Saudi Arabia, 7 Cal. 4th 503,** To recover in tort for intentional
   interference with the performance of a contract, a plaintiff must prove: (1) a valid contract between plaintiff
21 and another party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to
   induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual
22 relationship; and (5) resulting damage.
   ------------------------------------
23 **Wynn v. NBC, 234 F. Supp. 2d 1067** The elements for a claim of tortious interference with contractual
   relations are. (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this
24 contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual
   relationship, (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. As an
25 element of a tortious interference with contractual relations claim, plaintiffs must plead facts
   sufficient to support an inference that defendants intended to cause the alleged breach
26 [13] May 29, 2001 – first business day after CEO fired – last day of trade ever in the stock of the company
27 [14] Last salary earned before termination from US Wireless
28 [15] Pursuant to **Guam Soc'y of Obstetricians & Gynecologists v. Ada, 100 F.3d 691**

104. Defendant further conspired to invade plaintiffs' privacy and use distorted financial records to unfairly remove Mr. HILSENRATH from his post as CEO.

105. Defendants' actions resulted in plaintiffs' loss of good name and good reputation[16].

106. Plaintiffs seek relief including general, special and exemplary damages/punitive damages from *Intrusion of Seclusion* pursuant to *Civil Code Sect. 1708.8 (d)* and *Civil Code Section 48 a. 2.*[17] -- resulting in triple damages of $92.28 million.

WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth below.

### SIXTH CAUSE OF ACTION

**(Hana HILSENRATH damages - invasion of privacy as part of prosecution of Janvrin v. Hilsenrath)**

Plaintiff Hana HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

107. Hana HILSENRATH is a mother of six children, 4 of whom are minors, and does not work outside the home.

108. As a legal result of the invasion of privacy by defendants Mrs. HILSENRATH has suffered fear, anguish, and illness; has been exposed to personal threats by shareholders of U.S. Wireless; and has suffered constant fear of retaliation and revenge to herself and/or her children.

109. Mrs. HILSENRATH has also seen the structure and security of her family threatened by the disclosure of her family's private information, and has lost the vast majority of her personal wealth.

---

[16] The key to proving a defamation action is showing injury to reputation: *Smith v. Mission Assocs., 225 F. Supp. 2d 1293*

[17] These type of damages do not preclude pursuit of multiple theories: *Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co., 596 F. Supp. 344*

110. As the result of defendants' actions, Mrs. HILSENRATH suffered
     loss of tangible assets in value of $7.3 million, which she
     requires to recover from defendants.

WHEREFORE, defendant Hana HILSENRATH prays relief as set forth
below.

## SEVENTH CAUSE OF ACTION

**(Hana HILSENRATH exemplary damages – invasion of privacy as part of
the prosecution of Janvrin v. Hilsenrath)**

Plaintiff Hana HILSENRATH realleges and incorporates into this
cause of action each and every paragraph in this complaint.

111. Hana HILSENRATH has suffered damages as the result of
     "intrusion of seclusion"[18].

112. The TOTAL RELIEF sought under this cause of action include
     general, special and exemplary damages/punitive damages
     resulting from *Intrusion of Seclusion* pursuant to *Civil Code
     Sect. 1708.8 (d)* and *Civil Code Section 48 a. 2.*[19] -- resulting
     in triple damages of $21.9 million.

WHEREFORE, defendant Hana HILSENRATH prays relief as set forth
below.

## EIGHTH CAUSE OF ACTION

**(Malicious prosecution of second case Janvrin v. Hilsenrath)**

Plaintiffs Hana and Oliver HILSENRATH reallege and incorporate into
this cause of action each and every paragraph in this complaint.

113. In 2002, Janvrin at al, hosted by Equity trust, then Insinger
     Trust, filed a new lawsuit against the HILSENRATHS on the

---

[18] That a plaintiff has received damages for his claim of unreasonable public disclosure of private facts does not preclude an award of damages for his claim of intrusion upon seclusion: **Doe v. High-Tech Inst., Inc., 972 P.2d 1060**

[19] These type of damages do not preclude pursuit of multiple theories, **Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co., 596 F. Supp. 344**

knowingly false pretense that they did not know before the 2001 settlement that USWC initiated an investigation into Mr. HILSENRATH's financials.

114. It was however Equity themselves through their co-conspirators Janvrin and Nixon Peabody that instigated the investigation as also determined by the federal Court in [4:02-cv-1068].

115. This act of malicious prosecution lasted 5 years and ended only in March 2007.

116. In the course of this malicious and knowingly frivolous lawsuit, Equity through Janvrin were seeking over $7 million specifically from the HILSENRATHS.

117. Equity through Janvrin were actively banking on the perceived weakness of the HILSENRATH's after the USWC scandal instigated by Janvrin and Nixon themselves.

> "In the case of the tort of malicious
> prosecution, the fundamental interest
> protected is that of every person to be
> free from unjustifiable and unreasonable
> litigation initiated without probable
> cause, and the corresponding duty is to
> refrain from initiating such unjustified
> litigation".[20]

118. In 2005, defendants by means of false declarations from Nixon sought to obtain a $7 million judgment against HILSENRATH from the Federal Court in California.

119. The HILSENRATHS lived for years with fear of a possible judgment of that size as the result of this bogus and malicious litigation.

---

[20] Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 881-882, 254 Cal. Rptr. 336, 765 P.2d 498.

120. Plaintiffs seek declaratory and exemplary damages from defendants in an amount in excess of triple that amount - $21 million.

WHEREFORE, defendants Hana and Oliver HILSENRATH pray relief as set forth below.

### NINTH CAUSE OF ACTION[21]

#### (Destruction of documents with criminal intent)

Plaintiffs Hana and Oliver HILSENRATH reallege and incorporate into this cause of action each and every paragraph in this complaint.

121. Defendants destroyed the records of the blackmail conspiracy.

122. Defendants destroyed records attesting to the Hilsenraths' assets in order to induce the US government to commence and sustain an investigation against Oliver Hilsenrath that proved to be baseless.

123. By the destruction of the documents, defendants hindered the legal process of the Hilsenraths to recover damages from the malicious prosecution against them by Janvrin and Equity.

124. By the destruction of the documents, defendants caused a wasteful and painful US government investigation into the Hilsenrath assets that destroyed most of the Hilsenrath's remaining assets.

---

[21] **Leon v. IDX Sys. Corp., 464 F.3d 951** A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed. Moreover, because the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case. Prejudice can be found when a party's refusal to provide certain documents forces the other party to rely on incomplete and spotty evidence at trial.

------------

**In re Holocaust Victim Assets Litig., 302 F. Supp. 2d 59** It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. An adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.

125. Plaintiffs request the Court to order defendants to compensate them at least in the amount of $10.9 million including $7.3 million of cash losses and $3.6 million in legal expenses.

126. Plaintiffs request the court to order defendants to pay exemplary damages for the destruction of records in an amount according to proof.

WHEREFORE, defendants Hana and Oliver HILSENRATH pray relief as set forth below.

## TENTH CAUSE OF ACTION

### (Court order to prevent defendants to do business and solicit clients in the United States of America)

Plaintiffs Hana and Oliver HILSENRATH reallege and incorporate into this cause of action each and every paragraph in this complaint.

127. Defendants collectively violated all standards of fair financial and banking business towards their clients.

128. No person should be solicited or exposed to the abuse and criminal behavior of these collective defendants.

129. The very actions and means of operations of these financial institutions constitute an ongoing criminal threat in today's was against dangerous abuse of covert financing.

130. Defendants' actions brought them to a point of no return.

131. Plaintiffs request the Court's Order to bar all defendants from doing business in or with the United States and its citizens.

## ELEVENTH CAUSE OF ACTION: RICO ALLEGATION

Defendants collectively act and acted as an organized crime cartel in violation of the RICO act.

132. Defendants acted in conspiracy with each other and other parties for more than a decade.

133. Defendants acted in a chain of countless steps over a decade to extort, entrap, obtain financial benefits and then cover up a wide scale criminal conspiracy.

134. Plaintiffs were the primary victims of defendants' conduct.

135. Plaintiffs lost the majority of their assets and lived in torturous conditions for over seven years as the result of defendants' conduct.

136. Plaintiffs are entitled to[22] threefold the damages they sustained in their business or property by reason of a violation of section 1962 and the cost of suit, including a reasonable attorney's fee amounting to $278.58 million.

**PRAYER**

137. By way of this complaint, Mr. and Mrs. HILSENRATH pray relief as follows:

a. That this Court order defendants to pay plaintiffs Hana and Oliver HILSENRATH, for co-conspiring against them with Janvrin et al, an amount equal to $15 million in damages and prejudgment interest. This amount shall be equal to the federal Court recommended damages to be paid by Janvrin to the Hilsenraths for Janvrin's participation in the same blackmail conspiracy.

b. That this Court order defendants to pay to plaintiff Mr. HILSENRATH for aiding and abetting the extortion scheme that lead to the 2001 settlement with their clients, an

---

[22] Rosenberg v. JCA Assocs., 2007 U.S. Dist. LEXIS 23570

19 18 U.S.C. § 1964(c) provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee, . . .

1         amount equal to his share of that settlement -- $7
2         million.
3     c. That this Court impose a constructive trust on any
4        amounts reimbursed to plaintiffs in connection to the
        2001 improper settlement.
5     d. That Mr. HILSENRATH recover damages for invasion of
6        privacy and breach of governing statutes at least in the
7        amount of $30.76 million.
8     e. That Mr. HILSENRATH recover exemplary damages resulting
9        from intrusion to seclusion in an amount not less than
        $92.28 million.
10    f. That Mrs. HILSENRATH recover damages for defendants
11       scheme to extort, defame and invade her privacy, at least
12       in the amount of $7.3 million.
13    g. That Mrs. HILSENRATH recover exemplary damages resulting
14       from defendants' intrusion to seclusion in an amount no
15       less than $21.9 million.
16    h. That Mr. and Mrs. HILSENRATH recover damages and
17       exemplary damages resulting from defendants' malicious
       prosecution in an amount no less than $21 million.
18    i. That Mr. and Mrs. HILSENRATH recover damages and
19       exemplary damages resulting from defendants' malicious
20       destruction of documents and records in an amount no less
21       than $10.9 million and exemplary damages according to
       proof.
22    j. That plaintiffs recover prejudgment interest on sums with
23       which they parted, and on all damages they recover.
24    k. That the Court Orders to bar defendants from doing
25       business in the United States.
26    l. That the Court compensate Mr. and Mrs. Hilsenrath for
27       being the victims of a racketeering organization and for
28

1   damages incurred therefore in an amount of $278.58
2       million.
3       m. That this Court award such other and further relief as it
4           deems proper.
5   Dated: June 25, 2007
6
7           Respectfully submitted,
8
9
10  _Hilsenrath Hana_
    HANA HILSENRATH                          OLIVER HILSENRATH
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  HANA HILSENRATH
   OLIVER HILSENRATH
2  822 Eastbrook Court
   Danville, CA 94506
3  Telephone: 925 212 6299
   Facsimile: 925 736 7571
4  ohlx@sbcglobal.net

5  PLAINTIFFS *IN PRO PER*

6

7

8              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
9

   HANA HILSENRATH AND OLIVER     | Case No.
10 HILSENRATH,                    |

11     Plaintiffs,                |

12         v.                     | EXHIBIT A:

13                                | FORENSIC REPORT AND AFFIDAVIT IN
   EQUITY TRUST (JERSEY) LIMITED, | SUPPORT OF COMPLAINT
14 CANDOVER INVESTMENTS PLC,      |
   INSINGER DE BEAUFORT SA, JARDINE|
15 MATHESON HOLDINGS LIMITED, GRANT|
   BROWN, MELVYN KALMAN, JOHN     |
16 PERKINS, CAROLINE BOUGEARD, AND|
17 DOES 1-10,                     |

18     Defendants.                |

19

20

21 The report substantiates the activities of Kalman, Perkins, Brown

22 and others at Equity Trust (Jersey) Limited, Insinger de Beaufort

23 Trust and Matheson Trust as operators of a network of corporations

   in multiple jurisdictions with fictitious corporate veils - all
24 from one single facility.

25

26

27

28

HILSENRATH V. CANDOVER, EQUITY ET AL.

1 | Oliver Hilsenrath
2 | 822 Eastbrook Ct.
   | Danville, CA 94506
3 | Tel:   925-212-6299
   | Fax:   925-736-7571
4 | Defendant in Propria Persona
5 |

ORIGINAL
FILED
MAY   2 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6 |
7 |              UNITED STATES DISTRICT COURT
8 |              NORTHERN DISTRICT OF CALIFORNIA
9 |
10 | JANVRIN HOLDINGS LTD.,        )    Case No. C02-1028 CW  (BZ)
    | et al.,                      )
11 |                              )
    |         Plaintiff(s),        )    AFFIDAVIT OF
12 |                              )    MARCEL B. MATLEY
    |    v.                        )    IN SUPPORT OF
13 | DR. OLIVER HILSENRATH,        )    APPLICATION FOR
    | et al.                       )    DEFAULT JUDGMENT
14 |                              )
    |         Defendant(s)         )
15 |                              )
16 | _____)
17 | I, Marcel B. Matley, swear and affirm:
18 |     1.   I am an Examiner of Questioned Documents and
19 | Handwriting and have been so employed since 1985.   My
20 | business office is located at 3092 C. Chavez St.,
21 | San Francisco, CA.
22 |     2.   I have been certified as an expert witness in the
23 | field of questioned documents in Federal District Court,
24 | Federal Bankruptcy Court, Federal Immigration Court,
25 | California Municipal and Superior Courts, in Arbitration and
26 | Administrative Hearings in the State of California, in
27 | Probate Court in the States of New Jersey and Texas, and in
28 | Circuit Court in Hawaii, and I have testified regarding

                              1

1  documents in each of these areas.

2     3.   I have authored professional publications in the
3  field of questioned documents.  These have been issued as
4  monographs and papers in professional journals, some of
5  which were peer reviewed, and they have been relied on by
6  others in the field of questioned documents.

7     4. Dr. Oliver Hilsenrath, Defendant in pro per in the
8  above titled action, requested that I examine certain
9  documents and issue a written report on my observations and
10 on the opinions I formed upon these observations.  Attached
11 hereto is a complete, true and accurate copy of the report I
12 issued in response to Dr. Hisenrath's request.

13     5.   The attached report sets forth my qualifications as
14 an examiner of questioned documents and handwriting,
15 including identified exhibits which are copies of my current
16 Curriculum Vitae, my current Fee Schedule, list of my
17 testimonies for the last four years, and list of my
18 professional publications.

19     6.   The attached report also sets for my opinions with
20 the theoretical, methodological and factual bases for these
21 opinions.

22     I, Marcel B. Matley, swear and affirm under penalty of
23 perjury under the applicable laws of United States of
24 America that the foregoing is true and correct to the best
25 of my knowledge and belief.

26 ///////

27

28

2

1   This affirmation was executed on this *Twenty-eighth*
2   Day of *April*, 2007, at San Francisco,
3   California.

4

5

6   *Marcel B. Matley*
7   Marcel B. Matley

8

9

10

11   Subscribed and sworn to before me on
12   this _____ *28th* _____ Day of *April*, 2007.

13

14

15

16   _____
17   Notary Public

18
19
20
21
22
23
24
25
26
27
28

S. O. HSIH
Commission # 1558569
Notary Public — California
San Francisco County
My Comm. Expires Apr 10, 2009

3

# *A and M Matley*       *Examiner of Documents & Handwriting*

MARCEL B. MATLEY
BOARD CERTIFIED, NADE
PUBLICATIONS, SEMINARS
www.handwritingexpertsofcalifornia.com

(3092 ARMY STREET, 94110)
POST OFFICE BOX 882401
SAN FRANCISCO, CA 94188

PHONE: (415) 753-2832
FAX: (415) 753-3346
TOLL FREE: 1-800-367-8403
E-MAIL: MMATLEY@AOL.COM


April 27, 2007


Oliver Hilsenrath Ph.D.
822 Eastbrook Court
Danville, CA 94506

RE:    *Janvrin Holdings vs. Hilsenrath*
      My File Ref.: 070417-A

Dear Dr. Hilsenrath:

I am issuing this letter of opinion pursuant to your request.


## A. THE COMMISSION.

Certain documents related to several entities were submitted for examination. I
was asked to chart which individuals might have signed for two or more of the
various entities represented. The manner in which I proceeded is set forth, and the
results obtained are represented in detail by a chart attached hereto as Exhibit X.


## B. THE DOCUMENTS EXAMINED.

Copies of the documents examined are attached as collective exhibits, each exhibit
comprised of all documents relating to one of the entities. Each document is
identified by a code which is comprised of letters and numbers, the letters
referencing the particular entity and the numbers designating the order of the
documents. This same letter/number code is used in the chart which is Exhibit X
so as to identify specifically each document.

*(From Marcel B. Matley to Oliver Hilsenrath, April 27, 2007,*
*RE: Janvrin Holdings vs. Hilsenrath, page 1 of 7 pages.)*

**A**

MAF
BOA
PUB
WWA

$\mathcal{O}\mathcal{R}\mathcal{I}\mathcal{A}\mathcal{W}\mathcal{A}\mathcal{L}$



### Examiner of Documents & Handwriting

2 ARMY STREET, 94110)
ST OFFICE BOX 882401
I FRANCISCO, CA 94188

PHONE: (415) 753-2832
FAX: (415) 753-3346
TOLL FREE: 1-800-367-8403
E-MAIL: MMATLEY@AOL.COM

822 Eastbrook Court
Danville, CA 94506

RE:   *Janvrin Holdings vs. Hilsenrath*
        My File Ref.: 070417-A

Dear Dr. Hilsenrath:

I am issuing this letter of opinion pursuant to your request.

### A. THE COMMISSION.
Certain documents related to several entities were submitted for examination. I
was asked to chart which individuals might have signed for two or more of the
various entities represented. The manner in which I proceeded is set forth, and the
results obtained are represented in detail by a chart attached hereto as Exhibit X.

### B. THE DOCUMENTS EXAMINED.
Copies of the documents examined are attached as collective exhibits, each exhibit
comprised of all documents relating to one of the entities. Each document is
identified by a code which is comprised of letters and numbers, the letters
referencing the particular entity and the numbers designating the order of the
documents. This same letter/number code is used in the chart which is Exhibit X
so as to identify specifically each document.

*(From Marcel B. Matley to Oliver Hilsenrath, April 27, 2007,*
*RE: Janvrin Holdings vs. Hilsenrath, page 1 of 7 pages.)*

EXHIBIT CNL, relating to entity CN Limited, is comprised of six (6) documents on letterhead of CN Limited. These six (6) documents are identified as CNL 01 through CNL 06.

EXHIBIT DL, relating to entity Derard Limited, is comprised of ten (10) documents on letterhead of Derard Limited. These ten (10) documents are identified as DL 01 through DL 10.

EXHIBIT ET, relating to entity Equity Trust, is comprised of eleven (11) documents on letterhead of Equity Trust. These eleven (11) documents are identified as ET 01 through ET 11. ET 04 and ET 06 are of two pages each.

EXHIBIT RL, relating to entity Ryburn Limited, is comprised of eight (8) documents, each identified as follows:

RL 01 is Form W-8, Certificate of Foreign Status, dated 24 July 1996.

RL 02 is titled CORPORATE RESOLUTION and dated 24 July 1996.

RL 03 is Form 1001, Ownership, Exemptions, or Reduced Rate Certificate, dated 24 July 1996.

RL 04 is on letterhead of Stuart, Coleman & Co. and dated 24-7-96.

RL 05 is a memo to Matheson Bank (Jersey) Limited and dated 8/10/96.

RL 06 is titled Account Opening Form on letterhead of Matheson Bank (Jersey) Limited and dated 8/10/96/

RL 07 is an undated "Resolution of the sole director." RL 08 is the exact same document as RL 07 except it is dated 26th day of November, 2004. Therefore, only RL 07 is referred to in Exhibit X.

EXHIBIT WSL is comprised of two pages, each titled WESLEY SECRETARIES LIMITED and each date stamped 24 JUL 1996. WSL 01 is designated CLASS A. WSL 02 is designated CLASS B. Each bears ten (10) signatures, but the only ones referenced in Exhibit X are those that appear on one or more of the other documents attached hereto as exhibits.

EXHIBIT X is a chart on legal size paper in landscape orientation. It will be described and discussed later.

*(From Marcel B. Matley to Oliver Hilsenrath, April 27, 2007,*
*RE: Janvrin Holdings vs. Hilsenrath, page 2 of 7 pages.)*

EXHIBITS YA, YB, YC and YD relate to my qualifications as an examiner of documents and handwriting and later will be described in full.

## C. THE OPINIONS.

The data developed permit the following conclusions:

(a) Signatures of nine (9) separate individuals were identified on the various pages of Exhibits CNL, DL, ET, RL and WSL. No name could be discovered for five (5) of these nine (9) individuals, so they are designated as unnamed individuals X-A, X-B, X-D, X-E and X-F. The individual originally designated as X-C was later determined to have the name "Melvyn Kalman."

(b) All but three (3) of these nine (9) individuals signed for two (2) or more entities.

(c) The documents examined identified all but two (2) of the nine (9) individuals as having some kind of official capacity with two (2) or more entities.

## D. BASES FOR THE OPINIONS.

### 1. THEORETICAL BASES.

The task entailed identifying which of a number of signatures came from the same individual. To do so, more than 80 signatures had to be sorted as to the individuals making them. The principles and methods involved in identification of signatures were the bases for this technical task.

Based on the writings of Ordway Hilton, particularly *Scientific Examination of Questioned Documents*, revised edition, 1982, it can be stated that in order to identify whether signatures were made by the same individual, it must be shown that they share sufficient significant similarities so as to eliminate the reasonable probability of another writer, and there should be no significant difference among the signatures that cannot be reasonably explained.

### 2. METHODOLOGICAL BASES.

In this particular case, the standard method was applied with modification.

(a) All signatures were scanned into the computer at the same settings and printed out at maximum enlargement on letter size paper in landscape orientation.

(b) They were sorted by general pictorial appearance.

*(From Marcel B. Matley to Oliver Hilsenrath, April 27, 2007,*
*RE:  Janvrin Holdings vs. Hilsenrath, page 3 of 7 pages.)*

(c) Each resulting set was intra-compared to satisfy the theoretical standards stated in Sub-section 1 above.

(d) The separate sets were inter-compared to ascertain whether there was any indication that the same person might have been responsible for more than one set of signatures. There was no such indication.

(e) The enlarged signatures were laid out in grid fashion, each individual writer being given a column and each set of documents as identified by Exhibits CNL, DL, ET, RL and WSL being given a row. The resulting grid became the pattern for the chart reproduced in Exhibit X.

## 3. OBSERVATIONAL BASES.

Exhibit X gives in columns the documents each individual was identified as signing. Here are selective traits that help identify each set of signatures as being from one individual.

(a) GRANT BROWN. These signatures are characterized by, among other features, rhythmical spacing of down strokes and zonal proportions.

(b) DAVID P. CHALMERS-HUNT. These signatures are characterized by, among other features, consistent left slant and narrowness within mid zone letters.

(c) JOHN H. PERKINS. These signatures are characterized by, among other features, their simplicity, angularity in "rk" and pen lifts.

(d) WRITER X-A. These signatures are characterized by, among other features, extreme narrowness, extreme vertical extension, and lack of mid zone forms.

(e) WRITER X-B. These signatures are characterized by, among other features, a complex sequence of movement, illegibility and the manner of final underline.

(f) WRITER X-C, later identified with the name MELVYN KALMAN. These signatures are characterized by, among other features, the rising base line and z-like final.

(g) WRITER X-D. These signatures are characterized by, among other features, the configuration of the capital letters, the very low but very wide mid zone forms and the unique final.

(h) WRITER X-E. These signatures are characterized by, among other features, vertical slant, dominant mid zone and what appears to be a lack of a pen lift.

*(From Marcel B. Matley to Oliver Hilsenrath, April 27, 2007,*
*RE: Janvrin Holdings vs. Hilsenrath, page 4 of 7 pages.)*

(I)  WRITER X-F.  There is but one signature.  It is such a complex, illegible scrawl that it could not be even suspected as having been written by any of the other writers represented in Items (a) through (h) above.


E.  EXHIBIT X.

Exhibit X is a chart on legal size paper in landscape orientation.  As stated earlier, nine (9) columns represent the nine (9) writers of the signatures.  The rows represent the sets of documents copies of which comprise Exhibits CNL, DL, ET, RL and WSL.  The last two rows represent two (2) entities, Crossgar Limited and Janvrin Holdings Limited, for which there were no documents.  However, on some documents various signatories were identified as being in some official capacity with these two (2) entities.

When a writer signs a document belonging to an entity, the code for this document is entered in regular type and without square brackets in the cell for such writer and such entity.

When an individual signing on a document designated in one entity's set but therein identified as having an official capacity with another entity, the document is listed in square brackets in the cell for such writer and the latter entity.

If a signature is faded to some degree, the code for it is entered in italics.

Exhibit X visually charts the data supportive of the direct conclusions expressed herein in Section C above and the inferences expressed in Section H below.


F.  QUALIFICATIONS.

Attached hereto and incorporated herein as if set forth in full, EXHIBIT YA is a copy of my current curriculum vitae stating my background and experience that qualify me to undertake the examination requested and form the opinions expressed herein.

Attached hereto and incorporated herein as if set forth in full, EXHIBIT YB is a listing of my published writings in the field of questioned documents.  There may be other journal papers that I have authored and that have been published but of which I have not been informed by the journals to whom they were submitted.

*(From Marcel B. Matley to Oliver Hilsenrath, April 27, 2007,*
*RE:  Janvrin Holdings vs. Hilsenrath, page 5 of 7 pages.)*

Attached hereto and incorporated herein as if set forth in full, EXHIBIT YC is
a listing of my prior testimonies for the past four years as an examiner of
questioned documents and handwriting. Exhibit - covers courts of law,
administrative law hearings, arbitrations, and depositions.


G. COMPENSATION.

Also attached hereto and incorporated herein as if set forth in full, EXHIBIT YD is
a copy of my current Fee Schedule that sets forth the rate of compensation for any
work which I shall perform in this matter at your request.


H. CONCLUSION.

Some direct inferences to be made from the data reported herein are:

(a) All the letters represented in Exhibits CNL, DL and ET reference the case
of *Janvrin vs. Hisenrath*, at times telling each other the very same facts so that the
very same individual will tell and, apparently, be told these very same facts.

(b) The complication of the situation involves individuals writing, for
example, to Equity Trust on behalf of CN Limited after having written to CN
Limited on Equity Trust letterhead and even doing so on the very same day.
Having written from one entity to another and vice versa, and being officially
signatory on letterhead of both entities, each asks for money from the other while
giving assurance in both directions that, unless one hears from the other, neither
will take further action.

(c) The text of the letters on the various letterheads seem to be boilerplate. For
example, CNL 01 and CNL 02 differ only in that in the last two sentences CNL 01
reads "Crossgar" where CNL 02 reads "Janvrin."

(d) It would be instructive both to chart precisely when the same individuals in
effect write to themselves in their capacities with two different entities and to chart
which of their own letters apparently are answers to others of their own letters.
However, this task would take many hours, and it would be most difficult to chart
the results with clarity and without complexity.

If called upon to do so, I would testify under oath in a legal proceeding that all
the statements and representations made herein are true and accurate to the best of
my knowledge and belief, and I would be prepared to demonstrate and explain the

*(From Marcel B. Matley to Oliver Hilsenrath, April 27, 2007,*
*RE: Janvrin Holdings vs. Hilsenrath, page 6 of 7 pages.)*

cogent reasons for the opinions expressed herein. If court testimony is required, I
will prepare appropriate court exhibits by which to illustrate and explain my
observations, opinions and reasons.

Sincerely,

Marcel B. Matley

Marcel B. Matley

*(From Marcel B. Matley to Oliver Hilsenrath, April 27, 2007,
RE: Janvrin Holdings vs. Hilsenrath, page 7 of 7 pages.)*

## LIST OF EXHIBITS

CNL.  Documents relating to entity CN Limited

DL.   Documents

ET.   Documents

RL.   Documents

WSL.  Documents

X.    Chart

YA.   Curriculum Vitae of Marcel B. Matley

YB.   Published writings of Marcel B. Matley

YC.   Testimonies of Marcel B. Matley

YD.   Current Fee Schedule of Marcel B. Matley

COVER SHEET

EXHIBIT CNL

# C N Limited

P.O Box 509, 26-30 The Parade, St Helier, Jersey JE4 8XZ, Channel Islands
Tel. +44 1534 616211 Fax: +44 1534 636215

URGENT

Lenson Fund (Jersey) Limited

Dear Sir

Janson Holdings Limited, Crossgar Limited and Ryburn Limited – v- Oliver Hilsenrath
Case No. C07 1068 CW

We write to you in your capacity of trustee of The Revenge Trust.

Please find the enclosed letter dated 27th February 2007 from Derard Limited, the Director of Crossgar Limited.

Please confirm by return whether you are willing and able to furnish Crossgar Limited with the necessary funds.

Yours faithfully,



For and on behalf of CN Limited

EXHIBIT
_CNL 01_

# C N Limited

P O Box 556, 26-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel +44 1534 636211 Fax +44 1534 616215

27 February 2007

URGENT

Janvrin Holdings Limited
Equity House
PO Box 546
26-30 The Parade
St Helier
Jersey JE4 8XY

RE:

Janvrin Holdings Limited, Crossgar Limited and Rybum Limited - v- Oliver Hilsenrath
Case No. C07 1068 CW

As trustee, we act as your in your capacity of trustee of The Revenge Trust.

Please find the enclosed letter dated 27th February 2007 from Derand Limited, the Director of Janvrin Holdings Limited.

Please could this return whether you are willing and able to furnish Janvrin Holdings Limited with the information requested.

Yours faithfully

For and on behalf of CN Limited

EXHIBIT

CNL 02

# C N Limited
P.O Box 566, 28-30 the Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

[illegible text]

[illegible date] 2007

URGENT

[illegible] (Jersey) Limited
[illegible] House
PO Box 546
28-30 the Parade
St Helier
Jersey JE4 8XY

Dear [illegible]

Janson Holdings Limited, Crossgar Limited and Ryburn Limited – v- Oliver Hilsenrath
Case No. C 02 3068 CW

We write to you in your capacity of trustee of The Revenge Trust.

Please find the enclosed letter dated 27th February 2007 from Derard Limited, the Director of Ryburn Limited.

Please confirm by return whether you are willing and able to furnish Ryburn Limited with the necessary [illegible]

Yours faithfully

For and on behalf of CN Limited

EXHIBIT
CNL 03

# C N Limited

P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

Equity Trust (Jersey) Limited
Equity Trust House
PO Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited – v- Oliver Hilsenrath**
**Case No. CO2 1068 CW**

We are writing to you in your capacity of trustee of The Revenge Trust.

Please see the enclosed letter dated 11th April 2007 from Derard Limited, the Director of Crossgar Limited.

Please advise by return whether you are willing and able to furnish Crossgar Limited with the necessary funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of CN Limited

EXHIBIT

C NL 04

# C N Limited

P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

Equity Trust (Jersey) Limited
Equity Trust House
PO Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Rybum Limited – v– Oliver Hilsenrath**
**Case No. CO2 1068 CW**

We are writing to you in your capacity of trustee of The Revenge Trust.

Please see the enclosed letter dated 11th April 2007 from Derord Limited, the Director of Janvrin Holdings Limited.

Please advise by return whether you are willing and able to furnish Janvrin Holdings Limited with the necessary funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

for and on behalf of CN Limited

EXHIBIT
CNL 05

# C N Limited

P.O. Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

Equity Trust (Jersey) Limited
Equity Trust House
PO Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited – v- Oliver Hilsenrath**
**Case No. CO2 1068 CW**

We are writing to you in your capacity of trustee of The Revenge Trust.

Please see the enclosed letter dated 11th April 2007 from Derard Limited, the Director of Ryburn Limited.

Please advise by return whether you are willing and able to furnish Ryburn Limited with the necessary funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of CN Limited

EXHIBIT

$CNL\ O6$

# COVER SHEET

# EXHIBIT DL

# Derard Limited

Administration Office:
P O Box 548, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

27 February 2007

URGENT

CN Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath
Case No. C02 3068CW

It has been called to our attention recently that a hearing has been set in the Federal District Court in Oakland, California, United States of America on 2nd March 2007 in the above matter. The Court has requested that personal representatives of each of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited attend this hearing. At this hearing the Court will, it appears, seek to determine whether Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited intend to proceed with this litigation. (We attach a letter from Glen Westreich, dated 13 February 2007 in this regard).

At present, Crossgar Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. It also lacks the funding to accomplish the personal appearance requested by the Court. Accordingly, we bring these circumstances to your attention and advise that we are unable to send a representative to attend the hearing on behalf of Crossgar Limited until and unless we are provided with sufficient funds to enable us to do so.

Please advise by return whether you are willing and able to furnish Crossgar Limited with the necessary funds.

Yours faithfully

For and on behalf of Derard Limited
Director of Crossgar Limited

EXHIBIT
DL 01

Registered in the British Virgin Islands
Registration Number 3968

Registered Office
Palm Grove House, P O Box 438, Road Town, Tortola, B.V.I.

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade  St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 656211 Fax: +44 1534 656215

27 February 2007

URGENT

FG Resources (Jersey) Limited
P.O  Box 546
28- 30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath
Case No. C02 1068CW

It has been called to our attention recently that a hearing has been set in the Federal District Court in Oakland, California, United States of America on 2nd March 2007 in the above matter. The Court has requested that personal representatives of each of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited attend this hearing. At this hearing the Court will, it appears, seek to determine whether Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited intend to proceed with this litigation. (We attach a letter from Glen Westreich, dated 13 February 2007 in this regard).

At present, Crossgar Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. It also lacks the funding to accomplish the personal appearance requested by the Court. Accordingly, we bring these circumstances to your attention and advise that we are unable to send a representative to attend the hearing on behalf of Crossgar Limited until and unless we are provided with sufficient funds to enable us to do so.

Please advise by return whether you are willing and able to furnish Crossgar Limited with the necessary funds.

Yours faithfully

For and on behalf of Derard Limited
Director of Crossgar Limited

EXHIBIT

DL 02

FGHGA 000 031-1633

Registered in the British Virgin Islands
Registration Number  3968

Registered Office:
Palm Grove House, P O Box 438, Road Town, Tortola, B.V.I.

# Derard Limited

Administration Office.
P.O. Box 545, 26-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 630215

21 February 2007

URGENT

Cheval Ltd.
P.O. Box 396
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath
Case No. C02 3068 CW

It has been called to our attention recently that a hearing has been set in the Federal District
Court in Oakland, California, United States of America on 2nd March 2007 in the above matter.
The Court has requested that personal representatives of each of Janvrin Holdings Limited,
Crossgar Limited and Ryburn Limited attend this hearing. At this hearing the Court will, it
appears, seek to determine whether Janvrin Holdings Limited, Crossgar Limited and Ryburn
Limited intend to proceed with this litigation. (We attach a letter from Glen Westreich, dated 13
February 2007 in this regard).

At present, Janvrin Holdings Limited is not in good standing and has been struck from the BVI
Companies Register for non-payment of statutory fees. It also lacks the funding to accomplish
the personal appearance requested by the Court. Accordingly, we bring these circumstances to
your attention and advise that we are unable to send a representative to attend the hearing on
behalf of Janvrin Holdings Limited until and unless we are provided with sufficient funds to
enable us to do so.

Please advise by return whether you are willing and able to furnish Janvrin Holdings Limited with
the necessary funds.

Yours faithfully

For and on behalf of Derard Limited
Director of Janvrin Holdings Limited

EXHIBIT

D L 03

PENGAD 800-631-6989

# Derard Limited

Administration Office:
P O Box 645, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

27 February 2007

URGENT

Channed
P.O Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v - Oliver Hilsenrath
Case No: C 02 1668CW

It has been called to our attention recently that a hearing has been set in the Federal District
Court in Oakland, California, United States of America on 2nd March 2007 in the above matter.
The Court has requested that personal representatives of each of Janvrin Holdings Limited,
Crossgar Limited and Ryburn Limited attend this hearing. At this hearing the Court will, it
appears, seek to determine whether Janvrin Holdings Limited, Crossgar Limited and Ryburn
Limited intend to proceed with this litigation, (We attach a letter from Glen Westreich, dated 13
February 2007 in this regard).

At present, Janvrin Holdings Limited is not in good standing and has been struck from the BVI
Companies Register for non-payment of statutory fees. It also lacks the funding to accomplish
the personal appearance requested by the Court. Accordingly, we bring these circumstances to
your attention and advise that we are unable to send a representative to attend the hearing on
behalf of Janvrin Holdings Limited until and unless we are provided with sufficient funds to
enable us to do so.

Please advise by return whether you are willing and able to furnish Janvrin Holdings Limited with
the necessary funds.

Yours faithfully

For and on behalf of Derard Limited
Director of Janvrin Holdings Limited

EXHIBIT
DL 04

Registered in the British Virgin Islands
Registration Number: 3988

Registered Office:
Palm Grove House, P O Box 438, Road Town, Tortola, B.V.I.

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

27 February 2007

URGENT

C. Limited
P O Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath
Case No. C02 1068CW

It has been called to our attention recently that a hearing has been set in the Federal District Court in Oakland, California, United States of America on 2nd March 2007 in the above matter. The Court has requested that personal representatives of each of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited attend this hearing. At this hearing the Court will, it appears, seek to determine whether Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited intend to proceed with this litigation. (We attach a letter from Glen Westreich, dated 13 February, 2007 in this regard).

At present, Ryburn Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. It also lacks the funding to accomplish the personal appearance requested by the Court. Accordingly, we bring these circumstances to your attention and advise that we are unable to send a representative to attend the hearing on behalf of Ryburn Limited until and unless we are provided with sufficient funds to enable us to do so.

Please advise by return whether you are willing and able to furnish Ryburn Limited with the necessary funds.

Yours faithfully

For and on behalf of Derard Limited
Director of Ryburn Limited

EXHIBIT
D L 05

Registered in the British Virgin Islands
Registration Number 3968

Registered Office:
Palm Grove House, P O Box 438, Road Town, Tortola, B.V.I.

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel. +44 1534 636211 Fax: +44 1534 636215

11th April 2007

URGENT

CN Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath**
**Case No. CO2 1068CW**

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29th March 2007, from the Federal Court in San Francisco. As set out in the Order, "...*a hearing on counterclaimants' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. in Courtroom G, 15th floor, Federal Building, San Francisco, California, 94102 ...Counterdefendents should attend the hearing if they contest the validity or amount of the claim".*

We remind you that the situation stands as described in our earlier correspondence with you. Crossgar Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Crossgar Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Crossgar Limited

EXHIBIT

DL 06

# Derard Limited

Administration Office:
P O Box 540, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

**URGENT**

EQ Nominees (Jersey) Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath
**Case No. CO2 1068CW**

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29th March 2007, from the Federal Court in San Francisco. As set out in the Order, "...*a hearing on counterclaimants' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. in Courtroom G, 15th floor, Federal Building, San Francisco, California. 94102...Counterdefendents should attend the hearing if they contest the validity or amount of the claim*".

We remind you that the situation stands as described in our earlier correspondence with you. Crossgar Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Crossgar Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Crossgar Limited

EXHIBIT

_D L  07_

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

URGENT

CN Limited
P.O. Box 546
28 30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath**
**Case No. CO2 3068CW**

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29° March 2007, from the Federal Court in San Francisco. As set out in the Order, *"...a hearing on counterclaimants' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. in Courtroom 6, 15th floor, Federal Building, San Francisco, California, 94102...Counterdefendants should attend the hearing if they contest the validity or amount of the claim".*

We remind you that the situation stands as described in our earlier correspondence with you. Janvrin Holdings Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Janvrin Holdings Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Janvrin Holdings Limited

EXHIBIT

DL 08

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 836211 Fax: +44 1534 636215

11th April 2007

**URGENT**

CH Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath**
**Case No. CO2 1068CW**

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29th March 2007, from the Federal Court in San Francisco. As set out in the Order, "...a hearing on counterclaimants' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. in Courtroom 6, 15th floor, Federal Building, San Francisco, California, 94102...Counterdefendents should attend the hearing if they contest the validity or amount of the claim'".

We remind you that the situation stands as described in our earlier correspondence with you. Janvrin Holdings Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Janvrin Holdings Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Janvrin Holdings Limited

EXHIBIT

_DL 09_

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11ᵗʰ April 2007

**URGENT**

CN Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath**
**Case No. C02 1068CW**

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29ᵗʰ March 2007, from the Federal Court in San Francisco. As set out in the Order, *"...a hearing on counterclaimants' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. In Courtroom G, 15ᵗʰ floor, Federal Building, San Francisco, California, 94102...Counterdefendents should attend the hearing if they contest the validity or amount of the claim"*.

We remind you that the situation stands as described in our earlier correspondence with you. Ryburn Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Ryburn Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Ryburn Limited

EXHIBIT

DL 10

# COVER SHEET

# EXHIBIT ET

21/02 '06 15:09 FAX                                                                          ✆001

# EQUITY TRUST

## fax

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 0XY
Channel Islands

Tel     +44 (0) 1534 636211
Fax     +44 (0) 1534 636215
Email   info@equitytrust.com

| To | Mr Barry J Portman & Mr Steve G Kalar |
|---|---|
| Fax number | 00 415 436 7706 |
| From | Mr Grant Brown |
| Subject | The Firefly Trust |
| Date | 20 February 2006 |

No. of pages     1

Dear Mr Portman and Mr Kalar

*The Firefly Trust (the "Trust")*

I write with reference to your fax dated 14 February 2006.

From your fax, I note that Mr Hilsenrath does not wish to be represented by a public defender in the criminal proceedings against him the United States and that instead he wishes to retain your firm as private counsel. Clearly, it is a matter for Mr Hilsenrath as to whom he wishes to appoint to defend him in these proceedings (since the proceedings are against him in his personal capacity) and what arrangements he wishes to make to discharge your firm's fees and costs.

I confirm that it is the case that Mr Hilsenrath has requested the Trustee to make Trust funds available to him in order that he may defend the proceedings against him and that the trustee of the Trust has declined to acquiesce to his request. The trustee of the Trust has reconsidered your further request and declines to accede to your request. The Trustee does not hold the Trust property for Mr Hilsenrath under a bare trust or nominee arrangement and Mr Hilsenrath and / or any representative of Mr Hilsenrath cannot instruct the Trustee to adopt a particular course of action in order to benefit him.

The trustee of the Trust is the legal owner of the Trust property and is obliged by fiduciary and statutory duties (inter alia) to act impartially in the interests of all of the beneficiaries of the Trust (in the sense of fairly and disinterestedly) and to preserve and enhance the Trust assets. The trustee of the Trust may exercise its dispositive powers in its absolute and unfettered discretion so that the trustee is not obliged to disclose its reasons or deliberation process.

Finally, there is no question of the Trust's "seizure" of its own assets.

Yours sincerely

Grant Brown
Director
Equity Trust (Jersey) Limited

EXHIBIT
ET 01

The information contained in this facsimile message is intended only for the use of the person or entity to whom it is addressed and may contain information that is confidential and may be legally privileged and exempt from disclosure under applicable laws. If you read this message and are not the addressee you are notified that use, dissemination, distribution or reproduction of this message is prohibited. If you have received this message in error, please notify us immediately and return the original message to us.

Regulated by the Jersey Financial Services Commission and registered under the Financial Services (Jersey) Law 1998 Registration No. 37500

07/03 '06 09:16 FAX                                                          ✉️001

# EQUITY TRUST

## fax

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel     +44 (0) 1534 636211
Fax     +44 (0) 1534 636215
Email   infoje@equitytrust.com

| To | Mr Barry J Portman & Mr Steve G Kalar | | |
| Fax number | 00 1415 436 7706 | | |
| From | Mr Grant Brown | | |
| Subject | The Firefly Trust | | |
| Date | 06 March 2006 | No. of pages | 1 |

Dear Mr Portman and Mr Kalar

*The Firefly Trust (the "Trust")*

I write with reference to your fax dated 03 March 2006.

I note your position as an Assistant Federal Public Defender paid by the United States government. I further note your comment that Mr Hisenrath does not wish to be represented by a public defender in the criminal proceedings against him in the United States.

I reiterate the point in my previous fax that it is a matter for Mr Hisenrath as to whom he wishes to appoint to defend him in these proceedings and what arrangements he wishes to make to discharge the corresponding fees and costs.

Mr Hisenrath does not have a fixed proprietary interest in the property comprised in the Trust fund. He therefore has no entitlement to demand that the Trustee makes any distribution of Trust property to him.

Pursuant to the *Trusts (Jersey) Law 1984 (as amended)*, subject to the terms of the trust and any order of the court (the "Court"),[1] the Trustee is not under any obligation to disclose his deliberations as to the manner in which he has exercised a power or discretion and the reason for any particular exercise of such power or discretion.

Should Mr Hisenrath, as a beneficiary of the Trust, wish to challenge the resolution of the Trustee not to release funds to him then we advise that he appoints Jersey counsel to make an application to the Court on his behalf accordingly.

Yours sincerely

Grant Brown
Director
Equity Trust (Jersey) Limited

EXHIBIT

$\mathcal{ET}$ 02

[1] The court means the Inferior Number of the Royal Court in Jersey

The information contained in this facsimile message is intended only for the use of the persons or entity to whom it is addressed and may contain information that is confidential and may be legally privileged and exempt from disclosure under applicable laws. If you read this message and are not the addressee you are notified that any use, dissemination, distribution or reproduction of this message is prohibited. If you have received this message in error, please notify us immediately and return the original message to us.

Regulated by the Jersey Financial Services Commission and registered under the Financial Services (Jersey) Law 1998 Registration No. 17503

# EQUITY TRUST

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email  infoje@equitytrust.com

Mr David Danan
24 Ivenova Street
Apt. 5
Kharkov
UKRAINE

Schneider  27th February 2007

:

Sirs:         : Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited – v – Oliver Hilsenrath
                Case No. CO2 1068CW

Dear Sir

We are writing to you in our capacity of trustee of The Revenge Trust.

Please see the enclosed letters dated 27th February 2007 from Derard Limited, the director of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited and from CN Limited, a shareholder of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited. We also refer to our prior discussions and correspondence with you regarding being put in funds for unpaid professional fees. You should note that Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited have been struck from the BVI Companies Register for non-payment of statutory fees.

We understand that Nixon Peabody LLP wrote directly to you about these matters on 13 February 2007.

Please advise by return whether you are willing and able to furnish Janvrin Holdings Limited, Crossgar Limited and Ryburn Limietd and/or The Revenge Trust with the previously requested funds.

Yours faithfully

For and on behalf of
Equity Trust (Jersey) Limited

**EXHIBIT**

*ET 03*

Regulated by the Jersey Financial Services Commission and
registered under the Financial Services (Jersey) Law 1998
Registration No. 57583

# EQUITY TRUST

Administration Office:
Derard Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JF4 8XY
Channel Islands

URGENT

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email  infoje@equitytrust.com

CN Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

EQ Nominees (Jersey)
Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

30 March 2007

Dear Sirs

## Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited -v- Oliver Hilsenrath
### Case No. C02 1068 CW

As we have previously informed you, it had been called to our attention by Glenn Westreich (in his letter dated 13 February 2007, forwarded to you on 27 February) that a hearing was to be held in the Federal District Court in Oakland, California, on 2 March 2007 in the above matter.

Following the 2 March 2007 hearing:

(1)    the Court entered an order granting in part and denying in part Hilsenrath's motion for leave to file an amended counterclaim (we have obtained the publicly available order and a copy of Hilsenrath's amended counterclaim and attach those documents for your review);

(2)    the Court dismissed the complaint of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, directed that default should be entered against those companies and permitted Nixon Peabody LLP to withdraw as counsel for those companies (we have obtained copies of the Court's case management order and the entry of default and attach those documents for your review); and

(3)    Hilsenrath has applied for a default judgment against Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited (a copy of Hilsenrath's application is attached for your review).



EXHIBIT
ΣΤ 04
1 OF 2

Registered Office,
Palm Grove House, P O Box 438, Road Town, Tortola, B.V.I.
Registration No 2568
Regulated by the Jersey Financial Services Commission and
registered under the Financial Services (Jersey) Law 1998

We remind you that the situation stands as described in our letter of 27 February. Crossgar Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Crossgar Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Gerard Limited
Director of Crossgar Limited

EXHIBIT

$\varepsilon T$ $04$

$2 \ 0 \not \vdash \ 2$

# EQUITY TRUST

C N Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 630231
Fax    +44 (0) 1534 638215
Email  info@equitytrust.com

URGENT

Equity Trust (Jersey) Limited
Equity Trust House
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands


COPY

30 March 2007

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited -v- Oliver Hilsenrath
Case No. C02 1068 CW**

We are writing to you in your capacity of trustee of The Revenge Trust.

Please see the enclosed letter dated 30 March 2007 from Derard Limited, the director of Crossgar Limited.

Please advise by return whether you are willing and able to furnish Crossgar Limited with the necessary funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of CN Limited

EXHIBIT
ET  05

Regulated by the Jersey Financial Services Commission and registered under the Financial Services (Jersey) Law 1998
Registration No. 37331

# EQUITY TRUST

Administration Office:
Dorard Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax   +44 (0) 1534 636215
Email  infoje@equitytrust.com

URGENT

CN Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

CH Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

30 March 2007

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited -v- Oliver Hilsenrath**
**Case No. C02 1068 CW**

As we have previously informed you, it had been called to our attention by Glenn Westreich (in his letter dated 13 February 2007, forwarded to you on 27 February) that a hearing was to be held in the Federal District Court in Oakland, California, on 2 March 2007 in the above matter.

Following the 2 March 2007 hearing:

(1)     the Court entered an order granting in part and denying in part Hilsenrath's motion for leave to file an amended counterclaim (we have obtained the publicly available order and a copy of Hilsenrath's amended counterclaim and attach those documents for your review);

(2)     the Court dismissed the complaint of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, directed that default should be entered against those companies and permitted Nixon Peabody LLP to withdraw as counsel for those companies (we have obtained copies of the Court's case management order and the entry of default and attach those documents for your review); and

(3)     Hilsenrath has applied for a default judgment against Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited (a copy of Hilsenrath's application is attached for your review).



EXHIBIT

ET 0.6
1 of 2

Registered Office
Palm Grove House, P O Box 438, Road Town, Tortola, B.V.I.
Registration No. 3569
Regulated by the Jersey Financial Services Commission and
registered under the Financial Services (Jersey) Law 1998

We remind you that the situation stands as described in our letter of 27 February. Janvrin Holdings Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Janvrin Holdings Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Bérard Limited
Director of Janvrin Holdings Limited

EXHIBIT

ET 06

2 of 2

# EQUITY TRUST

C N Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email  info@equitytrust.com

**URGENT**

Equity Trust (Jersey) Limited
Equity Trust House
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands



**COPY**

30 March 2007

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited -v- Oliver Hilsenrath
Case No. C02 1068 CW**

We are writing to you in your capacity of trustee of The Revenge Trust

Please see the enclosed letter dated 30 March 2007 from Derard Limited, the director of
Janvrin Holdings Limited.

Please advise by return whether you are willing and able to furnish Janvrin Holdings
Limited with the necessary funds. Absent hearing from you, we shall not take any further
steps.

Yours faithfully

For and on behalf of CN Limited

EXHIBIT

_ET 07_

Regulated by the Jersey Financial Services Commission and
registered under the Financial Services (Jersey) Law 1998
Registration No. 37831

# EQUITY TRUST

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email  info@equitytrust.com

David Dahan
24 Ivanova Street
Apartment B
Kharkov
UKRAINE

And Via Email
dazid@isdn.net.il
davidadahan@gmail.com

St Helier, 30 March 2007

URGENT

Dear Sir

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited -v- Oliver Hilsenrath – Case No. C02 1068 CW**

We are writing to you in our capacity of trustee of The Revenge Trust.

Please see the enclosed letters dated 30 March 2007 from Derard Limited, the director of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited and from CN Limited, a shareholder of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited. We also refer to our prior discussions and correspondence with you regarding being put in funds for unpaid professional fees. You should note that Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited have been struck from the BVI Companies Register for non-payment of statutory fees.

We understand that Nixon Peabody LLP wrote directly to you about these matters on 13 February 2007 and we wrote to you on 27 February 2007.

Please advise by return whether you are willing and able to furnish Janvrin Holdings Limited, Crossgar Limited, Ryburn Limited and/or The Revenge Trust with the previously requested funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of
Equity Trust (Jersey) Limited

EXHIBIT
ET 08

Regulated by the Jersey Financial Services Commission and
registered under the Financial Services (Jersey) Law 1998.
Registration No. 52583