# EQUITY TRUST

Administration Office:
Gerard Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email  infoje@equitytrust.com

URGENT

CN Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

30 March 2007

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited -v- Oliver Hilsenrath
Case No. C02 1068 CW**

As we have previously informed you, it had been called to our attention by Glenn Westreich (in his letter dated 13 February 2007, forwarded to you on 27 February) that a hearing was to be held in the Federal District Court in Oakland, California, on 2 March 2007 in the above matter.

Following the 2 March 2007 hearing:

(1)    the Court entered an order granting in part and denying in part Hilsenrath's motion for leave to file an amended counterclaim (we have obtained the publicly available order and a copy of Hilsenrath's amended counterclaim and attach those documents for your review);

(2)    the Court dismissed the complaint of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, directed that default should be entered against those companies and permitted Nixon Peabody LLP to withdraw as counsel for those companies (we have obtained copies of the Court's case management order and the entry of default and attach those documents for your review); and

(3)    Hilsenrath has applied for a default judgment against Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited (a copy of Hilsenrath's application is attached for your review).

We remind you that the situation stands as described in our letter of 27 February. Ryburn Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Ryburn Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Gerard Limited
Director of Ryburn Limited

EXHIBIT
ET 09

Registered Offices:
Palm Grove House, P O Box 438, Road Town, Tortola, B.V.I
Registration No. 3768
Regulated by the Jersey Financial Services Commission and
registered under the Financial Services (Jersey) Law 1998

# EQUITY TRUST

C N Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email  info@equitytrust.com

URGENT

Equity Trust (Jersey) Limited
Equity Trust House
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands



30 March 2007

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited -v- Oliver Hilsenrath**
**Case No. C02 1068 CW**

We are writing to you in your capacity of trustee of The Revenge Trust.

Please see the enclosed letter dated 30 March 2007 from Derard Limited, the director of Ryburn Limited.

Please advise by return whether you are willing and able to furnish Ryburn Limited with the necessary funds.  Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of CN Limited

EXHIBIT
$\mathcal{E}T$  10

Regulated by the Jersey Financial Services Commission and registered under the Financial Services (Jersey) Law 1998. Registration No. 37314

# EQUITY TRUST

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email  info|e@equitytrust.com

David Dahan
24 Ivanova Dtreet
Apartment B
Kharkov
UKRAINE

And Via Email
dazld@lsdn.net.il
davidadahan@gmail.com

St Helier, 11 April 2007

**URGENT**

Dear Sir

### Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited -v- Oliver Hilsenrath – Case No. C02 1068 CW

We are writing to you in our capacity of trustee of The Revenge Trust.

Please see the enclosed letters dated 11 April 2007 from Derard Limited, the director of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited and from CN Limited, a shareholder of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited.

Please advise by return whether you are willing and able to furnish Janvrin Holdings Limited, Crossgar Limited, Ryburn Limited and/or The Revenge Trust with the previously requested funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of
Equity Trust (Jersey) Limited

EXHIBIT

$CT$ $11$

Regulated by the Jersey Financial Services Commission and
registered under the Financial Services (Jersey) Law 1998
Registration No. 57583

# COVER SHEET

# EXHIBIT RL

| Form **W-8** | **Certificate of Foreign Status** | |
|---|---|---|
| (Rev. November 1992)<br>Department of the Treasury<br>Internal Revenue Service | | |

| | Name of owner (if joint account, also give joint owner's name) (See Specific Instructions.) | U.S. taxpayer identification number (if any) |
|---|---|---|
| **Please print or type** | RYBOEN LIMITED | |
| | Permanent address (See Specific Instructions.) (Include apt. or suite no.) | |
| | PO BOX 316, SARDINE HOUSE | |
| | City, province or state, postal code, and country | |
| | 1 WESLEY STREET, ST HELIER, JERSEY, CHANNEL ISLANDS | |
| | Current mailing address, if different from permanent address (include apt. or suite no., or P.O. box if mail is not delivered to street address) | |
| | City, town or post office, state, and ZIP code (if foreign address, enter city, province or state, postal code, and country) | |

| List account information here (optional, see Specific Instructions.) | Account number | Account type | Account number | Account type |
|---|---|---|---|---|
| | | | | |

**Notice of Change in Status.**—To notify the payer, mortgage interest recipient, broker, or barter exchange that you no longer qualify for exemption, check here . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
If you check this box, reporting will begin on the account(s) listed.

**Certification.**—(Check applicable box(es)). Under penalties of perjury, I certify that:

☑ For **INTEREST PAYMENTS**, I am not a U.S. citizen or resident (or I am filing for a foreign corporation, partnership, estate, or trust).

☑ For **DIVIDENDS**, I am not a U.S. citizen or resident (or I am filing for a foreign corporation, partnership, estate, or trust).

☑ For **BROKER TRANSACTIONS** or **BARTER EXCHANGE**, I am an exempt foreign person as defined in the instructions below.

**Please Sign Here** ▶

| Signature ▶  *J. Perkins*  JOHN H PERKINS - DIRECTOR | Date  30 JUL 1996 |
|---|---|

## General Instructions

(Section references are to the Internal Revenue Code unless otherwise noted.)

### Purpose

Use Form W-8 or a substitute form containing a substantially similar statement to tell the payer, mortgage interest recipient, middleman, broker, or barter exchange that you are a nonresident alien individual, foreign entity, or exempt foreign person not subject to certain U.S. information return reporting or backup withholding rules.

**Caution:** *Form W-8 does not exempt the payer from the 30% (or lower treaty) rate of nonresident withholding taxes.*

### Nonresident Alien Individual

For income tax purposes, "nonresident alien individual" means an individual who is neither a U.S. citizen nor resident. Generally, an alien is considered to be a U.S. resident if:

• The individual was a lawful permanent resident of the United States at any time during the calendar year, that is, the alien held an immigrant visa (a "green card"), or

• The individual was physically present in the United States on:

(1) at least 31 days during the calendar year, and

(2) 183 days or more during the current year and the 2 preceding calendar years (counting all the days of physical presence in the current year, one-third the number of days of presence in the first preceding year, and only one-sixth the number of days in the second preceding year).

See Pub. 519, U.S. Tax Guide for Aliens, for more information on resident and nonresident alien status.

**Note:** *If you are a nonresident alien individual married to a U.S. citizen or resident and have made an election under section 6013(g) or (h), you are treated as a U.S. resident and may not use Form W-8.*

### Exempt Foreign Person

For purposes of this form, you are an "exempt foreign person" for a calendar year in which:

1. You are a nonresident alien individual or a foreign corporation, partnership, estate, or trust,

2. You are an individual who has not been, and plans not to be, present in the United States for a total of 183 days or more during the calendar year, and

3. You are neither engaged, nor plan to be engaged during the year, in a U.S. trade or business that has effectively connected gains from transactions with a broker or barter exchange.

If you do not meet the requirements of 2 or 3 above, you may instead certify on Form 1001, Ownership, Exemption, or Reduced Rate Certificate, that your country has a tax treaty with the United States that exempts your transactions from U.S. tax.

### Filing Instructions

**When To File.**—File Form W-8 or substitute form before a payment is made. Otherwise, the payer may have to withhold and send part of the payment to the Internal Revenue Service (see Backup Withholding below). This certificate

generally remains in effect for three calendar years. However, the payer may require you to file a new certificate each time a payment is made to you.

**Where To File.**—File this form with the payer of the qualifying income who is the withholding agent (see Withholding Agent on page 2). Keep a copy for your own records.

### Backup Withholding

A U.S. taxpayer identification number or Form W-8 or substitute form must be given to the payers of certain income. If a taxpayer identification number or Form W-8 or substitute form is not provided or the wrong taxpayer identification number is provided, those payers may have to withhold 20% of each payment or transaction. This is called backup withholding.

**Note:** *On January 1, 1993, the backup withholding rate increases from 20% to 31%.*

Reportable payments subject to backup withholding rules are:

• Interest payments under section 6049(a).

• Dividend payments under sections 6042(a) and 6044.

• Other payments (i.e., royalties and payments from brokers and barter exchanges) under sections 6041, 6041A(a), 6045, 6050A, and 6050N.

If backup withholding occurs, an exempt foreign person who is a nonresident alien individual may get a refund by filing Form 1040NR, U.S. Nonresident Alien Income Tax Return, with the Internal Revenue

(Continued on back)

Form **W-8** (Rev. 11-92)

EXHIBIT

RL01

RYB 00497

P.2/2

## CORPORATE RESOLUTION

DATE:

WERTHEIM SCHRODER & CO.
~Incorporated~

EQUITABLE CENTER
787 SEVENTH AVENUE
NEW YORK, NY 10019-8016

Gentlemen:

The undersigned, Secretary of ___RYBURN LIMITED___
(the "Corporation"), hereby certifies:

that the attached hereto is a true and correct copy of resolutions adopted by the Board of Directors of the Corporation in accordance with law and the by-laws of the Corporation at a meeting held on __26 JULY 1996___, which resolutions are still in full force and effect on the date hereof;

that each of the persons named below, who are the persons empowered by the attached resolutions to act on behalf of the Corporation, is the duly elected and qualified incumbent in the office of the Corporation set opposite his name and the signature set opposite his name is his true and correct signature.

___(Please see attached list of authorised signatories)___

| (OFFICE) | (NAME) | (SIGNATURE) |

| (OFFICE) | (NAME) | (SIGNATURE) |

and that the Corporation is duly organized and is validly existing under the laws of the State of British Virgin Islands, that its charter empowers the Corporation to transact the business defined in the resolutions a copy of which is attached hereto, and that no limitation has been imposed upon such resolutions by the by-laws of the Corporation or otherwise.

(SEAL)

For Wesley Secretaries Limited, Secretary (SECRETARY)

Countersigned by:

J. Perkins

+PRESIDENT/VICE-PRESIDENT+          DIRECTOR

EXHIBIT
RL 02

PENGAD 800-631-6989

RYB 00493

Form **1001**
(Rev. August 1987)

## Ownership, Exemption, or Reduced Rate Certificate

(Please type or print)

Name
PYRAMID LIMITED

Address (number and street) (specify address in the foreign country)
PO BOX 316  TORTOLA HOUSE  BRITISH VIRGIN ISLANDS

City
ST HELIER  JERSEY  CHANNEL ISLANDS

1 Check type of income for which this certificate applies. (If you object to line a, you do not have to check any other line.)
   a ☐ Income from a trust, estate, or investment account.
   b ☐ Coupon bond interest (including tax-free covenant bonds).
   c ☐ Interest, other than coupon bond interest.
   d ☐ Rents.
   e ☐ Natural resource royalties and income from real property.
   f ☐ Royalties from use of patents, secret processes, etc.
   g ☐ Royalties from sale of films, television tapes, etc.
   h ☐ Annuities.
   i ☐ Other income (specify) ►

2 Information on coupon bond.
   a Name and address of obligor of bonds ►

3 Calendar years for which the natural or exempt rate of tax applies to either than coupon bond interest.

4 Withheld tax represented to be released (see instructions).

### Sign Here ►

_J. Perkins_    DIRECTOR    24 3067/1996

## Instructions

(Section references are to the Internal Revenue Code and Income Tax Regulations, unless otherwise noted.)

### Paperwork Reduction Act Notice

We ask for this information to carry out the Internal Revenue laws of the United States. We need it to ensure that taxpayers are complying with these laws and to allow us to figure and collect the right amount of tax. You are required to give us this information.

**Purpose of Form.** — Owners of certain types of income (for example, nonresident aliens) use this form to report it and to claim a withholding exemption or a reduced rate of tax on the income under tax conventions or exempt under tax conventions or treaties. This form can also be used to claim a release of tax withheld at source.

### Instructions for Owners, Trustees, or Agents

**A. Who Must File.** — You, as an owner (or your trustee or agent) must file this form if you receive income subject to withholding under section 1441, 1442, or 1451 and you are one of the following:

1  A nonresident alien individual or fiduciary.
2  A foreign partnership.
3  A foreign corporation or other foreign entity.
4  A nonresident foreign partnership and partners (explain in section 1451 only).
5  A nonresident foreign corporation (not only).

In addition, any payee who does not have to file this form.

RYB 00498

EXHIBIT
RL 03

PENGAD 800-631-6989

Form **1001** (Rev. 8-87)

# STUART, COLEMAN & CO., INC

Member New York Stock Exchange, Inc.
11 West 42nd Street, 15th Floor, New York, N.Y. 10036
(212) 789-2400 • Fax (212) 575-4698



Dear Customer:

There are special risks associated with uncovered option writing which expose the investor to potentially significant loss. Therefore, this type of strategy may not be suitable for all customers approved for options transactions.

1.  The potential loss of uncovered call writing is unlimited. The writer of an uncovered call is in an extremely risky position, and may incur large losses if the value of the underlying instrument increases above the exercise price.

2.  As with writing uncovered calls, the risk of writing uncovered put options is substantial. The writer of an uncovered put option bears a risk of loss if the value of the underlying instrument declines below the exercise price. Such loss could be substantial if there is a significant decline in the value of the underlying instrument.

3.  Uncovered option writing is thus suitable only for the knowledgeable investor who understands the risks, has the financial capacity and willingness to incur potentially substantial losses, and has sufficient liquid assets to meet applicable margin requirements. In this regard, if the value of the underlying instrument moves against an uncovered writer's options position, the investor's Account Executive may request significant additional margin payments. If an investor does not make such margin payments, the Account Executive may liquidate stock or options positions in the investor's account, with little or no prior notice in accordance with the investor's margin agreement.

4.  For combination writing, where the investor writes both a put and a call on the same underlying instrument, the potential risk is unlimited.

5.  If a secondary market in options were to become unavailable, investors could not engage in closing transactions, and an option writer would remain obligated until expiration or assignment.

6.  The writer of an American-style option is subject to being assigned an exercise at any time after he has written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period.

NOTE:  It is expected that you will read the booklet entitled, "CHARACTERISTICS AND RISKS OF STANDARDIZED OPTIONS," available from your Account Executive. In particular, your attention is directed to the chapter entitled Risks of Buying and writing Options. This statement is not intended to enumerate all of the risks entailed in writing uncovered options.

Date: _24 · 1 · 76_____     Title (If Required): _DIRECTOR_____

Print Name: _JOHN H PERKINS____     Signature: _J. Perkins_____

Print Name: _____     Signature: _____

**EXHIBIT**

_R L 04_

RYB 00494

**To: Matheson Bank (Jersey) Limited**

At a Meeting of the Directors of _____ Ryburn _____, Limited

(the Company") whose registered office is at PO Box 3151, Road Town, Tortola, _____
Briush Virgin Islands

held at Jardine House, 1 Wesley on the ___ 4 ___ day of ___ October ___ 1996__
Street, St Helier, Jersey

It was resolved:-

1.  That a banking account for the Company be opened with Matheson Bank (Jersey) Limited ("MBJ") and that MBJ be and is hereby authorised to take written instructions for payment orders provided that such instructions are signed by *

    In accordance with terms of the attached Authorised Signatory
    list of Wesley Secretaries limited or any amended signatory
    list issued from time to time

2.  That MBJ be and is hereby authorised to accept the receipt or written authority of the Signatories for the withdrawal or delivery to bearer or to one or more designated persons of all or any documents or securities or other property held by it.

3.  That MBJ be and is hereby authorised to act upon and to accept as valid any notification in writing signed by the Secretary or any Director of the Company of any change in these Resolutions or of any subtraction addition or change in the Signatories.

4.  That these Resolutions (together with a list of the names of the Signatories) be communicated to MBJ and shall constitute the Company's Mandate to the said MBJ and that until the said MBJ actually receive notification in writing signed by the Secretary or any Director of the Company of any change in these Resolutions or of any subtraction addition or change in Signatories, MBJ be and is authorised to act in pursuance of these Resolutions; and shall be indemnified and held harmless against any loss suffered or liability incurred by reason of its continuing to act in pursuance hereof.

5.  That the appointment of Matheson Bank (Jersey) Limited be governed by the Law of the Island of Jersey, subject to services being provided in accordance with established banking practice in Jersey. In particular the bank will, so far as it is not contrary to public policy in Jersey, comply with the English Bills of Exchange Act, 1882 as amended and the English Cheques Act, 1957 as amended in relation to the acceptance and payment of cheques and other orders.

*   Indicate here how instruction should be signed e.g. two directors or a director and any other authorised signatory.

We certify that the Resolutions set out above have been duly entered in the minute book and signed therein by the Chairman, and are in accordance with the Articles of the Company, and that the Company is a Public/Private Company

RYB 00472

Dated __ 8/10/96 _____

_____ Chairman/~~DIRECTOR~~

_____ Secretary
For Wesley Secretaries Limited, Secretary

EXHIBIT
RL 05

**Matheson Bank (Jersey) Limited**

A member of the Jardine Matheson Group

13 Broad Street
St Helier
Jersey JE4 8PR
Channel Islands

**Account
Opening Form**

Please | Tick where appropriate

- [✓] Public or Private Company
- [ ] Partnership
- [ ] Sole Proprietorship
- [ ] Society/Association
- [ ] Trust Company

Please complete in Block Letters

EXHIBIT
RL 06

Name of account    RYBORN LIMITED

Nature of business
INVESTMENT HOLDING

Date of incorporation or
Date of commencement of trading or
Date of establishment

Associated or subsidiary companies
MONTARAZ LIMITED
JANURIN HOLDINGS LIMITED
LOTMAR LIMITED
ROCKVALE LIMITED

SAFFRAY LIMITED
ONVURY HOLDINGS LIMITED
CROSSGAR LIMITED
SUBFWAY LIMITED

Registered office address
PO BOX 3151
ROAD TOWN
TORTOLA
BRITISH VIRGIN ISLANDS

Correspondence address if different from
Registered office address
JARDINE HOUSE
1 WESLEY STREET
ST HELIER
JERSEY

Telephone No
00 1 809 494 3065

Telephone No.
01534 888111

Statements required

- [✓] Monthly (In the absence of instructions statements will be sent quarterly)
- [ ] Quarterly

Name and address of other bankers
NONE

RYB 00473

Introduced by:  MTCS

Signed _____   DIRECTOR

Signed _____
For Wesley Secretaries Limited, Secretary

Date    8/10/96

Date    8/10/96

Registered Office: Jardine House, 1 Wesley Street, St Helier, Jersey JE4 8UD, Channel Islands. Registered Number: 59015



**RYBURN LIMITED**
**("THE COMPANY")**

**RESOLUTION OF THE SOLE DIRECTOR IN ACCORDANCE WITH THE ARTICLES OF ASSOCIATION OF THE COMPANY**

**ADOPTION OF REGISTERED SHARES ONLY MEMORANDUM & ARTICLES OF ASSOCIATION**

IT IS RESOLVED that the Company shall adopt a new Memorandum and Articles of Association that shall permit the Company to issue registered shares only.

**CHANGE OF REGISTERED OFFICE AND REGISTERED AGENT**

IT IS RESOLVED that the Registered Office and Registered Agent of the Company be changed to that of Equity Trust (BVI) Limited and accordingly Clauses 2 and 3 of the Memorandum of Association be deleted in their entirety and be replaced by the following:-

2.    The Registered Office of the Company will be situate at Palm Grove House, P.O. Box 438, Road Town, Tortola, British Virgin Islands or at such other place within the British Virgin Islands as the directors may from time to time determine.

3.    The Registered Agent of the Company will be Equity Trust (BVI) Limited, Palm Grove House, P.O. Box 438, Road Town, Tortola, British Virgin Islands or such other person or company being a person or company entitled to act as a registered agent as the directors may from time to time determine.

**IT IS FURTHER RESOLVED**

that the Company's Memorandum and Articles of Association be deleted in its entirety and replaced with the new Memorandum and Articles of Association attached hereto.

Adopted and signed this          day of                    2004

For and on behalf of
**Gerard Limited - Director**

.......................................
Authorised signatory

EXHIBIT
21 07

RYB 00439

.......................................
Authorised signatory

Fs:/mau/CO104/70/0006

RYBURN LIMITED
("THE COMPANY")

RESOLUTION OF THE SOLE DIRECTOR IN ACCORDANCE WITH THE ARTICLES OF ASSOCIATION OF THE COMPANY

ADOPTION OF REGISTERED SHARES ONLY MEMORANDUM & ARTICLES OF ASSOCIATION

IT IS RESOLVED that the Company shall adopt a new Memorandum and Articles of Association that shall permit the Company to issue registered shares only.

CHANGE OF REGISTERED OFFICE AND REGISTERED AGENT

IT IS RESOLVED that the Registered Office and Registered Agent of the Company be changed to that of Equity Trust (BVI) Limited and accordingly Clauses 2 and 3 of the Memorandum of Association be deleted in their entirety and be replaced by the following:-

2. The Registered Office of the Company will be situate at Palm Grove House, P.O. Box 438, Road Town, Tortola, British Virgin Islands or at such other place within the British Virgin Islands as the directors may from time to time determine.

3. The Registered Agent of the Company will be Equity Trust (BVI) Limited, Palm Grove House, P.O. Box 438, Road Town, Tortola, British Virgin Islands or such other person or company being a person or company entitled to act as a registered agent as the directors may from time to time determine.

IT IS FURTHER RESOLVED

that the Company's Memorandum and Articles of Association be deleted in its entirety and replaced with the new Memorandum and Articles of Association attached hereto.

Adopted and signed this 26 day of November, 2000

For and on behalf of
Derard Limited - Director

Authorised signatory

Authorised signatory

EXHIBIT
RL 08

RYB 00411

Fs/m.su/C0104779/0006

# COVER SHEET

# EXHIBIT WSL

14

**NESLEY SECRETARIES LIMITED**        Ref:5/96

For payment up to a value of £100,000 (one hundred thousand pounds) or the currency equivalent, an "A" signatory is required plus either another "A" or "B" signatory.

For payment in excess of £100,000 (one hundred thousand pounds) or the currency equivalent any two "A" signatories are required.

**CLASS A**

| | |
|---|---|
| Colin R Walker | Leslie Norman |
| Melvyn Kalman | Neil E Wakeling |
| Alan V Tidy | John H Perkins |
| Marjorie M Du Feu | Ian F Moisan |
| Jacqueline M Jones | Kevin V Mercury |
| Paul H Glazier | |

EXHIBIT

WSL 01

Certified a true copy of the original document.

RYB 00490

Date of Minutes.

**2 4 JUL 1996**

J. Perkins

WESLEY SECRETARIES LIMITED                    Ref:5/96

For payment up to a value of £100,000 (one hundred thousand pounds) or the currency equivalent, an "A" signatory is required plus either another "A" or "B" signatory.

For payment in excess of £100,000 (one hundred thousand pounds) or the currency equivalent any two "A" signatories are required.

CLASS B

| | |
|---|---|
| Caroline J Rougeard | Michele V Christensen |
| David P Chalmers-Hunt | Anne J Bougourd |
| Janet Raine | Susie Dos Reis |
| Stella Lester | Cicele Le Micro |
| Alison Bisson | |

Certified a true copy of the original document.

Date of Minutes.

2 4 JUL 1996

J. Perkins

JOHN H PERKINS
WESLEY SECRETARIES LIMITED, ASSISTANT
SECRETARY

EXHIBIT
WSL 02

RYB 00489

# COVER SHEET

# EXHIBIT X

# COVER SHEET

# EXHIBIT YA

# A and M Matley

## Examiner of Documents & Handwriting

MARCEL B. MATLEY
BOARD CERTIFIED, NADE
PUBLICATIONS, SEMINARS
www.handwritingexpertsofcalifornia.com

(3092 ARMY STREET, 94110)
POST OFFICE BOX 882401
SAN FRANCISCO, CA 94188

PHONE: (415) 753-2832
FAX: (415) 753-3346
TOLL FREE: 1-800-367-8403
E-MAIL: MMATLEY@AOL.COM

## CURRICULUM VITAE AND GENERAL RESUME

## MARCEL B. MATLEY

### EXAMINER OF QUESTIONED DOCUMENTS AND HANDWRITING

BORN:    Phoenix, AZ, September 21, 1933.

#### EXPERIENCE INCLUDES:

- Handwriting authentication and signature verification, including numerals.
- Genuineness of logs, diaries, and other writings in series.
- Serve as either confidential consultant or testifying expert.
- Oral or written opinion, which can be a full, illustrated, written report to facilitate settlement or in the form of a declaration under oath.
- Question formulation to examine opponent's document examiner; also pertinent citations for cross-examination from learned treatises.
- Identification of the writer of poison pen letters and anonymous writings.
- Other aspects of questioned document examination.
- Impeachment of erroneous, incomplete or incompetent expert handwriting opinion.
- Consultant to other document examiners.

#### CREDENTIALS:

- Certification with commendation, Paul de Sainte Colombe Center, January 28, 1981, with honorary Charter Membership Certificate, April 8, 1982.
- Honorary membership, National Questioned Document Association, March 1992.
- Vanguard Network, Board Certified Handwriting Professional, April 28, 1998.
- Board Certified, National Association of Document Examiners, October 2000.
- Consultant and mentor to other document examiners.
- Consulted by several public agencies on administrative issues.
- Current San Francisco Business Tax Registration Certificate, 145353.

EXHIBIT YA, Page 1 of 4

COURT QUALIFIED WITNESS:
- Federal District and Bankruptcy Courts; INS Court; Superior, Municipal and
Administrative Law Courts, California; Probate Courts, Texas and New Jersey; arbitrations
and depositions. List of testimonies available upon request.

CLASSES AND LECTURES:
- Lecture series titled: *Seminars and Workshops in Handwriting Sciences,* for professionals
and advanced students.
- Organizer, co-producer and instructor at the annual *Seminar in Document Examination,*
in San Francisco, 1990-1992. Attendees from U.S. and Canada.
- Presented at NADE Conferences and Pre-conferences: 1992: *Human Graphic Motor
Sequence.* 1993, two-day intensive course: *The Physiology and Forensic Identification of
Handwriting.* 1994: *Answering Challenges on Voir Dire.* 2000: Presentation, *How to
Read Things Critically;* Poster session: *Examination of Graffiti Writing.* 2001, Crawley,
England: *Angle Value* [jointly with Maureen Ward-Gandy]; *A Case with the Kinderprint.*
2002, Ann Arbor, MI: *Examination of Russian Birth Certificates, with poster session.*
2003, New Orleans, LA: *Humorous Moments in History of Handwriting Expertise.* Poster
session: *Daubert.* 2004, Anaheim, CA: Pre-conference: *Daubert and Handwriting
Expert.* Conference: *Kunho Case.* Poster session: *INS Case.* 2006, aboard Mariner of
the Seas: *You're a what? Featuring techniques for inoculating the jury (including CD).*
- Presented workshop, *Qualifications Impeachment,* ABFHA 1993 Conference.
- 1995 IGS-AFDE Joint Conference: *A Protocol for Research in Disguised Handwriting as
Illustrated by Slant.*
- 1995 AHAF Symposium: *The Physiology of Handwriting, a Half-day Workshop.*
- 1997 Vanguard Conference: *Physiology of Handwriting Exemplified by Writer's Cramp.*
- 1998 Vanguard Pre-Conference: *Speed in Handwriting.* An all-day intensive.
- 1999 AAHA/AHAF Joint Conference, Post-Conference Workshop: *Physiological and
Psychological Foundations* [of the production of handwriting]: *Forensic Applications.*
- 2002 AHAF Nor Cal Seminars: *Health and Handwriting.* March: *Toomey's 25 Health
Clues.* April: *Review of Research Published in Medical Literature.*
- 2003 AAHA/AHAF Joint Conference: *Alzheimer's and Handwriting; Linguistic Changes
in the Normal Elderly* [based on two forensic cases and research in academic literature].

LISTINGS:
- *Forensic Register of Expert Consultants,* Bar Association of San Francisco.
- *Who's Who in Finance and Industry, 30th Edition,* Marquis Who's Who, Publishers.
- And others.

PUBLICATIONS:
- *Forgery: Detection and Defense; a Guidebook for the Legal Professional, 1988.*
- *QDE Index: Periodical Articles in English on Document Examination...., 2003 ed.*
- *Oh, My aching arm: The cause and cure of general writer's cramp, 1997.*

EXHIBIT YA, Page 2 of 4

PUBLICATIONS, CONTINUED:
  - *Testing the Reliability of Expert Opinions in Texas: Guidelines from Kelly, du Pont/Daubert and Their Progeny, 2004.*
  - STUDIES IN QUESTIONED DOCUMENTS.  1.  *Photocopies in Document Examination.*  2.  *Exorcism of Ignorance; a Reply From a Handwriting Expert.*  2nd ed:  *In the Exercise of Ignorance:  Replies to the Critics of Handwriting Expertise.*  3.  *Logged Entries:  Made Separately or Sequentially?*  4.  *Exemplars for Comparison.*  5.  *Health and Handwriting, an Annotated Bibliography.*  3rd ed.  6.  *Employing and Examining of the Expert.*  7.  *Reliability Testing of Expert Handwriting Opinions.*  8.  *Signature Disguise by Change of Slant.*  9.  *Examination of Russian Birth Certificates.*
  - Also published in more than a dozen professional journals and periodical publications, including:  *Journal of the National Association of Document Examiners; Journal of Forensic Identification; San Francisco Attorney Magazine; Scientific Sleuthing Review; International Journal of Forensic Document Examiners; Practical Litigator.*
  - "Indagine Critica Sulla Datazione Della Pasta Biro," pages 204-209 in *Carta & Inchiostri: Tecniche di Accertamento,* Pacifico Cristofanelli e Silvio Lena, editors, Ancona, Italy, AGI, 1999.  [Translation of "Dating Ballpoint Inks:  A Survey and Critique."]
  - Other writings in the field, published and unpublished.  The published books and monographs have been marketed to professionals nationally and internationally.
  - Published works in other fields.
  - NOTE:  List of professional publications available upon request.

EDUCATION:
  - Saint Francis College, El Cajon, CA, 1952-54.  Liberal arts, science.
  - Immaculate Heart Seminary, University of San Diego, San Diego, CA, 1954-60.  Courses included Philosophy, Logic, Rational Psychology, History, Rhetoric.
  - Immaculate Heart College, Los Angeles, CA.  MALS, June 1963.
  - San Diego State College, San Diego, CA, 1962-63.  Graduate studies, Political Science.
  - 1979-80 privately instructed by Rose Toomey, author of *HEALTH CLUES IN HANDWRITING.*
  - Seminar on the handwriting of criminals, conducted by Ted Widmer.
  - Third Annual Conference for Testifying & Consulting Experts, San Francisco, 1996.  Sponsored by Council for the Advancement of Science in Law.  Also pre-conference symposium:  *Preparing for Cross-Examination:  Developing 'Active Listening' Skills.*
  - Professional Education Systems, Inc., *California Evidence Workshop,* San Francisco, CA, December 21, 1996.
  - Oregon Criminal Defense Lawyers Association, Winter Conference, *Expert Witnesses,* December 5-6, 1997, Portland, OR.  *Dynamic Cross-Examination,* James H. McComas, December 3-4, 1999, Portland, OR.
  - American Academy of Forensic Sciences, Annual Meetings:  February 1998, San Francisco, CA.  Saturday:  Jurisprudence Section, *Erroneous but Convincing:  The Courtroom Impact of Evidence Shaping;* February 2000, Reno, NV; February 2001, Seattle, WA; February 2005, New Orleans, LA; February 2007, San Antonio, TX.

EXHIBIT YA, Page 3 of 4

EDUCATION, CONTINUED:
- Vanguard Post-conference, Forensic Document Examination, April 9, 2000, presented by Judith A. Housley.
- National Association of Document Examiners, May 19-21, 2005, Quebec, Canada.
- *Adobe Photoshop and Document Examination*, intensive workshop by Gary Herbertson, July 16-17, 2005, Berkeley, CA.
- *Expert Witness Testimony that Wins*, presented by Phil Walker, JD, sponsored by Forensic Expert Witness Association, Hyatt Regency, San Francisco Airport, September 16, 2006.
- On-going research in the legal, forensic and academic literature.
- Primary research in methods of disguise, writing with the opposite hand, and others.
- Attendance at conferences at which I have presented. See "Classes and Lectures."

SPECIAL RESOURCES:
- Personal collection of more than 8,000 books, monographs and papers in handwriting science, document examination and case law, along with current subscriptions.
- Developed proprietary databases of approximately 11,500 citations to forensic, academic and legal periodicals and to case reporters. This is an on-going project.
- NADE and AHAF have lending libraries of professional literature for members.
- Microphotography.
- Optics such as stereoscopic microscope and other standard tools.
- Specialized equipment such as Kinderprint Indentation Materializer (equivalent of ESDA), Video IR and UV, various filters, cameras, magnifiers.
- Association with professionals having specialized skills and equipment so that unique or unusual requests can be referred to highly qualified colleagues.

MEMBERSHIPS:
- National Association of Document Examiners (NADE). Chairman of 1993 Conference in San Francisco. Currently, Parliamentarian and Member of Certification Committee.
- The Expert Witness Institute, London, England.
- American Handwriting Analysis Foundation (AHAF), an international organization based in San Jose, CA. Foundation Librarian and member of the Board.
- International Graphonomics Society, Society for the Science and Technology of Handwriting, headquartered at University of Nijmegen, The Netherlands.
- Special Member, Vidocq Society, Philadelphia, PA.
  The American Society for Testing and Materials. Member, Committee E-30 on Forensic Sciences.
- American Association for the Advancement of Science.
- Forensic Expert Witness Association

REFERENCES:
Available upon request.                                                (03-20-07)

EXHIBIT YA, Page 4 of 4

# COVER SHEET

# EXHIBIT YB

## PROFESSIONAL PUBLICATIONS OF

## MARCEL B. MATLEY

## EXAMINER OF DOCUMENTS AND HANDWRITING

### PERIODICAL ARTICLES: LEGAL JOURNALS

1. AT ISSUE. SAN FRANCISCO ASSOCIATION OF LEGAL ASSISTANTS. 18:17+, June, 1991.
   Photocopies: traps for the too trusting.

2. CALIFORNIA PARALEGAL MAGAZINE. 3:10-11, July-Sept. 1991.
   So you never saw a forgery...or you just never caught it.

3. CALIFORNIA PARALEGAL MAGAZINE. 3:15-7, Oct.-Dec. 1991.
   Clues to authorship of the anonymous letter.

4. NATIONAL PARALEGAL REPORTER. Vol. 17, #2, Winter 1992.
   Preventing fraud with personal checks.
   NOTE: I have not seen the published version of this paper nor do I have a copy of the
issue it appeared in. The above information is from the Internet.

5. PRACTICAL LITIGATOR. 13:21-33, September 2002.
   Using and cross-examining handwriting experts.

6. THE RECORDER. 120:1+, Jan. 29; 120:3, Feb. 23, 1996.
   A trail of ink; how forensic experts provide hard evidence of doctored documents. [Letter
to the editor]

7. SAN FRANCISCO ATTORNEY'S MAGAZINE. 1994:5-6, April-May 1994.
   More on forensic document examiners. [Letter to editor]

8. SAN FRANCISCO ATTORNEY'S MAGAZINE. 25:20-2, Feb.-March, 1999.
   The expert ambush: How to hold off your opponent until the cavalry arrives.
[Reproduced by permission of The Magazine in www.ExpertPages.com/news, in June 1999.]

///////

# EXHIBIT YB:  PAGE 1 OF 6 PAGES

PERIODICAL ARTICLES: FORENSIC JOURNALS

9. EWITNESS.COM. ARTICLES. Oct. 19, 2001.
     Deposition of experts: Q & A. Illustrated as with handwriting experts. Co-authored with Robert J. Phillips.

10. FORENSIC EXPERT WITNESS ASSOCIATION NEWSLETTER. 2004:3, 15-16, Summer 2004.
     Handling the handwriting expert (or any other expert).

11. INTERNATIONAL JOURNAL OF FORENSIC DOCUMENT EXAMINERS. 3:103, April-June 1997.
     Letter to the editor.

12. INTERNATIONAL JOURNAL OF FORENSIC DOCUMENT EXAMINERS. 3:105-13, April-June 1997.
     Forensic handwriting identification: Is it legally a science? A review of court cases which hold handwriting examination to be a science.

13. INTERNATIONAL JOURNAL OF FORENSIC DOCUMENT EXAMINERS. 5:146-74, Jan-Dec. 1999.
     Case citations relating to court ordered exemplars and disguise of same as contempt of court and obstruction of justice: a discussion and interpretation.

14. JOURNAL OF FORENSIC IDENTIFICATION. 42:189-91, March-April 1992.
     Standardization of terminology for slant in handwriting. [Letter to editor]

15. JOURNAL OF FORENSIC IDENTIFICATION. 44:617-8, Nov.-Dec., 1994.
     Letter. Re: "Eye-hand coordination: The logic of questioned document examination."

16. THE JOURNAL OF QUESTIONED DOCUMENT EXAMINATION. 8:19-22, Winter 2000.
     The 1-to-1 adapter lens. A technical paper.

17. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 12:15-8, Feb. 1991.
     The law of document examination. [Legal research]

18. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 17:15-27, Spring 1995.
     The graphologist as expert witness; a survey of some reported cases.

# EXHIBIT YB:  PAGE 2 OF 6 PAGES

19. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 17:28-33, Spring 1995.

A case report. {Scott Doe et al. v. Kohn, Nast & Graff} By Robert J. Phillips. NOTE: Marcel B. Matley was the unnamed author of the section on case law.

20. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 19:12-23, Spring 1996.

A case of Chinese handwriting.

21. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 19:1-9, Dec. 1996.

Vox poluli or a graphic ventriloquist? A case report of disguised signatures. Co-authored with Jacqueline Joseph.

22. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 21:1-5, Spring 1998.

The making of one's own exemplars; the post litem motam rule as illustrated by California.

23. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 21:15-30, Spring 1998.

The Vincent Foster "Suicide note." Did Strategic Enterprises' purported experts prove it forged?

24. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 21:5-11, Winter 1998.

How to prove a genuine signature is forged while trying to prove it to be genuine. A study in the multiplication rule of probability theory.

25. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 22:11-15, Fall 1999.

Comparison of handwriting in Federal court by the trier of fact.

26. JOURNAL OF THE NATIONAL ASSOCIATION OF DOCUMENT EXAMINERS. 22:11-15, Fall 1999.

Handwriting research: Cast a wide net. [Annotating selection of scientific papers on handwriting from *American Journal of Occupational Therapy*.]

27. NATIONAL DOCUMENT EXAMINER. 2:11-18, 1992.
The difference a difference makes: Variations in handwriting identification.

28. NATIONAL DOCUMENT EXAMINER. 2:26-9, 1992.
Questioned document case #2.

# EXHIBIT YB:  PAGE 3 OF 6 PAGES

29. SCIENTIFIC SLEUTHING REVIEW. 18:9, Summer 1994.
    Touting the good. [Letter to editor on dating inks]

30. SCIENTIFIC SLEUTHING REVIEW. 23:17, Spring 1999.
    Letters to the Editor. [Cites and quotes review of Dines, "Document Examiner
Textbook," jointly authored with Katherine Koppenhaver and published in "Communique" of
January 1999.

31. SCIENTIFIC SLEUTHING REVIEW. 28:11, Fall 2004.
    Book review. "Expert witness handbook...," Dan Poynter, Santa Barbara, CA; Para
Publishing, 2005, 3rd ed.


PERIODICAL ARTICLES: OTHER JOURNALS

32. AHAF JOURNAL. 31:1, 8-9, 12, Nov.-Dec. 1998.
    The dilemma of ataxic handwriting.

33. COMMUNIQUE: The Newsletter of the National Association of Document Examiners.
Various issues.
    NOTE: These are small items and snippets of information of sundry kinds. This
publication is of a topical and ephemeral nature, and I do not retain a file of it nor a list of my
various contributions except for my formal articles which are listed below.

34. COMMUNIQUE. 11:3, November 2001.
    Book review. *Questioned documents, a lawyer's handbook*, by Jay Levinson.

35. COMMUNIQUE. 15:3, September 2005.
    Book review. *Alpha Beta: How 26 letters shaped the Western World*, by John Man.

36. COMMUNIQUE. 17:3, Winter 2007.
    Book review. *Forgery: Consulting Science Experiments*, by Kenneth G. Rainis.

37. EWITNESS.COM. ARTICLES. Site M, 10/19/2001. 6 pages.
    Deposition of Experts: Q&A. Illustrated as with handwriting experts. Co-authored with
Robert J. Phillips.

38. INTERNATIONAL HANDWRITING ANALYSIS REVIEW. 1:40, Spring 2002.
    Book review: *Alpha beta: How 26 letters shaped the Western World.* John Man.


# EXHIBIT YB:  PAGE 4 OF 6 PAGES

39. THE VANGUARD. 1998:10, October-December, 1998.
    Book review: *Document Examiner Textbook*, by Jess E. Dines.

40. THE VANGUARD. 2002:6-7, January-March, 2002.
    Government vs graphologically trained document examiners.

41. VIDOCQ JOURNAL. 9:1+, February, 1998.
    Murders they wrote.

42. VIDOCQ JOURNAL. 9:6, May 1998.
    Letter to the editor. [Regarding the Jon Benet Ramsey Murder Case]


NOTE: One or more other papers are under submission to journals or are in various stages of preparation. Letters and papers have been submitted to journals which never replied as to acceptance or rejection, so there may be published materials I am unaware of.

BOOKS AND MONOGRAPHS

43. Check forgery, a simple guide. San Francisco, Handwriting Services of CA, 1988.

44. Forgery: Detection and defense. A guidebook for legal professionals. Handwriting Services of California, San Francisco, 1988.

45. Oh, my aching arm! The cause and cure of general writer's cramp. A monograph in the physiology of handwriting. San Francisco, Handwriting Services of California, 1997.

46. QDE Index: Periodical articles in English on document examination, handwriting expertise and expert testimony. [Formerly: Witnessing to the truth of documents.] First edition, 1990, San Francisco, Handwriting Services of California. Latest edition 1997.

47. Studies in questioned documents, Number One: Photocopies in document examination. San Francisco, CA, Handwriting Services of California, 1990.

48. Studies in questioned documents, Number Two: Exorcism of ignorance; a reply from a Handwriting expert. San Francisco, CA, Handwriting Services of California, 1990. Second edition titled: "In the Exercise of Ignorance: Replies to the Critics of Handwriting Expertise."

49. Studies in questioned documents, Number Three: Logged entries: Made Separately of sequentially? San Francisco, CA, Handwriting Services of California, 1990.


# EXHIBIT YB: PAGE 5 OF 6 PAGES

50. Studies in questioned documents, Number Four: Exemplars: Genuine samples for comparison with questioned writings and documents. San Francisco, CA, Handwriting Services of California, 1990.

51. Studies in questioned documents, Number Five: Health and handwriting; an annotated bibliography of forensic, legal and med/psych periodical literature. Third edition, much enlarged. San Francisco, CA, A and M Matley, 2000.

52. Studies in questioned documents, Number Six: Document examination; the employing and examining of the expert. San Francisco, CA, Handwriting Services of California, 1992.

53. Studies in questioned documents, Number Seven: Reliability testing of expert handwriting opinions. San Francisco, CA, Handwriting Services of California, 1992.

54. Studies in questioned documents, Number Eight: Signature disguise by slant. San Francisco, CA, Handwriting Services of California, 1992.

55. Studies in questioned documents, Number Nine: Examination of Russian birth certificates and answering QD experts at the Immigration and Naturalization Service. San Francisco, CA, A & M Matley, 2002. [Issued in limited edition of 30 numbered copies.]

56. Testing the Reliability of Expert Opinions in Texas: Guidelines from Kelly, du Pont/Daubert and Their Progeny, San Francisco, CA, A & M Matley, 2004.


NON-PRINT MEDIA

57. Complete Defeat for Foes of FDE: The Courts Have Spoken. CD, 2006. [Limited edition of 100 copies for complementary distribution.]

58. You're a what? Featuring Techniques for Inoculating the Jury. CD, 2006. [Limited edition of 40 copies for distribution at 2006 NADE Conference.]


CONTRIBUTIONS TO BOOKS AND MONOGRAPHS

59. Carta & Inchiostri; tecniche di accertamento. A cura di Pacifico Cristofanelli e Silvio Lena. 1999, AGI, Ancona, Italy.
        Pages 204-209: Indagine critica sulla datazione della pasta biro. Traduzione e adattamento de Silvio Lena. [Original English title: "Dating ballpoint inks; a survey and critique."]

(03-02-07)

# EXHIBIT YB:  PAGE 6 OF 6 PAGES

# COVER SHEET

# EXHIBIT YC

# TESTIMONIES OF MARCEL B. MATLEY

## AS AN EXAMINER OF DOCUMENTS AND HANDWRITING

### FOR LAST FOUR YEARS

- Court testimony: Hearing on Motion to Suppress, February 19, 2004, *United States vs. Welch*, U.S. District Court for the District of Colorado, Denver, CO., Criminal Case No. 03-CR-452-MK, The Honorable Marcia S. Krieger, Judge presiding. Called by Defendant.
- Court testimony, February 24, 2004, I/M/O *Estate of Nancy M. Fisher, Fisher and Tell vs. Fisher*, Docket No. 135278, Superior Court of New Jersey, Chancery Division, Ocean County, Probate Part, The Honorable Marlene Lynch Ford, Judge presiding. Called by Plaintiffs.
- Deposition, March 09, 2004, *Garcia vs. Garcia*, Superior Court, Modesto, CA, Case Number 316642. Retained by Plaintiff.
- Court testimony:  March 30, 2004, *INS/FDL Case Number 9801381*, Federal Immigration Court, San Francisco, CA, The Honorable Brian A. Simpson, Judge presiding. Called by Respondent.
- Court testimony:  June 16, 2004, *Creditor's Trade Association, Inc., vs. Larman, et al.*, Case Number MCV 176180, The Honorable Knoell Owen, Judge presiding. Called by Plaintiff.
- Court testimony:  June 22, 2004, *Ly vs. Hendricks, et al.*, Superior Court, San Francisco, CA, Case Number CUD-04-609990, The Honorable A James Robertson, II, Judge presiding. Called by Plaintiff.
- Deposition, August 24, 2004, *Garza vs. ---*, San Francisco Superior Court, Case Number --. Retained by Respondent.
- Court testimony: August 25, 2004, *Estate of Raleigh A. Peppers*, Superior Court, Oakland, CA, Case Number --, The Honorable William A. McKinstry, Judge Presiding. Called by Petitioner.
- Court testimony: January 20, 2005, *Estate of Refujia Telles Garcia, Garcia vs. Garcia*, Superior Court, Modesto, CA, Case Nos. 335731, 316642, The Honorable John E. Griffin, Jr., Judge presiding. Called by Contestant.
- Court testimony: March 17, 2005, *Alfaro vs. Aragon, et al.*, Superior Court, Modesto, CA, Case No. 311351, The Honorable Roger M. Beauchesne, Judge presiding. Called by Plaintiff.
- Court testimony:  June 08, 2005, *Orellana vs. Orellana*, Superior Court, Redwood City, CA, Case No. CIV 435508, The Honorable Carl W. Holm, Judge presiding. Called by Defendant.
- Deposition: August 22, 2005, *Proctor, et al., vs. Annavajjhala, et al.*, Dallas County, TX, Cause No. DV-03-07105-D. Retained by Plaintiff. Deposition taken in San Francisco, CA.

# EXHIBIT YC:  PAGE 1 OF 2 PAGES

- Court testimony: September 23, 2005, *Bereday and La Miriage, Inc., vs. Keehi Memorial Organization, et al.*, Circuit Court, First Circuit, Honolulu, HI, The Honorable Randal Lee, Judge presiding. Called by Plaintiff.
- Court testimony: September 30 and October 03, 2005, *U.S. vs. Serfling*, U.S. District Court, Northern District of Illinois, 03-cr-00300, The Honorable Matthew F. Kennelly, Judge presiding. Called by Defendant.
- Court testimony: December 06, 2005, in limine hearing, *People vs. Hamlin*, El Dorado County Superior Court, Placerville, CA, Case No. --, The Honorable Eddie T. Keller, Judge presiding. Called by Defendant.
- Court testimony: April 20, 2006, *INS/FDL Case Number A95-394-404, Respondent* [Identity confidential], Federal Immigration Court, San Francisco, CA, The Honorable Polly A, Webber, Judge presiding. Called by Respondent.
- Arbitration: *Williams vs. Haynes*, Bar Association of San Francisco, No. 06.003, June 16, 2006. Retained by Petitioner.
- *Gonzales vs. Burdg, et al.*, Superior Court, County of Stanislaus, Modesto, CA, Case Number 375050. Retained by Plaintiff.
  - Deposition: September 14, 2006.
  - Court testimony: October 24, 2006, the Honorable David G, Vander Wall, Judge presiding.
- Court testimony: October 03, 2006, *Kakkar vs. City Ventures, Inc., et al.*, Superior Court, Oakland, CA, The Honorable Gordon Baranco, Judge presiding.
- Court Testimony: November 02, 2006, *People vs. Shannon*, Superior Court, County of Stanislaus, Modesto, CA, Case Number (?), the Honorable John G. Whiteside, Judge presiding. Retained by Defendant.
- Court Testimony: December 11, 2006, *Devereax vs. Clontz*. Superior Court, County of Santa Clara, San Jose, CA, Case Number CV 060715, the Honorable Mary Jo Levinger, Judge presiding. Retained by Plaintiff.
- Arbitration: January 9 and 10, 2007, *Levin vs. Gooch, et al.*, National Association of Security Dealers, New York, New York. Cross-examination continued to February 5, 2007. Retained by Plaintiff.
- Deposition: February 14, 2007, *Valencia vs. Sardinha, et al.*, Superior Court, County of Santa Clara, Case No. 1-06-CV-063147. Retained by Plaintiff.
- Arbitration: April 02, 2007, *4902 Kahala LLC, et al. vs. Sakatani, et al.; ILC-05-0019 GWBC*, Honolulu, HI. Retained by Plaintiff.

(04-24-07)

# EXHIBIT YC:  PAGE 2 OF 2 PAGES

# COVER SHEET

# EXHIBIT YD

## *A & M Matley*     *Examiner of Documents & Handwriting*

MARCEL B. MATLEY
BOARD CERTIFIED, NADE
PUBLICATIONS, SEMINARS
www.handwritingexpertsofcalifornia.com

(3092 ARMY STREET, 94110)
POST OFFICE BOX 882401
SAN FRANCISCO, CA 94188

PHONE: (415) 753-2832
FAX: (415) 753-3346
TOLL FREE: 1-800-367-8403
E-MAIL: MMATLEY@AOL.COM

# MARCEL B. MATLEY
# EXAMINER OF QUESTIONED DOCUMENTS
# FEES FOR SERVICES

BASIC FEE: $175 per hour plus expenses, for new cases as of
August 01, 2005.

$350 non-refundable, initial retainer, for two-hour
minimum.

$50 per hour during required travel, plus costs.

TESTIMONY FOR ATTORNEY/CLIENT:

$175 per hour, plus expenses.

DEPOSITIONS:     $175 per hour, with prepayment for expected time required.
Unused balance to be refunded; excess charges to be
invoiced.

TERMS:     Responsible party is the law firm or individual attorney,
unless specified otherwise.

Invoices payable net upon receipt. Unpaid amount subject to
charge of 1.5% per month (18% APR.).

(09-11-06)

# EXHIBIT YD

Regular type = On letterhead for that entity. Italic type = Indications are same person's signature. Square brackets [] = Signatory identified with other entity than association of document with the entity. X-A through X-F = Signatories whose names cannot be identified in documents examined.

| ENTITY | Grant Brown | David A. Chalmers-Hunt | John H. Perkins | X-A | X-B | X-C (Melvyn Kalman) | X-D | X-E |
|---|---|---|---|---|---|---|---|---|
| CN Limited (CNL) | | | | CNL 01; CNL 02; CNL 03 [ET 05; ET 07; ET 10] | CNL 04; CNL 05; CNL 06 [ET 05; ET 07; ET 10] | | | CNL 02; C |
| Derard Limited (DL) | *DL 01; DL 02; DL 03; DL 04; DL 05* [RL 07] | | | DL 01; DL 02; DL 03; DL 04; DL 05 [ET 04; ET 07] | DL 06; DL 07; DL 08; DL 09; DL 10 [ET 04; ET 06; ET 09] | | [RL 07; RL 08] | |
| Equity Trust (ET) | ET 01; ET 02; *ET 03* | | | ET 04; ET 05; ET 06; ET 07; RT 09; ET 10 | ET 04; ET 05; ET 06; ET 07; ET 08; ET 09; ET 10; ET 11 | | | |
| Ryburn Limited (RL) | RL 07; RL 05 [*DL 05; ET 03*] | RL 05; RL 06 | RL 01; RL 02; RL 03; RL 04 | [DL 05; ET 09] | [DL 10; ET 09] | RL 05; RL 06 | RL 07; RL 08 | |
| Wesley Secretaries Limited (WSL) | | WSL 02 [RL 05; RL 06] | WSL 01 (twice); WSL 02 | | | WSL 01 | | |
| Crossgar Limited (CL) | [*DL 01; DL 02*] | [RL 06] | | [DL 01; DL 02; ET 04; ET 06] | [DL 06; DL 07; ET 04] | [RL 06] | | |
| Janvrin Holdings Limited (JHL) | [*DL 03; DL 04*] | [RL 06] | | [DL 03; DL 04; ET 06] | [DL 08; DL 09; ET 06] | [RL 06] | | |

# EXHIBIT X

that entity. Italic type = Indications are same person's signature. Square brackets [] = Signatory identified with other entity than that of letterhead or other with the entity. X-A through X-F = Signatories whose names cannot be identified in documents examined.

| n | David A. Chalmers-Hunt | John R. Perkins | X-A | X-B | X-C (Melvyn Kalman) | X-D | X-E | X-F |
|---|---|---|---|---|---|---|---|---|
| | | | CNL 01; CNL 02; CNL 03 [ET 05; ET 07; ET 10] | CNL 04; CNL 05; CNL 06 [ET 05; ET 07; ET 10] | | | CNL 01; CNL 02; CNL 03 | |
| 02; 04; | | | DL 01; DL 02; DL 03; DL 04; DL 05 [ET 04; ET 07] | DL 06; DL 07; DL 08; DL 09; DL 10 [ET 04; ET 06; ET 09] | | [RL 07; RL 08] | | |
| 02; | | | ET 04; ET 05; ET 06; ET 07; RT 09; ET 10 | ET 04; ET 05; ET 06; ET 07; ET 08; ET 09; ET 10; ET 11 | | | | ET 08 |
| 05 '03] | RL 05; RL 06 | RL 01; RL 02; RL 03; RL 04 | [DL 05; ET 09] | [DL 10; ET 09] | RL 05; RL 06 | RL 07; RL 08 | | |
| | WSL 02 [RL 05; RL 06] | WSL 01 (twice); WSL 02 | | | WSL 01 | | | |
| . 02] | [RL 06] | | [DL 01; DL 02; ET 04; ET 06] | [DL 06; DL 07; ET 04] | [RL 06] | | | |
| . 04] | [RL 06] | | [DL 03; DL 04; ET 06] | [DL 08; DL 09; ET 06] | [RL 06] | | | |

# EXHIBIT X

HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

PLAINTIFFS *IN PRO PER*


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA HILSENRATH AND OLIVER HILSENRATH,<br><br>        Plaintiffs,<br><br>                v.<br><br>EQUITY TRUST (JERSEY) LIMITED, CANDOVER INVESTMENTS PLC, INSINGER DE BEAUFORT SA, JARDINE MATHESON HOLDINGS LIMITED, GRANT BROWN, MELVYN KALMAN, JOHN PERKINS, CAROLINE BOUGEARD, AND DOES 1-10,<br><br>        Defendants. | Case No.<br><br><br>EXHIBIT B:<br><br>CORRESPONDENCE BETWEEN NINE EQUITY ENTITIES TO DEFEAT FEDERAL COURT ORDER |

Example of inner workings of the Equity Trust intricate corporate network targeted to defeat a US Federal court order.

Nine fictitious letters from / and to / fictitious corporations with:

- same anonymous signature,
- all on the same day,
- from and to the same address.

HILSENRATH V. CANDOVER, EQUITY ET AL.

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

**URGENT**

CH Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath**
**Case No. CO2 1068 CW**

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29th March 2007, from the Federal Court in San Francisco. As set out in the Order, "...*a hearing on counterclaimants' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. in Courtroom G, 15th floor, Federal Building, San Francisco, California, 94102...Counterdefendants should attend the hearing if they contest the validity or amount of the claim*".

We remind you that the situation stands as described in our earlier correspondence with you. Janvrin Holdings Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Janvrin Holdings Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Janvrin Holdings Limited

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

URGENT

CN Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath
Case No. CO2 1068 CW

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29th March 2007, from the Federal Court in San Francisco. As set out in the Order, "...a hearing on counterclaimants' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. in Courtroom G, 15th floor, Federal Building, San Francisco, California, 94102...Counterdefendents should attend the hearing if they contest the validity or amount of the claim".

We remind you that the situation stands as described in our earlier correspondence with you. Janvrin Holdings Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Janvrin Holdings Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Janvrin Holdings Limited

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11ᵗʰ April 2007

**URGENT**

EQ Nominees (Jersey) Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath
Case No. CO2 1068CW**

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29ᵗʰ March 2007, from the Federal Court in San Francisco. As set out in the Order, *"...a hearing on counterclaimants' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. in Courtroom G, 15ᵗʰ floor, Federal Building, San Francisco, California, 94102...Counterdefendants should attend the hearing if they contest the validity or amount of the claim"*.

We remind you that the situation stands as described in our earlier correspondence with you. Crossgar Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Crossgar Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Crossgar Limited

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

**URGENT**

CN Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath
Case No. CO2 1068CW**

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29th March 2007, from the Federal Court in San Francisco. As set out in the Order, "...*a hearing on counterclaimants' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. in Courtroom G, 15th floor, Federal Building, San Francisco, California, 94102...Counterdefendents should attend the hearing if they contest the validity or amount of the claim"*.

We remind you that the situation stands as described in our earlier correspondence with you. Crossgar Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Crossgar Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Crossgar Limited

# Derard Limited

Administration Office:
P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11ᵗʰ April 2007

**URGENT**

CN Limited
P.O. Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited - v – Oliver Hilsenrath**
**Case No. CO2 1068CW**

We refer to our earlier correspondence with you in relation to the above matter.

Please find enclosed a copy of an Order, dated 29ᵗʰ March 2007, from the Federal Court in San Francisco. As set out in the Order, *"...a hearing on counterclaimonts' motion for default judgment is set for Wednesday May 2, 2007, at 10.00am. in Courtroom G, 15ᵗʰ floor, Federal Building, San Francisco, California, 94102...Counterdefendents should attend the hearing if they contest the validity or amount of the claim"*.

We remind you that the situation stands as described in our earlier correspondence with you. Ryburn Limited is not in good standing and has been struck from the BVI Companies Register for non-payment of statutory fees. We have yet to receive funding from you for Ryburn Limited and look to you for instructions on whether or how to proceed in this matter. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of Derard Limited
Director of Ryburn Limited

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11   JANVRIN HOLDINGS LTD, et        )
     al.,                           )
12                                   )        No.  C02-1068 CW (BZ)
               Plaintiff(s),         )
13                                   )        **ORDER SCHEDULING HEARING**
          v.                         )
14                                   )
     DR. OLIVER HILSENRATH, et       )
15   al.,                            )
                                     )
16             Defendant(s).         )
     _____)
17   OLIVER HILSENRATH and HANA      )
     HILSENRATH,                     )
18                                   )
               Counterclaimants,     )
19                                   )
          v.                         )
20                                   )
     JANVRIN HOLDINGS LTD.,et        )
21   al.,                            )
               Counterdefendants.    )
22                                   )
     _____)
23

24        **IT IS HEREBY ORDERED** that pursuant to the Court's

25   discretion under Rule 55(b)(2) of the Federal Civil Rules of

26   Civil Procedure, a hearing on counterclaimants' motion for

27   default judgment is set for **Wednesday, May 2, 2007, at 10:00**

28   **a.m.** in Courtroom G, 15th Floor, Federal Building, San

                                    1

1  Francisco, California, 94102.

2      Counterclaimants should be prepared to clarify the legal
3  bases for their claims. A threshold issue in awarding a
4  default judgment is determining whether the well pleaded
5  factual allegations of the counterclaim establish
6  counterdefendants liability on a valid legal claim. The
7  difficulty here is that the counterclaim contains more
8  conclusory allegations than factual allegations. For example,
9  the only named counterdefendants are Janvrin Holdings Limited,
10 Crossgar Limited, and Ryburn Limited. They are described as
11 shell companies held in a discretionary trust of which Equity
12 Trust is trustee. The trust document is not attached and
13 there is no factual explanation of what counterclaimants mean
14 by shell company or discretionary trust. The bulk of the
15 factual allegations in the counterclaim are directed against
16 Equity Trust, which is not named as a counterdefendant. The
17 counterclaim does not explain factually on what basis the
18 shell companies can be held liable for the acts of the trustee
19 and the papers filed in support of the motion for default
20 judgment do not explain as a matter of law why such liability
21 exists. Accordingly, the Hilsenraths should be prepared at
22 this hearing to explain what facts alleged in the counterclaim
23 establish each counterdefendant's liability.

24     Counterclaimants should also be prepared to prove their
25 damages by competent testimony or other admissible evidence.
26 If they intend to prove damages by affidavits or declarations,
27 the affiant or declarant should have personal knowledge of all
28 matters to which she testifies. For all evidence, a proper

1 foundation must be established.  For an explanation of the

2 evidentiary requirements for proving damages in a default

3 case, the parties are encouraged to consult Chapter Six of

4 *Civil Procedure Before Trial* by William W. Schwarzer, A.

5 Wallace Tashima, and James M. Wagstaffe.

6   Counterdefendants should attend the hearing if they

7 contest the validity or amount of the claim.  Seven days

8 before the hearing, on **Wednesday, April 25, 2007,**

9 counterclaimants shall file a declaration setting forth in

10 detail all steps taken to serve counterdefendants with notice

11 of this hearing.

12 Dated: March 29, 2007

13 

14     Bernard Zimmerman
     United States Magistrate Judge

15 G:\B2ALL\-REFS\RTLSENRATH\ORDER.Sch.Hearing.wpd

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# C N Limited

P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11ᵗʰ April 2007

Equity Trust (Jersey) Limited
Equity Trust House
PO Box 546
28 30 The Parade
St Helier
Jersey JE4 8XY

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Rybum Limited – v- Oliver Hilsenrath**
**Case No. CO2 1068 CW**

We are writing to you in your capacity of trustee of The Revenge Trust.

Please see the enclosed letter dated 11ᵗʰ April 2007 from Derard Limited, the Director of Crossgar Limited.

Please advise by return whether you are willing and able to furnish Crossgar Limited with the necessary funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of CN Limited

# C N Limited

P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

Equity Trust (Jersey) Limited
Equity Trust House
PO Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY

Dear Sirs

Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited – v- Oliver Hilsenrath
Case No. CO2 1068 CW

We are writing to you in your capacity of trustee of The Revenge Trust.

Please see the enclosed letter dated 11th April 2007 from Derard Limited, the Director of Ryburn Limited.

Please advise by return whether you are willing and able to furnish Ryburn Limited with the necessary funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of CN Limited

# C N Limited

P O Box 546, 28-30 The Parade, St Helier, Jersey JE4 8XY, Channel Islands
Tel: +44 1534 636211 Fax: +44 1534 636215

11th April 2007

Equity Trust (Jersey) Limited
Equity Trust House
PO Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY

Dear Sirs

**Janvrin Holdings Limited, Crossgar Limited and Rybum Limited -- v- Oliver Hilsenrath**
**Case No. CO2 1068 CW**

We are writing to you in your capacity of trustee of The Revenge Trust.

Please see the enclosed letter dated 11th April 2007 from Derard Limited, the Director of Janvrin Holdings Limited.

Please advise by return whether you are willing and able to furnish Janvrin Holdings Limited with the necessary funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

For and on behalf of CN Limited

# EQUITY TRUST

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email   infoje@equitytrust.com

David Dahan
24 Ivanova Dtreet
Apartment B
Kharkov
UKRAINE

And Via Email
dazid@isdn.net.il
davidadahan@gmail.com

St Helier, 11 April 2007

**URGENT**

Dear Sir

**Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited -v- Oliver Hilsenrath — Case No. C02 1068 CW**

We are writing to you in our capacity of trustee of The Revenge Trust.

Please see the enclosed letters dated 11 April 2007 from Derard Limited, the director of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited and from CN Limited, a shareholder of Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited.

Please advise by return whether you are willing and able to furnish Janvrin Holdings Limited, Crossgar Limited, Ryburn Limited and/or The Revenge Trust with the previously requested funds. Absent hearing from you, we shall not take any further steps.

Yours faithfully

for and on behalf of
Equity Trust (Jersey) Limited

Regulated by the Jersey Financial Services Commission and
registered under the Financial Services (Jersey) Law 1998
Registration No. 57583

HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

PLAINTIFFS IN PRO PER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

HANA HILSENRATH AND OLIVER
HILSENRATH,

        Plaintiffs,

                v.

EQUITY TRUST (JERSEY) LIMITED,
CANDOVER INVESTMENTS PLC,
INSINGER DE BEAUFORT SA, JARDINE
MATHESON HOLDINGS LIMITED, GRANT
BROWN, MELVYN KALMAN, JOHN
PERKINS, CAROLINE BOUGEARD, AND
DOES 1-10,

        Defendants.

Case No.

EXHIBIT C1 AND C2:

EXCERPTS OF INTERVIEW OF JOHN
PERKINS

## C1-INTRODUCTION

A significant documented event in the investigation of the conspiracy between Janvrin et al (owned by Equity Trust) and Nixon Peabody - took place at the depositions held by the US government in July of 2005 in the setting of the court of her majesty the Queen in St. Helier, Jersey.

Excerpts of the above transcript annexed in Exhibit C.2

HILSENRATH V. CANDOVER, EQUITY ET AL.

1  John Perkins, Nixon's main co-conspirator in the theft of the
2  extortion-records stands a two days interview.

3
4  The interviewers were Ms. Laurel Beeler, for the US attorney
5  in San Francisco, and Mr. Bob Breakstone, for Oliver
   Hilsenrath.
6

7  John Perkins was relaxed. He knew what everybody else was just
8  guessing in July 2005: He knew that Equity Trust and Nixon
9  Peabody had carefully destroyed all records leading to their
   conspiracy to extort millions from Hilsenrath and US Wireless.
10

11 As the depositions were about documents supplied by Equity
12 Trust (Janvrin's owner) themselves, Perkins had nothing to
13 worry about: the traces of the conspiracy were lost forever in
14 the shredder and in the past.

15
16 Unbeknownst to Perkins, fortunately, part of the records of
   the Janvrin-Nixon conspiracy were uncovered through other
17 sources.
18

19 Those documents were in the hands of the interviewers - Ms.
20 Beeler and Mr. Breakstone - both suspecting Perkins of a
   cover-up.
21

22 At the end of two full days of Q&A, when the tiring process
23 was almost over, Breakstone asked him about the November 2000
24 meeting in London.

25
26 Perkins remembers. He was there, he remembers that Kalman was
   there, Westreich was there, and Benzur was there.
27

28

1    Perkins remembers the subject being how to obtain more stock
2    from US Wireless - nothing else.

3
4    Breakstone asks Perkins "did you pass any personal information
     about the Hilsenrath's assets at that meeting?"
5

6    Perkins, knowing that they thoroughly cleaned house, lied with
7    confidence: he does not recall passing Hilsenrath records.

8
9    Breakstone insists "did you pass any information about
     Hilsenrath himself at the meeting".
10

11   Perkins has no reason to suspect and lies again confidently:
12   "that was not the subject of the meeting".
13   The package that Breakstone laid next in front of Perkins was
14   about to end Perkins's relaxed demeanor.

15
16   There were the private records stolen by Janvrin and Nixon
     personnel from the Hilsenrath trust and transferred from
17   Jersey to the San Francisco office of Nixon Peabody by express
18   mail through a middleman: Amos Benzur from Israel.

19
20   The package, carefully shredded by the Janvrin/Nixon co-
     conspirators in their offices, was there - intact.
21

22   Including tens of pages of records of assets of the
23   Hilsenraths.

24
25   Breakstone is patiently asking Perkins to review the package
26   and read page-by-page its contents into the televised and
     transcribed record and to explain how those records ended up
27   in Benzur's and Westreich's hands - attorneys for Janvrin.
28

Only when Perkins's voice grew faint asking: "Do you want me to keep going?" did Breakstone let him stop and asked him:

"What is going on here?"

Perkins incoherently explains: it was not him…, it was Kalman (his superior at Equity) and he had no idea that this was the subject at the 5 days' meeting (at which he participated on his own recollection and at the recollection of 8 others).

Breakstone, unimpressed presses on and asks about Equity Trust's integrity and fiduciary duty to the Hilsenrath's.

At that point, Viscount Substitute Matthews - the Jersey presiding judiciary officer for the Queen - stood up and stopped the proceedings to prevent Perkins from incriminating his former employer Equity Trust (owners and operators of Janvrin) and Nixon Peabody's co-conspirators.

This was the end of the depositions in Jersey.

A few months later the US attorney in San Francisco, through diplomatic channels, sent an official letter to Ms. Rebecca Boxall of the Jersey Attorney General asking why Equity Trust (Janvrin owners) did not produce certain documents, pertinent to that inquiry.

After numerous letters from the US to the Jersey authorities, back and forth, and almost two years later, in April 2007 - Equity trust ultimately admitted with resignation: we could not locate those documents in our files.

C2 – EXCERPTS/TRANSCRIPT OF INTERVIEW WITH PERKINS IN
JERSEY/UK, JULY–AUGUST 2005

1    Q.    And Dahan and Haruvi, they signed as CEO and

2  president of Pelican Securities & Investments and

3  Pelican Consulting; is that correct?

4    A.    Yes.

5    Q.    So apparently Matheson had been taking legal

6  action against one of its own clients since at least

7  2001; isn't that correct?

8    A.    Yes.

9    Q.    And through that entire time it was acting as a

10 trustee over Mr. Hilsenrath's trust; isn't that correct?

11   A.    I believe that was the case, yes.

12   Q.    How can that be?

13   A.    Well, the only thing I would say is that -- and

14 again, it's not trying to pass the buck, but by that

15 time Mr. Kalman had taken primary responsibility for the

16 relationship.  We'd indicated previously there was a

17 conflict of interest.  And initially we, if you like,

18 came down on the side of continuing to act for Mr. Dahan

19 and Mr. Haruvi once realizing there was a conflict.

20   Q.    And I think we've established that the attorney

21 representing the plaintiffs was Mr. Glen Westreich; is

22 that correct?

23   A.    Yes.

24   Q.    I think we've established that you met Mr. Glen

25 Westreich in early 2000 at a meeting in London, in which

468

1   yourself and certainly Mr. Kalman on the Matheson side

2   were present, and Mr. Dahan and Mr. Haruvi, they were

3   also present; isn't that right?

4       A.    That's correct.

5       Q.    And Mr. Hilsenrath did not attend that meeting.

6       A.    He did not.

7       Q.    Doesn't it appear that Insinger had a conflict

8   in that it was supporting legal action by some of its

9   clients against other of its clients?

10      A.    The way I see it, we didn't have much choice in

11  the matter.  We -- we were requested by clients to take

12  action.  They -- they, I believe, gave us sufficient

13  proof that they -- that they had a litigious action to

14  bring, and so we -- because we administered the

15  companies on their behalf, which owned the shares which

16  were the subject of the dispute, under legal advice we

17  felt we had to proceed with the action.

18      Q.    Did Matheson ever provide information to Dahan

19  or Haruvi or Westreich in relation to Oliver Hilsenrath

20  or any of his entities?

21      A.    Well, that's quite a sweeping question, any

22  information.  I don't think we gave -- I don't recall

23  giving specific information, such as has been referred

24  to before as in specific, you know, entire assets of

25  Aida Holdings.  For example, I don't think we would have

469

1   discussed anything in detail.

2      Q.   Was information about Oliver Hilsenrath

3   provided?

4      A.   I don't recall any -- anything specific.  I

5   don't really think that was the -- the subject of the

6   discussions.  The discussion was either how to recover

7   stock or options or perhaps proceeds which Mr. Dahan and

8   Mr. Haruvi thought they were entitled to.  So it was

9   really in that context.

10      Q.   Were any records relating to Oliver Hilsenrath

11   or his entities provided to any of those who attended

12   the meeting?

13      A.   Not to my recollection, no.

14      Q.   Just off the record for a second.

15      Back on the record.

16      I hand you what has been previously marked as

17   Defense Exhibit 212, which appears to be a fax to Amos

18   Bentzur, B-e-n-t-z-u-r, Attorney at Law, from Linda

19   de la Cour, Insinger de Beaufort; the subject is Aida

20   Holdings, and the date is 6 November 2000.

21      A.   Correct.

22      Q.   What does this refer to?  What attached -- what

23   attached documents are being provided to Mr. Amos

24   Bentzur?

25      A.   It says it's going to fax the attached

470

1    documents in respect of the power of attorney in
2    relation to Aida Holdings Limited.  And it goes on to
3    say that a courier package is being forwarded to
4    Mr. Bentzur in respect to the litigation.  And attached
5    are documents relating to Telecom Associates, which are
6    from the Matheson or the Equity records, stating that
7    Mr. Hilsenrath is the client, and giving the registered
8    and administration addresses, details of the officers,
9    and giving the financial year-end.  Just showing the
10   issued share capital, one share of Telecom Associates.
11          Then there's a -- internal ledger print showing
12   the various nominal accounts with some balances on.
13          It looks like similar information with respect
14   to Star Anise Limited.  There's a Morgan Stanley Dean
15   Witter statement for the month ending 30th April 2000 in
16   regard to Star Anise, showing holdings and daily
17   activity.
18          There's some statements in relation to Borazon
19   Limited, showing basic company information and also
20   internal nominal ledger prints with balances on.
21   There's a statement for Borazon Limited, showing
22   relationships in regard to other entities, including
23   Aida Holdings Limited, showing the -- the bankers being
24   Matheson Bank International, and also brokerage accounts
25   with Morgan Stanley, Stuart Coleman, and Spear Leeds

471

1   Kellog.

2              Do you want me to keep going?

3       Q.   No, that's all right.

4              Going back to the first page, Amos Bentzur,

5   wasn't he the attorney representing Dahan?

6       A.   Well, he -- he was known to David Dahan and he

7   was certainly present at the meeting in London.

8       Q.   So although the caption says it's Aida Holdings

9   Limited, and the paragraph that refers what's being

10  forwarded seems to indicate that "Kalman has asked me to

11  fax documents relating to a power of attorney on the

12  above company," would you agree with me that much of the

13  information that is being conveyed concern other

14  entities other than Aida Holdings?

15      A.   Yes, it does.

16      Q.   And also we have seen previously numerous --

17  numerous instructions from Mr. Hilsenrath to various

18  Matheson/Insinger trust people not to disclose

19  information to Mr. Dahan.  Isn't that an accurate

20  statement?

21      A.   Yes.

22      Q.   What is going on here?

23      A.   Well, all I can say is that I did not send that

24  fax, it was Linda de la Cour, and she sent it apparently

25  on the instructions of Mr. Melvyn Kalman.  I don't

472

    1    recall having seen any of this documentation before, so
    2    I wasn't aware of it.
    3        Q.   You have worked in and on behalf of Matheson,
    4    Insinger de Beaufort, and -- and Equity for how many
    5    years, sir?
    6        A.   Sixteen and a half.
    7        Q.   You were aware of what the responsibilities and
    8    fiduciary obligations are of trust companies --
    9        A.   Yes.
    10       Q.   -- isn't that correct?
    11            Based upon your experience and your
    12   professional dealings with many clients and trust
    13   companies, do you believe that your employer had a
    14   conflict of interest with Mr. Hilsenrath and breached
    15   its fiduciary obligations as a result of the information
    16   we have shown you here today?
    17       VISCOUNT SUBSTITUTE MATTHEWS:  Could I just
    18   interrupt at this point.  It seems to me -- I want to
    19   find out the relevance of this in relation to these
    20   particular criminal proceedings, and it seems to me that
    21   you're asking this client to incriminate his former
    22   employer.
    23       MR. BREAKSTONE:  I'll be happy to discuss this with
    24   you, but it's not a relevant objection.
    25            Mr. Dahan and Mr. Haruvi were primary investors

473

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

HANA HILSENRATH AND OLIVER
HILSENRATH,

Plaintiff(s),

v.

EQUITY TRUST (JERSEY) LIMITED,
Defendant(s).

No. C 07-03312 CRB

**ORDER SETTING INITIAL CASE
MANAGEMENT CONFERENCE
AND ADR DEADLINES**

E-filing

IT IS HEREBY ORDERED that this action is assigned to the Honorable Charles R. Breyer. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order, the handbook entitled "Dispute Resolution Procedures in the Northern District of California" and all other documents specified in Civil Local Rule 4-2. Counsel must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize themselves with that rule and with the handbook entitled "Dispute Resolution Procedures in the Northern District of California."

## CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 6/25/2007 | Complaint filed | |
| 9/14/2007 | Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP_26(f) & ADR L.R.3-5 |
| | • file Joint ADR Certification with Stipulation to ADR Process or Notice of Need for ADR Phone Conference | Civil L.R. 16-8 |
| 9/28/2007 | Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at http://www.cand.uscourts.gov) | FRCivP 26(a)(1) Civil L.R. 16-9 |
| 10/5/2007 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) in Ctrm. 8, 19th Fl,SF at 8:30 AM | Civil L.R. 16-10 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. _____

## ORDER SETTING CASE MANAGEMENT CONFERENCE

The above matter having been assigned to Judge Charles R. Breyer,

**IT IS HEREBY ORDERED,** pursuant to Rule 16, Federal Rules of Civil Procedure, and Civil Local rule 16, that a case management conference will be held before Judge Charles R. Breyer on Friday, _____ at 8:30 a.m., in Courtroom 8, 19th floor, 450 Golden Gate Avenue, San Francisco, California.

Lead trial counsel shall meet and confer not less than thirty (30) days in advance of the conference and shall file a joint case management statement in the form contained in the Civil Local rules as supplemented by this order not less than ten (10) days in advance of the conference.

If the conference is inconveniently scheduled, it may be rescheduled by stipulation and order to another date or time convenient to the Court's calendar.

At the conclusion of the conference, an order will be entered setting dates either for a further case management conference, or for close of discovery, pre-trial conference, and trial. Other orders regulating and controlling future proceedings may be entered.

Plaintiff(s) shall serve copies of this order at once on all parties to this action, and on any parties subsequently joined, in accordance with Federal Rules of Civil Procedure 4 and 5. Following service, plaintiff(s) shall file a certificate of service with the Clerk of this Court.

SUPPLEMENTAL TO INITIAL CASE MANAGEMENT STATEMENT

1.  At the initial case management conference, the parties or at least one attorney of record for each party must appear in person.  See FRCP 26(f) ;  Civil LR 16-10(a).

2.  The case management statement may not exceed ten pages.  It should briefly describe the parties' controversy.  Any party seeking damages must set forth in the statement the amount sought and the basis for its calculation.

3.  If the case was removed from a state court, and the applicable state law has not required the parties to make an express demand for a jury trial at the time of removal, any party claiming right to a jury trial must make the request therefor within ten days after service of the notice of removal.  FRCP 81 (c).

4.  NOTICE TO PRO SE LITIGANTS IN NON-PRISONER ACTIONS:

    If you are proceeding in this lawsuit without an attorney, then the following directives apply to you in the prosecution of your case.

    The court hereby ORDERS you to comply with the service requirements of Rule 4 of the Federal Rules of Civil Procedure as set forth below.  Failure to follow the procedures set forth in this order may result, under Rule 4 (m), in dismissal of your case.

    It is your responsibility to obtain a valid summons from the clerk  and to effect service of the summons and complaint on all defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure.  If you have named the United States government, a federal agency, a federal official or a federal employee as a defendant, you must comply with the special requirements of Rule 4 (i).

    Service may be effected by any person who is not a party and who is at least 18 years of age, which means that you, as a party, may not effect service.  If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, your action will, under Rule 4 (m), be dismissed as to that defendant.

For the Northern District of California

2

1    Within 125 days after the filing of the complaint, you must file proof

2    of service indicating which defendants were served within the 120 days allowed

3    under Rule 4 (m) and showing, in accordance with Rule 4 (l), how each of those

4    defendants was served (for example, by attaching appropriate certificates of

5    service). You must also show cause why a defendant not served within the 120

6    days allowed under Rule 4 (m) should not be dismissed without prejudice. Failure

7    to do these things within the designated time will result in the dismissal of your case

8    under Rule 4 (m) and Rule 41 (b).

9    5.    NOTICE FOR AMERICANS WITH DISABILITIES ACT LITIGATION:

10        If this action seeks accommodation or other relief, including attorney fees,

11        pursuant to Title III of the Americans with Disabilities Act, 42 USC § 12191-

12        89, the court ORDERS, pursuant to FRCP 16, the following:

13        a.    Each plaintiff shall, pursuant to FRCP 4 (m), forthwith complete

14            service on any unserved defendant;

15        b.    Discovery, except for initial disclosures required by FRCP 26 (a), and

16            all other proceedings are until further order STAYED;

17        c.    If not previously done, each plaintiff shall forthwith serve upon each

18            defendant a demand for accommodation and statement of attorney fees

19            incurred to date (42 USC § 12205; Hensly v Eckerhart, 461 US 424,

20            429-30, 433-37 (1983));

21        d.    Each defendant shall, no later than the date for the conference of the

22            parties specified above, serve a response to the demand for

23            accommodation;

24        e.    The joint case management statement shall contain, in addition to the

25            information called for by FRCP 26 (f), the information set forth in

26            paragraphs c and d.

27

28

3

1      Sanctions.  **FAILURE TO COMPLY WITH THIS ORDER** may be deemed

2 sufficient grounds for dismissal of this cause, default or other appropriate sanctions. See Federal

3 Rules of Civil Procedure 16(f), 41 (b); Civ LR 1-4.

4

5      **IT IS SO ORDERED.**

6

7

8

9 Dated: June 22, 2004

10                                    CHARLES R. BREYER

                                     UNITED STATES DISTRICT JUDGE

4

## STANDING ORDERS

1. Counsel shall consult and comply with all provisions of the Local Rules relating to continuance, motions, briefs, and all other matters, unless superseded by these Standing Orders.

2. Scheduling Days:

a. Criminal Law and Motion Calendar is conducted on Wednesdays at **2:15 p.m. ORDER OF CALL IS DETERMINED BY THE COURT.**

b. Civil Law and Motion Calendar is conducted on Fridays at **10:00 a.m. ORDER OF CALL IS DETERMINED BY THE COURT.**

c. Case Management Conferences are conducted on Fridays at **8:30 a.m. ORDER OF CALL IS DETERMINED BY THE COURT.**

d. Pretrial conferences are generally conducted at **2:30 p.m.** on days determined by the Court.

e. Counsel need not reserve a hearing date for motions, however, counsel are advised to check the legal papers for unavailable dates. Noticed dates may be reset as the Court's calendar requires.

3. Motions to compel discovery are referred to a Magistrate Judge for assignment and shall be noticed for hearing before the assigned Magistrate Judge.

4. No changes in the Court's schedule shall be made *except by signed order of the Court and only upon a showing of good cause.* Parties seeking to continue hearings, request special status conferences, modify briefing schedules, or make other procedural changes shall submit a signed stipulation and proposed order, or, if stipulation is not possible, an *ex parte* application in writing.

5. Briefs or Memoranda of Points and Authorities in support of, or in opposition to, any motions filed in this action must be typed on 28-line, double-spaced pleading paper and, except for summary judgment motions, may not exceed **FIFTEEN** (15) pages in length, exclusive of title pages, indexes of cases, table of contents, exhibits, affidavits, and summaries of argument, if required. Briefs exceeding ten (10) pages in length must contain an **additional** summary of argument, including reference to any important cases cited. Summary judgment memoranda may not exceed 25 pages. Counsel shall submit a proposed form of order with all motion and opposition papers.

6. Counsel in civil matters shall comply with the Court's Guidelines for trial and pre-trial conference.

PLAINTIFF IS DIRECTED TO SERVE COPIES OF THIS ORDER AT ONCE UPON
ALL PARTIES TO THIS ACTION AND UPON THOSE SUBSEQUENTLY JOINED IN
ACCORDANCE WITH THE PROVISIONS OF RULES 4 AND 5, FEDERAL RULES OF
CIVIL PROCEDURE, AND TO FILE WITH THE CLERK OF THE COURT A
CERTIFICATE REFLECTING SUCH SERVICE.

IT IS SO ORDERED.

Dated: June 30, 2004

_____
CHARLES R. BREYER,
UNITED STATES DISTRICT JUDGE

## STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA

### CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

Commencing March 1, 2007, all judges of the Northern District of California will require the identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.    Jurisdiction and Service: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.    Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.    Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.    Motions: All prior and pending motions, their current status, and any anticipated motions.

5.    Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.    Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

7.    Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8.    Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

9.    Class Actions: If a class action, a proposal for how and when the class will be certified.

10.   Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11.   Relief: All relief sought through complaint or counterclaim, including the amount of any

-1-

damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12.    Settlement and ADR: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13.    Consent to Magistrate Judge For All Purposes: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14.    Other References: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.    Narrowing of Issues: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16.    Expedited Schedule: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.    Scheduling: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18.    Trial: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19.    Disclosure of Non-party Interested Entities or Persons: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

20.    Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

# WELCOME TO THE U.S. DISTRICT COURT, SAN FRANCISCO
## OFFICE HOURS:   9:00 A.M. TO 4:00 P.M.
### 415.522.2000
#### www.cand.uscourts.gov

**In Addition to the Local Rules, the Following Guidelines Have Been Provided to Ensure That the Filing Process Is Accomplished with Ease and Accuracy. For Additional Information or Assistance, Please Call the above Number During Office Hours.**

1.  Documents are to be filed in the Clerk's Office at the location of the chambers of the judge to whom the action has been assigned. We do not accept filings for cases assigned to judges or magistrate judges in the Oakland or San Jose division, per Civil L.R. 3-2(b).

2.  This office will retain the original plus one copy of most documents submitted. We will conform as many copies as you bring for your use. Related cases require an extra copy for **each** related action designated.

3.  The copy retained goes directly to the assigned Judge. Courtesy copies, or instructions for couriers to deliver a copy directly to chambers are inappropriate, unless you have been instructed to do so by court order.

4.  In order to facilitate the file stamping process, each original document should be submitted on top of its copies. In other words, group like documents together--as opposed to a set of originals and separate sets of copies.

5.  The case number must indicate whether it is a civil or criminal matter by the inclusion of **C** or **CR** at the beginning of the number. Miscellaneous and foreign judgment matters should also be indicated with initials **MISC** or **FJ** at the end of the case number.

6.  The case number must include the initials of the judge and/or magistrate judge followed by the letters designating the case Arbitration (**ARB**), Early Neutral Evaluation (**ENE**) or Mediation (**MED**)--if assigned to one of those programs.

7.  The document caption should include the appropriate judge or magistrate judge involved in a particular matter or before whom an appearance is being made. This is especially important when submitting Settlement Conference Statements.

8.  Documents are to be stapled or acco-fastened at the top. Backings, bindings and covers are not required. Two holes punched at the top of the original document will facilitate processing.

9.  Appropriately sized, stamped, self-addressed return envelopes are to be included with proposed orders or when filing documents by mail.

10.   Proofs of service should be attached to the back of documents. If submitted separately, you must attach a pleading page to the front of the document showing case number and case caption.

11.   There are no filing fees once a case has been opened.

12.   New cases must be accompanied by a completed and signed Civil Cover Sheet, the filing fee or fee waiver request form and an original plus **two** copies of the complaint and any other documents. For Intellectual Property cases, please provide an original plus **three** copies of the complaint. Please present new cases for filing before 3:30 p.m., as they take a considerable amount of time to process.

13.   Copies of forms may be obtained at no charge. They may be picked up in person from the Clerk's Office forms cabinet or with a written request accompanied by an appropriate sized, stamped, self-addressed envelope for return. In addition, copies of the Local Rules may be obtained, free of charge, in the Clerk's Office or by sending a written request, along with a self-addressed, 10" x 14" return envelope, stamped with **$ 3.95** postage to: Clerk, U.S. District Court, 450 Golden Gate Avenue, 16th Floor, San Francisco, CA 94102.

14.   Two computer terminals which allow public access to case dockets and one terminal with information regarding files at the Federal Records Center (FRC) are located in the reception area of the Clerk's Office. Written instructions are posted by the terminals. Outside of the Clerk's Office, electronic access to dockets is available through PACER. To obtain information or to register call 1-800-676-6851.

15.   A file viewing room is located adjacent to the reception area. Files may be viewed in this area after signing the log sheet and presenting identification. Files are to be returned by **1:00 pm** Under no circumstances are files to be removed from the viewing room.

16.   The Clerk's Office can only accept payment by **exact change or check** made payable to Clerk, U.S. District Court. No change can be made for fees or the public copy machine.

17.   Two pay copy machines are located in the file viewing room for public use, at fifteen cents ($.15) per page. Copy cards may be purchases at the snack bar on the first floor. Orders for copywork may be placed through Eddie's Document Retrieval by phoning 415-317-5556. Arrangements may be made to bring in a personal copier by calling the Clerk's Office in advance.

18.   We have a drop box for filing when the Clerk's Office is closed. Please see attached for availability and instructions.

## SAN FRANCISCO

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initals |
|---|---|---|---|
| Alsup, William H. | WHA | Chen, Edward M. | EMC |
| Breyer, Charles R. | CRB | James, Maria-Elena | MEJ |
| Chesney, Maxine M. | MMC | Laporte, Elizabeth D. | EDL |
| Conti, Samuel | SC | Larson, James | JL |
| Hamilton, Phyllis J. | PJH | Spero, Joseph C. | JCS |
| Henderson, Thelton E. | TEH | Zimmerman, Bernard | BZ |
| Illston, Susan | SI | | |
| Jenkins, Martin J. | MJJ | | |
| Patel, Marilyn Hall | MHP | | |
| Schwarzer, William W | WWS | | |
| Walker, Vaughn R | VRW | | |
| White, Jeffrey S. | JSW | | |

## SAN JOSE

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initials |
|---|---|---|---|
| Fogel, Jeremy | JF | Lloyd, Howard R. | HRL |
| Ware, James | JW | Seeborg, Richard | RS |
| Whyte, Ronald M. | RMW | Trumbull, Patricia V. | PVT |

## OAKLAND

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initials |
|---|---|---|---|
| Armstrong, Saundra B. | SBA | Brazil, Wayne D. | WDB |
| Jensen, D. Lowell | DLJ | | |
| Wilken, Claudia | CW | | |

C 07 3312 

# U.S. District Court Northern California

## ECF Registration Information Handout

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Civil Local Rule 5-4 and General Order 45. This means that you **must** (check off the boxes ☑ when done):

☐ **1) Serve** this ECF Registration Information Handout on **all** parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout.

Each attorney representing a party must also:

☐ **2) Register** to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, do not register again, your registration is valid for life on all ECF cases in this district.

☐ **3) Email** (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format within ten business days, following the instructions below. You do not need to wait for your registration to be completed to email the court.

☐ **4)** Access dockets and documents using **PACER** (Public Access to Court Electronic Records). If your firm already has a PACER account, please use that - it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, visit: **http://pacer.psc.uscourts.gov** or call **(800) 676-6856**.

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) (eff. 12.1.01) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

**All subsequent papers submitted by attorneys in this case shall be filed electronically. Unrepresented litigants must file and serve in paper form, unless prior leave to file electronically is obtained from the assigned judge.**

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: **http://ecf.cand.uscourts.gov**

**Submitting Initiating Documents**
PDF versions of all the initiating documents originally submitted to the court (Complaint or Notice of Removal, exhibits, etc.) must be **emailed (not efiled)** to the **PDF email box for the presiding judge** (not the referring judge, if there is one) **within 10 (ten) business days** of the opening of your case. For a complete list of the email addresses, please go to: **http://ecf.cand.uscourts.gov** and click on **[Judges]**.

You must include the case number and judge's initials in the subject line of all relevant emails to the court. You do not need to wait for your registration to email these documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system. All other documents must be e-filed from then on. You do not need to efile or email the Civil Cover Sheet, Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

**Converting Documents to PDF**
Conversion of a word processing document to a PDF file is required before any documents may be submitted to the Court's electronic filing system. Instructions for creating PDF files can be found at the ECF web site: **http://ecf.cand.uscourts.gov**, and click on **[FAQ]**.

**Email Guidelines:** When sending an email to the court, the subject line of the email **must** contain the **case number, judge's initials** and the **type of document(s)** you are sending, and/or the topic of the email.

**Examples:** The examples below assume your case number is 03-09999 before the Honorable Charles R. Breyer:

| Type of Document | Email Subject Line Text |
|---|---|
| Complaint Only | 03-09999 CRB Complaint |
| Complaint and Notice of Related Case | 03-09999 CRB Complaint, Related Case |
| Complaint and Motion for Temporary Restraining Order | 03-09999 CRB Complaint, TRO |

Version 5/14/2007

**Questions**
Almost all questions can be answered in our **FAQ**s at
**http://ecf.cand.uscourts.gov**, please check them first.

You may also email the ECF Help Desk at ECFhelpdesk@cand.uscourts.gov or
call the toll-free ECF Help Desk number at: (866) 638-7829.

The ECF Help Desk is staffed Mondays through Fridays from
9:00am to 4:00pm Pacific time, excluding court holidays.

Version 5/14/2007

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

## NOTICE OF AVAILABILITY OF MAGISTRATE JUDGE
## TO EXERCISE JURISDICTION

In accordance with the provisions of Title 28, U.S.C., § 636(c), you are hereby notified that a United States magistrate judge of this district is available to exercise the court's jurisdiction and to conduct any or all proceedings in this case including a jury or nonjury trial, and entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge.

An appeal from a judgment entered by a magistrate judge may be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.

Copies of the Form for the "Consent to Exercise of Jurisdiction by a United States Magistrate Judge" are available from the clerk of court.

The plaintiff or removing party shall serve a copy of this notice upon all other parties to this action pursuant to Federal Rules of Civil Procedure 4 and 5.

FOR THE COURT
RICHARD W. WIEKING, CLERK

*May Ann Buckley*
By: Deputy Clerk

magcons.ntc (rev. 10/99)

AO 398 (12/93)

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:  (A) _____

as   (B) _____ of (C) _____

    A lawsuit has been commenced against you (or the entity on whose behalf you are addressed.)
A copy of the complaint is attached to this notice. It has been filed in the United States District Court

for the (D) _____ District of _____

and has been assigned docket number (E) _____ .

    This is not a formal summons or notification from the court, but rather my request that you sign
and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons
and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of
the waiver within (F) _____ days after the date designated below as the date on which this Notice
and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return)
for your use. An extra copy of the waiver is also attached for your records.

    If you comply with this request and return the signed waiver, it will be filed with the court and no
summons will be served on you. The action will then proceed as if you had been served on the date the
waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date
designated below as the date on which this notice is sent (or before 90 days from that date if your address
is not in any judicial district of the United States.)

    If you do not return the signed waiver within the time indicated, I will take appropriate steps to
effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the
extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are
addressed) to pay the full costs of such service. In that connection, please read the statement concerning
the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

    I affirm that this request is being sent to you on behalf of the plaintiff, this _____ day of

_____ , _____ .

                                        _____
                                        Signature of Plaintiff's Attorney
                                        or Unrepresented Plaintiff

A — Name of individual defendant (or name of officer or agent of corporate defendant)
B — Title, or other relationship of individual to corporate defendant
C — Name of corporate defendant, if any
D — District
E — Docket number of action
F — Addressee must be given at least 30 days (60 days if located in foreign country) in

AO 399 (12/20)

## WAIVER OF SERVICE OF SUMMONS

TO: _____
(NAME OF PLAINTIFF'S ATTORNEY OR UNREPRESENTED PLAINTIFF)

I acknowledge receipt of your request that I waive service of a summons in the action of

_____, which is case number _____
(CAPTION OF ACTION)                                               (DOCKET NUMBER)

in the United States District Court for the _____ District of

_____. I have also received a copy of the complaint in the
action, two copies of this instrument, and a means by which I can return the signed waiver to you without
cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this
lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process
in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit
or to the jurisdiction or venue of the court except for objections based on a defect in the summons or
in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting)

if an answer or motion under Rule 12 is not served upon you within 60 days after _____
(DATE REQUEST WAS SENT)

or within 90 days after that date if the request was sent outside the United States.

_____          _____
DATE                              SIGNATURE

                                  Printed/Typed Name: _____

                                  As _____ of _____
                                        (TITLE)                    (CORPORATE DEFENDANT)

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons
and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States
to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign
and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought
in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service
of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object
to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff)
a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time,
a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had
been actually served when the request for waiver of service was received.



# Dispute
# Resolution
# Procedures

in the
Northern District
of California

# United States District Court



Revised 8/05



# Table of Contents

**Why does the court offer ADR?**....................................................................................................2
A Message from the Judges of the U.S. District Court

**How can ADR help in my case?**...................................................................................................4

**Which ADR processes does the court offer?**.................................................................................6
Arbitration.........................................................................................................................................6
Early Neutral Evaluation...................................................................................................................9
Mediation.........................................................................................................................................12
Settlement Conferences...................................................................................................................14
Other ADR Processes......................................................................................................................16

**Which is the most suitable ADR process for my case?**......................................................17
Chart................................................................................................................................................18

**What else do I need to know?** ..................................................................................................20
Questions and Answers regarding:
    The ADR Multi-Option Program
    Procedures and timing for referring cases to ADR
    Concerns about ADR

**Where can I get more information?**...........................................................................................24



# Why Does the court offer ADR?

**A Message from the Judges of the U.S. District Court**

It is the mission of this court to do everything it can to help parties resolve their disputes as fairly, quickly and efficiently as possible. The cases filed in our court present a wide range of issues and circumstances. No single process can be expected to meet the needs of all of these cases.

While traditional litigation can serve parties' interests well in some situations, many cases have needs that can be better met through other procedures. We offer a wide selection of non-binding alternative dispute resolution (ADR) options--each of which provides different kinds of services-so that parties can use the procedure that best fits the particular circumstances of their case.

As discussed in the following pages, ADR processes can offer numerous advantages over both formal litigation and direct negotiations between the parties. In contrast to formal litigation and direct negotiations, ADR procedures may lead to resolutions that are:

- faster
- less expensive
- more creative
- better tailored to all parties' underlying interests

We urge you to consider using an ADR process in any civil case, at any time. The court's professional ADR staff, which includes attorneys with expertise in ADR procedures, is available to help you select a suitable option or to customize an ADR procedure to meet your needs. Our ADR processes, which are governed by the court's ADR Local Rules, are available in every civil case.

**This handbook informs you about:**

- the benefits of ADR
- available ADR options
- selecting an appropriate ADR process
- procedures in ADR programs

2

To help ensure that you make informed choices, the court requires, under Civil Local Rule 16, that every attorney and client certify that they have read this handbook and considered the ADR options. Reading this handbook is not a substitute for understanding the ADR Local Rules. Be sure to consult the rules when selecting and participating in an ADR process.

We have committed substantial resources to our ADR programs because we are confident that litigants who use them conscientiously can save significant money and time and will often obtain more satisfying results.

Vaughn R. Walker
Chief Judge
For all the Judges of the Court



# How can ADR help in my case?

Most cases can benefit in some way from ADR. The various ADR processes offer different types of benefits. Each ADR process offers at least some of the following advantages over traditional litigation or direct settlement negotiations.

**Produce more satisfying results**

After litigating a case through trial, even the winners may feel they have lost. The costs and time commitment on both sides may be enormous. Sometimes neither side is satisfied with the result—and any relationship that may have existed between the parties is likely to have been severely strained. On the other hand, ADR may:

- help settle all or part of the dispute much sooner than trial
- permit a mutually acceptable solution that a court would not have the power to order
- save time and money
- preserve ongoing business or personal relationships
- increase satisfaction and thus result in a greater likelihood of a lasting resolution

**Allow more flexibility, control and participation**

In formal litigation, the court is limited in the procedures it must follow and the remedies it may award—and submitting a case to a judge or jury can be extremely risky. ADR processes are more flexible and permit parties to participate more fully and in a wider range of ways. They afford parties more control by providing opportunities to:

- tailor the procedures used to seek a resolution
- broaden the interests taken into consideration
- fashion a business-driven or other creative solution that may not be available from the court
- protect confidentiality
- eliminate the risks of litigation

**Enable a better understanding of the case**

In traditional litigation, sometimes the parties stop communicating directly—and it is only after a significant amount of time and expensive discovery or motions that the parties understand what is really in dispute. ADR can expedite the parties' access to information. It can also

4

improve the quality of justice by helping the parties obtain a better understanding of their case early on. It may:

- provide an opportunity for clients to communicate their views directly and informally
- help parties get to the core of the case and identify the disputed issues
- enhance the parties' understanding of the relevant law and the strengths and weaknesses of their positions
- help parties agree to exchange key information directly

**Improve case management**

Attorneys in litigation sometimes find it difficult, early in the case, to devise a cost-effective case management plan, reach stipulations or narrow the dispute. An ADR neutral can help parties:

- streamline discovery and motions
- narrow the issues in dispute and identify areas of agreement and disagreement
- reach factual and legal stipulations

**Reduce hostility**

Due to its adversarial nature, litigation sometimes increases the level of hostility between sides, which can make communication more difficult and impede chances for settlement. In contrast, a trained ADR neutral can:

- improve the quality and tone of communication between parties
- decrease hostility between clients and between lawyers
- reduce the risk that parties will give up on settlement efforts

## WHEN ADR MAY NOT BE USEFUL

Although most cases can benefit in some way from ADR, some cases might be better handled without ADR. These include suits in which:

- a party seeks to establish precedent
- a dispositive motion requiring little preparation will probably succeed
- a party needs the protections of formal litigation
- a party prefers that a judge preside over all processes

If your dispute might benefit from one or more of the listed advantages, you should seriously consider trying ADR and give careful thought to selecting the most appropriate process for your case.

# Which ADR processes does the court offer?

## The court sponsors four major ADR processes:

- **Arbitration** (non-binding, or binding if all parties agree)

- **Early Neutral Evaluation**

- **Mediation**

- **Settlement Conferences** conducted by magistrate judges or district judges

Each of these programs is described separately in the next few pages. Please consult the ADR Local Rules for more information. The court's ADR staff will help parties customize an ADR process to meet their needs.

The court also makes available other dispute resolution processes and encourages parties to consider retaining the services of private sector ADR providers as discussed on page 16 and in ADR Local Rule 8-2.

## Arbitration

### Goal

The goal of court-sponsored arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The award (a proposed judgment) in a non-binding arbitration may either:

- become the judgment in the case if all parties accept it, or
- serve as a starting point for settlement discussions

### Process

At the election of the parties, either one arbitrator or a panel of three arbitrators presides at a hearing where the parties present evidence through documents, other exhibits and testimony. The application of the rules of evidence is relaxed somewhat in order to save time and money.

6

The process includes important, trial-like sources of discipline and creates good opportunities to assess the impact and credibility of key witnesses:

- parties may use subpoenas to compel witnesses to attend or present documents
- witnesses testify under oath, through direct and cross-examination
- the proceedings can be transcribed and testimony could, in some circumstances, be used later at trial for impeachment

Arbitrators apply the law to the facts of the case and issue a non-binding award on the merits. Arbitrators do not "split the difference" and do not conduct mediations or settlement negotiations.

## Preservation of right to trial

Either party may reject the non-binding award and request a trial *de novo* before the assigned judge, who will not know the content of the arbitration award. If no such demand is filed within the prescribed time, the award becomes the final judgment of the court and is not subject to appellate review. There is no penalty for demanding a trial *de novo* or for failing to obtain a judgment at trial that is more favorable than the arbitration award. Rejecting an arbitration award will not delay the trial date.

Parties may stipulate in advance to waive their right to seek a trial *de novo* and thereby commit themselves to be bound by the arbitration award.

## The neutral(s)

The court provides the parties with a list of 10 trained arbitrators. Taking turns, the parties strike four names and rank the remaining six in order of preference. The court attempts to assign the parties' first choice.

All arbitrators on the court's panel have the following qualifications:

- admission to the practice of law for at least ten years
- for at least five years, spent a minimum of 50 percent of professional time litigating or had substantial experience as an ADR neutral
- training by the court

## Attendance

Insurers of parties are strongly encouraged to attend the arbitration. The following individuals are required to attend:

- clients with knowledge of the facts
- the lead trial attorney for each party
- any witnesses compelled by subpoena

7

**Confidentiality**

The arbitration award is not admissible at a subsequent trial *de novo*, unless the parties stipulate otherwise. The award itself is sealed upon filing and may not be disclosed to the assigned judge until the court has entered final judgment in the action or the action is otherwise terminated. Recorded communications made during the arbitration may, for limited purposes, be admissible at a trial *de novo*. See 28 U.S.C. § 657(c)(3).

**Timing**

An arbitration may be requested at any time. The arbitration hearing is generally held within 90 days after appointment of the arbitrator(s). The hearing date is set by the arbitrator(s) after consultation with the parties.

**Written submissions**

The parties exchange and submit written statements to the arbitrator(s) at least 10 days before the arbitration. The statements are not filed with the court

**Appropriate cases/circumstances**

All civil cases are eligible. Cases that do not meet the criteria for referral to arbitration at filing under ADR Local Rule 4-2 may not be referred to arbitration unless all parties consent in writing. Cases with the following characteristics may be particularly appropriate for arbitration:

- ▸ only monetary (and not injunctive) relief is sought
- ▸ the complaint alleges personal injury, property damage or breach of contract
- ▸ the amount in controversy is less than $150,000
- ▸ the case turns on credibility of witnesses
- ▸ the case does not present complex or unusual legal issues

**Cost**

There is no charge to the litigants.

**Governing rule**

ADR Local Rule 4.

8

## Early Neutral Evaluation

### Goal

The goals of Early Neutral Evaluation (ENE) are to:

- ‣ enhance direct communication between the parties about their claims and supporting evidence
- ‣ provide an assessment of the merits of the case by a neutral expert
- ‣ provide a "reality check" for clients and lawyers
- ‣ identify and clarify the central issues in dispute
- ‣ assist with discovery and motion planning or with an informal exchange of key information
- ‣ facilitate settlement discussions, when requested by the parties

ENE aims to position the case for early resolution by settlement, dispositive motion or trial. It may serve as a cost-effective substitute for formal discovery and pretrial motions. Although settlement is not the major goal of ENE, the process can lead to settlement.

### Process

The evaluator, an experienced attorney with expertise in the subject matter of the case, hosts an informal meeting of clients and counsel at which the following occurs:

- ‣ each side–through counsel, clients or witnesses–presents the evidence and arguments supporting its case (without regard to the rules of evidence and without direct or cross-examination of witnesses)
- ‣ the evaluator identifies areas of agreement, clarifies and focuses the issues and encourages the parties to enter procedural and substantive stipulations
- ‣ the evaluator writes an evaluation in private that includes:
  - ‣ an estimate, where feasible, of the likelihood of liability and the dollar range of damages
  - ‣ an assessment of the relative strengths and weaknesses of each party's case
  - ‣ the reasoning that supports these assessments
- ‣ the evaluator offers to present the evaluation to the parties, who may then ask either to:
  - ‣ hear the evaluation (which must be presented if any party requests it), *or*
  - ‣ postpone hearing the evaluation to:
    - ‣ engage in settlement discussions facilitated by the evaluator, often in separate meetings with each side, *or*
    - ‣ conduct focused discovery or make additional disclosures

9

- if settlement discussions do not occur or do not resolve the case, the evaluator may:
  - help the parties devise a plan for sharing additional information and/or conducting the key discovery that will expeditiously equip them to enter meaningful settlement discussions or position the case for resolution by motion or trial
  - help the parties realistically assess litigation costs
  - determine whether some form of follow up to the session would contribute to case development or settlement

## Preservation of right to trial

The evaluator has no power to impose settlement and does not attempt to coerce a party to accept any proposed terms. The parties' formal discovery, disclosure and motion practice rights are fully preserved. The confidential evaluation is non-binding and is not shared with the trial judge. The parties may agree to a binding settlement. If no settlement is reached, the case remains on the litigation track.

## The neutral

The court's ADR staff appoints an ENE evaluator with expertise in the substantive legal area of the lawsuit, who is available and has no apparent conflict of interest. The parties may object to the evaluator if they perceive a conflict of interest.

All evaluators on the court's panel have the following qualifications:

- admission to the practice of law for at least 15 years
- experience with civil litigation in federal court
- expertise in the substantive law of the case
- training by the court

Many evaluators also have received the court's mediation training.

## Attendance

The following individuals are required to attend in person:

- clients with settlement authority and knowledge of the facts
- the lead trial attorney for each party
- insurers of parties, if their agreement would be necessary to achieve settlement

Requests to permit attendance by phone rather than in person, which will be granted only under extraordinary circumstances, may be made to the ADR Magistrate Judge. Clients are strongly encouraged to participate actively in the ENE session.

## Confidentiality

Communications made in connection with an ENE session ordinarily may not be disclosed to the assigned judge or to anyone else not involved in the litigation, unless otherwise agreed.

## Timing

An ENE session may be requested at any time. Usually, the time for holding the ENE session is:

- for cases in the ADR Multi-Option program (see page 20), presumptively within 90 days after the first Case Management Conference, but this date may be changed by the judge for good cause
- for other cases, generally 60-90 days after referral to ENE, or as otherwise fixed by the court

The evaluator contacts counsel to schedule an initial telephone conference to set the date, time and location of the ENE session and to discuss how to maximize the utility of ENE.

## Written submissions

Counsel exchange and submit written statements to the evaluator at least 10 days before the ENE session. ADR Local Rule 5-9 lists special requirements for intellectual property cases. The statements are not filed with the court.

## Appropriate cases/circumstances

All civil cases are eligible, if the court has an available evaluator with the appropriate subject matter expertise. Cases with the following characteristics may be particularly appropriate:

- counsel or the parties are far apart on their view of the law and/or value of the case
- the case involves technical or specialized subject matter-and it is important to have a neutral with expertise in that subject
- case planning assistance would be useful
- communication across party lines (about merits or procedure) could be improved
- equitable relief is sought-if parties, with the aid of a neutral expert, might agree on the terms of an injunction or consent decree

## Cost

The evaluator volunteers preparation time and the first four hours of the ENE session. After four hours of ENE, the evaluator may (1) continue to volunteer his or her time or (2) give the parties the option of concluding the procedure or paying the evaluator for additional time at an hourly rate of $200, to be split among the parties as they determine. The procedure continues only if all parties and the evaluator agree. After eight hours in one or more ENE sessions, if all

11

parties agree, the evaluator may charge his or her hourly rate or such other rate that the parties agree to pay.

## Governing rule
ADR Local Rule 5.

## Mediation

### Goal
The goal of mediation is to reach a mutually satisfactory agreement resolving all or part of the dispute by carefully exploring not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities.

### Process
Mediation is a flexible, non-binding, confidential process in which a neutral lawyer-mediator facilitates settlement negotiations. The informal session typically begins with presentations of each side's view of the case, through counsel or clients. The mediator, who may meet with the parties in joint and separate sessions, works to:

- improve communication across party lines
- help parties clarify and communicate their interests and those of their opponent
- probe the strengths and weaknesses of each party's legal positions
- identify areas of agreement and help generate options for a mutually agreeable resolution

The mediator generally does not give an overall evaluation of the case. Mediation can extend beyond traditional settlement discussion to broaden the range of resolution options, often by exploring litigants' needs and interests that may be independent of the legal issues in controversy.

### Preservation of right to trial
The mediator has no power to impose settlement and does not attempt to coerce a party to accept any proposed term. The parties' discovery, disclosure and motion practice rights are fully preserved. The parties may agree to a binding settlement. If no settlement is reached, the case remains on the litigation track.

### The neutral
The court's ADR staff appoints a mediator who is available and has no apparent conflicts of interest. The parties may object to the mediator if they perceive a conflict of interest.

Most mediators on the court's panel are lawyers who have been admitted to practice for at least seven years. The panel also includes a few mediators who have other professional credentials. The court's ADR staff will appoint a non-lawyer mediator only after obtaining the parties' permission. All mediators on the court's panel have the following qualifications:

- experience in communication and negotiation techniques
- knowledge about civil litigation in federal court
- training by the court

## Attendance
The following individuals are required to attend the mediation session:

- clients with settlement authority and knowledge of the facts
- the lead trial attorney for each party
- nsurers of parties, if their agreement would be necessary to achieve a settlement

Requests to permit attendance by phone rather than in person, which will be granted only under extraordinary circumstances, may be made to the ADR Magistrate Judge. Clients are strongly encouraged to participate actively in the mediation.

## Confidentiality
Communications made in connection with a mediation ordinarily may not be disclosed to the assigned judge or to anyone else not involved in the session, unless otherwise agreed.

## Timing
A mediation may be requested at any time. Usually, the time for holding the mediation is:

- for cases in the ADR Multi-Option program (see page 20), presumptively within 90 days after the first Case Management Conference, but this date may be changed by the judge for good cause
- for other cases, generally 60-90 days after the referral to mediation, or as otherwise fixed by the court

The mediator contacts counsel to schedule an initial telephone conference to set the date, time and location of the mediation session and to discuss how to maximize the utility of mediation.

## Written submission
Counsel exchange and submit written statements to the mediator at least 10 days before the mediation. The mediator may request or accept additional confidential statements that are not shared with the other side. These statements are not filed with the court.

13

**Appropriate cases/circumstances**

All civil cases are eligible. Cases with the following characteristics may be particularly appropriate:

- ▸ the parties desire a business-driven or other creative solution
- ▸ the parties may benefit from a continuing business or personal relationship
- ▸ multiple parties are involved
- ▸ equitable relief is sought-if parties, with the aid of a neutral, might agree on the terms of an injunction or consent decree
- ▸ communication appears to be a major barrier to resolving or advancing the case

**Cost**

The mediator volunteers preparation time and the first four hours of the mediation. After four hours of mediation, the mediator may either (1) continue to volunteer his or her time or (2) give the parties the option of concluding the procedure or paying the mediator for additional time at an hourly rate of $200, to be split among the parties as they determine. The mediation continues only if all parties and the mediator agree. After eight hours in one or more mediation sessions, if all parties agree, the mediator may charge his or her hourly rate or such other rate that the parties agree to pay.

**Governing rule**

ADR Local Rule 6.

## Settlement Conferences

**Goal**

The goal of a settlement conference is to facilitate the parties' efforts to negotiate a settlement of all or part of the dispute.

**Process**

A judicial officer, usually a magistrate judge, helps the parties negotiate. Some settlement judges also use mediation techniques to improve communication among the parties, probe barriers to settlement and assist in formulating resolutions. Settlement judges might articulate views about the merits of the case or the relative strengths and weaknesses of the parties' legal positions. Often settlement judges meet with one side at a time, and some settlement judges rely primarily on meetings with counsel.

**Preservation of right to trial**

The settlement judge has no power to impose settlement and does not attempt to coerce a party to accept any proposed terms. The parties may agree to a binding settlement. If no settlement is reached, the case remains on the litigation track. The parties' formal discovery, disclosure and motion practice rights are fully preserved.

**The neutral**

A magistrate judge or, in limited circumstances, a district judge conducts the settlement conference. The judge who would preside at trial does not conduct the settlement conference unless the parties stipulate in writing and the judge agrees. Parties may request a specific magistrate judge or rank several magistrate judges in order or preference. The court will attempt to accommodate such preferences.

Magistrate judges have standing orders setting forth their requirements for settlement conferences, including written statements and attendance. Questions about these issues should be directed to the chambers of the assigned magistrate judge.

**Attendance**

Settlement judges' standing orders generally require the personal attendance of lead counsel and the parties. This requirement is waived only when it poses a substantial hardship, in which case the absent party is required to be available by telephone. Persons who attend the settlement conference are required to be thoroughly familiar with the case and to have authority to negotiate a settlement.

**Confidentiality**

Communications made in connection with a settlement conference ordinarily may not be disclosed to the assigned judge or to anyone else not involved in the litigation, unless otherwise agreed.

**Timing**

The assigned judge may refer a case to a magistrate judge for a settlement conference at any time. The timing of the settlement conference depends on the schedule of the assigned magistrate judge.

**Written submissions**

Written settlement conference statements, when required, are submitted directly to the settlement judge. The statements are not filed with the court.

**Appropriate cases/circumstances**

All civil cases are eligible. Cases with the following characteristics may be particularly appropriate:

- a client or attorney prefers to appear before a judicial officer
- issues of procedural law are especially important
- a party is not represented by counsel

**Cost**

    There is no charge to the litigants.

**Governing rule**

    ADR Local Rule 7.

## Other ADR Processes

**Customized ADR Processes**

    The court's ADR staff will work with parties to customize an ADR process to meet the needs of their case or to design an ADR process for them. An ADR staff member is available for a telephone conference with all counsel to discuss ADR options. Clients are invited to join such conferences.

**Non-binding Summary Bench or Jury Trial**

    The ADR staff can help parties structure a non-binding summary bench or jury trial under ADR Local Rule 8-1(a). A summary bench or jury trial is a flexible, non-binding process designed to:

- promote settlement in complex, trial-ready cases headed for long trials
- provide an advisory verdict after an abbreviated presentation of evidence
- offer litigants a chance to ask questions and hear the reactions of the judge and/or jury
- trigger settlement negotiations based on the judge's or jury's non-binding verdict and reactions

**Special Masters**

    The assigned judge may appoint a special master, whose fee is paid by the parties, to serve a wide variety of functions, including:

- discovery manager
- fact-finder
- host of settlement negotiations
- post-judgment administrator or monitor

**Private ADR Providers**

    The court encourages parties to consider private sector ADR providers who offer services including arbitration, mediation, fact-finding, neutral evaluation and private judging. Private providers may be lawyers, law professors, retired judges or other professionals with expertise in dispute resolution techniques. They generally charge a fee.



# Which is the most suitable ADR process for my case?

Each ADR process meets different needs and circumstances. When selecting an ADR process, you should carefully consider the needs of your particular case or situation and identify the goals you hope to achieve through ADR. Then select the ADR process that appears to maximize the potential for achieving your goals.

The chart on the next page may help you select an ADR process. The chart summarizes the court's general observations about the major benefits of ADR and the extent to which the court's four major ADR processes are likely to accomplish them. These are generalizations that the court believes are accurate in many, but not all, cases. The likelihood that a particular ADR process will deliver a benefit depends not only on the type of process, but on numerous other factors including: the style of the neutral; the type and procedural posture of the case; and the parties' and counsel's attitudes and personalities, level of preparation, and experience with the particular ADR process. The court's ADR staff is available to help you select or customize an ADR process to meet your needs.

## What if I don't have a lawyer?

If you are not represented by a lawyer, the court suggests that you select the option of a magistrate judge settlement conference where your questions and concerns can be addressed directly by a judge who has experience working with unrepresented parties. Volunteer mediators, evaluators, and arbitrators, who take only a few cases each year, sometimes feel uncomfortable working with unrepresented parties, making it more difficult to place your case in these programs and potentially slowing down the process. If you do select mediation, ENE or non-binding arbitration and we are unable to find a suitable neutral, your case will be redirected to a settlement conference with a magistrate judge.

17

# How likely is each ADR Process to deliver the specific benefit?

● = Very likely          ◗ = Somewhat likely          ○ = Unlikely

| | Arbitration | ENE | Mediation | SC |
|---|---|---|---|---|
| **ENHANCE PARTY SATISFACTION** | | | | |
| Help settle all or part of dispute | ○[1] | ◗[2] | ● | ●[3] |
| Permit creative/business driven solution that court could not offer | ○ | ◗[2] | ● | ◗[3] |
| Preserve personal or business relationships | ○[1] | ◗[2] | ● | ◗[3] |
| Increase satisfaction and thus improve chance of lasting solution | ○[1] | ◗[2] | ● | ◗[3] |
| **ALLOW FLEXIBILITY, CONTROL AND PARTICIPATION** | | | | |
| Broaden the interests taken into consideration | N/A | ◗[2] | ● | ◗[3] |
| Protect confidentiality | ◗[4] | ● | ● | ● |
| Provide trial-like hearing | ● | N/A | N/A | N/A |
| Provide opportunity to appear before judicial officer | N/A | N/A | N/A | ● |
| **IMPROVE CASE MANAGEMENT** | | | | |
| Help parties agree on further conduct of the case | N/A | ● | ◗[5] | ◗[3] |
| Streamline discovery and motions | N/A | ● | ◗ | ◗[3] |
| Narrow issues and identify areas of agreement | N/A | ● | ●[5] | ● |
| Reach stipulations | N/A | ● | ◗[5] | ● |
| **IMPROVE UNDERSTANDING OF CASE** | | | | |
| Help get to core of case and sort out issues in dispute | ◗ | ● | ● | ● |
| Provide neutral evaluation of case | ● | ● | ○ | ◗[3] |
| Provide expert in subject matter | ◗[6] | ● | ◗[6] | ◗[6] |
| Help parties see strengths and weaknesses of positions | ● | ● | ● | ● |
| Permit direct and informal communication of clients' views | ○ | ◗ | ● | ○[3] |
| Provide opportunity to assess witness credibility and performance | ● | ◗[7] | ◗[7] | ○ |
| Help parties agree to an informal exchange of key information | ○ | ● | ◗[5] | ◗[3] |
| **REDUCE HOSTILITY** | | | | |
| Improve communications between parties/attorneys | ○[1] | ● | ● | ◗[3] |
| Decrease hostility | ○ | ● | ● | ◗[3] |

## Notes

1. Arbitration may provide this benefit when the award triggers or contributes to settlement discussions.

2. ENE may provide this benefit when the parties use it for settlement discussions. Many of the court's ENE evaluators also have been trained as mediators.

3. Depending on the settlement judge's particular style, a settlement conference may or may not deliver this benefit.

4. The arbitration award may not be disclosed to the assigned trial judge until the action is terminated. Although the award is not admissible at a trial *de novo*, recorded communications made during the arbitration may be admissible for limited purposes.

5. Mediation may deliver this benefit, but it focuses primarily on settlement.

6. Depending on the subject of the dispute, the neutral may have expertise.

7. This benefit may result if the parties participate actively in the joint session.

19



# What else do I need to know?

## What is the ADR Multi-Option Program?

Most civil cases are assigned to the ADR Multi-Option program governed by ADR Local Rule 3. You will be notified of such assignment on the initial case management scheduling order. In this program, the parties are presumptively required to participate in one non-binding ADR process offered by the court or, with the assigned judge's permission, in an ADR process offered by a private provider.

We encourage you to discuss ADR with the other side and stipulate to an ADR process as early as feasible. If you do not stipulate early, you may be required to participate in a joint telephone conference with an ADR legal staff member to consider suitable ADR options for your case. *See* ADR Local Rule 3-5 (f). If you have not stipulated before your case management conference, you will discuss ADR with the judge who may refer you to one of the court's ADR processes.

## What is an ADR Phone Conference and how do I schedule one?

During an ADR Phone Conference, a member of the court's ADR legal staff will help counsel select or customize an ADR process that meets the needs of the parties. Clients are encouraged, but not required, to participate. Generally, if the parties cannot agree on an ADR process, or if they prefer a settlement conference, they must file a Notice of Need for ADR Phone Conference by the date specified in the initial case management scheduling order. *See* ADR Local Rule 3-5(d). Of course, you may contact the ADR Unit to schedule an ADR Phone Conference at any time.

## How do I get my case into an ADR process?

There are two ways cases can enter an ADR process:

### By stipulation/proposed order
Counsel may file a stipulation and proposed order with the assigned judge. *See* ADR Local Rule 2-3(b).

20

**By other order of the court**
The assigned judge may order the case into an ADR program at the request of a party or on the judge's own initiative. *See* ADR Local Rule 2-3(b).

## When can I get my case into an ADR process?

**At any time**
Counsel, individually or jointly, can request an ADR referral at any time. The court encourages the use of ADR as early as it can be helpful.

**Before the Case Management Conference**
If all parties agree on an ADR process before the initial Case Management Conference, which usually occurs about 120 days after filing, you should submit a stipulation and proposed order identifying the process selected and the time frame you prefer.

**At the Case Management Conference**
If all parties have not yet agreed on an ADR process before the initial case management conference, you will discuss ADR with the judge at the conference. You are asked to state your ADR preferences in the Joint Case Management Statement you file before that conference.

## When is the best time to use ADR and how much discovery should I first complete?

You should consider using ADR early, whether you are seeking assistance with settlement or case management. Conducting full-blown discovery before an ADR session may negate potential cost savings. If you are using ADR for settlement purposes, you should know enough about your case to assess its value and identify its major strengths and weaknesses.

## Will ADR affect the status of my case on the trial track or disclosure and discovery?

Assignment to an ADR process generally does not affect the status of your case in litigation. Disclosure, discovery and motions are not stayed during ADR proceedings unless the court orders otherwise. Judges sometimes postpone case management or status conferences until after the parties have had an ADR session. If your case does not settle through ADR, it remains on the litigation track.

## How might ADR be better than the parties meeting on their own?

### Getting settlement discussions started

Sometimes advocates are reluctant to initiate settlement discussions. The availability of multiple ADR options and the ADR staff allows a party to explore settlement potential without indicating any litigation weakness.

### Saving time and money

For various reasons, direct settlement discussions often do not occur until late in the lawsuit after much time and money have been spent. A substantial amount of time and money can be saved if parties actively explore settlement early in the pretrial period. An ADR process can provide a safe and early opportunity to discuss settlement.

### Providing momentum and a "back up"

Often parties successfully negotiate an early resolution to their dispute on their own. Even if you are negotiating a settlement without the assistance of a neutral, you should still consider having your case referred to an ADR process to use as a "back up" in the event the case does not settle. Meanwhile, knowing that you have a date for the ADR process may help provide momentum and a "deadline" for your direct settlement discussions.

### Overcoming obstacles to settlement

The adversarial nature of litigation often makes it difficult for counsel and parties to negotiate a settlement effectively. An ADR neutral can help overcome barriers to settlement by selectively using information from each side to:

- help parties engage in productive dialogue
- help each party understand the other side's views and interests
- communicate views or proposals in more palatable terms
- gauge the receptiveness to proposals
- help parties realistically assess their alternatives to settlement
- help generate creative solutions

### Improving case management

Discovery can be broad and expensive, and sometimes fails to focus on the most important issues in the case. An early meeting with a neutral such as an ENE evaluator may help parties agree to a focused, cost-effective discovery plan or may help them agree to exchange information informally.

## Won't I risk giving away my trial strategy in ADR?

About 98 percent of civil cases in our court are resolved without a trial. If you don't raise your best arguments in settlement discussions, you risk failing to achieve the best result for your

22

side. Although you need not reveal in an ADR session sensitive information related to trial strategy, you might find it useful to raise it in a confidential separate session with the neutral (available after the evaluator prepares the evaluation in ENE, or at any time in mediation or a settlement conference). You can then hear the neutral's views of the significance of the information and whether or when sharing it with the other side may benefit you in the negotiations.



# Where can I get more information?

**Website**

Our website at www.adr.cand.uscourts.gov contains information about the court's ADR Programs, including the contents of this ADR handbook, the ADR Local Rules, ADR Forms and an application to serve as a neutral.

**Clerks' Office**

You may obtain copies of this handbook and the ADR Local Rules from the intake counter at each of the Clerk's Office locations. The phone numbers for the Clerk's Office locations in San Francisco, Oakland and San Jose are as follows:

- San Francisco:        (415) 522-2000
- Oakland:              (510) 637-3530
- San Jose:            (408) 535-5363

**Court Library**

The court's library on the 18th floor of the Federal Building and United States Courthouse in San Francisco is open to counsel and clients who have cases pending before the court. The library has a collection of resources on ADR. The collection includes an "ENE Handbook," which was prepared by the court for evaluators, but which might be helpful to counsel and clients with cases assigned to ENE. The library's telephone number is (415) 436-8130.

**ADR Unit**

For information about selecting an ADR process or customizing one for your case, conflicts of interest, becoming a neutral or for other information, contact:

ADR Unit - U.S. District Court
450 Golden Gate Avenue
San Francisco, CA 94102
Tel: (415) 522-2199
Fax: (415)522-4112
E-mail: ADR@cand.uscourts.gov
Internet: www.adr.cand.uscourts.gov

24