1  HANA HILSENRATH
   OLIVER HILSENRATH
2  822 Eastbrook Court
   Danville, CA 94506
3  Telephone: 925 212 6299
   Facsimile: 925 736 7571
4  ohlx@sbcglobal.net

5  PLAINTIFFS *IN PRO PER*

6

7

8                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
9

10 **HANA HILSENRATH AND OLIVER**        Case No. 3:07-cv-3312 CW
   **HILSENRATH,**
11              **Plaintiffs,**
                     **v.**                **OLIVER HILSENRATH'S**
12                                         **DECLARATION IN SUPPORT OF**
   **EQUITY TRUST (JERSEY) LIMITED,**     **OPPOSITION TO ALL DEFENDANTS'**
13 **CANDOVER INVESTMENTS PLC,**          **MOTIONS TO DISMISS ON GROUNDS**
   **INSINGER DE BEAUFORT SA,**          **OF INSUFFICIENT SERVICE,**
14 **JARDINE MATHESON HOLDINGS**          **JURISDICTION, AND FORUM NON**
   **LIMITED, GRANT BROWN, MELVYN**      **CONVENIENS**
15 **KALMAN, JOHN PERKINS, CAROLINE**
   **BOUGEARD, AND DOES 1-10,**          **Date: September 27, 2007**
16              **Defendants.**           **Time: 2:00 PM**
                                          **Place: Courtroom 2**
17                                        **Judge: Hon. Claudia Wilken**

18

19

20

21

22

23

24

25

26

27

28

1        I, Oliver Hilsenrath, declare the following to be true under penalty of perjury:

2

3        The following exhibits submitted in support of the current pleading are true copies of public

4  records and documents from the discovery of:

5

      *Case 4:02-cv-01068-CW Janvrin Holdings Limited et al v. Hilsenrath et al*

6  and

7        *Case 3:03-cr-00213-WHA USA v. Hilsenrath, et al*

8

9

10  Dated: September 4, 2007

11          Respectfully submitted,

12

13

14                OLIVER HILSENRATH

15               Plaintiff *PRO SE*

16

17               /s/ Oliver Hilsenrath

18

19

20

21

22

23

24

25

26

27

28

## **Exhibits to Opposition to Motions re Jurisdiction**

s

# List of Exhibits to Opposition to Motions re Jurisdiction

**EXHIBITS RE JANVRIN CONSPIRACY** – **pp 8**

EXHIBIT 1.          Judge Zimmerman report and order – **pp 9**

EXHIBIT 2.          Judgment  - Janvrin Case – **pp 18**

EXHIBIT 3.          BVI registrar - Janvrin Ryburn, Crossgar – vanished - status re Stacie

Vanderpool – **pp 21**

EXHIBIT 4.          Janvrin Equity Nixon App for Default Judgment – **pp 25**

EXHIBIT 5.          Tentative ruling report and order by Judge Zimmerman to set aside Janvrin

Nixon default – **pp 28**

**EXHIBITS RE AVAILMENT EQUITY TRUST AND ITS EMPLOYEES** – **pp 37**

EXHIBIT 6.          Perkins initial solicitation 96 – **pp 38**

EXHIBIT 7.          Kalman, Perkins, Jardine house, stock subscription USWC Arbel – **pp 42**

EXHIBIT 8.          Kalman Perkins nominate Directors Crossgar Ryburn – **pp 45**

EXHIBIT 9.          Kalman Perkins re Insinger, Nixon, Settlement, involving Stock – **pp 48**

EXHIBIT 10.        Equity, Kalman - Declarations of Trust – **pp 52**

EXHIBIT 11.        Brown, Bougeard - hire and operate attorneys in Jurisdiction

in relevant case – **pp 56**

EXHIBIT 12.        Bougeard to finance Janvrin – **pp 59**

EXHIBIT 13.        Jardine Matheson care of Ryburn in Trust – **pp 61**

EXHIBIT 14.        Availment through federal Tax filings in the US Perkins, Kalman, Equity,

Insinger, Matheson – **pp 64**

EXHIBIT 15.        Availment by opening bank accounts in the US including also B of A account

in Concord CA – **pp 72**

1

s

EXHIBIT 16.        Equity, Kalman - Declarations of Trust - **pp 90**

EXHIBIT 17.        Equity Availment services in the US - web site - **pp 94**

EXHIBIT 18.        Equity Tax Wrapper - **pp 99**


**EXHIBITS CANDOVER SPECIFIC - pp 101**

EXHIBIT 19.        Candover buys control of Equity for Euro 198 million, with Insinger

                   partner/management - **pp 102**

EXHIBIT 20.        Candover unrealized holdings - Equity ownership and US business - **pp 107**

EXHIBIT 21.        Candover not merely holding co - true partners of the management - **pp 112**

EXHIBIT 22.        Candover $2 billion holdings in the US – 2007 - **pp 115**

EXHIBIT 23.        Candover Availing through reporting to SEC on key ownership of Aspen

                   Insurance - **pp 118**

EXHIBIT 24.        Candover Aspen SEC registration for IPO - **pp 123**

EXHIBIT 25.        Candover buys Vetco with locations nationwide and California - **pp 9**

EXHIBIT 26.        Candover sells Vetco in 2007 - **pp 9**

EXHIBIT 27.        Candover buy Vetco and commit to clean up corruption - **pp 126**

EXHIBIT 28.        Candover commit to clean up Vetco but do not and

                   continue corruption - **pp 144**

EXHIBIT 29.        Candover Vetco guilty plea - **pp 152**

EXHIBIT 30.        Candover Vetco to plea guilty in order to sell to GE 2007 - **pp 155**

EXHIBIT 31.        Candover Vetco corruption China News July 2007 - **pp 157**

EXHIBIT 32.        Candover buy major share in Wood Mackenzie with energy business all

                   over the US - **pp 159**

EXHIBIT 33.        Candover's Lombard in California in partnership with management - **pp 162**

2

s

EXHIBIT 34.                Candover DME serving the Hartland of America – **pp 166**

**EXHIBITS JARDINE MATHESON SPECIFIC** – pp 172

EXHIBIT 35.                Jardine Matheson care of Ryburn in Trust – **pp 173**

EXHIBIT 36.                Jardine presence in the US mandarin, Pizza Hut, Rothschild,

                          Jardine Lloyds – **pp 176**

EXHIBIT 37.                Jardine raised $340m selling share of Mandarin in NYC – **pp 184**

EXHIBIT 38.                Jardine owns 20% of Rothschild bank with offices in NY and DC – **pp 187**

EXHIBIT 39.                Jardine Transnational Corporation - Jurisdiction everywhere – **pp 191**

EXHIBIT 40.                Jardine House Kalman, Perkins, stock subscription USWC Arbel – **pp 195**

**EXHIBITS INSINGER SPECIFIC** – pp 198

EXHIBIT 41.                Insinger Settlement correspondence, jurisdiction re hiring attorneys, Kalman,

                          Perkins, Nixon – **pp 199**

EXHIBIT 42.                Insinger, Kalman - Declarations of Trust – **pp 203**

EXHIBIT 43.                Insinger Linda de la Cour to Benzur cover, Kalman – **pp 206**

EXHIBIT 44.                Insinger Linda de la Cour to Nixon cover, Kalman – **pp 208**

EXHIBIT 45.                 Insinger de Beaufort - Ultimate Parent Company – **pp 210**

EXHIBIT 46.                Insinger Equity Press release Insinger still partners; Candover pres release re

                          control on Equity – **pp 212**

EXHIBIT 47.                Insinger annual report management service litigations from

                          Trust business 2003 – **pp 215**

EXHIBIT 48.                 Insinger partners with Candover in Equity Ownership – **pp 221**

EXHIBIT 49.                Insinger Avnet NY fund Prospectus-Global-Convertible-ENG – **pp 223**

EXHIBIT 50.                Insinger 2004 SEC filing – **pp 227**

EXHIBIT 51.                Insinger Form SEC 144 Bank Insinger De Beaufort – **pp 237**

s

EXHIBIT 52.            Insinger US Patriot Act 51006 – **pp 242**


**EXHIBITS MACKEY AND CNR** – pp 248

EXHIBIT 53.            Mackey Case – **pp 249**

EXHIBIT 54.            Canadian National Railway Case 2007 – **pp 267**

4

# EXHIBITS RE JANVRIN CONSPIRACY

**EXHIBIT 1.**

**Judge Zimmerman report and order**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JANVRIN HOLDINGS LTD, et al., | ) )  ) | |
| Plaintiff(s), | ) )  ) | No.  C02-1068 CW (BZ) |
| v. | ) )  ) ) | **REPORT AND RECOMMENDATION FOR ENTRY OF DEFAULT JUDGMENT** |
| DR. OLIVER HILSENRATH, et al., | ) ) ) | |
| Defendant(s). | ) ) | |
| ——————————————— | ) | |
| OLIVER HILSENRATH and HANA HILSENRATH, | ) ) ) | |
| Counterclaimants, | ) ) | |
| v. | ) ) | |
| JANVRIN HOLDINGS LTD.,et al., | ) ) ) | |
| Counterdefendants. | ) | |
| ——————————————— | ) | |

By Minute Order dated March 2, 2007, the Honorable Claudia Wilken referred to me for report and recommendation counterclaimants' application for entry of default judgment against counterdefendants.  The following is my report and recommendation for entry of default judgment.

1    Plaintiffs Janvrin Holdings, Ltd., Crossgar, Ltd., and
2  Ryburn, Ltd., filed the initial complaint in this matter on
3  March 5, 2002.  The Hilsenraths counterclaimed against all
4  three plaintiffs.  In an order dated March 12, 2007, the court
5  dismissed the second amended complaint for failure to
6  prosecute and ordered a default entered on the counterclaims.[1]
7  See Docket No. 290.  The clerk entered counterdefendants'
8  default on March 13, 2007.  Counterclaimants filed for entry
9  of default judgment, and I held a hearing on May 2, 2007.
10  Despite having been served with notice of the hearing,
11  counterdefendants failed to appear.  See Docket No. 279.  At
12  all material times, counterclaimants acted pro se.

13    By defaulting, counterdefendants are deemed to have
14  admitted the well-pleaded averments of the complaint, except
15  those as to the amount of damages.  See Fed. R. Civ. P. 8(d).
16  Default is not, however, "an absolute confession of liability,
17  for the facts alleged in the complaint may be insufficient to
18  establish liability."  In re McGee, 359 B.R. 764, 771 (9th Cir.
19  B.A.P. 2006); see also Cripps v. Life Ins. Co. of North
20  America, 980 F.2d 1261, 1267 (9th Cir. 1992) ("[C]laims which
21  are legally insufficient[] are not established by default.").
22  At the same time, pleadings of pro se litigants are to be held
23  to a less rigorous standard than those drafted by attorneys.
24  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  The decision
25  to grant or deny a default judgment under Rule 55(b) is within

26

27    [1]    Counterdefendants filed an answer to the initial
counterclaim on November 23, 2005.  Counterdefendants, however,
28  filed nothing in response to the amended counterclaim.

1  the discretion of the court.  <u>See</u> Fed. R. Civ. P. 55(b); <u>Eitel</u>

2  <u>v. McCool</u>, 782 F.2d 1470, 1471 (9th Cir. 1986).[2]

3       First, I conclude that the facts alleged in the amended

4  counterclaim, liberally construed, sufficiently pleads a cause

5  of action for invasion of privacy under the California

6  Constitution.[3]  Counterclaimants allege that managers and

7  directors of the counterdefendants knowingly, and without

8  consent, obtained counterclaimants' private financial

9  information held in a fiduciary capacity by Equity Trust.[4]

10 <u>See</u> Amended Counterclaim at ¶¶ 1, 4, 21.  Counterdefendants

11 thereafter used the information to "blackmail" and otherwise

12 pressure Dr. Hilsenrath and U.S. Wireless Corporation (USWC)

13

_____

14  [2]  Pursuant to Rule 55(b)(2), when the defaulting party
has appeared in the action, as here, it shall be served with
15 written notice of the application for judgment.  Fed. R. Civ.
P. 55(b)(2).  Plaintiff served notice of its application to
16 counterdefendants' counsel, as instructed by Judge Wilken.

17  [3]  "'[A]rticle I, section 1 of the California
Constitution creates a right of action against private as well
18 as government entities.'"  <u>Barbee v. Household Automotive</u>
<u>Finance Corp.</u>, 113 Cal. App. 4th 525, 530 (2003) (quoting <u>Hill</u>
19 <u>v. National Collegiate Athletic Assn.</u>, 7 Cal.4th 1, 20 (1994)).
"'[A] plaintiff alleging an invasion of privacy in violation of
20 the state constitutional right to privacy must establish each
of the following: (1) a legally protected privacy interest; (2)
21 a reasonable expectation of privacy in the circumstances; and
(3) conduct by defendant constituting a serious invasion of
22 privacy.'"  <u>Id.</u> (quoting <u>Hill</u>, 7 Cal.4th at 39-40).  California
courts recognize an informational right to privacy that
23 encompasses financial and banking records.  <u>See</u> <u>Hill</u>, 7 Cal.4th
at 34-36; <u>Valley Bank of Nevada v. Superior Court</u>, 15 Cal.3d
24 652, 656 (1975) ("[W]e may safely assume that the right of
privacy extends to one's confidential financial affairs as well
25 as to the details of one's personal life.").

26  [4]  Causes of action one through four sometimes refer to
injury suffered by Dr. Hilsenrath, and sometimes to injuries
27 suffered by both the Hilsenraths or the family.  Construing
this pro se complaint liberally, I construe these causes of
28 action as pleading injury to both Dr. and Mrs. Hilsenrath.

1   to settle a lawsuit, and to pressure the Board into launching

2   a "secret investigation" leading to the termination of Dr.

3   Hilsenrath as CEO of USWC.  Id. at ¶¶ 5, 6.  These admitted

4   allegations establish that counterdefendants invaded

5   counterclaimants' legally protected and reasonable expectation

6   that their private financial information would not be accessed

7   by others, and that the invasion was serious.[5]

8        In addition, the fifth cause of action sufficiently

9   pleads a claim for intentional infliction of emotional

10  distress.[6]  Counterclaimant Hana Hilsenrath alleges she

11  suffered "fear, anguish, and illness" as a result of

12  counterdefendants' violation of her and her family's privacy.

13  See Amended Counterclaim at ¶ 27.  I cannot say that as a

14  matter of law, the counterdefendants' actions were not extreme

15  and outrageous, and her declarations establish the seriousness

16  of the injuries and the viability of the claim.[7]

17       Although not at all times a model of clarity, the

18  ─────────────

19       [5]   Counterclaimants also include a claim for contract
    rescission.  See Amended Counterclaim ¶ 5.  However, Dr.
20  Hilsenrath was not the only party to the settlement, and it is
    unclear how rescission would impact the other signatories.  For
21  this reason, I do not recommend rescinding the settlement
    agreement.  Counterclaimants abandoned their fourth cause of
22  action.  See Docket No. 286 (Hilsenrath Decl. Re: Damages).

23       [6]   "The elements of the tort are '(1) extreme and
    outrageous conduct by the defendant with the intention of
24  causing, or reckless disregard of the probability of causing,
    emotional distress; (2) the plaintiff's suffering severe or
25  extreme emotional distress; and (3) actual and proximate
    causation of the emotional distress by the defendant's
26  outrageous conduct.'"  Ess v. Eskaton Properties, Inc., 97 Cal.
    App. 4th 120, 129 (2002)(quoting Cervantez v. J.C. Penney Co.,
27  24 Cal.3d 579, 593 (1979)).

28       [7]   As pleaded, the fifth cause of action applies only to
    Mrs. Hilsenrath's emotional distress.

1   pleading is neither garbled nor incomprehensible.  Liberally

2   construed, it sufficiently states causes of action for

3   invasion of the constitutional right to privacy and

4   intentional infliction of emotional distress.

5        Counterclaimants have the burden of proving damages.

6   Damages granted, however, will not be different in kind or

7   exceed the amount prayed for in the complaint.  See Philip

8   Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494,

9   498 (C.D. Cal. 2003) (citing Fed. R. Civ. P. 54©, 55(b)(2)).

10  Proximate cause, if pled, is admitted, and all the plaintiff

11  need show is that the compensation prayed for relates to the

12  damages flowing from the injuries pled.  Id. (citing Greyhound

13  Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159

14  (2d Cir. 1992) and Wu v. Ip, 1996 WL 428342, at *1 (N.D. Cal.

15  1996)).

16       In their complaint, counterclaimants sought $26.5 million

17  in compensatory damages; punitive damages, attorneys fees, and

18  other costs according to proof; and interest.[8]  Amended

19  Counterclaim at 10.  In light of their declarations,

20  counterclaimants have proven up the following damages: $3

21  million in cash paid by Dr. Hilsenrath to counterdefendants in

22  settlement of the initial lawsuit; 750,000 options of USWC

23  stock valued at $2,182,500 granted to counterdefendants in

24

25  _____

26       [8]   In their declarations and filings before the Court,
    counterclaimants have requested varying amounts of damages in
    addition to the $26.5 million in compensatory damages.  I view
27  the $26.5 million figure as a cap on compensatory damages due
    to the fact that it was the only figure prayed for in the
28  complaint.

5

1   settlement of the initial lawsuit;[9] general damages to Dr.

2   Hilsenrath in the amount of $2.5 million;[10] and emotional

3   distress damages to Mrs. Hilsenrath in the amount of $2.5

4   million.[11]  I recommend denying counterclaimants' requests for

5   $15,423,000 lost as a result of USWC's bankruptcy;[12] punitive

6

7   _____

8       [9]   Valuation of the stock options is based on the value
    of the stock ($2.91) on its last day of trading, May 29, 2001.
9   See Appl. for Entry of Def. J., Exh. 6 (Decl. of Dr.
    Hilsenrath), and Exh. (I) thereto; cf. Docket No. 286
10  (Hilsenrath Decl. Re Damages (claiming, without justification,
    a valuation at $2.94 per share)).

11      [10]   A breach of the constitutional right to privacy
    appears to support a claim for general damages, including those
12  relating to "anxiety, embarrassment, humiliation, shame,
    depression, feelings of powerlessness, anguish, etc."
13  Operating Engineers Local 3 v. Johnson, 110 Cal. App. 4th 180,
    187 (2003) (internal quotations and citations omitted).  In his
14  various declarations, Dr. Hilsenrath claims to have unjustly
    suffered due to counterdefendants' actions, and the facts as
15  otherwise pleaded make clear that the doctor attributes the
    loss of his job and a large portion of his wealth to the
16  tortious acts.

17      [11]   In her first declaration, Mrs. Hilsenrath asks that
    the family's "financial loss" of $37.5 million be awarded and
18  doubled.  In their later declarations, both ask for additional,
    varying damages to compensate for emotional distress.  However,
19  only Mrs. Hilsenrath pled a claim for intentional infliction of
    emotional distress.  Nor in this circumstance, in which no
20  physical injury befell counterclaimants, do such large amounts
    seem proper.
21

22      [12]   Counterclaimants claim to have lost 5.3 million
    shares of USWC stock as a result of its bankruptcy.  See Docket
23  No. 286.  Counterclaimants, however, fail to plead or otherwise
    provide evidence of a causal connection between
24  counterdefendants' torts and USWC's bankruptcy.  In the
    counterclaim, for example, they state only that "USWC did not
25  survive the dismissal of its founder and CEO, and went bankrupt
    6 weeks later."  Amended Counterclaim ¶ 6.  Dr. Hilsenrath
26  makes a similar statement in his declaration in support of the
    application.  See Appl. for Entry of Def. J., Exh. 6 (Decl. of
27  Dr. Hilsenrath at 2:16-17).  That USWC collapsed so soon after
    Dr. Hilsenrath's termination does not prove it collapsed
28  because of the tortious conduct.  In fact, it suggests USWC may
    have had other problems.

1     damages;[13] attorneys fees;[14] and a number of other claimed

2     losses.[15]  In total, counterclaimants have proven $10,182,502

3     in damages.

4

5         [13]    Punitive damages may be awarded as part of a default

6 judgment award, see, e.g., Bennett v. American Medical
Response, Inc., 2007 WL 900989 (9th Cir. 2007), and are

7 available "[i]n an action for the breach of an obligation not
arising from contract" upon a finding of "oppression, fraud, or

8 malice."  Cal. Civ. Code § 3294(a).  Although counterclaimants
state in their complaint that several of the persons who

9 engaged in the tortious conduct were "managers and directors"
of the defendants, there is no evidence of each manager's

10 relation to a particular counterdefendant; of which manager's
conduct resulted in which injury; or to what degree each

11 defendant may be liable for the injuries caused.  See, e.g.,
Judicial Council Of California Civil Jury Instruction 3943

12 (requiring claimant to demonstrate particular connections
between an employee and employer).  Nor have counterclaimants

13 submitted clear and convincing evidence of the degree of
oppressiveness or reprehensibility of counterdefedants' conduct

14 as required by California punitive damages law, or evidence of
their wealth.  See Simon v. San Paolo U.S. Holding Co., Inc.,

15 35 Cal.4th 1159, 1185 ("[T]he defendant's financial condition
is an essential factor in fixing an amount that is sufficient

16 to serve these goals without exceeding the necessary level of
punishment.").  To the contrary, they have alleged that the

17 counterdefendants are defunct shell companies.  For all these
reasons, they have not met their evidentiary burden of proving

18 punitive damages.

19         [14]    Counterclaimants give no legal authority for their
claim for $4.7 million in attorneys fees.  Moreover, the claim,

20 Docket No. 286, is unsupported by records or details and is
therefore insufficiently proven up.

21
        [15]    Counterclaimants averred at the hearing and in

22 subsequent filings that they owned 24% of USWC, and that they
should be entitled to 24% of the monies and stocks paid by USWC

23 to counterdefendants to settle the initial lawsuit.
Counterclaimants, however, provided no authority for this

24 proposition and, moreover, provided no evidence of whether or
how USWC's assets were distributed in bankruptcy.  Thus, it is

25 not clear that counterclaimants should be, or could be,
compensated in the manner they request.  Their claim for a

26 $3.18 million severance package, see Docket No. 286, is
speculative and conclusory, supported by little evidence, and

27 is therefore insufficient.  Their claim for $7.3 million in
funds frozen by the U.S. government, id., cannot be said to

28 flow logically from counterdefendants' actions and, therefore,
should be denied.

1    Rule 1 of the Federal Rules of Civil Procedure requires

2    that the rules "be construed and administered to secure the

3    just, speedy, and inexpensive determination of every action."

4    The need to end this five year old suit, coupled with the

5    failure of counterdefendants to appear before Judge Wilken or

6    to otherwise defend against the amended counterclaim, are

7    factors that strongly weigh in favor of granting

8    counterclaimants' application.[16]

9    For the reasons articulated herein, I recommend **GRANTING**

10    counterclaimants request for entry of default judgment in the

11    amount of $10,182,502.[17]   I also recommend an award of

12    prejudgment interest on $5,182,502 pursuant to Civil Code

13    §3287(a).

14    Dated: May 18, 2007

15    _____

16             Bernard Zimmerman
           United States Magistrate Judge

17

18    G:\BZALL\-REFS\HILSENRATH\DEF.JUDG.ORDERbz.wpd

19    _____

20       [16]    At the hearing, counterclaimants moved to substitute
Equity Trust as a counterdefendant, claiming that the

21    counterdefendants are now defunct.  In fact, Judge Wilken
already denied leave to file an amended complaint adding
Equity.  See Docket No. 269.  Moreover, the motion to

22    substitute was neither noticed, properly briefed nor served.
For these reasons, I recommend that the motion be denied.

23

24       [17]    I recommend denying counterclaimants' request that a
constructive trust be placed on all funds relating to
settlement of the lawsuit.  See Amended Counterclaim at ¶¶ 18,

25    19; Docket No. 286 (Hilsenrath Decl. Re Damages).  A
constructive trust is an equitable remedy imposed to prevent

26    unjust enrichment.  See Murphy v. T. Rowe Price Prime Reserve
Fund, Inc., 8 F.3d 1420, 1422-23 (9th Cir. 1993) (citing

27    California case law).  Because the counterdefendants are
dissolved and there is no showing where the funds now are, it

28    is unclear how a constructive trust would prevent a gain at
counterclaimants' expense.  See Docket No. 286.

**EXHIBIT 2.**

**Judgment  - Janvrin Case**

United States District Court
For the Northern District of California

1

2

3              IN THE UNITED STATES DISTRICT COURT

4             FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

JANVRIN HOLDINGS LIMITED, CROSSGAR        No. C 02-01068 CW
7 LIMITED, and RYBURN LIMITED,

8        Plaintiffs,

9     v.
                                          DEFAULT JUDGMENT
10 DR. OLIVER HILSENRATH,

11        Defendant.
_____
12
DR. OLIVER HILSENRATH and HANA
13 HILSENRATH,

14        Counterclaimants,

15     v.

16 JANVRIN HOLDINGS LIMITED, CROSSGAR
LIMITED,  and RYBURN LIMITED,
17
          Counterdefendants.
18 _____/

19

20
     For the reasons set forth in this Court's Order Adopting in
21
Part and Modifying in Part Magistrate Judge's Report and
22
Recommendation Re: Countercalimants' Motion for Entry of Default
23
Judgment,
24
     IT IS ORDERED AND ADJUDGED
25
     That Counterclaimants Dr. Oliver Hilsenrath and Hana
26
Hilsenrath recover of Plaintiffs Janvrin Holdings Limited, Crossgar
27
Limited, and Ryburn Limited the total sum of $5,282,500.00 (which
28

1   includes $50,000 in general damages for Dr. Oliver Hilsenrath and

2   $50,000 in damages for emotional distress for Hana Hilsenrath).

3   Prejudgment interest on the $5,182,500.00 in damages related to the

4   settlement of the underlying lawsuit is awarded at a rate of seven

5   percent per annum from the date the settlement was paid through the

6   date of entry of judgment and postjudgment interest on the sum of

7   $5,282,500.00 as provided by 28 U.S.C. § 1961.

8        Dated at Oakland, California, this 26th day of July, 2007.

9                              RICHARD W. WIEKING
                               Clerk of Court
10

11                                  *Sheilah Cahill*
                      By: _____
12                             SHEILAH CAHILL
                               Deputy Clerk
13

**United States District Court**
For the Northern District of California

# EXHIBIT 3.

## BVI registrar – Janvrin, Ryburn, Crossgar

### – vanished –

### – status re Stacie Vanderpool



**British Virgin Islands Financial Services Commission**
**Registry of Corporate Affairs**
P.O. Box 418, Road Town, Tortola, British Virgin Islands • Tel: 284 494 5355/6 • Fax: 284 494 6331 • Email: corporateregistry@bvifsc.vg

22ND MAY, 2007        ISSUED SUBJECT TO DISCLAIMER HEREIN

Mr. Oliver Hilsenrath
822 Eastbrook Court
Danville, CA 94506

Dear Mr. Hilsenrath:

I refer to your request of 21st May, 2007 and hereby submit the following information.

| | |
|---|---|
| COMPANY NAME: | **JANVRIN HOLDINGS LIMITED** |
| COMPANY NUMBER: | BC NO. 158669 |
| REGISTRATION DATE: | **1ST MAY, 2006**<br>**Automatically Re-Registered as a (B.V.I.)**<br>**Business Company on: January 1st, 2007** |
| AUTHORIZED CAPITAL: | US$50,000.00 |
| COMPANY STATUS: | **GOOD STANDING** |
| FIRST REGISTERED AGENT: | **EQUITY TRUST (BVI) LIMITED** |
| FIRST REGISTERED OFFICE: | PALM GROVE HOUSE<br>P.O BOX 438<br>ROAD TOWN, TORTOLA<br>BRITISH VIRGIN ISLANDS |
| TEL/FAX NUMBER | (284) 494-2616    (284) 494-2704 |

**Pg. 2**

| COMPANY NAME: | **CROSSGAR LIMITED** |
|---|---|
| COMPANY NUMBER: | BC NO. 186707 |
| REGISTRATION DATE: | **28TH MAY, 1996** |
| AUTHORIZED CAPITAL: | $50,000.00 |
| COMPANY STATUS: | **STRUCK OFF ON: 1st November 2006 For Non Payment of License Fee** |
| FIRST REGISTERED AGENT: | **EQUITY TRUST BVI LIMITED** |
| FIRST REGISTERED OFFICE: | PLAM GROVE HOUSE P.O. BOX 438 ROAD TOWN, TORTOLA BRITISH VIRGIN ISLANDS |
| TEL/FAX NUMBER | (284) 494-2616  (284) 494-2704 |

| COMPANY NAME: | **RYBURN LIMITED** |
|---|---|
| COMPANY NUMBER: | BC NO. 189363 |
| REGISTRATION DATE: | **21ST JUNE, 1996** |
| AUTHORIZED CAPITAL: | $50,000.00 |
| COMPANY STATUS: | **STRUCK OFF ON: 1st November 2006 For Non Payment of License Fee** |
| FIRST REGISTERED AGENT: | **EQUITY TRUST BVI LIMITED** |
| FIRST REGISTERED OFFICE: | PLAM GROVE HOUSE P.O. BOX 438 ROAD TOWN, TORTOLA BRITISH VIRGIN ISLANDS |
| TEL/FAX NUMBER | (284) 494-2616  (284) 494-2704 |

**Pg. 3**

Under the British Virgin Islands Business Companies Act, 2004 companies are not required to file information on Directors, Shareholders or Owner(s) of a company. All corporate details are maintained by the local registered agent who provides administration for the company.

**PLEASE NOTE THAT THE REGISTRY, ON BEHALF OF THE BRITISH VIRGIN ISLANDS FINANCIAL SERVICES COMMISSION, HEREBY DISCLAIMS ANY LIABILITY FOR THE ACCURACY OF THE INFORMATION CONTAINED HEREIN SINCE ALL FACTS HEREIN ARE SUBJECT TO BE VERIFIED BY CONDUCTING A SEARCH OF THE RELEVANT FILE.**

I trust we have been of service to you.

Sincerely yours,

Stacie K. Vanterpool (Ms.)
*/f/* **Director of Corporate Affairs**

**EXHIBIT 4.**

**Janvrin Equity Nixon**

**App for Default Judgment**

1  Glenn E. Westreich (State Bar Number: 100457)
   Beth L. Mitchell (State Bar Number: 187460)
2  NIXON PEABODY LLP
   Two Embarcadero Center, Suite 2700
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300

5  Attorneys for Plaintiffs
   JANVRIN HOLDINGS LIMITED,
6  CROSSGAR LIMITED and RYBURN
   LIMITED

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  JANVRIN HOLDINGS LIMITED, CROSSGAR      Case No. C02 1068 CW
    LIMITED, and RYBURN LIMITED,
12                                          APPLICATION FOR DEFAULT JUDGMENT
                                            BY CLERK
13                       Plaintiffs,

14        vs.

15  DR. OLIVER HILSENRATH, DAVID
    KLARMAN, DALE STONE, BARRY WEST,
16  DENNIS FRANCIS, DAVID ROBKIN, LOUIS
    GOLM, JAMES S. EISENSTEIN, PATRICIA
17  MURPHY, DONALD ZERIO, ED ROSNER,
    PEPPER HAMILTON LLP, AMERICAN
18  TOWER CORPORATION, a Delaware
    Corporation, LIBERTY VENTURE PARTNERS,
19  INC., COZEN & O'CONNER, WT HOLDINGS,
    HASKELL & WHITE LLP and BDO SEIDMAN
20  LLP, and DOES 1 to 10,

21                       Defendants.

22

23

24

25

26

27

28

APPLICATION FOR DEFAULT JUDGMENT BY CLERK

                                                            S456603.1

TO THE CLERK OF THE ABOVE- CAPTIONED COURT:

Plaintiffs Plaintiffs JANVRIN HOLDINGS LIMITED, CROSSGAR LIMITED AND RYBURN LIMITED (collectively referred to herein as "Plaintiffs") hereby request a default judgment against Defendant OLIVER HILSENRATH ("Defendant") under Rule 55(b)(1) of the Federal Rules of Civil Procedure.

1.    <u>Entry of clerk's default</u>:  A request for entry of clerk's default for failure to respond or appear was filed herein on January 8, 2004 and default was entered on January 14, 2004.

2.    <u>Proof required for clerk's judgment</u>:  The declaration of Beth Mitchell filed herewith establishes proof of:  (1) a sum certain due and owing Plaintiffs by said Defendant (b) pursuant to contract or statutory claim; (c) defendant's nonmilitary status; and (d) costs properly awardable by the clerk.

3.    <u>Judgment to be entered</u>:

        Damages of $ 7,163,792.00.

DATED: October 1, 2004

                    NIXON PEABODY LLP

                    By: _____
                        Glenn E. Westreich
                        Beth L. Mitchell
                        Attorneys for Plaintiffs JANVRIN HOLDINGS
                        LIMITED, CROSSGAR LIMITED and RYBURN
                        LIMITED

APPLICATION FOR DEFAULT JUDGMENT BY CLERK          -1-                                    S456603.1

**EXHIBIT 5.**


**Tentative ruling report and order**

**by Judge Zimmerman**

**to set aside Janvrin Nixon default**

```
 1
 2                                      FILED
 3
                                     JUN 1 4 2005
 4
                                 RICHARD W. WIEKING
 5                             CLERK, U.S. DISTRICT COURT
                             NORTHERN DISTRICT OF CALIFORNIA
 6

 7
 8              UNITED STATES DISTRICT COURT
 9             NORTHERN DISTRICT OF CALIFORNIA

10
11   JANVRIN HOLDINGS LIMITED,   )
     CROSSGAR LIMITED, and RYBURN)
12   LIMITED,                    )    No. C02-1068 CW (BZ)
                    Plaintiff,   )
13                               )    CLERK'S NOTICE REGARDING
               v.                )    TENTATIVE RULING ON
14                               )    PLAINTIFFS' MOTION FOR
     DR. OLIVER HILSENRATH, et   )    DEFAULT JUDGMENT AGAINST
15   al.,                        )    DEFENDANT OLIVER HILSENRATH
                    Defendants.  )
16                               )

17
18        Attached to this Clerk's Notice is a Draft Order
19   representing a tentative ruling on plaintiff's Motion For

     Default Judgment Against Defendant Oliver Hilsenrath.  The
20
     June 15, 2005, hearing remains on calendar.
21
     Dated:  June 14, 2005
22
23                        Rose Maher - Deputy Clerk to
                          Magistrate Judge Bernard Zimmerman
24

25
26   G:\BZALL\-REFS\JANVRIN HOLDINGS\CLERKSTENTATIVERULING.NOT.wpd
27
28   FAXED
     to counsel of record 6/14/05  1
```

06/14/2005 02:15 5224654                                                    PAGE 03

# TENTATIVE RULING

1

2

3

4

5

6

7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12   JANVRIN HOLDINGS LIMITED,    )
     CROSSGAR LIMITED, and RYBURN )
13   LIMITED,                     )        No. C02-1068 CW (BZ)
                                  )
14              Plaintiffs,       )    **REPORT AND RECOMMENDATION**
                                  )    **RE: PLAINTIFFS' MOTION FOR**
15       v.                       )    **DEFAULT JUDGMENT AGAINST**
                                  )    **DEFENDANT OLIVER HILSENRATH**
16   DR. OLIVER HILSENRATH, et    )
     al.,                         )
17                                )
                Defendants.       )
18   _____)

19        Judge Wilken having referred the motion of plaintiffs'

20   Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited

21   (collectively "plaintiffs") for default judgment against Dr.

22   Hilsenrath, the Court hereby makes the following report and

23   recommendation.

24        In March 2002, plaintiffs sued various defendants,

25   including Oliver Hilsenrath, the CEO and a director of U.S.

26   Wireless Corporation ("U.S. Wireless"), for their acts and

27   omissions in inducing plaintiffs to enter into a settlement

28   agreement under which plaintiffs released claims against U.S.

                                1

06/14/2005 02:15  5224334                                                    PAGE   04

# TENTATIVE RULING

Wireless, Dr. Hilsenrath, and David Klarman.  On May 2, 2002,

plaintiffs filed their first amended complaint ("FAC").[1]  The

Clerk of the Court entered default against Dr. Hilsenrath on

January 14, 2004.

The settlement agreement provided for the issuance of a

specified number of shares of U.S. Wireless common stock to

Janvrin, Ryburn, and Crossgar, and required U.S. Wireless to

file a Form S-3 registration statement with the SEC.  FAC at

3.  It also provided:

> I.    U.S. WIRELESS shall pay the total sum
>       of One Million Dollars in equal parts
>       to RYBURN, CROSSGAR and JANVRIN, on
>       the following schedule: $333,333.34
>       on or before April 1, 2001;
>       $333,333.33 on or before July 1,
>       2001; and $333,333.33 on or before
>       October 1, 2001.
>
> J.    In addition to the amounts described
>       in subpart (I), on the Closing Date
>       U.S. WIRELESS shall pay the
>       Plaintiffs the total amount of
>       $500,000, with such payment to be
>       made in equal parts to RYBURN,
>       CROSSGAR, and JANVRIN. . . .

Id. at 4.  On the closing date of the settlement agreement,

---

[1]    The first amended complaint asserted the following
claims against Dr. Hilsenrath:  (1) intentional
misrepresentation, (2) negligent misrepresentation, (3) fraud
by a fiduciary, (4) breach of the fiduciary duty of loyalty (5)
breach of contract (6) violation of Rule 10b-5, and (7) joint
and several liability of management principals or materially
aiding personnel.  While plaintiffs filed a second amended
complaint which contained essentially the same causes of action
against Dr. Hilsenrath, plaintiffs suggest that it was the
first amended complaint that was served on Dr. Hilsenrath and
they rely on the first amended complaint in their motion.
See Decl. of Glen Westreich in Supp. of Mot. for Entry of
Default Against Defendant Oliver Hilsenrath, ("Westreich
Decl.") ¶ 11, Ex. A.

2

· 06/14/05  TUE 14:13  [TX/RX NO 7965]

# TENTATIVE RULING

U.S. Wireless gave $500,000 to plaintiffs and also transferred to them 2,132,800 shares of U.S. Wireless common stock as agreed. See FAC ¶ 61. However, U.S. Wireless did not file the Form S-3 registration statement with the SEC or "otherwise attempt[] to register Plaintiffs' shares," and U.S. Wireless, Dr. Hilsenrath, and Mr. Klarman failed to pay the remaining $1,000,000. See id. ¶¶ 62-63, 71.

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." Board of Trustees of the N. Cal. Sheet Metal Workers Health Care Plan v. Peters, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). In their request for entry of default, plaintiffs submitted evidence demonstrating the means by which the summons and complaint were served on Dr. Hilsenrath. See Docket No. 191, Decl. of Beth Applebaum Mitchell in Supp. of Mot. for Entry of Default as to Oliver Hilsenrath ("Mitchell Decl."). That evidence reflects that the summons and complaint was served on Dr. Hilsenrath at his residence in Tel Aviv, Israel, on August 31, 2003. More specifically, a private investigator licensed by the Israel Ministry of Justice -- after trying to serve the summons and complaint on Dr. Hilsenrath three different times -- posted the documents on the door of his residence. See Appelbaum Decl., Ex. A (proof of service and declaration of due diligence).

Federal Rule of Civil Procedure 4(f) governs the adequacy

3

# TENTATIVE RULING

of service on individuals in a foreign country.[2]  Under Rule

4(f), service may be effected "by any internationally agreed

means reasonably calculated to give notice, such as those

means authorized by the Hague Convention on the Service Abroad

of Judicial and Extrajudicial Documents." Fed. R. Civ. P.

4(f).

Both the United States and Israel are signatories of the

Hague Convention on the Service Abroad of Judicial and

Extrajudicial Documents.  See 20 U.S.T. 361.  Under the

Convention, service may be effected through a request to a

central authority pursuant to the internal law of the

receiving state.  See Volkswagenwerk Aktiengesellschaft v.

Schlunk, 486 U.S. 694, 698-99 (1988) (citing Article 2).  The

Convention also allows for service of documents by means other

than a request to the central authority, such as service

through postal channels or judicial officers, provided the

state of destination does not object.  See id. (citing

Articles 8-11 and 19).  In addition, Article 19 provides: "To

the extent that the internal law of a contracting State

permits methods of transmission, other than those provided for

in the preceding articles, of documents coming from abroad,

for service within its territory, the present Convention shall

not affect such provisions." Id. (Article 19).

In its ratification of the Convention, Israel made the

---

[2] See Fed. R. Civ. P. 4(m) (noting that 120-day period for service of summons and complaint after filing "does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1)").

4

# TENTATIVE RULING

following relevant declarations and reservations:

    a)    The Central Authority in Israel within the meaning of Articles 2, 6 and 18 of the Convention is: The Director of Courts, Directorate of Courts, Russian Compound, Jerusalem;

    b)    The State of Israel, in its quality as State of destination, will, in what concerns Article 10, paragraphs b) and c), of the Convention, effect the service of judicial documents only through the Directorate of Courts, and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State.

Friedman v. Israel Labour Party, No. 96-CV-4702, 1997 WL 379181, at *3 (E.D. Penn. July 2, 1997).

The service of the summons and complaint on Dr. Hilsenrath, which consisted of a posting of these documents on the door of his residence, did not comply with the Convention. Service was not made pursuant to a request to Israel's central authority -- i.e., in compliance with Articles 5 and 6. Although Article 10 does contemplate service through "other competent persons," Israel's "ratification declaration . . . expressly limits the freedom of plaintiff to serve 'judicial documents directly through competent persons of the State of destination' and instead requires that alternative . . . service be effected 1) through the Directorate of Courts and 2) after a judicial or diplomatic request from the state of origin." Friedman, at *3. Compare Balcom v. Hiller, 46 Cal. App. 4th 1758, 1764-65 (1996) (concluding that "a party can comply with the Convention by serving another in the United

5

# TENTATIVE RULING

Kingdom if service is effectuated by a competent person" such as a process server because the United Kingdom's ratification declaration with respect to Article 10 "merely identifies the individuals to be used if a person wishes to serve documents through *official* channels; it does not address 'other competent persons of the State of destination'") (emphasis in original).  As for Article 19, plaintiffs have not provided any evidence as to whether Israel "permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory."[3]  20 U.S.T. 361 (Article 19).  Similarly, plaintiffs have not provided evidence demonstrating that service on Dr. Hilsenrath was otherwise consistent with Rule 4(f)(2)(A).[4]  See Fed. R. Civ. P. 4(f)(2)(A).  Because plaintiffs have not provided sufficient evidence demonstrating adequate service of process on Dr. Hilsenrath, I recommend that the motion for default judgment be denied without prejudice.  See Friedman, at *3.

Even if service of the summons and complaint were not at issue, it is still not clear that plaintiffs are entitled to the judgment they seek against Dr. Hilsenrath.  A default

---

[3] See ePlus Technology, Inc. v. Aboud, 155 F. Supp. 2d 692, 699 (E.D. Va. 2001) ("[T]he word 'permits' in Article 19 must be read, in accordance with its plain meaning, to authorize only those service methods that are explicitly sanctioned by the law of the receiving country.").

[4] The Court does not address Article 15 of the Convention, which discusses when a judgment may be given when a writ of summons has been transmitted abroad for the purpose of service and the defendant has not appeared.

6

# TENTATIVE RULING

judgment may be refused where the court determines no
justifiable claim has been alleged or that a default judgment
is inappropriate for other reasons.  See Draper v. Coombs, 792
F.2d 915, 924 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d
1089, 1092-1093 (9th Cir. 1980).

   While plaintiffs asserted various claims against Dr.
Hilsenrath in their first amended complaint, their motion for
default judgment is predicated solely on the breach of
contract claim.  According to plaintiffs, Dr. Hilsenrath
breached the contract at issue -- i.e., the settlement
agreement -- by failing to pay the remaining $1,000,000
required by the agreement, and by failing to register the U.S.
Wireless stock with the SEC.  The problem for plaintiffs is
that the settlement agreement does not, on its face, require
Dr. Hilsenrath to pay plaintiffs any sum of money or prepare
and file with the SEC a registration statement.  Rather, those
obligations were to be carried out by U.S. Wireless.  See
Westreich Decl, Ex. B at 3-4 (emphasis added).  It is thus not
clear that Dr. Hilsenrath breached the settlement agreement.
However, in view of my report and recommendation
on the adequacy of service, I need not resolve this issue.

   For the foregoing reasons, I recommend that plaintiffs'
motion for default judgment be denied without prejudice.

Dated:  June 14, 2005

_____
                    Bernard Zimmerman
                    United States Magistrate Judge

G:\BZALL\-REFS\JANVRIN HOLDINGS\R&R.wpd

7

# EXHIBITS RE AVAILMENT EQUITY TRUST

# AND ITS EMPLOYEES

**EXHIBIT 6.**

**Perkins initial solicitation 96**

**Matheson Trust Company (Jersey) Limited**

A Member of the Jardine Matheson Group

*Aida Holdings*

| | |
|---|---|
| P.O. Box 316 | Telephone: 01534 888111 |
| Jardine House | Facsimile: 01534 888118 |
| 1 Wesley Street | Telex: 4192012JARJSY G |
| St. Helier | |
| Jersey JE4 8UD | |
| Channel Islands | |

Dr Oliver Hilsenrath                                    14 May 1996
32 Essex Court
Round Hill Country Club                                 JHP/VJJ
Alamo
CA 94507
USA

Dear Dr Hilsenrath

I write with further reference to our recent telephone conversation and your fax of 11 May 1996. I am grateful for the information provided concerning your personal background.

As promised, I now have pleasure in providing you with some details regarding this company and the nature of our services.

As you will see from the enclosed brochure, this company is part of the Jardine Matheson Group of Trust Companies, which are geared to combine asset management in its broadest terms with asset protection arrangements through the use of trust and corporate structures established and administered from a stable, low tax jurisdiction. Our group consists of six principal operating companies, located in Jersey Channel Islands, Bermuda, British Virgin Islands, Hong Kong, Labuan, Malaysia and Mauritius through which we are able to provide effective arrangements for the protection and management of a world-wide asset base, having regard to the varying demands and concerns of our international clientele. These operating companies are owned by Jardine Matheson Trust Corporation, a British Virgin Island holding company, which in turn is a direct subsidiary of the Bermuda parent of the Jardine Matheson Group.

We believe that this ownership structure itself is of significant appeal and importance to our clients, given that it avoids any ultimate connection with the main jurisdictions such as, for example, the United States of America or the United Kingdom. We further believe that our international trading background affords a depth of commercial experience, understanding and support to our trust and financial services.

Our parent company, Jardine Matheson Holdings, is, as I am sure you appreciate, an international service-related company incorporated in Bermuda, and headquartered in Hong Kong. Founded in 1832, the group has extensive business interests world-wide, falling into five main areas of financial services, marketing and distribution, engineering and construction, property and hotels and transport services.

The facilities of the Trust Group are particularly directed towards those individuals, family groups and indeed private companies who hold investments and assets away from the home base. We often find that although there may well be a focus on the merits of investment diversification, less attention is given to the establishment of an effective and efficient holding structure that will provide long term protection.

JAG 01602

Hilsenrath Exhibits re Jurisdiction
A Trust Corporation registered in Jersey, Channel Islands. Registered No.: 42712

CONFIDENTIAL PURSUANT
TO SECTION 24 (d)
02693

**Dr Oliver Hilsenrath**                                               14 May 1996

Some of the aspects of trusts that are important in this respect are addressed in the accompanying paper which outlines the principal features of trusts and which may be of interest to you.

As you will see from our brochure, our services extend to the incorporation and management of companies established in a wide range of jurisdictions. Our facilities are provided for both investment holding and trading companies and in addition to the maintenance of the necessary statutory records will extend to the full management of the underlying affairs of the company.

Also enclosed is a Questionnaire and a Fee Schedule in connection with the incorporation and ongoing administration of a British Virgin Islands registered company. As I explained over the telephone, if we are required to provide full services, this will include the provision of three Directors, all of whom are directors of Matheson Trust Company (Jersey) Limited, the Company Secretary, Nominee Shareholders, the Registered Office in the BVI and Administrative Office here in Jersey. We will establish bank accounts in the name of the BVI company in whatever currencies are required, the authorised signatories of which will again be officers of Matheson Trust Company. It is not our policy to allow third parties to be signatories over bank accounts; neither do we entertain 'mixed' Boards of Directors. There are several reasons for adopting this policy but primarily, we take our responsibilities as directors of the company seriously and all major decisions regarding the company's activities, including the administration of its financial affairs must be clearly seen to rest with the Board.

In the circumstances you may well ask what recourse you would have if for any reason you were unhappy with our administration of the company's affairs at some future date. I would simply say that, as the actual beneficial owner of the company you have the necessary power to appoint alternative directors in place of our officers and instruct us to transfer the administration to another organisation. A copy of our standard Company Management Agreement is enclosed which I think you will agree clearly sets out both our responsibilities as the administrators of the company and what is required of you as the client.

I believe I also mentioned that the setting up costs and ongoing administration fees for either a Jersey registered or BVI registered company were broadly similar although there are no disclosure requirements in the BVI, whereas if we incorporate a Jersey company the name of the beneficial owner must be given to the local Financial Services Department. Nevertheless, this is not a matter of public record and at the end of the day the choice of jurisdiction is largely down to the client's preference. If you have no particular concerns, I would like to suggest that a BVI company would be most appropriate in your particular circumstances.

Turning now to the question of ownership, I note that your children are all minors. Therefore I suggest that you and your wife be named jointly so that, in the event of the demise of one or other of you, the survivor will automatically become the sole owner of the issued share capital of the company and therefore its underlying assets. Once the children come of age, we can review the position. Alternatively, depending on the sums involved, you may wish to contemplate creating a trust into which the company shares could be settled. Please refer to the enclosed paper entitled 'Features of a Trust'.

Finally, if the proposed company was to be used for the purpose of investing funds and holding securities, it would be perfectly in order for the directors of the BVI company to appoint an Investment Manager such as the gentleman in New York referred to in your fax. Obviously we would report to you on a regular basis in accordance with guidelines which we would need to establish with you.

**JAG 01603**

CONFIDENTIAL PURSUANT
TO SECTION 24(d)
**02694**

- 3 -

**Dr Oliver Hilsenrath**                                                      **14 May 1996**

I hope that I have addressed the main issues which may be of interest and concern to you at this early stage, although I am sure you will have further questions once you have had an opportunity to consider this letter and the enclosures.  I therefore look forward to hearing from you again in due course.

Yours sincerely,

John H Perkins
Senior Manager

Encl

JAG 01604

CONFIDENTIAL PURSUANT
TO SECTION 26(d)
02695

**EXHIBIT 7.**

**Kalman, Perkins, Jardine house,**

**stock subscription USWC Arbel**

# *Enderlea Limited*

*Administrative address:*
P.O. Box 316
Jardine House
1 Wesley Street
St. Helier
Jersey JE4 8UD
Channel Islands

Telephone: 01534 888111
Facsimile:  01534 888118
Telex:      419 2012 JARJSY G

Our Ref:  JHP/VJJ

22 July 1996

B Y   C O U R I E R

Mr David S Klarman
Lampert & Lampert
Attorneys at Law
10 East 40th Street
New York
NY 10016
USA

Dear Mr Klarman,

I write with reference to Mr Ilan Arbel's letter to me dated 15 July 1996 together with the two copies of the Subscription Agreement No. 001.  This has been completed and signed by Mr Melvyn Kalman, Director, and is returned herewith.

Arrangements will be made to remit US$650,000 directly by wire transfer to American Toys, Inc., Escrow account in accordance with the details contained in Mr Arbel's letter, to cover the purchase of 260,000 shares of common stock, par value $.001 of American Toys, Inc., at the purchase price of $2.50 per share.

I look forward to receiving confirmation of Atoys' acceptance of this subscription and that we will receive the original Stock Certificate and a fully executed copy of the Subscription Agreement in accordance with the terms of Clause 2 of the Agreement, in due course.

Yours sincerely

John H Perkins
for Wesley Secretaries Limited, Secretary

c.c. Mr Ilan Arbel

**END 112006 0108**

# *Enderlea Limited*



Administrative address:
P.O. Box 316
Jardine House
1 Wesley Street
St. Helier
Jersey JE4 8UD
Channel Islands

Telephone: 01534 888111
Facsimile: 01534 888118
Telex:     4192012 JARJSY G

Our Ref: JHP/VJJ

22 July 1996

B Y   C O U R I E R

Mr David S Klarman
Lampert & Lampert
Attorneys at Law
10 East 40th Street
New York
NY 10016
USA

Dear Mr Klarman,

I write with reference to Dr O Hilsenrath's letter to me dated 15 July 1996 together with the copies of the Subscription Agreement No. 001. This has been completed and signed by Mr Melvyn Kalman, Director, and is returned herewith.

Arrangements will be made to remit US$396,000 directly by wire transfer to Labyrinth Communications Technology Grup, Inc., Escrow account in accordance with the details contained in Dr Hilsenrath's letter, to cover the purchase of 33,000 shares of common stock, par value $.001 of Labyrinth Communications Technology Grup, Inc., at the purchase price of $12.00 per share.

I look forward to receiving confirmation of Labyrinth's acceptance of this subscription and that we will receive the original Stock Certificate and a fully executed copy of the Subscription Agreement in accordance with the terms of Clause 2 of the Agreement, in due course.

Yours sincerely

John H Perkins
for Wesley Secretaries Limited, Secretary

END 112006 0109

c.c. Dr O Hilsenrath

# EXHIBIT 8.


## Kalman, Perkins

## nominate Directors Crossgar Ryburn

## CROSSGAR LIMITED

I, Melvyn Kalman a Director of the above named Company in pursuance of the power in that behalf contained in the Articles of Association of the Company do hereby nominate and appoint John H Perkins of Jardine House, 1 Wesley Street, St. Helier, Jersey, Channel Islands, to act as Alternate Director in my place at any Meeting of the Directors which I am unable to attend and to exercise all my duties as a Director of the Company, until I instruct otherwise in writing.

Dated this 20 June 1996

..................................................
Melvyn Kalman

CRO 00473

RYBURN LIMITED

I, Melvyn Kalman a Director of the above named Company in pursuance of the power in that behalf contained in the Articles of Association of the Company do hereby nominate and appoint John H Perkins of Jardine House, 1 Wesley Street, St. Helier, Jersey, Channel Islands, to act as Alternate Director in my place at any Meeting of the Directors which I am unable to attend and to exercise all my duties as a Director of the Company, until I instruct otherwise in writing.

Dated this 4 July 1996

.......................................................
Melvyn Kalman

RYB 00509

**EXHIBIT 9.**


**Kalman, Perkins**

**re Insinger, Nixon, Settlement,**

**involving Stock**



# LILLICK & CHARLES L L P
### ATTORNEYS AT LAW

Two Embarcadero Center
San Francisco, CA 94111-3996

Phone: 415·984·8200
Facsimile: 415·984·8300

March 27, 2001303651.1

Writer's Email Address

gwestreich@lillick.com

Writer's Direct Dial Number
415·984·8331

**PERSONAL & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**

**VIA FACSIMILE & AIR MAIL**

Mr. Melvyn Kalman, Director
INSINGER *de* BEAUFORT
P.O. Box 316
Jardine House 1 Wesley Street
St. Helier Jersey JE4 8UD
Channel Islands

Re:    Janvrin Holdings Ltd., et al. v. U.S. Wireless Corporation, *et al.*

Dear Mr. Kalman:

Herewith a settlement agreement in the referenced matter. After you have had a chance to review the document and to speak with Messrs. Dahan and Haruvi, please have the documents signed on behalf of Janvrin, Ryburn and Crossgar, initial each page, and return the same to me by mail/delivery and telecopy. The current arrangement is for the settlement to close on Friday, March 30, 2001.

Please contact me at your earliest convenience if you have any questions or comments.

Best regards,

Glenn E. Westreich
of LILLICK & CHARLES LLP

GEW/tet
Enclosure(s)
cc:    Mr. David Dahan
       Mr. Haim Haruvi

303651.1

# CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

1. **Parties.** This Settlement Agreement and Mutual Release of all Claims (hereinafter "Agreement") is entered into by and between JANVRIN HOLDINGS LTD. ("JANVRIN"), RYBURN LTD. ("RYBURN"), CROSSGAR LTD. ("CROSSGAR"), DAVID DAHAN ("DAHAN"), HAIM HARUVI ("HARUVI"), PELICAN SECURITIES & INVESTMENTS, LTD. ("PELICAN SECURITIES"), AND PELICAN CONSULTING U.S.A., INC. ("PELICAN CONSULTING") on the one hand, and U.S. WIRELESS CORPORATION ("U.S. WIRELESS"), OLIVER HILSENRATH ("HILSENRATH") and DAVID KLARMAN ("KLARMAN") on the other (collectively, "the Parties").

2. **Recitals.** This settlement is made with reference to the following facts:

   This settlement is made with reference to the following facts:

   a. JANVRIN, CROSSGAR and RYBURN ("Plaintiffs") each brought separate complaints (the "Complaints") against U.S. WIRELESS, HILSENRATH and KLARMAN ("Defendants") in the Northern District of California federal district court arising out of the alleged breaches of Consulting Agreements, Option Agreements, duty to transfer stock, and fiduciary duty (Case Nos. C00 2334, C00 2336 and 2346), respectively (hereinafter "Federal Actions").

   b. U.S. WIRELESS brought counterclaims against JANVRIN, RYBURN, CROSSGAR, PELICAN SECURITIES, PELICAN CONSULTING U.S.A., DAHAN and HARUVI ("Counterclaims") for rescission, fraud, unjust enrichment and declaratory relief.

   c. Each Party hereto specifically denies that it or he breached any agreement with any other Party herein, and further denies that it or he engaged in any actionable conduct in regard to any other Party herein. The Parties agree that the settlement agreement is a compromise and will not be construed as an admission of liability at any time for any purpose against any person or entity who is a Party to this Agreement.

   d. The Parties, in order to avoid the uncertainty, delay and expense of time-consuming litigation, desire to settle fully and finally all differences between them on the terms and conditions set forth herein, which the Parties acknowledge and represent to be fair, reasonable, adequate, and in their mutual best interests.

   e. The Parties understand they are waiving significant legal rights and/or claims by signing this Agreement and voluntarily enter into this Agreement with a full and complete understanding of its terms and legal effect, with the intent to be bound thereby. The Parties are represented by competent legal counsel and acknowledge that they have been fully apprised of the legal consequences of this Agreement prior to execution of this Agreement.

301937.2

15. **Representation of Plaintiffs and Counterclaim Defendants.** Plaintiffs and Counterclaim Defendants warrant that Lillick & Charles LLP represents them with respect to this Agreement and all matters covered by it; that they have been fully advised by said attorneys with respect to their rights and obligations, and with respect to the execution of this Agreement that they have had the opportunity to have the terms of this Agreement explained to them in their native language; and that they hereby authorize and direct said attorneys to take such actions as may be necessary or appropriate to effectuate this Agreement.

16. **Representation of Defendants and Counterclaimant.** Defendants and Counterclaimant warrant that Steinhart & Falconer, LLP represents them with respect to this Agreement and all matters covered by it; that they have been fully advised by said attorneys with respect to their rights and obligations, and with respect to the execution of this Agreement; that they have had the opportunity to have the terms of this Agreement explained to them in their native language and that they hereby authorize and direct said attorneys to take such actions as may be necessary or appropriate to effectuate this Agreement.

17. **Authority to Enter Agreement.** The parties hereto warrant that no other person or entity has claimed or now claims any interest in the subject of this Agreement, and that they have the sole right and exclusive authority to execute this Agreement and to receive the aforesaid consideration and that they have not sold, assigned or otherwise set over to any other person or entity, any claim, lien, demand, cause of action, obligation, damage or liability covered hereby. This Agreement is entered into by the undersigned parties freely and voluntarily and with and upon advice of counsel.

18. **Construction.** Should any provision of this Agreement be held invalid or illegal, such illegality shall not validate the whole of this Agreement but, rather, the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

19. **Attorney's Fees.** The prevailing party in any litigation to enforce this Agreement shall be entitled to receive his or its reasonable attorney's fees and costs.

JANVRIN HOLDINGS LTD

Dated: 4th April , 2001    By: _____

Its: DIRECTOR


RYBURN LTD.

Dated: 4th April , 2001    By: _____

Its: DIRECTOR .

-11-                                                    301937.2

H.H.

**EXHIBIT 10.**

**Equity, Kalman - Declarations of Trust**

## DECLARATION OF TRUST

| | | | | |
|---|---|---|---|---|
| **The Parties** | : | The Nominee | : | C N Limited<br>of 28-30 The Parade<br>St Helier<br>Jersey |
| | : | The Owner | : | Equity Trust (Jersey) Limited<br>As Trustee of the Revenge Trust<br>of 28-30 The Parade<br>St Helier<br>Jersey |

**The Share(s)**     :     100 Ordinary USD1.00 fully paid shares registered in the name of the Nominee in the books of the Company.

**The Company**          Ryburn Limited having its Registered Office situated at Beaufort House, PO Box 438, Road Town, Tortola, British Virgin Islands.

**Date of Execution**          10th December 2003

**BY THIS INSTRUMENT** made on the above date of execution and incorporating the above definitions

**The Nominee:**

1   Declares that it holds the share(s) as nominee for the Owner.

2   Undertakes and agrees not to transfer, deal with or dispose of the said shares or any of them save as the Owner may from time to time direct

3   Undertakes and agrees to account to the Owner for all dividends and profits which may be paid to it from time to time upon the said shares and for all other moneys or profit which may be payable to it in respect thereof

4   Undertakes and agrees to exercise its voting power as holder of the said shares in such a manner and for such purposes as the Owner may from time to time direct or determine

5   Declares that this declaration of trust shall be binding on its executors administrators and assigns

The Common Seal of
**C N Limited**
was hereunto affixed in
the presence of:

Director

Authorised Signatory

**RYB 00526**

## DECLARATION OF TRUST

| | | | |
|---|---|---|---|
| **The Parties** | : | The Nominee | : | CN Limited |

The Parties     :     The Nominee     :     CN Limited
                                              of 28-30 The Parade
                                              St Helier
                                              Jersey

                      The Owner       :     Equity Trust (Jersey) Limited as Trustee of
                                              the Revenge Trust
                                              28-30 The Parade
                                              St Helier
                                              Jersey

**The Share(s)**     :     60 Ordinary USD $1.00 fully paid shares registered in the name of
                            the Nominee in the books of the Company.

**The Company**           Crossgar Limited having its Registered Office situated at Road Town,
                            Tortola, British Virgin Islands.

**Date of Execution**     6th November 2003

**BY THIS INSTRUMENT** made on the above date of execution and incorporating the above definitions

**The Nominee:**  1  Declares that it holds the share(s) as nominee for the Owner.

2  Undertakes and agrees not to transfer, deal with or dispose of the said shares or any of them save as the Owner may from time to time direct

3  Undertakes and agrees to account to the Owner for all dividends and profits which may be paid to it from time to time upon the said shares and for all other moneys or profit which may be payable to it in respect thereof

4  Undertakes and agrees to exercise its voting power as holder of the said shares in such a manner and for such purposes as the Owner may from time to time direct or determine

5  Declares that this declaration of trust shall be binding on its executors administrators and assigns

The Common Seal of
**C N Limited**
was hereunto affixed in
the presence of:

_Director_

_3,30_

_Authorised Signatory_

CRO 00351



## DECLARATION OF TRUST

The Parties        :        The Nominee    :    EQ Nominees (Jersey) Limited
                                                of 28-30 The Parade
                                                St Helier
                                                Jersey

                   :        The Owner      :    Equity Trust (Jersey) Limited as Trustee of
                                                the Revenge Trust
                                                28-30 The Parade
                                                St Helier
                                                Jersey

The Share(s)       :        40 Ordinary USD $1.oo fully paid shares registered in the name of
                            the Nominee in the books of the Company.

The Company                 Crossgar Limited having its Registered Office situated at Road Town,
                            Tortola, British Virgin Islands.

Date of Execution           6th November 2003


**BY THIS INSTRUMENT** made on the above date of execution and incorporating the above definitions

The Nominee:  1     Declares that it holds the share(s) as nominee for the Owner.

              2     Undertakes and agrees not to transfer, deal with or dispose of the said
                    shares or any of them save as the Owner may from time to time direct

              3     Undertakes and agrees to account to the Owner for all dividends and profits
                    which may be paid to it from time to time upon the said shares and for all
                    other moneys or profit which may be payable to it in respect thereof

              4     Undertakes and agrees to exercise its voting power as holder of the said
                    shares in such a manner and for such purposes as the Owner may from time
                    to time direct or determine

              5     Declares that this declaration of trust shall be binding on its executors
                    administrators and assigns


The Common Seal of
**EQ Nominees (Jersey) Limited**
was hereunto affixed in
the presence of:

                                                        1236

Director


Authorised Signatory                                    CRO 00350

**EXHIBIT 11.**

**Brown, Bougeard - hire and operate**

**attorneys in Jurisdiction in relevant case**

## Caroline Bougeard



| From: | on behalf of Caroline Bougeard |
|---|---|
| To: | gwestreich@nixonpeabody.com |
| Cc: | Grant Brown; Victoria Loraine; Paul Kingham |
| Subject: | Janvrin Holdings Limited, Ryburn Limited, Crossgar Limited - David Dahan |

Dear Mr Westreich

I refer to my previous e-mail of 8th July 2005 and your reply of 22nd August 2005.

We note that the only matter handled by your firm on behalf of Janvrin, Ryburn and Crossgar was the Confidential Settlement Agreement and Mutual Release, the terms of which are contained in the April 2001 Agreement.

Notwithstanding this, claims have been made by the beneficial owner of Dyke Limited (of which we are Directors) that it was also agreed under this Settlement that US$3,000,000 would be paid by US Wireless to Dyke Limited and another third party company, Rockvale Limited from an escrow established by US Wireless management as well as a conditional personal guarantee given by Oliver Hilsenrath of 750,000 USW Options.

Dyke's assets have now been seized by the US authorities in the matter of US Wireless/Oliver Hilsenrath and there is a small window of opportunity to have this judgement set aside. If we do not defend the seizure of Dyke's assets as is intended, please confirm that this will not affect our pursuit of the existing claims of Janvrin, Ryburn and Crossgar against US Wireless/Oliver Hilsenrath.

Your earliest reply would be appreciated.

Regards

Caroline Bougeard

Caroline Bougeard
Legal Department
Equity Trust (Jersey) Limited
Equity Trust House
PO Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands
Tel: 44 (0) 1534 636211
Direct Line:44 (0) 1534 515369
Fax: 44 (0) 1534 636215
e-mail: cbougeard@equitytrust.com

CRO 00053



**RYBURN LIMITED**
**("THE COMPANY")**

**RESOLUTION OF THE SOLE DIRECTOR IN ACCORDANCE WITH THE ARTICLES OF ASSOCIATION OF THE COMPANY**

**ADOPTION OF REGISTERED SHARES ONLY MEMORANDUM & ARTICLES OF ASSOCIATION**

**IT IS RESOLVED** that the Company shall adopt a new Memorandum and Articles of Association that shall permit the Company to issue registered shares only.

**CHANGE OF REGISTERED OFFICE AND REGISTERED AGENT**

**IT IS RESOLVED** that the Registered Office and Registered Agent of the Company be changed to that of Equity Trust (BVI) Limited and accordingly Clauses 2 and 3 of the Memorandum of Association be deleted in their entirety and be replaced by the following:-

2.     The Registered Office of the Company will be situate at Palm Grove House, P.O. Box 438, Road Town, Tortola, British Virgin Islands or at such other place within the British Virgin Islands as the directors may from time to time determine.

3.     The Registered Agent of the Company will be Equity Trust (BVI) Limited, Palm Grove House, P.O. Box 438, Road Town, Tortola, British Virgin Islands or such other person or company being a person or company entitled to act as a registered agent as the directors may from time to time determine.

**IT IS FURTHER RESOLVED**

that the Company's Memorandum and Articles of Association be deleted in its entirety and replaced with the new Memorandum and Articles of Association attached hereto.

Adopted and signed this 26ᵗʰ day of November 2004

For and on behalf of
**Derard Limited - Director**

.................................................
Authorised signatory

.................................................
Authorised signatory

**RYB 00411**

**EXHIBIT 12.**

**Bougeard to finance Janvrin**

**Caroline Bougeard**

| | |
|---|---|
| **From:** | on behalf of Caroline Bougeard |
| **To:** | Paul Kingham |
| **Cc:** | Grant Brown; Victoria Loraine |
| **Subject:** | Janvrin, Crossgar , Ryburn Limited |

Dear Paul,

I see from the circulated list that Crossgar and Ryburn are about to be struck off the BVI Register for non payment of their statutory fees. Two things occured to me:-

1) What about Janvrin Holdings - did we have sufficient cash to settle or is it also in default and has perhaps been left off the list?

2) If funds are not forthcoming from David Dahan/Haim Haruvu (and presumably we have been chasing them for these) can we allow the companies to be struck off in the light of the ongoing US Wireless/OHilsenrath litigation or should Equity settle out of its own funds (as we have recently done for Klonoa). I have discussed this with Victoria and she thinks we have to maintain the companies, however Grant will have to sanction this.

Perhaps we can discuss when you are back in the office.

Thanks
Caroline

Caroline Bougeard
Legal Department
Equity Trust (Jersey) Limited
Equity Trust House
PO Box 546
28-30 The Parade
St Helier
Jersey JE4 8XY
Channel Islands
Tel: 44 (0) 1534 636211
Direct Line:44 (0) 1534 515369
Fax: 44 (0) 1534 636215
e-mail: cbougeard@equitytrust.com

CRO 00051