1   LATHAM & WATKINS LLP
    Peter A. Wald (Bar No. 85705)
2     peter.wald@lw.com
    Darius Ogloza (Bar No. 176983)
3     darius.ogloza@lw.com
    Sarah M. Ray (Bar No. 229670)
4     sarah.ray@lw.com
    Katie Y. Chang (Bar No. 246247)
5     katie.chang@lw.com
  505 Montgomery Street, Suite 2000
6   San Francisco, California 94111-2562
  Telephone: +415.391.0600
7   Facsimile: +415.395.8095

8   Attorneys for Defendants
  EQUITY TRUST (JERSEY) LIMITED,
9   CAROLINE BOUGEARD, AND GRANT
  BROWN

10

11   UNITED STATES DISTRICT COURT

12   NORTHERN DISTRICT OF CALIFORNIA

13

14   HANA HILSENRATH AND OLIVER
  HILSENRATH,

    CASE NO. C-07-3312 CW

15           Plaintiffs,
    DEFENDANTS EQUITY TRUST (JERSEY)
    LIMITED, CAROLINE BOUGEARD AND
16              GRANT BROWN'S OPPOSITION TO
    v.
    PLAINTIFFS' MOTION TO DISQUALIFY
17       LATHAM & WATKINS L.L.P.

  EQUITY TRUST (JERSEY) LIMITED,
18   CANDOVER INVESTMENTS PLC,
  INSINGER DE BEAUFORT HOLDINGS
    Date:   N/A
    Time:   N/A
19   S.A., JARDINE MATHESON HOLDINGS
  LIMITED, GRANT BROWN, MELVYN
    Place:   Courtroom 2, 4th Floor
    Judge:  Honorable Claudia Wilken
20   KALMAN, JOHN PERKINS, CAROLINE
  BOUGEARD, AND DOES 1-10,
    Complaint Filed: June 25, 2007
21           Defendants.

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1    Pursuant to this Court's September 5, 2007 order, defendants Equity Trust

2    (Jersey) Limited ("ETJL"), Caroline Bougeard ("Bougeard") and Grant Brown ("Brown")

3    ("opposing defendants," collectively) respond as follows to plaintiffs Oliver and Hana

4    Hilsenrath's ("the Hilsenraths") motion to disqualify Latham & Watkins LLP ("Latham") as

5    counsel for opposing defendants in the above matter.

6    **I.      INTRODUCTION**

7        The Hilsenraths move to disqualify Latham on a completely inadequate factual

8    record.  Diligent search of Latham's client intake and billing records reveals that Latham

9    represented plaintiff Oliver Hilsenrath on only one occasion.  This representation lasted for a

10   period of approximately six weeks in June and July 2000 and involved an unrelated litigation

11   matter arising out of investment advice Hilsenrath had received in 1996 from David Dahan

12   ("Dahan") and Haim Haruvi ("Haruvi"), two Israeli investment advisors.   In connection with

13   that dispute, Latham prepared and filed a complaint on June 16, 2000 ("the June 16, 2000

14   Complaint") on Hilsenrath's behalf in Contra Costa County Superior Court.  The June 16, 2000

15   Complaint was never served on any defendant, and Latham's representation of Hilsenrath came

16   to an end before the case even got off the ground.

17       The Hilsenraths' motion lacks merit for three reasons.  <u>First</u>, despite being granted

18   the opportunity to supplement their meager initial evidentiary showing, the Hilsenraths do not,

19   and cannot, identify a scrap of confidential information material to this case that purportedly

20   came into Latham's possession as a result of its former representation of Hilsenrath.   <u>Second</u>,

21   the issues involved in the June 16, 2000 Complaint are unrelated to the issues involved in the

22   present case — an action arising out of defendants' alleged disclosure, and subsequent misuse, of

23   the Hilsenraths' personal financial information between December 2000 and April 2001.   <u>Third</u>,

24   the Hilsenraths' reliance on Latham's former representation of U.S. Wireless Corporation

25   ("USW"), a bankrupt telecommunications company of which Oliver Hilsenrath served as former

26   CEO, in the Contra Costa Litigation and in a financing transaction, is legally irrelevant to this

27   motion.  California law is clear that a law firm's representation of a *corporation* does not create

28   an attorney-client relationship with any of its constituencies.  Accordingly, the instant motion

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

1

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1  must necessarily rely solely on matters arising out of Latham's personal representation of

2  Hilsenrath, something the plaintiffs' papers fail to do.  In short, the Hilsenraths do not, and

3  cannot, present facts warranting imposition of disqualification —this "drastic measure"— and

4  their motion should be dismissed.

5  **II.     BACKGROUND FACTS**

6  <u>**Latham's Former Representation of USW**</u>

7  Latham opened two client files for the entity, USW, on or about February 7, 2000.

8  *See* Declaration of Darius Ogloza ("Ogloza Decl."), ¶ 3.  On that date, "general representation"[1]

9  and "first financing" files were opened.  *Id*.  Diligent search of Latham's client intake and billing

10  records revealed no records indicating that the firm represented any entity called USW, or any

11  persons by the name of Oliver or Hana Hilsenrath at any time prior to February 2000.  *Id*.

12  Transactional attorneys, principally from Latham's New York office, began logging time to the

13  "first financing" matter immediately in February 2000.  Ogloza Decl., ¶ 4, Exh. A.  As Latham's

14  billing records show, this matter involved a standard representation of an issuer-company in a

15  contemplated IPO transaction.  Ogloza Decl.,  Exh. A.  The final billing entry on the "first

16  financing" matter was made on October 20, 2000.  Ogloza Decl., ¶ 4, Exh. A.   The attorney in

17  charge of the "first financing" transaction, Gregory Ezring, left Latham in May 2006.  Ogloza

18  Decl., ¶ 8.   None of the lawyer-time entries logged to the "first financing" matter touch upon

19  personal interests of Oliver Hilsenrath or even remotely suggest the existence of a personal

20  attorney-client relationship.  *See* Ogloza Decl., Exh. A.

21  On or about February 25, 2000, Latham opened a third file for USW, relating to

22  the Contra Costa Litigation, discussed below.  Ogloza Decl. ¶ 5.  A fourth client file for USW,

23  relating to directors and officers insurance advice, was opened on March 10, 2000.  A total of

24  only 6.9 hours were logged to this file between March 8 and March 14, 2000.  Ogloza Decl., ¶ 6.

25  Diligent search of Latham's client intake records uncovered no additional client files opened for

26  any entity known as USW or any other evidence suggesting that Latham represented USW in

27
28
___

[1]     A total of 4.7 hours of attorney time were invoiced to this miscellaneous file, including 1.9
hours between October 18 and October 26, 2000 and 2.8 hours between November 30 and
December 10, 2000.  Ogloza Decl. ¶ 6.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

2

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1    any other matters than those addressed herein.  Ogloza Decl.,  ¶ 7.

2             Diligent search of Latham's client intake records uncovered no representation

3    letters or other correspondence evidencing the existence of an attorney-client relationship

4    between Latham, on one hand, and Hana or Oliver Hilsenraths, on the other hand, no invoices for

5    legal services addressed to either Hana or Oliver Hilsenrath or any other document or record

6    evidencing the existence of an attorney-client relationship between Latham and either of the

7    Hilsenraths, except as discussed below.  Ogloza Decl., ¶ 7.

8                        **The Contra Costa Litigation**

9             Latham was engaged on February 14, 2000 to advise USW concerning certain

10   consulting agreements that the company had entered into in or around 1997 with Ryburn Limited

11   ("Ryburn") and Crossgar Limited ("Crossgar"), at the behest of Dahan and Haruvi, two

12   international consultants/investment advisors.  *See* Declaration of Gregory P. Lindstrom

13   ("Lindstrom Decl."), ¶ 3.  On or about May 9, 2000, Latham drafted a complaint on behalf of

14   USW asserting causes of action for breach of contract, rescission and fraud against Ryburn,

15   Crossgar, Dahan and Haruvi.  *Id*. at ¶ 7, Exh. A.  The complaint was filed in Contra Costa

16   Superior Court on May 22, 2000 ("the May 22, 2000 Complaint").  *Id*., ¶ 8.   Through filing of

17   the May 22, 2000 Complaint, the Latham attorney in charge, Gregory Lindstrom, understood that

18   USW was his sole client.  Lindstrom Decl.,  ¶¶ 3,6; *see also* Ogloza Decl.,  Exh. B.

19             The May 22, 2000 Complaint was never served.  Lindstrom Decl., ¶ 8.  On or

20   around May 31, 2000, shortly after the May 22, 2000 Complaint had been filed, Latham was

21   advised of the possible existence of additional claims that USW's then-CEO, Oliver Hilsenrath,

22   had against Dahan and Haruvi.  Lindstrom Decl., ¶¶ 8, 9.  Latham thereafter prepared an

23   amended complaint that was filed on June 16, 2000 ("the June 16, 2000 Complaint").  Lindstrom

24   Decl., ¶ 10.  The June 16, 2000 Complaint asserted the same causes of action as the May 22,

25   2000 Complaint as well as two additional causes of action, for fraud and unjust enrichment, on

26   behalf of newly-added plaintiff Oliver Hilsenrath against Dahan, Haruvi and two additional

27   entities allegedly under their control:  Janvrin Holdings Limited ("Janvrin") and Pelican

28   Securities & Investments, Ltd. ("Pelican").  Lindstrom Decl., ¶ 10, Exh. B.  The additional

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

3

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1    causes of action were based on investment advice and related investment services Dahan and

2    Haruvi provided to Hilsenrath in and around 1996.  *Id.*

3            U.S. Wireless' General Counsel David Klarman ("Klarman") and Corporate

4    Counsel Patricia Murphy ("Murphy") were Latham's principal contacts in the Contra Costa

5    Litigation.  Lindstrom Decl., ¶¶ 3, 15.  Latham's lead attorney had only one direct

6    communication with plaintiff Oliver Hilsenrath.  *Id.* at  ¶¶ 6, 15.  This communication occurred

7    in February 2000, before Latham learned that Hilsenrath had claims against Dahan and Haruvi.

8    *Id.*, ¶ 6.

9            Like the May 22, 2000 Complaint, the June 16, 2000 Complaint was never

10   served.  Lindstrom Decl., ¶ 11.  On or around June 30, 2000, the Nixon, Peabody law firm filed

11   three lawsuits on behalf of Crossgar, Ryburn and Janvrin, respectively, against U.S. Wireless,

12   Oliver Hilsenrath and Klarman in the Northern District of California ("Federal Litigations").

13   Latham was not retained to represent any of the parties in the Federal Litigations.  *Id.*, ¶ 11.

14   Latham's last substantive billing entry in the Contra Costa Litigation occurred on July 18, 2000.

15   *See* Ogloza Decl., Exh. B.   The case was formally dismissed on or about October 26, 2000,

16   after the Superior Court's issuance of an order to show cause.  *See* Ogloza Decl., Exh. B.

17                          **The Present Litigation**

18           On June 25, 2007, almost seven years after the Contra Costa Litigation was

19   abandoned, the Hilsenraths filed the present action against ETJL, four of its current and former

20   employees and three alleged owners/investors in ETJL — Candover, Insinger and Jardine ("June

21   25, 2007 Complaint"). [2]  *See* Compl., ¶ 29.   The June 25, 2007 Complaint alleges that

22   defendants injured the Hilsenraths in a broad international scheme, involving invasion of

23   privacy, blackmail and malicious prosecution.  *See* Compl., ¶¶ 60, 68, 70.  Specifically, the

24   June 25, 2007 Complaint alleges that defendant ETJL and individual defendants wrongfully

25   disclosed allegedly confidential Hilsenrath family financial information, in ETJL's possession by

26   virtue of certain Company Management Agreements that it had with Hilsenrath.  Compl., ¶ 61.

27   _____

28   [2]   Although referring generically to the June 25, 2007 Complaint herein, citations in this brief
       are to the Supplemented Complaint, filed on July 26, 2007.

1    The June 25, 2007 Complaint further alleges that, thereafter, between December 2000 and April

2    2001, through its "owned and operated . . . shells," Janvrin, Crossgar and Ryburn, ETJL used

3    extortion to tarnish plaintiff Oliver Hilsenrath's reputation, resulting in his termination as CEO

4    of USW in May 2001 and in his subsequent criminal prosecution.  Compl., ¶¶ 63, 64, 66.   The

5    complaint further alleges that, in March 2002 or thereabouts, ETJL caused its "shells" to

6    maliciously prosecute Hilsenrath to "cover up" the earlier "extortion."  Compl., ¶¶ 68, 73.

7    **III.    ARGUMENT**

8         **A.    Legal Standard**

9              This court applies the standards of professional conduct required of members of

10   the State Bar of California to resolve motions to disqualify counsel.  *See, e.g., Visa U.S.A., Inc.*

11   *v. First Data Corp*., 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003).   Because motions to

12   disqualify are often tactically motivated and can be disruptive to the litigation process, they are

13   considered a "drastic measure" and are disfavored.  *See Visa*, 241 F. Supp. 2d at 1104; *see also*

14   *Gregori v. Bank of America*, 207 Cal. App. 3d 291, 300-301 (Cal. Ct. App. 1989); *Universal*

15   *Bank N.A. v. Marvel*, 251 B.R. 869, 871 (Bankr. D. Cal. 2000) (same).  Because of the potential

16   for abuse, disqualification motions are subject to strict judicial scrutiny. *Optyl Eyewear Fashion*

17   *Int'l Corp v. Style Co.*, 760 F.2d 1045, 1051 (9th Cir. 1985); *see also Synergy Tech & Design,*

18   *Inc. v. Terry,* 2007 U.S. Dist. LEXIS 34463 at *19 -*22 (N.D. Cal. 2007).   The California Rules

19   of Professional Conduct prohibit the representation of a client if, in the former representation of

20   another client, the attorney obtained confidential information material to the current

21   employment.  Cal. Rules Prof. Conduct, Rule 3-310(E).

22        **B.    The Hilsenraths Do Not, and Cannot, Show that Latham Possesses Material**

23   **Confidential Information**

24              A former client may seek to disqualify former counsel from representing an

25   adverse party by showing that the former attorney actually possesses confidential information

26   material to the current representation.  *See H.F. Ahmanson & Co. v. Salomon Bros.*, 229 Cal.

27   App. 3d, 1445, 1452 (Cal. Ct. App. 1991).  The Hilsenraths' attempt to make this showing is

28   grossly inadequate.

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

5

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1    The only specific evidence they cite in their moving papers, excerpted USW

2   Board minutes from March 2000, is immaterial.  The Board minutes memorialize Latham's

3   communications with USW concerning matters of relevance solely to USW, not to Hilsenrath.

4   The minutes have no bearing on the personal claims the Hilsenraths assert in the present action.

5   Unable to identify material confidential information allegedly in its possession, plaintiffs vaguely

6   contend that Latham was provided with "relevant documentation" related to the dispute against

7   "Janvrin, Ryburn, and Crossgar."  Motion to Disqualify Latham & Watkins at 3 (filed August 8,

8   2007).   However, nowhere in their papers do they identify: (i) what confidential information

9   Latham received; (ii) from whom, and under what circumstances, did Latham receive this

10   confidential information; (iii) when Latham received any confidential information; or (iv)

11   importantly, how this confidential information is material to Latham's representation of any of

12   the defendants in this case.

13    Directed by this Court to supplement their plainly inadequate showing, plaintiffs

14   attached five exhibits to their September 12, 2007 submission— (i) the May 22, 2000 Complaint;

15   (ii) a civil cover sheet; (iii) an unauthenticated and undated "outstanding outside counsel

16   invoices" summary of unknown origin and authorship; (iv) an IPO working group list dated

17   February 2000; and (v) a standard opinion letter from Latham dated march 13, 2000 relating to

18   USW's authority to issue stock.  None of this evidence even remotely suggests that Latham came

19   into possession of any confidential *Hilsenrath* information, much less any confidential Hilsenrath

20   information that is *material* to plaintiffs' personal claims against any of the defendants in this

21   case.  In short, plaintiffs fall woefully short of meeting their burden to show that Latham actually

22   possesses material confidential information of the Hilsenraths as a result of its former

23   representation of Oliver Hilsenrath.

24    C.    **The Claims Asserted by Hilsenrath in the Contra Costa Litigation Are Not**

25   **Substantially Related to the Present Case**

26    In the absence of proof that the former attorney possesses material confidential

27   information, California law permits attorneys to represent interests adverse to the former client

28   unless the former client can show that a "substantial relationship" exists between the former

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

6

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1  representation and the current representation, or "when it appears by virtue of the nature of the

2  former representation or the relationship of the attorney to his former client confidential

3  information material to the current dispute would normally have been imparted to the attorney."

4  *Goldberg v. Warner/Chappell Music, Inc.*, 125 Cal. App. 4th 752, 759 (Cal. Ct. App. 2005).  The

5  courts consider three factors in analyzing whether representations are substantially related: (1)

6  the similarities between the two factual situations; (2) the legal questions posed; and (3) the

7  nature and extent of the attorney's involvement with the cases.  *See, e.g., San Gabriel Basin*

8  *Water Quality Auth. v. Aerojet-General Corp.*, 105 F. Supp. 2d 1095, 1104 (C.D. Cal. 2000).

9  The Hilsenraths do not, and cannot, explain how two litigation matters that (i) involve

10  fundamentally different claims; (ii) seek relief for completely different injuries; (iii) spring from

11  events that took place at different times; and (iv) arose from the alleged misconduct of different

12  parties qualify as "substantially related" under any meaningful application of this test.

13          1.      The Cases Involve Different Facts

14          To the extent it involved his personal interests, the Contra Costa Litigation arose

15  from allegedly fraudulent investment advice that Hilsenrath received from two fellow-Israeli

16  investment advisors, Dahan and Haruvi, in 1996.  Lindstrom Decl., ¶ 10, Exh. B.  In that case,

17  Hilsenrath sought damages and other equitable relief because of his having been fraudulently

18  induced by Dahan and Haruvi to part with $100,000 in cash and stock in a privately-held

19  company.   Although two additional co-defendants are named, the June 16, 2000 Complaint is

20  clear that these entity defendants appear in the lawsuit solely because they were believed to be

21  holding the assets that Hilsenrath had sought to recover as a result of Dahan and Haruvi's alleged

22  fraud.  Nowhere does the June 16, 2000 Complaint assert any claims against ETJL or as to any

23  *defendant* in the present case; nor does it even allude to the alleged complicity of any current

24  defendant in Dahan and Haruvi's alleged wrongdoing.  The June 16, 2000 Complaint makes no

25  mention of any international conspiracy to tarnish the Hilsenraths' reputations, of any allegedly

26  wrongful disclosure of confidential Hilsenrath family information or of any alleged misuse of the

27  wrongfully disclosed information.  In fact, as the June 25, 2007 Complaint makes clear, the

28  misconduct that's at the heart of the present case did not begin until December 2000 and,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

7

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1  accordingly, it could not logically have been a subject of the June 16, 2000 Complaint.[3]  *See*

2  Compl., ¶ 63.  In short, the subject matters of the June 16, 2000 and June 25, 2007 Complaints

3  could not be more different.

4          The sole alleged point of *factual* similarity cited by the Hilsenraths is the mention

5  in the June 25, 2007 Complaint of three entities— Janvrin, Crossgar and Ryburn—that have the

6  same names as three of the four entity defendants named in the June 16, 2000 Complaint.  Rather

7  than expose a point of material factual similarity, comparison of the Complaints' allegations

8  concerning these entities confirms how different these lawsuits really are.

9          The entities identified in the June 16, 2000 Complaint are alleged to have been

10  under the control of defendants Dahan and Haruvi at all times relevant to that action.  *See*

11  Lindstrom Decl., ¶¶ 9, 10, Exh. B.  The June 16, 2000 Complaint does not allege any facts

12  suggesting that any of these entities acted independently of Dahan or Haruvi.  In fact, their only

13  relevance in that action was that they received assets that Dahan and Haruvi had transferred to

14  them.  *See id.*  Whether any of these entities actually came into possession of any such assets has

15  no relevance to the June 25, 2007 Complaint.  In contrast, the June 25, 2007 Complaint alleges

16  that the three "shell" entities, "Janvrin et al.," were "set up, owned, financed  and operated" by

17  ETJL at times relevant to the present action.  *See* Compl., ¶¶ 10, 11.  The June 25, 2007

18  Complaint repeatedly alleges that the entities committed tortious acts against the Hilsenraths

19  *while under ETJL's control.  See, e.g.,* Compl., ¶ 10, 11.  In short, the entities named in the June

20  16, 2000 Complaint and those referenced in the June 25, 2007 Complaint have nothing in

21  common other than their names and places of incorporation, as they allegedly were acting at the

22  behest of different principals at different times in the two litigations.

23          At bottom, the Hilsenraths' business dealings with ETJL—the heart of the present

24  case—were not in issue in the Contra Costa Litigation.  In fact, none of the Hilsenraths' financial

25  dealings (apart from Oliver Hilsenrath's 1996 dealings with Dahan and Haruvi) were put in issue

26  through the June 16, 2000 Complaint.   Accordingly, Latham had no opportunity to come into

27

28

___

[3]   The June 25, 2007 Complaint does not contain any specific factual allegations supporting the
occurrence of any allegedly tortious conduct preceding the December 2000 timeframe.  *See*
Compl., ¶ 63.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
Case Number: C-07-3312 CW
8
DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1  possession of confidential information material to the dispute in this case.[4]

2          2.      The Cases Involve Different Legal Issues

3          The only material issues presented in the Contra Costa Litigation, as they

4  pertained to Hilsenrath's personal claims, were as follows: (i) whether Dahan and Haruvi were

5  properly licensed under Israeli law to provide investment advice to Hilsenrath; (ii) whether they

6  provided investment advice to Hilsenrath as promised under their contract; (iii) whether

7  Hilsenrath had the right to rescind the agreement he made with Dahan and Haruvi based on

8  defects in their license status and/or performance; and (iv) if Dahan and Haruvi were liable for

9  fraud, whether a constructive trust could be imposed on assets in the possession of Pelican and

10  Janvrin that were traceable to Dahan and Haruvi. *See* Lindstrom Decl., ¶ 10, Exh. B. None of

11  these legal issues has the slightest relevance to the instant case, which involves ETJL's alleged

12  tortious disclosure of confidential Hilsenrath family financial information in or around December

13  2000 and the alleged subsequent misuse of such information. *See* Cmpl., ¶¶ 59-62. *See, e.g.,*

14  *Kirk Corp v. First American Title Co.*, 220 Cal. App.3d 804, 813 (Cal. Ct. App. 1990) (the fact

15  that one member of the law firm representing the defendant had once assisted the plaintiffs in

16  preparing a declaration of covenants, conditions and restrictions for the same condominium

17  project involved in the current litigation not sufficient grounds for disqualification).

18          3.      Latham's Limited Involvement Refutes the Contention That Confidential

19  Information Would Normally Have Been Imparted

20

---

21  [4]  Nor can it be argued that Latham came into possession of material confidential information *from Hilsenrath in the course of a former representation*. All of the facts underlying the

22  June 16, 2000 Complaint's allegations concerning USW's consulting agreements with Crossgar and Ryburn appeared in the predecessor May 22, 2000 Complaint, which was

23  drafted and filed before any attorney-client relationship was formed between Oliver Hilsenrath and Latham. Moreover, the evidence is uncontested that Latham's lead litigator

24  never spoke to Hilsenrath after Latham was apprised of Hilsenrath's personal claims against Dahan and Haruvi. *See* Lindstrom Decl., ¶¶ 6, 15. Despite being given the opportunity to do

25  so, the Hilsenraths have presented no evidence suggesting that either of them ever spoke to any of the other attorneys involved in preparing the June 16, 2000 Complaint after the

26  attorney-client relationship came into existence. Latham's billing records confirm the absence of any such communications. *See* Ogloza Decl., Exh. B. In any event, as shown in

27  the text, any information that Hilsenrath could have shared concerning his dispute with Dahan and Haruvi, or concerning Dahan and Haruvi's relationship with Janvrin as of the

28  time of drafting of the June 16, 2000 Complaint would have been immaterial to the present case.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

9

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1    California law recognizes a distinction "for disqualification purposes between

2  lawyers who become heavily involved in the facts of a particular matter and those who enter

3  briefly on the periphery." *H.F. Ahamanson*, 229 Cal. App. 3d at 1457. This involves an

4  examination of "the time spent by the attorney on the earlier cases, the type of work performed,

5  and the attorney's exposure to formulation of policy or strategy." *Dieter*, 963 F. Supp. 908, 912

6  (E.D. Cal. 1997).

7    The limited nature and extent of Latham's involvement in representing Hilsenrath

8  further negates the existence of any disqualifying substantial relationship between the two

9  representations. *Dieter*, 963 F. Supp. at 912. (concluding that disqualification is inappropriate if

10  an attorney's participation in the former representation was "peripheral"). Because its

11  representation of Hilsenrath in the Contra Costa Litigation ended virtually at its inception,

12  Latham simply had no opportunity to gain access to *any* broad policy or strategy, much less any

13  policy or strategy relevant to the present dispute. *See O'Neill v. Globespan, Inc.*, 2001 U.S. Dist.

14  LEXIS 23113 at *23 (C.D. Cal. 2001) (rejecting motion to disqualify where there was no

15  evidence that attorneys had "considerable exposure" to former client's litigation policies and

16  strategies); *see also In re Marriage of Zimmerman*, 16 Cal. App. 4th 556, 564-65 (Cal. Ct. App.

17  1993) (finding no basis for disqualification where attorney was consulted about the same action

18  because she merely "engaged in a preliminary consultation," and was not "called upon to

19  formulate a legal strategy and . . . could not have gained detailed knowledge of the pertinent facts

20  and legal principles").

21    In a transparent attempt to establish some relationship to Latham's current

22  representation, the Hilsenraths' supplemental submission contends that Latham continued to

23  represent Hilsenrath (and USW) during the months leading to the USW Board's firing of Oliver

24  Hilsenrath—a time period identified in the June 25, 2007 Complaint as covering December 2000

25  through May 2001. Compl., ¶¶ 63, 66. In this respect, the Hilsenraths stray beyond hyperbole

26  and veer into deception. As its billing records and the Lindstrom Declaration show, Latham's

27  representation of both USW and Oliver Hilsenrath in the Contra Costa Litigation ended *for all*

28  *practical* purposes in July 2000 and formally terminated in October 2000. Ogloza Decl., Exh. B;

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

10

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1   Lindstrom Decl., ¶ 12.  Latham's work on the First Financing Transaction —even if this

2   corporate representation had any relevance to this motion, which is not the case— also appears to

3   have ended in late October 2000.  *See* Ogloza Decl., Exh. A.   Thus, the Hilsenraths' claim that

4   Latham continued to represent USW and Hilsenrath in the Federal Litigations (supported solely

5   by the unauthenticated, undated and wholly unreliable Exhibit 3 to their supplemental

6   submission) is simply false, as is their contention that the First Financing Transaction continued

7   into the 2001 time frame.[5]

8           **D.      The Hilsenraths' Reliance on Latham's Representation of USW is Misplaced**

9               The Hilsenraths improperly contend that disqualification should be premised on

10  Latham's representation of USW in the First Financing Transaction.   All of the evidence they

11  submit assumes this to be true.  Their position is contrary to established law.

12              An attorney may not be disqualified from representing a party on the ground that

13  he or she formerly represented an adverse party absent a showing that an attorney-client

14  relationship existed between the attorney and the complaining party.  *See In re Marriage of*

15  *Zimmerman*, 16 Cal. App. 4th at 563.  The party moving for disqualification bears the burden of

16  proving the existence of the attorney-client relationship.  *Koo v. Rubio's Restaurant, Inc.*, 109

17  Cal. App. 4th 719, 729 (Cal. Ct. App. 2003).  Where the former client is a corporation, the

18  attorney does not represent any corporate constituencies, such as shareholders, directors or

19  employees, by virtue of the corporate representation.  *See Meehan v. Hops*, 144 Cal. App. 2d

20  284, 290 (Cal. Ct. App. 1956).  Even though an attorney typically deals with the "organization's

21  directors, officers, employees, members, shareholders, or other constituents" in the course of his

22  or her  representation of the corporation, these actors are not clients of the attorney.  Rules Prof.

23  Conduct 3-600(D).   Accordingly, the "attorney owes undivided allegiance only to the corporate

24  entity which he or she represents rather than any affiliated persons or entities."  *Brooklyn Navy*

25  
    _____

26  [5]   This fact would be irrelevant if true for the reasons explained in Section D *infra*.  It is also
          irrelevant because the fact that an attorney from Latham might be called to testify at trial

27        does not present an ethical conflict for the firm under California law.  *See* Cal. Rules Prof.
          Conduct, Rule 5-210.  *See also Yee v. Ventus Capital Services, et al.*, 2006 U.S. Dist. LEXIS

28        81073 at *2  (N.D. Cal. 2006) ("Rule 5-210 is not intended to apply to circumstances in
          which a lawyer in an advocate's firm will be a witness").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

11

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY

1    *Yard Cogeneration Partners v. Superior Court*, 60 Cal. App. 4th 248, 254 (Cal. Ct. App. 1997).

2    The fact that an attorney's representation of a corporation may benefit a shareholder is of no

3    moment.  *See Meehan*, 144 Cal. App. 2d at 293 (concluding that shareholders who benefit from

4    attorney's representation of corporation cannot reasonably assume that attorney represents them).

5    Information that may have been provided by Hilsenrath in his capacity as CEO to assist Latham

6    in its representation of USW would not establish Hilsenrath as a client.  *See id.* at 290 (finding no

7    client-attorney relationship between the officer in his individual capacity where the former

8    officer had disclosed information he as an officer was required to disclose).

9          The scant supporting evidence presented in plaintiffs' papers is, upon

10   examination, drawn exclusively (or virtually so) from Latham's representation of USW.  None of

11   plaintiffs' evidence tends to show the existence of an attorney-client relationship between

12   Hilsenrath and Latham.  Latham's own billing records confirm that the First Financing

13   Transaction was a corporate representation.  Ogloza Decl., Exh. A.  The billing records, along

14   with the Lindstrom Declaration, confirm that Latham's representation of Hilsenrath in the Contra

15   Costa Litigation lasted between approximately May 31, 2000 through July 18, 2000 and certainly

16   no later than October 26, 2000.  Ogloza Decl., Exh. B; Lindstrom Decl., ¶ 12.   The Hilsenraths'

17   reliance on any communications, facts or circumstances drawn from outside this time period is

18   misplaced.  What information Latham came into possession as a result of its representation of

19   USW is simply irrelevant to the instant motion.

20   **IV.    CONCLUSION**

21          For the foregoing reasons, the Court should deny plaintiffs' motion to disqualify.

22

23   Dated: September 19, 2007

24                                          Respectfully Submitted,

25                                          LATHAM & WATKINS LLP

26

27                                          By  /s/ Darius Ogloza
                                            ATTORNEYS FOR ETJL, CAROLINE
28                                          BOUGEARD, GRANT BROWN

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C-07-3312 CW

12

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY