1  LATHAM & WATKINS LLP
     Peter A. Wald (Bar No. 85705)
2    peter.wald@lw.com
     Darius Ogloza (Bar No. 176983)
3    darius.ogloza@lw.com
     Sarah M. Ray (Bar No. 229670)
4    sarah.ray@lw.com
     Katie Y. Chang (Bar No. 246247)
5    katie.chang@lw.com
   505 Montgomery Street, Suite 2000
6  San Francisco, California  94111-2562
   Telephone:  +415.391.0600
7  Facsimile:  +415.395.8095

8  Attorneys for Defendants
   EQUITY TRUST (JERSEY) LIMITED,
9  CAROLINE BOUGEARD AND GRANT BROWN

10                    UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12

13

14  HANA HILSENRATH AND OLIVER          CASE NO. C-07-3312 CW
    HILSENRATH,
15                                      DECLARATION OF GREGORY P.
             Plaintiffs,               LINDSTROM IN SUPPORT OF
16                                      DEFENDANTS EQUITY TRUST (JERSEY)
        v.                             LIMITED, CAROLINE BOUGEARD AND
17                                      GRANT BROWN'S OPPOSITION TO
    EQUITY TRUST (JERSEY) LIMITED,      PLAINTIFFS' MOTION TO DISQUALIFY
18  CANDOVER INVESTMENTS PLC,           COUNSEL
    INSINGER DE BEAUFORT HOLDINGS
19  S.A., JARDINE MATHESON HOLDINGS     Date:    N/A
    LIMITED, GRANT BROWN, MELVYN        Time:    N/A
20  KALMAN, JOHN PERKINS, CAROLINE      Place:   Courtroom 2, 4th Floor
    BOUGEARD, AND DOES 1-10,            Judge:   Honorable Claudia Wilken
21
             Defendants.               Complaint Filed:  June 25, 2007
22

23

24           I, GREGORY P. LINDSTROM, declare as follows:

25           1.  I am an attorney licensed to practice with the courts of the State of California.

26  I am admitted to the bar of this Court.  I am a partner with the law firm of Latham & Watkins

27  LLP ("Latham").  Though I have had no involvement in the above-captioned case, I understand

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DECLARATION OF GREGORY P. LYNDSTROM IN SUPPORT OF
DEFENDANT EQUITY TRUST (JERSEY) LIMITED'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

1    that Latham is counsel of record for Defendants Equity Trust (Jersey) Limited, Caroline

2    Bougeard ("Bougeard"), and Grant Brown ("Brown") in this matter. I have personal knowledge

3    of the facts set forth below and if called as a witness could and would testify competently

4    thereto.

5            2.   I have been a litigator at Latham since 1978 and a partner since 1986. I have

6    held a number of management positions at Latham including a seven-year tenure as Managing

7    Partner of the San Francisco office. My practice focuses on complex litigation matters,

8    principally involving antitrust and unfair business practices. I have tried some 30 lawsuits and

9    am a Fellow of the American College of Trial Lawyers.

10   **A.      Representation of U.S. Wireless**

11           3.   My involvement with U.S. Wireless commenced on or around February 14,

12   2000, when I was contacted by my fellow law partner Christopher Kaufman regarding a potential

13   litigation matter for U.S. Wireless, Inc. ("U.S. Wireless"), a client of the firms for which the firm

14   was then preparing a financing transaction. The first direct client contact with U.S. Wireless that

15   I can recall came during a February 23, 2000 initial meeting with its General Counsel David

16   Klarman ("Klarman"), at which we were requested to undertake the representation of U.S.

17   Wireless in a dispute that was then pending between the company and two consultants. These

18   consultants, David Dahan ("Dahan") and Haim Haruvi ("Haruvi"), through companies they

19   controlled had acquired options to purchase U.S. Wireless stock, which they were then seeking

20   to exercise. My understanding at that time was that our client was solely U.S. Wireless and not

21   any of its individual directors, officers or employees.

22           4.   I understand that Hilsenrath has referenced in a pleading filed with the Court

23   advice I provided to the U.S. Wireless Board in March 2000. So there is no misunderstanding,

24   as outside counsel to U.S. Wireless on this matter, I wrote a letter to the U.S. Wireless Board of

25   Directors with our assessment of U.S. Wireless' potential claims against those persons who at the

26   time were provisionally identified as potential defendants in the case. This advice was for the

27   benefit of U.S. Wireless and not any individual officer or director in their personal capacity.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DECLARATION OF GREGORY P. LINDSTROM IN SUPPORT OF
DEFENDANT EQUITY TRUST (JERSEY) LIMITED'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

1    ///

2    **B.    The Initial Complaint**

3    5.  On or about March 24, 2000, we began preparing a complaint seeking

4 rescission of the option agreements that were then in existence between U.S. Wireless and

5 Crossgar and Ryburn, the two entities with whom the company entered into contractual relations

6 at the behest of Dahan and Haruvi.  Two associates, Nicole Jaeger ("Jaeger") and Will Fitton

7 ("Fitton"), worked with me on this project.

8    6.  At no time during the drafting of the initial complaint did I solicit or receive

9 any personal confidential information from Hilsenrath.  Any such information would have been

10 in no way relevant to our representation of U.S. Wireless.  In fact, our contacts with U.S.

11 Wireless during this project were almost entirely through David Klarman, along with newly

12 retained Corporate Counsel Patricia Murphy ("Murphy").  I have reviewed the billings from

13 Latham's representation of U.S. Wireless on this project, including those of Fitton and Jaeger,

14 and Hilsenrath's name appears only once, as a participant on a telephone conference on February

15 25, 2000 with Klarman and me.  This is consistent with my recollection that I had only one

16 conversation with Hilsenrath, which was in his capacity as CEO of U.S. Wireless and pertained

17 only to the issues raised in the initial complaint.  At no point in this conversation did we discuss

18 any personal information of Oliver or Hana Hilsenrath, including, without limitation, any

19 information related to the complaint in the present case.

20    7.  On or about May 9, 2000, we completed a draft of a complaint setting forth

21 causes of action for breach of contract, rescission and fraud arising out of the alleged failure of

22 Dahan and Haruvi to perform under the consulting agreements.  The complaint alleged that

23 Dahan and Haruvi entered into consulting service agreements through Ryburn and Crossgar with

24 U.S. Wireless in January 1997 and that neither Ryburn and Crossgar/Dahan and Haruvi ever

25 performed any of the services promised under the consulting agreements.  The Complaint sought

26 damages of $2,000,000 and rescission of both the consulting agreements and the options

27 agreements for 1,200,000 shares entered into with Ryburn and Crossgar.  A true and correct copy

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DECLARATION OF GREGORY P. LINDSTROM IN SUPPORT OF
DEFENDANT EQUITY TRUST (JERSEY) LIMITED'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

1    of that complaint is attached hereto as Exhibit A.

2        8.   The complaint was filed in Superior Court of the State of California, County

3    of Contra Costa on May 22, 2000.  However, it was never served on any defendant because the

4    complaint quickly became overtaken by events.

5        **C.    The Amended Complaint**

6        9.   Specifically, on or around May 31, 2000, we learned of another issue

7    involving Dahan's and Haruvi's attempted sale of U.S. Wireless stock that they had acquired in

8    the name of yet a third entity, Janvrin Holdings Limited ("Janvrin").  We learned that these

9    additional U.S. wireless shares were the result of grants previously made to Dahan and Haruvi by

10   U.S. Wireless CEO Hilsenrath.  Accordingly, there appeared to be no privity of contract between

11   U.S. Wireless on the one hand, and Dahan, Haruvi or Janvrin on the other hand, as to these

12   shares of stock.

13       10. At U.S. Wireless' request, and to establish a legal nexus between the company

14   and Dahan, Haruvi or Janvrin as to these shares, we began preparing an Amended Complaint to

15   name Hilsenrath as a party plaintiff in two additional causes of action against Dahan and Haruvi

16   and two new entities, Janvrin and Pelican.  Specifically, the First Amended Complaint alleged

17   that Dahan and Haruvi had not provided contracted investment advice to Hilsenrath, and were

18   not properly licensed under Israeli law to provide investment advice, and that Hilsenrath had the

19   right to rescind the agreement and impose a constructive trust on the stock and cash Dahan had

20   placed into Janvrin and Pelican, respectively, by virtue of the wrongdoing by Dahan and Haruvi.

21   This amended complaint was filed on June 16, 2000; however, it was never served on any

22   defendant.  A true and correct copy of that complaint is attached hereto as Exhibit B.

23       **D.    Termination of Representation**

24       11. Before we could serve the First Amended Complaint, we learned that other

25   cases were filed in federal court against U.S. Wireless and Hilsenrath and Klarman on June 30,

26   2000, on behalf of some of the same entities named in the First Amended Complaint.  We were

27   not retained to defend U.S. Wireless or Hilsenrath or Klarman in those actions.

28

4

1        12. My active representation of U.S. Wireless ended in substance on or around

2    July 18, 2000, when U.S. Wireless made the decision not to proceed with service of process of

3    the First Amended Complaint, to abandon the state court litigation, and to instead litigate in the

4    federal court proceeding using other counsel. Based on my review of the Latham billing records,

5    it appears that our entire team's substantive work ended on or about that date.

6        13. Finally, in response to the Superior Court's order to show cause with respect

7    to failure to file proof of service and to appear at the Case Management Conference, Latham

8    filed a request for dismissal on or around October 26, 2000.

9    **E.    Communications with Hilsenrath**

10       14. To the best of my recollection, Hilsenrath's personal financial matters, other

11   than his dealings with Dahan and Haruvi in 1996 which resulted in the transfer of stock and cash

12   to Janvrin and Pelican, were not at issue in the First Amended Complaint. I did not inquire, nor

13   did I learn of any of Hilsenrath's personal financial matters during the drafting of the First

14   Amended Complaint. At no time did any of Hilsenrath's dealings with any of Latham's clients

15   in the present case arise, nor logically should they have in light of the narrow issues addressed in

16   the First Amended Complaint.

17       15. I understood our representation of Hilsenrath in the drafting of the First

18   Amended Complaint to be incidental to our representation of U.S. Wireless, our primary client.

19   In fact, even though Hilsenrath was named as a party plaintiff in the First Amended Complaint,

20   Hilsenrath was never personally invoiced for our services. U.S. Wireless was invoiced for all

21   aspects of this representation. Moreover, the preparation of the First Amended Complaint

22   followed the same general procedure we used in drafting the original complaint. Specifically,

23   Klarman and/or Murphy were our principal contacts during these periods. In fact, I do not recall

24   speaking to Hilsenrath personally during the entire timeframe that the First Amended Complaint

25   was being drafted. Based on my review of Latham's billing records, it appears that this was also

26   true of my team members Fitton and Jaeger. I must rely on their billing records, as they both left

27   the firm in 2002.

28

DECLARATION OF GREGORY P. LINDSTROM IN SUPPORT OF
DEFENDANT EQUITY TRUST (JERSEY) LIMITED'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

1    16. In summary, the only conversation that I remember having with Oliver

2  Hilsenrath occurred in his capacity as CEO of U.S. Wireless in February 2000. (See ¶6, above).

3  I have had no contact with Hilsenrath, Klarman, Murphy or U.S. Wireless since my involvement

4  ended some seven years ago in July, 2000.

5    I declare under penalty of perjury that the foregoing is true and correct. Executed

6  at San Francisco, California on August 31, 2007.

7

8

9    Gregory P. Lindstrom

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DECLARATION OF GREGORY P. LINDSTROM IN SUPPORT OF
DEFENDANT EQUITY TRUST (JERSEY) LIMITED'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

**EXHIBIT A**

COPY

1   LATHAM & WATKINS
       Gregory P. Lindstrom (Bar No. 082334)
2      Will B. Fitton (Bar No. 0182818)
    505 Montgomery Street, Suite 1900
3   San Francisco, California 94111-2562
    Telephone: (415) 391-0600
4   Facsimile: (415) 395-8095

5   Attorneys for Plaintiff
    U.S. WIRELESS CORPORATION

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF CONTRA COSTA

10

11  U.S. WIRELESS CORPORATION,          CASE NO. **C00·02084**

12              Plaintiff,

13       v.                              **COMPLAINT FOR (1) BREACH OF
                                         CONTRACT; (2) RESCISSION OF
14  RYBURN LIMITED, a British Virgin Islands   CONTRACT BASED ON FAILURE OF
    corporation, CROSSGAR LIMITED, a    CONSIDERATION; (3) RESCISSION OF
15  British Virgin Islands corporation, DAVID   CONTRACT BASED ON FRAUD; (4)
    DAHAN, HAIM HARUVI, and DOES 1      FRAUD; AND (5) DECLARATORY RELIEF**
16  THROUGH 20,
                                         **JURY TRIAL DEMANDED**
17              Defendants.

18

19          Plaintiff U.S. WIRELESS CORPORATION hereby alleges and complains as

20  follows:

21                         **GENERAL ALLEGATIONS**

22          1.    Plaintiff U.S. Wireless Corporation ("U.S. Wireless") is a corporation

23  organized and existing under the laws of Delaware with its principal place of business located at

24  2303 Camino Ramon, San Ramon, Contra Costa County, California.

25          2.    Defendant Ryburn Limited is a corporation organized and existing under the

26  laws of the British Virgin Islands with its principal place of business in Matheson Trust Bank,

27  P.O. Box 316, Jardine House, 1 Wesley Street, St. Helier, Jersey JE4 8UD, Channel Islands.

28

                                    1

---

**FILED**

2000 MAY 22  P 3:44

K. TORRE, CLERK OF THE SUPERIOR COURT
                                P. ARNOLD

PER LOCAL RULE 5 THIS
CASE IS ASSIGNED TO
DEPT _____

**SUMMONS ISSUED**

1    3.    Defendant Crossgar Limited is a corporation organized and existing under

2    the laws of the British Virgin Islands with its principal place of business in Matheson Trust

3    Bank, P.O. Box 316, Jardine House, 1 Wesley Street, St. Helier, Jersey JE4 8UD, Channel

4    Islands.

5    4.    Upon information and belief, Plaintiff alleges that Defendant David Dahan

6    is an adult individual whose last known principal residence is at 25/196 Ben Yehuda Street,

7    Binian Migdalot, Tel-Aviv, Israel 63807.

8    5.    Upon information and belief, Plaintiff alleges that Defendant Hiam Haruvi

9    is an adult individual whose last known principal residence is at 14/8 Rekanati, Ramat-Aviv

10   Gimel, Tel-Aviv, Israel 69494.

11   6.    Defendants Does 1 through 20 were at all times relevant herein agents

12   and/or employees of Defendants.  Plaintiff is ignorant of the true names and capacities of

13   Defendants sued herein as Does 1 through 20 and has therefore sued those Defendants by such

14   fictitious names.  Plaintiff believes and thereon alleges that each of these fictitiously named

15   Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's

16   injuries as herein alleged were proximately caused by the aforementioned Defendants.  Plaintiff

17   will seek leave of court to amend this complaint to allege their true names, once they are

18   ascertained.

19   7.    At all times herein mentioned, each of the Defendants was the agent and/or

20   employee of each of the remaining Defendants and, in doing the things hereinafter alleged, was

21   acting within the course and scope of such agency and employment.  Plaintiff is informed and

22   believes, and thereon alleges that each of the Defendants herein consented to, ratified, and

23   authorized the acts alleged herein.

24   8.    As more fully set forth below, the parties to this action entered into written

25   contracts pursuant to which they agreed that such contracts, and all rights and obligations

26   thereunder, would be governed by the laws of the State of Delaware.  They also entered into

27   written option agreements pursuant to which they agreed that they would be subject to personal

28   jurisdiction in California and that venue for any proceeding or claim arising out of said

2

1   agreements shall be brought and enforced in a state court having jurisdiction over the San

2   Francisco Bay Area.

3          9.    In January 1997, U.S. Wireless engaged Defendants David Dahan and Haim

4   Haruvi to provide certain consulting services through two corporations, Ryburn Limited

5   ("Ryburn") and Crossgar Limited ("Crossgar"), by way of Consulting Agreements. The

6   consulting services ("Consulting Services") were to include introductions to potential customers,

7   facilitating industry contacts and relationships, initiating strategic alliances and joint venture

8   opportunities, as well as providing investment banking, investor relations and general business

9   advisory services (i.e., securities investment advice). Both Defendants Dahan and Haruvi

10   represented to U.S. Wireless that they were international investment advisors, with clients

11   through the world and that they were well known within the institutional community. Defendants

12   advised Plaintiff that they would initiate meetings and facilitate relationships with institutional

13   investors and securities industry analysis, with a goal of enabling Plaintiff to obtain widespread

14   exposure and support from the financial community.

15         10.   As compensation for the anticipated Consulting Services, Ryburn and

16   Crossgar were granted options to purchase 1,000,000 shares and 200,000 shares, respectively, of

17   U.S. Wireless common stock, pursuant to the terms and conditions of option agreements.

18         11.   Prior to May 1996, Israel enacted securities laws mandating that all persons

19   who engaged in activities as securities investment advisor must obtain a license by passing

20   written examinations and meeting certain personal ethical standards. Upon information and

21   belief, Plaintiff alleges that no Defendant in this matter had the requisite license to act as a

22   securities investment advisor during the period of time covered by the Consulting Agreements.

23         12.   Upon information and belief, Dahan and Haruvi were convicted in Israel of

24   violations of Israeli securities laws for activities commencing in 1988 and were required to serve

25   time in prison, for which the Defendants provided six months of full-time community service,

26   during the term of the Consulting Agreements.

27

28

3

1    13.    No Defendants ever provided any of the Consulting Services required under

2    the Consulting Agreements to U.S. Wireless during the term of the agreements.  On January 1,

3    2000, the Ryburn and Crossgar Consulting Agreements expired.

4
**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT)**
5

6    14.    Plaintiff re-alleges and incorporates herein paragraphs 1 through 13 above.

7    15.    On or about January 1, 1997, Plaintiff and Defendants herein entered into

8    written Consulting Agreements.

9    16.    As consideration for the services to be provided under said Consulting

10   Agreements, Plaintiff entered into option agreements ("Option Agreements") with Defendants

11   Ryburn and Crossgar for the purchase of U.S. Wireless Corporation's common stock.

12    17.    Defendants failed and refused to provide any Consulting Services to

13   Plaintiff as obligated under the Consulting Agreements in breach of those Agreements.

14    18.    At the time Defendants failed to perform their obligations, Plaintiff had

15   performed all conditions, covenants and promises required on its part to be performed and was

16   ready, able and willing to complete any additional performance on its part in accordance with the

17   terms and conditions of the Consulting Agreements and the Option Agreements.

18    19.    As a result of Defendants' failure to perform and breach of the Consulting

19   Agreements, upon information and belief, Plaintiff has been damaged at least in the amount of

20   $1,000,000.  Plaintiff will amend this complaint to state the precise amount of damages when it

21   is ascertained.

22    20.    Defendants' performance under the Consulting Agreements is a condition to

23   Plaintiff's obligation to perform under the Options Agreements.  Defendants' failure to perform

24   under and breach of the Consulting Agreements has excused Plaintiff's further performance

25   under the Option Agreements.

26    21.    Plaintiff is entitled to the recovery of reasonable attorneys' fees incurred in

27   this action pursuant to Paragraph 12 of the Consulting Agreements.

28

## SECOND CAUSE OF ACTION
### (RESCISSION BASED ON FAILURE OF CONSIDERATION)
#### Cal. Civ. Code § 1689

22.  Plaintiff re-alleges and incorporates herein paragraphs 1 through 21 above.

23.  As set forth herein, on or about January 1, 1997, Plaintiff and Defendants entered into Consulting Agreements whereby Defendants agreed to provide Consulting Services. As consideration for said services, Plaintiff entered into Option Agreements granting Defendants options to purchase U.S. Wireless stock.

24.  Plaintiff has at all times performed the terms of the Consulting Agreements in the manner specified by those Agreements, specifically by entering into the Option Agreements.

25.  There has been a material failure in the consideration received by Plaintiff, in that Defendants totally failed to perform and were without capacity, capability and/or legal ability to perform the bargained-for Consulting Services.

26.  As a result of this failure of consideration, Plaintiff has been deprived of the benefits of its bargain.

27.  Service of this complaint constitutes notice of rescission of the Consulting Agreements and Option Agreements and an offer to restore benefits received, as provided under § 1691 of the California Civil Code.

## THIRD CAUSE OF ACTION
### (RESCISSION BASED ON FRAUD)
#### Cal. Civ. Code §§ 1572 & 1689

28.  Plaintiff re-alleges and incorporates herein paragraphs 1 through 27 above.

29.  As set forth herein, on or about January 1, 1997, Plaintiff and Defendants entered into Consulting Agreements whereby Defendants agreed to provide Consulting Services. As consideration for said services, Plaintiff entered into Option Agreements granting Defendants options to purchase U.S. Wireless stock.

30.  At the time the parties were negotiating said Consulting Agreements, Defendants knowingly, intentionally and falsely made representations, and promised Plaintiff, that they could provide Consulting Services, which services were to include introductions to

5

1   potential customers, facilitating industry contacts and relationships, initiating strategic alliances

2   and joint venture opportunities, as well as providing investment banking, investor relations and

3   general business advisory services.  When Defendants made these representations and promises,

4   they knew them to be false.

5       31.   Defendants made the foregoing representations and promises to Plaintiff

6   with the intention to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance on

7   these representations and promises, or with the expectation that Plaintiff would so act, i.e., to

8   induce Plaintiff to enter into the Consulting Agreements and to grant Defendants substantial

9   stock options in U.S. Wireless Corporation.  Defendants knew at the time they made these

10  representations that they were important and material to Plaintiff's decision to enter into the

11  Consulting Agreements and the Option Agreements and to grant substantial and valuable stock

12  options in U.S. Wireless.

13      32.   Defendants knew at the time they made the representations that they were

14  false in that Defendants never intended to fulfill those promises and moreover, Defendants were

15  without the capacity, capability and/or legal ability to fulfill their covenants in the Consulting

16  Agreements, as alleged herein, and, further, had no intention of providing the Consulting

17  Services.

18      33.   In reasonable reliance on Defendants' representations, and in ignorance of

19  the falsity thereof, Plaintiff entered into the Consulting Agreements and Options Agreements.

20      34.   Service of this complaint constitutes notice of rescission of the Consulting

21  Agreements and Option Agreements and an offer to restore benefits received, as provided under

22  § 1691 of the California Civil Code.

23                          **FOURTH CAUSE OF ACTION**
                                   **(FRAUD)**
24                           **Cal. Civ. Code § 1710**

25      35.   Plaintiff re-alleges and incorporates herein paragraphs 1 through 34 above.

26      36.   As described above, on or about January 1, 1997, Plaintiff and Defendants

27  entered into Consulting Agreements whereby Defendants agreed to provide Consulting Services.

28

1  As consideration for said services, Plaintiff entered into Option Agreements granting Defendants

2  options to purchase U.S. Wireless stock.

3         37.    At the time the parties were negotiating said Consulting Agreements,

4  Defendants knowingly, intentionally and falsely made representations, and promised Plaintiff,

5  that they could provide Consulting Services, which services were to include introductions to

6  potential customers, facilitating industry contacts and relationships, initiating strategic alliances

7  and joint venture opportunities, as well as providing investment banking, investor relations and

8  general business advisory services. When Defendants made these representations and promises,

9  they knew them to be false.

10        38.    Defendants made the foregoing representations and promises to Plaintiff

11  with the intention to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance on

12  these representations and promises, or with the expectation that Plaintiff would so act, i.e., to

13  induce Plaintiff to enter into the Consulting Agreements and to grant Defendants substantial

14  stock options in U.S. Wireless Corporation. Defendants knew at the time they made these

15  representations that they were important and material to Plaintiff's decision to enter into the

16  Consulting Agreements and the Option Agreements and to grant substantial and valuable stock

17  options in U.S. Wireless.

18        39.    Defendants knew at the time they made the representations that they were

19  false in that Defendants never intended to fulfill those promises and moreover, Defendants were

20  without the capacity, capability and/or legal ability to fulfill their covenants in the Consulting

21  Agreements, as alleged herein, and, further, had no intention of providing the Consulting

22  Services.

23        40.    In reasonable reliance on Defendants' representations, and in ignorance of

24  the falsity thereof, Plaintiff entered into the Consulting Agreements and Options Agreements.

25        41.    As the direct and proximate result of the fraudulent conduct of Defendants

26  as herein alleged, upon information and belief, Plaintiff has been damaged at least in the amount

27  of $1,000,000. Plaintiff will amend this complaint to state the precise amount of damages when

28  it is ascertained.

7

1        42.   Defendants' conduct was an intentional misrepresentation, deceit or

2    concealment of material fact known to Defendants with the intention on the part of Defendants

3    of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, was

4    despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard

5    of Plaintiff's rights, and was conduct which was intended by Defendants to cause injury to

6    Plaintiff or despicable conduct which was carried on by Defendants with a willful and conscious

7    disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

8    **FIFTH CAUSE OF ACTION**
     **(DECLARATORY RELIEF)**

9

10       43.   Plaintiff re-alleges and incorporates herein paragraphs 1 through 42 above.

11       44.   An actual controversy has arisen and now exists between Plaintiff and

12   Defendants concerning their respective rights and duties under the Consulting Agreements and

13   Option Agreements. Plaintiff contends that there has been a material failure in the consideration

14   received by Plaintiff from Defendants under the Consulting Agreements; that Defendants

15   fraudulently induced Plaintiff to enter into the Consulting Agreements; and that the Consulting

16   Agreements and Option Agreements are rescinded and of no force or effect, and therefore the

17   Consulting Agreements and Option Agreements should be cancelled and delivered up to Plaintiff

18   by Defendants.

19       45.   Plaintiff desires a judicial determination of its rights and duties, and a

20   declaration as to the parties' rights and obligations respecting the Consulting Agreements and the

21   Option Agreements.

22       46.   A judicial declaration is necessary and appropriate at this time under the

23   circumstances in order that Plaintiff may ascertain its rights and duties respecting the Consulting

24   and Option Agreements.

25   **PRAYER**

26       WHEREFORE, Plaintiff prays judgment against Defendants and each of them as

27   follows:

28

8

47.  On the basis of the first and fifth causes of action, that Plaintiff be awarded general damages of at least $1,000,000;

48.  On the basis of the second cause of action, that the Consulting Agreements and the Option Agreements are rescinded due to the material failure of Defendants' consideration;

49.  On the basis of the third cause of action, that the Consulting Agreements and the Option Agreements have been rescinded and/or are void and unenforceable due to Defendants' fraudulent acts;

50.  On the basis of the second and third causes of action, that the Consulting Agreements and the Option Agreements are cancelled and must be delivered up to Plaintiff;

51.  On the basis of the fourth cause of action, that Plaintiff be awarded general damages of at least $1,000,000;

52.  On the basis of the fourth cause of action, punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar misconduct;

53.  Or in the alternative, on the basis of the fifth cause of action, a declaration that there has been a material failure in the consideration received by Plaintiff from Defendants under the Consulting Agreements; that Defendants fraudulently induced Plaintiff to enter into the Consulting Agreements; and that the Consulting Agreements and Option Agreements are rescinded and of no force or effect, and therefore the Consulting Agreements and Option Agreements should be cancelled and delivered up to Plaintiff by Defendants.

54.  That Plaintiff be awarded reasonable attorneys' fees pursuant to Paragraph 12 of the Consulting Agreements;

55.  That Plaintiff be awarded its costs of suit;

56.  Any other and further relief the Court considers proper.

1  Dated: May 22, 2000                          Respectfully submitted,
2                                               LATHAM & WATKINS
                                                   Gregory P. Lindstrom
3                                                  Will B. Fitton

4                                               By
5                                                  Will B. Fitton
                                                   Attorneys for Plaintiff
6                                                  U.S. WIRELESS CORPORATION

                              **DEMAND FOR JURY TRIAL**
7
8            Plaintiff hereby demands a jury trial.

9  Dated: May 22, 2000                          Respectfully submitted,
                                                LATHAM & WATKINS
10                                                 Gregory P. Lindstrom
                                                   Will B. Fitton
11
12                                              By
                                                   Will B. Fitton
13                                                 Attorneys for Plaintiff
                                                   U.S. WIRELESS CORPORATION
14
   SF_DOCS\234305.1 [W97]
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                        10

# EXHIBIT B

COPY

LATHAM & WATKINS
    Gregory P. Lindstrom (Bar No. 082334)
    Will B. Fitton (Bar No. 0182818)
    Nicole E. Jaeger (Bar. No. 197964)
505 Montgomery Street, Suite 1900
San Francisco, California 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

Attorneys for Plaintiffs
U.S. WIRELESS CORPORATION
and OLIVER HILSENRATH

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF CONTRA COSTA

| | |
|---|---|
| U.S. WIRELESS CORPORATION, a Delaware corporation, and OLIVER HILSENRATH, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>RYBURN LIMITED, a British Virgin Islands corporation, CROSSGAR LIMITED, a British Virgin Islands corporation, JANVRIN HOLDINGS LIMITED, a British Virgin Islands corporation, PELICAN SECURITIES & INVESTMENTS, LTD., an Israeli business entity, PELICAN CONSULTING, INC., a New York corporation, DAVID DAHAN, HAIM HARUVI, and DOES 1 THROUGH 20,<br><br>Defendants. | CASE NO.  C00-02084<br><br>**FIRST AMENDED COMPLAINT FOR (1) BREACH OF CONTRACT; (2) RESCISSION OF CONTRACT BASED ON FAILURE OF CONSIDERATION; (3) RESCISSION OF CONTRACT BASED ON FRAUD; (4) FRAUD; (5) UNJUST ENRICHMENT; AND (6) DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs U.S. WIRELESS CORPORATION and OLIVER HILSENRATH hereby allege

and complain as follows:

## GENERAL ALLEGATIONS

1.    Plaintiff U.S. Wireless Corporation ("U.S. Wireless") is a corporation

organized and existing under the laws of Delaware with its principal place of business located at

2303 Camino Ramon, San Ramon, Contra Costa County, California.

1

1        2.    Plaintiff Oliver Hilsenrath ("Hilsenrath") is and since July of 1996 has been

2    the Chief Executive Officer, a director and a principal shareholder of Plaintiff U.S. Wireless

3    Corporation.

4        3.    Defendant Ryburn Limited ("Ryburn") is a corporation organized and

5    existing under the laws of the British Virgin Islands with its principal place of business in

6    Matheson Trust Bank, P.O. Box 316, Jardine House, 1 Wesley Street, St. Helier, Jersey JE4

7    8UD, Channel Islands.

8        4.    Defendant Crossgar Limited ("Crossgar") is a corporation organized and

9    existing under the laws of the British Virgin Islands with its principal place of business in

10    Matheson Trust Bank, P.O. Box 316, Jardine House, 1 Wesley Street, St. Helier, Jersey JE4

11    8UD, Channel Islands.

12        5.    Defendant Janvrin Holdings Limited ("Janvrin") is a corporation organized

13    and existing under the laws of the British Virgin Islands with its principal place of business in

14    Matheson Trust Bank, P.O. Box 316, Jardine House, 1 Wesley Street, St. Helier, Jersey JE4

15    8UD, Channel Islands.

16        6.    Defendant Pelican Securities & Investments, Ltd. is a business entity, of

17    organizational form presently unknown to Plaintiffs, with a principal place of business at Top

18    Tower, 50 Dizengoff Street, Tel Aviv 64332, Israel. Defendant Pelican Consulting, Inc. is a

19    corporation organized and existing under the laws of New York, and, on information and belief,

20    is a wholly-owned subsidiary of Defendant Pelican Securities & Investments, Ltd. (Defendants

21    Pelican Securities & Investments, Ltd. and Pelican Consulting, Inc. are referred to herein

22    collectively as "Pelican.")

23        7.    Upon information and belief, Plaintiffs allege that Defendant David Dahan

24    ("Dahan") is an adult individual whose last known principal residence is at 25/196 Ben Yehuda

25    Street, Binian Migdalot, Tel Aviv, Israel 63807.

26        8.    Upon information and belief, Plaintiffs allege that Defendant Haim Haruvi

27    ("Haruvi") is an adult individual whose last known principal residence is at 14/8 Rekanati,

28    Ramat-Aviv Gimel, Tel Aviv, Israel 69494.

2

1         9.    Defendants Janvrin, Pelican, Crossgar, and Ryburn are, and at all times

2    herein mentioned were, mere shells, instrumentalities and conduits through which Defendants

3    Haim Haruvi and David Dahan carried on their business affairs in the corporate name, exercising

4    complete control and dominance of such businesses to such an extent that any individuality or

5    separateness among Defendants Janvrin, Pelican, Crossgar, Ryburn, Haruvi, and Dahan does not,

6    and at all time herein mentioned did not, exist.

7         10.    Defendants Does 1 through 20 were at all times relevant herein agents

8    and/or employees of Defendants.  Plaintiffs are ignorant of the true names and capacities of

9    Defendants sued herein as Does 1 through 20 and has therefore sued those Defendants by such

10    fictitious names.  Plaintiffs believe and thereon allege that each of these fictitiously named

11    Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs'

12    injuries as herein alleged were proximately caused by the aforementioned Defendants.  Plaintiffs

13    will seek leave of court to amend this complaint to allege their true names, once they are

14    ascertained.

15         11.    Plaintiffs are informed and believe, and thereon allege that, at all times

16    herein mentioned, each of the Defendants was the agent and/or employee of each of the

17    remaining Defendants and, in doing the things hereinafter alleged, was acting within the course

18    and scope of such agency and employment.  Plaintiffs are informed and believe, and thereon

19    allege that each of the Defendants herein consented to, ratified, and authorized the acts alleged

20    herein.

21         12.    As more fully set forth below, Plaintiff U.S. Wireless and Defendants

22    entered into written contracts pursuant to which they agreed that such contracts, and all rights

23    and obligations thereunder, would be governed by the laws of the State of Delaware.  Plaintiff

24    U.S. Wireless and Defendants also entered into written option agreements pursuant to which they

25    agreed that they would be subject to personal jurisdiction in California and that venue for any

26    proceeding or claim arising out of said agreements shall be brought and enforced in state court in

27    the San Francisco Bay Area.

28

1    13.    On or about April 1996, Plaintiff Hilsenrath formed two companies,

2  Labyrinth Communication Technologies Group, Inc. ("Labyrinth") and Mantra Technologies,

3  Inc. ("Mantra"), both Delaware corporations, for the purpose of starting a business in San

4  Ramon, California, which ultimately would become U.S. Wireless.

5    14.    In May 1996, Plaintiff Hilsenrath was seeking an investment advisor and to

6  raise capital for the new business, and was introduced to Defendant Dahan by David Tamir, a

7  business associate and former director of U.S. Wireless.

8    15.    When Plaintiff Hilsenrath contacted Dahan, he was told by Dahan that he

9  and Defendant Haruvi jointly provided investment services to their clients in Israel and

10  elsewhere.  Defendants represented that they were international investment advisors, had clients

11  throughout the world, were well known within the investment community, and could locate,

12  solicit, and acquire investors for the new business (collectively "Investment Services").

13    16.    In June 1996, Plaintiff Hilsenrath was introduced by Dahan to Ilan Arbel,

14  the then-president of American Toys, Inc. (which ultimately became U.S. Wireless).  Arbel later

15  invested $4,000,000 in U.S. Wireless.

16    17.    On or about July 31, 1996, Plaintiff U.S. Wireless acquired 51% of

17  Labyrinth and 51% of Mantra for cash and shares of common stock, pursuant to the terms and

18  conditions of a written agreement, at which time Plaintiff Hilsenrath became a principal

19  stockholder of Plaintiff U.S. Wireless, a director and its President and Chief Executive Officer.

20    18.    From his personal holdings, Plaintiff Hilsenrath gave Dahan and Haruvi

21  10% of the capital stock of Labyrinth, totalling 1 million shares, as well as $100,000 cash (paid

22  over 10 months), as consideration for the introduction to Arbel and for continuing Investment

23  Services to be provided by Defendants.  At the behest of Dahan and Haruvi, the $100,000 was

24  paid to Defendant Pelican, and the shares were issued in the name of Defendant Janvrin.

25    19.    Labyrinth was later consolidated with and into U.S. Wireless, at which time

26  the shareholders of Labyrinth, pursuant to an exchange offer, exchanged their shares of common

27  stock of Labyrinth for common stock of U.S. Wireless.  As shareholders of Labyrinth,

28  Defendants, through Janvrin, obtained approximately 918,000 shares of U.S. Wireless stock.

4

1      20.    In January 1997, Plaintiff U.S. Wireless executed written agreements

2  engaging Defendants to provide certain consulting services (the "Consulting Agreements"). At

3  the behest of Dahan and Haruvi, the nominal parties to these agreements were two corporations,

4  Ryburn and Crossgar, controlled by Defendants. The consulting services were to include

5  introductions to potential customers, facilitating industry contacts and relationships, initiating

6  strategic alliances and joint venture opportunities, as well as providing investment banking,

7  investor relations, general business advisory services and other securities investment advice

8  (collectively "Consulting Services"). Defendants advised Plaintiffs that they would initiate

9  meetings and facilitate relationships with institutional investors and security industry analysts,

10  with a goal of obtaining investors for Plaintiff U.S. Wireless.

11      21.    As compensation for the anticipated Consulting Services, and at the behest

12  of Defendants Dahan and Haruvi, Defendants Ryburn and Crossgar were granted options to

13  purchase 1,000,000 shares and 200,000 shares, respectively, of U.S. Wireless common stock,

14  pursuant to the terms and conditions of the two option agreements (the "Option Agreements").

15      22.    Prior to May 1996, Israel enacted securities laws mandating that any person

16  acting as a securities investment advisor must obtain a license by passing written examinations

17  and meeting certain personal ethical standards. Upon on information and belief, the United

18  States has similar such licensing laws for securities investment advisors. Upon information and

19  belief, Plaintiffs allege that, at all relevant times, no Defendant possessed the requisite licenses in

20  either Israel and/or the United States to act as a securities investment advisor in Israel or

21  elsewhere.

22      23.    Upon information and belief, Dahan and Haruvi were convicted in Israel of

23  violations of Israeli securities laws for activities commencing in 1988 and were sentenced to

24  serve time in prison during the term of the Consulting Agreements. (Plaintiffs were unaware of

25  these convictions until sometime in 1999.)

26      24.    No Defendant ever provided any of the Consulting Services required under

27  the Consulting Agreements during the term of the agreements. On January 1, 2000, the Ryburn

28  and Crossgar Consulting Agreements expired.

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

25.   Plaintiff U.S. Wireless re-alleges and incorporates herein paragraphs 1 through 24 above.

26.   On or before January 1, 1997, Plaintiff U.S. Wireless and Defendants entered into the Consulting Agreements.

27.   As consideration for the services to be provided under said Consulting Agreements by Defendants, Plaintiff U.S. Wireless entered into stock option agreements ("Option Agreements") with Defendants Ryburn and Crossgar.

28.   Defendants failed and refused to provide any Consulting Services to Plaintiff U.S. Wireless in breach of the Consulting Agreements.

29.   At all relevant times, Plaintiff U.S. Wireless had performed all conditions, covenants, and promises required on its part to be performed and was ready, able, and willing to complete any additional performance on its part in accordance with the terms and conditions of the Consulting Agreements and the Option Agreements.

30.   As a result of Defendants' failure to perform and breach of the Consulting Agreements, upon information and belief, Plaintiff U.S. Wireless has been damaged in the amount of at least $1,000,000.  Plaintiff will amend this complaint to state the precise amount of damages when it is ascertained.

31.   Defendants' performance under the Consulting Agreements is a condition to the obligation of Plaintiff U.S. Wireless to perform under the Option Agreements.  Defendants' failure to perform under and breach of the Consulting Agreements has excused Plaintiff's further performance under the Option Agreements.

32.   Plaintiff U.S. Wireless is entitled to the recovery of reasonable attorneys' fees incurred in this action pursuant to Paragraph 12 of the Consulting Agreements.

6

**SECOND CAUSE OF ACTION**
**(RESCISSION BASED ON FAILURE OF CONSIDERATION)**
**Cal. Civ. Code § 1689**

33.   Plaintiff U.S. Wireless re-alleges and incorporates herein paragraphs 1 through 32 above.

34.   As set forth herein, on or about January 1, 1997, Plaintiff U.S. Wireless and Defendants entered into Consulting Agreements whereby Defendants agreed to provide Consulting Services. As consideration for said services, Plaintiff U.S. Wireless entered into Option Agreements granting Defendants Ryburn and Crossgar options to purchase U.S. Wireless common stock.

35.   There has been a material failure in the consideration received by Plaintiff U.S. Wireless, in that Defendants totally failed to perform and were without capacity, capability, and/or legal ability to perform the bargained-for Consulting Services.

36.   As a result of this failure of consideration, Plaintiff U.S. Wireless has been deprived of the benefits of its bargain.

37.   Service of this complaint constitutes notice of rescission of the Consulting Agreements and Option Agreements and an offer to restore benefits received, as provided under § 1691 of the California Civil Code.

**THIRD CAUSE OF ACTION**
**(RESCISSION BASED ON FRAUD)**
**Cal. Civ. Code §§ 1572 & 1689**

38.   Plaintiff U.S. Wireless re-alleges and incorporates herein paragraphs 1 through 37 above.

39.   As set forth herein, on or before January 1, 1997, Plaintiff U.S. Wireless and Defendants entered into Consulting Agreements whereby Defendants agreed to provide Consulting Services. As consideration for said services, Plaintiff U.S. Wireless entered into Option Agreements granting Defendants Ryburn and Crossgar options to purchase U.S. Wireless common stock.

40.   At the time the parties were negotiating said Consulting Agreements, Defendants knowingly, intentionally, and falsely made representations, and promised Plaintiff

7

1  U.S. Wireless, that they could and would provide such Consulting Services. When Defendants

2  made these representations and promises, they knew them to be false.

3        41.  Defendants made the foregoing representations and promises to Plaintiff

4  U.S. Wireless with the intention to deceive and defraud Plaintiff and to induce Plaintiff to enter

5  into the Consulting Agreements and to grant Defendants Ryburn and Crossgar substantial

6  options in the common stock of U.S. Wireless Corporation pursuant to the Option Agreements.

7  Defendants knew at the time they made these representations that they were material to the

8  decision of Plaintiff U.S. Wireless to enter into the Consulting Agreements and the Option

9  Agreements.

10        42.  Defendants knew at the time they made the representations that they were

11  false in that Defendants never intended to fulfill those promises and moreover, Defendants were

12  without the capacity, capability, and/or legal ability to fulfill their covenants in the Consulting

13  Agreements, as alleged herein, and, further, had no intention of providing the Consulting

14  Services.

15        43.  In reasonable reliance on Defendants' representations, and in ignorance of

16  the falsity thereof, Plaintiff U.S. Wireless entered into the Consulting Agreements and Option

17  Agreements.

18        44.  Service of this complaint constitutes notice of rescission of the Consulting

19  Agreements and Option Agreements and an offer to restore benefits received, as provided under

20  § 1691 of the California Civil Code.

21  **FOURTH CAUSE OF ACTION**
**(FRAUD)**

22  **Cal. Civ. Code § 1710**

23        45.  Plaintiffs U.S. Wireless and Hilsenrath re-allege and incorporate herein

24  paragraphs 1 through 44 above.

25        46.  As set forth herein, in or around August of 1996, Defendants, in the name of

26  Janvrin, received from Plaintiff Hilsenrath stock, which was later exchanged for U.S. Wireless

27  stock, and, in the name of Pelican, received from Plaintiff Hilsenrath $100,000 cash, as

28

1    consideration for Investment Services. Upon information and belief, Defendants have thus far

2    sold at least 82,100 shares of the U.S. Wireless stock for more than $744,000.

3           47.    As described above, on or about January 1, 1997, Plaintiff U.S. Wireless and

4    Defendants entered into Consulting Agreements whereby Defendants agreed to provide

5    Consulting Services. As consideration for said services, Plaintiff U.S. Wireless entered into

6    Option Agreements granting Defendants Ryburn and Crossgar substantial options to purchase

7    U.S. Wireless common stock.

8           48.    At all relevant times, Defendants knowingly, intentionally, and falsely made

9    representations and promises, first, to Plaintiff Hilsenrath that they could provide Investment

10    Services and, later, to Plaintiff U.S. Wireless that they could provide Consulting Services. When

11    Defendants made these representations and promises, they knew them to be false.

12           49.    Defendants made the foregoing representations and promises to Plaintiffs

13    with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on

14    these representations and promises, first, to provide money and stock shares as consideration for

15    Defendants' rendition of Investment Services and, later, to grant Defendants substantial stock

16    options in U.S. Wireless Corporation for anticipated Consulting Services. Defendants knew at

17    the time they made these representations that they were material to Plaintiff Hilsenrath's decision

18    to provide money and stock shares as compensation for Investment Services and to Plaintiff U.S.

19    Wireless' decision to enter into the Consulting Agreements and the Option Agreements, granting

20    Defendants Ryburn and Crossgar substantial stock options in U.S. Wireless.

21           50.    Defendants knew at the time they made the representations that they were

22    false in that Defendants were without the capacity, capability, and/or legal ability to perform

23    either the Investment Services or the Consulting Services.

24           51.    In reasonable reliance on Defendants' representations, and in ignorance of

25    the falsity thereof, Plaintiff Hilsenrath granted Defendants valuable stock shares and paid

26    $100,000 cash as consideration for Investment Services and Plaintiff U.S. Wireless entered into

27    the Consulting Agreements and Options Agreements granting Defendants Ryburn and Crossgar

28    valuable stock options in U.S. Wireless.

9

1    52.    By virtue of their fraudulent acts, Defendants now hold substantial shares in

2  U.S. Wireless in constructive trust for Plaintiff Hilsenrath's benefit.

3    53.    As the direct and proximate result of the fraudulent conduct of Defendants

4  as herein alleged, upon information and belief, Plaintiff U.S. Wireless and Plaintiff Hilsenrath

5  each has been damaged at least in the amounts detailed above.  Plaintiffs will amend this

6  complaint to state the precise amount of damages when it is ascertained.

7    54.    Defendants' conduct involved intentional misrepresentations, deceit, or

8  concealment of material facts known to Defendants with the intention on the part of Defendants

9  of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, was

10  despicable conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard

11  of Plaintiffs' rights, and was conduct which was intended by Defendants to cause injury to

12  Plaintiffs or despicable conduct which was carried on by Defendants with a willful and conscious

13  disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

14  **FIFTH CAUSE OF ACTION**<br>**(UNJUST ENRICHMENT)**

15

16    55.    Plaintiff Hilsenrath re-alleges and incorporates herein paragraphs 1 through

17  54 above.

18    56.    As set forth herein, in or around August of 1996, Defendants, in the name of

19  Janvrin, received from Plaintiff Hilsenrath stock, which was later exchanged for U.S. Wireless

20  stock, and, in the name of Pelican, received from Plaintiff Hilsenrath $100,000 cash, as

21  consideration for Investment Services.  Upon information and belief, Defendants have thus far

22  sold at least 82,100 shares of the U.S. Wireless stock for more than $744,000.

23    57.    It would be unjust for Defendants to retain the benefits conferred by

24  Plaintiff Hilsenrath (i.e., stock and money), because: 1) the benefits were conferred based on

25  Defendants' fraudulent misrepresentations to Plaintiffs that Defendants could provide Investment

26  Services; 2) the benefits were conferred based on Plaintiffs' mistaken belief that Defendants

27  could provide Investment Services (such mistaken belief was due to Defendants' fraudulent

28  misrepresentations); and 3) the benefits were conferred to Defendants under a contract rendered

10

1  void because, although unknown to Plaintiffs, both Defendants' consideration and performance

2  under the agreement were illegal.

3      58.   Equity demands that Defendants not retain the $100,000 paid to Defendant

4  Pelican by Plaintiff Hilsenrath, the U.S. Wireless stock granted to Defendant Janvrin by Plaintiff

5  Hilsenrath, and the at least $744,000 that Defendants have derived thus far by selling U.S.

6  Wireless stock granted by Plaintiff Hilsenrath, and that such money and remaining (unsold) stock

7  be disgorged and conveyed to Plaintiff Hilsenrath.

8
### SIXTH CAUSE OF ACTION
### (DECLARATORY RELIEF)
9

10     59.   Plaintiff U.S. Wireless re-alleges and incorporates herein paragraphs 1

11  through 58 above.

12     60.   An actual controversy has arisen and now exists between Plaintiff U.S.

13  Wireless and Defendants concerning their respective rights and duties under the Consulting

14  Agreements and Option Agreements.  Plaintiff U.S. Wireless contends that there has been a

15  material failure in the consideration received by Plaintiff from Defendants under the Consulting

16  Agreements; that Defendants fraudulently induced Plaintiff to enter into the Consulting

17  Agreements; and that the Consulting Agreements and Option Agreements are rescinded and of

18  no force or effect, and therefore the Consulting Agreements and Option Agreements should be

19  cancelled and delivered up to Plaintiff by Defendants.

20     61.   Plaintiff U.S. Wireless desires a judicial determination of its rights and

21  duties, and a declaration as to the parties' rights and obligations respecting the Consulting

22  Agreements and the Option Agreements.

23     62.   A judicial declaration is necessary and appropriate at this time under the

24  circumstances in order that Plaintiff U.S. Wireless may ascertain its rights and duties respecting

25  the Consulting Agreements and Option Agreements.

26
### PRAYER

27     WHEREFORE, Plaintiffs pray judgment against Defendants and each of them as

28  follows:

11

1    63.    On the basis of the first and fourth causes of action, that Plaintiff U.S.

2    Wireless be awarded general damages according to proof;

3    64.    On the basis of the second cause of action, that the Consulting Agreements

4    and the Option Agreements are rescinded due to the material failure of Defendants'

5    consideration;

6    65.    On the basis of the third cause of action, that the Consulting Agreements

7    and the Option Agreements have been rescinded and/or are void and unenforceable due to

8    Defendants' fraudulent acts;

9    66.    On the basis of the second and third causes of action, that the Consulting

10    Agreements and the Option Agreements are cancelled and must be delivered up to Plaintiffs;

11    67.    Or in the alternative, on the basis of the sixth cause of action, a declaration

12    that there has been a material failure in the consideration received by Plaintiffs from Defendants

13    under the Consulting Agreements; that Defendants fraudulently induced Plaintiffs to enter into

14    the Consulting Agreements; and that the Consulting Agreements and Option Agreements are

15    rescinded and of no force or effect, and therefore the Consulting Agreements and Option

16    Agreements should be cancelled and delivered up to Plaintiffs by Defendants;

17    68.    On the basis of the fourth cause of action, a decree that Defendants hold any

18    shares of U.S. Wireless that they received by virtue of their fraudulent acts in constructive trust

19    for Plaintiff Hilsenrath;

20    69.    On the basis of the fourth cause of action, punitive damages be awarded to

21    Plaintiffs in an amount appropriate to punish Defendants and to deter others from engaging in

22    similar misconduct;

23    70.    On the basis of the fifth cause of action, an order compelling Defendants to

24    disgorge and convey to Plaintiff Hilsenrath 1) any remaining (unsold) shares of U.S. Wireless

25    stock, 2) the at least $744,000 that Defendants have derived thus far from sales of U.S. Wireless

26    stock, and 3) the $100,000 obtained from Plaintiff Hilsenrath, all of which was obtained and is

27    retained unjustly by Defendants;

28

12

1      71.    That Plaintiff U.S. Wireless be awarded reasonable attorneys' fees pursuant

2  to Paragraph 12 of the Consulting Agreements;

3      72.    That Plaintiffs be awarded their costs of suit;

4      73.    Any other and further relief the Court considers just and proper.

5  Dated: June _16_, 2000                    Respectfully submitted,

6                                           LATHAM & WATKINS
                                            Gregory P. Lindstrom
7                                           Will B. Fitton
                                            Nicole E. Jaeger
8

9

10                                         By _____ for
                                              Gregory P. Lindstrom
11                                            Attorneys for Plaintiffs
                                              U.S. WIRELESS CORPORATION
12                                            and OLIVER HILSENRATH

13                          **DEMAND FOR JURY TRIAL**

14       Plaintiffs hereby demand a jury trial.

15  Dated: June _16_, 2000                    Respectfully submitted,

16                                          LATHAM & WATKINS
                                            Gregory P. Lindstrom
17                                          Will B. Fitton
                                            Nicole E. Jaeger
18

19

20                                         By _____ for
                                              Gregory P. Lindstrom
21                                            Attorneys for Plaintiffs
                                              U.S. WIRELESS CORPORATION
22  SF_DOCS\238462.8 [W97]                    and OLIVER HILSENRATH

23

24

25

26

27

28

13