BAACH ROBINSON & LEWIS PLLC
Sarah L. Knapp (Bar No. 200694)
1201 F Street, NW, Suite 500
Washington, DC 20004-1225
Telephone:  202-833-8900
Facsimile:   202-466-5738
sarah.knapp@baachrobinson.com

Attorneys for Defendants
MELVYN KALMAN & JOHN PERKINS

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA HILSENRATH AND OLIVER HILSENRATH,<br><br>                              Plaintiffs,<br><br>v.<br><br>EQUITY TRUST (JERSEY) LIMITED, et al.,<br><br>                              Defendants. | Case No.: No. 3:07-cv-03312 CW<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS KALMAN AND PERKINS TO DISMISS PURSUANT TO FED. R. CIV. P. 12 AND SPECIAL MOTION IN THE ALTERNATIVE TO STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16**<br><br>Date:   November 1, 2007<br>Time:  9:30 a.m.<br>Place:  Courtroom 2, 4th Floor<br>Judge: Honorable Claudia Wilken<br><br>Complaint Filed: June 25, 2007 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................i

NOTICE OF MOTION AND MEMORANDUM .......................................................................1

INTRODUCTION ..............................................................................................................1

BACKGROUND ...............................................................................................................3

SUMMARY OF ARGUMENT ..............................................................................................4

ARGUMENT ...................................................................................................................7

I.   PLAINTIFFS HAVE NOT ALLEGED SUFFICIENT FORUM CONTACTS TO
     ESTABLISH PERSONAL JURISDICTION OVER THESE DEFENDANTS. ...............7

II.  THIS ACTION SHOULD BE DISMISSED BECAUSE IT HAS BEEN BROUGHT IN
     THE WRONG COURT. ...................................................................................9
     A.   Valid forum selection clauses require dismissal in favor of Jersey. ....................9
     B.   The Complaint should be dismissed based on <u>forum</u> <u>non</u> <u>conveniens</u>. ................9

III. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE
     GRANTED. ................................................................................................10
     A.   All of the claims other than malicious prosecution are barred by the releases in
          the 2001 Settlement Agreement. ..................................................................10
     B.   Plaintiffs' extortion, tortious interference, invasion of privacy,
          and RICO claims are time barred. ................................................................12
     C.   The state law claims should be dismissed for additional reasons. .....................13
          1.   Plaintiffs' state law claims should be stricken under § 425.16. ..............13
          2.   Plaintiffs' state law claims are barred by the litigation privilege of Cal.
               Civ. Code § 47 ...............................................................................14
          3.   The extortion claim must fail because Plaintiffs were not extorted and
               cannot show proximate causation. .....................................................15
          4.   Plaintiffs cannot state a claim for malicious prosecution. .....................16
     D.   The RICO claim is defective. .......................................................................19
          1.   Plaintiffs fail to plead the elements of RICO. .....................................19
          2.   Plaintiffs cannot establish a "pattern of racketeering activity." .............21
          3.   Plaintiffs cannot establish proximate causation under RICO. ................23

CONCLUSION ...............................................................................................................25

i

<u>Hilsenrath v. Equity Trust (Jersey) Ltd., et al.</u>, No. 3:07-cv-03312 CW (N.D. Cal.)
Notice of Motion and Memorandum in Support of Motion to Dismiss or Strike

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143 (1987) .............................. 24

Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006) .......................................... 24

Arochem v. Buirkle, 767 F. Supp. 1243 (S.D.N.Y. 1991) ........................................... 14

Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994).................................................... 3

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001)..................................... 20

Davis v. Metro Prod., 885 F.2d 515 (9th Cir. 1989) ............................................... 8

Doe I v. Unocal Corp., 27 F. Supp. 2d 1174 (C.D. Cal. 1998) ...................................... 8

El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032 (9th Cir. 2003)...................................... 12

Flores v. Emerich & Fike, 416 F. Supp. 2d 885 (E.D. Cal. 2006)................................ 14, 23

Foley v. Bates, 2007 U.S. Dist. LEXIS 38063 (N.D. Cal. May 14, 2007) ................................ 10

Forcier v. Microsoft Corp., 123 F. Supp. 2d 520 (N.D. Cal. 2000)............................... 12

Gauvin v. Tompatore, 682 F. Supp. 1067 (N.D. Cal. 1988) ......................................... 10

H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)..................................... 22

Hamid v. Price Waterhouse, 51 F.3d 1411 (9th Cir. 1995) ......................................... 24

Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258 (1992)..................................... 16, 24

Imagineering, Inc. v. Knighten Bros. Constr., 976 F.2d 1303 (9th Cir. 1992) ........................... 24

LeDuc v. Kentucky Cen. Life Ins. Co., 814 F. Supp. 820 (N.D. Cal. 1992) ................................ 8

Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333 (7th Cir.
1989) ........................................................................................ 24

Morales v. Cooperative of American Physicians, Inc., 180 F.3d 1060 (9th Cir. 1999)............... 15

Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133 (9th Cir. 2004) .................................. 9

Nordberg v. Trilegaint Corp., 445 F. Supp. 2d 1082 (N.D. Cal. 2006) ........................................ 19

Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co., 981 F.2d 429 (9th Cir. 1992) ............... 23

Ott v. Home Savings & Loan Associate, 265 F.2d 643 (9th Cir. 1958) ...................................... 3

Pacific Greyhound Lines v. Zane, 160 F.2d 731 (9th Cir. 1947) ................................................. 11

Pincay v. Andrews, 238 F.3d 1106 (9th Cir. 2001) .............................................................. 12, 24

Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364 (9th Cir. 1992) ..................................... 22, 23

Sever v. Alaska Pulp Corp., 978 F.2d 1529 (9th Cir. 1992) ........................................................ 21

Stauffacher v. Bennett, 969 F.2d 455 (7th Cir. 1992) .................................................................. 8

Troy Group, Inc. v. Tilson, 364 F. Supp. 2d 1149 (C.D. Cal. 2005) ..................................... 13, 14

Turner v. Cook, 362 F.3d 1219 (9th Cir. 2004) ........................................................................... 22

Warden v. Cross, 94 Fed. Appx. 474, 476 (9th Cir. 2004) ......................................................... 20

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980) .............................................. 8

## STATE CASES

Ball v. Rawles, 28 P. 937 (Cal. 1892) ......................................................................................... 16

Blanchard v. DIRECTTV, Inc., 123 Cal. App. 4th 903 (Cal. App. 2d 2004) ........................ 14, 15

Briggs v. Eden Council for Hope & Opportunity, 969 P.2d 564 (Cal. 1999) ........................ 13, 14

Casa Herrera, Inc. v. Beydoun, 83 P.3d 497 (Cal. 2004) ........................................................... 18

Christoff v. Nestle USA, Inc., 152 Cal. App. 4th 1439 (Cal. App. 2d 2007) .............................. 12

Doctors' Co. Ins. Servs. v. Superior Court, 225 Cal. App. 3d 1284 (Cal. App. 3rd 1990) ........... 15

Downey Venture v. LMI Ins. Co., 66 Cal. App. 4th 478 (Cal. App. 2d  1998) ........................... 16

Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914 (Cal. 2005) ................................................... 12

Jacob B. v. County of Shasta, 154 P.3d 1003 (Cal. 2007) .......................................................... 15

Kehoe v. City of Berkeley, 67 Cal. App. 3d 666 (Cal. App. 1st 1977) ........................................ 15

Knoell v. Petrovich, 76 Cal. App. 4th 164 (Cal. App. 2d 1999) .................................................. 12

Lackner v. La Croix, 602 P.2d 393 (Cal. 1979) ............................................................ 18

Leeper v. Beltrami, 347 P.2d 12 (Cal. 1959) ............................................................... 12

Mansour v. Superior Court, 38 Cal. App. 4th 1750 (Cal. App. 4th 1995) ....................... 8

Minasian v. Sapse, 80 Cal. App. 3d 823 (Cal. App. 2d 1978) ...................................... 18

O'Keefe v. Kompa, 84 Cal. App. 4th 130 (Cal. App. 4th 2000) .................................... 14

Oprian v. Goldrich, Kest & Assoc., 220 Cal. App. 3d 337 (Cal. App. 4th 1990) ............ 18, 19

PCO Inc. v. Christiansen, Miller, 150 Cal. App. 4th 384 (Cal. App. 2d 2007) ............... 10

Padres L.P. v. Henderson, 114 Cal. App. 4th 495 (Cal. App. 4th 2003) ...................... 18

People v. Sales, 116 Cal. App. 4th 741 (Cal. App. 4th 2004) ...................................... 21

Pettitt v. Levy, 28 Cal. App. 3d 484 (Cal. App. 5th 1972) .......................................... 15

Pitman v. City of Oakland, 197 Cal. App. 3d 1037 (Cal. App. 1st 1988) ...................... 16, 25

Rusheen v. Cohen, 128 P.3d 713 (Cal. 2006) ........................................................... 13

San Diego Hospice v. County of San Diego, 31 Cal. App. 4th 1048 (Cal. App. 4th
1995) ...................................................................................................................... 11

Seagate Tech. v. A.J. Kogyo Co., Ltd., 219 Cal. App. 3d 696 (Cal. App. 1st 1990) ....... 9

Sebastian v. Crowley, 101 P.2d 120 (Cal. App. 4th 1940) .......................................... 16

Sheldon Appel Co. v. Albert & Oliker, 765 P.2d 498 (Cal. 1989) ................................. 17

Sibley v. Superior Court, 546 P.2d 322 (Cal. 1976) .................................................... 9

Temple Cmty. Hosp. v. Superior Court, 976 P.2d 223 (Cal. 1999) ............................... 10

**FEDERAL STATUTES**

18 U.S.C. § 1961 ...................................................................................................... 4

18 U.S.C. § 1961(1) .................................................................................................. 20

18 U.S.C. § 1961(5) .................................................................................................. 21

Fed. R. Civ. P. 8 ...................................................................................................... 10, 20

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 10

iv

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Notice of Motion and Memorandum in Support of Motion to Dismiss or Strike

Fed. R. Civ. P. 12 ........................................................................................................... 1, 3

Fed. R. Civ. P. 44.1 .......................................................................................................... 2

**STATE STATUTES**

Cal. Civ. Code § 47 ..................................................................................................... 5, 14

Cal. Civ. Code § 1542 ..................................................................................................... 11

Cal. Code Civ. P. § 425.16…………………… …………………………………1, 5, 13, 14, 25

Cal. Pen. Code § 519…………............ ……………………………………………………..21

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Notice of Motion and Memorandum in Support of Motion to Dismiss or Strike

## NOTICE OF MOTION AND MEMORANDUM

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 1, 2007 at 9:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Claudia Wilken of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Defendants Melvyn Kalman ("Kalman") and John Perkins ("Perkins") will and hereby do move to dismiss the Complaint on the merits pursuant to Fed. R. Civ. P. 12 and to strike the Complaint pursuant to Cal. Code Civ. P. § 425.16. This Motion is based upon this Notice of Motion and Memorandum, the pleadings and other matters of record in this action, such other papers as may be filed, oral arguments of counsel, and any other matters properly before the Court.

## RELIEF REQUESTED

Kalman and Perkins seek an Order dismissing the Complaint on the merits. Alternatively, Kalman and Perkins seek to have the Complaint dismissed on the basis of personal jurisdiction, venue, and <u>forum</u> <u>non</u> <u>conveniens</u>. Kalman and Perkins further move that the state law claims in the Complaint be stricken pursuant to Cal. Code Civ. P. § 425.16.

## INTRODUCTION

By this action Dr. Oliver Hilsenrath and his wife Hana Hilsenrath seek $278.58 million in damages from Equity Trust (Jersey) Limited ("ETJL"), a trust company in the British Isles that administered corporate entities for Dr. Hilsenrath, and from certain individuals and entities alleged to have been associated with ETJL. Defendants Kalman and Perkins are former employees of ETJL. The Complaint advances a "kitchen sink" assortment of allegations and legal claims, but the claims are premised on two main contentions: (i) that Defendants improperly disclosed private financial information relating to Dr. Hilsenrath's entities in order to extort a favorable settlement from U.S. Wireless Corp. (of which Dr. Hilsenrath was then the CEO) for the benefit of other ETJL clients; and (ii) that three companies that are not parties to

this litigation subsequently commenced and abandoned litigation against Dr. Hilsenrath and others after U.S. Wireless became insolvent and defaulted under the settlement. Merely stating these facts suggests core deficiencies in the Complaint: that this Court lacks jurisdiction over Defendants, that this forum is inconvenient and improper, that limitations periods have long since expired, that the claims arise from protected litigative conduct, and that Plaintiffs lack standing to sue for damages that were suffered by U.S. Wireless.

As a threshold issue, therefore, this Court must decide whether extensive litigation resources, both public and private, should be expended so that Plaintiffs can import to this jurisdiction a dispute arising from their own deliberate choice to enter into offshore financial arrangements. Even read charitably, the Complaint alleges no direct contacts between Kalman and Perkins and California; it concerns a Jersey trust company's administration, in Jersey and through its Jersey-domiciled employees, of special-purpose entities incorporated in the British Virgin Islands, pursuant to the terms of agreements containing explicit Jersey forum selection and choice of law provisions. Accordingly, this case should be dismissed on grounds of personal jurisdiction, venue, and <u>forum</u> <u>non</u> <u>conveniens</u>.[1]

In addition, the Complaint is a patchwork of conclusory allegations and is critically lacking in specific averments concerning the actions of particular Defendants; it is replete with purported causes of action that simply do not exist under California law; and the claims that do exist are precluded by Dr. Hilsenrath's release of claims, by California statutes, by statutes of

---

[1] Kalman and Perkins maintain and reserve their position that California law is not applicable to Plaintiffs' claims and that this is not the proper forum for adjudication of the issues, particularly to the extent that such adjudication involves anything more than dismissal as a matter of law. As discussed <u>infra</u>, Kalman and Perkins adopt the arguments set forth in defendant ETJL's submission concerning <u>forum</u> <u>non</u> <u>conveniens</u>. In connection with those arguments, pursuant to Fed. R. Civ. P. 44.1, Kalman and Perkins hereby give notice of their intent to rely on the law of Jersey should this action go forward. Because Plaintiffs have failed to plead a claim on which relief can be granted even under the law of their chosen forum, their claims are susceptible of dismissal as pleaded and will be addressed herein on that basis. Kalman and Perkins also reserve their position as to personal jurisdiction.

2

repose, and by Plaintiffs' own allegations.  The case should be dismissed on the merits pursuant

to Fed. R. Civ. P. 12(b)(6) so that this latest iteration of what the Court has elsewhere suggested

is bad faith litigation can be brought, finally, to a close.[2]

## BACKGROUND

The claims at issue in this proceeding relate to several other actions filed previously in

this Court.  Defendants Perkins and Kalman were not parties to any of these proceedings.  The

Complaint alleges, however, that at all relevant times Kalman and Perkins were executives of

ETJL and of three British Virgin Islands entities that were parties to the proceedings, Janvrin

Holdings Ltd., Ryburn Ltd., and Crossgar Ltd. (hereinafter, collectively, "Janvrin et al.").

Compl. ¶¶ 21, 60.[3]

In 2000, Janvrin et al. each filed an action against U.S. Wireless, Dr. Hilsenrath, and

U.S. Wireless General Counsel and Secretary David Klarman (C00-2334, C00-2236, and C00-

2346) (collectively the "2000 Actions") in this Court.  The parties to these actions executed a

Settlement Agreement in April 2001 (the "Settlement Agreement") (Ex. B).[4]  The Settlement

Agreement required, inter alia, that U.S. Wireless securities be provided to Janvrin et al. and

that $1.5 million be paid to Janvrin et al. in cash installments through October 2001.  As a

signatory to the Settlement Agreement, Dr. Hilsenrath provided a broad release of known and

---

[2] See Janvrin Holdings Ltd. v. Hilsenrath, No. C 02-1068 CW, at 12 (Order Mar. 5, 2007) ("Plaintiffs next argue that Hilsenrath's new allegations must have been made in bad faith because he must have known about the facts underlying those allegations earlier.  This point is particularly well taken with respect to Equity Trust. . . .") (Ex. A).

[3] Kalman and Perkins assume the truth of the facts asserted in the Complaint for purposes of this Motion but reserve the right to contest those alleged facts.

[4] The Settlement Agreement and other documents referenced herein form part of the allegations of the Complaint and are therefore appropriately considered by the Court in deciding this Motion.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994); Ott v. Home Savings & Loan Assoc., 265 F.2d 643, 646 & n.1 (9th Cir. 1958).

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Notice of Motion and Memorandum in Support of Motion to Dismiss or Strike

1    unknown legal claims to, <u>inter</u> <u>alia</u>, all officers, directors, agents, and employees of Janvrin et

2    al.  <u>See</u> Sett. Agmt. ¶ 5(b), (c).

3         In 2002, after U.S. Wireless declared bankruptcy, Janvrin et al. filed an action, <u>Janvrin</u>

4    <u>Holdings Ltd. et al. v. Hilsenrath</u>, C02-1068-CW (the "2002 Action"), in this Court alleging,

5    <u>inter</u> <u>alia</u>, that they had been fraudulently induced into entering the Settlement Agreement by

6    misstatements and material omissions by Dr. Hilsenrath and other executives of U.S. Wireless.

7    Compl. ¶¶ 36, 44.  Dr. Hilsenrath later filed counterclaims in the 2002 Action.  Compl. ¶ 70.  In

8    March 2007, the Court dismissed the claims of Janvrin et al. for lack of prosecution.  Compl.

9    ¶ 28.  Thereafter, the Court issued a default judgment on the counterclaims.

10        The sole factual allegation against Kalman and Perkins in the Complaint is that they

11   participated in a meeting in London in which they and counsel for Janvrin et al. "selected,

12   retrieved and photocopied HILSENRATH family records" for use in connection with the 2000

13   Actions.  Compl. ¶ 60.  According to the Complaint, this information was to be used to pressure

14   U.S. Wireless into the Settlement, and specifically to undermine Dr. Hilsenrath, who was

15   allegedly viewed as "the primary hurdle" to settling the 2000 Actions.  Compl. ¶ 61.  The

16   Complaint contains no allegations that Kalman or Perkins participated in initiating or

17   abandoning the 2002 Action.  Indeed, the Complaint alleges that Kalman and Perkins both left

18   ETJL in or before 2005, Compl. ¶ 22, and hence they could not have played a role in Janvrin et

19   al.'s ceasing to litigate the 2002 Action in early 2007.

20

21                              <u>**SUMMARY OF ARGUMENT**</u>

22        Liberally construed, the Complaint attempts to raise five causes of action under

23   California and federal law: (i) civil extortion or duress, (ii) tortious interference with contract,

24   (iii) invasion of privacy, (iv) malicious prosecution, and (v) violation of the Racketeer

25   Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1961, <u>et</u> <u>seq.</u>   Each of

26   these claims is defective, as demonstrated below.

27

28
                                         4

1    But the Court need not reach the specific deficiencies of these claims.  Under the

2    applicable personal jurisdiction, venue, and forum non conveniens analyses, this action should

3    be dismissed in favor of the courts of Jersey in the British Isles.  That forum is far more

4    convenient in terms of the location of the great majority of the parties, witnesses, and

5    documents.  It is the forum with the greatest interest in the alleged actions forming the basis of

6    the Complaint and the forum whose law is properly applied to the conduct alleged.  Jersey is

7    also the forum chosen by Dr. Hilsenrath himself in forming his relationship with ETJL.  Indeed,

8    as a counterpoint to the "purposeful availment" concept invoked by Plaintiffs, it must be noted

9    that Dr. Hilsenrath's relationship with ETJL (and consequently Kalman and Perkins) arose

10   from his decision to ensconce and manage his wealth outside of California.  Yet he now

11   demands extensive accommodation from California's courts for his multifarious litigation and

12   seeks to compel ETJL and others to defend a suit in a forum where they have no contacts.

13       To be sure, Plaintiffs have attempted to frame their Complaint as directed at California

14   conduct.  But because only litigative conduct occurred in California, the effort results in

15   fundamental defects in their lawsuit.  First, the claims are barred by California's litigation

16   privilege, codified at Cal. Civ. Code § 47, which creates an absolute privilege in respect of

17   communications within lawsuits and in the course of pre- or post-filing negotiations and

18   demands.  Second, the claims should be stricken pursuant to California's anti-SLAPP

19   legislation, codified at Cal. Code Civ. P. § 425.16, which protects (i) communications "within"

20   or "in connection with" legal proceedings, and (ii) communications concerning issues of public

21   significance (here, the alleged disclosure of documents reflecting misconduct of a public

22   company's CEO to that company's board of directors).  Third, most of the claims are barred by

23   Dr. Hilsenrath's broad releases of known and unknown claims in the Settlement Agreement.

24       The claims suffer from additional defects.  Plaintiffs cannot show that extortion (or

25   RICO violations) proximately caused them injury, because the alleged extortion was of U.S.

26

27

28

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wireless, not Dr. Hilsenrath.  To the extent that the Complaint asserts that Plaintiffs were the victims of the extortion, it is self-contradictory.  Plaintiffs cannot simultaneously maintain (i) that they were extorted by Defendants' disclosure of personal financial information in 2001, and (ii) that they were unaware of that disclosure until June 2005.  Moreover, if Plaintiffs claim that they were extorted by the alleged improper disclosures in 2001, their claims are time barred.  A "discovery rule" is to no avail, because one cannot be extorted by that which has not been discovered.  Moreover, even if a discovery rule were applied—and applied to the maximum conceivable extent—the claims for invasion of privacy and tortious interference with contract are still barred under the applicable two-year statutes of limitations, because Dr. Hilsenrath by his own attestation had notice of the alleged improper disclosures through a fax he received on June 14, 2005, but Plaintiffs did not file this action until June 25, 2007.

Plaintiffs cannot succeed on their malicious prosecution claim, which requires a showing (i) that the 2002 Action was brought without probable cause, (ii) that it was brought with malice, and (iii) that the claims were determined in Dr. Hilsenrath's favor on the merits. Janvrin et al. entered into a settlement in which they obtained stock and promises of payment from U.S. Wireless.   Both were worthless within a matter of weeks on account of the public release of the results of the company's investigation of Dr. Hilsenrath.  This investigation was not revealed to Janvrin et al. even though it was underway at the time the Settlement was negotiated and concluded.  In order to prevail on their claim, Plaintiffs must show that no reasonable lawyer would have viewed the 2002 Action as viable, that the litigation was brought for some ulterior and malicious purpose, and that the default judgment was a favorable outcome on the merits of their claims—and they must make each of these showings prima facie on a "probability of success" standard which the Court may decide as a matter of law. Plaintiffs cannot carry this burden.

The RICO claim is also ill-conceived, inter alia, because none of the elements of a

6

1   RICO claim have been pleaded; because Plaintiffs cannot show a pattern or continuity of

2   racketeering activity; and because they cannot show proximate causation of their alleged

3   injuries.  Plaintiffs fail to identify an "individual" and an "enterprise" or to specify a cognizable

4   relationship between the two as required to plead a RICO claim.  Plaintiffs cannot show a

5   pattern of racketeering activity because they allege at most a single instance of extortion in

6   relation to the 2001 Settlement.  (Plainly, neither the filing nor the abandonment of a lawsuit is

7   racketeering activity under any possible interpretation of RICO.)  Plaintiffs cannot show

8   proximate causation because they cannot coherently maintain (i) that their injuries were caused

9   by disclosures that coerced them into the Settlement in 2001 and (ii) that they were unaware of

10  those disclosures until 2005.

11         The claims suffer from other defects as well.  Each of Plaintiffs' claims should be

12  dismissed with prejudice.

13                                **ARGUMENT**

14  **I.    PLAINTIFFS HAVE NOT ALLEGED SUFFICIENT FORUM CONTACTS TO
           ESTABLISH PERSONAL JURISDICTION OVER THESE DEFENDANTS.**

15

16         Kalman and Perkins adopt and incorporate by reference the personal jurisdiction

17  arguments of Defendants ETJL, Candover, Insinger, Jardine, Bougeard, and Brown.  Kalman

18  and Perkins agree with the analytical framework set forth in those motions to dismiss and with

19  the minimum contacts and reasonableness analyses therein.  In order to avoid duplication of

20  effort by both the litigants and the Court, Kalman and Perkins will confine themselves herein to

21  raising additional considerations applicable specifically to their circumstances.

22         The jurisdictional analyses in the above-mentioned motions to dismiss apply with

23  special force to Kalman and Perkins, because Plaintiffs fail to allege even a single direct

24

25

26

27

28                                         7

contact by either of these Defendants with California.[5]   Nor do Plaintiffs allege facts sufficient to support personal jurisdiction in virtue of alleged actions by Kalman and Perkins outside the jurisdiction in their capacity as corporate fiduciaries.[6]   There is no colorable basis for general jurisdiction on these facts.   The Complaint does not allege, nor could it, that Defendants Kalman and Perkins reside in this District or regularly do business here.   Specific jurisdiction is also lacking, because Plaintiffs have not alleged sufficient minimum contacts with the forum, nor are they able to satisfy the <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980), analysis in view of the serious hardship that these Defendants would face in defending the present action 8,000 miles away from their place of residence and business, in a jurisdiction where Plaintiffs chose specifically <u>not</u> to do their trust business.

Plaintiffs attempt to paper over this fundamental flaw in their case by citing cases that permit a "conspiracy theory" of personal jurisdiction in Maryland, but no such theory is recognized in California.   See <u>Mansour v. Superior Court</u>, 38 Cal. App. 4th 1750, 1760 (Cal. App. 4th 1995) ("California does not recognize conspiracy as a basis for acquiring personal jurisdiction over a party") (collecting cases).   Similarly, an "agency theory" of jurisdiction is not viable, because there is no allegation in the Complaint that Kalman and Perkins were the principals in the supposed agency relationship—Janvrin et al. were.   Nor can Plaintiffs properly allege personal jurisdiction on the basis of a tortious effect or injury in California since the

---

[5] Plaintiffs incorrectly suggest in a related submission that ETJL's contacts with California should be imputed to Kalman and Perkins.  <u>See</u> Opp. to Mot. Dism. at 14-15.  The fiduciary shield doctrine protects individuals from being subject to personal jurisdiction solely on the basis of their employers' contacts within a given jurisdiction.  <u>See</u> <u>Davis v. Metro Prod.</u>, 885 F.2d 515, 520 (9th Cir. 1989); <u>LeDuc v. Kentucky Cen. Life Ins. Co.</u>, 814 F. Supp. 820, 824 (N.D. Cal. 1992).

[6] Non-California U.S. contacts are irrelevant to the personal jurisdiction analysis, including under RICO, because Defendants were served with process outside the United States.  <u>See</u> <u>Doe I v. Unocal Corp.</u>, 27 F. Supp. 2d 1174, 1184 (C.D. Cal. 1998) (RICO nationwide service provisions inapplicable where defendant is served overseas; state long-arm analysis applicable); <u>see also</u>, <u>Stauffacher v. Bennett</u>, 969 F.2d 455, 460-61 (7th Cir. 1992) (similar).

alleged tortious actions were taken by a corporate fiduciary in his official capacity outside California and there is no allegation that the fiduciary had a personal financial stake in the transactions.  See Seagate Tech. v. A.J. Kogyo Co., Ltd., 219 Cal. App. 3d 696, 1705 (Cal. App. 1st 1990) (relying on Sibley v. Superior Court, 546 P.2d 322 (Cal. 1976)).

## II.    THIS ACTION SHOULD BE DISMISSED BECAUSE IT HAS BEEN BROUGHT IN THE WRONG COURT.

### A.    Valid forum selection clauses require dismissal in favor of Jersey.

Kalman and Perkins adopt and incorporate by reference the venue arguments of Defendants ETJL and Bougeard and Brown.  The agreements that constitute the relationship between Dr. Hilsenrath and ETJL contain strong forum selection terms in favor of the courts of Jersey.  See ETJL Mot. Dism., Austin Decl. Ex. F ¶ 8 & G ¶ 8 ("THIS AGREEMENT shall be governed by construed and interpreted in accordance with the laws of the Island of Jersey, and all parties shall submit to the jurisdiction of the courts of the said Island.").   Those terms were bargained for and agreed by the parties as an aspect of Dr. Hilsenrath's decision to conduct his financial affairs outside the United States and as a protection for ETJL and its officers and employees who deal with clients from numerous countries and wish to avoid the very serious burden of having to litigate in multiple and distant fora.  The Court should dismiss the present action for improper venue on the basis of this valid forum selection provision.  See Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133 (9th Cir. 2004).

### B.    The Complaint should be dismissed based on *forum non conveniens*.

Kalman and Perkins adopt and incorporate by reference the forum non conveniens arguments of Defendants ETJL and Bougeard and Brown.  Kalman and Perkins wish only to emphasize the very serious financial and personal hardship that would ensue from their having to litigate this seven-year-old claim eight thousand miles from their place of residence and

business—i.e., Jersey—where Dr. Hilsenrath chose to conduct his financial affairs and agreed to submit to jurisdiction.

## III.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

The Complaint contains eleven purported causes of action.  Some of these are remedies rather than causes of action or are otherwise not legally cognizable.  See, e.g., Temple Cmty. Hosp. v. Superior Court, 976 P.2d 223 (Cal. 1999) (no California tort of spoliation of evidence); PCO Inc. v. Christiansen, Miller, 150 Cal. App. 4th 384, 398 (Cal. App. 2d 2007) (constructive trust is equitable remedy, "not a substantive claim for relief").  Liberally construed, the Complaint attempts to raise five colorable causes of action under California and federal law: (i) civil extortion or duress, (ii) tortious interference with contract, (iii) invasion of privacy, (iv) malicious prosecution, and (v) violation of RICO.  Each claim is fatally defective.

In addition to the legal defects in the claims asserted, the Complaint fails to satisfy the requirements of Fed. R. Civ. P. 8 in respect of these Defendants, i.e., by providing each defendant with fair notice of the claims against him.  See Fed. R. Civ. P. 8(a)(2); Gauvin v. Tompatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).  Under Rule 8, a plaintiff is required to make specific allegations concerning the actions and liability of each defendant.  A plaintiff may not, as Plaintiffs do here, "generally allege[] all claims against 'all defendants,' without identifying which defendant is responsible for his alleged injuries."  Foley v. Bates, 2007 U.S. Dist. LEXIS 38063, at *9-10 (N.D. Cal. May 14, 2007).  The Complaint should be dismissed for this additional reason.

### A.    All of the claims other than malicious prosecution are barred by the releases in the 2001 Settlement Agreement.

In the Settlement Agreement, Dr. Hilsenrath provided a broad release of legal claims to, inter alia, all "officers, directors, agents, servants, [and] employees" of Janvrin et al.  Sett.

Agmt. ¶ 5(b).  This release encompassed all claims "insofar as they are or should be known or suspected to exist, and whether specifically mentioned or not, which may exist or might be claimed to exist at or prior to the date of this Agreement."  Id.  The Agreement further states that "[t]he release shall be a full and final release applying to all unknown or unanticipated damages rising out of the relationship between the parties, as well as to those now known or disclosed." Id. ¶ 5(c).  Dr. Hilsenrath also specifically waived any rights he might have had under Cal. Civ. Code § 1542, which protects a releasor from inadvertently waiving unknown claims.  See Sett. Agmt. (Ex. B) (reciting statutory language).  Each party to the Agreement, including Dr. Hilsenrath, acknowledged having been "represented by competent legal counsel" and "fully apprised of the legal consequences" of signing the Agreement.  Id. ¶ 2(e).

Even if, as Plaintiffs contend, they were unaware of the alleged improper disclosures of financial information until 2005—a position irreconcilable with their allegation that the disclosures were the basis for their alleged extortion—the above releases categorically bar their claims, because the releases clearly extend beyond known or even suspected claims to encompass "all unknown or unanticipated damages" arising from the relationship between the parties and include an express waiver of statutory rights in respect of unknown claims.[7]  See Pacific Greyhound Lines v. Zane, 160 F.2d 731, 736 (9th Cir. 1947) (protections of § 1542 are waivable); San Diego Hospice v. County of San Diego, 31 Cal. App. 4th 1048, 1053-54 (Cal. App. 4th 1995) (same).   The release specifically benefits officers, directors, agents, and employees of Janvrin et al.  Kalman and Perkins were directors of Janvrin et al.  See Compl. ¶ 21.  Hence, any known, suspected, or unknown claim against them was released and cannot be litigated.  This includes Plaintiffs' claims for extortion, tortious interference with contract,

---

[7] Even if the releases were construed as reaching only known or suspected claims, Plaintiffs cannot tenably claim they were extorted through the threat of disclosures in 2001 while also claiming they did not even suspect those disclosures at the time.

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Notice of Motion and Memorandum in Support of Motion to Dismiss or Strike

1    invasion of privacy, and RICO.  The only claim not barred by these releases is the malicious

2    prosecution claim.

3         **B.    Plaintiffs' extortion, tortious interference, invasion of privacy,**
          **and RICO claims are time barred.**

4

5         Plaintiffs' extortion, tortious interference with contract, and invasion of privacy claims

6    all arise from the conduct of Defendants in connection with negotiation of the Settlement

7    Agreement.  Those claims accrued no later than 2001, when the Settlement Agreement was

8    concluded.  The present action was filed in 2007, more than six years after accrual.  Hence,

9    each of these claims is time barred.  See Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir.

10   2001) (4 years for RICO); Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal.

11   2000) (2 years for tortious interference with contract); Leeper v. Beltrami, 347 P.2d 12,

12   21 (Cal. 1959) (3 years for extortion); Christoff v. Nestle USA, Inc., 152 Cal. App. 4th 1439,

13   1463 (Cal. App. 2d 2007) (2 years for invasion of privacy); Knoell v. Petrovich, 76 Cal. App.

14   4th 164, 168 (Cal. App. 2d 1999) (2 years for tortious interference with business advantage).

15        Nor could the discovery rule save the majority of Plaintiffs' claims.  Plaintiffs' claims

16   necessarily rely on the premise that the alleged improper disclosures proximately caused Dr.

17   Hilsenrath to acquiesce in the (allegedly extortionate) terms of the Settlement.  If that is true,

18   the extortion, tortious interference, invasion of privacy, and RICO claims are time barred.  By

19   no later than 2001, Plaintiffs were on, at a minimum, inquiry notice of the conduct and injuries

20   alleged in the Complaint.  See El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1039 (9th Cir.

21   2003) ("[T]he discovery rule permits delayed accrual until a plaintiff knew or should have

22   known of the wrongful conduct at issue"); Pincay, 238 F.3d at 1109 ("[T]he civil RICO

23   limitations period begins to run when a plaintiff knows or should know of the injury that

24   underlies his cause of action"); Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914, 920 (Cal.

25   2005) (plaintiff must make reasonable inquiry and is charged with knowledge of information

26   that would have been revealed by such investigation).

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Finally, even if a discovery rule were applied—and applied to the maximum conceivable extent—the claims for invasion of privacy and tortious interference with contract would be time barred under the applicable two-year statutes of limitations. Dr. Hilsenrath by his own attestation had notice of the alleged improper disclosures through a fax he received on June 14, 2005, yet the Plaintiffs did not file this action until June 25, 2007, more than two years later. See Hilsenrath Decl. ¶ 5 & Ex. A (Jan. 26, 2007) (Ex. C). Plaintiffs' claims for tortious interference and invasion of privacy should therefore be dismissed with prejudice.

**C.    The state law claims should be dismissed for additional reasons.**

**1.    Plaintiffs' state law claims should be stricken under § 425.16.**

Each of Plaintiffs' state law claims should be stricken pursuant to California's anti-SLAPP statute, codified at Cal. Code Civ. P. § 425.16. Evaluating a motion under this section requires a two part analysis: (i) do the challenged causes of action "arise from" protected activity (i.e., speech or petition); and if so, (ii) can the plaintiff demonstrate a probability of success on these claims? See Rusheen v. Cohen, 128 P.3d 713, 717-718 (Cal. 2006). If the defendant shows that the causes of action arise from protected activity, the burden shifts to the plaintiff to demonstrate a likelihood of success on the merits of the lawsuit. Where, as here, a plaintiff cannot show probable success, the case may be dismissed as a matter of law. See, e.g., Troy Group, Inc. v. Tilson, 364 F. Supp. 2d 1149, 1155 (C.D. Cal. 2005).

When a defendant is sued for activity in connection with litigation, it need not make a showing of "public interest" in order for § 425.16 to apply. See Briggs v. Eden Council for Hope & Opportunity, 969 P.2d 564 (Cal. 1999). This is because the statutory definition of "act in furtherance of a person's right of petition or free speech" includes (i) statements "before" a

13

1    judicial proceeding and (ii) statements "in connection with any issue under consideration or

2    review by" a judicial body.  Cal. Code Civ. P. § 425.16(e)(1) & (2).  These two prongs of the

3    definition do not include a "public interest" limitation as the other two prongs do.  See id.; cf.

4    id. § 425.16(e)(3) & (4); Briggs, 969 P.2d at 571.  The protection of the statute, moreover,

5    encompasses not only the filing of litigation and statements in court, but also statements made

6    in the course of settlement negotiations and demands.  See Blanchard v. DIRECTTV, Inc., 123

7    Cal. App. 4th 903 (Cal. App. 2d 2004).  Because this lawsuit relates solely to such litigative

8    activity, § 425.16 clearly applies.  Consequently, it is Plaintiffs' burden to demonstrate a

9    probability of success on the merits of each state law claim.  Plaintiffs cannot do so.[8]

10

11                    **2.    Plaintiffs' state law claims are barred by the litigation privilege of**
                             **Cal. Civ. Code  § 47.**

12

13            With the exception of malicious prosecution, the state law causes of action in the

14    Complaint are also barred by California's litigation privilege, codified at Cal. Civ. Code § 47.

15    See O'Keefe v. Kompa, 84 Cal. App. 4th 130 (Cal. App. 4th 2000).  The privilege is broadly

16    construed to apply to any communication that bears some relation to an ongoing or anticipated

17    lawsuit.  See Flores v. Emerich & Fike, 416 F. Supp. 2d 885, 899-900 (E.D. Cal. 2006).   This

18    includes statements made in pursuit of settlement.  See Arochem v. Buirkle, 767 F. Supp. 1243,

19

20    _____
      [8]  In the alternative, Kalman and Perkins rely on § 425.16(e)(4), which requires a showing of

21    "public interest." The actions alleged in the Complaint amount to the disclosure of documents
      reflecting criminal improprieties by the CEO of a public corporation to that corporation's board

22    of directors.  In the post-Enron world, the public importance of such communications is beyond
      question, and such activity should be considered protected and non-actionable under the anti-

23    SLAPP statute as a matter of law.  The failure of U.S. Wireless was not an insignificant or
      isolated event of corporate misgovernance.  In the words of Dr. Hilsenrath himself, "[t]he

24    number of lives affected by the failure of US Wireless is almost too great to calculate."
      Hilsenrath Decl. ¶ 10 (Ex. C).  Statements concerning the activities of public companies have

25    been held by a number of California courts to implicate the "public interest" so as to trigger the
      anti-SLAPP statute.  See Tilson, 364 F. Supp. 2d at 1153-1154 (collecting cases so holding).

26

27

28                                              14
      _____
      Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
      Notice of Motion and Memorandum in Support of Motion to Dismiss or Strike

1248 (S.D.N.Y. 1991).  Any doubt as to whether the privilege applies should be resolved in favor of its application.  See Morales v. Cooperative of American Physicians, Inc., 180 F.3d 1060, 1062 (9th Cir. 1999).

Allegations of impropriety and conspiracy, such as those at issue here, do not defeat the privilege.  See, e.g., Blanchard, 123 Cal. App. 4th at 921; Doctors' Co. Ins. Servs. v. Superior Ct., 225 Cal. App. 3d 1284, 1294 (Cal. App. 3rd 1990); Pettitt v. Levy, 28 Cal. App. 3d 484 (Cal. App. 5th 1972).  Indeed, it has been specifically found that the privilege applies to the release of confidential information in the context of litigation.  See Jacob B. v. County of Shasta, 154 P.3d 1003, 1010 (Cal. 2007).  The litigation privilege thus bars Plaintiffs' claims for extortion/duress, tortious interference with contract, and invasion of privacy. These claims should be dismissed without leave to amend.

### 3.    The extortion claim must fail because Plaintiffs were not extorted and cannot show proximate causation.

Extortion by its nature requires the defendant to have obtained property from the plaintiff through the wrongful use of force or fear.  See Kehoe v. City of Berkeley, 67 Cal. App. 3d 666, 677 (Cal. App. 1st 1977).  No such allegation is made here.  Rather, Plaintiffs appear to contend that U.S. Wireless was extorted, unbeknownst to them at the time.  The core allegation in the Complaint as regards extortion is that "on several documented occasions between December 2000 and April 2001 defendants through their attorneys made specific threats to employees and advisors of US Wireless stating that they will disturb the company by use of the stolen records if their demands were not met." Compl. ¶ 62. The Hilsenraths are not alleged to be among the "employees and advisors" who received threats.  Moreover, to the extent that Plaintiffs are asserting injury related to the disclosure of their personal information, it is because the information was purportedly disclosed, not because of any threat of future disclosure.

The Complaint goes on to allege that "under pressure of the above threats," the U.S.

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Notice of Motion and Memorandum in Support of Motion to Dismiss or Strike

1    Wireless Board of Directors settled the case and launched a "secret investigation" of Dr.

2    Hilsenrath.  Id. ¶ 63.  Dr. Hilsenrath has attested elsewhere that he was unaware of the secret

3    investigation at the time of the 2001 Settlement Agreement and was unaware of the alleged

4    improper disclosures until 2005.  See Hilsenrath Janvrin Decl. ¶ 8.[9]  In sum, Plaintiffs were not

5    threatened and therefore cannot state a claim for extortion.

6         Moreover, Plaintiffs cannot show proximate causation for damages allegedly suffered

7    by U.S. Wireless on account of extortion.  See, e.g., Holmes v. Sec. Investor Prot. Corp., 503

8    U.S. 258, 269 (1992) (under common law concepts of proximate causation, plaintiff whose

9    harm results from injury to third person is too remote to recover); see also Pitman v. City of

10   Oakland, 197 Cal. App. 3d 1037, 1046 (Cal. App. 1st 1988) (claim fails where plaintiff's own

11   wrongdoing was proximate cause of injury); Janvrin, No. C 02-1068 (Order re Default Jmt.

12   July 18, 2007) ("The Court finds that Oliver Hilsenrath fails to plead or otherwise provide

13   evidence of a causal connection between Counterdefendants' tortious acts and the loss of his

14   job and wealth.") (Ex. D).

15              **4.    Plaintiffs cannot state a claim for malicious prosecution.**

16        Plaintiffs allege that the 2002 Action amounted to malicious prosecution, relying largely

17   on the default judgment recently issued by this Court.  California courts have long held that

18   actions for malicious prosecution are disfavored.  See, e.g., Sebastian v. Crowley, 101 P.2d

19   120, 124 (Cal. App. 4th 1940); Ball v. Rawles, 28 P. 937, 938 (Cal. 1892).  To prevail on a

20   malicious prosecution claim, a plaintiff must show that (i) the defendant instituted the prior

21   proceeding, (ii) without probable cause, (iii) with malice, and (iv) there was a favorable

---

[9] "I had no idea . . . at any time before mid-2005 that [ETJL] had released this information.  I had been interviewed by the U.S. Wireless Audit Committee prior to the signing of the Settlement Agreement, but they did not disclose to me any documents they had received or otherwise disclose the factual basis for their inquiries.  I did not sign the Settlement Agreement in 2001 with knowledge that my trust had been invaded . . . ."  Hilsenrath Janvrin Decl. ¶ 8.

termination.  See <u>Downey Venture v. LMI Ins. Co.</u>, 66 Cal. App. 4th 478, 494 (Cal. App. 2d 1998).  Because this action is within the purview of section 425.16, it is Plaintiffs' burden to demonstrate a probability of success on each of these elements to proceed.  They cannot do so.

Kalman and Perkins were not parties to the 2002 Action.  Plaintiffs have not alleged that Kalman and Perkins initiated the 2002 Action or indeed made any allegation concerning their role (if any) in the Action.  See Compl. ¶¶ 113-120.  Accordingly, the malicious prosecution claim as against Perkins and Kalman must be dismissed for failure to state a claim.

Even if Plaintiffs had alleged that these Defendants were involved in bringing the 2002 Action, they cannot show that the 2002 Action was brought without probable cause.  The existence of probable cause is an objective question to be decided by the Court as a matter of law.  See <u>Sheldon Appel Co. v. Albert & Oliker</u>, 765 P.2d 498, 499 (Cal. 1989).  The question the Court must consider is whether "any reasonable attorney would have thought the claim was tenable."  <u>Id.</u> at 511.  Janvrin et al. entered into a settlement in which they accepted, <u>inter</u> <u>alia</u>, U.S. Wireless stock and promises of cash installment payments in satisfaction of their claims.  Compl. ¶ 63.  Within weeks of reaching the Settlement, Dr. Hilsenrath was publically ousted, U.S. Wireless was insolvent, and the stock and promises of payment were worthless.  Compl. ¶ 66.  The investigation that led to Dr. Hilsenrath's termination had been underway at the time of the Settlement but was not disclosed to Janvrin et al.  On these facts, a reasonable attorney would have viewed the claim as tenable.  The Court may so conclude as a matter of law.[10]

---

[10] Plaintiffs aver that Janvrin et al. "instigated" the Audit Committee's investigation of Dr. Hilsenrath, see Compl. ¶¶ 67-69, and thus imply that Janvrin et al. were aware of that investigation at the time of the 2001 Settlement Agreement, contrary to the contentions of Janvrin et al. in the 2002 Action.  This line of argument at most indicates a factual dispute in the 2002 Action, as exist in many cases, and cannot support Plaintiffs' claims of lack of probable cause and malice in commencing the Action.

1    The Complaint also fails to allege malice on the part of Kalman or Perkins. "For

2    purposes of a malicious prosecution tort, malice relates to the subjective intent or purpose with

3    which the defendant acted in initiating the prior action. . . . To establish this element, the

4    [plaintiff is] required to show that [the defendant] had an improper motive in bringing the prior

5    actions." Padres L.P. v. Henderson, 114 Cal. App. 4th 495, 522 (Cal. App. 4th 2003).

6    Plaintiffs must make a prima facie showing of improper motive by a preponderance of the

7    evidence. Id. No such showing has been made here, nor can it be. Notwithstanding Plaintiffs'

8    conclusory and unsupported assertion that the 2002 Action was a "new phase of the extortion,"

9    Compl. ¶ 69, in fact they have not alleged any motive on the part of Janvrin et al., much less

10   Kalman and Perkins, other than the stated purpose of the litigation, i.e., to recoup substantial

11   monetary losses suffered in connection with the 2001 Settlement.

12       Finally, dismissal of the 2002 Action against Plaintiffs for lack of prosecution does not

13   constitute a favorable termination on the merits. A technical or procedural termination does not

14   reflect favorably upon the merits of the claims. See Casa Herrera, Inc. v. Beydoun, 83 P.3d

15   497, 501 (Cal. 2004) ("[A] 'technical or procedural [termination] as distinguished from a

16   substantive termination' is not favorable for purposes of a malicious prosecution claim.")

17   (quoting Lackner v. La Croix, 602 P.2d 393, 394-96 (Cal. 1979)). Plainly, a litigant's decision

18   not to pursue a civil action may reflect not a lack of merit in the lawsuit but rather extraneous

19   factors such as inability to fund the litigation or the futility of litigating against defendants who

20   lack sufficient assets to satisfy the judgment sought in the litigation. See Oprian v. Goldrich,

21   Kest & Assoc., 220 Cal. App. 3d 337, 344 (Cal. App. 4th 1990) (does not reflect on merits); cf.

22   Minasian v. Sapse, 80 Cal. App. 3d 823, 827 (Cal. App. 2d 1978) (generally does reflect on

23   merits but may not in some cases). Moreover, judicial economy counsels against a rule that

24   would require a fight to the finish in order to avoid the risk of a malicious prosecution action:

25   "It would be a sad day indeed if a litigant and his or her attorney could not dismiss an action to

18

avoid further fees and costs simply because they were fearful such a dismissal would result in a malicious prosecution action." Oprian, 220 Cal. App. 3d at 344. This principle applies to the abandonment of the 2002 Action. Plaintiffs' malicious prosecution claim should be dismissed.

### D.    The RICO claim is defective.

The allegations of the Complaint, which focus on the alleged improper disclosure of documents in connection with the 2001 Settlement Agreement and the commencement and abandonment of the 2002 Action, fail to state a RICO claim. Plaintiffs in fact fail to allege nearly every elements of RICO. Even if Plaintiffs could remedy their pleading defects, moreover, they cannot, in view of the fundamental nature of their claims, plead a pattern of racketeering activity or proximate causation. Plaintiffs are unable to show closed-ended or open-ended continuity as required to establish a "pattern of racketeering activity." The alleged activities occurred within a discrete and relatively brief time period and carry no threat of repetition. Plaintiffs also fail to establish proximate causation under RICO (i) because they cannot claim for the losses of U.S. Wireless, and (ii) because Plaintiffs' own losses result from an alleged extortionate disclosure of documents in 2001, of which they claim, contradictorily, to have been unaware until 2005. The RICO claim is defective and should be dismissed.

### 1.    Plaintiffs fail to plead the elements of RICO.

A valid RICO claim must allege that one or more "persons" participated in one of several specified ways in the affairs of an "enterprise" through a "pattern of racketeering activity" (which requires inter alia at least two predicate acts), proximately causing injury to the plaintiff. See Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1089 (N.D. Cal. 2006). Plaintiffs in this action have satisfied none of these elements.

"[A] single individual or entity cannot be both the RICO enterprise and an individual RICO defendant." Id. at 1090 (internal quotation marks and citation omitted).

19

Plaintiffs must plead the existence of both one or more "persons" <u>and</u> a separate "enterprise." <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161 (2001).  They have not done so.  Rather, the Complaint sweepingly implicates all "Defendants" or "Equity et al.," without differentiating any defendant's role, in the RICO claim.   Complaint ¶¶ 91 and 132-135.[11]  Plaintiffs do not identify any Defendant as a "person" under RICO.  They do not explicitly identify an "enterprise" distinct from any alleged "persons."  They do not specify a relationship between the persons and the enterprise or even indicate the provision of § 1962(a)-(d) on which they rely.  Nor do they allege a criminal enterprise independent of the predicate acts alleged.  To the extent that a RICO enterprise is alleged at all, it appears to encompass all of the Defendants: "Defendants collectively act and acted as an organized crime cartel in violation of the RICO act."  Eleventh Cause of Action: RICO Claim; <u>see also</u> Compl. ¶¶ 29, 92(b).   No distinct "person" is identified, and the claim must fail as pleaded.

Plaintiffs' RICO claim is also deficient as a matter of law because Plaintiffs assert only a single RICO predicate act.  <u>See</u> 18 U.S.C. § 1961(1); Compl.  ¶¶ 92, 133.  As pleaded, an act of extortion took place through the improper disclosure of financial information in December 2000 and the alleged use of that information to coerce U.S. Wireless to enter into the April 2001 Settlement.  <u>See</u> Compl. ¶¶ 62-63.  As alleged, the wrongful activities were subservient to and uniformly directed toward the single objective of coercing a favorable settlement of the 2000 Actions.  <u>See</u> Compl. ¶ 61.  Plaintiffs therefore allege, at best, a single act of extortion and fail to plead a pattern of racketeering activity.  <u>See</u> <u>Warden v. Cross</u>, 94 Fed. Appx. 474, 476

---

[11] For this reason, the Complaint fails to meet the requirements of Fed. R. Civ. P. 8.  <u>See</u> § III.

1    (9th Cir. 2004) ("Simply put, a single 'episode' does not satisfy the pattern requirement.")

2    (citing <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1535-36 (9th Cir. 1992)).

3        Although Plaintiffs refer to the 2002 Action as "a new phase of the extortion," Compl.

4    ¶ 69, there is no basis for this far-fetched assertion.  "'Extortion is the obtaining of property

5    from another, with his consent, or obtaining of an official act of a public officer, induced by

6    wrongful use of force or fear, or under color of official right.'"  <u>People v. Sales</u>, 116 Cal. App.

7    4th 741, 749 (Cal. App. 4th 2004) (quoting Cal. Pen. Code § 518).  "Fear, such as will

8    constitute extortion, may be induced by a threat, either: 1. To do an unlawful injury to the

9    person or property of the individual threatened or of a third person; or, 2. To accuse the

10   individual threatened, or any relative of his, or member of his family, of any crime; or, 3. To

11   expose, or to impute to him or them any deformity, disgrace or crime; or, 4. To expose any

12   secret affecting him or them."  Cal. Pen. Code § 519.  Plaintiffs allege only the filing of a

13   public lawsuit, like thousands of others filed in this Court every year.  There is no allegation of

14   a "wrongful use of force or fear" or of any threat to injure a person or property or to expose any

15   "disgrace," crime, or secret.  The allegation that the 2002 Action was extortionate is baseless.

16       Because a RICO "pattern" requires at least two instances of racketeering activity, <u>i.e.</u>,

17   predicate acts, within ten years of one another, and Plaintiffs have asserted only one, Plaintiffs'

18   RICO claim fails as a matter of law.  <u>See</u> 18 U.S.C. § 1961(5).

19           **2.    Plaintiffs cannot establish a "pattern of racketeering activity."**

20       Even if Plaintiffs' had alleged a "person," an "enterprise," a cognizable relationship

21   between the two, two or more predicate acts, and the other basic requirements of a RICO claim,

22   this cause of action would still have to be dismissed.  In addition to the requirement of two

23   predicate acts, Plaintiffs must show that the predicate acts constitute a "pattern" by alleging

21

either "a series of related predicates extending over a substantial period of time" (closed-ended continuity) or "past conduct that by its nature projects into the future with a threat of repetition" (open-ended continuity).   H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241-242 (1989).   Plaintiffs cannot make either showing.

The allegations of the Complaint do not establish closed-ended continuity because a single act of extortion resulting in a settlement within a five-month timeframe—from December 2000 to April 2001—is not "repeated" activity occurring for a "substantial" period of time. See Religious Tech. Ctr. v. Wollersheim ("RTC"), 971 F.2d 364, 366 (9th Cir. 1992). The plaintiffs in RTC alleged that the defendants used private documents to extort a litigation settlement and later to extort money.  Id. at 365.  The Ninth Circuit noted that the "predicate acts" took place over "at most" six months and concluded that this was not a "substantial" period of time under RICO.  Id. at 367 ("A pattern of activity lasting only a few months does not reflect the 'long term conduct' to which RICO was intended to apply."). Here, as in RTC, the alleged episode of extortion spanning five months is not "long term conduct" under RICO.

The allegations of the Complaint also fail to establish open-ended continuity because there is no "threat of repetition" of the alleged extortion.  As Plaintiffs describe it, the extortion culminated in the April 2001 Settlement with U.S. Wireless.  See Compl. ¶ 63.  Because the alleged extortion achieved its purpose (the 2001 Settlement), there is no "threat of repetition." Turner v. Cook, 362 F.3d 1219, 1230 (9th Cir. 2004).  In Turner, the plaintiffs alleged that the defendants committed multiple acts of mail fraud in an effort to collect an outstanding tort judgment from them.  Id. at 1224-25.  Because the activities were "finite in nature," ceasing once the judgment was collected, the Ninth Circuit found no threat of repetition.  Id. at 1230. Similarly, in RTC, because the "goal" of the extortion was a litigation settlement, "there was no

22

threat of activity continuing beyond the conclusion of that suit." <u>RTC</u>, 971 F.2d at 366. As Plaintiffs have pleaded their claims, the same analysis must apply: if the sole purpose of the "extortion" was to leverage the 2001 Settlement, the threat ended with that Settlement. Moreover, if the gravamen of the extortion claim is the threat of exposure of hidden wrongdoing by Dr. Hilsenrath, that horse has bolted the barn. Not only have Plaintiffs failed to allege a "pattern of racketeering activity" through open-ended continuity, the very nature of their extortion claim makes it impossible for them to do so.[12]

### 3. Plaintiffs cannot establish proximate causation under RICO.

The RICO claim also is defective because, as this Court has previously concluded, there is no causal connection between Defendants' alleged wrongdoing and Plaintiffs' alleged injury. <u>See</u> <u>Janvrin</u>, No. C 02-1068 (Order re: Default Jmt. July 18, 2007) ("The Court finds that Oliver Hilsenrath fails to plead or otherwise provide evidence of a causal connection between Counterdefendants' tortious acts and the loss of his job and wealth.") (Ex. D). First, Plaintiffs cannot, as a matter of both standing and proximate causation, claim for losses suffered by U.S. Wireless. Second, as to losses allegedly suffered by Plaintiffs directly, there can be no proximate causation based on extortion where Plaintiffs claim they were not even aware of the allegedly extortionate information. Finally, Plaintiffs cannot show proximate causation by Defendants' alleged actions because their injuries were proximately caused by Dr. Hilsenrath's own wrongdoing.

---

[12] Plaintiffs make additional vague and conclusory allegations of continuity. <u>See</u>, <u>e.g.</u>, Compl. ¶ 92(d) (averring that "Equity et al are operating an efficient and lively criminal enterprise"). These allegations should be ignored for purposes of the motion to dismiss. <u>See</u>, <u>e.g.</u>, <u>Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.</u>, 981 F.2d 429, 437-38 (9th Cir. 1992) (general, conclusory, and vague allegations fail to state valid RICO claim); <u>Flores</u>, 416 F. Supp. 2d at 896-97 (a court is not required to accept as true allegations that are conclusory, argumentative, or unreasonable deductions of fact).

1    Under RICO, Plaintiffs must demonstrate that they were the <u>direct</u> victims of the

2    alleged predicate act.  <u>See</u> <u>Anza v. Ideal Steel Supply Corp.</u>, 126 S. Ct. 1991 (2006); <u>Holmes v.</u>

3    <u>Securities Investor Protec. Corp.</u>, 503 U.S. 258, 268 (1992); <u>Imagineering, Inc. v. Knighten</u>

4    <u>Bros. Constr.</u>, 976 F.2d 1303, 1311 (9th Cir. 1992).   Plaintiffs therefore cannot claim for

5    damages suffered by U.S. Wireless, even if it were true that U.S. Wireless was coerced into

6    settling.   Nor can Plaintiffs properly claim for loss of share value.  <u>See</u> Compl. ¶¶ 65, 77.

7    Under well-established Ninth Circuit law, a shareholder's injury based on losses in share value

8    is derivative and is not proximately caused by a RICO violation injuring the corporation.  <u>See</u>

9    <u>Hamid v. Price Waterhouse</u>, 51 F.3d 1411, 1420 (9th Cir. 1995) (injury must be "'independent

10   of the firm's fate.'") (quoting <u>Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago</u>, 877

11   F.2d 1333, 1336-37 (7th Cir. 1989)).[13]

12   

13        To the extent that Plaintiffs claim injury by virtue of Dr. Hilsenrath's alleged personal

14   contribution of 750,000 stock options to the 2001 Settlement, <u>see</u> Compl. ¶ 63, the claim also

15   fails.  In order to show proximate causation, the alleged predicate act of extortion must have

16   forced Dr. Hilsenrath to contribute his options as part of the Settlement.  If that is the case, he

17   must necessarily have known about the extortion in 2001, and the four-year statute of

18   limitations for a RICO action will have expired long ago.  <u>See</u> <u>Agency Holding Corp. v.</u>

19   <u>Malley-Duff & Assoc., Inc.</u>, 483 U.S. 143, 156 (1987); <u>Pincay</u>, 238 F.3d at 1108-09.  Plaintiffs,

20   however, contend that they were not aware of the alleged extortion when Dr. Hilsenrath

---

[13] Nor can Plaintiffs establish standing and proximate causation in respect of Dr. Hilsenrath's termination for cause by the board of directors of U.S. Wireless.  Again, under RICO, the injury to Plaintiffs must be direct and not mediated by an intervening cause.  Plaintiffs here admit that it was the U.S. Wireless board of directors that initiated the investigation of Dr. Hilsenrath and ultimately terminated him.  Compl. ¶¶ 63 & 65.  If Plaintiffs believe they have a grievance for wrongful termination, that grievance is with U.S. Wireless, not Defendants.

24

1    contributed to the 2001 Settlement, and indeed did not learn of the alleged improper disclosures

2    until June 2005.  If this is true, the alleged disclosures could not have forced Dr. Hilsenrath to

3    contribute to the Settlement, and hence Plaintiffs are unable to establish proximate causation of

4    their alleged injuries as a matter of law.

5           Finally, Plaintiffs cannot establish proximate causation where, as here, their alleged

6    injury results from their own wrongdoing.  See Pitman, 197 Cal. App. 3d at 1046; Janvrin, No.

7    C 02-1068 (Order re Default Jmt. July 18, 2007) ("The Court finds that Oliver Hilsenrath fails

8

9    to plead or otherwise provide evidence of a causal connection between Counterdefendants'

10   tortious acts and the loss of his job and wealth.") (Ex. D).

11                                        **CONCLUSION**

12          WHEREFORE, for the reasons stated above, Kalman and Perkins request that this

13   action be dismissed with prejudice on the merits or in the alternative be dismissed on the basis

14   of lack of personal jurisdiction, improper venue, and/or forum non conveniens.  Kalman and

15   Perkins further request that the Complaint be stricken pursuant to Cal. Code Civ. P. § 425.16.

16

17                                   Respectfully Submitted,
                                     BAACH ROBINSON & LEWIS PLLC
18

19                                        //s//
20   September 21, 2007               By: _____
                                          Sarah L. Knapp, Esq.
21                                        Baach Robinson & Lewis PLLC
                                          ATTORNEYS FOR DEFENDANTS
22                                        KALMAN & PERKINS

23

24

25

26

27

28                                          25