# Exhibit A

FILED

MAR - 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

269

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JANVRIN HOLDINGS LIMITED, CROSSGAR
LIMITED, and RYBURN LIMITED,

       Plaintiffs,

    v.

DR. OLIVER HILSENRATH,

       Defendant.

_____/

DR. OLIVER HILSENRATH,

       Counterclaimant,

    v.

JANVRIN HOLDINGS LIMITED, CROSSGAR
LIMITED, and RYBURN LIMITED,

       Counterdefendants.

_____/

No. C 02-1068 CW

ORDER GRANTING IN
PART AND DENYING IN
PART DEFENDANT'S
MOTION FOR LEAVE TO
FILE AN AMENDED
COUNTERCLAIM

    Defendant and Counterclaimant Oliver Hilsenrath moves for

leave to file an amended counterclaim.  Plaintiffs Janvrin Holdings

Limited, Crossgar Limited and Ryburn Limited oppose the motion.

The matter was heard on February 9, 2007.  Having considered all of

1   the papers filed by the parties, the evidence cited therein and

2   oral argument on the motion, the Court grants in part and denies in

3   part Defendant's motion.

4                            BACKGROUND

5       In this lawsuit, Plaintiffs seek to recover damages they

6   allegedly sustained because Defendant's alleged fraudulent

7   misstatements and omissions induced them to release claims against

8   U.S. Wireless in exchange for worthless U.S. Wireless stock and a

9   sum of money that U.S. Wireless never had the ability to pay.[1]

10  Defendant was the Chief Executive Officer and Chair of the Board of

11  Directors of U.S. Wireless.

12      In 2000, in this Court, Plaintiffs sued Hilsenrath, U.S.

13  Wireless and David Klarman, Vice President, General Counsel and

14  Secretary of U.S. Wireless, alleging that these defendants failed

15  to pay Plaintiffs for consulting services that Plaintiffs had

16  performed.  The parties negotiated a settlement of this lawsuit,

17  according to which the defendants were obliged to pay Plaintiffs

18  $ 1.5 million in four installments, to issue Plaintiffs over

19  2 million shares of registrable common stock in U.S. Wireless, and

20  to file a Form S-3 statement to register the stock.

21      Plaintiffs allege that they were induced to enter into the

22  settlement agreement by certain allegedly fraudulent misstatements

23  and omissions made by Hilsenrath.  Specifically, Plaintiffs allege

24

25      [1]  As discussed below, this case was originally filed against
    several Defendants.  The case has been dismissed against all
26  Defendants except for Hilsenrath who first appeared in this case in
    July, 2005.  He filed the current answer and counterclaim in
27  October, 2005.

28                                  2

that Hilsenrath negotiated the terms of the settlement agreement on
behalf of U.S. Wireless.  According to the allegations of the SAC,
during the course of the negotiations, representatives of the
company expressly represented that U.S. Wireless was in strong
financial health.  SAC ¶ 49.  Plaintiffs state that they themselves
confirmed this representation by reviewing U.S. Wireless's
financial statements and SEC filings, approved by the Audit
Committee of the Board of Directors, which "painted a picture of a
company in healthy financial condition with great prospects with
respect to its technology."  SAC ¶ 50.  Further, according to the
allegations of the SAC, Hilsenrath failed to disclose the existence
of an ongoing investigation into financial improprieties allegedly
committed by key U.S. Wireless personnel.  SAC ¶ 65.  Finally,
according to the allegations of the SAC, U.S. Wireless
representatives failed to disclose that the stock that Plaintiffs
would be obtaining under the settlement agreement was not actually
registrable on Form S-3.  SAC ¶ 71.

Plaintiffs allege that soon after the closing date of the
settlement agreement, they became aware of the misrepresentations
and omissions made to them during the course of the negotiations.
Specifically, Plaintiffs learned of a May 26, 2001 U.S.
Wireless press release that "revealed irregularities in the
Company's financial statements and misconduct by top management."
SAC ¶ 54.  According to a form that U.S. Wireless filed with the
SEC on July 12, 2001, these irregularities were uncovered as a
result of an investigation that began in February, 2001, when the
Audit Committee of the Board of Directors received certain

3

1  information.  Special outside counsel retained to conduct the

2  investigation interviewed Defendants Hilsenrath and Klarman on

3  March 5, 2001.  As a result of this questioning, Klarman was asked

4  to resign, which he did on March 6.  On March 15, special outside

5  counsel delivered a preliminary report to the Audit Committee,

6  which responded by authorizing counsel to hire an accounting firm

7  to perform forensic investigation services.  On May 25, the Board

8  of Directors voted to remove Defendant Hilsenrath from his

9  positions as Chief Executive Officer and Chair of the Board of

10  Directors.  SAC ¶ 65.  Also on July 12, U.S. Wireless issued a

11  press release announcing that "certain transactions had been

12  improperly recorded in . . . historical financial statements,"

13  which required that it make adjustments to its balance sheets.  SAC

14  ¶ 69.  Further, on or about June 22, Plaintiffs discovered that the

15  securities they acquired under the settlement agreement were not

16  actually registrable on Form S-3, because U.S. Wireless had failed

17  to file required forms with the Securities and Exchange Commission

18  during 2000.  SAC ¶ 57.

19      Plaintiffs allege that, to date, U.S. Wireless has paid only

20  $833,333 of the $1.5 million owed to them, and it has not

21  registered the stock.  SAC ¶ 60.  Hilsenrath disputes these claims,

22  alleging that the outstanding amount is $660,000 owed by U.S.

23  Wireless to Janvrin Holdings.  Counterclaims at ¶ 52.  U.S.

24  Wireless has filed a Chapter 11 bankruptcy petition and its stock

25  has been delisted by NASDAQ.  SAC ¶ 58, 59.

26      To recover their losses, Plaintiffs filed this lawsuit in

27  March, 2002, alleging that they were fraudulently induced to enter

28

For the Northern District of California

1   into the settlement agreement.  Plaintiffs assert that Defendants
2   are liable for breach of their fiduciary duty to Plaintiffs, fraud
3   by a fiduciary, fraud, negligent misrepresentation, and violation
4   of § 10(b) of the Securities Exchange Act of 1934.

5       At the time the lawsuit was filed, Hilsenrath was living in
6   Israel.[2]  By late 2004, Plaintiffs' claims had been dismissed
7   against all Defendants except Hilsenrath.  On October 13, 2004,
8   Plaintiffs filed a motion for default judgment against Hilsenrath.
9   In June, 2005, while the motion for default judgment was still
10  pending, Hilsenrath filed a motion to set aside the default
11  judgment.  The Court denied without prejudice the motion for
12  default judgment and granted the motion to set aside the default
13  judgment, finding that Plaintiffs failed properly to serve
14  Hilsenrath and that he demonstrated that he had no actual notice of
15  the lawsuit until January, 2005.  Hilsenrath filed his answer and
16  counterclaims in October, 2005.  His original counterclaims alleged
17  that Plaintiffs improperly accessed his confidential personal
18  financial information, "engaged in various tactics in the
19  [underlying] lawsuit, and made various threats to US Wireless
20  personnel to induce settlement, all of which led to execution of
21  the settlement agreement."  Counterclaims at ¶ 3.
22      Hilsenrath alleged that Plaintiffs were able to access his

23

24  _____

25      [2]Plaintiffs allege that Hilsrenrath fled to Israel to escape
    this lawsuit.  Hilsenrath, an Israeli citizen, declares that he
26  moved to Israel after being terminated from his position at U.S.
    Wireless and that he voluntarily returned to the United States in
27  2004 to face criminal charges related to his work at U.S. Wireless.

28

5

For the Northern District of California

1  personal information because Equity Trust[3], which acted as his

2  fiduciary also acted as fiduciary to Plaintiffs, managing the

3  investments and financial affairs of each.  Further, Hilsenrath

4  alleged that Equity Trust had a conflict of interest when it

5  attended a meeting at which Plaintiffs and representatives of

6  Equity Trust discussed the underlying lawsuit and that Equity Trust

7  improperly disclosed his personal information.  Hilsenrath alleged

8  that he entered into the settlement agreement due to threats and

9  economic duress based on the improper use of his personal financial

10  information.  Therefore, Hilsenrath asked the Court to (1) declare

11  the settlement agreement rescinded; (2) impose a constructive trust

12  on all of the property involved in the settlement; (3) award $26.5

13  million in damages based on a claim of invasion of privacy; and (4)

14  award the same damages based on claims of a conspiracy among the

15  Plaintiffs "to invade privacy, breach fiduciary duties and violate

16  governing statutes."  Counterclaims ¶¶ 6-19.  Further, Hilsenrath

17  alleged that U.S. Wireless failed because of the improper

18  disclosure of his and the company's confidential financial

19  information.

20      Hilsenrath now seeks to amend his counterclaims to allege

21  additional facts, add Equity Trust and Plaintiffs' counsel, Nixon

22  Peabody LLP[4] and attorney Glenn Westreich, as additional

23

24  ─────────────

25  [3]At the time of the underlying lawsuits, Equity Trust was known as Insinger De Beaufort Bank and Trust Company.

26  [4]At the time of the underlying lawsuit Plaintiffs were
27  represented by Lillick and Charles LLP.  Lillick and Charles has since merged with Nixon Peabody.

28                              6

counterclaim defendants[5] and to add his wife, Hana Hilsenrath (Hana), as a claimant for some of the counterclaims. Hilsenrath now asserts five claims. First, Hilsenrath asserts a claim for declaratory judgment against Plaintiffs and Equity Trust. He alleges that Plaintiffs have misstated the terms and performance of the settlement agreement and now seeks declaratory judgment regarding the terms of the settlement agreement, "that the only element of the settlement not performed was a payment of $660,000 due from U.S. Wireless to Plaintiff Janvrin Holdings, and that Oliver Hilsenrath himself performed all conditions of the settlement on his part to be performed." Counterclaims at ¶ 52.

Hilsenrath's proposed second claim for relief is for breach of contract against Equity Trust. He alleges that Equity Trust breached its contract with him when it shared his confidential information with Plaintiffs in the underlying case. Therefore, Hilsenrath seeks in damages the value of his U.S. Wireless stock at the time of the breach, $518 million, as well as other damages to be proved at trial.

In the proposed third counterclaim, Hilsenrath and his wife seek to sue all Plaintiffs as well as Equity Trust, Nixon Peabody and Westreich. This claim alleges that the proposed counterclaim defendants conspired to cause Equity Trust to breach its fiduciary duties to the Hilsenraths. They seek the same $518 million damages

---

[5]The proposed amended counterclaims state that the additional counterdefendants are third party defendants. Hilsenrath acknowledges that this is an error and seeks leave to correct the counterclaims before filing if his motion is granted. Therefore, Defendants' arguments against allowing the addition of third parties are not addressed in this order.

United States District Court
For the Northern District of California

1    for this claim.

2        The fourth proposed counterclaim is also alleged on behalf of

3    the Hilsenraths against all of the proposed counterclaim

4    defendants.   This claim alleges that the proposed counterclaim

5    defendants invaded the Hilsenraths' privacy and therefore that the

6    Hilsenraths are entitled to general and exemplary damages.

7        Finally, the Hilsenraths seek to allege that all of the

8    proposed counterclaim defendants engaged in racketeering activities

9    in violation of the United States Racketeer Influenced and Corrupt

10    Organizations Act.   On those grounds, the Hilsenraths seek treble

11    damages and attorneys' fees.

12                           LEGAL STANDARD

13    I.    Rule 15

14        Defendant moves under Rule 15(a) of the Federal Rules of Civil

15    Procedure, which provides that leave of the court allowing a party

16    to amend its pleading "shall be freely given when justice so

17    requires."   Leave to amend lies within the sound discretion of the

18    trial court, which discretion "must be guided by the underlying

19    purpose of Rule 15--to facilitate decisions on the merits rather

20    than on the pleadings or technicalities."   United States v. Webb,

21    655 F.2d 977, 979 (9th Cir. 1981) (citations omitted).   Thus, Rule

22    15's policy of favoring amendments to pleadings should be applied

23    with "extreme liberality."   Id.; DCD Programs, Ltd. v. Leighton,

24    833 F.2d 183, 186 (9th Cir. 1987) (citations omitted).

25        The Supreme Court has identified four factors relevant to

26    whether a motion for leave to amend should be denied: undue delay,

27    bad faith or dilatory motive, futility of amendment, and prejudice

28

1  to the opposing party.  See Foman v. Davis, 371 U.S. 178, 182

2  (1962).  The Ninth Circuit holds that these factors are not of

3  equal weight; specifically, delay alone is insufficient ground for

4  denying leave to amend.  See Webb, 655 F.2d at 980.  Further, the

5  "liberality in granting leave to amend is not dependent on whether

6  the amendment will add causes of action or parties."  DCD Programs,

7  833 F.2d at 186.  Rather, the court should consider whether the

8  proposed amendment would cause the opposing party undue prejudice,

9  is sought in bad faith, or constitutes an exercise in futility.

10 See id. (citing Acri v. International Ass'n of Machinists &

11 Aerospace Workers, 781 F.2d 1393, 1398-99 (9th Cir.), cert. denied,

12 479 U.S. 816 (1986); United States v. City of Twin Falls, 806 F.2d

13 862, 876 (9th Cir. 1986), cert. denied, 482 U.S. 914 (1987); Howey

14 v. United States, 481 F.2d 1187, 1190-91 (9th Cir. 1973); Klamath-

15 Lake Pharm. v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th

16 Cir.), cert. denied, 464 U.S. 822 (1983)).

17      "Futility alone can justify the denial of a motion for leave

18 to amend."  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004)

19 (citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)).

20 However, "a proposed amendment is futile only if no set of facts

21 can be proved under the amendment to the pleadings that would

22 constitute a valid and sufficient claim or defense."  Miller v.

23 Rykoff-Sexton, 845 F.2d 209, 214 (9th Cir. 1988) (citing Baker v.

24 Pacific Far East Lines, Inc., 451 F. Supp. 84, 89 (N.D. Cal.

25 1978)).

26      Prejudice typically arises where the opposing party is

27 surprised with new allegations which require more discovery or will

28

1  otherwise delay resolution of the case.  <u>See, e.g.</u>, <u>Acri</u>, 781 F.2d
2  at 1398-99; <u>Guthrie v. J.C. Penney Co.</u>, 803 F.2d 202, 210 (5th Cir.
3  1986).  The party opposing the motion bears the burden of showing
4  prejudice.  <u>See DCD Programs</u>, 833 F.2d at 186; <u>Beeck v. Aquaslide</u>
5  <u>'N' Dive Corp.</u>, 562 F.2d 537, 540 (8th Cir. 1977).

6  II.  Addition of Parties

7       Federal Rule of Civil Procedure 13(h) provides, "Persons other
8  that those made parties to the original action may be made parties
9  to a counterclaim or cross-claim in accordance with the provisions
10  of rule 19 and 20."  Hilsenrath moves for permissive joinder
11  pursuant to Rule 20.

12                            DISCUSSION
13  I.  Amendment of the Pleadings

14       Hilsenrath argues that he has only recently discovered the
15  extent to which Equity Trust, Nixon Peabody and Westreich were
16  involved in the conspiracy, which he alleges led to the downfall of
17  U.S. Wireless.  Plaintiffs argue that the amendment should be
18  denied because it is untimely, made in bad faith, futile and
19  prejudicial.  Plaintiffs also argue that joinder of the additional
20  counterdefendants is inappropriate.

21       1.   Timeliness

22       Plaintiffs first argue that Hilsenrath's amendment is
23  untimely, citing the four and a half years between the time the
24  complaint was filed and the original answer and counterclaims were
25  filed and the additional year before Hilsenrath sought leave to
26  amend the answer and counterclaim.  Plaintiffs argue that
27  Hilsenrath must have known about the additional facts that he
28

United States District Court
For the Northern District of California

For the Northern District of California

1  alleges at the time they occurred and at the time of his original

2  filing and that the proposed amendments are therefore untimely.

3  For example, Plaintiffs note that Hilsenrath alleges that he was

4  coerced to enter into the settlement agreement by their bad acts.

5  As Plaintiffs point out, one who is being coerced by definition

6  knows that it is happening.  Further, Plaintiffs note that

7  Hilsenrath alleged the improper disclosure in his original answer

8  and counterclaims.  In fact Hilsenrath himself argues that the

9  proposed counterclaim Defendants are "in essence, already here in

10  the case," which tends to show that Hilsenrath is not making new

11  allegations on new discoveries.  Reply at 10.  Equity Trust was

12  actually mentioned in the original counterclaim, although it was

13  not named as a counterclaim defendant.

14      Hilsenrath counters that the Court cannot hold the time

15  between the filing of the case and his answer against him because

16  the Court found that he had not been properly served when it set

17  aside the default against him.  Although the Court does not

18  consider the delay as evidence of bad faith on Hilsenrath's part,

19  it does consider the length of time that has passed since the case

20  was filed in its overall evaluation of the case and the potential

21  for prejudice to Plaintiffs.

22      Hilsenrath also argues that the delay between the filing of

23  his original counterclaims and his attempt to amend those claims

24  should not be held against him because the case is still in its

25  earliest stages and discovery has not yet begun.  Further,

26  Hilsenrath argues that Plaintiffs sought to stay the case after he

27  first appeared, which he opposed.  However, the Court notes that

28

11

1   Plaintiffs' decision to seek a stay of the case and to continue
2   dates in the case was related to criminal charges against
3   Hilsenrath related to his role as CEO of U.S. Wireless.

4        While delay alone is an insufficient ground for denying leave
5   to amend, it is an important factor, particularly when considering
6   prejudice to the opposing party.  See Webb, 655 F.2d at 980.  This
7   factor weighs against granting Hilsenrath leave to file an amended
8   counterclaim.

9        2.    Bad Faith

10       Plaintiffs next argue that Hilsenrath's new allegations must
11  have been made in bad faith because he must have known about the
12  facts underlying those allegations earlier.  This argument is
13  particularly well-taken with respect to Equity Trust.  Hilsenrath
14  himself argues that "Equity Trust is the alter ego of plaintiffs
15  and is, in essence, already here in the case."  Reply at 10.
16  Further Equity Trust is mentioned several times in the
17  counterclaims as presently plead.  See, e.g., Counterclaims at ¶ 1,
18  14, 18.  When he filed his original counterclaims Hilsenrath was
19  already aware that Equity Trust was the entity that held a duty to
20  him and he alleged that Equity Trust had improperly shared his
21  personal confidential information with Plaintiffs.  There is little
22  to explain why Hilsenrath only now seeks to amend his counterclaim
23  to include Equity Trust.  This factor weighs heavily against
24  allowing Hilsenrath to amend his counterclaim to include claims
25  against Equity Trust.

26       Plaintiffs also argue that Hilsenrath's attempt to include
27  Nixon Peabody and Westreich as counterdefendants is evidence of bad
28

1  faith because such joinder would create a conflict that likely
2  would require them to withdraw from representing Plaintiffs.
3  Plaintiffs argue that the claims are unlikely to succeed and
4  therefore the joinder is most likely a ploy to disqualify counsel.
5  As discussed below in the section on futility, there are several
6  potentially meritorious defenses to the claims that Hilsenrath
7  seeks to add.  This suggests bad faith and weighs against granting
8  leave to join those parties but does not weigh against allowing
9  modification of the claims against the existing counterclaim
10 Defendants or the joinder of Hana as a counterclaimant.
11    3.    Futility
12    Plaintiffs argue that Hilsenrath's proposed amendments are
13 futile because the claims are barred by applicable statutes of
14 limitations, statutes, case law, the doctrine of unclean hands and
15 the settlement agreement in the underlying suit.
16    Granting leave to amend is futile where the added claim would
17 be barred by the statute of limitations.  Deutsch v. Turner Corp.,
18 324 F.3d 692, 718 n.20 (9th Cir. 2003).  Plaintiffs argue that the
19 proposed second, third, fourth, and fifth claims for relief are
20 barred by the statute of limitations because Hilsenrath must or
21 should have known of the acts underlying his claims at the time
22 they occurred.  However, Hilsenrath contends that he was unaware of
23 the acts underlying his amended claims until June, 2005.  He argues
24 that the delayed discovery doctrine is applicable to these claims.
25 See Gryczman v. 4550 Pico Partners, Ltd., 107 Cal. App. 4th 1, 5
26 (2003) (noting that the California courts apply the delayed
27 discovery doctrine in cases where "'[t]he injury or the act causing
28

13

the injury, or both, have been difficult for the plaintiff to detect'; 'the defendant has been in a far superior position to comprehend the act and the injury'; and 'the defendant had reason to believe the plaintiff remained ignorant he had been wronged.'") (quoting April Enterprises, Inc. v. KTTV, 147 Cal. App. 3d 805, 831 (1983)). Whether a claimant should have been able to discover the facts giving rise to the claim is a question of fact under California law. Gryczman, 107 Cal. App. 4th at 7. Therefore, the statutes of limitation do not preclude the Court from granting leave to amend the complaint.

Plaintiffs next argue that the claims are precluded by various statutes. First, Plaintiffs argue that California Civil Code § 1714.10 precludes the claims against Nixon Peabody and Westreich. Under § 1714.10, an individual seeking to sue an attorney "for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client" must file a petition with the court, demonstrating that there is a reasonable probability that he or she will prevail on those claims. Cal. Civ. Code § 1714.10(a). The court must then enter an order allowing the individual to proceed with the claims before the pleading is filed. Id. Failure to obtain the court order before filing the pleading is considered a defense to the claims. Cal. Civ. Code § 1714.10(b).

Hilsenrath argues that his claims should be excepted from this provision because Nixon Peabody and Westreich breached a duty independent of their relationship with their clients when they

14

United States District Court

For the Northern District of California

accessed his private financial information and violated his right to privacy.  In support, Hilsenrath cites <u>Susan S. v. Israels</u>, 55 Cal. App. 4th 1290, 1299-1301 (1997), in which an attorney defending an individual charged with sexual battery served a subpoena on a medical facility to gain access to the victim's mental health records.  The attorney then disseminated the records to the defense team and used them to cross-examine the victim. There, the court held that § 1714.10 was not applicable because the attorney independently breached the victim's right to privacy. Unlike the attorney in <u>Susan S.</u>, Hilsenrath does not allege that Westreich or any representative of Nixon Peabody actively sought out the confidential information at issue.  In fact, Hilsenrath alleges that Equity Trust disclosed that information.  Nor does Hilsenrath allege that Westreich improperly disseminated the information.  The Court finds that § 1714.10 bars Hilsenrath's claims against Nixon Peabody and Westreich.

Plaintiffs next argue that the claims against Nixon Peabody and Westreich should be barred as a strategic lawsuit against public participation (SLAPP) under California Code of Civil Procedure § 425.16, the anti-SLAPP suit provision.  Although § 425.16 protects statements made by an attorney in the course of representing his or her clients in litigation, it only protects those statements that are made "in connection with an issue of public interest."  Cal. Code Civ. P. § 425.16(e).  Plaintiffs have not made a showing that the underlying litigation raised a question of public interest.  <u>Compare</u> <u>Dove Audio v. Rosenfeld</u>, 47 Cal. App. 4th 777, 834 (1996) (holding that "whether money designated for

15

United States District Court
For the Northern District of California

1  charities was being received by those charities" was a matter of

2  public interest).

3      Plaintiffs also argue that California Civil Code § 47(b),

4  which creates a privilege for statements made in the course of

5  judicial proceedings precludes all of Hilsenrath's counterclaims

6  and therefore weighs against granting leave to amend.  This statute

7  may bar Hilsenrath's claims.  Leave to amend to join Equity Trust,

8  Nixon Peabody and Westreich is denied on other grounds.  Although

9  § 47(b) may ultimately preclude all of Hilsenrath's counterclaims,

10  that is not sufficiently clear at this time to justify denial of

11  leave to amend the existing counterclaims against Plaintiffs or to

12  join Hana as a counterclaimant.

13      Plaintiffs' last two futility arguments fail because they rely

14  on Plaintiffs' account of the facts of the case.  First, they argue

15  that Hilsenrath's claims are precluded by the settlement agreement

16  in the underlying case.  In order for this to be true, Hilsenrath

17  would have to have known of the basis for his claims at the time of

18  the settlement agreement.  Further, it is arguable that

19  Hilsenrath's claims based on alleged improper conduct related to

20  the litigation were not covered by the settlement agreement.  Next,

21  Plaintiffs argue that Hilsenrath's claims "are merely derivative of

22  Hilsenrath's own misconduct" and are therefore barred by the

23  doctrine of unclean hands.  This argument requires a factual

24  finding that Hilsenrath acted inappropriately during the underlying

25  litigation.

26      Plaintiffs' futility argument weighs heavily against granting

27  Hilsenrath leave to amend the complaint to include claims against

28                                    16

United States District Court

For the Northern District of California

1  Nixon Peabody and Westreich.

2       4.   Prejudice

3       Plaintiffs' primary claim of prejudice is that joinder of

4  Plaintiffs' attorney and his law firm will create a conflict of

5  interest requiring the firm to withdraw.   Hilsenrath argues that

6  despite being filed in 2002, this case is still in its earliest

7  stages and therefore, this case is unlike those where leave to

8  amend has been denied because the opposing party would not have

9  sufficient time to respond or the amendments would delay a

10 scheduled proceeding.   See, e.g., Zivkovic v. S. Cal. Edison Co.,

11 302 F.3d 1080, 1087 (9th Cir. 2002) (upholding the denial of leave

12 to amend where the amendment would add new claims five days before

13 the end of discovery).

14      Hilsenrath argues that Plaintiffs will not be prejudiced

15 because they will have ample opportunity to seek new counsel.

16 However, this overlooks the reality of this case which was filed in

17 2002 and is based on previous litigation in which Plaintiffs'

18 present counsel represented them.   If Plaintiffs are forced to hire

19 new counsel at this juncture, they will have to pay new counsel to

20 familiarize themselves with the case.   Further, Plaintiffs will

21 have to spend additional time and resources bringing new counsel up

22 to date.

23      The prejudice Plaintiffs will suffer if Nixon Peabody and

24 Westreich are joined as parties weighs heavily against granting

25 leave to amend the counterclaim to include them as parties.

26 However, it does not weigh against the amendment of the

27 counterclaims against Plaintiffs, the amendment to join Equity

28
                                    17

United States District Court
For the Northern District of California

1 Trust or the amendment to join Hana as a counterclaimant.

2      5.   Balancing of Factors

3     On balance, the factors weigh against granting leave to amend
4 the counterclaim to include claims against Westreich, Nixon Peabody
5 and Equity Trust.  The factors that weigh against allowing those
6 amendments do not apply to amendment of the claims against
7 Plaintiffs or amendment of the claims to include Hana as a
8 counterclaimant.  Therefore, the Court denies Hilsenrath's motion
9 to file amended counterclaims against additional counterclaim
10 defendants and grants the motion to add information to the existing
11 claims and to add Hana as a counterclaimant

12 II.   Joinder of Additional Parties

13     Hilsenrath further claims that he should be permitted to join
14 Equity Trust, Nixon Peabody and Westreich as counterclaim
15 defendants and Hana as a counterclaimant pursuant to Rule 20(a),
16 citing the permissive nature of the rule.  Rule 20(a) permits the
17 joinder of defendants in an action if "there is asserted against
18 them jointly, severally, or in the alternative, any right to relief
19 in respect of or arising out of the same transaction, occurrence,
20 or series of transactions or occurrences and if any question of law
21 or fact common to all defendants will arise in the action."  Fed.
22 R. Civ. P. 20(a).  Plaintiffs do not contest the joinder of Hana as
23 a counterclaimant and the Court denies leave to amend the
24 counterclaim to the extent it would allow Hilsenrath to join Equity
25 Trust, Nixon Peabody and Westreich.

26

27

28

1

CONCLUSION

2      For the foregoing reasons, the Court grants Hilsenrath's

3 motion for leave to amend to the extent it seeks to amend the

4 existing counterclaims and to join Hana as a counterclaimant.

5 However, the Court denies the motion to the extent it seeks to

6 bring claims against Equity Trust, Nixon Peabody and Westreich.

7 (Docket No. 255).  Hilsenrath shall file his answer and amended

8 counterclaims within one week of the date of this order.

9      IT IS SO ORDERED.

10

11 Dated: _____MAR - 5 2007_____      _____

12                                          CLAUDIA WILKEN
                                            United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JANVRIN HOLDINGS LIMITED et al,

        Plaintiff,

    v.

HILSENRATH et al,

        Defendant.

Case Number: CV02-01068 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 5, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Glenn Edward Westreich M
Nixon Peabody LLP
Two Embarcadero Center
Suite 2700
San Francisco, CA 94111-3996

Julia D. Greer
Coblentz, Patch, Duffy & Bass
One Ferry Building, Suite 200
San Francisco, CA 94111-4213

Oliver Hilsenrath
822 Eastbrook Court
Danville, CA 94506

Dated: March 5, 2007

                    Richard W. Wicking, Clerk
                    By: Sheilah Cahill, Deputy Clerk