# Exhibit B

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3: 07-cv-03312 CW

## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

1. **Parties.** This Settlement Agreement and Mutual Release of all Claims (hereinafter "Agreement") is entered into by and between JANVRIN HOLDINGS LTD. ("JANVRIN"), RYBURN LTD. ("RYBURN"), CROSSGAR LTD. ("CROSSGAR"), DAVID DAHAN ("DAHAN"), HAIM HARUVI ("HARUVI"), PELICAN SECURITIES & INVESTMENTS, LTD. ("PELICAN SECURITIES"), AND PELICAN CONSULTING U.S.A., INC. ("PELICAN CONSULTING") on the one hand, and U.S. WIRELESS CORPORATION ("U.S. WIRELESS"), OLIVER HILSENRATH ("HILSENRATH") and DAVID KLARMAN ("KLARMAN") on the other (collectively, "the Parties").

2. **Recitals.** This settlement is made with reference to the following facts:

   This settlement is made with reference to the following facts:

   a. JANVRIN, CROSSGAR and RYBURN ("Plaintiffs") each brought separate complaints (the "Complaints") against U.S. WIRELESS, HILSENRATH and KLARMAN ("Defendants") in the Northern District of California federal district court arising out of the alleged breaches of Consulting Agreements, Option Agreements, duty to transfer stock, and fiduciary duty (Case Nos. C00 2334, C00 2336 and 2346), respectively (hereinafter "Federal Actions").

   b. U.S. WIRELESS brought counterclaims against JANVRIN, RYBURN, CROSSGAR, PELICAN SECURITIES, PELICAN CONSULTING U.S.A., DAHAN and HARUVI ("Counterclaims") for rescission, fraud, unjust enrichment and declaratory relief.

   c. Each Party hereto specifically denies that it or he breached any agreement with any other Party herein, and further denies that it or he engaged in any actionable conduct in regard to any other Party herein. The Parties agree that the settlement agreement is a compromise and will not be construed as an admission of liability at any time for any purpose against any person or entity who is a Party to this Agreement.

   d. The Parties, in order to avoid the uncertainty, delay and expense of time-consuming litigation, desire to settle fully and finally all differences between them on the terms and conditions set forth herein, which the Parties acknowledge and represent to be fair, reasonable, adequate, and in their mutual best interests.

   e. The Parties understand they are waiving significant legal rights and/or claims by signing this Agreement and voluntarily enter into this Agreement with a full and complete understanding of its terms and legal effect, with the intent to be bound thereby. The Parties are represented by competent legal counsel and acknowledge that they have been fully apprised of the legal consequences of this Agreement prior to execution of this Agreement.

*H. H.*

301937.2

3. **Definitions**

   a. "Exchange Offer" refers to the Exchange Offer Agreement and Memorandum dated January 12, 1998, whereby JANVRIN and all other shareholders in Labyrinth Communication Technologies Group, Inc. ("Labyrinth") exchanged shares of the common stock of Labyrinth for shares of the common stock of U.S. WIRELESS, and pursuant to which JANVRIN acquired 918,000 shares of U.S. WIRELESS common stock, subject to a vesting schedule.

   b. "Consulting Agreements" refer to the two agreements between U.S. WIRELESS and RYBURN and CROSSGAR dated January 1, 1997, pursuant to which RYBURN and CROSSGAR agreed to provide certain consulting services in exchange for options to purchase shares of common stock of U.S. WIRELESS.

   c. "Option Agreements" refer to the two agreements between U.S. WIRELESS and RYBURN and CROSSGAR dated July 31, 1996, granting RYBURN and CROSSGAR options to purchase shares of common stock of U.S. WIRELESS.

4. **Terms and Conditions of Settlement**

   In consideration of the promises and consideration herein contained, the parties agree as follows:

   a. U.S. WIRELESS shall use its best efforts to obtain the approval of its Board of Directors for this Agreement no later than March 23, 2001. DAHAN and HARUVI shall use their best efforts to obtain the approval and signatures of JANVRIN, CROSSGAR and RYBURN on this Agreement no later than March 23, 2001. It is expressly understood and agreed that this Agreement is conditional upon the foregoing approvals and signatures

   b. The Parties agree that the Closing Date shall be March 27, 2001, (the "Closing Date"), or such other time or date as all Parties shall agree in writing. The closing shall take place at the office of Lillick & Charles, LLP at 2:00 p.m. in San Francisco, California.

   c. As of the Closing Date, Plaintiffs shall have or receive an aggregate of 2,500,000 shares of U.S. WIRELESS common stock, as detailed below in subparts (d) (e) and (g).

   d. (i) As of the Closing Date, and at all times thereafter, the 367,200 shares of U.S. WIRELESS common stock held by and registered in the name of JANVRIN and represented by stock certificate No. US00307 (the "Rule 144 Shares") shall be freely tradable by JANVRIN, provided that until May 1, 2001 the public resale of the Rule 144 Shares by JANVRIN shall be subject to all of the provisions of Rule 144 except for Rule 144(d). U.S. WIRELESS acknowledges and confirms that, as of the date hereof, Rule 144(d) has been satisfied by JANVRIN with respect to the Rule 144

-2-

301937.2

Shares. The Company shall take all steps reasonably requested by JANVRIN to facilitate the sale of the Rule 144 Shares by JANVRIN including, but not limited to, providing to the transfer agent of the U.S. WIRELESS common stock (the "Transfer Agent"), upon the request of JANVRIN, an opinion of counsel for U.S. WIRELESS in the form attached hereto as Exhibit A and incorporated herein by reference, provided that JANVRIN has fully complied with the requirements of Rule 144, and has provided the necessary documentation.

    (ii)    In the event that all of the Rule 144 Shares have not been sold by JANVRIN pursuant to Rule 144 on or before May 1, 2001, U.S. WIRELESS shall, upon delivery on or after May 1, 2001 by JANVRIN to U.S. WIRELESS of all stock certificates for any Rule 144 Shares not theretofore sold by JANVRIN, issue or cause to be issued to JANVRIN a new stock certificate representing all remaining Rule 144 Shares held by and registered in the name of JANVRIN as of May 1, 2001 (the "Balance Shares"), which stock certificate shall bear no legend restricting the transfer of the Balance Shares. Immediately upon issuance of the Balance Shares, U.S. WIRELESS shall notify the Transfer Agent that no restrictions on transfer apply to the Balance Shares and shall withdraw any stop transfer instructions then in effect with respect to the Balance Shares.

    (iii)    U.S. WIRELESS shall cause the Rule 144 Shares to be included in the Registration Statement on Form S-3 to be filed by U.S. WIRELESS with the Securities and Exchange Commission (the "SEC") pursuant to Section 4.k. of this Agreement. To the extent that any Rule 144 Shares are included in such registration statement, all references to Registrable Securities in subparagraphs (k) or (l) hereof shall be deemed to include and refer also to such Rule 144 Shares and all references to Holder or Holders in subparagraphs (k) or (l). hereof shall be deemed to include and refer also to JANVRIN.

e. On the Closing Date, U.S. WIRELESS shall issue 665,600 shares of U.S. WIRELESS common stock to CROSSGAR and 367,200 shares of U.S. WIRELESS common stock to JANVRIN.

f. On the Closing Date, RYBURN shall exercise its option to purchase 900,000 shares of U.S. WIRELESS common stock, and CROSSGAR shall exercise its option to purchase 200,000 shares of U.S. WIRELESS common stock pursuant to the Option Agreements. U.S. WIRELESS shall waive receipt of the exercise price of the options.

g. On the Closing Date, U.S. WIRELESS shall issue 900,000 shares of U.S. WIRELESS common stock to RYBURN and 200,000 shares of U.S. WIRELESS common stock to CROSSGAR in satisfaction of RYBURN's and CROSSGAR's exercise of the Options.



-3-

301937.2

h. On the Closing Date, U.S. WIRELESS shall cancel the share certificates subject to the vesting pursuant to Paragraph 2(iii) of the Restricted Stock Agreement dated January 12, 1998 (Third Milestone Shares).

i. U.S. WIRELESS shall pay the total sum of One Million Dollars in equal parts to RYBURN, CROSSGAR and JANVRIN, on the following schedule: $333,333.34 on or before April 1, 2001; $333,333.33 on or before July 1, 2001; and $333,333.33 on or before October 1, 2001.

j. In addition to the amounts described in subpart (i), on the Closing Date U.S. WIRELESS shall pay the Plaintiffs the total amount of $500,000, with such payment to be made in equal parts to RYBURN, CROSSGAR and JANVRIN. Payment of the amounts described in subpart (i) and (j) shall be by wire transfer, pursuant to instructions to be provided by Plaintiffs to U.S. WIRELESS.

k. (i) Within 30 days after the Closing Date U.S. WIRELESS shall prepare and file with the SEC a registration statement on Form S-3 (the "Registration Statement") with respect to the shares described in subparagraphs (d)(iii), (e) and (g) above (the "Registrable Securities"), shall cause the Registration Statement to become effective, and shall use its best efforts to keep the Registration Statement effective until the sale and distribution of the Registrable Securities has been completed. U.S. WIRELESS represents, warrants and covenants to JANVRIN, RYBURN, CROSSGAR, DAHAN, HARUVI, PELICAN SECURITIES AND PELICAN CONSULTING that U.S. WIRELESS is eligible to register the Registrable Securities on Form S-3 as of the date of this Agreement and shall remain eligible to so register the Registrable Securities at all times relevant to this Agreement;

(ii) U.S. WIRELESS shall prepare and file with the SEC such amendments and supplements to the Registration Statement and the prospectus used in connection with the Registration Statement as may be necessary to comply with the provisions of the Securities Act of 1933, as amended, (the "Act") with respect to the disposition of all of the Registrable Securities;

(iii) U.S. WIRELESS shall furnish to the holders of the Registrable Securities (the "Holders") such numbers of copies of a prospectus, including a preliminary prospectus, in conformity with the requirements of the Act, and such other documents as they may reasonably request in order to facilitate the disposition of Registrable Securities owned by them.

(iv) U.S. WIRELESS shall register and qualify the securities covered by the Registration Statement under such other securities or Blue Sky laws of such jurisdictions as shall be requested by the Holders;

(v) U.S. WIRELESS shall notify each Holder of Registrable Securities covered by the Registration Statement at any time when a prospectus relating thereto is required to be delivered under the Act of the happening of any event as a result of which the prospectus included in such registration statement, as then



-4-

301937.2

in effect, includes an untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading in the light of the circumstances then existing.

(vi) U.S. WIRELESS shall amend or supplement such prospectus in order to cause such prospectus not to include any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading in light of the circumstances then existing.

(vii) U.S. WIRELESS shall cause all Registrable Securities registered pursuant hereunder to be listed on each securities exchange on which similar securities issued by U.S. WIRELESS are then listed or, if applicable, to be approved for listing on the Nasdaq National Market System.

(viii) All expenses incurred in connection with registrations, filings or qualifications pursuant to this Section 4(k) including (without limitation) all registration, filing and qualification fees, printers' and accounting fees, fees and disbursements of counsel for U.S. WIRELESS shall be borne by U.S. WIRELESS.

(ix) In the event any Registrable Securities are included in a registration statement under this Section 4(k):

(A) To the extent permitted by law, U.S. WIRELESS shall indemnify and hold harmless each Holder, the constituent partners and members, or officers and directors of each Holder, any underwriter (as defined in the Act) for such Holder, and each person, if any, who controls such Holder or underwriter within the meaning of the Act or the Securities Exchange Act of 1934, as amended (the "1934 Act"), against any losses, claims, damages, or liabilities (joint or several) to which they may become subject under the Act, the 1934 Act or other federal or state law, insofar as such losses, claims, damages, or liabilities (or actions in respect thereof) arise out of or are based upon any of the following statements, omissions or violations (collectively a "Violation"): (1) any untrue statement or alleged untrue statement of a material fact contained in such registration statement, including any preliminary prospectus or final prospectus contained therein or any amendments or supplements thereto, any offering circular or other similar document, (2) the omission or alleged omission to state therein a material fact required to be stated therein, or necessary to make the statements therein not misleading, or (3) any violation or alleged violation by U.S. WIRELESS of the Act, the 1934 Act, any state securities law or any rule or regulation promulgated under the Act, the 1934 Act or any state securities law; and the Company will pay to each such Holder, underwriter or controlling person any legal or other expenses reasonably incurred by them in connection with investigating or defending any such loss, claim, damage, liability, or action, as such expenses are incurred; provided, however, that the indemnity agreement contained in this

-5-

301937.2

subsection shall not apply to amounts paid in settlement of any such loss, claim, damage, liability, or action if such settlement is effected without the consent of U.S. WIRELESS (which consent shall not be unreasonably withheld), nor shall U.S. WIRELESS be liable in any such case for any such loss, claim, damage, liability, or action to the extent that it arises out of or is based upon a Violation which occurs in reliance upon and in conformity with written information furnished expressly for use in connection with such registration by any such Holder, underwriter or controlling person.

(B). To the extent permitted by law, each Holder shall indemnify and hold harmless U.S. WIRELESS, its officers and directors, any underwriter (as defined in the Act) for U.S. WIRELESS, and each person, if any, who controls U.S. WIRELESS or any such underwriter within the meaning of the Act or the 1934 Act, against any losses, claims, damages, or liabilities (joint or several) to which they may become subject under the Act, the 1934 Act or other federal or state law, insofar as such losses, claims, damages, or liabilities (or actions in respect thereof) arise out of or result from any untrue statement or alleged untrue statement of a material fact contained in any Registration Statement, any Prospectus, or any amendment or supplement thereto, and any omission of a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, to the extent the same arises out of or is based upon any untrue statement of a material fact or any omission to state a material fact in such Registration Statement, Prospectus, amendment or supplement, as the case may be, made or omitted, as the case may be in reliance upon and in conformity with written information furnished to U.S. WIRELESS by such Holder for use therein; and Holder will pay to U.S. WIRELESS or any such underwriter or controlling person any legal or other expenses reasonably incurred by them in connection with investigating or defending any such loss, claim, damage, liability, or action, as such expenses are incurred; provided, however, that the indemnity agreement contained in this subsection shall not apply to amounts paid in settlement of any such loss, claim, damage, liability, or action if such settlement is effected without the consent of the Holder (which consent shall not be unreasonably withheld), nor shall the Holder be liable in any such case for any such loss, claim, damage, liability, or action to the extent that it arises out of or is based upon a Violation which occurs in reliance upon and in conformity with written information furnished expressly for use in connection with such registration by U.S. WIRELESS or such underwriter or controlling person.

I. With a view to making available to the Holders the benefits of Rule 144 promulgated under the Act and any other rule or regulation of the SEC that may at any time permit the Holders to sell securities of U.S. WIRELESS to the public without registration or pursuant to a registration on Form S-3, U.S. WIRELESS agrees to:



-6-



301937.2

(i) make and keep public information available, as those terms are understood and defined in SEC Rule 144, at all times until after the sale and distribution of the Registrable Securities has been completed or the Rule 144 Shares have been resold, as the case may be;

(ii) take all such action as is reasonably necessary to enable the Holders to utilize Form S-3 for the sale of their Registrable Securities;

(iii) file with the SEC in a timely manner all reports and other documents required of U.S. WIRELESS under the Act and the 1934 Act; and

(iv) furnish to JANVRIN and/or any Holder, so long as JANVRIN owns any Rule 144 Shares or so long as the Holder owns any Registrable Securities, as the case may be, forthwith upon request (A) a written statement by U.S. WIRELESS that it has complied with the reporting requirements of SEC Rule 144, the Act and the 1934 Act or that it qualifies as a registrant whose securities may be resold pursuant to Form S-3, (B) a copy of the most recent annual or quarterly report of U.S. WIRELESS filed with the SEC and any other reports and documents so filed by U.S. WIRELESS; and (C) such other information as may be requested in availing JANVRIN or any Holder of any rule or regulation of the SEC which permits the selling of any such securities without registration or pursuant to such form.

a. Within one business day after the Closing Date, U.S. WIRELESS shall file a dismissal with prejudice of the Counterclaims.

b. The Parties hereby agree to cooperate and to take all steps necessary to effect this full and final settlement and mutual release of all claims, including but not limited to executing all necessary documents. The Parties shall jointly seek an order of the court in the Federal Actions retaining jurisdiction to enforce the terms of this Agreement. In the event that the Court declines to do so, Plaintiffs shall thereafter file a dismissal without prejudice of the Federal Action, upon entry of a mutually acceptable agreement tolling the statute of limitations. The Parties hereto agree to submit to the personal jurisdiction of said court or courts. Upon performance by U.S. WIRELESS of all of the obligations set forth in this section 4, Plaintiffs shall file a dismissal with prejudice of the Complaints.

5. **Releases.**

a. In consideration of the covenants contained herein, and for other good and valuable consideration, the receipt and value of which are hereby acknowledged, JANVRIN, RYBURN, CROSSGAR, DAHAN, HARUVI, PELICAN SECURITIES and PELICAN CONSULTING hereby fully release and forever discharge U.S. WIRELESS, HILSENRATH and KLARMAN and also all of their respective heirs, officers, directors, agents, servants, employees, attorneys, insurers, shareholders, affiliates, subsidiaries, related entities, firms predecessors, successors, and assigns of and from any and all actions causes of action, suits,


demands, debts, expenses, accounts, obligations, costs, rights, agreements, promises, liabilities, liens, damages, or causes of action of any kind or nature whatsoever, insofar as they are or should be known or suspected to exist, and whether specifically mentioned or not, which may exist or might be claimed to exist at or prior to the date of this Agreement, including but not limited to, any and all claims, including any common law claims, debts, liabilities, demands, damages, charges, promises, acts, agreements, costs or expenses (including any claim for attorneys' fees), actions and causes of action, and including but not limited to the claims asserted in the pleadings in the Federal Actions and including but not limited to any and all claims arising from or in any way connected with the Exchange Offer, the Consulting Agreements, the Option Agreements, and the entire relationship between and among the Parties hereto, except that this release shall not extend to the covenants and obligations obtained in this Agreement.

b. In consideration of the covenants contained herein, and for other good and valuable consideration, the receipt and value of which are hereby acknowledged, except for the obligations contained herein U.S. WIRELESS, HILSENRATH and KLARMAN hereby fully release and forever discharge JANVRIN, RYBURN, CROSSGAR, DAHAN, HARUVI, PELICAN SECURITIES and PELICAN and also all of their respective heirs, officers, directors, agents, servants, employees, attorneys, insurers, shareholders, affiliates, subsidiaries, related entities, firms predecessors, successors, and assigns of and from any and all actions causes of action, suits, demands, debts, expenses, accounts, obligations, costs, rights, agreements, promises, liabilities, liens, damages, or causes of action of any kind or nature whatsoever, insofar as they are or should be known or suspected to exist, and whether specifically mentioned or not, which may exist or might be claimed to exist at or prior to the date of this Agreement, including but not limited to, any and all claims, including any common law claims, debts, liabilities, demands, damages, charges, promises, acts, agreements, costs or expenses (including any claim for attorneys' fees), actions and causes of action, and including but not limited to the claims asserted in the Counterclaims and including but not limited to any and all claims arising from or in any way connected with the Exchange Offer, the Consulting Agreements, the Option Agreements, and the entire relationship between and among the Parties hereto, except that this release shall not extend to the covenants and obligations contained in this Agreement.

c. The release shall be a full and final release applying to all unknown or unanticipated damages rising out of the relationship between the Parties, as well as to those now known or disclosed, and the Parties waive all rights or benefits which they now have or in the future may have under the terms of Section 1542 of the Civil Code of the State of California which reads as follows:

> A general release does not extend to claims which the creditor does not know of or suspect exist in his favor at the time of executing the release,

Case 4:07-cv-03312-CW    Document 70-3    Filed 09/21/2007    Page 9 of 18

-8-    3019372

    which if known by him must have materially affected his settlement with the debtor.

**6. Confidentiality.**

  a. The parties acknowledge that they would not have entered into this Agreement but for the confidentiality of the Agreement and all of its terms. Specifically, the parties recognize that they may be damaged from any publicity or any oral or written publication whatsoever to anyone relating to the circumstances of the Federal Actions and this Agreement, including: (a) the contents of any documents produced in the Federal Actions (except to the extent that such information has been publicly disclosed or available, or has been obtained from sources other than such documents); (b) the fact that any money was paid or equity was granted in settlement of any claims; (c) the amount of any money paid or equity granted in the settlement; (d) any terms of this Agreement (hereinafter collectively referred to as "Confidential Information"). Accordingly, the parties hereto warrant and represent that following the execution by them of this Agreement, neither they nor anyone acting in their behalf (including their attorneys and anyone employed by their attorneys) shall initiate or cause to be initiated any dissemination of any document or information, publicity or any oral or written communication whatsoever concerning the Confidential Information, and, with the exceptions stated herein, shall forever hold confidential and not make public to anyone, whether by oral or written communications or otherwise, said Confidential Information, except only to (a) attorneys of the parties with respect to the Federal Actions; (b) insurers of the parties; (c) spouses of the parties or members of the parties' immediate families; (d) to the extent necessary to comply with filing and/or disclosure obligations imposed under state or federal law by any government or regulatory agency of the United States or any state; (e) to the extent as may be necessary to enforce the terms of this Agreement; or (f) to the extent as may be compelled by court order or judicial process. Any party compelled by law under subcategory (f) to make any disclosure otherwise protected under this Agreement shall notify all other parties in advance of such disclosure to allow such parties sufficient time to assert any objections to such disclosure. The parties shall not be precluded from stating to anyone who inquires that "the dispute between them has been settled." The parties acknowledge that they fully understand that the proscriptions of this paragraph specifically apply to all communications by the parties to all persons, including but not limited to: (a) past, present and future employees, consultants, investors, strategic partners, and customers of the Parties and (b) representatives or employees of any media.

  b. The parties represent and warrant that, on the Closing Date, they will return all documents produced in the Federal Actions to the party who produced them, along with any and all copies of the documents. Each party hereto shall sign a declaration under penalty of perjury stating that he or it has returned all

  -9-  

       documents to counsel for the party who produced said documents. The parties shall disclose in the declaration all persons or entities to whom they have disclosed the documents or information from the documents.

7. **Nondisparagement.** The parties acknowledge and agree that they will take no action of any type and will make no statement of any type which is intended to harm, inconvenience, embarrass, and/or bring into disrepute any other party hereto.

8. **Successors and Assigns.** All agreements, acknowledgments, declarations, representations, understandings, warranties, authorizations and instructions made, and all understandings expressed by the Parties, and each of them, in this Agreement and all benefits accruing under this Agreement apply to and bind the respective makers of said agreements, acknowledgments, declarations, representations, understandings, and also all of their respective heirs, officers, directors, agents, servants, employees, attorneys, insurers, shareholders, affiliates, subsidiaries, related entities, firms predecessors, successors, and assigns.

9. **Modifications.** This Agreement may not be modified except by a writing signed by the party to be charged, or its or their duly authorized representative.

10. **Enforcement of Agreement.** This Agreement shall, in all respects, be interpreted, construed and governed by and under the laws of the State of California. The Parties shall jointly seek an order of the court in the Federal Action retaining jurisdiction to enforce the terms of this Agreement.

11. **Entirety of Agreement.** The Parties hereto acknowledge and agree that this instrument and other instruments specifically referred to herein constitute and contain the entire agreement and understanding concerning the subject matter between the Parties and supersede and replace all prior negotiations and proposed agreements, whether written or oral. Each of the Parties warrants that no other party or any agent or attorney of any other party has made any promise, representation or warranty whatsoever not contained herein to induce it to execute this Agreement and the other documents referred to herein. The Parties represent that they have not executed this Agreement in reliance on any promise, representation or warranty not contained herein.

12. **Headings.** The headings in this Agreement are inserted for convenience only and shall not be deemed a part of or in any manner affect this Agreement or any provision hereof.

13. **Effective Date.** This Agreement shall be effective immediately upon execution hereof by the parties.

14. **Counterparts.** This Agreement may be executed in multiple counterparts and delivered by facsimile transmission, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

-10-

301937.2

15. **Representation of Plaintiffs and Counterclaim Defendants.** Plaintiffs and Counterclaim Defendants warrant that Lillick & Charles LLP represents them with respect to this Agreement and all matters covered by it; that they have been fully advised by said attorneys with respect to their rights and obligations, and with respect to the execution of this Agreement that they have had the opportunity to have the terms of this Agreement explained to them in their native language; and that they hereby authorize and direct said attorneys to take such actions as may be necessary or appropriate to effectuate this Agreement.

16. **Representation of Defendants and Counterclaimant.** Defendants and Counterclaimant warrant that Steinhart & Falconer, LLP represents them with respect to this Agreement and all matters covered by it; that they have been fully advised by said attorneys with respect to their rights and obligations, and with respect to the execution of this Agreement; that they have had the opportunity to have the terms of this Agreement explained to them in their native language and that they hereby authorize and direct said attorneys to take such actions as may be necessary or appropriate to effectuate this Agreement.

17. **Authority to Enter Agreement.** The parties hereto warrant that no other person or entity has claimed or now claims any interest in the subject of this Agreement, and that they have the sole right and exclusive authority to execute this Agreement and to receive the aforesaid consideration and that they have not sold, assigned or otherwise set over to any other person or entity, any claim, lien, demand, cause of action, obligation, damage or liability covered hereby. This Agreement is entered into by the undersigned parties freely and voluntarily and with and upon advice of counsel.

18. **Construction.** Should any provision of this Agreement be held invalid or illegal, such illegality shall not validate the whole of this Agreement but, rather, the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

19. **Attorney's Fees.** The prevailing party in any litigation to enforce this Agreement shall be entitled to receive his or its reasonable attorney's fees and costs.

Dated: 4th April, 2001

JANVRIN HOLDINGS LTD

By: [signature]

Its: DIRECTOR

Dated: 4th April, 2001

RYBURN LTD.

By: J. [signature]

Its: DIRECTOR

-11-

301937.2

CROSSGAR LTD.

Dated: 4th April, 2001    By: _____

Its: DIRECTOR

Dated: _____, 2001    By: _____
DAVID DAHAN

Dated: _____, 2001    By: _____
HAIM HARUVI

PELICAN SECURITIES & INVESTMENTS, LTD.

Dated: _____, 2001    By: C.E.O _____

Its: President

PELICAN CONSULTING U.S.A., INC.

Dated: _____, 2001    By: C.E.O _____

Its: President

U.S. WIRELESS CORPORATION

Dated: _____, 2001    By: _____

Its: _____

Dated: _____, 2001    By: _____
OLIVER HILSENRATH

Dated: _____, 2001    By: _____
DAVID KLARMAN

-12-



3019372

Read and approved as to form:                LILLICK & CHARLES, LLP

Dated: ___3\13_____, 2001      By: _____/s/_____
                                                    Glenn E. Westreich, Esq.
                                                    Counsel for Plaintiffs and
                                                    Counterclaim Defendants

Read and approved as to form:

Dated: _____, 2001    By: _____
                                                    Patricia A. Murphy, Esq.
                                                    Senior Corporate Counsel
                                                    U.S. WIRELESS CORPORATION

-13-

3019372

[EXHIBIT A - OPINION LETTER]

[Name and address of Transfer Agent]

    Re:    [Name of Selling Shareholder] – Rule 144 Sales

Dear _____:

    As counsel for U.S. Wireless Corporation (the "Company"), we have been requested to render our opinion with respect to the transfer of _____ shares of common stock of the Company (the "Shares") by _____ (the "Seller"), in accordance with the requirements of Rule 144 promulgated under the Securities Act of 1933, as amended (the "Act").

    In order to render this opinion we have reviewed the Company's Annual Report on Form 10-KSB for the fiscal year ended March 31, \_\_\_\_\_ and the Company's quarterly report on Form 10-QSB for the quarter ended _____ as filed with the Securities and Exchange Commission (the "SEC). In addition, we have been furnished with copies of (i) a letter from the Seller to _____ (the "Broker") dated _____; (iii) a Broker's letter dated _____ advising of compliance with Rule 144 as to the method of sale of the Shares, and (iv) a copy of the Form 144 Notice of Proposed Sale of Securities mailed to the SEC on _____.

    Based on the foregoing and that the sales of the Shares were effected as described in the aforesaid documents, we are of the opinion that the Shares may be transferred by you without registration under the Act, and that the share certificates to be issued by you upon such transfer need not bear a restrictive legend. In the event that a balance certificate is issued to the Seller, such balance certificate to be issued by you should not bear a restrictive legend.

    If you have questions concerning the above, please contact the undersigned.

                                     Very truly yours,

CROSSGAR LTD.

Dated: _____, 2001          By: _____

                                     Its: _____

Dated: _____, 2001          By: _____
                                          DAVID DAHAN

Dated: _____, 2001          By: _____
                                          HAIM HARUVI

PELICAN SECURITIES & INVESTMENTS, LTD.

Dated: _____, 2001          By: _____

                                     Its: _____

PELICAN CONSULTING U.S.A., INC.

Dated: _____, 2001          By: _____

                                     Its: _____

U.S. WIRELESS CORPORATION

Dated: March 13, 2001                By: [signature]

                                     Its: CEO

Dated: March 13, 2001                By: [signature]
                                          OLIVER HILSENRATH

Dated: _____, 2001          By: _____
                                          DAVID KLARMAN

-12-
15

301937.2

FROM : ))))))))   PHONE NO. : 9258380747   Mar. 13 2001 07:55PM P12
03/13/01 TUE 20:17 FAX 9258301654   USWC Legal Dept.

CROSSGAR LTD.

Dated: _____, 2001   By: _____

                                     Its: _____

Dated: _____, 2001   By: _____
                                           DAVID DAHAN

Dated: _____, 2001   By: _____
                                           HAIM HARUVI

PELICAN SECURITIES & INVESTMENTS, LTD.

Dated: _____, 2001   By: _____

                                     Its: _____

PELICAN CONSULTING U.S.A., INC.

Dated: _____, 2001   By: _____

                                     Its: _____

U.S. WIRELESS CORPORATION

Dated: _____, 2001   By: _____

                                     Its: _____

Dated: _____, 2001   By: _____
                                        OLIVER HILSENRATH

Dated: 3/13, 2001   By: _____
                                        DAVID KLARMAN

Read and approved as to form:

Dated: _____, 2001

Read and approved as to form:

Dated: *March 13*, 2001

LILLICK & CHARLES, LLP

By: _____
Glenn E. Westreich, Esq.
Counsel for Plaintiffs and
Counterclaim Defendants


By: /s/ *Patricia A. Murphy*
Patricia A. Murphy, Esq.
Senior Corporate Counsel
U.S. WIRELESS CORPORATION

-13-

17

301937.2