1  LATHAM & WATKINS LLP
    Peter A. Wald (Bar No. 85705)
2    peter.wald@lw.com
    Darius Ogloza (Bar No. 176983)
3    darius.ogloza@lw.com
    Sarah M. Ray (Bar No. 229670)
4    sarah.ray@lw.com
    Katie Y. Chang (Bar No. 246247)
5    katie.chang@lw.com
   505 Montgomery Street, Suite 2000
6  San Francisco, California  94111-2562
   Telephone:  +415.391.0600
7  Facsimile:  +415.395.8095

8  Attorneys for Defendants
   EQUITY TRUST (JERSEY) LIMITED, PHILIP
9  JOSEPH AUSTIN, CAROLINE BOUGEARD,
   AND GRANT BROWN

10

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  HANA HILSENRATH AND OLIVER HILSENRATH, | CASE NO. C:07-CV-3312-CW |
| 15                Plaintiffs, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PHILIP JOSEPH AUSTIN'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION, INSUFFICIENCY OF SERVICE OF PROCESS, IMPROPER VENUE, *FORUM NON CONVENIENS*, AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |
| 16        v. | |
| 17  EQUITY TRUST (JERSEY) LIMITED, CANDOVER INVESTMENTS PLC, INSINGER DE BEAUFORT HOLDING, S.A., JARDINE MATHESON HOLDINGS LIMITED, PHILIP JOSEPH AUSTIN, GRANT BROWN, MELVYN KALMAN, JOHN PERKINS, CAROLINE BOUGEARD, AND DOES 1-10, | |
| 22                Defendants. | Date:    November 1, 2007<br>Time:    2:00 p.m.<br>Place:   Courtroom 2, 4th Floor<br>Judge:   Honorable Claudia Wilken |
| 23 | Complaint Filed:  June 25, 2007 |

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

SF\627906.2
Case Number: C:07-CV-3312-CW
DEFENDANT PHILIP JOSEPH AUSTIN'S MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' First Amended Complaint ("Complaint") as to defendant Philip Joseph Austin ("Austin") should be dismissed for five independent reasons. First, plaintiffs allege no relevant contact to this forum by this Equity Trust (Jersey) Limited ("ETJL") employee that may support the exercise of personal jurisdiction.[1] *See, e.g., Calder v. Jones*, 465 U.S. 783, 790 ("each defendant's contacts with the forum State must be assessed individually"). Second, plaintiffs have wholly failed to attempt service of process on Austin in compliance with the Federal Rules of Civil Procedure ("FRCP"). *See Taylor v. Gearan*, 979 F.Supp. 1, 5 (D.D.C. 1997); *Elkins v. Broome*, 213 F.R.D. 273, 276 (M.D.N.C. 2003). Third, this Court is not a proper venue for this dispute because plaintiffs have consented, through forum selection clauses contained in two Company Management Agreements ("CMAs"), to seek relief against ETJL and its employees in the Island of Jersey. *See* Declaration of Philip Joseph Austin in support of ETJL's motion to dismiss ("Austin Decl. ISO ETJL motion to dismiss"), Exhs. F & G; *M/S Bremen v. Zapata Offshore Co.,* 407 U.S. 1 (1972) ("the Bremen"); *Manetti-Farrow, Inc. v. Gucci*, 858 F.2d 509, 514 (9th Cir. 1988).

Fourth, even if this were a permissible forum in which to resolve this dispute (which is not the case), this Court should reject, under the *forum non conveniens* doctrine, plaintiffs' attempt to litigate its claims over the administration of trust services provided to two Israeli citizens by a Jersey-based trust company and its employees in this distant forum. *See* Austin Decl. ISO ETJL's motion to dismiss, Exhs. F & G; *Sussman v. Bank of Israel*, 801 F. Supp. 1068 (S.D.N.Y. 1992). The agreements under which those trust services were provided plainly provide that they "shall be governed by construed and interpreted in accordance with the laws of the Island of Jersey" — the forum in which these sophisticated parties agreed to resolve their disputes, in which the alleged misconduct occurred and in which most material witnesses and documents can be found. Austin Decl. ISO ETJL's motion to dismiss, Exhs. F & G.

---

[1] Austin is a current ETJL employee. *See* Declaration of Philip Joseph Austin ¶ 2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SF\627906.2
Case Number: C:07-CV-3312-CW
DEFENDANT PHILIP JOSEPH AUSTIN'S MOTION TO DISMISS

1

Lastly, plaintiffs' sole claim against Austin, for alleged "perjury" based on his declaration in support of ETJL's motion to dismiss, is not legally tenable and, is so singularly without merit, the Court should dismiss the claim as to Austin under the Federal Rule of Civil Procedure 12(b)(6) on its merits. *See Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 950 (N.D. Cal. 2006).

## II.   BACKGROUND FACTS

On June 25, 2007, Oliver and Hana Hilsenrath ("the Hilsenraths," collectively) filed a complaint alleging various breaches of duty against ETJL, a Jersey-based trust services company, four of its current and former employees as well as against three entities — Candover Investments PLC, Insinger de Beaufort Holdings S.A. and Jardine Matheson Holdings Limited — that at one time or another allegedly owned and/or controlled ETJL.  *See* Complaint ("Cmpl."), ¶¶ 29, 59.  On July 19, 2007, ETJL filed a motion to dismiss the Hilsenraths' complaint for improper venue, insufficient service of process, lack of personal jurisdiction and *forum non conveniens*.[2]  *See* ETJL's Notice of Motion and Motion to Dismiss Complaint para. 1. In support of its motion to dismiss, ETJL filed the Declaration of Philip Joseph Austin, its current Managing Director, principally to establish the absence of any legally-relevant contacts to this forum by ETJL.  *See e.g.*, Austin Declaration ISO ETJL's motion to dismiss, ¶¶ 1, 6-10. Paragraph 16 of the Austin Declaration also provided, in relevant part, as follows:

> I have reviewed the complaint in this action and, contrary to what is alleged therein, ETJL is not the "owner" of any of the three British Virgin Islands companies referenced therein: Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited.  These three British Virgin Island corporations were formed in 1995 and 1996 by ETJL for their beneficial owners, Messrs. Dahan and Haim Haruvi ("Haruvi").  ETJL provided administrative and directorship services to the three BVI companies.  ETJL did not "finance" these companies.

Austin Declaration ISO ETJL's motion to dismiss, ¶ 16.

On July 26, 2007, the Hilsenraths filed a motion to supplement their complaint to add Austin as a party-defendant in this case and to assert the additional claim of "perjury" against Austin.  This motion was based purportedly on Austin's alleged mischaracterization of

---

[2]   ETJL's motion to dismiss is presently set to be heard on November 1, 2007.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SF\627906.2
Case Number: C:07-CV-3312-CW
DEFENDANT PHILIP JOSEPH AUSTIN'S MOTION TO DISMISS

2

1  the legal relationship between ETJL and Janvrin Holdings Limited, Crossgar Limited, and
2  Ryburn Limited (together, the "BVI companies") as well as the Hilsenraths' contention that
3  Austin improperly implied that "Equity Trust is doing no business in the United States and [is]
4  not subject to federal jurisdiction." *See* Cmpl. ¶¶ 94-97.  The only other allegations against
5  Austin are that "[a]t all times relevant to this complaint P[h]ilip Joseph Austin…w[as] executives
6  of both Equity Trust and Janvrin et al"[3] and that he has been "identified as acting behind the
7  above criminal structure." Cmpl. ¶¶ 21, 52.  As shown below, these allegations are incorrect in
8  virtually all material respects.

### A. Austin's Background

Austin is currently the Managing Director of ETJL and has held this position since May 8, 2006, when he joined ETJL. Declaration of Philip Austin ("Austin Decl."), ¶ 2.

Austin is a British citizen and resident of Jersey, Channel Islands. *Id.* ¶ 4. He has never resided in California and has no plans to do so. *Id.* ¶ 4. In fact, he has only lived in the United Kingdom. *Id.* at ¶ 4. He has never traveled to California either for ETJL business or for leisure. *Id.* at ¶ 5.

Contrary to the complaint's allegations, Austin has only had knowledge of the Hilsenraths or David Dahan or Haim Haruvi, the ultimate beneficial owners of the BVI companies, since he became Managing Director of ETJL in 2006 after all of the alleged wrongdoing described in the complaint had already occurred. *Id.* at ¶ 3. Austin *a fortiori* neither had knowledge of, nor involvement with, the Hilsenraths or the BVI companies' between November/December 2000 and March 2002, the dates that bookend the allegedly wrongful course of conduct alleged in the complaint.[4] *See id.*

---

[3] The Complaint employs the convention of referring to Janvrin Holdings Ltd., Crossgar Ltd., and Ryburn Ltd. as "Janvrin et al." These entities are referred to as "the BVI companies" herein.

[4] The complaint alleges that the Hilsenraths' purportedly confidential financial information was first disclosed in November or December 2000. Cmpl., ¶¶ 60-63. The complaint also alleges that a malicious prosecution lawsuit was filed against Mr. Hilsenrath in March 2002. Cmpl., ¶ 68-70. The complaint only identifies a single allegedly wrongful act occurring after

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SF\627906.2
Case Number: C:07-CV-3312-CW
DEFENDANT PHILIP JOSEPH AUSTIN'S MOTION TO DISMISS

3

### B. The Management Agreements

ETJL often provides its clients with administrative services for the trust and corporate structures it sets up for them. These services are provided pursuant to CMAs which set forth the rights and duties that govern the legal relations between ETJL and its clients. In May 1996 and August 1999, the Hilsenraths entered into CMAs with ETJL as to two structures implicated in this litigation: (i) Aida Holdings Ltd. and (ii) Oliver Hilsenrath Family Investments Limited ("OHFI"). Austin Decl. ISO ETJL's motion to dismiss, Exhs. F&G. These CMAs bind ETJL to "provide directors" to the Hilsenrath structures, who, in turn, are to "receive the advice and recommendations of the client." *Id.*, Exh. F, ¶ 1 (f)-(g); Exh. G, ¶ 1 (h)-(i). The CMAs include forum selection and choice of law clauses requiring application of Jersey law and submission of disputes implicating the CMAs to the Jersey courts. Specifically, the CMAs provide as follows:

> 8. THIS AGREEMENT shall be governed by construed and interpreted in accordance with the laws of the Island of Jersey, and all parties shall submit to the jurisdiction of the courts of the said Island.

*See id.*, Exhs. F, ¶ 8 & G, ¶8.

## III. ARGUMENT

### A. Exercise of Personal Jurisdiction over Austin is *Improper*

Austin adopts and incorporates by reference the personal jurisdiction arguments of Caroline Bougeard and Grant Brown, a current and a former ETJL employee, respectively. Austin agrees with the analytical framework set forth in those motions to dismiss and with the minimum contacts and reasonableness analyses therein. In order to avoid duplication of effort by both the litigants and the Court, Austin confines himself to raising additional considerations applicable to his personal situation.

As with Bougeard and Brown, Austin does not have anything close to the pervasive contacts necessary for general jurisdiction. *See Omeluk v. Langsten Slip & Batbygerri*

---

these events, Austin's purported perjury, which, as shown below, cannot serve as a predicate for liability.

1  *A/S,* 52 F.3d 267, 270 (9th Cir. 1995) (exercise of general jurisdiction over a non-resident
2  requires contacts with the forum that are so substantial, continuous, and systematic that the
3  defendant should expect to be haled into court on any cause of action).  He has not lived in
4  California, owned property in California, registered to vote in California, filed California tax
5  returns, maintained offices, employees, or bank accounts in California, and does not have
6  telephones, telephone directory listings, or mailing addresses here.  Austin Decl., ¶¶ 4, 6-9.
7  Given Austin's complete lack of contacts with California, the exercise of jurisdiction over Austin
8  would be improper.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir.
9  2004) ( it "is an exacting standard, as it should be, because a finding of general jurisdiction
10 permits a defendant to be haled into court in the forum state to answer for any of its activities
11 anywhere in the world").

12       The specific jurisdiction analyses in Bougeard and Brown's motions to dismiss
13 apply with special force to Austin because his alleged contacts are either demonstrably false or
14 cannot serve as a basis for personal jurisdiction.  Austin did not become aware of plaintiffs or
15 David Dahan or Haim Haruvi, the ultimate beneficial owners of the BVI entities, until he became
16 Managing Director of ETJL in May 8, 2006, well after all of the alleged wrongdoing had already
17 occurred.  Austin. Decl. ¶¶ 2, 3.  Moreover, any such contacts that Austin took on behalf of ETJL
18 are legally irrelevant.  *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that
19 their contacts with California are not to be judged according to the employer's activities there").

20       The only other contact alleged as to Austin consists of the purported perjury in
21 Austin's declaration in support of ETJL's motion to dismiss in which he attested to ETJL's
22 contacts with this forum and its relationship with the BVI companies.  Cmpl. ¶¶ 94-97.  Austin's
23 declaration in no way constitutes consent to personal jurisdiction in this forum.  *See* Fed. R. Civ.
24 P. 12(h)(1) (defendant submits to the court's jurisdiction either by expressly consenting thereto
25 or by failing to raise the defense of lack of jurisdiction in its initial motion or responsive
26 pleading).  Moreover, plaintiffs may not claim that any of the alleged wrongdoing which
27 occurred prior to Austin's employment at ETJL "arises out of" this purported contact.  *Doe v.*
28 *Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 & n.7 (9th Cir. 1997) (a claim "arises out of" a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SF\627906.2
Case Number: C:07-CV-3312-CW
DEFENDANT PHILIP JOSEPH AUSTIN'S MOTION TO DISMISS

5

1  defendant's forum-related activities if plaintiff would not have suffered a loss but for defendant's
2  activities in the forum). As shown below, the only purported claim that does allegedly arise out
3  of this contact, perjury, is not legally tenable.

4      Nor would the assertion of jurisdiction over Austin satisfy the "reasonableness"
5  inquiry in view of the serious hardship Austin would face in defending this action miles away
6  from his place of residence and business, when the Hilsenraths have affirmatively chosen
7  Jersey's forums and laws to adjudicate their disputes with ETJL at the time they contracted for
8  trust services. *See, e.g., City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399
9  F.3d 651, 666 (6th Cir. 2005) (holding that it was "unreasonable" to exercise personal
10 jurisdiction over a Japanese corporation in a securities fraud class action where the corporate
11 officer adds "little or nothing" to plaintiffs' claims and where the "exercise of jurisdiction
12 requires travel from the other side of the world") (internal citations omitted).

13     **B.**    **Plaintiff Failed to Serve Austin**

14     This Court lacks personal jurisdiction over Austin for the independent reason that
15 plaintiffs' service of process was insufficient. *See Miss. Publ'g Corp. v. Murphree*, 326 U.S.
16 438, 444-45 (proper service of a summons is the basis by which a court asserts jurisdiction over
17 the person of the party being served). Plaintiffs bear the burden of establishing that service was
18 properly effected. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Plaintiffs failed
19 to file proof of service with the Court in the form of an affidavit, certifying that service was
20 properly effected. *See* Fed. R. Civ. P. 4(l); Docket. Thus, it is unclear how plaintiffs served
21 Austin. However, it is likely here, as with each of the other defendants, service is defective
22 because it did not comply either with Federal Rule of Civil Procedure 4(f)(2)(C)(ii), "which
23 requires that service be sent by the clerk of the court, using a form of mail requiring a signed
24 receipt" or with Federal Rule of Civil Procedure 4(f)(3), "which requires that the mailing
25 procedure have been specifically directed by the district court." *Brockmeyer*, 383 F.3d at 808-
26 09. Further, that plaintiffs filed electronically the First Amended Complaint naming Austin as a
27 party-defendant and that ETJL accepts service electronically is irrelevant. It is axiomatic that
28 service on a defendant's employer is inadequate, where a defendant is being sued in his or her

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SF\627906.2
Case Number: C:07-CV-3312-CW
DEFENDANT PHILIP JOSEPH AUSTIN'S MOTION TO DISMISS

6

1  individual capacity, unless the employer was authorized to accept service for the defendant.
2  *Taylor v. Gearan*, 979 F.Supp. 1, 5 (D.D.C. 1997); *Elkins v. Broome*, 213 F.R.D. 273, 276
3  (M.D.N.C. 2003).  Accordingly, plaintiffs failed to establish that service of process on Austin is
4  proper, and this Court lacks jurisdiction over him.  *See Jackson v. Hayakawa*, 682 F.2d 1344,
5  1347 (9th Cir. 1982) ("[n]either actual notice...nor simply naming the person in the caption of the
6  complaint....will subject defendants to personal jurisdiction if service was not made in substantial
7  compliance with Rule 4").

        **C.**    **Venue is Improper Based on the CMAs' Forum Selection Clauses**

9          Austin adopts and incorporates by reference the venue arguments of defendants
10 ETJL, Bougeard, and Brown.  The relationship between ETJL and the Hilsenraths is governed by
11 the CMAs signed by both parties.  Because the CMAs contain forum selection clauses that
12 specify Jersey as the parties' selected forum, this forum is not a proper venue.  *See Northrop*
13 *Corp. v. Triad Int'l Mktg., S.A.*, 811 F.2d 1265, 1270 (9th Cir. 1987) ("choice of law and choice
14 of forum provisions in international commercial contracts are an almost indispensable
15 precondition to achievement of the orderliness and predictability essential to any international
16 business transaction, and should be enforced absent strong reasons to set them aside").  The
17 enforcement of the CMAs' forum selection clauses is particularly important as to Austin as his
18 only interactions resulted from his employment by ETJL.  Through its agreements with its
19 clients, ETJL sought to protect its employees and itself from the exact burden they now face—
20 being haled into court in a jurisdiction to which they have no contacts.  The Hilsenraths,
21 sophisticated parties in an arms' length transaction, consented to have their dispute resolved in
22 Jersey and should be held to their agreement.

        **D.**    **Dismissal is Appropriate under the Doctrine of *Forum Non Conveniens***

24         Austin further adopts and incorporates by reference the *forum non conveniens*
25 arguments of ETJL, Bougeard, and Brown.  As with those defendants, Austin lives outside the
26 United States and litigation here would cause him significant hardship.  Austin Decl. ¶ 14.

        **E.**    **Plaintiffs' Claims Against Austin are not Legally Tenable**

28         The Hilsenraths do not and cannot state a legally tenable claim against Austin.

The sole claim they do assert, perjury, is so overtly without merit that the Court should dismiss this complaint as to Austin on its merits under Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) should be granted when the complaint lacks allegations to sustain any of the elements of a claim for relief, when there is an absence of a cognizable legal theory, or when the complaint discloses a defense that would bar recovery. *See Balistreri v. Pac. Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion pursuant to Fed. R. Civ. P. 12 (b)(6), the Court may assume the truth of factual allegations in the complaint; however, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993). "Plaintiffs bear the burden of pleading facts sufficient to state a claim; courts will not supply essential elements of a claim that were not initially pled." *See PTI Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1188 (C.D. Cal. 2000).

First and foremost, California law does not recognize a claim for "perjury." *See, e.g., Kappel v. Bartlett*, 200 Cal. App. 3d 1457, 1463 (Cal. Ct. App. 1988) (finding that as to perjury, "no such civil cause of action exists and we decline to create such a cause"). Moreover, even reading their allegations broadly as attempting to assert a claim for abuse of process under California law, the Hilsenraths still do not (and cannot) assert a tenable legal claim. Under California law, filings of pleadings in litigation are protected by the litigation privilege and cannot provide the basis for liability. Cal. Civil Code § 47(b) (litigation privilege extends when (1) the publication was made in a judicial proceeding; (2) it had some connection or logical relation to the action; (3) it was made to achieve the objects of the litigation; and (4) the publication involved litigants or other participants authorized by law); *see also Navellier v. Sletten*, 106 Cal. App. 4th 763, 770 (Cal. Ct. App. 2003) (concluding that "[t]he litigation privilege immunizes litigants from liability for torts…which arise from communications in judicial proceedings" . . . . The privilege generally applies to any communication by a litigant in a judicial proceeding that is made "to achieve the objects of the litigation" and has "some connection or logical relationship to the action"); *Dole Food Co. v. Gutierrez*, 2004 U.S. Dist. LEXIS 28429 at *33-*34 (C.D. Cal. 2004) (same). The litigation privilege applies broadly and

regardless of allegations of malice. *See Silberg v. Anderson*, 50 Cal. 3d 205, 211, 215-16 (Cal. 1990); *see also Rusheen v. Cohen*, 37 Cal. 4th 1048, 1063 (Cal. 2006) (the purpose of the litigation privilege is to "afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation"). Accordingly, to the extent it can be characterized as a claim of abuse of process, the Hilsenrath's claim based on purported misstatements in the Austin Declaration is squarely barred by the litigation privilege. *See Pollock v. University of Southern California*, 112 Cal. App. 4th 1416, 1431 (Cal. Ct. App. 2003) (declaration "functions as written testimony," is a "communication, not conduct," and "is exactly the sort of communication the privilege is designed to protect").

Additionally, even if the alleged basis for such a claim were not absolutely privileged, the Hilsenraths do not (and cannot) state a necessary element of an abuse of process claim. *See Nat'l Fed'n of the Blind*, 452 F. Supp. 2d at 950 (finding that dismissal can be based on "the absence of sufficient facts alleged under a cognizable legal theory"). To establish a claim for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner. *Dole Food Co*, 2004 U.S. Dist. LEXIS 28429 at *31; *Rusheen*, 37 Cal. 4th at 1057-58. The Austin Declaration was submitted for the purpose for which it was established, to counter the Hilsenraths' false allegations as to ETJL's relationship with the BVI entities and to attest to ETJL's contacts with California. *See Cantu Resolution Trust Corp. v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 886 (Cal. Ct. App. 1992) ("there is no abuse of process where pleading is used for its proper purpose"); *see also Optistreams, Inc. v. Gahan*, 2006 U.S. Dist. LEXIS 21680 at *10 (E.D. Cal. 2006) ("simply ascribing a new motive…does not satisfy the requirement under California law that an abuse of process claim allege more than the mere filing or maintenance of a lawsuit") (internal citations omitted).

Where the Hilsenraths have failed to allege (and cannot allege) all of the necessary elements of abuse of process, motion to dismiss under Rule 12(b)(6) should be

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

SF\627906.2
Case Number: C:07-CV-3312-CW
DEFENDANT PHILIP JOSEPH AUSTIN'S MOTION TO DISMISS

9

1 granted. *See Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988).

## IV. CONCLUSION

For the foregoing reasons, Austin respectfully requests that the complaint against him be dismissed with prejudice.

Dated: September 27, 2007

                                              Respectfully Submitted,

                                              LATHAM & WATKINS LLP

                                              By  /s/ Katie Chang
                                                   ATTORNEYS FOR PHILIP JOSEPH AUSTIN

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SF\627906.2
Case Number: C:07-CV-3312-CW
DEFENDANT PHILIP JOSEPH AUSTIN'S MOTION TO DISMISS

10