HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

PLAINTIFFS *IN PRO PER*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA HILSENRATH AND OLIVER HILSENRATH,<br>Plaintiffs,<br>v.<br>EQUITY TRUST (JERSEY) LIMITED, CANDOVER INVESTMENTS PLC, INSINGER DE BEAUFORT SA, JARDINE MATHESON HOLDINGS LIMITED, PHILIP AUSTIN, GRANT BROWN, MELVYN KALMAN, JOHN PERKINS, CAROLINE BOUGEARD, AND DOES 1-9,<br>Defendants. | **Case 4:07-cv-03312-CW**<br><br>OPPOSITION TO DEFENDANTS' MOTION TO STRIKE EXHIBITS<br><br>**Judge: Hon. Claudia Wilken**<br>**Date: Nov 1, 2007**<br>**Time: 14:00**<br>**Place: Courtroom 2, 4th Floor** |

# INTRODUCTION

On September 17, 2007, this court affixed its signature on a wholesale, proposed order [Doc 62 – Exhibit A] by attorneys of Latham and Watkins, ordering *inter alia* that Hana Hilsenrath and Oliver Hilsenrath shall not be permitted to conduct discovery in this case pursuant to Rule 26 because "plaintiff Oliver Hilsenrath is under custody".

> "Defendants' Motion to Continue Case Management Conference and Rule 26 Disclosure Obligations, having come before the Court for consideration, is GRANTED. It is hereby ORDERED that the parties are exempt from Rule 26 obligations as the plaintiff Oliver Hilsenrath is under custody as set out in Rule 26(a)(1)(E)(iv). Moreover, the Court holds that there is good cause to continue the Case Management Conference and Rule 26 Disclosure Obligations until 45 days after the Court rules on defendants' pending motions to dismiss. IT IS SO ORDERED."

This order violates the inherent right of plaintiff Hana Hilsenrath to litigate and further condones objectionable, inequitable collective punishment prohibited not only by the United States' Constitution but also unanimously rejected by international law[1].

Furthermore, the above order has put in motion a set of inappropriate legal actions such as the current nonsensical motion to strike *prima facie* evidence.

> O'Donnell v. Animals Matter, 2007 U.S. Dist. LEXIS 70266
>
> It is true that Plaintiff bears "the ultimate burden of proof that personal jurisdiction is proper by a preponderance of the evidence." *Regent Lighting Corp. v. American Lighting Concept, Inc.,* 25 F. Supp. 2d 705, 709 (M.D.N.C. 1997). [*6] However, "when the court examines this issue only on the basis of the motions, legal memoranda, and the allegations of the complaint, Plaintiff need make only a *prima facie* showing of personal jurisdiction." *Id.* In determining whether Plaintiff has made such a prima facie showing, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Baker,* 886 F.2d 673, 676 (4th Cir. 1989). Thus, Defendant's protestations concerning sufficiency of the evidence are currently misplaced.

---

[1] Article 33 of the Fourth Geneva Convention forbids collective punishment and states that a person shall not be punished for an offense he or she has not personally committed. This article explicitly relates to administrative punishment imposed on persons or groups because of acts that they did not personally commit. Article 50 of the Hague Regulations states a comparable prohibition.

# MOTION TO STRIKE PRIMA FACIE EVIDENCE

Plaintiffs have a burden to present *prima facie* evidence to establish jurisdiction. Plaintiffs have met and exceeded their burden in their opposition [Doc 50] to defendants' motion to dismiss. Plaintiffs presented several groups of evidence:

i. Statutes and case law;
ii. Ample inside documents of defendants' operations flashing out defendants' harboring of the Janvrin conspiracy –all authenticated by custodian of records [Exhibit N];
iii. Documents uncovering that defendants are concealing their businesses in the United States in order to prove insufficient contact with the United States jurisdiction. The latter was comprised of:
   a. SEC filings;
   b. DOJ filings;
   c. Accredited industry reports;
   d. Defendants' own web advertising;
   e. Audited Annual Reports;
iv. BVI government reports on dissolution of Janvrin, Ryburn and Crossgar (already reported and corroborated by attorneys Nixon Peabody in this court [Doc 268 Case 4:02-cv-01068-CW Janvrin Holdings Limited et al v. Hilsenrath et al – Exhibit B]).

Plaintiffs will further confirm and authenticate the evidence in their pleadings [Doc 50] by (1) legal argument, (2) third party authentication of records and (3) further, *ex parte* discovery and certification of records[2] with the following government officials:

---

[2] 5-901 Federal Rules of Evidence Manual (§ 901.02) [i]t is common for a Trial Judge to permit a party to introduce evidence with a promise that the party subsequently will authenticate the evidence previously introduced. Some Courts refer to this as "conditional admission" (i.e., the evidence is admitted on the condition that the requisite foundation is subsequently laid).

In *Huddleston v. United States*, 485 U.S. 681, 690 n.7 (1988), the Supreme Court recognized that "[i]t is, of course, not the responsibility of the judge *sua sponte* to insure that the foundation evidence is offered; the objector must move to strike evidence if at the close of the trial the offeror has failed to satisfy the condition."

    i.    The US attorney in San Francisco [see Exhibit N] re AUSA laurel Beeler confirming the authentication of all records obtained from Jersey and authenticated by Equity Trust custodians Kevin Mercury and John Perkins. See also Exhibit H]

    ii.    The US Attorney in Houston, Texas re Candover's Vetco landmark guilty plea [Plaintiffs' letter to AUSA Jim Buchanan – US Attorney/Houston TX - Exhibit C];

    iii.    The BVI Corporations Directorate to counter Equity Trust's assertion of lack of authenticity of the BVI directorate's original reports on Equity Trust/BVI [Plaintiffs' letter to Stacy Vanderpool – BVI corporations directorate – Exhibit D].

    iv.    U.S. Immigration and Customs Enforcement (ICE)/ Patriot Act – to counter the assertion that Mr. Mooij signed the patriot act but that same act is not applying to Insinger, a company of which he is the CFO –Exhibit E]

Undoubtedly a simple set of interrogatories would have either confirmed the authenticity of the evidence, or prevented this gratuitous motion practice altogether.

Defendants' current motion is baseless and without merit. Its only foundation is defentants' reliance on this court's prejudice.

# ARGUMENT

**Rule** 803**. Hearsay Exceptions; Availability of Declarant Immaterial**

> (10) Absence of public record or entry. To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with <u>rule 902</u>, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

As part of the conspiracy to conceal incriminating records, Equity Trust and its staffers destroyed critical records in this action. The destroyed records were made available to Plaintiffs through different sources in summer of 2005 [Exhibits F, and N].

The attempt to officially subpoena the records by both the US government and the Jersey Attorney General failed [see Exhibit G].

> *In re Holocaust Victim Assets Litig., 302 F. Supp. 2d 59*  It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. An adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.

Pursuant to Rule 803 the records destroyed by defendants are subject to the Hearsay Exception and therefore acceptable as evidence. Such are Exhibits 43 and 44 in the Hilsenrath declaration - Doc 50.

**Rule 804. Hearsay Exceptions; Declarant Unavailable**

> (a) Definition of unavailability.
> "Unavailability as a witness" includes situations in which the declarant--
> (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;

By its order [Doc 62 – Exhibit A] this court made defendants "unavailable" de facto according to the language of Rule 804. Therefore Plaintiffs are entitled to introduce evidence obtained pursuant to Fed.R.Crim.P. 15. Such evidence was authenticated by a series of Equity Trust custodians of records; *inter alia* defendants in this actions [see declaration of John Perkins Exhibit H and also letter from AUSA Beeler - Exhibit N]. Such are Exhibits 6-16, 35 and 40 - 42 in the Hilsenrath declaration - Doc 50.

> (1) Depositions[3]. In addition to Rule 804(b)(l), a deposition may be admissible in a civil case under Fed.R.Civ.P. 32(a)(3), or in a criminal case under Fed.R.Crim.P. 15 or 18 U.S.C.A. §§ 3503, 3509(b)(2). As provided in Rule 802, these sources may permit hearsay beyond the ambit of Rule 804(b)(l). Any conflict is resolved in favor of admissibility.

---

[3] STEVEN GOODE OLIN GUY WELLBORN "Courtroom Evidence handbook 2006-2007 Edition"

>    Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998 (9th Cir.
>    2004) (documents were properly authenticated by a witness who
>    testified that they were produced by the defendants in response to a
>    discovery request).

**Rule** 901**. Requirement of Authentication or Identification**

>    Rule 901(1) *Testimony of witness with knowledge*. Testimony that a matter
>    is what it is claimed to be.
>
>    Rule 901(4) *Distinctive characteristics and the like*. Appearance, contents,
>    substance, internal patterns, or other distinctive characteristics, taken in
>    conjunction with circumstances.

The rule is applicable to the officially sealed report of the Government of the British Virgin Islands stating that Ryburn and Crossgar was "stricken off" (while Janvrin was suspiciously re-incorporated in 2006 – contrary to Austin declaration that Janvrin was incorporated in 1996) Exhibit 3 in the Hilsenrath declaration, Doc 50.

Nixon Peabody corroborates the information contained in the BVI report in the last Janvrin hearing [Exhibit B] in which the court is informed that Equity Trust reported to have dissolved Janvrin, Ryburn and Crossgar. Thus Exhibit 3 should be deemed compliant with the rules of evidence.

>    **Example-Admissible.** An e-mail was authenticated when (1) it bore the
>    purported author's e-mail address, (2) the contents reflected detailed
>    knowledge of the purported author's conduct, (3) the author identified
>    himself using the purported author's nickname, and (4) in a telephone
>    conversation shortly after the e-mail, the purported author made the same
>    requests as in the e-mail. United States v. Siddiqui, 236 F.3d 1318, 1322-
>    23 (11th Cir.2000), cert. denied, 533 U.S. 940, 121 S.Ct. 2573, 150
>    L.Ed.2d 737 (2001).

In the matter of Exhibits 11 and 12, Caroline Bougeard identifies herself (as shown below) with telephone and email address at a location and telephone number at which plaintiffs have contacted her numerous times.

>    "Caroline Bougeard
>    Legal Department
>    Equity Trust (Jersey) Limited
>    Equity Trust House
>    PO Box 546
>    28-30 The Parade
>    St Helier
>    Jersey JE4 8XY

>
> Channel Islands
> Tel: 44 (0) 1534 63621 1
> Direct Line:# (0) 1534 515369
> Fax: 44 (0) 1534 636215
> **e-mail** cbougeard@equitytrust.com"

<u>Superhighway Consulting, Inc. v. Techwave, Inc.</u>, 1999 U.S.Dist.LEXIS 17910 at *6 (N.D.Ill. Nov. 15, 1999) . Where the email reflects the entire email name of a party (and not just the mark of origin), it has been held to comprise a party admission of origin.[34]

Courts have looked at the "electronic 'signature' " at the end of the email message identifying the name and business affiliation of the sender. *See, e.g.*, <u>Sea-Land Serv., Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 821 (9th Cir. 2002)</u> (held, email by one employee forwarded to party opponent by a fellow employee -- containing the electronic signature of the latter -- constitutes an admission of a party opponent and thus is not hearsay).

Thus evidence rules support the admissibility of Exhibits <u>11</u> and <u>12.</u>

**Rule** 902**. Self-authentication**

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

> (1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
> (2) Domestic public documents not under seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
>
> (5) Official publications. Books, pamphlets, or other publications purporting to be issued by public authority.

Exhibit 29 presents a guilty plea of Candover's Vetco property. The guilty plea is posted on the official site of the United States department of Justice WWW.USDOJ.GOV and bears the seal of that department. Exhibit <u>29</u> is therefore compliant with the rules of evidence pursuant to the above rule.

**Notes that were produced by a corporation during discovery**

Equity Trust, Kalman, Perkins, et al produced tens of thousands of pages of records to the US government. They are labeled by CRO for Crossgar, RYB for Ryburn, BUR for Burntwood etc. The assertion in this current motion is unclear. Do defendants state now that they produced false records to the US government and to the Jersey Attorney General (whose documents are labeled JAG)? [see AUSA Beeler's letter Exhibit N]

> *Snyder v. Whittaker Corp.*, 839 F.2d 1085 (5th Cir. 1988) : Notes that were produced by a corporation during discovery and that the corporation did not deny were written by one of its senior employees were sufficiently authenticated.
>
> *United States v. Brown*,[27] the Court upheld the admission of business records that the defendant had turned over through an agent in response to a subpoena.
>
> The defendant had produced the records pursuant to an agreement with the government that spared him the need to go before a grand jury. Having made the agreement and having had his agent turn over the records, the Court reasoned that the defendant could not complain that the records were not properly authenticated.
>
> *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088 (10th Cir. 2005) : The Court held that documents produced by the defendant on its letterhead during discovery were properly authenticated.

Defendants can't possibly deny having produced the aforementioned records.

Thus Exhibits 6-16, 35, 40-42 are sufficiently authenticated.

**Documents authenticated by production on defendant's letterhead during discovery**

> *Chavez v. Thomas & Betts Corp., 396 F.3d 1088 (10th Cir. 2005)*
>
> (documents were authenticated by the fact that they were produced by the defendant on its letterhead during discovery);

Exhibits 6, 7, 9,13, 14, 15, 35, 40, 41 were produced by Equity Trust on their letterhead during discovery of the US government's case in Jersey. That authenticated them. See also [Exhibits H, N].

Hilsenrath v Equity et al
Opposition to strike evidence

8

**Rule 902. Self-authentication**

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> (6) Newspapers and periodicals. Printed materials purporting to be newspapers or periodicals.
>
> (7) Trade inscriptions and the like. Inscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control, or origin.

Such Exhibits are 18, 21, 22, 24 27, 28, 30, 36, 38, 39 are periodicals and papers such as South China Post, The Monthly M&A magazine, PRNewswire, The Lawyer.com or equity's own InSight pamphlets or Jardine's colorful annual report

**Assertive statements not hearsay if not offered to prove the truth of the assertions**

Some exhibits in the Hilsenrath declaration Doc 50 fall under this category of exhibits that do not attest to the truth of the statements herein but to an association of parties, to the effect on an audience or simply "state what they state" without a presumption of truth or falsity.

> *Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534*
>
> Commentators have identified many instances in which assertive statements are not hearsay because they are not offered to prove the truth of the assertions:
>
> [s]tatements offered to "prove that because they were made, listeners had notice or knowledge of the information related in the statements," or to show the effect on the listener of the statement;
>
> [s]tatements "offered to prove an association between two or more persons;"
>
> When analyzing the admissibility of electronically generated evidence, courts also have held that statements contained within such evidence fall outside the hearsay definition if offered for a purpose other than their substantive truth. Siddiqui, 235 F.3d at 1323 (e-mail between defendant and co-worker not hearsay because not offered to prove truth of substantive content, but instead to show that a relationship existed between defendant and co-worker…
>
> Where the writings are non-assertive, or not made by a "person," courts have held that they do not constitute hearsay, as they are not "statements." United States v. Khorozian, 333 F.3d 498, 506 (3d Cir. 2003) ("[N]either

> the header nor the text of the fax was hearsay. As to the header, '[u]nder FRE 801(a), a statement is something uttered by 'a person,' so nothing 'said' by a machine . . . is hearsay' (second alteration in original)); Safavian, 435 F. Supp. 2d at 44 (holding that portions of e-mail communications that make imperative statements instructing defendant what to do, or asking questions are nonassertive verbal conduct that does not fit within the definition of hearsay);

Such are for example the exhibits documenting Candover's ownership of US businesses (Doc 50 Hilsenrath declaration Exhibits 19-33) Dakota Minnesota Railways, Wellstream, Aspen insurance, Vetco energy services and its tale of historical corruption.

These exhibits had the following effect on their audience: they motioned Moberly of Candover into a crescendo of declarations [Exhibits I, J, K] that started in Exhibit I with "we have only a passive investment in a California fund, Lombard", to Exhibit J in which Dakota Minnesota rail was added, and finally to Exhibit K in which Moberly uncovered further Candover US businesses - Aspen, Vetco, Wellstream, Lombard and a current bond deal besides Equity Trust with its New York operation.

By that the exhibits proved to "have an effect on an audience" according to *Lorraine v. Markel* -- they compelled Moberly (and also Jardine's Wilken) to tell the truth.

Thus Exhibits 19-33 related to Candover are not hearsay because they were not offered to prove truth of substantive content. Nevertheless Moberly of Candover attested to their truthfulness and by that corroborated their authenticity.

Similar rationale applies to Jardine and Equity Trust Exhibits 35-40 and 17-18 respectively.

Equity Trust have admitted to have a site that solicits clients in the United States, indiscriminant of state. Although the site even mentions Austin personally, he asserts (as all defendants in this case) that the information is posted by "another company" that just happens to have the same name.

Nevertheless, if Equity Trust is displeased with allegedly unaccredited information from their own site (as to minimum sufficient contacts with the United States), plaintiffs can always substitute those exhibits with more Securities and Exchange Commission filings of Equity Trust's businesses in the United states such as Uranium Corp – a company whose shareholders are non-descript Equity Trust entities and its mission is exploration of Uranium in the US Mid-West [Exhibit L]

Finally the above exhibits should stay in evidence to attest to the lack of credibility of witnesses Moberly, Wilken and Austin and their attempt to initially provide untruthful affidavits of their firms' contacts with the United States.

Similar class of rationales applies to Bougeard's emails to Westreich of Nixon Peabody, attorneys for Janvrin, and to her colleagues re the same case (notwithstanding the authenticity resulting from proper electronic stamping as stated before).

Even disregarding the contents of these emails, on a more limited theory, they can be limited to only prove connection between Bougeard, an employee of the Equity Trust legal department[4], and the attorneys for Janvrin in the United States.

As *prima facie* evidence for the purpose of jurisdiction, the exhibits establish the relation between Bougeard, the Equity Trust legal department and attorneys for Janvrin in California. Thus Exhibits 11 and 12 are not hearsay according to *Siddiqui, 235 F.3d at 1323*.

**Hilsenrath and US Wireless documents authenticated by Hilsenrath**

Exhibits 6, 7, 9, 14, 15, 40, and 41 of Doc 50 are documents either received personally by Oliver Hilsenrath or by US Wireless Corporation. Oliver Hilsenrath personally authenticates these documents[5], notwithstanding further authentication by Equity Trust's custodians of records [Exhibit N].

**Authentication of the Janvrin Settlement Agreement**

Defendants have also objected to one of the most cited document in this case: the Janvrin settlement agreement Exhibits 9 and 41.

These exhibits in their full form are authenticated through a sworn affidavit by Beth Applebaum of Nixon Peabody, Janvrin's attorneys in their malicious application to obtain a default judgment of over $7 million from the Hilsenraths in case 4:02-cv-01068-CW Janvrin Holdings Limited et al v. Hilsenrath et al [Exhibit M].

The exhibits are also brought by Perkins, Kalman and others in their pleadings Doc 70, current case.

By that, Exhibits 9 and 41 are properly authenticated by defendants themselves.

---

[4] Bougeard afides herself being an employee of the Equity Trust legal department

[5] Opening of accounts by Perkins, Kalman, Equity, Insinger and Jardine as well as reports to NASD or SEC are a subset of a larger body of similar documents

**Admitting on a preliminary injunction motion copies of pages from defendant's and third party websites and 5-901 Federal Rules of Evidence Manual (§ 901.02)**

Exhibits 17-29, 31-34, 36-39, 46-49 are excerpts of websites of Equity trust, Candover, Jardine, Insinger, the US DOJ, EDGAR, The French Stock Exchange, South Chine News broadcast, Dakota Minnesota railway, Wellstream, the Rothschild bank, Aspen Insurance, the Lombard fund and others.

The relation of defendants with and their ownership of Dakota Minnesota Rail, Aspen, Wellstream, Vetco, Pizza Hut, Mandarin Oriental, Rothschild bank etc were since corroborated by the "updated" declaration of Moberly, Wilken, Austin, Mooij.

Candover's Moberly needs to decide whom he prefers to mislead: this court with his assertion of being the ever-passive investor or his shareholders with his other assertions of the active and proactive investor:

Moberly's statements about Candover being the **ever passive** company, when it comes to jurisdiction, remain in ironic contrast to the assertive way Candover presents itself to its shareholders:

> "*People not businesses* -- A buyout is a key point in the life of a company and the careers of the people involved. It's a big decision requiring huge commitment and some personal risk; but the rewards can be high. At Candover we back people, not businesses. We're looking for ambitious, entrepreneurial people whose vision of creating strong medium and long-term value matches our own. We've earned a reputation for forming close partnerships with management. For many of our investee companies, the successful completion of a deal is just the start. Enabling the next phase of growth, be it geographic expansion or add-on acquisitions of new product lines is fundamental to what we do. We offer both follow-on funds, as well as experienced advice. When the time is right – with full management support – we seek an exit that rewards all participants fully." [quote from the Candover web site see exhibits in Doc 50]

These exhibits therefore played a material role in revealing the truth.

The assertions of lack of authenticity of these web resources, at the level of preliminary injunctions motions, was therefore overcome (see below). The court should establish the acceptable nature of these exhibits.

> *See* Johnson-Wooldridge v. Wooldridge, 2001 Ohio App. LEXIS 3319 at
> *11 (Ohio App. July 26, 2001) . *See also* Perfect 10, Inc. v. Cybernet
> Ventures, Inc., 213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002) (admitting on

a preliminary injunction motion copies of pages from defendant's and third party websites (as to the latter of which the furnished "webpages contain[ed] ... the internet domain address from which the image was printed and the date on which it was printed") because "the declarations, particularly in combination with circumstantial indicia of authenticity (such as the dates and web addresses), would support a reasonable juror in the belief that the documents are what [plaintiff] says they are;" noting the "reduced evidentiary standard in preliminary injunction motions").

5-901 Federal Rules of Evidence Manual[6] (§ 901.02) --[§ 901.02] Editorial Explanatory Comment: In considering whether the opponent has raised a genuine issue as to trustworthiness, and whether the proponent has satisfied it, the court will look at the totality of the circumstances, including, for example:

The length of time the data was posted on the site.
- Whether others report having seen it.
- Whether it remains on the website for the court to verify.
- Whether the data is of a type ordinarily posted on that website or websites of similar entities (*e.g.*, financial information from corporations).
- Whether the owner of the site has elsewhere published the same data, in whole or in part.
- Whether others have published the same data, in whole or in part.
- Whether the data has been republished by others who identify the source of the data as the website in question.

A genuine question as to trustworthiness may be established circumstantially.

**Rule 807.  Residual Exception**

Finally, the courts apply their own judgment as to the materiality, the probative value and the interest of justice in adopting circumstantially trustworthy evidence.

Rule 807: A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence

The evidence presented had already the result of having all defendants restate their declarations and materially corroborating the evidence as to questions of jurisdiction.

---

[6] Matthew Bender & Company, Inc., a member of the LexisNexis Group.

Hilsenrath v Equity et al                                              13
Opposition to strike evidence

# SUMMARY ISSUES

The court denied plaintiffs discovery for the purpose of jurisdiction. That lowered plaintiffs evidentiary burden with respect to jurisdiction to a level of *prima facie* evidence. The plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.

> *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122  In a case where the district court acted on the defendant's motion to dismiss without first holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss. The plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant. Unless directly contravened, the plaintiff's version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists

And also

> *Seaboard Sur. Co. v. Grupo Mexico, S.A.de C.V.*, 2006 U.S. Dist. LEXIS 31068  Moreover, in the Ninth Circuit, "when a district court acts on a defendant's motion to dismiss . . . without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted). It would "therefore be counterintuitive to require a plaintiff, *prior* to conducting discovery, to meet the same burden that would be required in order to defeat a motion to dismiss. [*9] " Orchid Biosciences, Inc., 198 F.R.D. at 673 (emphasis in original)

Through the present motion defendants are trying to get rid of evidence in order to hamper plaintiffs' *prima facie* showing of jurisdiction.

The court has already ruled on the matter of discovery, therefore plaintiffs assume that the court will not allow either discovery or an evidentiary hearing on matters of jurisdiction.

As the result of the above, the court can only deny the current motion to strike evidence, and subsequently deny defentants' motions to dismiss for lack of jurisdiction.

> *Dever v. Hentzen Coatings, Inc.* 2004 WL 2758236 The Ninth Circuit has held that "[d]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Investment, Inc.,* 788 F.2d 535, 540 (9th Cir. 1986). See also *Wells Fargo & Co. V. Wells Fargo Express Co.,* 556 F.2d 406, 431 n. 24 (9th Cir. 1977).

> Faced with these unrefuted facts, the lower courts only had two viable options, either deny the motions to dismiss, or grant discovery on the jurisdictional issue. <u>Watlow Elec. Mfg. v. Patch Rubber Co., 838 F.2d 999 (8th Cir. 1988)</u> (holding "if the District Court does not hold a hearing and instead relies on pleadings and affidavits…, the court must look at the facts in a light most favorable to the non-moving party, and resolve all factual conflicts in favor of that party").
>
> Accordingly, Certiorari is warranted to address whether the District Court and Eighth Circuit undermined the Arkansas' Legislature's intent to afford litigants the full range of due process by failing to exercise jurisdiction or, at a minimum, afford Dever the opportunity to conduct jurisdictional discovery.

## CONCLUSION

Defendants in this case made critical tactical errors:

1. Leveraging on this court, defendants solicited and obtained an order that bars plaintiffs from discovery for the purpose of establishing jurisdiction.
2. By that, as a side effect, they lowered plaintiffs' burden to establish jurisdiction from *preponderance of evidence* to *prima facie*.
3. Noticing the self created side effect, defendants joined effort to eliminate evidence submitted by plaintiffs for the, now lower *prima facie,* showing of jurisdiction.
4. However as a further side effect of preventing plaintiffs to conduct discovery, the court has to accept plaintiffs' evidence on a more liberal basis (notwithstanding the firm grounds of the exhibits) and, at most, defer to later authentication of the exhibits till the end of trial[7].

The result of defendants' shortsighted strategy is twofold:

- Defendants' motion to strike evidence will have to be denied as the result of their own efforts to lower the standard of evidence, and
- Defendants' motions to dismiss on grounds of jurisdiction are now moot as the result of the need for only *prima facie* showing for jurisdiction – a burden that was met and exceeded by plaintiffs (by this document itself).

---

[7] See earlier in this pleading *Huddleston v. United States*, 485 U.S. 681, 690 n.7 (1988)

Notwithstanding the above statements, plaintiffs' exhibits and evidence are supported by statutes, by applicable law, by sworn affidavits, established discovery rules assisted by accredited government sources.

Plaintiffs also launched an effort of targeted authentication of a particular subset of the evidence (see pp 3) and will file with the court further affidavits accordingly.

Dated: October 10, 2007

Respectfully submitted,

                              HANA HILSENRATH
                               Plaintiff *PRO SE*

                                  /s/ Hana Hilsenrath

                               OLIVER HILSENRATH
                               Plaintiff *PRO SE*

                                  /s/ Oliver Hilsenrath