**EXHIBIT A:** **Court order re rule 26**

1
LATHAM & WATKINS LLP
  Peter A. Wald (Bar No. 85705)
2
  peter.wald@lw.com
  Darius Ogloza (Bar No. 176983)
3
  darius.ogloza@lw.com
  Sarah M. Ray (Bar No. 229670)
4
  sarah.ray@lw.com
  Katie Y. Chang (Bar No. 246247)
5
  katie.chang@lw.com
505 Montgomery Street, Suite 2000
6
San Francisco, California  94111-2562
Telephone:  +415.391.0600
7
Facsimile:  +415.395.8095

8
Attorneys for Defendants
EQUITY TRUST (JERSEY) LIMITED,
9
CAROLINE BOUGEARD AND GRANT BROWN

10
*On Behalf of All Defendants*

11
UNITED STATES DISTRICT COURT

12
NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| HANA HILSENRATH AND OLIVER HILSENRATH,<br><br>Plaintiffs,<br><br>v.<br><br>EQUITY TRUST (JERSEY) LIMITED, CANDOVER INVESTMENTS PLC, INSINGER DE BEAUFORT SA, JARDINE MATHESON HOLDINGS LIMITED, GRANT BROWN, MELVYN KALMAN, JOHN PERKINS, CAROLINE BOUGEARD, AND DOES 1-10,<br><br>Defendants. | CASE NO. C:07-CV-3312-CW<br><br>~~[PROPOSED]~~ ORDER GRANTING DEFENDANTS' REQUEST FOR CLARIFICATION AND JOINT MOTION TO CONTINUE CASE MANAGEMENT CONFERENCE AND RULE 26 DISCLOSURE OBLIGATIONS<br><br>Date:      September 13, 2007<br>Time:      2:00 p.m.<br>Place:     Courtroom 2, 4th Floor<br>Judge:    Honorable Claudia Wilken<br><br>Complaint Filed:  June 25, 2007 |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case Number: C:07-CV-3312-CW
[PROPOSED] ORDER GRANTING DEFENDANTS' REQUEST FOR CLARIFICATION AND
MOTION TO CONTINUE CMC AND RULE 26 DISCLOSURE OBLIGATIONS

1

2

       Defendants' Motion to Continue Case Management Conference and Rule 26

Disclosure Obligations, having come before the Court for consideration, is GRANTED.  It is

3

4

hereby ORDERED that the parties are exempt from Rule 26 obligations as the plaintiff Oliver

Hilsenrath is under custody as set out in Rule 26(a)(1)(E)(iv).  Moreover, the Court holds that

5

6

there is good cause to continue the Case Management Conference and Rule 26 Disclosure

Obligations until 45 days after the Court rules on defendants' pending motions to dismiss.

7

       IT IS SO ORDERED.

8

9       9/17/07

10   DATED:_____   BY:_____

11          THE HONORABLE CLAUDIA WILKEN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

Case Number: C:07-CV-3312-CW
[PROPOSED] ORDER GRANTING DEFENDANTS' REQUEST FOR CLARIFICATION AND
MOTION TO CONTINUE CMC AND RULE 26 DISCLOSURE OBLIGATIONS

**EXHIBIT B:  Nixon Peabody CMC statement re Janvrin strike-off**

1  Glenn E. Westreich (State Bar Number: 100457)
   Beth L. Appelbaum (State Bar Number: 187460)
2  NIXON PEABODY LLP
   Two Embarcadero Center, Suite 2700
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300

5  Attorneys for Plaintiffs:
   JANVRIN HOLDINGS LIMITED,
6  CROSSGAR LIMITED and RYBURN LIMITED

7

8                  UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

10

11  JANVRIN HOLDINGS LIMITED, CROSSGAR          Case No.:  C02 1068 CW
12  LIMITED, and RYBURN LIMITED,
                                                **PLAINTFFS' CASE MANAGEMENT**
13                      Plaintiffs,             **CONFERENCE STATEMENT**

14         vs.

15  DR. OLIVER HILSENRATH, et al.               Date:       March 2, 2007
                                                Time:       1:30 p.m.
16                      Defendants.             Place:      Courtroom 2
                                                Judge:      The Hon. Claudia Wilken
17

18  AND RELATED CROSS-CLAIMS.

19

20         Dr. Hilsenrath, now appearing in *Pro Per*, and counsel for Plaintiffs conferred telephonically

21  and *via* e-mail regarding the filing of case management conference statements on Thursday February

22  22, 2007. At Dr. Hilsenrath's request, the parties are submitting separate statements.

23         **Plaintiffs' Statement:**

24         Following the Case Management Conference on February 9, 2007, Plaintiffs' counsel

25  contacted in writing all persons known to have been associated with Janvrin Holdings Limited,

26  Crossgar Limited and Ryburn Limited to advise them of the status of these proceedings and this

27  Court's requirement that representatives of these three entities appear in person at the next Case

28  Management Conference on March 2, 2007. On February 15, 2007, Plaintiffs' counsel was contacted

1  by Victoria Loraine, who identified herself as in-house counsel at Equity Trust, a firm that has been

2  associated with the three Plaintiffs herein.  Ms. Loraine advised that it was her understanding that

3  these three entities were "struck off the corporate register of the British Virgin Islands" in 2006.  She

4  stated that she would look further into the matter of the current status of Janvrin Holdings Limited,

5  Crossgar Limited and Ryburn Limited, or any successors, and that she would endeavor to provide

6  relevant documents.  To date, Plaintiffs' counsel has not heard back from Ms. Loraine, despite efforts

7  to follow-up on the preceding call, nor has there been a response from anyone else contacted

8  following the last hearing.  Plaintiffs' counsel has not been able to obtain any other information

9  regarding the status of these entities.  Likewise, as of this time, Plaintiffs' counsel has received no

10  information that any person intends to attend the Case Management Conference on March 2, 2007 on

11  behalf of any of the three Plaintiff entities.

12      In view of Plaintiffs' longstanding non-payment of attorneys' fees and the complete

13  communication breakdown between Nixon Peabody LLP and Plaintiffs and Counter-Claim

14  Defendants, Nixon Peabody intends to move immediately to withdraw as counsel for Janvrin

15  Holdings Limited, Crossgar Limited and Ryburn Limited.

16      It is submitted this matter should be continued for an additional forty-five (45) to sixty (60)

17  days to allow time for a hearing on notice of Nixon Peabody's motion to withdraw, and for Plaintiffs

18  or their successors to appear and advise the Court as to their intentions regarding this litigation.

19

20                                        Respectfully submitted,

21                                        NIXON PEABODY LLP

22  Dated: February 2 3, 2007        By: _____

23                                        Glenn E. Westreich
                                          Attorneys for Plaintiffs Janvrin Holdings
24                                        Limited, Crossgar Limited and Ryburn
                                          Limited

25

26

27

28

**EXHIBIT C:  Hilsenrath letter to AUSA Buchanan re Vetco guilty plea**

HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

October 7, 2007

James R. Buchanan
Chief, Major Frauds
U.S. Attorney's Office
515 Rusk Avenue
Houston, TX 77002
Office: (713) 567-9000
Fax: (713) 718-3300

RE: Case 4:07-cv-03312-CW Hilsenrath et al v. Equity Trust, Candover et al

Dear Mr. Buchanan,

First thank you for your gracious assistance over the phone a couple of weeks ago.

I am writing you in the same matter of the case in reference.

We brought this case against Candover a British corporation and one of the former owners of Vetco, a corporation that pleaded guilty to a landmark FCPA violation earlier this year [Attachment 1 - copy of the Vetco plea announcement], a case that you prosecuted.

In our case we allege the involvement of Candover in violations of the RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT 18 U.S.C.S. § 1961 et al. [Attachment 2 -- a copy of the referenced complaint].

Candover's attorney in the US are petitioning the court to dismiss the complaint claiming that Candover does not have sufficient contacts with the United States.

We presented the above plea in Attachment 2 as part of the proof of Candover's multitude of investments in the United States as well as proof of their availment to the US federal regulators inter alia through this plea and its former commitments to the US Government – in the same context.

1

In a recent pleading in the District Court of Oakland, Candover's attorney petitioned the Court to remove the plea presented in Attachment 2 from the record challenging the authenticity of the plea.

I am asking your assistance to confirm to us in writing the authenticity of Attachment 2 in order to present the verification of authenticity in Court.

Thank you again for your kind assistance in the past and thank you in advance for your attention to this request.


Sincerely,


Oliver Hilsenrath

**EXHIBIT D:  Hilsenrath letter to Government of BVI re Ryburn,**

**Crossgar strike-off**

HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

October 7, 2007

Ms. Stacie K. Vanterpool
The Government of the British Virgin Islands
BVI/ Company Registry – Director/Corporate Affairs
Tel: +1 284 494 5355
Fax +1 284 494 7974


RE: Case 4:07-cv-03312-CW Hilsenrath et al v. Equity Trust, et al

Dear Ms. Vanterpool,

We are writing you in a connection with the action in reference brought against Equity
Trust et al in the District Court of Oakland CA. Equity Trust have also an operation in
Road Town, Tortola.

We allege the involvement of Equity Trust in violations of the RACKETEER
INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT 18 U.S.C.S. § 1961
et al. [Attachment 1 -- a copy of the referenced complaint].

In May 2007 I received from your office, at my request, a status report on 3 entities
managed by Equity Trust/Tortola as Registered Agent [see Attachment 2], namely
Janvrin, Ryburn and Crossgar.

In a recent pleading in the District Court of Oakland, Equity Trust's attorney petitioned
the Court to remove your report [Attachment 2] challenging the authenticity of the report.

I am asking your assistance to confirm to us in writing the authenticity of Attachment 2 in
order to present the verification of authenticity in Court.

Thank you again for your kind assistance in the past and thank you in advance for your
attention to this request.


Sincerely,


Oliver Hilsenrath

1

**EXHIBIT E: Hilsenrath letter to Homeland security re Mooij / Insinger**

**Signature on Patriot Act**

HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

October 7, 2007

Office of the Chief Counsel
Immigration and Customs Enforcement
U.S. Department of Homeland Security
26 Federal Plaza, Room 1130
New York, New York 10278

RE: Case 4:07-cv-03312-CW Hilsenrath et al v. Equity Trust, Candover, Insinger de Beaufort et al

Dear Madam or Sir,

We are writing you in a connection with a foreign banking entity believed to be a signatory on the US patriot Act – Insinger de Beaufort.

We brought the case in reference in the District Court of Oakland CA against Insinger de Beaufort, a multinational financial institution with business operations in Netherlands, Luxemburg and a variety of offshore havens.

We also believe that Insinger de Beaufort has significant activities in the United States.

We allege the involvement of Insinger de Beaufort in violations of the RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT 18 U.S.C.S. § 1961 et al. [Attachment 1 -- a copy of the referenced complaint].

We believe, based on Insinger de Beaufort's annual report, that Insinger is a signatory on the US Patriot Act [see Attachment 2]. The actual signatory is a person by the name of R. Mooij/Director.

That same person shows up in the Insinger de Beaufort 2006 annual report as the CFO of Insinger de Beaufort [see Attachment 3].

Insinger's attorney in the US (District Court of Oakland, CA) is petitioning the court to dismiss the complaint against Insinger de Beaufort claiming that Insinger does not have sufficient contacts with the United States.

We presented the signature of Insinger and of Mooij on the Patriot Act as evidence of contacts with the United States [Attachment 2].

In a recent pleading in the District Court of Oakland, an attorney representing Insinger de Beaufort stated on behalf of her client that Insinger - the parent company - are NOT a signatory on the US Patriot Act , but only their banking subsidiary - and therefore they do not have contacts with the United States.

We are seeking the following clarifications:

1. Is Insinger de Beaufort a signatory on the US patriot Act?

2. Is it acceptable to the US government that the same R. Mooij in one capacity as a Director of the Insinger banking subsidiary makes a commitment to the US Patriot Act, but in his other, higher capacity as the CFO of the parent corporation, pleads no commitment to the same Patriot Act?


Thank you in advance for your attention to this request.


Sincerely,


Oliver Hilsenrath

**EXHIBIT F:   Excerpts of an interview with John Perkins re**

**identification of exhibits 43 and 44 in DOC 50**

1      Q.    And Dahan and Haruvi, they signed as CEO and

2    president of Pelican Securities & Investments and

3    Pelican Consulting; is that correct?

4      A.    Yes.

5      Q.    So apparently Matheson had been taking legal

6    action against one of its own clients since at least

7    2001; isn't that correct?

8      A.    Yes.

9      Q.    And through that entire time it was acting as a

10    trustee over Mr. Hilsenrath's trust; isn't that correct?

11      A.    I believe that was the case, yes.

12      Q.    How can that be?

13      A.    Well, the only thing I would say is that -- and

14    again, it's not trying to pass the buck, but by that

15    time Mr. Kalman had taken primary responsibility for the

16    relationship.  We'd indicated previously there was a

17    conflict of interest.  And initially we, if you like,

18    came down on the side of continuing to act for Mr. Dahan

19    and Mr. Haruvi once realizing there was a conflict.

20      Q.    And I think we've established that the attorney

21    representing the plaintiffs was Mr. Glen Westreich; is

22    that correct?

23      A.    Yes.

24      Q.    I think we've established that you met Mr. Glen

25    Westreich in early 2000 at a meeting in London, in which

468

1    yourself and certainly Mr. Kalman on the Matheson side

2    were present, and Mr. Dahan and Mr. Haruvi, they were

3    also present; isn't that right?

4        A.    That's correct.

5        Q.    And Mr. Hilsenrath did not attend that meeting.

6        A.    He did not.

7        Q.    Doesn't it appear that Insinger had a conflict

8    in that it was supporting legal action by some of its

9    clients against other of its clients?

10       A.    The way I see it, we didn't have much choice in

11   the matter.  We -- we were requested by clients to take

12   action.  They -- they, I believe, gave us sufficient

13   proof that they -- that they had a litigious action to

14   bring, and so we -- because we administered the

15   companies on their behalf, which owned the shares which

16   were the subject of the dispute, under legal advice we

17   felt we had to proceed with the action.

18       Q.    Did Matheson ever provide information to Dahan

19   or Haruvi or Westreich in relation to Oliver Hilsenrath

20   or any of his entities?

21       A.    Well, that's quite a sweeping question, any

22   information.  I don't think we gave -- I don't recall

23   giving specific information, such as has been referred

24   to before as in specific, you know, entire assets of

25   Aida Holdings.  For example, I don't think we would have

469

1    discussed anything in detail.

2         Q.    Was information about Oliver Hilsenrath

3    provided?

4         A.    I don't recall any -- anything specific.  I

5    don't really think that was the -- the subject of the

6    discussions.  The discussion was either how to recover

7    stock or options or perhaps proceeds which Mr. Dahan and

8    Mr. Haruvi thought they were entitled to.  So it was

9    really in that context.

10        Q.    Were any records relating to Oliver Hilsenrath

11   or his entities provided to any of those who attended

12   the meeting?

13        A.    Not to my recollection, no.

14        Q.    Just off the record for a second.

15              Back on the record.

16              I hand you what has been previously marked as

17   Defense Exhibit 212, which appears to be a fax to Amos

18   Bentzur, B-e-n-t-z-u-r, Attorney at Law, from Linda

19   de la Cour, Insinger de Beaufort; the subject is Aida

20   Holdings, and the date is 6 November 2000.

21        A.    Correct.

22        Q.    What does this refer to?  What attached -- what

23   attached documents are being provided to Mr. Amos

24   Bentzur?

25        A.    It says it's going to fax the attached

470

1   documents in respect of the power of attorney in

2   relation to Aida Holdings Limited.  And it goes on to

3   say that a courier package is being forwarded to

4   Mr. Bentzur in respect to the litigation.  And attached

5   are documents relating to Telecom Associates, which are

6   from the Matheson or the Equity records, stating that

7   Mr. Hilsenrath is the client, and giving the registered

8   and administration addresses, details of the officers,

9   and giving the financial year-end.  Just showing the

10  issued share capital, one share of Telecom Associates.

11        Then there's a -- internal ledger print showing

12  the various nominal accounts with some balances on.

13        It looks like similar information with respect

14  to Star Anise Limited.  There's a Morgan Stanley Dean

15  Witter statement for the month ending 30th April 2000 in

16  regard to Star Anise, showing holdings and daily

17  activity.

18        There's some statements in relation to Borazon

19  Limited, showing basic company information and also

20  internal nominal ledger prints with balances on.

21  There's a statement for Borazon Limited, showing

22  relationships in regard to other entities, including

23  Aida Holdings Limited, showing the -- the bankers being

24  Matheson Bank International, and also brokerage accounts

25  with Morgan Stanley, Stuart Coleman, and Spear Leeds

471

1    Kellog.

2           Do you want me to keep going?

3    Q.    No, that's all right.

4           Going back to the first page, Amos Bentzur,

5    wasn't he the attorney representing Dahan?

6    A.    Well, he -- he was known to David Dahan and he

7    was certainly present at the meeting in London.

8    Q.    So although the caption says it's Aida Holdings

9    Limited, and the paragraph that refers what's being

10   forwarded seems to indicate that "Kalman has asked me to

11   fax documents relating to a power of attorney on the

12   above company," would you agree with me that much of the

13   information that is being conveyed concern other

14   entities other than Aida Holdings?

15   A.    Yes, it does.

16   Q.    And also we have seen previously numerous --

17   numerous instructions from Mr. Hilsenrath to various

18   Matheson/Insinger trust people not to disclose

19   information to Mr. Dahan.  Isn't that an accurate

20   statement?

21   A.    Yes.

22   Q.    What is going on here?

23   A.    Well, all I can say is that I did not send that

24   fax, it was Linda de la Cour, and she sent it apparently

25   on the instructions of Mr. Melvyn Kalman.  I don't

472

1    recall having seen any of this documentation before, so

2    I wasn't aware of it.

3        Q.    You have worked in and on behalf of Matheson,

4    Insinger de Beaufort, and -- and Equity for how many

5    years, sir?

6        A.    Sixteen and a half.

7        Q.    You were aware of what the responsibilities and

8    fiduciary obligations are of trust companies --

9        A.    Yes.

10       Q.    -- isn't that correct?

11            Based upon your experience and your

12   professional dealings with many clients and trust

13   companies, do you believe that your employer had a

14   conflict of interest with Mr. Hilsenrath and breached

15   its fiduciary obligations as a result of the information

16   we have shown you here today?

17       VISCOUNT SUBSTITUTE MATTHEWS:  Could I just

18   interrupt at this point.  It seems to me -- I want to

19   find out the relevance of this in relation to these

20   particular criminal proceedings, and it seems to me that

21   you're asking this client to incriminate his former

22   employer.

23       MR. BREAKSTONE:  I'll be happy to discuss this with

24   you, but it's not a relevant objection.

25            Mr. Dahan and Mr. Haruvi were primary investors

**EXHIBIT G:** **US government and Jersey government attempt to retrieve**

**Equity destroyed Docs**

**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

_____

| | |
|---|---|
| *11th Floor, Federal Building* | *(415) 436-7200* |
| *450 Golden Gate Avenue, Box 36055* | |
| *San Francisco, California 94102-3495* | *FAX:(415) 436-7234* |

December 12, 2006

BY FEDERAL EXPRESS, EMAIL AND FACSIMILE TO 202/514-0080

Ruth Payne, Esq.
Office of International Affairs
United States Department of Justice
1301 New York Avenue N.W.
Washington, D.C.  20005

      Re:     Fourth Supplemental Request for Assistance in the Prosecution and Continuing
              Investigation of Oliver Hilsenrath                                   

Dear Ms. Payne:

      On August 9, 2006, Paul Joseph sent a third supplemental request to Jersey regarding additional documents that Oliver Hilsenrath's prior attorney, Steve Kalar, sent to me.  Those documents (a) came from Equity Trust in Jersey, the Channel Islands, (b) were responsive to our original MLAT request dated November 10, 2003, and (c) were not produced by Equity to the Jersey authorities, and thus were not provided to us.  The documents include admissions by trust officers that they had a conflict of interest with Hilsenrath and other trust clients, characterization of the trusts as tax exempt accounts, and possible impeachment material of our main cooperating witness, Klarman.

      As a result, Equity Trust reviewed its files again, and produced more documents that the Jersey authorities sent to us in November.

      Following that production, Oliver Hilsenrath provided me with the enclosed court pleading. Attached to that pleading are additional documents that are responsive to our original MLAT request and were not provided by Equity Trust.  (Some of the attached documents were provided, and you can tell those documents because they bear the bates range JAG, which shows that they came from the Jersey Attorney General's Office.)

      According to Oliver Hilsenrath, he has more documents that were provided in civil discovery that Equity Trust did not provide in response to the MLAT request.  As I mentioned in my third request, the documents that  he identifies are important to the investigation here, and the parties cross-examined witnesses during the depositions about topics in the documents.

      1.  Description of Evidence Sought.

      Therefore, I submit this fourth supplemental request for documents that we asked for in our original MLAT requests and that were not provided.  As you can see by the court pleading that Mr.

Letter to Ruth Payne, Esq.
December 12, 2006
Page 2

Hilsenrath provided, the allegation is that Equity Trust provided Mr. Hilsenrath's private information in an attempt to give other clients of Equity an upper hand in their litigation against Mr. Hilsenrath. Issues about those clients – according to Mr. Hilsenrath's former attorney Steve Kalar – are relevant to Mr. Hilsenrath's defense.

      Accordingly, not only should Equity Trust provide the documents (including any additional documents), but also it should provide an explanation about why documents were not provided in response to our previous MLAT requests.

      Rebecca Boxall of the Jersey Attorney General's Office sent a supplementary notice to Equity dated August 17, 2006. That notice sufficiently describes the documents that are responsive to our original MLAT requests, so I do not reiterate our request here. You may also refer to Paul Joseph's request to the Attorney General dated August 9, 2006, which reiterates all of our requests for documents. Ms. Boxall is familiar with our request, as we have spent substantial time coordinating with the Jersey authorities about the production of these documents.

      2.  <u>Depositions</u>.

      We previously conducted depositions, but – depending on how Equity Trust responds – we may want to depose the witnesses further. I refer to the witnesses and procedures set forth in our prior request for assistance dated April 19, 2005.

      3.  <u>Conclusion</u>.

      Equity Trust has not provided all documents that we requested in our prior requests for assistance. We look forward to receiving the missing information promptly and an explanation for the omission. Because we have a January 29, 2007, trial date, this matter is urgent. We appreciate how helpful the Jersey authorities have been, and how promptly they have been able to respond to our requests in the past.

      Very truly yours,

      KEVIN V. RYAN
      United States Attorney

      LAUREL BEELER
      Assistant United States Attorney

Enclosures



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*11th Floor, Federal Building*                          *(415) 436-6765*
*450 Golden Gate Avenue, Box 36055*
*San Francisco, California  94102*                    *FAX:(415) 436-7234*

April 9, 2007

Mr. Oliver Hilsenrath
822 Eastbrook Court
Danville, CA  94506

Dear Mr. Hilsenrath:

    Enclosed is a copy of a letter dated March 5, 2007, from Equity Trust in response to the letters I sent them with your exhibits, asking for the file to be reviewed again in response to our MLAT request.

                          Very truly yours,

                          KEVIN V. RYAN
                          United States Attorney

                          LAUREL BEELER
                          Assistant United States Attorney

Enclosure

# EQUITY TRUST

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email  infoje@equitytrust.com

Law Officer's Department
Morier House
St Helier
Jersey JE1 1DD

Attn. Rebecca Boxall



2 March 2007

| | | |
|---|---|---|
| Our ref | : | JEV/VLO |
| **Subject** | : | **Investigation of Fraud (Jersey) Law, 1991 - Oliver Hilsenrath** |

Dear Ms Boxall

We refer to our letter dated 29 January 2007.

We have now completed a review of our files in relation to the documents exhibited to the Notice of Motion enclosed with your letter dated 3 January 2007, and advise as follows in further response in relation to Exhibit's E, G & H:

Exhibit E
Whilst we have been unable to confirm whether this document was produced at an earlier date in response to a Production Notice or Supplementary Notice, to the best of our knowledge and belief we believe that a copy of a version of this document (which does not contain the hand written notes at the bottom of the page) was produced in response to the Supplementary Notice dated 13 October 2005.

Exhibit G
We have been unable to locate this document on our files and therefore to the best of our knowledge we believe that the document has not been produced by Equity for this reason.

Exhibit H
We confirm that we have been unable to locate this document on our files and therefore to the best of our knowledge we believe that the document has not been produced by Equity for this reason.

Yours sincerely

Justine Every
In-house Legal Counsel
Equity Trust (Jersey) Limited

Regulated by the Jersey Financial Services Commission and registered under the Financial Services (Jersey) Law 1998
Registration No. 57583

**EXHIBIT H: Affidavit of John Perkins as custodian of records**

Kevin V Ryan (CSBN 118321)
United States Attorney

Ross W Nadel (CSBN 87940)
Chief, Criminal Division

Hartley M.K. West (CSBN 191609)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-6747
      Fax (415) 436-7234

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 03-0213 WHA |
| Plaintiff, | DECLARATION OF CUSTODIAN  OF |
| v. | RECORDS FOR EQUITY TRUST (JERSEY) LIMITED |
| OLIVER HILSENRATH, | |
| Defendant | |

I, John Henry Perkins, declare as follows

1) I am employed by Equity Trust (Jersey) Limited ("Equity Trust") as a Director, and have held this position since July 1997. Equity Trust was previously known as Matheson Trust Company (Jersey) Limited from December 1988 to October 2000. In October 2000, the name was changed to Insinger Trust Company Limited and, in July 2001 it was changed to Insinger de Beaufort Trust Company Limited. In July 2003 the name was changed to Equity Trust Company Limited and in November 2003 the name was changed again to Equity Trust (Jersey) Limited as it is now called. I have been employed with the company since March1989 as an assistant manager then as a manager in April 1992 and as a Senior Manager in January 1995 until July 1997.

2) I have knowledge of the record-keeping practices and procedures of Equity Trust under its various names, as they were in place since August 1996 through to the present. If called as a witness in this case, I could and would testify competently to the following:

3) I have reviewed documents labelled SEC00001 through SEC03419. These records were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters.

FS19-0150

4)  The above-stated documents were kept in the course of a regularly conducted business activity.

5)  The above-stated documents were made as a regular practice of that regularly conducted business activity.

I certify and declare under penalty of perjury according to the laws of Jersey, Channel Islands, that the foregoing is true and correct to the best of my knowledge, information and belief and that this declaration was executed in Equity Trust House, 28-30 The Parade, St Helier, Jersey on the 21st day of October 2004.

For and on behalf of Equity Trust (Jersey) Limited

John Henry Perkins
Director

FS19-0151

2

**EXHIBIT I:   First Moberly declaration**

1    REGINALD D. STEER (SBN 56324)
     rsteer@akingump.com
2    MARIA ELLINIKOS (SBN 235528)
     mellinikos@akingump.com
3    ANDREW CHO (SBN 240957)
     acho@akingump.com
4    **AKIN GUMP STRAUSS HAUER & FELD LLP**
     580 California Street, 15th Floor
5    San Francisco, California 94104-1036
     Telephone:    415-765-9500
6    Facsimile:    415-765-9501

7    Attorneys for Specially Appearing Defendant
     Candover Investments PLC

8

9

10                 UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14

15 HANA HILSENRATH AND OLIVER       Case No. 07-3312 (CRB)
     HILSENRATH,

16                Plaintiffs,      **DECLARATION OF ANDREW**
                                  **MOBERLY IN SUPPORT OF MOTION**
17                                   **OF SPECIALLY APPEARING**
       v.                              **DEFENDANT CANDOVER**
18                                   **INVESTMENTS PLC TO DISMISS FOR**
     EQUITY TRUST (JERSEY) LIMITED,       **LACK OF PERSONAL JURISDICTION**
     CANDOVER INVESTMENTS PLC,
19    INSINGER DE BEAUFORT SA, JARDINE    Date:      August 31, 2007
     MATHESON HOLDINGS LIMITED,        Time:      10:00 a.m.
20    GRANT BROWN, MELVYN KALMAN,      Ctrm:      8, 19th floor
     JOHN PERKINS, CAROLINE
21    BOUGEARD AND DOES 1-10,

22               Defendants.

23

24       I, Andrew Moberly, declare as follows:

25         1.       I am employed by Candover Investments PLC as the Company Secretary. I have

26   personal knowledge of the facts stated in this declaration and could testify to their veracity.

27

28

                                             1
DECLARATION OF ANDREW MOBERLY IN SUPPORT OF MOTION OF SPECIALLY
APPEARING DEFENDANT CANDOVER INVESTMENTS PLC TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

1       2.     Candover Investments PLC is a British holding company that organizes and invests in

2  large European buyouts. Its principal place of business is in the United Kingdom and it does not

3  maintain an office, mailing address or any employees in California.

4       3.     Candover Investments PLC has not designated an agent for service of process in

5  California.

6       4.     Candover Investments PLC is not registered or licensed to do business in California.

7       5.     Candover Investments PLC does not solicit or conduct any business in California.

8       6.     Candover Investments PLC does not maintain bank accounts in California.

9       7.     Candover Investments PLC does not own any real property in California.

10      8.     Candover Investments PLC does not pay taxes in California.

11      9.     Candover Investments PLC has a passive investment in Lombard Investments Inc., an

12  international private equity manager with offices in San Francisco, Bangkok and Hong Kong. This is

13  the only investment of Candover Investments PLC incorporated in California.

14      10.    On May 21, 2003, Candover Investments PLC acquired a 5.2% stock interest in Equity

15  Trust Holdings SARL, a Luxembourg holding company, which owns an indirect interest in Equity

16  Trust (Jersey) Limited. The interest Candover Investments PLC owns in Equity Trust Holdings SARL

17  has varied between 5.2% and 5.5% since 2003. The rights of Candover Investments PLC as a

18  shareholder of Equity Trust Holdings SARL are, and have always been, equal to and no greater than

19  those of every shareholder.

20      11.    Candover Investments PLC never owned an interest in, or had any contacts with US

21  Wireless Corporation.

22      Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the

23  United States that the forgoing is true and correct. Executed this 20th day of July, 2007 at London,

24  England.

26      By _____

27                   Andrew Moberly

28

DECLARATION OF ANDREW MOBERLY IN SUPPORT OF MOTION OF SPECIALLY
APPEARING DEFENDANT CANDOVER INVESTMENTS PLC TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

**EXHIBIT J:  Second Moberly declaration**

1   REGINALD D. STEER (SBN 56324)
    rsteer@akingump.com
2   MARIA ELLINIKOS (SBN 235528)
    mellinikos@akingump.com
3   ANDREW CHO (SBN 240957)
    acho@akingump.com
4   **AKIN GUMP STRAUSS HAUER & FELD LLP**
    580 California Street, 15th Floor
5   San Francisco, California 94104-1036
    Telephone:    415-765-9500
6   Facsimile:    415-765-9501

7   Attorneys for Specially Appearing Defendant
    Candover Investments PLC

8

9

10                      UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14

15  OLIVER HILSENRATH,                     Case No. 07-4162 (WHA)

16          Plaintiff,                     **DECLARATION OF ANDREW
                                           MOBERLY IN SUPPORT OF MOTION
16      v.                                 OF SPECIALLY APPEARING
                                           DEFENDANT CANDOVER
17  EQUITY TRUST (JERSEY) LIMITED,         INVESTMENTS PLC TO DISMISS FOR
18  CANDOVER INVESTMENTS PLC AND           LACK OF PERSONAL JURISDICTION
    DOES 1-10,                             AND INSUFFICIENT SERVICE OF
19                                         PROCESS**
            Defendants.
20                                         Date:    October 18, 2007
                                           Time:    8:00 a.m.
21                                         Ctrm:    9, 19th floor

22

23          I, Andrew Moberly, declare as follows:

24          1.      I am employed by Candover Investments PLC as the Company Secretary.  I have

25  personal knowledge of the facts stated in this declaration and could testify to their veracity.

26

27

28                                          1
    DECLARATION OF ANDREW MOBERLY IN SUPPORT OF MOTION OF SPECIALLY
    APPEARING DEFENDANT CANDOVER INVESTMENTS PLC TO DISMISS FOR LACK OF
    PERSONAL JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS

1      2.     Candover Investments PLC is a British holding company that organizes and invests in

2 large European buyouts.  Its principal place of business is in the United Kingdom and it does not

3 maintain an office, mailing address or any employees in California or elsewhere in the United States.

4      3.     Candover Investments PLC has not designated an agent for service of process in

5 California or elsewhere in the United States.

6      4.     Candover Investments PLC is not registered or licensed to do business in California or

7 elsewhere in the United States.

8      5.     Candover Investments PLC does not conduct any business in California or elsewhere in

9 the United States.

10     6.     Candover Investments PLC does not maintain bank accounts in California or elsewhere

11 in the United States.

12     7.     Candover Investments PLC does not own any real property in California or elsewhere

13 in the United States.

14     8.     Candover Investments PLC does not pay taxes in California or elsewhere in the United

15 States.

16     9.     Candover Investments PLC does not own a controlling interest in any company

17 incorporated or organized in the United States.

18    10.    Candover Investments PLC does not participate in the management of any company

19 incorporated or organized in the United States.

20    11.    Candover Investments PLC has a passive investment in Lombard Investments Inc., an

21 international private equity manager with offices in San Francisco, Bangkok and Hong Kong.  This is

22 the only investment of Candover Investments PLC incorporated in California.

23    12.    In addition to its investment in Lombard Investments Inc., Candover Investments PLC

24 has only three other direct investments in the United States, all of which are passive.  It owns an 8.5%

25 (fully diluted) interest in Dakota, Minnesota & Eastern Railroad Corporation ("DMERC").  The rights

26 of Candover Investments PLC as a DMERC shareholder are no greater than those of other DMERC

27 shareholders.  Mr. Stephen Curran, a director of Candover Investments PLC, is a non-executive

28

2

DECLARATION OF ANDREW MOBERLY IN SUPPORT OF MOTION OF SPECIALLY
APPEARING DEFENDANT CANDOVER INVESTMENTS PLC TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS

1  member of DMERC's Board of Directors.  Candover Investments PLC also owns very small interests

2  in Geocapital Partners, LLC and Extraprise Group, Inc.

3     13. To my knowledge, the only other activity of Candover Investments PLC in the United

4  States is in connection with its recent private placement bond issue to investors in the United States.  In

5  June 2007, Candover Investments PLC participated in a road show in the United States in connection

6  with this bond issue.

7     14. On May 21, 2003, Candover Investments PLC acquired a 5.2% stock interest in Equity

8  Trust Holdings SARL, a Luxembourg holding company, which owns an indirect interest in Equity

9  Trust (Jersey) Limited.  The interest Candover Investments PLC owns in Equity Trust Holdings SARL

10  has varied between 5.2% and 5.5% since 2003.  The rights of Candover Investments PLC as a

11  shareholder of Equity Trust Holdings SARL are, and have always been, equal to and no greater than

12  those of every shareholder.

13     15. Candover Investments PLC received Plaintiff's complaint and papers via Federal

14  Express on August 16, 2007 in London, England.  The Federal Express International Air Waybill for

15  Plaintiff's complaint and papers indicates that the Federal Express shipment was sent by Plaintiff

16  Oliver Hilsenrath from 822 Eastbrook Court, Danville, California, 94506.  On information and belief,

17  Plaintiff's current residential address is 822 Eastbrook Court, Danville, California, 94506.  Attached

18  hereto as Exhibit 1 is a true and correct copy of the Federal Express International Air Waybill for

19  Plaintiff's complaint and papers.

20     16. Candover Investments PLC never had any contacts with Oliver Hilsenrath or

21  participated in the management of his assets.

22     17. Candover Investments PLC is not in the business of asset management.

23     Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the

24  United States that the forgoing is true and correct.  Executed this 4th day of September, 2007 at

25  London, England.

26  By_____

27         Andrew Moberly

28

              3

DECLARATION OF ANDREW MOBERLY IN SUPPORT OF MOTION OF SPECIALLY
APPEARING DEFENDANT CANDOVER INVESTMENTS PLC TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS

**EXHIBIT K: Third Moberly declaration**

1   REGINALD D. STEER (SBN 56324)
    rsteer@akingump.com
2   MARIA ELLINIKOS (SBN 235528)
    mellinikos@akingump.com
3   ANDREW CHO (SBN 240957)
    acho@akingump.com
4   **AKIN GUMP STRAUSS HAUER & FELD LLP**
    580 California Street, 15th Floor
5   San Francisco, California 94104-1036
    Telephone:      415-765-9500
6   Facsimile:      415-765-9501

7   Attorneys for Specially Appearing Defendant
    Candover Investments PLC
8

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                          OAKLAND DIVISION

13

14
    HANA HILSENRATH AND OLIVER          Case No. 07-3312 (CW)
15  HILSENRATH,
                                        **DECLARATION OF ANDREW**
16              Plaintiffs,             **MOBERLY IN SUPPORT OF REPLY OF**
                                        **SPECIALLY APPEARING DEFENDANT**
17        v.                            **CANDOVER INVESTMENTS PLC**

18  EQUITY TRUST (JERSEY) LIMITED,      Date:   November 1, 2007
    CANDOVER INVESTMENTS PLC,           Time:   2:00 p.m.
19  INSINGER DE BEAUFORT SA, JARDINE    Ctrm:   2, 4th floor
    MATHESON HOLDINGS LIMITED,
20  GRANT BROWN, MELVYN KALMAN,
    JOHN PERKINS, CAROLINE
21  BOUGEARD AND DOES 1-10,

22              Defendants.

23

24        I, Andrew Moberly, declare as follows:

25        1.      I am employed by Candover Investments PLC as the Company Secretary.  I have

26  personal knowledge of the facts stated in this declaration and could testify to their veracity.

27

28
                                          1
    DECLARATION OF ANDREW MOBERLY IN SUPPORT OF REPLY OF SPECIALLY APPEARING
    DEFENDANT CANDOVER INVESTMENTS PLC

1       2.     Candover Investments PLC maintains a corporate website at

2  www.candoverinvestments.com.  The corporate websites of its subsidiaries are prepared by its

3  subsidiaries and are not controlled by Candover Investments PLC.

4       3.     Candover Investments PLC is in the process of selling its interest in Dakota, Minnesota

5  & Eastern Railroad Corporation ("DMERC").  Until recently, Candover Investments PLC owned an

6  8.5% (fully diluted) passive interest in DMERC, and currently owns a 7.9% (fully diluted) passive

7  interest in DMERC.  Candover Investments PLC does not control DMERC.

8       4.     Candover Investments PLC owns a 4.1% (fully diluted) indirect passive interest in

9  Wood Mackenzie Group Limited, a British corporation.  Candover Investments PLC does not control

10  Wood Mackenzie Group Limited.

11       5.     Candover Investments PLC owns a 4.0% (fully diluted) passive interest in Springer

12  Science + Business Media SA, a German corporation.  Candover Investments PLC does not control

13  Springer Science + Business Media SA.

14       6.     Candover Investments PLC owns a 1.4% (fully diluted) passive interest in Wellstream

15  Holdings plc, a British corporation listed on the London Stock Exchange.  Candover Investments PLC

16  does not control Wellstream Holdings plc.

17       7.     Candover Investments PLC owns a 0.9% (fully diluted) passive interest in Aspen

18  Insurance Holdings Limited, a Bermuda corporation listed on the New York Stock Exchange.

19  Candover Investments PLC does not control Aspen Insurance Holdings Limited.

20       8.     Between July 2004 and August 2007, Candover Investments PLC owned approximately

21  a 2.5% (fully diluted) passive interest in Vetco International Limited, a British corporation.  Candover

22  Investments PLC subsequently sold its interest.  Candover Investments PLC did not control Vetco

23  International Limited.

24       9.     Candover Investments PLC received Plaintiffs' complaint and papers in London,

25  England.

26

27

28

DECLARATION OF ANDREW MOBERLY IN SUPPORT OF REPLY OF SPECIALLY APPEARING
DEFENDANT CANDOVER INVESTMENTS PLC

1    Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the

2  United States that the forgoing is true and correct.  Executed this 27th day of September, 2007 at

3  London, England.

4

5                                        By_____

6                                                    Andrew Moberly

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

DECLARATION OF ANDREW MOBERLY IN SUPPORT OF REPLY OF SPECIALLY APPEARING
DEFENDANT CANDOVER INVESTMENTS PLC

**EXHIBIT L:  Uranium Corp Equity Trust SEC filing**

"  Item 2. Identity and Background
"  Item 3. Source and Amount of Funds or
    Other Consideration
"  Item 4. Purpose of Transaction
4  Item 5. Interest in Securities of the Issuer
5  Item 6. Contracts, Arrangements,
    Understandings or Relationships With
    Respect to Securities of the Issuer
"  Item 7. Material to Be Filed as Exhibits

●  Identity and Background
●  Interest in Securities of the Issuer
●  Material to Be Filed as Exhibits
●  Purpose of Transaction
●  Security and Issuer
●  Source and Amount of Funds or Other Consideration
●  Subscription Agreements

| SC 13D | 1st Page of 5 | TOC | Top | Previous | Next | Bottom | Just 1st |

**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**

**SCHEDULE 13D**
**UNDER THE SECURITIES EXCHANGE ACT OF 1934**
(Rule 13d-101)

**INFORMATION TO BE INCLUDED IN STATEMENTS FILED PURSUANT**
TO RULE 13d-1(a) AND AMENDMENTS THERETO FILED PURSUANT TO
RULE 13d-2(a)

**URANIUM ENERGY CORP.**
(Name of Issuer)

Common Stock -- par value $0.001
(Title of Class of Securities)

0001334933
(CUSIP Number)

Diane D. Dalmy, Esq.
8965 W. Cornell Place
Lakewood, Colorado 80227
303.985.9324
(Name, Address and Telephone Number of Person
Authorized to Receive Notices and Communications)

December 5, 2005
(Date of Event Which Requires Filing of This Statement)

If the filing person has previously filed a statement on Schedule 13G to
report the acquisition which is the subject of this Schedule 13D, and is filing
this schedule because of Rule 13d-1(e), 13d-1(f) or 13d-1(g), check the
following box [ ].

Note. Schedules filed in paper format shall include a signed original and

five copies of the schedule, including all exhibits. See Rule 13d- 7(b) for other parties to whom copies are to be sent.

(Continued on following pages)

(Page 1 of 5 Pages)

_____

1 The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall be deemed to be *"filed"* for the purpose of Section 18 of the Securities Exchange Act of 1934 or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

| *SC 13D* | *2nd Page of 5* | TOC | 1st | Previous | Next | Bottom | Just 2nd |

### SCHEDULE 13D

_____                              _____

CUSIP No.    0001334933                              Page 2   of 5     Pages

_____                              _____

---

| 1 | NAME OF REPORTING PERSON: |
|---|---|
|   | S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON |

Isaiah Capital Trust

---

| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP | (a) [ ] |
|---|---|---|
|   |   | (b) [ ] |

---

| 3 | SEC USE ONLY |
|---|---|

---

| 4 | SOURCE OF FUNDS |
|---|---|

Subscription Agreements

---

| 5 | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT |

TO ITEMS 2(d) or 2(e)                                              [ ]

---

| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION |
|---|---|
|   | Jersey, Channel Islands |

---

|                          | 7 | **SOLE VOTING POWER** |
|--------------------------|---|---|
|                          |   | 1,823,333 Shares of Common Stock Equity Trust (Jersey) Limited as Trustee of the Isaiah Capital Trust |
| **NUMBER OF** **SHARES** **BENEFICIALLY** **OWNED BY** | 8 | **SHARED VOTING POWER** Not Applicable |
| **EACH** **REPORTING PERSON** **WITH** | 9 | **SOLE DISPOSITIVE POWER** 1,823,333 Shares of Common Stock Equity Trust (Jersey) Limited as Trustee of the Isaiah Capital Trust |
|                          | 10 | **SHARED DISPOSITIVE POWER** Not Applicable |

---

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON |
|---|---|
|    | 1,823,333 Shares of Common Stock |

---

| 12 | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES                                              [ ] |
|---|---|

---

| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11) |
|---|---|
|    | 15.02% |

---

| 14 | TYPE OF REPORTING PERSON |
|---|---|
|    | TRUST |

---

This original Schedule 13D statement (the *"Schedule"*) is filed on behalf of Isaiah Capital Trust, a trust organized under the laws of the Jersey, Channel Islands (*"Isaiah Capital"*), as the reporting persons hereunder, relative to the acquisition by Isaiah Capital Trust of certain shares of common stock issued by Uranium Energy Corp. Isaiah Capital Trust has not made any previous filings on Schedule 13D relating to this acquisition or issuer.

## ITEM 1. SECURITY AND ISSUER.

This Schedule relates to the voting common stock, $0.001 par value, of Uranium Energy Corp., a Nevada corporation ("*Uranium Energy*"). Uranium Energy maintains its principal executive offices at Austin Centre, 701 Brazos, Suite 500 PMB#, Austin, Texas 78701.

## ITEM 2. IDENTITY AND BACKGROUND

This Schedule is being filed by Isaiah Capital Trust, a trust organized under the laws of Jersey, Channel Islands. The business address of Isaiah Capital Trust and Corin is 28-30 The Parade, St. Heller, Jersey, Channel Islands **JE4 8XY.**

Pursuant to General Instruction C of Schedule 13D, Isaiah Capital Trust (the "*Instruction C Persons*") and the information specified in items (a) through (f) of Item 2 with respect to such Instruction C Persons, are as follows:

| Name | Position with Uranium Energy | Business Address |
|---|---|---|
| Isaiah Capital Trust | Shareholder | 28-30 The Parade St. Heller Jersey, Channel Islands **JE4 8XY** |

Isaiah Capital Trust, has the sole right to control the disposition of and vote the Uranium Energy securities acquired.

During the last five (5) years, no Instruction C Person has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors) nor has been a party to a civil proceeding of a judicial or administrative body of competent jurisdiction or become subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

## ITEM 3. SOURCE AND AMOUNT OF FUNDS OR OTHER CONSIDERATION

At the execution of three subscription agreements dated February 6, 2004, July 27, 2004 and February 6, 2004, respectively, between Uranium Energy and Isaiah Capital Trust (collectively, the "*Subscription Agreements*"), an aggregate

of 1,823,333 shares of restricted common stock of Uranium Energy were issued to Isaiah Capital Trust. The consideration for the securities of Uranium Energy was the payment of cash.

## ITEM 4. PURPOSE OF TRANSACTION

The transaction described herein was undertaken for the purpose of engaging in a private placement of the shares of common stock of Uranium Energy.

| SC 13D | 4th Page of 5 | TOC | 1st | Previous | Next | Bottom | Just 4th |

Uranium Energy subsequently filed a registration statement on Form SB-2, which was declared effective by the Securities and Exchange Commission on December 5, 2005.

Pursuant to the instructions for items (a) through (j) of Item 4, Isaiah Capital Trust and Corin have plans as follows:

(a)   As set forth in Item 3 of this Schedule, Isaiah Trust has acquired an aggregate of 1,823,333 shares of restricted common stock of Uranium Energy. Isaiah Capital Trust may consider the acquisition of additional securities of Uranium Energy in the future but do not have any current plans to do so.

(b)   Isaiah Capital Trust does not have any present plans or proposals to cause a merger or effect a liquidation or reorganization of Uranium Energy or to enter into extraordinary corporate transactions.

(c)   Isaiah Capital Trust does not have any present plans or proposals to cause a sale or transfer of a material amount of assets of Uranium Energy.

(d)   Isaiah Capital Trust does not have any present plans or proposals to cause a change in the present board of directors or in the management of Uranium Energy, including any plans or proposals to change the number or terms of directors or to fill any existing vacancies on the board.

(e)   Isaiah Capital Trust does not have any present plans or proposals to cause a material change in the capitalization of Uranium Energy.

(f)   Isaiah Capital Trust does not have any present plans or proposals to make any other material change to the business or corporate structure of Uranium Energy.

(g)   Isaiah Capital Trust does not have any present plans or proposals to change Uranium Energy's charter, bylaws or instruments corresponding thereto or to take other actions that impede the acquisition of control of Uranium Energy by any person.

(h)  Isaiah  Capital  Trust does not  have  any  present  plans or proposals
to cause  Uranium  Energy's  common stock from not being quoted on the
OTC Bulletin Board.

(i)  Isaiah  Capital  Trust does not  have any  present  plans or proposals
relating to a class of  securities of Uranium Energy becoming  eligible
for  termination of registration  pursuant to Section  12(g)(4) of the
Securities Exchange Act of 1934.

(j)  Isaiah  Capital  Trust does not  have any  present  plans or proposals
to take any action  similar to any of those  enumerated in (a) through
(i) above.

### ITEM 5. INTEREST IN SECURITIES OF THE ISSUER

(a)  As of the close of business on December 5, 2005,  Isaiah Capital Trust
beneficially  owned 1,823,333 shares (or  approximately  15.02% of the
outstanding shares) of Uranium Energy's common stock.

(b)  Isaiah  Capital  Trust does not  own any  other  common or preferred
shares  of Uranium Energy as of the date of this  Schedule,  Isaiah
Capital  Trust,  has the sole power to vote or to direct the voting of
the 1,823,333 common shares of Uranium Energy.

| SC 13D | Last Page of 5 | TOC | 1st | Previous | Next | Bottom | Just 5th |

(c)  As of December 5, 2005, and within the sixty day period prior thereto,
to the best knowledge and belief of the  undersigned,  no transactions
involving  Uranium  Energy equity  securities  had been engaged in by
Isaiah Capital Trust.

(d)  To the best knowledge and belief of the  undersigned,  no person other
than Isaiah  Capital  Trust,  has the right to receive or the power to
direct the receipt of dividends  from,  or the proceeds  from the sale
of, such securities.

### ITEM 6. CONTRACTS, ARRANGEMENTS, UNDERSTANDINGS OR RELATIONSHIPS WITH RESPECT TO SECURITIES OF THE ISSUER

No contracts,  arrangements,  understandings  or  relationships  between Lindsay
exist with respect to securities of the issuer.

### ITEM 7. MATERIAL TO BE FILED AS EXHIBITS

None.

### SIGNATURES

After  reasonable  inquiry and to the best of my  knowledge  and belief,  I

certify that the information set forth in this statement is true, complete and correct.

**ISAIAH CAPITAL TRUST**

Date: December 6, 2005

FOR AND ON BEHALF OF
**EQUITY TRUST (JERSEY) LIMITED
AS TRUSTEE OF THE
ISAIAH CAPITAL TRUST**

**/s/** *LORRAINE WHEELER*

_____
Lorraine Wheeler
Director

**/s/** *FRANCES LEONARD*

_____
Frances Leonard
Director

The trustees of **Equity Trust** (**Jersey Limited**), a trust formed pursuant to the laws of Jersey, Channel Islands, have sole voting and dispositive power over the shares of the issuer registered in the name of Isaiah Capital Trust, and the beneficiaries of which are neither affiliates, underwriters nor associates of an affiliate or an underwriter of the issuer.

---

### Dates Referenced Herein *and* Documents Incorporated By Reference

| *This SC 13D Filing* | *Date* ▼ | Referenced-On Page *First* | *Last* | *Other Filings* |
|---|---|---|---|---|
| | 2/6/04 | 3 | | |
| | 7/27/04 | 3 | | |
| | 12/5/05 | 1 | 5 | 3 |
| | 12/6/05 | 5 | | |
| Filed On / Filed As Of | 12/29/05 | | | |

Top                                     List All Filings

---

*Alternative Formats:*  Rich Text / Word (.rtf), Text (.txt), EDGAR (.sgml), XML (.xml), et al.

Copyright © 2007 **Fran Finnegan & Company**  All Rights Reserved.
www.secinfo.com - Thu, 12 Jul 2007 11:52:29.1 GMT - Help at **SEC** Info

**EXHIBIT M:**       **Applebaum declaration with Janvrin Settlement**

1   Glenn E. Westreich (State Bar Number: 100457)
    Beth L. Mitchell (State Bar Number: 187460)
2   NIXON PEABODY LLP
    Two Embarcadero Center, Suite 2700
3   San Francisco, CA 94111-3996
    Telephone: (415) 984-8200
4   Facsimile: (415) 984-8300

5   Attorneys for Plaintiffs
    JANVRIN HOLDINGS LIMITED,
6   CROSSGAR LIMITED and RYBURN
    LIMITED
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  JANVRIN HOLDINGS LIMITED, CROSSGAR       Case No. C02 1068 CW
    LIMITED, and RYBURN LIMITED,
12                                           APPLICATION FOR DEFAULT JUDGMENT
                                             BY CLERK
13                          Plaintiffs,

14          vs.

15  DR. OLIVER HILSENRATH, DAVID
    KLARMAN, DALE STONE, BARRY WEST,
16  DENNIS FRANCIS, DAVID ROBKIN, LOUIS
    GOLM, JAMES S. EISENSTEIN, PATRICIA
17  MURPHY, DONALD ZERIO, ED ROSNER,
    PEPPER HAMILTON LLP, AMERICAN
18  TOWER CORPORATION, a Delaware
    Corporation, LIBERTY VENTURE PARTNERS,
19  INC., COZEN & O'CONNER, WT HOLDINGS,
    HASKELL & WHITE LLP and BDO SEIDMAN
20  LLP, and DOES 1 to 10,

21                          Defendants.

22

23

24

25

26

27

28

APPLICATION FOR DEFAULT JUDGMENT BY CLERK

S456603.1

TO THE CLERK OF THE ABOVE- CAPTIONED COURT:

Plaintiffs Plaintiffs JANVRIN HOLDINGS LIMITED, CROSSGAR LIMITED AND RYBURN LIMITED (collectively referred to herein as "Plaintiffs") hereby request a default judgment against Defendant OLIVER HILSENRATH ("Defendant") under Rule 55(b)(1) of the Federal Rules of Civil Procedure.

1.    <u>Entry of clerk's default</u>: A request for entry of clerk's default for failure to respond or appear was filed herein on January 8, 2004 and default was entered on January 14, 2004.

2.    <u>Proof required for clerk's judgment</u>: The declaration of Beth Mitchell filed herewith establishes proof of: (1) a sum certain due and owing Plaintiffs by said Defendant (b) pursuant to contract or statutory claim; (c) defendant's nonmilitary status; and (d) costs properly awardable by the clerk.

3.    <u>Judgment to be entered</u>:

Damages of $ 7,163,792.00.


DATED: October 1, 2004                    NIXON PEABODY LLP


                                          By: _____
                                              Glenn E. Westreich
                                              Beth L. Mitchell
                                              Attorneys for Plaintiffs JANVRIN HOLDINGS
                                              LIMITED, CROSSGAR LIMITED and RYBURN
                                              LIMITED

1  Glenn E. Westreich (State Bar Number: 100457)
   Beth L. Mitchell (State Bar Number: 187460)
2  NIXON PEABODY LLP
   Two Embarcadero Center, Suite 2700
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300

5  Attorneys for Plaintiffs
   JANVRIN HOLDINGS LIMITED,
6  CROSSGAR LIMITED and RYBURN LIMITED

7
                    UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9

10
   JANVRIN HOLDINGS LIMITED, CROSSGAR       Case No.:  C02 1068 CW
11 LIMITED, and RYBURN LIMITED,

12                          Plaintiffs,      DECLARATION OF BETH MITCHELL IN
                                             SUPPORT OF CLERK-ENTRY DEFAULT
13      vs.                                  JUDGMENT

14 DR. OLIVER HILSENRATH, DAVID
   KLARMAN,  DALE STONE, BARRY WEST,
15 DENNIS FRANCIS, DAVID ROBKIN, LOUIS
   GOLM, JAMES S. EISENSTEIN, PATRICIA
16 MURPHY, DONALD ZERIO, ED ROSNER,
   PEPPER HAMILTON LLP, AMERICAN
17 TOWER CORPORATION, a Delaware
   Corporation, LIBERTY VENTURE PARTNERS,
18 INC., COZEN & O'CONNER, WT HOLDINGS,
   and HASKELL & WHITE LLP
19
                           Defendants.
20

21

22      I, Beth Mitchell declare as follows:

23      1.      I am an attorney duly licensed to practice before all courts in the State of California

24 and I am an associate with Nixon Peabody LLP, attorneys for Plaintiffs JANVRIN HOLDINGS

25 LIMITED ("Janvrin"), CROSSGAR LIMITED ("Crossgar") AND RYBURN LIMITED ("Ryburn")

26 (collectively referred to herein as "Plaintiffs").  I have personal knowledge of the facts set forth

27 herein and could competently testify thereto.

28

1    2.    Defendant OLIVER HILSENRATH ("Defendant") has not appeared in this action and

2    has not responded to the complaint within the time permitted by law.

3    3.    Defendant is not an infant, incompetent person, or a person in military service or

4    otherwise exempted from default judgment under the Solders' and Sailors' Civil Relief Act of 1940.

5    4.    A clerk's default was entered herein against Defendant on January 14, 2004.  A true

6    and correct copy of the entry of default is attached hereto as Exhibit A.

7    5.    This action involves a claim of breach of contract for damages by Plaintiffs against

8    Defendant under a settlement agreement that was entered into by the various settling parties on

9    March 13, 2001 and April 4, 2001.  The Settlement Agreement did not close until April 18, 2001 (the

10   "Agreement").[1]  A true and correct copy of the Agreement is attached hereto as Exhibit B.  This

11   action is not continuing against any other defendant originally named in the Complaint.

12   6.    There is now due and owing under said contract the sum of $ 7,163,792.00, which is

13   an amount certain by computation under the Agreement.  The Agreement sets forth a schedule

14   pursuant to which Defendant was obligated to pay Plaintiffs the following consideration: a total

15   payment of $1.5 million dollars and 2,132,800 shares of common stock in U.S. Wireless.

16   7.    The cash portion of the settlement was broken down into 4 installments: the first for

17   $500,000 due at the closing of the Agreement, and the remaining $1,000,000 paid out in three

18   subsequent installments of $333,333.34.  Plaintiffs received the first payment of $500,000 but

19   received no subsequent payment.  Therefore, Defendant owes Plaintiffs $1,000,000.00 under the

20   Agreement.

21   8.    The Agreement called for the transfer of 2,132,800 shares of stock to Plaintiffs[2] and

22   further required that these shares be registered within 30 days of the Agreement's closing, to allow

23

24   _____

     [1]  The Agreement reflects a closing date of March 27, 2004, which was subsequently postponed until
25   April 18, 2001 for various reasons unrelated to the substantive terms of the Agreement.

26   [2]  Section 4.c of the Agreement refers to Plaintiffs having or receiving 2,500,000 shares of stock as of
     the closing date.  Prior to the Agreement, Janvrin already held 367,000 shares.  Therefore the actual
27   number of saleable shares of stock that Plaintiffs were to receive pursuant to the Agreement was
     2,132,800.

28
     DECLARATION OF BETH MITCHELL IN SUPPORT OF                -2-                                    S456606.1
     CLERK-ENTRY DEFAULT JUDGMENT

Plaintiffs to be able to sell the stock. The stock was never registered and therefore, Plaintiffs were deprived of the ability to sell the stock. The stock price for U.S. Wireless on May 18, 2001 (30 days after the Agreement's closing) was $2.89. A true and correct copy of the Nasdaq "Daily Stock Price Record," which reflects this price, is attached hereto as Exhibit C. Therefore the stock component of Plaintiff's damages is $6,163,792 (2,132,800 x $2.89 per share).

      7.     The sum owing to Plaintiffs has not been paid.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 1, 2004.

                                            Beth Mitchell

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**Northern District of California**
1301 Clay Street
Oakland, California 94612

_____

www.cand.uscourts.gov

Richard W. Wieking
Clerk

General Court Number
510.637.3530

January 14, 2004

RE:  <u>CV 02-01068 CW</u>        <u>JANVRIN HOLDINGS -v- OLIVER HILSENRATH</u>

Default is entered as to Oliver Hilsenrath on 1/14/04.

RICHARD W. WIEKING, Clerk

by Clara Pierce
Case Systems Administrator

# EXHIBIT A

cc: Counsel

NDC TR-4  Rev. 3/89

Glenn Edward Westreich
Nixon Peabody LLP
Two Embarcadero Center
Suite 2700
San Francisco, CA 94111-3996


CV02-01068 CW

# EXHIBIT B

# CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

1. **Parties.** This Settlement Agreement and Mutual Release of all Claims (hereinafter "Agreement") is entered into by and between JANVRIN HOLDINGS LTD. ("JANVRIN"), RYBURN LTD. ("RYBURN"), CROSSGAR LTD. ("CROSSGAR"), DAVID DAHAN (DAHAN"), HAIM HARUVI ("HARUVI"), PELICAN SECURITIES & INVESTMENTS, LTD. ("PELICAN SECURITIES"), AND PELICAN CONSULTING U.S.A., INC. ("PELICAN CONSULTING") on the one hand, and U.S. WIRELESS CORPORATION ("U.S. WIRELESS"), OLIVER HILSENRATH ("HILSENRATH") and DAVID KLARMAN ("KLARMAN") on the other (collectively, "the Parties").

2. **Recitals.** This settlement is made with reference to the following facts:

    This settlement is made with reference to the following facts:

    a.  JANVRIN, CROSSGAR and RYBURN ("Plaintiffs") each brought separate complaints (the "Complaints") against U.S. WIRELESS, HILSENRATH and KLARMAN ("Defendants") in the Northern District of California federal district court arising out of the alleged breaches of Consulting Agreements, Option Agreements, duty to transfer stock, and fiduciary duty (Case Nos. C00 2334, C00 2336 and 2346), respectively (hereinafter "Federal Actions").

    b.  U.S. WIRELESS brought counterclaims against JANVRIN, RYBURN, CROSSGAR, PELICAN SECURITIES, PELICAN CONSULTING U.S.A., DAHAN and HARUVI ("Counterclaims") for rescission, fraud, unjust enrichment and declaratory relief.

    c.  Each Party hereto specifically denies that it or he breached any agreement with any other Party herein, and further denies that it or he engaged in any actionable conduct in regard to any other Party herein. The Parties agree that the settlement agreement is a compromise and will not be construed as an admission of liability at any time for any purpose against any person or entity who is a Party to this Agreement.

    d.  The Parties, in order to avoid the uncertainty, delay and expense of time-consuming litigation, desire to settle fully and finally all differences between them on the terms and conditions set forth herein, which the Parties acknowledge and represent to be fair, reasonable, adequate, and in their mutual best interests.

    e.  The Parties understand they are waiving significant legal rights and/or claims by signing this Agreement and voluntarily enter into this Agreement with a full and complete understanding of its terms and legal effect, with the intent to be bound thereby. The Parties are represented by competent legal counsel and acknowledge that they have been fully apprised of the legal consequences of this Agreement prior to execution of this Agreement.

EXHIBIT B

H. H.                                                             301937.2

3.    **Definitions**

    a.    "Exchange Offer" refers to the Exchange Offer Agreement and Memorandum dated January 12, 1998, whereby JANVRIN and all other shareholders in Labyrinth Communication Technologies Group, Inc. ("Labyrinth") exchanged shares of the common stock of Labyrinth for shares of the common stock of U.S. WIRELESS, and pursuant to which JANVRIN acquired 918,000 shares of U.S. WIRELESS common stock, subject to a vesting schedule.

    b.    "Consulting Agreements" refer to the two agreements between U.S. WIRELESS and RYBURN and CROSSGAR dated January 1, 1997, pursuant to which RYBURN and CROSSGAR agreed to provide certain consulting services in exchange for options to purchase shares of common stock of U.S. WIRELESS.

    c.    "Option Agreements" refer to the two agreements between U.S. WIRELESS and RYBURN and CROSSGAR dated July 31, 1996, granting RYBURN and CROSSGAR options to purchase shares of common stock of U.S. WIRELESS.

4.    **Terms and Conditions of Settlement**

In consideration of the promises and consideration herein contained, the parties agree as follows:

    a.    U.S. WIRELESS shall use its best efforts to obtain the approval of its Board of Directors for this Agreement no later than March 23, 2001. DAHAN and HARUVI shall use their best efforts to obtain the approval and signatures of JANVRIN, CROSSGAR and RYBURN on this Agreement no later than March 23, 2001. It is expressly understood and agreed that this Agreement is conditional upon the foregoing approvals and signatures

    b.    The Parties agree that the Closing Date shall be March 27, 2001, (the "Closing Date"), or such other time or date as all Parties shall agree in writing. The closing shall take place at the office of Lillick & Charles, LLP at 2:00 p.m. in San Francisco, California.

    c.    As of the Closing Date, Plaintiffs shall have or receive an aggregate of 2,500,000 shares of U.S. WIRELESS common stock, as detailed below in subparts (d) (e) and (g).

    d.    (i) As of the Closing Date, and at all times thereafter, the 367,200 shares of U.S. WIRELESS common stock held by and registered in the name of JANVRIN and represented by stock certificate No. US00307 (the "Rule 144 Shares") shall be freely tradable by JANVRIN, provided that until May 1, 2001 the public resale of the Rule 144 Shares by JANVRIN shall be subject to all of the provisions of Rule 144 except for Rule 144(d). U.S. WIRELESS acknowledges and confirms that, as of the date hereof, Rule 144(d) has been satisfied by JANVRIN with respect to the Rule 144

301937.2

Shares. The Company shall take all steps reasonably requested by JANVRIN to facilitate the sale of the Rule 144 Shares by JANVRIN including, but not limited to, providing to the transfer agent of the U.S. WIRELESS common stock (the "Transfer Agent"), upon the request of JANVRIN, an opinion of counsel for U.S. WIRELESS in the form attached hereto as Exhibit A and incorporated herein by reference, provided that JANVRIN has fully complied with the requirements of Rule 144, and has provided the necessary documentation.

    (ii)    In the event that all of the Rule 144 Shares have not been sold by JANVRIN pursuant to Rule 144 on or before May 1, 2001, U.S. WIRELESS shall, upon delivery on or after May 1, 2001 by JANVRIN to U.S. WIRELESS of all stock certificates for any Rule 144 Shares not theretofore sold by JANVRIN, issue or cause to be issued to JANVRIN a new stock certificate representing all remaining Rule 144 Shares held by and registered in the name of JANVRIN as of May 1, 2001 (the "Balance Shares"), which stock certificate shall bear no legend restricting the transfer of the Balance Shares. Immediately upon issuance of the Balance Shares, U.S. WIRELESS shall notify the Transfer Agent that no restrictions on transfer apply to the Balance Shares and shall withdraw any stop transfer instructions then in effect with respect to the Balance Shares.

    (iii)    U.S. WIRELESS shall cause the Rule 144 Shares to be included in the Registration Statement on Form S-3 to be filed by U.S. WIRELESS with the Securities and Exchange Commission (the "SEC") pursuant to Section 4.k. of this Agreement. To the extent that any Rule 144 Shares are included in such registration statement, all references to Registrable Securities in subparagraphs (k) or (l) hereof shall be deemed to include and refer also to such Rule 144 Shares and all references to Holder or Holders in subparagraphs (k) or (l). hereof shall be deemed to include and refer also to JANVRIN.

e. On the Closing Date, U.S. WIRELESS shall issue 665,600 shares of U.S. WIRELESS common stock to CROSSGAR and 367,200 shares of U.S. WIRELESS common stock to JANVRIN.

f. On the Closing Date, RYBURN shall exercise its option to purchase 900,000 shares of U.S. WIRELESS common stock, and CROSSGAR shall exercise its option to purchase 200,000 shares of U.S. WIRELESS common stock pursuant to the Option Agreements. U.S. WIRELESS shall waive receipt of the exercise price of the options.

g. On the Closing Date, U.S. WIRELESS shall issue 900,000 shares of U.S. WIRELESS common stock to RYBURN and 200,000 shares of U.S. WIRELESS common stock to CROSSGAR in satisfaction of RYBURN's and CROSSGAR's exercise of the Options.

-3-

301937.2

h.  On the Closing Date, U.S. WIRELESS shall cancel the share certificates subject to the vesting pursuant to Paragraph 2(iii) of the Restricted Stock Agreement dated January 12, 1998 (Third Milestone Shares).

i.  U.S. WIRELESS shall pay the total sum of One Million Dollars in equal parts to RYBURN, CROSSGAR and JANVRIN, on the following schedule: $333,333.34 on or before April 1, 2001; $333,333.33 on or before July 1, 2001; and $333,333.33 on or before October 1, 2001.

j.  In addition to the amounts described in subpart (i), on the Closing Date U.S. WIRELESS shall pay the Plaintiffs the total amount of $500,000, with such payment to be made in equal parts to RYBURN, CROSSGAR and JANVRIN. Payment of the amounts described in subpart (i) and (j) shall be by wire transfer, pursuant to instructions to be provided by Plaintiffs to U.S. WIRELESS.

k.  (i)  Within 30 days after the Closing Date U.S. WIRELESS shall prepare and file with the SEC a registration statement on Form S-3 (the "Registration Statement") with respect to the shares described in subparagraphs (d)(iii), (e) and (g) above (the "Registrable Securities"), shall cause the Registration Statement to become effective, and shall use its best efforts to keep the Registration Statement effective until the sale and distribution of the Registrable Securities has been completed.  U.S. WIRELESS represents, warrants and covenants to JANVRIN, RYBURN, CROSSGAR, DAHAN, HARUVI, PELICAN SECURITIES AND PELICAN CONSULTING that U.S. WIRELESS is eligible to register the Registrable Securities on Form S-3 as of the date of this Agreement and shall remain eligible to so register the Registrable Securities at all times relevant to this Agreement;

(ii)  U.S. WIRELESS shall prepare and file with the SEC such amendments and supplements to the Registration Statement and the prospectus used in connection with the Registration Statement as may be necessary to comply with the provisions of the Securities Act of 1933, as amended, (the "Act") with respect to the disposition of all of the Registrable Securities;

(iii)  U.S. WIRELESS shall furnish to the holders of the Registrable Securities (the "Holders") such numbers of copies of a prospectus, including a preliminary prospectus, in conformity with the requirements of the Act, and such other documents as they may reasonably request in order to facilitate the disposition of Registrable Securities owned by them.

(iv)  U.S. WIRELESS shall register and qualify the securities covered by the Registration Statement under such other securities or Blue Sky laws of such jurisdictions as shall be requested by the Holders;

(v)  U.S. WIRELESS shall notify each Holder of Registrable Securities covered by the Registration Statement at any time when a prospectus relating thereto is required to be delivered under the Act of the happening of any event as a result of which the prospectus included in such registration statement, as then

-4-

H. H.

301937.2

in effect, includes an untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading in the light of the circumstances then existing.

(vi)    U.S. WIRELESS shall amend or supplement such prospectus in order to cause such prospectus not to include any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading in light of the circumstances then existing.

(vii)    U.S. WIRELESS shall cause all Registrable Securities registered pursuant hereunder to be listed on each securities exchange on which similar securities issued by U.S. WIRELESS are then listed or, if applicable, to be approved for listing on the Nasdaq National Market System.

(viii)    All expenses incurred in connection with registrations, filings or qualifications pursuant to this Section 4(k) including (without limitation) all registration, filing and qualification fees, printers' and accounting fees, fees and disbursements of counsel for U.S. WIRELESS shall be borne by U.S. WIRELESS.

(ix)    In the event any Registrable Securities are included in a registration statement under this Section 4(k):

(A)    To the extent permitted by law, U.S. WIRELESS shall indemnify and hold harmless each Holder, the constituent partners and members, or officers and directors of each Holder, any underwriter (as defined in the Act) for such Holder, and each person, if any, who controls such Holder or underwriter within the meaning of the Act or the Securities Exchange Act of 1934, as amended (the "1934 Act"), against any losses, claims, damages, or liabilities (joint or several) to which they may become subject under the Act, the 1934 Act or other federal or state law, insofar as such losses, claims, damages, or liabilities (or actions in respect thereof) arise out of or are based upon any of the following statements, omissions or violations (collectively a "Violation"): (1) any untrue statement or alleged untrue statement of a material fact contained in such registration statement, including any preliminary prospectus or final prospectus contained therein or any amendments or supplements thereto, any offering circular or other similar document, (2) the omission or alleged omission to state therein a material fact required to be stated therein, or necessary to make the statements therein not misleading, or (3) any violation or alleged violation by U.S. WIRELESS of the Act, the 1934 Act, any state securities law or any rule or regulation promulgated under the Act, the 1934 Act or any state securities law; and the Company will pay to each such Holder, underwriter or controlling person any legal or other expenses reasonably incurred by them in connection with investigating or defending any such loss, claim, damage, liability, or action, as such expenses are incurred; provided, however, that the indemnity agreement contained in this

301937.2

subsection shall not apply to amounts paid in settlement of any such loss, claim, damage, liability, or action if such settlement is effected without the consent of U.S. WIRELESS (which consent shall not be unreasonably withheld), nor shall U.S. WIRELESS be liable in any such case for any such loss, claim, damage, liability, or action to the extent that it arises out of or is based upon a Violation which occurs in reliance upon and in conformity with written information furnished expressly for use in connection with such registration by any such Holder, underwriter or controlling person.

(B).    To the extent permitted by law, each Holder shall indemnify and hold harmless U.S. WIRELESS, its officers and directors, any underwriter (as defined in the Act) for U.S. WIRELESS, and each person, if any, who controls U.S. WIRELESS or any such underwriter within the meaning of the Act or the 1934 Act, against any losses, claims, damages, or liabilities (joint or several) to which they may become subject under the Act, the 1934 Act or other federal or state law, insofar as such losses, claims, damages, or liabilities (or actions in respect thereof) arise out of or result from any untrue statement or alleged untrue statement of a material fact contained in any Registration Statement, any Prospectus, or any amendment or supplement thereto, and any omission of a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, to the extent the same arises out of or is based upon any untrue statement of a material fact or any omission to state a material fact in such Registration Statement, Prospectus, amendment or supplement, as the case may be, made or omitted, as the case may be in reliance upon and in conformity with written information furnished to U.S. WIRELESS by such Holder for use therein; and Holder will pay to U.S. WIRELESS or any such underwriter or controlling person any legal or other expenses reasonably incurred by them in connection with investigating or defending any such loss, claim, damage, liability, or action, as such expenses are incurred; provided, however, that the indemnity agreement contained in this subsection shall not apply to amounts paid in settlement of any such loss, claim, damage, liability, or action if such settlement is effected without the consent of the Holder (which consent shall not be unreasonably withheld), nor shall the Holder be liable in any such case for any such loss, claim, damage, liability, or action to the extent that it arises out of or is based upon a Violation which occurs in reliance upon and in conformity with written information furnished expressly for use in connection with such registration by U.S. WIRELESS or such underwriter or controlling person.

l.    With a view to making available to the Holders the benefits of Rule 144 promulgated under the Act and any other rule or regulation of the SEC that may at any time permit the Holders to sell securities of U.S. WIRELESS to the public without registration or pursuant to a registration on Form S-3, U.S. WIRELESS agrees to:

     -6-          301937.2

(i)     make and keep public information available, as those terms are understood and defined in SEC Rule 144, at all times until after the sale and distribution of the Registrable Securities has been completed or the Rule 144 Shares have been resold, as the case may be;

(ii)    take all such action as is reasonably necessary to enable the Holders to utilize Form S-3 for the sale of their Registrable Securities;

(iii)   file with the SEC in a timely manner all reports and other documents required of U.S. WIRELESS under the Act and the 1934 Act; and

(iv)    furnish to JANVRIN and/or any Holder, so long as JANVRIN owns any Rule 144 Shares or so long as the Holder owns any Registrable Securities, as the case may be, forthwith upon request (A) a written statement by U.S. WIRELESS that it has complied with the reporting requirements of SEC Rule 144, the Act and the 1934 Act or that it qualifies as a registrant whose securities may be resold pursuant to Form S-3, (B) a copy of the most recent annual or quarterly report of U.S. WIRELESS filed with the SEC and any other reports and documents so filed by U.S. WIRELESS; and (C) such other information as may be requested in availing JANVRIN or any Holder of any rule or regulation of the SEC which permits the selling of any such securities without registration or pursuant to such form.

a.  .Within one business day after the Closing Date, U.S. WIRELESS shall file a dismissal with prejudice of the Counterclaims.

b.  The Parties hereby agree to cooperate and to take all steps necessary to effect this full and final settlement and mutual release of all claims, including but not limited to executing all necessary documents. The Parties shall jointly seek an order of the court in the Federal Actions retaining jurisdiction to enforce the terms of this Agreement. In the event that the Court declines to do so, Plaintiffs shall thereafter file a dismissal without prejudice of the Federal Action, upon entry of a mutually acceptable agreement tolling the statute of limitations. The Parties hereto agree to submit to the personal jurisdiction of said court or courts. Upon performance by U.S. WIRELESS of all of the obligations set forth in this section 4, Plaintiffs shall file a dismissal with prejudice of the Complaints.

5.  **Releases.**

a.  In consideration of the covenants contained herein, and for other good and valuable consideration, the receipt and value of which are hereby acknowledged, JANVRIN, RYBURN, CROSSGAR, DAHAN, HARUVI, PELICAN SECURITIES and PELICAN CONSULTING hereby fully release and forever discharge U.S. WIRELESS, HILSENRATH and KLARMAN and also all of their respective heirs, officers, directors, agents, servants, employees, attorneys, insurers, shareholders, affiliates, subsidiaries, related entities, firms predecessors, successors, and assigns of and from any and all actions causes of action, suits,

H.H.                                                                                    301937.2

demands, debts, expenses, accounts, obligations, costs, rights, agreements, promises, liabilities, liens, damages, or causes of action of any kind or nature whatsoever, insofar as they are or should be known or suspected to exist, and whether specifically mentioned or not, which may exist or might be claimed to exist at or prior to the date of this Agreement, including but not limited to, any and all claims, including any common law claims, debts, liabilities, demands, damages, charges, promises, acts, agreements, costs or expenses (including any claim for attorneys' fees), actions and causes of action, and including but not limited to the claims asserted in the pleadings in the Federal Actions and including but not limited to any and all claims arising from or in any way connected with the Exchange Offer, the Consulting Agreements, the Option Agreements, and the entire relationship between and among the Parties hereto, except that this release shall not extend to the covenants and obligations obtained in this Agreement.

b.   In consideration of the covenants contained herein, and for other good and valuable consideration, the receipt and value of which are hereby acknowledged, except for the obligations contained herein U.S. WIRELESS, HILSENRATH and KLARMAN hereby fully release and forever discharge JANVRIN, RYBURN, CROSSGAR, DAHAN, HARUVI, PELICAN SECURITIES and PELICAN and also all of their respective heirs, officers, directors, agents, servants, employees, attorneys, insurers, shareholders, affiliates, subsidiaries, related entities, firms predecessors, successors, and assigns of and from any and all actions causes of action, suits, demands, debts, expenses, accounts, obligations, costs, rights, agreements, promises, liabilities, liens, damages, or causes of action of any kind or nature whatsoever, insofar as they are or should be known or suspected to exist, and whether specifically mentioned or not, which may exist or might be claimed to exist at or prior to the date of this Agreement, including but not limited to, any and all claims, including any common law claims, debts, liabilities, demands, damages, charges, promises, acts, agreements, costs or expenses (including any claim for attorneys' fees), actions and causes of action, and including but not limited to the claims asserted in the Counterclaims and including but not limited to any and all claims arising from or in any way connected with the Exchange Offer, the Consulting Agreements, the Option Agreements, and the entire relationship between and among the Parties hereto, except that this release shall not extend to the covenants and obligations contained in this Agreement.

c.   The release shall be a full and final release applying to all unknown or unanticipated damages rising out of the relationship between the Parties, as well as to those now known or disclosed, and the Parties waive all rights or benefits which they now have or in the future may have under the terms of Section 1542 of the Civil Code of the State of California which reads as follows:

A general release does not extend to claims which the creditor does not know of or suspect exist in his favor at the time of executing the release,

-8-                                             301937.2

which if known by him must have materially affected his settlement with the debtor.

## 6. Confidentiality.

a. The parties acknowledge that they would not have entered into this Agreement but for the confidentiality of the Agreement and all of its terms. Specifically, the parties recognize that they may be damaged from any publicity or any oral or written publication whatsoever to anyone relating to the circumstances of the Federal Actions and this Agreement, including: (a) the contents of any documents produced in the Federal Actions (except to the extent that such information has been publicly disclosed or available, or has been obtained from sources other than such documents); (b) the fact that any money was paid or equity was granted in settlement of any claims; (c) the amount of any money paid or equity granted in the settlement; (d) any terms of this Agreement (hereinafter collectively referred to as "Confidential Information"). Accordingly, the parties hereto warrant and represent that following the execution by them of this Agreement, neither they nor anyone acting in their behalf (including their attorneys and anyone employed by their attorneys) shall initiate or cause to be initiated any dissemination of any document or information, publicity or any oral or written communication whatsoever concerning the Confidential Information, and, with the exceptions stated herein, shall forever hold confidential and not make public to anyone, whether by oral or written communications or otherwise, said Confidential Information, except only to (a) attorneys of the parties with respect to the Federal Actions; (b) insurers of the parties; (c) spouses of the parties or members of the parties' immediate families; (d) to the extent necessary to comply with filing and/or disclosure obligations imposed under state or federal law by any government or regulatory agency of the United States or any state; (e) to the extent as may be necessary to enforce the terms of this Agreement; or (f) to the extent as may be compelled by court order or judicial process. Any party compelled by law under subcategory (f) to make any disclosure otherwise protected under this Agreement shall notify all other parties in advance of such disclosure to allow such parties sufficient time to assert any objections to such disclosure. The parties shall not be precluded from stating to anyone who inquires that "the dispute between them has been settled." The parties acknowledge that they fully understand that the proscriptions of this paragraph specifically apply to all communications by the parties to all persons, including but not limited to: (a) past, present and future employees, consultants, investors, strategic partners, and customers of the Parties and (b) representatives or employees of any media.

b. The parties represent and warrant that, on the Closing Date, they will return all documents produced in the Federal Actions to the party who produced them, along with any and all copies of the documents. Each party hereto shall sign a declaration under penalty of perjury stating that he or it has returned all





301937.2

documents to counsel for the party who produced said documents. The parties shall disclose in the declaration all persons or entities to whom they have disclosed the documents or information from the documents.

7.  **Nondisparagement.** The parties acknowledge and agree that they will take no action of any type and will make no statement of any type which is intended to harm, inconvenience, embarrass, and/or bring into disrepute any other party hereto.

8.  **Successors and Assigns.** All agreements, acknowledgments, declarations, representations, understandings, warranties, authorizations and instructions made, and all understandings expressed by the Parties, and each of them, in this Agreement and all benefits accruing under this Agreement apply to and bind the respective makers of said agreements, acknowledgments, declarations, representations, understandings, and also all of their respective heirs, officers, directors, agents, servants, employees, attorneys, insurers, shareholders, affiliates, subsidiaries, related entities, firms predecessors, successors, and assigns.

9.  **Modifications.** This Agreement may not be modified except by a writing signed by the party to be charged, or its or their duly authorized representative.

10. **Enforcement of Agreement.** This Agreement shall, in all respects, be interpreted, construed and governed by and under the laws of the State of California. The Parties shall jointly seek an order of the court in the Federal Action retaining jurisdiction to enforce the terms of this Agreement.

11. **Entirety of Agreement.** The Parties hereto acknowledge and agree that this instrument and other instruments specifically referred to herein constitute and contain the entire agreement and understanding concerning the subject matter between the Parties and supersede and replace all prior negotiations and proposed agreements, whether written or oral. Each of the Parties warrants that no other party or any agent or attorney of any other party has made any promise, representation or warranty whatsoever not contained herein to induce it to execute this Agreement and the other documents referred to herein. The Parties represent that they have not executed this Agreement in reliance on any promise, representation or warranty not contained herein.

12. **Headings.** The headings in this Agreement are inserted for convenience only and shall not be deemed a part of or in any manner affect this Agreement or any provision hereof.

13. **Effective Date.** This Agreement shall be effective immediately upon execution hereof by the parties.

14. **Counterparts.** This Agreement may be executed in multiple counterparts and delivered by facsimile transmission, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

-10-

301937.2

15.  **Representation of Plaintiffs and Counterclaim Defendants.** Plaintiffs and Counterclaim Defendants warrant that Lillick & Charles LLP represents them with respect to this Agreement and all matters covered by it; that they have been fully advised by said attorneys with respect to their rights and obligations, and with respect to the execution of this Agreement that they have had the opportunity to have the terms of this Agreement explained to them in their native language; and that they hereby authorize and direct said attorneys to take such actions as may be necessary or appropriate to effectuate this Agreement.

16.  **Representation of Defendants and Counterclaimant.** Defendants and Counterclaimant warrant that Steinhart & Falconer, LLP represents them with respect to this Agreement and all matters covered by it; that they have been fully advised by said attorneys with respect to their rights and obligations, and with respect to the execution of this Agreement; that they have had the opportunity to have the terms of this Agreement explained to them in their native language and that they hereby authorize and direct said attorneys to take such actions as may be necessary or appropriate to effectuate this Agreement.

17.  **Authority to Enter Agreement.** The parties hereto warrant that no other person or entity has claimed or now claims any interest in the subject of this Agreement, and that they have the sole right and exclusive authority to execute this Agreement and to receive the aforesaid consideration and that they have not sold, assigned or otherwise set over to any other person or entity, any claim, lien, demand, cause of action, obligation, damage or liability covered hereby. This Agreement is entered into by the undersigned parties freely and voluntarily and with and upon advice of counsel.

18.  **Construction.** Should any provision of this Agreement be held invalid or illegal, such illegality shall not validate the whole of this Agreement but, rather, the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

19.  **Attorney's Fees.** The prevailing party in any litigation to enforce this Agreement shall be entitled to receive his or its reasonable attorney's fees and costs.

JANVRIN HOLDINGS LTD

Dated: 4th April , 2001    By: _____

Its: DIRECTOR _____

RYBURN LTD.

Dated: 4th April . , 2001    By: _____

Its: DIRECTOR . _____

-11-    301937.2

CROSSGAR LTD.

Dated: 4th April, 2001    By: _____

Its: DIRECTOR _____

Dated: _____, 2001    By: _____

DAVID DAHAN

Dated: _____, 2001    By: _____

HAIM HARUVI

PELICAN SECURITIES & INVESTMENTS, LTD.

Dated: _____, 2001    By: C.E.O _____

Its: President _____

PELICAN CONSULTING U.S.A., INC.

Dated: _____, 2001    By: C.E.O _____

Its: President _____

U.S. WIRELESS CORPORATION

Dated: _____, 2001    By: _____

Its: _____

Dated: _____, 2001    By: _____

OLIVER HILSENRATH

Dated: _____, 2001    By: _____

DAVID KLARMAN



301937.2

Read and approved as to form:           LILLICK & CHARLES, LLP

Dated: ___3|13_____, 2001        By: _____
                                         Glenn E. Westreich, Esq.
                                         Counsel for Plaintiffs and
                                         Counterclaim Defendants

Read and approved as to form:

Dated: _____, 2001      By: _____
                                         Patricia A. Murphy, Esq.
                                         Senior Corporate Counsel
                                         U.S. WIRELESS CORPORATION

-13-                                                        301937.2

[EXHIBIT A - OPINION LETTER]


[Name and address of Transfer Agent]

      Re:    <u>[Name of Selling Shareholder] – Rule 144 Sales</u>

Dear _____:

      As counsel for U.S. Wireless Corporation (the "Company"), we have been requested to render our opinion with respect to the transfer of _____ shares of common stock of the Company (the "Shares") by _____ (the "Seller"), in accordance with the requirements of Rule 144 promulgated under the Securities Act of 1933, as amended (the "Act").

      In order to render this opinion we have reviewed the Company's Annual Report on Form 10-KSB for the fiscal year ended March 31, _____ and the Company's quarterly report on Form IO-QSB for the quarter ended _____ as filed with the Securities and Exchange Commission (the "SEC). In addition, we have been furnished with copies of (i) a letter from the Seller to _____ (the "Broker") dated _____; (iii) a Broker's letter dated _____ advising of compliance with Rule 144 as to the method of sale of the Shares, and (iv) a copy of the Form 144 Notice of Proposed Sale of Securities mailed to the SEC on _____.

      Based on the foregoing and that the sales of the Shares were effected as described in the aforesaid documents, we are of the opinion that the Shares may be transferred by you without registration under the Act, and that the share certificates to be issued by you upon such transfer need not bear a restrictive legend. In the event that a balance certificate is issued to the Seller, such balance certificate to be issued by you should not bear a restrictive legend.

      If you have questions concerning the above, please contact the undersigned.

                    Very truly yours,

-14-

301937.2

CROSSGAR LTD.

Dated: _____ , 2001        By: _____

                                      Its: _____

Dated: _____ , 2001        By: _____
                                           DAVID DAHAN

Dated: _____ , 2001        By: _____
                                           HAIM HARUVI

PELICAN SECURITIES & INVESTMENTS, LTD.

Dated: _____ , 2001        By: _____

                                      Its: _____

PELICAN CONSULTING U.S.A., INC.

Dated: _____ , 2001        By: _____

                                      Its: _____

U.S. WIRELESS CORPORATION

Dated: March 13 , 2001               By: _____

                                      Its: _CEO_

Dated: March 13 , 2001               By: _____
                                           OLIVER HILSENRATH

Dated: _____ , 2001        By: _____
                                           DAVID KLARMAN

-12-

15

301937.2

03/13/01 TUE 21:03 FAX 9268901

FROM : ))))))))                          PHONE NO. : 9258380747
                                              USWC Legal Dept.          Mar. 13 2001 07:33PM P12
    03/13/01  TUE 20:17 FAX 9258301854

CROSSGAR LTD.

By: _____

Dated: _____, 2001                Its: _____


Dated: _____, 2001                By: _____
                                                  DAVID DAHAN


Dated: _____, 2001                By: _____
                                                  HAIM HARUVI


PELICAN SECURITIES & INVESTMENTS, LTD.

By: _____

Dated: _____, 2001                Its: _____


PELICAN CONSULTING U.S.A., INC.

By: _____

Dated: _____, 2001                Its: _____


U.S. WIRELESS CORPORATION

By: _____

Dated: _____, 2001                Its: _____


Dated: _____, 2001                By: _____
                                                  OLIVER HILSENRATH


Dated: _____3 / 13_____, 2001              By: _____
                                                  DAVID KLARMAN


301937.2

16

Read and approved as to form:

Dated: _____ 2001

LILLICK & CHARLES, LLP

By: _____
    Glenn E. Westreich, Esq.
    Counsel for Plaintiffs and
    Counterclaim Defendants

Read and approved as to form:

Dated: _March 13_____ 2001

By: _Patricia A. Murphy____
    Patricia A. Murphy, Esq.
    Senior Corporate Counsel
    U.S. WIRELESS CORPORATION

-13-

17

301937.2

**EXHIBIT A.  Letter from AUSA Laurel Beeler re Jersey custodians of records**

## Oliver Hilsenrath

**From:**     "Beeler, Laurel (USACAN)" <Laurel.Beeler@usdoj.gov>
**To:**        "Oliver Hilsenrath" <oliver_hilsenrath@sbcglobal.net>
**Sent:**     Wednesday, October 10, 2007 3:31 PM
**Subject:**  Authentication of documents from Jersey

Dear Mr. Hilsenrath,

You asked me to check my files for the custodial declaration from Kevin Mercury at Equity Trust in Jersey, the Channel Islands, which authenticates documents that Equity Trust produced to the United States government pursuant to subpoenas issued to it pursuant to our MLAT treaty.   As I believe I told you, I do recall that we obtained a declaration from Kevin Mercury.  We also obtained one from John Perkins, and I have found that one.  John Perkins also authenticated the documents on the record in his deposition.

I have arranged to view our files in our storage room tomorrow, and I hope I can locate the paper copy of Kevin Mercury's declaration then.  I will send it to you with John Perkins's declaration.

Best regards,

Laurel  Beeler