1  HANA HILSENRATH
   OLIVER HILSENRATH
2  822 Eastbrook Court
   Danville, CA 94506
3  Telephone: 925 212 6299
   Facsimile: 925 736 7571
4  ohlx@sbcglobal.net

5  <u>PLAINTIFFS *IN PRO PER*</u>

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA HILSENRATH AND OLIVER HILSENRATH,<br><br>Plaintiffs,<br>v.<br>EQUITY TRUST (JERSEY) LIMITED, CANDOVER INVESTMENTS PLC, INSINGER DE BEAUFORT SA, JARDINE MATHESON HOLDINGS LIMITED, PHILIP AUSTIN, GRANT BROWN, MELVYN KALMAN, JOHN PERKINS, CAROLINE BOUGEARD, AND DOES 1-9,<br><br>Defendants. | **Case 4:07-cv-03312-CW**<br><br>OPPOSITION TO PHILIP AUSTIN'S MOTION TO DISMISS RE JURISDICTION ETC.<br><br>**Judge: Hon. Claudia Wilken**<br>**Date: Nov 1, 2007**<br>**Time: 14:00**<br>**Place: Courtroom 2, 4th Floor** |

1

## ORGANIZATION OF THIS DOCUMENT

Plaintiffs include by reference to this opposition all arguments relevant to PHILIP AUSTIN regarding special and general jurisdiction that were presented to this case in *Doc 50, 86 and 87*.

## INTRODUCTION: HARBORING

This complaint is about harboring. Knowingly supporting, staffing, training, paying for, and helping execute a series of unlawful act as part of a steady modus operandi.

If Austin had just lied as part of a solely communicative act, that would have been objectionable - but not a basis to bring him into this action.

Austin non-communicative[1] act of furthering the Janvrin conspiracy is the reason for his addition to the list of defendants. Austin is trying to conceal his firm's control over Janvrin et al by stating (paraphrased) that he "knows nothing about Janvrin et al, he has no connection with it whatsoever.[2]"

The litigation privilege does not cover Austin's perjury when his objective is to artificially distance him and his firm from the Janvrin case, and by doing so to prevent plaintiffs inter alia to collect the judgment in this court's order *Case 02-1068 Doc 304*.

## AUSTIN'S PERJURY

There are a number of meticulously shaped "alterations" of the truth in Austin's declarations to this court:

1. Austin states in a declaration *Doc 14* that Janvrin et al were formed for Messrs. Dahan and Haruvi in 1995/6 – 11-12 years ago.
    a. Plaintiffs present ample testimony from the US government investigation showing

---

[1] **Kimmel v. Goland (1990) 51 Cal.3d 202, 211 [271 Cal. Rptr. 191, 793 P.2d 524** Because the litigation privilege protects only publications and communications, a "threshold issue in determining the applicability" of the privilege is whether the defendant's conduct was communicative or noncommunicative.

[2] Kalman described in his interview with the SEC how special measures were introduced in Jersey banking as to tightening policies to control and monitor the activities in the trust see Doc 86 for excerpts of Kalman's interview.

        that Janvrin et all, since 1998, was part of several discretionary trusts owned and operated by Jardine Matheson/Insinger/Equity.

    b. If Janvrin is in a Trust, that makes Equity the owner and the sole decision maker of the trust, and subsequently the owner and controlling entity of Janvrin (as eloquently narrated by Brown to FPD Steve Kalar in his letters *Doc 87*.

    c. More significantly, the BVI government report in *Doc 50* states that Janvrin was registered <u>in May 2006, not 1995/6 as Austin declares.</u> We are not dealing with Dahan's or Haruvi's Janvrin of 1995/6 – this is a contemporary Equity private project.

2. Austin states that Equity did not pay for or control Janvrin et al. However internal written communications at Equity (now authenticated by the US government) shows Bougeard and Brown strategizing on behalf of Janvrin with Janvrin's attorneys in California

    a. on ways to assure that their interests in the plum litigation against Hilsenrath will be not jeopardized by other events,

    b. and are also worried about who would pay for the daily expenses of Janvrin, and should "we" (Equity) pay "from our own pocket"?

Some simple questions to Austin will carry this case a long way.

Questions like:

    i. Who paid for the re-incorporation of Janvrin in BVI in May 2006?

    ii. And when did Equity receive its last payment from Dahan or Haruvi to maintain Janvrin et al and its litigation against Hilsenrath?

    iii. And if that last payment was made many years ago, then why was the litigation of Janvrin v. Hilsenrath not dropped many years ago?

    iv. And who kept that litigation going and who had the expectation to cash in the 7.3 million Dollars default judgment against the Hilsenraths that this Court almost put through in 2005?

## SUMMARY

Philip Austin paid his attorneys $23,000 to convince the court that the rule of privilege condones perjury in sworn declarations.

The rule does not condone such conduct in declarations submitted to the court under

3

oath.[3]

Philip Austin had a significantly more affordable way to convince the court of the veracity of his statements that Equity does not own or finance Janvrin et al[4]:

A simple one-page declaration of the purported "other" owner simply stating: "<u>I am</u> the owner, and <u>I am</u> financing Janvrin et al" would have been sufficient.

Austin obviously had no such "affordable" alternative.

There is no such other owner.

Equity owns and finances Janvrin et al. (See *Doc 35-1 Hilsenrath Supplemental Declaration*, Re Equity Trust documentation).

Austin has committed perjury under oath. His conduct is in furtherance of the Equity Trust cover-up of its unlawful and tortious conduct.

Philip Austin, who states that his firm is owned by a Dutch parent corporation (who is also responsible for advertising him on the web) has his "finger plugged in the Dutch Dam" protecting Equity Trust from being flooded by countless victims and casualties who will show up during this litigation.

## CONCLUSION

The court should deny Philip Austin's motion to dismiss (*Doc 83).*

---

[3] **Sengchanthalangsy v. Accelerated Recovery Specialists, Inc., 473 F. Supp. 2d 1083**
 The **privilege** has also not been found where its application did not promote truthfulness in testimony. The question of whether the **privilege** should apply to particular communications has always depended upon a balancing of the public interests it serves against the important private interests that it sacrifices. When applying the **litigation privilege** to specific situations, therefore, courts must keep in mind its general purpose, and whether applying the **privilege** will further the public interest of encouraging truthfulness in testimony.

[4] **SPHERE DRAKE INS. V. ALL AM. LIFE INS. CO., 221 F. SUPP. 2D 874**
 Since the litigation privilege may interfere with the search for truth, it is to be construed narrowly. The party invoking the privilege has the burden of showing that it applies. The invocation of the privilege must be supported by specific facts as to each document at issue. This will often necessitate the submission of an affidavit or declaration with specific facts and/or the submission of the documents in camera; conclusory or blanket assertions about the documents will not suffice

Dated: October 11, 2007

Respectfully submitted,

                    HANA HILSENRATH
                    Plaintiff *PRO SE*

                    /s/ Hana Hilsenrath

                    OLIVER HILSENRATH
                    Plaintiff *PRO SE*

                    /s/ Oliver Hilsenrath