1  BAACH ROBINSON & LEWIS PLLC
   Sarah L. Knapp (Bar No. 200694)
2  1201 F Street, NW, Suite 500
   Washington, DC 20004-1225
3  Telephone:  202-833-8900
   Facsimile:   202-466-5738
4  sarah.knapp@baachrobinson.com

5
   Attorneys for Defendants
6  MELVYN KALMAN & JOHN PERKINS

7

8               **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
9

10 HANA HILSENRATH AND OLIVER          | **Case No.: No. 3:07-cv-03312 CW**
   HILSENRATH,
11                                      | **REPLY TO PLAINTIFFS' OPPOSITION**
                      Plaintiffs,       | **TO MOTION OF DEFENDANTS**
12                                      | **KALMAN AND PERKINS TO DISMISS**
   v.                                   | **PURSUANT TO FED. R. CIV. P. 12 AND**
13                                      | **SPECIAL MOTION IN THE**
   EQUITY TRUST (JERSEY) LIMITED, et al., | **ALTERNATIVE TO STRIKE**
14                                      | **PURSUANT TO CAL. CODE CIV. P.**
                      Defendants.       | **425.16**
15

16                                      | Date:   November 1, 2007
                                        | Time:  2:00 p.m.
17                                      | Place:  Courtroom 2, 4th Floor
                                        | Judge: Honorable Claudia Wilken
18
                                        | Complaint Filed: June 25, 2007
19

20

21

22

23

24

25

26

27

28
   Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
   Reply of Defendants Kalman and Perkins

1

**TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ..................................................................................................ii

3    INTRODUCTION ...............................................................................................................1

4    I.    DISMISSAL IS APPROPRIATE ON THE BASIS OF LACK OF
      PERSONAL JURISDICTION, IMPROPER VENUE, AND FORUM
5         NON CONVENIENS. .............................................................................................2

6    II.   PLAINTIFFS' COMMON LAW CLAIMS MUST BE DISMISSED. ................... 4

7         A.    The litigation privilege and anti-SLAPP statutes apply to the common
8               law claims. ....................................................................................................5

9         B.    All of the claims except malicious prosecution are time barred ...............7

10        C.    Plaintiffs have failed to show a likelihood of success on the merits of
11              their extortion and malicious prosecution claims.....................................9

12        D.    Plaintiffs' claims other than malicious prosecution are barred by the
13              releases in the 2001 Settlement Agreement ...........................................11

14   III.  PLAINTIFFS' RICO CLAIM MUST BE DISMISSED. ..................................... 11

15   IV.   PLAINTIFFS' CONTENTION THAT THE JANVRIN DEFAULT JUDGMENT
         HAS RES JUDICATA EFFECT AS TO KALMAN AND PERKINS IS
16        MISTAKEN ........................................................................................................ 14

17   CONCLUSION .................................................................................................................. 15

18

19

20

21

22

23

24

25

26

27

28
i

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Reply of Defendants Kalman and Perkins

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994)...........................................................................2

4

C & W Const. Co. v. Brotherhood of Carpenters and Joiners of America, Local 745,

5

AFL-CIO, 687 F. Supp. 1453 (D. Haw. 1988) .........................................................................13

6

In re Daley, 776 F.2d 834 (9th Cir. 1985)................................................................................14

7

Fasulo v. United States, 272 U.S. 620 (1926)..........................................................................13

8

Forcier v. Microsoft Corp., 123 F. Supp. 2d 520 (N.D. Cal. 2000) ..........................................7

9

Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634 (N.D. Cal. 1993) ...................................9

10

Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees and Restaurant

11

Employees Union, AFL-CIO, 215 F.3d 923 (9th Cir. 2000) .............................................. 12, 13

12

Omstead v. Dell, Inc., 473 F. Supp. 2d 1018 (N.D. Cal. 2007) .................................................4

13

Ott v. Home Savings & Loan Assoc., 265 F.2d 643 (9th Cir. 1958)...........................................2

14

Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364 (9th Cir. 1992) .........................................14

15

Scholar v. Pacific Bell, 963 F.2d 264 (9th Cir. 1992)................................................................8

16

Sever v. Alaska Pulp Corp., 978 F.2d 1529 (9th Cir. 1992) ....................................................14

17

Shanghai Automation Instrument Co., Ltd. v. Kuei, 194 F. Supp. 2d 995 (N.D. Cal.

18

2001) ......................................................................................................................................14

19

Troy Group, Inc. v. Tilson, 364 F. Supp. 2d 1149 (C.D. Cal. 2005) ..........................................5

20

United States v. Dischner, 974 F.2d 1502 (9th Cir. 1992).......................................................12

21

United States v. Lew, 875 F.2d 219 (9th Cir. 1989) .................................................................13

22

Warden v. Cross, 94 Fed. Appx. 474 (9th Cir. 2004) ..............................................................14

23

24

### STATE CASES

25

Arredondo v. Regents of the Univ. of Cal., 131 Cal. App. 4th 614 (Cal. App. 2d 2005)............8

26

Briggs v. Eden Council for Hope & Opportunity, 969 P.2d 564 (Cal. 1999).............................5

27

28

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Reply of Defendants Kalman and Perkins

Carnival Cruise Lines, Inc. v. Super. Ct., 234 Cal. App. 3d 1019 (Cal. App. 2d 1991)..............4

Christoff v. Nestle USA, Inc., 152 Cal. App. 4th 1439 (Cal. App. 2d 2007) ..............................7

Downey Venture v. LMI Ins. Co., 66 Cal. App. 4th 478 (Cal. App. 2d 1998)..........................11

Flatley v. Mauro, 139 P.3d 2 (Cal. 2006) ........................................................................... 5, 6

Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914 (Cal. 2005) ...........................................8

Gottlieb v. Kest, 141 Cal. App. 4th 110 (Cal. App. 2d 2006)......................................... 14

Hunt v. Super. Ct., 81 Cal. App. 4th 901 (Cal. App. 4th 2000).......................................3

Intershop Communic. AG v. Super. Ct. of San Francisco, 104 Cal. App. 4th 191 (Cal. App. 1st 2002).................................................................................................3

Jacob B. v. County of Shasta, 154 P.3d 1003 (Cal. 2007)........................................ 6, 7

Jolly v. Eli Lilly & Co., 751 P.2d 923 (Cal. 1988) ...................................................8

Knoell v. Petrovich, 76 Cal. App. 4th 164 (Cal. App. 2d 1999)...................................7

Norgart v. Upjohn Co., 981 P.2d 79 (Cal. 1999) ................................................. 7, 8

Temple Cmty. Hospital v. Super. Ct., 976 P.2d 223 (Cal. 1999) ................................7

United States v. Zamora, 557 P.2d 75 (Cal. 1976) ...............................................9

**FEDERAL STATUTES**

Fed. R. Civ. P. 9(b) .................................................................................... 12, 13

18 U.S.C. § 1951 ............................................................................................. 12

iii

1

**INTRODUCTION**

2

3      Plaintiffs' Opposition to Defendants Kalman and Perkins' Motion to Dismiss is less

4 remarkable for what it says than for what it fails to say.  The Motion to Dismiss (MTD)

5 contains fully sufficient bases for rejecting each of Plaintiffs' causes of action:

6      • Counts I and II are in essence claims for extortion/duress.  These claims are
          barred by the statute of limitations (and/or lack of standing and proximate
7          causation), by California's litigation privilege, and by the releases in the 2001
          Settlement Agreement, and they also fall within California's anti-SLAPP statute.

8
        • Count III (Constructive Trust), Counts V and VII (Exemplary Damages), and
9          Count X (Injunctive Relief) are remedies and not causes of action.  These counts
          must be dismissed.
10

11      • Counts IV and VI, which at least suggest causes of action for invasion of privacy
          and tortious interference, accrued more than two years prior to the filing of the
12          Complaint by Plaintiffs' own attestation and are unquestionably time barred.
          California's litigation privilege, its anti-SLAPP statute, and the releases in the
13          2001 Settlement Agreement provide additional grounds for dismissal.

14
        • Count VIII (Malicious Prosecution) should be stricken.   Plaintiffs cannot
15          demonstrate a likelihood of success on the merits, as required by the anti-SLAPP
          statute, because Kalman and Perkins were not parties to the 2002 Action and
16          Plaintiffs have not pleaded any facts that support a finding of malice.

17      • Count IX, seeking damages for "destruction of documents with criminal intent,"
          must be dismissed because there is no tort of spoliation of evidence under
18          California law.

19
        • Count XI (RICO) must be dismissed.  Plaintiffs have failed to plead any of the
20          elements of a RICO claim.  They have not alleged a RICO person or an enterprise
          or a cognizable relationship between the two; a "pattern" with at least two
21          predicate acts; closed or open-ended continuity; standing; or proximate causation.
          To the extent it relies on extortion of the Hilsenraths in 2001, the claim is also
22          time barred, and it is barred by the releases in the 2001 Settlement Agreement.
          Plaintiffs' eleventh-hour attempt to plead alleged threats by a non-defendant more
23          than seven years ago is of no assistance in remedying the RICO claim.

24

25 The Opposition fails to address fatal defects in each of the claims, leaving the action ripe for

26 dismissal.  Indeed, despite a scattering of new facts and the vague and talismanic invocation of

27 "conspiracy," the Opposition makes it clear that amendment of the Complaint will not address

28
                                          1

1   these fundamental defects.  The Opposition also fails to show that this Court has personal

2   jurisdiction over Kalman or Perkins, that venue is proper, or that the action should not be

3   dismissed pursuant to the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.[1]

4
5   ## I.   DISMISSAL IS APPROPRIATE ON THE BASIS OF LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND <u>FORUM</u> <u>NON</u> <u>CONVENIENS</u>.

6   As set forth in the MTD, under the applicable personal jurisdiction, venue, and <u>forum</u>

7   <u>non</u> <u>conveniens</u> analyses, this action should be dismissed in favor of the courts of Jersey in the

8   British Isles.  It would be inequitable to require Kalman and Perkins to litigate this seven-year-

9   old claim eight thousand miles from their place of residence and business—<u>i.e.</u>, Jersey—where

10  Dr. Hilsenrath chose to conduct his financial affairs and agreed to submit to jurisdiction.  <u>See</u>

11  ETJL Mot. Dism., Austin Decl. Exs. F ¶ 8 & G ¶ 8 ("THIS AGREEMENT shall be governed

12  by construed and interpreted in accordance with the laws of the Island of Jersey, and all parties

13  shall submit to the jurisdiction of the courts of the said Island.").

14
15  Plaintiffs do little to address Defendants' argument that Jersey is the most convenient

16  forum in which to try this case.  They reiterate their position that the letter dated May 14, 1996

17  from Mr. Perkins was an "initial solicitation" of Dr. Hilsenrath in California.  Opp. 2 ("The

18  initial solicitation of the Hilsenraths as private clients was at PERKINS' initiative, on behalf of

19  Jardine Matheson Trust by means of his letter faxed to the Hilsenraths' home in Alamo

20  California.").  The MTD pointed out that this position is flatly contrary to the text of the letter,

21  _____

22  [1] Plaintiffs contend in their opposition that the MTD improperly relies on exhibits not
    submitted under a declaration.  The exhibits cited are all either (i) orders or submissions of

23  record in cases before this Court, as to which judicial notice is appropriate, or (ii) documents
    that form part of the allegations in the Complaint.  <u>See</u> <u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54

24  (9th Cir. 1994); <u>Ott v. Home Savings & Loan Assoc.</u>, 265 F.2d 643, 646 & n.1 (9th Cir. 1958).
    Although the authenticity of these documents, which include a declaration by Dr. Hilsenrath,

25  cannot be legitimately in question, the Defendants are re-submitting the exhibits under the

26  Declaration of the undersigned.

27
28
                                              2

<u>Hilsenrath v. Equity Trust (Jersey) Ltd., et al.</u>, No. 3:07-cv-03312 CW (N.D. Cal.)
Reply of Defendants Kalman and Perkins

and Plaintiffs do nothing to rebut that fact.  See Opp. Ex. A ("I write with further reference to our recent telephone conversation and to your fax of 11 May 1996.  I am grateful for the information provided concerning your personal background. . . .").  Plaintiffs allege that their residence in California was a condition of a purported investment by Jardine Matheson, but again they rely on exhibits that do not support their position at all.[2]  Compare Opp. 2 with Opp. Ex. B.  Finally, Plaintiffs' contention that Dr. Hilsenrath was a naïve neophyte lured in by offshore trust service providers speaks for itself and is completely incredible.  Id. at 4 ("Undoubtedly, had the PERKINS solicitation in Exhibit A not occurred, the Hilsenraths would still run their finances at the Bank of America branch in the shopping center of Alamo California. . . .").

Finally, Plaintiffs allege that the forum selection clauses in the contracts between them and ETJL should not control because (i) the contracts were adhesion contracts and (ii) the contracts were "voided."  These contentions are easily dismissed.  First, no concrete allegations are made to support the notion that the contracts were adhesion contracts.  There is no evidence or contention that Dr. Hilsenrath was unable to bargain for different terms or to take his business elsewhere if he was not satisfied with the terms on offer.  Moreover, "[a] forum selection clause within an adhesion contract will be enforced 'as long as the clause provided adequate notice to the [party] that he was agreeing to the jurisdiction cited in the contract.'"  Intershop Communic. AG v. Super. Ct. of San Francisco, 104 Cal. App. 4th 191, 201-02 (Cal. App. 1st 2002) (quoting Hunt v. Super. Ct., 81 Cal. App. 4th 901, 908 (Cal. App. 4th 2000),

---

[2] As a factual matter, Plaintiffs' assertion that Jardine Matheson was to be the largest investor in U.S. Wireless, see Opp. 2, is simply false.  For the purpose of this Motion, however, it will suffice to observe that it is irrelevant to the jurisdictional analysis vis-à-vis Kalman and Perkins because they are not alleged to have been investors personally.

3

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Reply of Defendants Kalman and Perkins

1
2
3
4
5
6

and citing <u>Carnival Cruise Lines, Inc. v. Super. Ct.</u>, 234 Cal. App. 3d 1019, 1026-27 (Cal. App.
2d 1991)).[3] Second, Plaintiffs' contention that Perkins and Kalman "voided" the contracts with
ETJL by removing themselves personally from directorships of Hilsenrath-related companies is
a nonstarter. The contracts were with ETJL, not Kalman and Perkins. Kalman's and Perkins'
resignations have no bearing on the validity of the contract between ETJL and Dr. Hilsenrath.

7
8
9

For the reasons stated in the MTD, the Complaint should therefore be dismissed for
want of personal jurisdiction, for improper venue, and under the doctrine of <u>forum</u> <u>non</u>
<u>conveniens</u>.

10

**II.    PLAINTIFFS' COMMON LAW CLAIMS MUST BE DISMISSED.**

11
12
13
14
15
16
17
18
19
20
21

Plaintiffs have failed to address fundamental defects in their state common law claims.
As an initial matter, all of the claims except malicious prosecution are time barred. All except
malicious prosecution are also barred by the litigation privilege and by the 2001 Settlement
Agreement. Finally, because Defendants have made the initial showings necessary for the anti-
SLAPP statute—<u>i.e.</u>, that the actions complained of arose from statements made "before" or
"in connection with" a judicial proceeding, and, alternatively, implicate the public interest—
Plaintiffs must establish a likelihood of success on each of their common law claims. They
have not met this burden, and these claims must be dismissed as a matter of law. <u>See</u>, <u>e.g.</u>,
<u>Troy Group, Inc. v. Tilson</u>, 364 F. Supp. 2d 1149, 1155 (C.D. Cal. 2005).

22
23
24
25

---

[3] In <u>Omstead v. Dell, Inc.</u>, 473 F. Supp. 2d 1018, 1022 (N.D. Cal. 2007), relied on by Plaintiffs
for the proposition that <u>choice-of-law provisions</u> in adhesion contracts will not be enforced if
substantial injustice would result, this Court also concludes that "a plaintiff seeking to defeat a
<u>forum-selection clause</u> has a heavy burden and must demonstrate that enforcement would be
unreasonable." (emphasis added). Plaintiffs have made no such showing.

26
27
28

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A.  <u>The litigation privilege and anti-SLAPP statutes apply to the common law claims.</u>

The MTD demonstrated that this action "arises from" activity protected by the anti-SLAPP statute and the litigation privilege.  Whereas the anti-SLAPP statute operates to shift the burden to Plaintiffs where the action arises in the context of litigation or implicates the public interest, the litigation privilege operates as an absolute bar to claims within its ambit, <u>i.e.</u>, those arising from communications in furtherance of actual or contemplated litigation. There can be no doubt that the conduct complained of here falls squarely within the litigation privilege, because it arises from settlement discussions in connection with extant litigation.

Plaintiffs fail to address these defects in their state law claims.  With regard to SLAPP, they argue that the conduct alleged in the Complaint was not in the public interest and did not occur in a public forum, but neither of these is a requirement under the statute where, as here, the conduct arises from litigation.  <u>See</u> <u>Briggs v. Eden Council for Hope & Opportunity</u>, 969 P.2d 564 (Cal. 1999).  Plaintiffs also rely on <u>Flatley v. Mauro</u>, 139 P.3d 2 (Cal. 2006), for the propositions (i) that the anti-SLAPP statute does not apply to extortion claims alleging criminal misconduct and (ii) that the litigation privilege is similarly limited.  The case stands for neither proposition.  On the contrary, <u>Flatley</u> merely holds that "where a defendant brings a motion to strike under section 425.16 . . . but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action."  <u>Id.</u> at 15.  The mere allegation of extortion does nothing to bar the normal operation of the anti-SLAPP statute, and it is clearly applicable here, where there is no admission of wrongdoing and the evidence is not remotely conclusive of wrongdoing.  Unlike the present situation, moreover, <u>Flatley</u> involved statements made outside the context of extant litigation.

5

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Reply of Defendants Kalman and Perkins

1   Hence, the anti-SLAPP statute applies to Plaintiffs' claims just as stated in the MTD: (i) it is

2   applicable because the claims pertain to conduct relating to litigation and also under the "public

3   interest" prong of the statute; and (ii) it requires Plaintiffs to show prima facie a likelihood of

4   success on the merits.[4]  They are unable to make this showing.

5        As to the second proposition asserted by Plaintiffs, that Flatley limits the litigation

6   privilege where a criminal act has been alleged, the contention is incorrect.  Indeed, Flatley

7   states that the privilege is "an 'absolute' privilege, and it bars all tort causes of action except a

8   claim of malicious prosecution." Id. at 16.  Having found flagrantly illegal conduct per se and

9   as a matter of law based on an uncontested record, the Flatley Court nonetheless assumed

10  without deciding that the litigation privilege would apply to such extortionate conduct.  Id.

11  (stating that litigation privilege and anti-SLAPP statutes "are substantively different statutes

12  that serve quite different purposes").  Again, the litigation privilege applies in this case despite

13  allegations of wrongdoing in general, and improper disclosures of confidential information in

14  particular, because the communications are alleged to have occurred within the context of

15  discussions aimed at settling litigation.[5]   See Jacob B. v. County of Shasta, 154 P.3d 1003,

16

17

18

---

19  [4] Because Defendants generally assume the averments of the Complaint to be true for purposes
20  of the MTD, Plaintiffs appear to have formed the mistaken belief that Defendants accept these
    propositions as true, and they view Defendants as affirmatively asserting that they were, in
21  effect, whistle blowers who revealed Dr. Hilsenrath's misconduct to the U.S. Wireless Board.
    See, e.g., Opp. 5-7.  But Defendants have made no such assertion.  As the MTD clearly states,
22  "Kalman and Perkins assume the truth of the allegations in the Complaint for purposes of this
    Motion but reserve the right to contest those alleged facts."  MTD at 3 n.3.

23  [5] Plaintiffs contend that "the Litigation Privilege does not cover destruction of evidence." Opp.
24  at 11.  It is difficult to determine what Plaintiffs intend to accomplish with this argument.  As
    noted in the MTD (at 10), there is no tort claim under California law for spoliation of evidence.
25  See Temple Cmty. Hosp. v. Super. Ct., 976 P.2d 223 (Cal. 1999).  Even assuming arguendo
    that there was spoliation of evidence and that Kalman and Perkins were involved in it,
26  Plaintiffs' claims for extortion/duress, tortious interference, and invasion of privacy arise from
    the alleged disclosure of documents, not their destruction or concealment.  Because these

27

28

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Reply of Defendants Kalman and Perkins

1    1010 (Cal. 2007).  Consequently, all of Plaintiffs' claims except malicious prosecution are

2    barred by the litigation privilege.

3              B.        All of the claims except malicious prosecution are time barred.

4    Plaintiffs concede that they had notice of the alleged improper disclosures more than

5    two years before filing their Complaint on June 25, 2007.[6]  The claims for invasion of privacy

6
     and tortious interference with contract are therefore time barred.  See Forcier v. Microsoft
7
     Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); Christoff v. Nestle USA, Inc., 152 Cal. App.
8
     4th 1439, 1455, 1463 n.10 (Cal. App. 2d 2007); Knoell v. Petrovich, 76 Cal. App. 4th 164, 168-
9
10   69 (Cal. App. 2d 1999) (two-year statutes of limitations).  To address this fatal defect, Plaintiffs

11   merely contend (i) that "no court will dismiss a case for such an argument," and (ii) that they

12   learned more about the alleged events underlying their claims after June 14, 2005.  Opp. 15-16.

13
     Neither contention can salvage these claims.  It is well-settled that exceeding a statutory
14
     limitations period even by a relatively short period of time bars the untimely claims.  See
15
     Norgart v. Upjohn Co., 981 P.2d 79, 87 (Cal. 1999) (statute of limitations "operates
16

17   conclusively across the board, and not flexibly on a case-by-case basis."); Arredondo v.

18   Regents of the Univ. of Cal., 131 Cal. App. 4th 614 (Cal. App. 2d 2005) (negligence action

19   ──────────────────────

20   claims related to litigative communications, not destruction of evidence, the narrow exception
     to the litigation privilege in § 47(b)(2) is inapplicable.

21   [6] Dr. Hilsenrath's declaration sworn earlier this year establishes his awareness of the alleged
     claims and injuries by no later than June 14, 2005.  See O. Hilsenrath Decl. ¶ 5 (Jan. 26, 2007)
22   (MTD Ex. C) (acknowledging learning from June 14, 2005 fax of "Equity Trust's delivery of
     our personal information to the parties that had been suing us in the original cases, and their
23   lawyers.").  Mrs. Hilsenrath similarly attests that she "found out about [Defendants' alleged]
24   active participation, support, and unlawful use of our family records in [the] summer of 2005,
     when David Dahan agreed to testify in the criminal case brought by the US government against
25   Oliver."  H. Hilsenrath Decl. 2 (Sep. 27, 2007) (Opp. Ex. R).  Plaintiffs' own attestations thus
     clearly establish the time bar.
26

27

28                                                  7

1

2

3

barred where notice of intent to sue filed five days after statute of limitations had run); <u>Scholar v. Pacific Bell</u>, 963 F.2d 264, 268 (9th Cir. 1992) (Title VII claim time barred where it was filed three days after expiration of statute of limitations).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

As for the contention that Plaintiffs learned more about the alleged events at later dates, they mistake the relevant standard under the discovery rule. "[T]he plaintiff discovers the cause of action when he at least suspects a factual basis . . . even if he lacks knowledge thereof—when, simply put, he at least 'suspects . . . that someone has done something wrong to him.'" <u>Norgart</u>, 981 P.2d at 88 (quoting <u>Jolly v. Eli Lilly & Co.</u>, 751 P.2d 923, 927 (Cal. 1988)); <u>see also</u> <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 110 P.3d 914, 920 (Cal. 2005) (plaintiff must make reasonable investigation and is charged with knowledge of information that would have been revealed thereby).[7] A plaintiff "has reason to suspect when he has notice or information of circumstances to put a reasonable person <u>on inquiry</u>." <u>Norgart</u>, 981 P.2d at 88 (internal quotation marks omitted). There can be no doubt on the facts as pleaded that Plaintiffs were on inquiry as of the date of the June 14, 2005 fax. Plaintiffs' Opposition confirms that any claims based on tortious interference or invasion of privacy are time barred: these claims should be dismissed with prejudice and without leave to amend.

19

20

21

Plaintiffs' common law duress/extortion claim is also time barred to the extent that it is viable at all. If threats to disclose his financial information coerced Dr. Hilsenrath to enter the

22

23

24

25

26

---

[7] Plaintiffs also aver that records of the alleged improper disclosures were destroyed by ETJL. They appear to base this allegation on nothing more than the failure of ETJL, a large trust company, to locate and provide documents from its files to the SEC and/or the USAO. Leaving aside the veracity of this claim, it is irrelevant. Any invasion of privacy or tortious interference with contract would have been completed long before 2005 and would have been known as of June 14, 2005 at the latest.

27

28

8

2001 Settlement, he must have known it at the time. As this Court has previously stated, "one who is being coerced by definition knows that it is happening." MTD Ex. A at 11 (Janvrin Order). Hence, any extortion claim must have accrued outside the three-year limitations period. In the alternative, if Dr. Hilsenrath was not coerced by the threatened disclosures, Plaintiffs have not stated a claim for extortion. Plaintiffs have done nothing to avoid the horns of this dilemma. On the contrary, their failure to address it confirms that the extortion claim is ill-conceived.

Finally, Plaintiffs make vague allegations concerning a sweeping conspiracy and allege that Kalman and Perkins engaged in deliberate spoliation of evidence in furtherance thereof. Even assuming arguendo that there was spoliation of evidence and that Kalman and Perkins were involved in it, the allegations of spoliation do not affect the application of the relevant statutes of limitations to Plaintiffs' claims. See United States v. Zamora, 557 P.2d 75, 90 (Cal. 1976) ("[F]or purposes of the statute of limitations an overt act in furtherance of the conspiracy cannot be committed subsequent to the completion of the object" of the conspiracy); Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634, 649 (N.D. Cal. 1993). If the conspiracy alleged is one to extort U.S. Wireless and/or Dr. Hilsenrath into entering into the 2001 Settlement, actions taken after the completion of that Settlement cannot constitute overt acts in furtherance of the conspiracy for statute of limitations purposes. See Zamora, 18 Cal. 3d at 560.

    C.    Plaintiffs have failed to show a likelihood of success on the merits of their extortion and malicious prosecution claims.

       1.    Extortion/Duress

The MTD demonstrates the failure of the Complaint to state a claim for common law extortion in view of the absence of any allegation that Plaintiffs, as opposed to U.S. Wireless, were threatened or coerced with respect to release of their financial information. The

9

Opposition only confirms that Plaintiffs cannot state such a claim.  Instead, Plaintiffs allege for the first time in their Opposition an entirely different alleged threat, involving a person who is not a party to this case, David Dahan, in the spring of 2000.  They do not—and cannot—allege that the Defendants had any participation in or even knowledge of this alleged threat.  If Plaintiffs' family were physically threatened by Mr. Dahan, the person to sue (or report to the authorities) would be Mr. Dahan.  They have not done so.[8]  The allegation of a threat by Mr. Dahan is a red herring: he is not a party to this case; Defendants are not alleged to have had anything to do with his alleged threat; and, in any event, any claim based on an alleged threat in the summer of 2000 is time barred now, more than seven years later.

### 2.  Malicious prosecution

The MTD attacks the malicious prosecution claim on multiple grounds: (i) Kalman and Perkins were not parties to the 2002 Action;[9] (ii) Plaintiffs have not alleged facts sufficient to establish a lack of probable cause in bringing the 2002 Action; (iii) Plaintiffs have not alleged facts sufficient to establish malice in bringing the action; and (iv) Plaintiffs have not established a successful outcome on the merits.  It is Plaintiffs' burden to establish a likelihood of success on the merits.  Plaintiffs have not adequately addressed these contentions, and the Court should dismiss this claim, particularly where, as here, there has been no contention that Janvrin et al.— let alone Kalman and Perkins—had any ulterior, improper motive in bringing the litigation.

---

[8] Indeed, on the contrary, Plaintiffs appear to be on very friendly terms with Mr. Dahan, who has submitted a declaration on Dr. Hilsenrath's behalf, offered to testify in his defense, and provided "thousands of pages" of documents to him, see O. Hilsenrath Decl.¶ 6, 13 (MTD Ex. C).

[9] As for the abandonment of the Janvrin litigation, the MTD merely points out what is evident from Plaintiffs' own allegations: Kalman and Perkins could not have had a role in the abandonment of the litigation in early 2007 if neither of them was with ETJL as of 2005 or thereafter.

10

Hilsenrath v. Equity Trust (Jersey) Ltd., et al., No. 3:07-cv-03312 CW (N.D. Cal.)
Reply of Defendants Kalman and Perkins

1

2

3

4

5

6

7

Instead, Janvrin et al. sought nothing more or less than what was claimed for in the complaint. See Downey Venture v. LMI Ins. Co., 66 Cal. App. 4th 478, 494 (Cal. App. 2d 1998) ('The malice element' . . . relates to the subjective intent or purpose with which the defendant acted in initiating the prior action . . . The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose.") (emphasis added)(internal citations omitted).

8

9

> D.    Plaintiffs' claims other than malicious prosecution are barred
>        by the releases in the 2001 Settlement Agreement.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The MTD demonstrates that the 2001 Settlement Agreement contains releases of known, suspected, and unknown claims up to the date of the Agreement and therefore bars Plaintiffs' claims other than the malicious prosecution claims.  Plaintiffs' only argument in response is that Dr. Hilsenrath entered into the 2001 Settlement Agreement under duress. Plaintiffs cannot have been coerced by the alleged improper disclosures of financial information prior to the 2001 Settlement, however, if they were unaware of the disclosures until 2005 as they allege.  Their new averment concerning threats from Mr. Dahan should also be discounted for this purpose.  Plaintiffs have never surfaced this allegation before, though Dr. Hilsenrath was sued, inter alia, for breach of contract in connection with the 2001 Settlement Agreement in the Janvrin litigation and would have had every incentive to make this situation known to the Court if he could truthfully have done so.  Under the anti-SLAPP legislation, mere averments such as this are not sufficient to maintain the action.  Plaintiffs must show a likelihood of success on the merits.  They cannot do so.

24

25

## III.    PLAINTIFFS' RICO CLAIM MUST BE DISMISSED.

26

27

Plaintiffs have failed to demonstrate any basis to believe that their RICO claim could be salvaged by repleading.  The MTD identified the complete failure of Plaintiffs to plead the

28

11

elements of a RICO claim, including a "person," and an "enterprise," a cognizable relationship between the two (or even an indication of which part of the statute is relied upon), standing, and proximate causation.  Plaintiffs have done essentially nothing to show that these defects can be rectified, but have instead merely restated their vague, sweeping, conclusory, and inadequate assertions.  Opp. 5 ("As documents and correspondence abundantly shows, Kalman, Perkins were part of a team comprised of dozens of people that took to undertake, contract, threaten, trade, carry personal information through multiple jurisdictions, operating a dozen attorneys in multiple counties and ultimately conceal and make records disappear. They availed themselves to a court and equally easy disappeared. One generation of employees left but another, new one, carried on.  The existence of a pattern and an organization are without doubt.").  The RICO claim is fundamentally defective as pleaded.

Plaintiffs cannot show pattern and continuity.  They have pleaded only one conceivable predicate act, i.e., extortion.[10]  They attempt to rely on four wire transfers as evidence of additional predicate acts, i.e., wire fraud, but they provide no particularity as to what these wire transfers are, beyond stating that they are payments in connection with the 2001 Settlement, nor do they offer any explanation of why they believe these payments (some of which appear to be Dr. Hilsenrath's own wire transfers) constitute a crime by Defendants.  See Fed. R. Civ. P. 9(b).  In fact, Plaintiffs' allegations, even as modified by their Opposition, cannot constitute wire fraud.  See Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees and

---

[10] Defendants have assumed that Plaintiffs are attempting to plead their RICO claim based on the state extortion statute as the predicate act and not based on the federal Hobbs Act, 18 U.S.C. § 1951, because they have not alleged an impact on interstate commerce as required to plead a Hobbs Act-based claim.  See United States v. Dischner, 974 F.2d 1502, 1516 (9th Cir. 1992).  A Hobbs Act-based claim would also fail for the same reasons as the state law-based claim.  If Dr. Hilsenrath was extorted in 2001, RICO's 4-year statute of limitations would bar his claim.  If he was not extorted, he cannot satisfy the requirements of the Hobbs Act. Plaintiffs' claims are also barred by the releases in the 2001 Settlement Agreement.

12

1   Restaurant Employees Union, AFL-CIO, 215 F.3d 923, 926 (9th Cir. 2000) ("The statutes at

2   issue, §§ 1341 and 1343, are designed to prevent deceptive communications by wire, radio or

3   television. They explicitly require an intent to obtain 'money or property [from the one who is

4   deceived] by means of false or fraudulent pretenses, representations, or promises.'") (alteration

5   in original) (quoting United States v. Lew, 875 F.2d 219, 221 (9th Cir. 1989)); C & W Constr.

6   Co. v. Brotherhood of Carpenters and Joiners of America, Local 745, AFL-CIO,  687 F. Supp.

7   1453, 1467-68 (D. Haw. 1988) ("[D]efendants used the mails and telephone wires to threaten C

8   & W to force it to sign a contract with the union. . . . [A]llowing such threats to form the basis

9   of a scheme to defraud would give the statute too broad a reading."); see also Fasulo v. United

10  States, 272 U.S. 620, 628 (1926) ("[T]he obtaining of money by threats . . . is not enough to

11  require the court to hold that a scheme based on such threats is one to defraud. . . . The only

12  means employed by [defendant] to obtain the money demanded was the coercion of fear. . . .

13  But broad as are the words 'to defraud,' they do not include threat and coercion through fear or

14  force.").

15

16  Plaintiffs have not pleaded wire fraud in the Complaint: there is no allegation of a

17  misrepresentation, reliance, or resulting damages.  Even if some or all of the wire transfers

18  constituted wire frauds, moreover, they would not establish a RICO claim because they would

19  remain part and parcel of the same instance of alleged extortion as the other alleged act(s) and

20  could not constitute a "pattern" for purposes of RICO.  Each aspect of the wrongful conduct

21  pleaded is alleged to have been directed at attaining the 2001 Settlement.  To the extent that the

22  wire transfers were in furtherance of that Settlement, they are part of the same episode of

23  alleged extortion.  See Warden v. Cross, 94 Fed. Appx. 474, 476 (9th Cir. 2004) ("Simply put,

24  a single 'episode' does not satisfy the pattern requirement.") (citing Sever v. Alaska Pulp Corp.,

25

26

27

28

13

978 F.2d 1529, 1535-36 (9th Cir. 1992)); <u>Religious Tech. Ctr. v. Wollersheim</u>, 971 F.2d 364, 366-367 (9th Cir. 1992).

Finally, the RICO claim is based on an alleged extortion of Plaintiffs and, like the common law extortion claim, must fail because Plaintiffs have not alleged that they, as opposed to U.S. Wireless, were threatened by the Defendants in connection with the alleged improper disclosures. Plaintiffs lack standing to bring a claim on the basis of an alleged extortion of U.S. Wireless, and they cannot show proximate causation of their own injuries based on such an alleged extortion. The RICO claim is non-salvageable and should be dismissed with prejudice and without leave to amend.

**IV.    PLAINTIFFS' CONTENTION THAT THE <u>JANVRIN</u> DEFAULT JUDGMENT HAS <u>RES</u> <u>JUDICATA</u> EFFECT AS TO KALMAN AND PERKINS IS MISTAKEN.**

Plaintiffs suggest that the default judgment in <u>Janvrin Holdings Ltd. v. Hilsenrath</u> was a judgment "on the merits" that is binding upon Kalman and Perkins, who were not parties to that action and are not alleged (and cannot be alleged) to have had anything to do with the default, <u>see</u>, <u>e.g.</u>, Opp. 9. They are mistaken. Federal court default judgments do not have <u>res</u> <u>judicata</u> effect. <u>See</u> <u>Shanghai Automation Instrument Co., Ltd. v. Kuei</u>, 194 F. Supp. 2d 995, 1002 n.3 (N.D. Cal. 2001) (citing <u>In re Daley</u>, 776 F.2d 834, 838 n.7 (9th Cir. 1985)). Even if they did, a prior judgment against a corporation would not be binding against the professional directors personally, particularly where those directors are not alleged (nor could they be alleged) to have been the beneficial owners of the companies. <u>See</u> <u>Gottlieb v. Kest</u>, 141 Cal. App. 4th 110, 150 (Cal. App. 2d 2006) ("'The concept that a corporation is a legal entity distinct from its management and stockholders implies that issues determined against a corporation are not conclusive against its directors, officers, and stockholders, and vice versa.") (quoting

14

1  RESTATEMENT (SECOND) OF JUDGMENTS § 59 cmt. e); id. (noting exception for owner of closely

2  held corporation who had active participation in litigation).   Hence, the Janvrin default

3  judgment is not binding as to these Defendants.

4  
## CONCLUSION

5

6  WHEREFORE, for the reasons stated above, Kalman and Perkins request that this

7  action be dismissed with prejudice on the merits or in the alternative be dismissed on the basis

8  of lack of personal jurisdiction, improper venue, and/or forum non conveniens.

9                                                  Respectfully Submitted,
                                                   BAACH ROBINSON & LEWIS PLLC
10

11  October 18, 2007                               By _____/S/_____

12                                                 Sarah L. Knapp, Esq.
                                                   Baach Robinson & Lewis PLLC
13                                                 ATTORNEYS FOR DEFENDANTS
                                                   KALMAN & PERKINS
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          15