# Exhibit A

FILED

MAR - 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

269

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JANVRIN HOLDINGS LIMITED, CROSSGAR
LIMITED, and RYBURN LIMITED,

       Plaintiffs,

    v.

DR. OLIVER HILSENRATH,

       Defendant.

_____/

DR. OLIVER HILSENRATH,

       Counterclaimant,

    v.

JANVRIN HOLDINGS LIMITED, CROSSGAR
LIMITED, and RYBURN LIMITED,

       Counterdefendants.

_____/

No. C 02-1068 CW

ORDER GRANTING IN
PART AND DENYING IN
PART DEFENDANT'S
MOTION FOR LEAVE TO
FILE AN AMENDED
COUNTERCLAIM

    Defendant and Counterclaimant Oliver Hilsenrath moves for

leave to file an amended counterclaim.  Plaintiffs Janvrin Holdings

Limited, Crossgar Limited and Ryburn Limited oppose the motion.

The matter was heard on February 9, 2007.  Having considered all of

the papers filed by the parties, the evidence cited therein and oral argument on the motion, the Court grants in part and denies in part Defendant's motion.

BACKGROUND

In this lawsuit, Plaintiffs seek to recover damages they allegedly sustained because Defendant's alleged fraudulent misstatements and omissions induced them to release claims against U.S. Wireless in exchange for worthless U.S. Wireless stock and a sum of money that U.S. Wireless never had the ability to pay.[1] Defendant was the Chief Executive Officer and Chair of the Board of Directors of U.S. Wireless.

In 2000, in this Court, Plaintiffs sued Hilsenrath, U.S. Wireless and David Klarman, Vice President, General Counsel and Secretary of U.S. Wireless, alleging that these defendants failed to pay Plaintiffs for consulting services that Plaintiffs had performed.  The parties negotiated a settlement of this lawsuit, according to which the defendants were obliged to pay Plaintiffs $ 1.5 million in four installments, to issue Plaintiffs over 2 million shares of registrable common stock in U.S. Wireless, and to file a Form S-3 statement to register the stock.

Plaintiffs allege that they were induced to enter into the settlement agreement by certain allegedly fraudulent misstatements and omissions made by Hilsenrath.  Specifically, Plaintiffs allege

---

[1]  As discussed below, this case was originally filed against several Defendants.  The case has been dismissed against all Defendants except for Hilsenrath who first appeared in this case in July, 2005.  He filed the current answer and counterclaim in October, 2005.

that Hilsenrath negotiated the terms of the settlement agreement on behalf of U.S. Wireless.  According to the allegations of the SAC, during the course of the negotiations, representatives of the company expressly represented that U.S. Wireless was in strong financial health.  SAC ¶ 49.  Plaintiffs state that they themselves confirmed this representation by reviewing U.S. Wireless's financial statements and SEC filings, approved by the Audit Committee of the Board of Directors, which "painted a picture of a company in healthy financial condition with great prospects with respect to its technology."  SAC ¶ 50.  Further, according to the allegations of the SAC, Hilsenrath failed to disclose the existence of an ongoing investigation into financial improprieties allegedly committed by key U.S. Wireless personnel.  SAC ¶ 65.  Finally, according to the allegations of the SAC, U.S. Wireless representatives failed to disclose that the stock that Plaintiffs would be obtaining under the settlement agreement was not actually registrable on Form S-3.  SAC ¶ 71.

Plaintiffs allege that soon after the closing date of the settlement agreement, they became aware of the misrepresentations and omissions made to them during the course of the negotiations. Specifically, Plaintiffs learned of a May 26, 2001 U.S. Wireless press release that "revealed irregularities in the Company's financial statements and misconduct by top management." SAC ¶ 54.  According to a form that U.S. Wireless filed with the SEC on July 12, 2001, these irregularities were uncovered as a result of an investigation that began in February, 2001, when the Audit Committee of the Board of Directors received certain

3

information. Special outside counsel retained to conduct the investigation interviewed Defendants Hilsenrath and Klarman on March 5, 2001. As a result of this questioning, Klarman was asked to resign, which he did on March 6. On March 15, special outside counsel delivered a preliminary report to the Audit Committee, which responded by authorizing counsel to hire an accounting firm to perform forensic investigation services. On May 25, the Board of Directors voted to remove Defendant Hilsenrath from his positions as Chief Executive Officer and Chair of the Board of Directors. SAC ¶ 65. Also on July 12, U.S. Wireless issued a press release announcing that "certain transactions had been improperly recorded in . . . historical financial statements," which required that it make adjustments to its balance sheets. SAC ¶ 69. Further, on or about June 22, Plaintiffs discovered that the securities they acquired under the settlement agreement were not actually registrable on Form S-3, because U.S. Wireless had failed to file required forms with the Securities and Exchange Commission during 2000. SAC ¶ 57.

Plaintiffs allege that, to date, U.S. Wireless has paid only $833,333 of the $1.5 million owed to them, and it has not registered the stock. SAC ¶ 60. Hilsenrath disputes these claims, alleging that the outstanding amount is $660,000 owed by U.S. Wireless to Janvrin Holdings. Counterclaims at ¶ 52. U.S. Wireless has filed a Chapter 11 bankruptcy petition and its stock has been delisted by NASDAQ. SAC ¶ 58, 59.

To recover their losses, Plaintiffs filed this lawsuit in March, 2002, alleging that they were fraudulently induced to enter

For the Northern District of California

1    into the settlement agreement.  Plaintiffs assert that Defendants

2    are liable for breach of their fiduciary duty to Plaintiffs, fraud

3    by a fiduciary, fraud, negligent misrepresentation, and violation

4    of § 10(b) of the Securities Exchange Act of 1934.

5        At the time the lawsuit was filed, Hilsenrath was living in

6    Israel.[2]  By late 2004, Plaintiffs' claims had been dismissed

7    against all Defendants except Hilsenrath.  On October 13, 2004,

8    Plaintiffs filed a motion for default judgment against Hilsenrath.

9    In June, 2005, while the motion for default judgment was still

10   pending, Hilsenrath filed a motion to set aside the default

11   judgment.  The Court denied without prejudice the motion for

12   default judgment and granted the motion to set aside the default

13   judgment, finding that Plaintiffs failed properly to serve

14   Hilsenrath and that he demonstrated that he had no actual notice of

15   the lawsuit until January, 2005.  Hilsenrath filed his answer and

16   counterclaims in October, 2005.  His original counterclaims alleged

17   that Plaintiffs improperly accessed his confidential personal

18   financial information, "engaged in various tactics in the

19   [underlying] lawsuit, and made various threats to US Wireless

20   personnel to induce settlement, all of which led to execution of

21   the settlement agreement."  Counterclaims at ¶ 3.

22       Hilsenrath alleged that Plaintiffs were able to access his

23

24   _____

25       [2]Plaintiffs allege that Hilsrenrath fled to Israel to escape
     this lawsuit.  Hilsenrath, an Israeli citizen, declares that he
26   moved to Israel after being terminated from his position at U.S.
     Wireless and that he voluntarily returned to the United States in
27   2004 to face criminal charges related to his work at U.S. Wireless.

28
                                    5

For the Northern District of California

personal information because Equity Trust[3], which acted as his fiduciary also acted as fiduciary to Plaintiffs, managing the investments and financial affairs of each.  Further, Hilsenrath alleged that Equity Trust had a conflict of interest when it attended a meeting at which Plaintiffs and representatives of Equity Trust discussed the underlying lawsuit and that Equity Trust improperly disclosed his personal information.  Hilsenrath alleged that he entered into the settlement agreement due to threats and economic duress based on the improper use of his personal financial information.  Therefore, Hilsenrath asked the Court to (1) declare the settlement agreement rescinded; (2) impose a constructive trust on all of the property involved in the settlement; (3) award $26.5 million in damages based on a claim of invasion of privacy; and (4) award the same damages based on claims of a conspiracy among the Plaintiffs "to invade privacy, breach fiduciary duties and violate governing statutes."  Counterclaims ¶¶ 6-19.  Further, Hilsenrath alleged that U.S. Wireless failed because of the improper disclosure of his and the company's confidential financial information.

Hilsenrath now seeks to amend his counterclaims to allege additional facts, add Equity Trust and Plaintiffs' counsel, Nixon Peabody LLP[4] and attorney Glenn Westreich, as additional

---

[3]At the time of the underlying lawsuits, Equity Trust was known as Insinger De Beaufort Bank and Trust Company.

[4]At the time of the underlying lawsuit Plaintiffs were represented by Lillick and Charles LLP.  Lillick and Charles has since merged with Nixon Peabody.

counterclaim defendants[5] and to add his wife, Hana Hilsenrath (Hana), as a claimant for some of the counterclaims. Hilsenrath now asserts five claims. First, Hilsenrath asserts a claim for declaratory judgment against Plaintiffs and Equity Trust. He alleges that Plaintiffs have misstated the terms and performance of the settlement agreement and now seeks declaratory judgment regarding the terms of the settlement agreement, "that the only element of the settlement not performed was a payment of $660,000 due from U.S. Wireless to Plaintiff Janvrin Holdings, and that Oliver Hilsenrath himself performed all conditions of the settlement on his part to be performed." Counterclaims at ¶ 52.

Hilsenrath's proposed second claim for relief is for breach of contract against Equity Trust. He alleges that Equity Trust breached its contract with him when it shared his confidential information with Plaintiffs in the underlying case. Therefore, Hilsenrath seeks in damages the value of his U.S. Wireless stock at the time of the breach, $518 million, as well as other damages to be proved at trial.

In the proposed third counterclaim, Hilsenrath and his wife seek to sue all Plaintiffs as well as Equity Trust, Nixon Peabody and Westreich. This claim alleges that the proposed counterclaim defendants conspired to cause Equity Trust to breach its fiduciary duties to the Hilsenraths. They seek the same $518 million damages

---

[5]The proposed amended counterclaims state that the additional counterdefendants are third party defendants. Hilsenrath acknowledges that this is an error and seeks leave to correct the counterclaims before filing if his motion is granted. Therefore, Defendants' arguments against allowing the addition of third parties are not addressed in this order.

United States District Court
For the Northern District of California

1    for this claim.

2        The fourth proposed counterclaim is also alleged on behalf of

3    the Hilsenraths against all of the proposed counterclaim

4    defendants.  This claim alleges that the proposed counterclaim

5    defendants invaded the Hilsenraths' privacy and therefore that the

6    Hilsenraths are entitled to general and exemplary damages.

7        Finally, the Hilsenraths seek to allege that all of the

8    proposed counterclaim defendants engaged in racketeering activities

9    in violation of the United States Racketeer Influenced and Corrupt

10   Organizations Act.  On those grounds, the Hilsenraths seek treble

11   damages and attorneys' fees.

12                          LEGAL STANDARD

13   I.   Rule 15

14       Defendant moves under Rule 15(a) of the Federal Rules of Civil

15   Procedure, which provides that leave of the court allowing a party

16   to amend its pleading "shall be freely given when justice so

17   requires."  Leave to amend lies within the sound discretion of the

18   trial court, which discretion "must be guided by the underlying

19   purpose of Rule 15--to facilitate decisions on the merits rather

20   than on the pleadings or technicalities."  <u>United States v. Webb</u>,

21   655 F.2d 977, 979 (9th Cir. 1981) (citations omitted).  Thus, Rule

22   15's policy of favoring amendments to pleadings should be applied

23   with "extreme liberality."  <u>Id.</u>; <u>DCD Programs, Ltd. v. Leighton</u>,

24   833 F.2d 183, 186 (9th Cir. 1987) (citations omitted).

25       The Supreme Court has identified four factors relevant to

26   whether a motion for leave to amend should be denied: undue delay,

27   bad faith or dilatory motive, futility of amendment, and prejudice

28

                                    8

1    to the opposing party.  See Foman v. Davis, 371 U.S. 178, 182

2    (1962).  The Ninth Circuit holds that these factors are not of

3    equal weight; specifically, delay alone is insufficient ground for

4    denying leave to amend.  See Webb, 655 F.2d at 980.  Further, the

5    "liberality in granting leave to amend is not dependent on whether

6    the amendment will add causes of action or parties."  DCD Programs,

7    833 F.2d at 186.  Rather, the court should consider whether the

8    proposed amendment would cause the opposing party undue prejudice,

9    is sought in bad faith, or constitutes an exercise in futility.

10   See id. (citing Acri v. International Ass'n of Machinists &

11   Aerospace Workers, 781 F.2d 1393, 1398-99 (9th Cir.), cert. denied,

12   479 U.S. 816 (1986); United States v. City of Twin Falls, 806 F.2d

13   862, 876 (9th Cir. 1986), cert. denied, 482 U.S. 914 (1987); Howey

14   v. United States, 481 F.2d 1187, 1190-91 (9th Cir. 1973); Klamath-

15   Lake Pharm. v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th

16   Cir.), cert. denied, 464 U.S. 822 (1983)).

17        "Futility alone can justify the denial of a motion for leave

18   to amend."  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004)

19   (citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)).

20   However, "a proposed amendment is futile only if no set of facts

21   can be proved under the amendment to the pleadings that would

22   constitute a valid and sufficient claim or defense."  Miller v.

23   Rykoff-Sexton, 845 F.2d 209, 214 (9th Cir. 1988) (citing Baker v.

24   Pacific Far East Lines, Inc., 451 F. Supp. 84, 89 (N.D. Cal.

25   1978)).

26        Prejudice typically arises where the opposing party is

27   surprised with new allegations which require more discovery or will

28

9

1    otherwise delay resolution of the case.  See, e.g., Acri, 781 F.2d

2    at 1398-99; Guthrie v. J.C. Penney Co., 803 F.2d 202, 210 (5th Cir.

3    1986).  The party opposing the motion bears the burden of showing

4    prejudice.  See DCD Programs, 833 F.2d at 186; Beeck v. Aquaslide

5    'N' Dive Corp., 562 F.2d 537, 540 (8th Cir. 1977).

6    II.  Addition of Parties

7         Federal Rule of Civil Procedure 13(h) provides, "Persons other

8    that those made parties to the original action may be made parties

9    to a counterclaim or cross-claim in accordance with the provisions

10   of rule 19 and 20."  Hilsenrath moves for permissive joinder

11   pursuant to Rule 20.

12                          DISCUSSION

13   I.   Amendment of the Pleadings

14        Hilsenrath argues that he has only recently discovered the

15   extent to which Equity Trust, Nixon Peabody and Westreich were

16   involved in the conspiracy, which he alleges led to the downfall of

17   U.S. Wireless.  Plaintiffs argue that the amendment should be

18   denied because it is untimely, made in bad faith, futile and

19   prejudicial.  Plaintiffs also argue that joinder of the additional

20   counterdefendants is inappropriate.

21        1.   Timeliness

22        Plaintiffs first argue that Hilsenrath's amendment is

23   untimely, citing the four and a half years between the time the

24   complaint was filed and the original answer and counterclaims were

25   filed and the additional year before Hilsenrath sought leave to

26   amend the answer and counterclaim.  Plaintiffs argue that

27   Hilsenrath must have known about the additional facts that he

28

United States District Court

For the Northern District of California

alleges at the time they occurred and at the time of his original

filing and that the proposed amendments are therefore untimely.

For example, Plaintiffs note that Hilsenrath alleges that he was

coerced to enter into the settlement agreement by their bad acts.

As Plaintiffs point out, one who is being coerced by definition

knows that it is happening.  Further, Plaintiffs note that

Hilsenrath alleged the improper disclosure in his original answer

and counterclaims.  In fact Hilsenrath himself argues that the

proposed counterclaim Defendants are "in essence, already here in

the case," which tends to show that Hilsenrath is not making new

allegations on new discoveries.  Reply at 10.  Equity Trust was

actually mentioned in the original counterclaim, although it was

not named as a counterclaim defendant.

Hilsenrath counters that the Court cannot hold the time

between the filing of the case and his answer against him because

the Court found that he had not been properly served when it set

aside the default against him.  Although the Court does not

consider the delay as evidence of bad faith on Hilsenrath's part,

it does consider the length of time that has passed since the case

was filed in its overall evaluation of the case and the potential

for prejudice to Plaintiffs.

Hilsenrath also argues that the delay between the filing of

his original counterclaims and his attempt to amend those claims

should not be held against him because the case is still in its

earliest stages and discovery has not yet begun.  Further,

Hilsenrath argues that Plaintiffs sought to stay the case after he

first appeared, which he opposed.  However, the Court notes that

For the Northern District of California

1    Plaintiffs' decision to seek a stay of the case and to continue
2    dates in the case was related to criminal charges against
3    Hilsenrath related to his role as CEO of U.S. Wireless.

4        While delay alone is an insufficient ground for denying leave
5    to amend, it is an important factor, particularly when considering
6    prejudice to the opposing party.  See Webb, 655 F.2d at 980.  This
7    factor weighs against granting Hilsenrath leave to file an amended
8    counterclaim.

9        2.    Bad Faith

10       Plaintiffs next argue that Hilsenrath's new allegations must
11   have been made in bad faith because he must have known about the
12   facts underlying those allegations earlier.  This argument is
13   particularly well-taken with respect to Equity Trust.  Hilsenrath
14   himself argues that "Equity Trust is the alter ego of plaintiffs
15   and is, in essence, already here in the case."  Reply at 10.
16   Further Equity Trust is mentioned several times in the
17   counterclaims as presently plead.  See, e.g., Counterclaims at ¶ 1,
18   14, 18.  When he filed his original counterclaims Hilsenrath was
19   already aware that Equity Trust was the entity that held a duty to
20   him and he alleged that Equity Trust had improperly shared his
21   personal confidential information with Plaintiffs.  There is little
22   to explain why Hilsenrath only now seeks to amend his counterclaim
23   to include Equity Trust.  This factor weighs heavily against
24   allowing Hilsenrath to amend his counterclaim to include claims
25   against Equity Trust.

26       Plaintiffs also argue that Hilsenrath's attempt to include
27   Nixon Peabody and Westreich as counterdefendants is evidence of bad
28

For the Northern District of California

1  faith because such joinder would create a conflict that likely

2  would require them to withdraw from representing Plaintiffs.

3  Plaintiffs argue that the claims are unlikely to succeed and

4  therefore the joinder is most likely a ploy to disqualify counsel.

5  As discussed below in the section on futility, there are several

6  potentially meritorious defenses to the claims that Hilsenrath

7  seeks to add.  This suggests bad faith and weighs against granting

8  leave to join those parties but does not weigh against allowing

9  modification of the claims against the existing counterclaim

10 Defendants or the joinder of Hana as a counterclaimant.

11     3.    Futility

12     Plaintiffs argue that Hilsenrath's proposed amendments are

13 futile because the claims are barred by applicable statutes of

14 limitations, statutes, case law, the doctrine of unclean hands and

15 the settlement agreement in the underlying suit.

16     Granting leave to amend is futile where the added claim would

17 be barred by the statute of limitations.  Deutsch v. Turner Corp.,

18 324 F.3d 692, 718 n.20 (9th Cir. 2003).  Plaintiffs argue that the

19 proposed second, third, fourth, and fifth claims for relief are

20 barred by the statute of limitations because Hilsenrath must or

21 should have known of the acts underlying his claims at the time

22 they occurred.  However, Hilsenrath contends that he was unaware of

23 the acts underlying his amended claims until June, 2005.  He argues

24 that the delayed discovery doctrine is applicable to these claims.

25 See Gryczman v. 4550 Pico Partners, Ltd., 107 Cal. App. 4th 1, 5

26 (2003) (noting that the California courts apply the delayed

27 discovery doctrine in cases where "'[t]he injury or the act causing

28

For the Northern District of California

United States District Court

For the Northern District of California

1  the injury, or both, have been difficult for the plaintiff to

2  detect'; 'the defendant has been in a far superior position to

3  comprehend the act and the injury'; and 'the defendant had reason

4  to believe the plaintiff remained ignorant he had been wronged.'")

5  (quoting April Enterprises, Inc. v. KTTV, 147 Cal. App. 3d 805, 831

6  (1983)).  Whether a claimant should have been able to discover the

7  facts giving rise to the claim is a question of fact under

8  California law.  Gryczman, 107 Cal. App. 4th at 7.  Therefore, the

9  statutes of limitation do not preclude the Court from granting

10 leave to amend the complaint.

11      Plaintiffs next argue that the claims are precluded by various

12 statutes.  First, Plaintiffs argue that California Civil Code §

13 1714.10 precludes the claims against Nixon Peabody and Westreich.

14 Under § 1714.10, an individual seeking to sue an attorney "for a

15 civil conspiracy with his or her client arising from any attempt to

16 contest or compromise a claim or dispute, and which is based upon

17 the attorney's representation of the client" must file a petition

18 with the court, demonstrating that there is a reasonable

19 probability that he or she will prevail on those claims.  Cal. Civ.

20 Code § 1714.10(a).  The court must then enter an order allowing the

21 individual to proceed with the claims before the pleading is filed.

22 Id.  Failure to obtain the court order before filing the pleading

23 is considered a defense to the claims.  Cal. Civ. Code

24 § 1714.10(b).

25      Hilsenrath argues that his claims should be excepted from this

26 provision because Nixon Peabody and Westreich breached a duty

27 independent of their relationship with their clients when they

28

14

United States District Court

For the Northern District of California

accessed his private financial information and violated his right to privacy.  In support, Hilsenrath cites <u>Susan S. v. Israels</u>, 55 Cal. App. 4th 1290, 1299-1301 (1997), in which an attorney defending an individual charged with sexual battery served a subpoena on a medical facility to gain access to the victim's mental health records.  The attorney then disseminated the records to the defense team and used them to cross-examine the victim. There, the court held that § 1714.10 was not applicable because the attorney independently breached the victim's right to privacy. Unlike the attorney in <u>Susan S.</u>, Hilsenrath does not allege that Westreich or any representative of Nixon Peabody actively sought out the confidential information at issue.  In fact, Hilsenrath alleges that Equity Trust disclosed that information.  Nor does Hilsenrath allege that Westreich improperly disseminated the information.  The Court finds that § 1714.10 bars Hilsenrath's claims against Nixon Peabody and Westreich.

Plaintiffs next argue that the claims against Nixon Peabody and Westreich should be barred as a strategic lawsuit against public participation (SLAPP) under California Code of Civil Procedure § 425.16, the anti-SLAPP suit provision.  Although § 425.16 protects statements made by an attorney in the course of representing his or her clients in litigation, it only protects those statements that are made "in connection with an issue of public interest."  Cal. Code Civ. P. § 425.16(e).  Plaintiffs have not made a showing that the underlying litigation raised a question of public interest.  <u>Compare</u> <u>Dove Audio v. Rosenfeld</u>, 47 Cal. App. 4th 777, 834 (1996) (holding that "whether money designated for

15

United States District Court
For the Northern District of California

charities was being received by those charities" was a matter of public interest).

Plaintiffs also argue that California Civil Code § 47(b), which creates a privilege for statements made in the course of judicial proceedings precludes all of Hilsenrath's counterclaims and therefore weighs against granting leave to amend.  This statute may bar Hilsenrath's claims.  Leave to amend to join Equity Trust, Nixon Peabody and Westreich is denied on other grounds.  Although § 47(b) may ultimately preclude all of Hilsenrath's counterclaims, that is not sufficiently clear at this time to justify denial of leave to amend the existing counterclaims against Plaintiffs or to join Hana as a counterclaimant.

Plaintiffs' last two futility arguments fail because they rely on Plaintiffs' account of the facts of the case.  First, they argue that Hilsenrath's claims are precluded by the settlement agreement in the underlying case.  In order for this to be true, Hilsenrath would have to have known of the basis for his claims at the time of the settlement agreement.  Further, it is arguable that Hilsenrath's claims based on alleged improper conduct related to the litigation were not covered by the settlement agreement.  Next, Plaintiffs argue that Hilsenrath's claims "are merely derivative of Hilsenrath's own misconduct" and are therefore barred by the doctrine of unclean hands.  This argument requires a factual finding that Hilsenrath acted inappropriately during the underlying litigation.

Plaintiffs' futility argument weighs heavily against granting Hilsenrath leave to amend the complaint to include claims against

16

United States District Court

For the Northern District of California

1    Nixon Peabody and Westreich.

2         4.    Prejudice

3         Plaintiffs' primary claim of prejudice is that joinder of

4    Plaintiffs' attorney and his law firm will create a conflict of

5    interest requiring the firm to withdraw.  Hilsenrath argues that

6    despite being filed in 2002, this case is still in its earliest

7    stages and therefore, this case is unlike those where leave to

8    amend has been denied because the opposing party would not have

9    sufficient time to respond or the amendments would delay a

10   scheduled proceeding.  See, e.g., Zivkovic v. S. Cal. Edison Co.,

11   302 F.3d 1080, 1087 (9th Cir. 2002) (upholding the denial of leave

12   to amend where the amendment would add new claims five days before

13   the end of discovery).

14        Hilsenrath argues that Plaintiffs will not be prejudiced

15   because they will have ample opportunity to seek new counsel.

16   However, this overlooks the reality of this case which was filed in

17   2002 and is based on previous litigation in which Plaintiffs'

18   present counsel represented them.  If Plaintiffs are forced to hire

19   new counsel at this juncture, they will have to pay new counsel to

20   familiarize themselves with the case.  Further, Plaintiffs will

21   have to spend additional time and resources bringing new counsel up

22   to date.

23        The prejudice Plaintiffs will suffer if Nixon Peabody and

24   Westreich are joined as parties weighs heavily against granting

25   leave to amend the counterclaim to include them as parties.

26   However, it does not weigh against the amendment of the

27   counterclaims against Plaintiffs, the amendment to join Equity

28
                                    17

**United States District Court**
For the Northern District of California

1  Trust or the amendment to join Hana as a counterclaimant.

2       5.    Balancing of Factors

3       On balance, the factors weigh against granting leave to amend

4  the counterclaim to include claims against Westreich, Nixon Peabody

5  and Equity Trust.  The factors that weigh against allowing those

6  amendments do not apply to amendment of the claims against

7  Plaintiffs or amendment of the claims to include Hana as a

8  counterclaimant.  Therefore, the Court denies Hilsenrath's motion

9  to file amended counterclaims against additional counterclaim

10  defendants and grants the motion to add information to the existing

11  claims and to add Hana as a counterclaimant

12  II.  Joinder of Additional Parties

13       Hilsenrath further claims that he should be permitted to join

14  Equity Trust, Nixon Peabody and Westreich as counterclaim

15  defendants and Hana as a counterclaimant pursuant to Rule 20(a),

16  citing the permissive nature of the rule.  Rule 20(a) permits the

17  joinder of defendants in an action if "there is asserted against

18  them jointly, severally, or in the alternative, any right to relief

19  in respect of or arising out of the same transaction, occurrence,

20  or series of transactions or occurrences and if any question of law

21  or fact common to all defendants will arise in the action."  Fed.

22  R. Civ. P. 20(a).  Plaintiffs do not contest the joinder of Hana as

23  a counterclaimant and the Court denies leave to amend the

24  counterclaim to the extent it would allow Hilsenrath to join Equity

25  Trust, Nixon Peabody and Westreich.

26

27

28

CONCLUSION

For the foregoing reasons, the Court grants Hilsenrath's motion for leave to amend to the extent it seeks to amend the existing counterclaims and to join Hana as a counterclaimant. However, the Court denies the motion to the extent it seeks to bring claims against Equity Trust, Nixon Peabody and Westreich. (Docket No. 255).  Hilsenrath shall file his answer and amended counterclaims within one week of the date of this order.

IT IS SO ORDERED.

Dated: _____MAR - 5 2007_____        _____

CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California

19

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

JANVRIN HOLDINGS LIMITED et al,

        Plaintiff,

    v.

HILSENRATH et al,

        Defendant.

_____/

Case Number: CV02-01068 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 5, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Glenn Edward Westreich M
Nixon Peabody LLP
Two Embarcadero Center
Suite 2700
San Francisco,  CA 94111-3996

Julia D. Greer
Coblentz, Patch, Duffy & Bass
One Ferry Building, Suite 200
San Francisco, CA 94111-4213

Oliver  Hilsenrath
822 Eastbrook Court
Danville,  CA 94506

Dated: March 5, 2007

                    Richard W. Wicking, Clerk
                    By: Sheilah Cahill, Deputy Clerk