IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA HILSENRATH and OLIVER HILSENRATH,<br><br>             Plaintiffs,<br><br>     v.<br><br>EQUITY TRUST (JERSEY) LIMITED, et al.,<br><br>             Defendants.<br>_____/ | No. C 07-3312 CW<br><br>ORDER DENYING PLAINTIFFS' MOTION TO DISQUALIFY LATHAM & WATKINS |

On August 8, 2007, pro se Plaintiffs Hana and Oliver Hilsenrath filed a motion to disqualify the law firm of Latham & Watkins from representing Defendant Equity Trust (Jersey) Limited. On September 5, 2007, the Court entered an order instructing Plaintiffs to file evidence in support of their motion and Equity Trust to file a response to Plaintiffs' motion. In addition, Plaintiffs were permitted to file a reply. The matter was submitted on the papers. Having considered all of the papers filed by the parties, the Court denies Plaintiffs' motion.

BACKGROUND

Plaintiffs argue that Latham & Watkins should be disqualified from representing Equity Trust because it represented Plaintiff Oliver Hilsenrath (Hilsenrath) and U.S. Wireless, the company he founded, between 1999 and 2001. In particular, Plaintiffs submit evidence that Latham & Watkins provided U.S. Wireless with an opinion of counsel related to the company's first financing transaction in 2000 and that, on May 22, 2000, Latham & Watkins filed a complaint on behalf of U.S. Wireless in Contra Costa County Superior Court.

Plaintiffs allege that, at the time Latham & Watkins represented U.S. Wireless and Hilsenrath, the public offering that was the subject of the first financing transaction was disrupted by Equity Trust.[1] Further, Plaintiffs allege that Hilsenrath, "assisted by" Latham & Watkins, "made unsuccessful efforts to contain the damage." Supplemental Filing in Support of Motion to Disqualify (Supplemental Filing) at 3.

The May 22, 2000 complaint filed by Latham & Watkins on U.S. Wireless's behalf alleged claims for breach of contract, rescission of contract based on failure of consideration and fraud, and declaratory relief against Crossgar, Ltd., Ryburn, Ltd. and two individual defendants, David Dahan and Haim Haruvi. The complaint alleged that, in January, 1997, U.S. Wireless hired Dahan and Haruvi through Crossgar and Ryburn to provide consulting services, but that Dahan and Haruvi were not properly licensed to act as

---

[1] At that time, Equity Trust was known as Jardine Matheson.

securities investment advisors in Israel and were therefore convicted of violating Israeli securities laws. The complaint alleged that U.S. Wireless gave Dahan and Haruvi significant stock options in consideration for their services, but that none of the defendants ever provided any services.

Defendant Equity Trust provides evidence that the May 22, 2000 complaint was never served on any defendant. Latham & Watkins filed an amended complaint on U.S. Wireless's behalf on June 16, 2000, asserting the same causes of action as the May 22, 2000 complaint as well as two additional causes of action for fraud and unjust enrichment on behalf of Hilsenrath against Dahan, Haruvi and two additional defendants, Janvrin Holdings, Ltd. and Pelican Securities & Investments, Ltd. The new allegations were based on investment advice and services Dahan and Haruvi provided to Hilsenrath in 1996. Defendant Equity Trust provides evidence that the June 16, 2000 complaint was also not served on any defendant.

On June 30, 2000, Janvrin, Ryburn and Crossgar each filed a lawsuit against U.S. Wireless, Hilsenrath and U.S. Wireless General Counsel David Klarman in the Northern District of California. <u>Janvrin Holdings v. U.S. Wireless, et al.</u>, C 00-2334; <u>Crossgar Ltd. v. U.S. Wireless, et al.</u>, C 00-2336; <u>Ryburn Ltd. v. U.S. Wireless, et al.</u>, C 00-2346. These suits alleged that the defendants failed to pay Janvrin, Ryburn and Crossgar for consulting services that they had performed. Latham & Watkins was not retained to represent U.S. Wireless, Hilsenrath or Klarman in the federal litigation.

According to its billing records, Latham & Watkins filed a request for dismissal of the Contra Costa County amended complaint

3

on October 26, 2000, which was the last action Latham & Watkins took on the matter. Represented by other firms, U.S. Wireless filed against Janvrin, Ryburn and Crossgar counter-claims in their federal cases containing allegations and claims substantially similar to those in the complaints drafted by Latham & Watkins. The parties negotiated a settlement in June, 2001, requiring U.S. Wireless, Hilsenrath and Klarman to pay $1.5 million and to issue Crossgar, Ryburn and Janvrin over 2 million shares of registrable common stock in U.S. Wireless.

On March 5, 2002, Janvrin, Ryburn and Crossgar again filed suit in the Northern District of California, alleging that they were fraudulently induced to enter into the settlement agreement. <u>Janvrin, et al. v. Hilsenrath, et al.</u>, C 02-1068. At the time the lawsuit was filed, Hilsenrath was living in Israel. By late 2004, the claims had been dismissed against all defendants except Hilsenrath. Hilsenrath filed his answer and counterclaims in October, 2005. His original counterclaims alleged that Janvrin, Ryburn and Crossgar improperly accessed his confidential personal financial information, "engaged in various tactics in the [underlying] lawsuit, and made various threats to US Wireless personnel to induce settlement, all of which led to execution of the settlement agreement."

Hilsenrath further alleged that Janvrin, Ryburn and Crossgar were able to access his personal information because Equity Trust[2],

---

[2] At the time of the state court lawsuit and the 2000 federal litigation, Equity Trust was known as Insinger De Beaufort Bank and Trust Company.

4

which acted as his fiduciary, also acted as fiduciary to Janvrin, Ryburn and Crossgar, managing the investments and financial affairs of each.  Further, Hilsenrath alleged that Equity Trust had a conflict of interest when, in November, 2000, it attended a meeting with Janvrin, Ryburn, Crossgar, discussed the underlying lawsuit and improperly disclosed his personal information.  Hilsenrath alleged that he entered into the settlement agreement due to threats and economic duress based on the improper use of his personal financial information.  Therefore, Hilsenrath asked the Court to (1) declare the settlement agreement rescinded; (2) impose a constructive trust on all of the property involved in the settlement; (3) award him $26.5 million in damages for invasion of privacy; and (4) award the same damages for a conspiracy among Janvrin, Ryburn and Crossgar "to invade privacy, breach fiduciary duties and violate governing statutes."  Further, Hilsenrath alleged that U.S. Wireless failed because of the improper disclosure of his and the company's confidential financial information.

In November, 2006, Hilsenrath sought leave to amend his counterclaims to allege additional facts and add Equity Trust and Janvrin, Ryburn and Crossgar's counsel, Nixon Peabody LLP[3] and attorney Glenn Westreich, as additional counterclaim defendants and to add his wife, Hana Hilsenrath (Hana), as a claimant for some of the counterclaims.  In the proposed amended counterclaims,

---

[3] At the time of the 2000 federal litigation Janvrin, Ryburn and Crossgar were represented by Lillick and Charles LLP.  Lillick and Charles has since merged with Nixon Peabody.

5

1  Hilsenrath asserted a claim for declaratory judgment against
2  Janvrin, Ryburn, Crossgar and Equity Trust.  He alleged that
3  Janvrin, Ryburn and Crossgar had misstated the terms and
4  performance of the settlement agreement, and sought declaratory
5  judgment regarding the terms of the settlement agreement, "that the
6  only element of the settlement not performed was a payment of
7  $660,000 due from U.S. Wireless to Plaintiff Janvrin Holdings, and
8  that Oliver Hilsenrath himself performed all conditions of the
9  settlement on his part to be performed."
10      Hilsenrath's proposed second counter-claim for relief was for
11 breach of contract against Equity Trust.  He alleged that Equity
12 Trust breached its contract with him when it shared his
13 confidential information with Janvrin, Ryburn and Crossgar while
14 the 2000 federal litigation was pending.  In the proposed third
15 counterclaim, Hilsenrath and his wife sought to sue Janvrin, Ryburn
16 and Crossgar as well as Equity Trust, Nixon Peabody and Westreich.
17 This claim alleged that the proposed counterclaim defendants
18 conspired to cause Equity Trust to breach its fiduciary duties to
19 the Hilsenraths.  The fourth proposed counterclaim was also alleged
20 on behalf of the Hilsenraths against all of the proposed
21 counterclaim defendants.  This claim alleged that the proposed
22 counterclaim defendants invaded the Hilsenraths' privacy.
23 Finally, the Hilsenraths sought to allege that all of the proposed
24 counterclaim defendants engaged in racketeering activities in
25 violation of the United States Racketeer Influenced and Corrupt
26 Organizations Act.
27      Counsel for Janvrin, Ryburn and Crossgar filed an opposition
28                                      6

and appeared at the hearing on Hilsenrath's motion but stated a belief that Janvrin, Ryburn and Crossgar had been dissolved. The Court granted Hilsenrath leave to amend his existing counterclaims against Janvrin, Ryburn and Crossgar and to join Hana as a counterclaimant, but denied him leave to join the additional counterclaim defendants, Equity Trust, Nixon Peabody and Westreich.

After giving Janvrin, Ryburn and Crossgar an additional opportunity to state their intent to proceed with the case, the Court dismissed their claims and entered default judgment against them on March 12, 2007. On May 18, 2007 a Magistrate Judge filed his report and recommendation for default judgment in favor of the Hilsenraths based on their counterclaims. On July 26, 2007, the Court adopted the report and recommendation in part and entered default judgment in favor of the Hilsenraths.

On June 25, 2007, the Hilsenraths filed this lawsuit, bringing multiple claims against Defendants Equity Trust, Candover Investments PLC, Insinger de Beaufort SA, Jardine Matheson Holdings Limited, Philip Joseph Austin, Grant Brown, Melvyn Kalman, John Perkins and Caroline Bougeard. The Hilsenraths assert that these Defendants were ultimately responsible for the wrongs that they alleged in the 2002 case that Janvrin, Ryburn and Crossgar committed against them.

## LEGAL STANDARD

Civil Local Rule 11-4 provides, "Every member of the bar of this court and any attorney permitted to practice in this court under Civil L.R. 11 must be familiar with and comply with the standards of professional conduct required of members of the State

7

Bar of California." Civil Local Rule 11-4(a)(1). The California Standards of Professional Conduct include the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto. See Civil L. R. 11-4 Commentary.

"Motions to disqualify counsel are strongly disfavored." Visa U.S.A., Inc. v. First Data Corp., 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003). "Because of th[e] potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." Optyl Eyewear Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotations omitted).

DISCUSSION

Under the California Rules of Professional Conduct,

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of representation of the client or former client, the member has obtained confidential information material to the employment.

Cal. R. Prof. Conduct 3-310(E). Therefore, "[a] former client may seek to disqualify a former attorney from representing an adverse party by showing the former attorney actually possesses confidential information adverse to the former client." H.F. Ahmanson & Co. v. Salomon Bros., 229 Cal. App. 3d 1445, 1452 (1991).

As discussed above, the Hilsenraths seek to disqualify Latham & Watkins on two grounds: Latham & Watkins provided advice to U.S. Wireless related to its First Financing Transaction and filed the

8

2000 Contra Costa County complaints on behalf of U.S. Wireless.[4]

I.   Advice to U.S. Wireless

According to its billing records, Latham & Watkins represented U.S. Wireless from February 3, 2000 through October 20, 2000 in relation to its First Financing Transaction.[5]  See Olgoza Decl., Ex. A.  As Defendants note, Latham & Watkins represented only U.S. Wireless in this transaction.  "Before an attorney may be disqualified from representing a party in litigation because his representation of that party is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is 'represented' by the attorney in a manner giving rise to an attorney-client relationship." Civil Serv. Com. v. Super. Ct., 163 Cal. App. 3d 70, 76-77 (1984) (internal citations omitted).  Under California Rule of Professional Conduct 3-600, when an attorney represents an organization, he or she "shall conform his or her

---

[4] The Hilsenraths also argue that Latham & Watkins continued to represent U.S. Wireless and Hilsenrath in the months leading to May, 2001, when U.S. Wireless's board fired Hilsenrath.  However, the unauthenticated and undated document filed in support of that assertion states only that U.S. Wireless had outstanding legal bills payable to Latham & Watkins.  Supplemental Filing, Ex. 3. The Court notes that the amounts listed on this document are identical to the Latham & Watkins invoices for services rendered through October 31, 2000.  Olgoza Decl, Exs. A & B.

[5] Latham & Watkins also acknowledges that it opened a "general representation" file for U.S. Wireless at the same time as the "first financing" file.  According to the declaration of a Latham & Watkins partner, the invoices for that file contained 4.7 hours of work billed to either the first financing matter or the Contra Costa County litigation discussed above, and an additional 6.9 hours of work billed to an unrelated matter described as "advice re: D&O insurance premium dispute."  Olgoza Declaration ¶ 6.  The declaration does not attach the invoices or further describe the work done.

representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement."

Plaintiffs have presented no evidence that an attorney-client relationship was formed between Latham & Watkins and Hilsenrath in relation to the first financing transaction. Further, even if such a relationship had been formed, Plaintiffs have not demonstrated that Latham & Watkins obtained any confidential information relevant to this case when doing that work. Plaintiffs allege that Latham & Watkins' work related to U.S. Wireless's first financing transaction "was the result of ongoing diligence on all corporate records including the company's disputes and related legal liabilities." Supplemental Filing at 2. However, the document produced by Latham & Watkins states only that its inquiry was based on documents it "deemed necessary or appropriate for purposes of this opinion." Supplemental Filing, Exhibit 5 at 2. There is nothing to support a finding that Latham & Watkins reviewed any of the Hilsenraths' confidential information material to the current litigation.

II. Contra Costa County Litigation

The Hilsenraths allege that Latham & Watkins "was provided by Hilsenrath and US Wireless Corporation with all relevant documentation related to the dispute with Janvrin, Ryburn and Crossgar by means of express mail and electronic mail" in connection with the Contra Costa County litigation. Motion at 3. The Court provided the Hilsenraths with an opportunity to supplement their motion with evidence to support their allegations.

10

1  However, their supplemental filing does not cure the defect.
2  Without evidentiary support, Plaintiffs allege that "defendants
3  tapped illegally into thousands of privileged documents and
4  privileged attorneys' notes" when they hired Latham & Watkins.
5  Supplemental Filing at 3.  The Court finds that Plaintiffs have not
6  proved that Latham & Watkins is or was in possession of their
7  confidential information.
8  　　　　In some cases, "actual possession of confidential information
9  need not be proved in order to disqualify the former attorney."
10 H.F. Ahmanson, 229 Cal. App. 3d at 1452.  Instead, the moving party
11 must "show a 'substantial relationship' between the former and
12 current representation."  Id.  In such cases,

> the attorney's possession of confidential information
> will be presumed only when a substantial relationship
> has been shown to exist between the former
> representation and the current representation, and when
> it appears by virtue of the nature of the former
> representation or the relationship of the attorney to
> his former client confidential information material to
> the current dispute would normally have been imparted
> to the attorney.

18 Id. at 1454 (internal quotations omitted).
19 　　　　"Whether a substantial relationship between the two
20 representations exists depends on three factors: the similarities
21 between the two factual situations, the legal questions posed, and
22 the nature and extent of the attorney's involvement in the case."
23 San Gabriel Basin Water Quality Auth. v. Aerojet-General Corp., 105
24 F. Supp. 2d 1095, 1104 (C.D. Cal. 2000).
25 　　　　A.   Factual Situations
26 　　　　According to the complaint filed by Latham & Watkins on behalf
27 of Hilsenrath and U.S. Wireless, Hilsenrath was introduced to Dahan

11

and Haruvi in May, 1996, when he began looking for investment advisors to help him raise capital for his new business venture, which would ultimately become U.S. Wireless.  Lindstrom Decl., Ex. B ¶ 14.  The complaint alleged that Janvrin, Ryburn and Crossgar were "shells, instrumentalities and conduits through which [Haruvi and Dahan] carried on their business affairs."  Id. at ¶ 9.  Hilsenrath paid Dahan and Haruvi in cash and stock in one of his ventures, which would become U.S. Wireless.  Id. at ¶ 18.  At Dahan and Haruvi's request, these assets were paid to Ryburn and Crossgar.

In January, 1997, U.S. Wireless executed written agreements with Ryburn and Crossgar for consulting services.  It was the breach of these written agreements as well as alleged fraud in the inducement of Hilsenrath's original payment of cash and stock to Dahan and Haruvi that formed the basis for the Contra Costa County litigation.

The current litigation is distantly related to these underlying agreements because the current claims are based on the Hilsenraths' allegations that Equity Trust improperly shared the Hilsenraths' confidential personal information in the eventual settlement of a later lawsuit based on those underlying agreements.  However, Equity Trust was never a party to the Contra Costa County litigation, the original federal litigation or the 2002 lawsuit based on the settlement of the original federal litigation.  Further, the main acts at issue in the current case occurred in November, 2000, after the last activity recorded on Latham & Watkins' billing records.  See First Amended Complaint ¶¶ 58-86.

12

B.  Legal Questions Posed

Hilsenrath's claims in the Contra Costa County litigation were based on claims that Dahan and Haruvi: (1) were not properly licensed under Israeli law to provide investment advice, (2) did not provide the contracted services, (3) acted in a manner allowing Hilsenrath to rescind his agreement with him, and (4) committed fraud, justifying a constructive trust on assets given to them as consideration for the contract.

In contrast, the Hilsenraths' current claims allege conspiracy, blackmail, invasion of privacy, malicious prosecution, destruction of documents and RICO violations based on the federal litigation related to Hilsenrath's contracts with Dahan and Haruvi.

C.  Nature and Extent of Involvement

According to its billing records, Latham & Watkins worked on the Contra Costa County litigation from February 9, 2000 through October 26, 2000.  Olgoza Decl., Ex. B.  These invoices indicate that U.S. Wireless is the client and are directed to the attention of Klarman.  Id.  Although the Contra Costa County litigation was not officially dismissed until October, 2000, the invoices indicate that an attorney drafted an email regarding closing the matter and sent the files to the file room on August 16, 2000.  Id.

The vast majority of the work done on the Contra Costa County litigation was performed before the initial complaint was filed and therefore before Latham & Watkins formed any attorney-client relationship with Hilsenrath.

The Court finds that there is not a substantial relationship between Latham & Watkins' earlier representation of Hilsenrath and

13

the Hilsenraths' current claims.  Further, the Hilsenraths have not established that Latham & Watkins has obtained any of their confidential information that would be material to its representation of Equity Trust.  Therefore, the Hilsenraths' motion to disqualify Latham & Watkins from representing Equity Trust in this matter is denied (Docket No. 44).

  IT IS SO ORDERED.

Dated: _____3/17/08_____   _____
                CLAUDIA WILKEN
                United States District Judge