**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HANA HILSENRATH and OLIVER
HILSENRATH,

       Plaintiffs,

  v.

EQUITY TRUST (JERSEY) LIMITED,
CANDOVER INVESTMENTS PLC, INSINGER DE
BEAUFORT HOLDINGS SA, JARDINE
MATHESON HOLDINGS LIMITED, PHILIP
JOSEPH AUSTIN, GRANT BROWN, MELVYN
KALMAN, JOHN PERKINS and CAROLINE
BOUGEARD,

       Defendants.

_____/

No. C 07-3312 CW

ORDER GRANTING
DEFENDANTS' MOTIONS
TO DISMISS WITHOUT
LEAVE TO AMEND AND
WITHOUT PREJUDICE

    Defendants Equity Trust (Jersey) Limited, Candover Investments PLC, Insinger de Beaufort Holdings SA (IBH), Jardine Matheson Holdings Limited, Phillip Austin, Grant Brown, Melvyn Kalman, John Perkins and Caroline Bougeard move to dismiss the complaint.[1] Plaintiffs Hana and Oliver Hilsenrath oppose the motions. The motions were submitted on the papers. Having considered the parties' papers, the Court grants Defendants' motions to dismiss without leave to amend and without prejudice to refiling the

---

[1] Each Defendant moved separately except for Brown and Bougeard and Kalman and Perkins who filed joint motions.

United States District Court
For the Northern District of California

1  appropriate jurisdiction or jurisdictions.

2                              BACKGROUND

3       Plaintiffs filed this case on June 25, 2007, alleging various

4  claims based on a lawsuit entitled <u>Janvrin Holdings Limited et al</u>

5  <u>v. Hilsenrath et al</u>, No. C 02-1068 (2002 suit), brought against

6  them in 2002 by entities not party to this case.  At issue in that

7  suit was the propriety of the settlement agreement reached in an

8  earlier suit between the same parties.[2]  The Hilsenraths had filed

9  counterclaims against the plaintiffs in that suit, claiming that

10 they improperly accessed the Hilsenraths' confidential personal

11 information prior to the settlement of the earlier suit.  The

12 Hilsenraths further alleged that Equity Trust provided the

13 confidential information to those plaintiffs, but the Hilsenraths

14 did not include Equity Trust as a counter-claim defendant.[3]  The

15 Hilsenraths now allege that Defendant Equity Trust brought the 2002

16 suit "by means of Janvrin et al" and that it breached its fiduciary

17 duty to the Hilsenraths by disclosing their confidential

18 information.  FAC ¶ 68.  This fiduciary duty was allegedly based on

19 company management agreements (CMAs) Equity Trust entered into with

20 Plaintiffs.  It is undisputed that none of the current Defendants

21 were party to the 2002 suit or to the earlier settlement.

22      According to the present complaint, the other Defendants are

23

24      [2]For a complete history of the prior litigation underlying the
   current case, see the Court's concurrently filed order denying
25 Plaintiffs' motion to disqualify Latham & Watkins from representing
   Equity Trust.
26

27      [3]A later motion to join Equity Trust as a counter-claim
   defendant in the 2002 suit was denied.

28                                  2

entities that created Equity Trust or controlled it and individuals who were executives of Equity Trust and Janvrin.  FAC ¶¶ 14-23. Each Defendant now moves to dismiss the complaint on various bases, including jurisdictional grounds, improper venue, <u>forum non conveniens</u>, failure to state a claim and defective service.

DISCUSSION

Because Defendants move to dismiss the case on individual jurisdictional bases, each motion is discussed separately below.

I.    Candover Investments

Candover Investments moves to dismiss based on lack of personal jurisdiction.  Under Federal Rule of Civil Procedure Rule 12(b)(2), when a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists.  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004).  The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995); <u>Fields v. Sedgwick Assoc. Risks, Ltd.</u>, 796 F.2d 299, 301 (9th Cir. 1986).  Uncontroverted allegations in the complaint must be taken as true.  <u>AT&T v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996).  However, the court may not assume the truth of such allegations if they are contradicted by affidavit.  <u>Data Disc, Inc. v. Systems Technology Associates, Inc.</u>, 557 F.2d 1280, 1284 (9th Cir. 1977).  Conflicts in the evidence must be resolved in the plaintiff's favor.  <u>AT&T</u>, 94 F.3d at 588.

There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the

United States District Court
For the Northern District of California

3

United States District Court
For the Northern District of California

1  applicable state personal jurisdiction rule and constitutional

2  principles of due process.  Sher v. Johnson, 911 F.2d 1357, 1361

3  (9th Cir. 1990); Data Disc, Inc, 557 F.2d at 1286.  California's

4  jurisdictional statute is co-extensive with federal due process

5  requirements; therefore, jurisdictional inquiries under state law

6  and federal due process standards merge into one analysis.  Rano v.

7  Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993).

8      The exercise of jurisdiction over a non-resident defendant

9  violates the protections created by the due process clause unless

10  the defendant has "minimum contacts" with the forum State so that

11  the exercise of jurisdiction "does not offend traditional notions

12  of fair play and substantial justice."  International Shoe Co. v.

13  Washington, 326 U.S. 310, 316 (1945).

14      Personal jurisdiction may be either general or specific.

15  General jurisdiction exists where the defendant's contacts with the

16  forum State are so substantial or continuous and systematic that

17  jurisdiction exists even if the cause of action is unrelated to

18  those contacts.  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,

19  223 F.3d 1082, 1086 (9th Cir. 2000).  The standard for establishing

20  general jurisdiction is "fairly high."  Id.; Brand v. Menlove

21  Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986).  The defendant's

22  contacts must approximate physical presence in the forum State.

23  Schwarzenegger, 374 F.3d at 801.  Factors considered in evaluating

24  the extent of contacts include whether the defendant makes sales,

25  solicits or engages in business, designates an agent for service of

26  process, holds a license, or is incorporated in the forum State.

27  Bancroft & Masters, Inc., 223 F.3d at 1086.

28                                    4

Specific jurisdiction exists where the cause of action arises out of or relates to the defendant's activities within the forum. <u>Data Disc, Inc</u>, 557 F.2d at 1286. Specific jurisdiction is analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. <u>Lake v. Lake</u>, 817 F.2d 1416, 1421 (9th Cir. 1987). Each of these conditions is required for asserting jurisdiction. <u>Insurance Co. of N. Am. v. Marina Salina Cruz</u>, 649 F.2d 1266, 1270 (9th Cir. 1981).

A showing that a defendant "purposefully availed" itself of the privilege of doing business in a forum State typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. <u>Schwarzenegger</u>, 374 F.3d at 802. The requirement of purposeful availment ensures that the defendant should reasonably anticipate being haled into the state court of the forum based on its contacts. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). The purposeful availment test is met where "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." <u>Ballard</u>, 65 F.3d at 1498.

A showing that a defendant "purposefully directed" its conduct

1  toward a forum State "usually consists of evidence of the

2  defendant's actions outside the forum state that are directed at

3  the forum, such as the distribution in the forum state of goods

4  originating elsewhere." Schwarzenegger, 374 F.3d at 803.

5  Purposeful direction may be established under the "effects test"

6  where the defendant (1) committed an intentional act, (2) expressly

7  aimed at the forum State, (3) causing harm that the defendant knows

8  is likely to be suffered in the forum State. Dole Food Co. v.

9  Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

10      The second factor requires that the claim arise out of or

11  result from the defendant's forum-related activities.  A claim

12  arises out of a defendant's conduct if the claim would not have

13  arisen "but for" the defendant's forum-related contacts.

14  Panavision Int'l v. L.P.v. Toeppa, 141 F.3d 1316, 1322 (9th Cir.

15  1998).

16      Once the plaintiff has satisfied the first two factors, the

17  defendant bears the burden of overcoming a presumption that

18  jurisdiction is reasonable by presenting a compelling case that

19  specific jurisdiction would be unreasonable.  Burger King Corp. v.

20  Rudzewicz, 471 U.S. 462, 472-73 (1985); Haisten v. Grass Valley

21  Medical Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).  Seven

22  factors are considered in assessing whether the exercise of

23  jurisdiction over a non-resident defendant is reasonable: (1) the

24  extent of the defendant's purposeful interjection into the forum

25  State's affairs, (2) the burden on the defendant, (3) conflicts of

26  law between the forum State and the defendant's home jurisdiction,

27  (4) the forum State's interest in adjudicating the dispute, (5) the

28

6

1  most efficient judicial resolution of the dispute, (6) the

2  plaintiff's interest in convenient and effective relief, and

3  (7) the existence of an alternative forum.  Caruth v. International

4  Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995); Roth v.

5  Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).

6      A.   General Jurisdiction

7      According to the declaration of Company Secretary Andrew

8  Moberly, Candover Investments PLC is a British holding company that

9  organizes and invests in large European buyouts.  Moberly Decl.

10 ¶ 2.  Its principal place of business is in the United Kingdom and

11 it does not maintain an office, mailing address, bank account or

12 employees in California.  Id. at ¶¶ 2, 6.  Candover is not

13 registered or licensed to do business in California; nor does it

14 solicit or conduct business in the State.  Id. at ¶¶ 4, 5.

15     Nonetheless, Plaintiffs argue that general jurisdiction exists

16 over Candover because it invests in various American companies,

17 alleging that Candover owns and controls those companies.  Only one

18 of those companies, Lombard Investments, Inc., is a California

19 corporation.[4]  However, as Candover notes, "engaging in commerce

20 _____

21     [4]Plaintiffs also argue that each Defendant should be subject
   to nation-wide jurisdiction pursuant to Federal Rule of Civil
22 Procedure 4(k)(2).  However, Rule 4(k)(2) only allows nation-wide
   jurisdiction when "the exercise of jurisdiction is consistent with
23 the Constitution and laws of the United States."  Fed. R. Civ. P.
   4(k)(2).  Plaintiffs have not established that subjecting
24 Defendants to personal jurisdiction in the United States would be
   consistent with the Constitution.
25     Similarly, Plaintiffs' second argument -- that Candover and
   IBH's participation in commercial banking in the United States is
26 sufficient to establish nation-wide federal jurisdiction --
   misinterprets the case on which it relies.  That case holds only
27 that a foreign state can be subject to jurisdiction in U.S. courts
   under the Foreign Sovereign Immunities Act based on the "commercial

28                                    7

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." <u>Bancroft & Masters</u>, 223 F.3d at 1086.  Further, even taking as true Plaintiffs' allegation that Candover owns the American companies in which it invests, "[t]he existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 925 (9th Cir. 2001).

Candover does not have sufficient contacts with California to establish general jurisdiction over it.[5]

B.    Specific Jurisdiction

In support of their argument that the Court should exercise specific jurisdiction over Candover, the Hilsenraths state only that it "acted as the <u>de facto</u> management" of Equity Trust.  The Hilsenraths submit a variety of unauthenticated documents to support this allegation.  However, even taking those documents as true, and assuming for purpose of argument that the Court has

activities" exception when it participates in commercial banking. See <u>First City, Texas-Houston, N.A. v. Rafidain Bank</u>, 281 F.3d 48, 53 (2d. Cir. 2001).

[5]Plaintiffs also cite <u>Mackey v. Compass Mktg.</u>,391 Md. 117 (2006), in support of their argument that each of the Defendants is subject to jurisdiction in this Court because they are co-conspirators with Janvrin, which committed overt acts in this State during the underlying litigation.  However, the Ninth Circuit has not adopted a conspiracy theory of personal jurisdiction, and district courts within the Ninth Circuit have rejected it.  <u>See, e.g.</u>, <u>Kipperman v. McCone</u>, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976) ("[P]ersonal jurisdiction over any non-resident individual must be premised upon forum-related acts personally committed by the individual.  Imputed conduct is a connection too tenuous to warrant the exercise of personal jurisdiction.").

8

**United States District Court**
For the Northern District of California

personal jurisdiction over Equity Trust, there is insufficient evidence to establish that Candover operated as the alter ego of Equity Trust. "[A] parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's investor status.'" Id. at 926 (quoting United States v. Bestfoods, 524 U.S. 51, 71 (1998)). Although the documents cited by the Hilsenraths state that Candover and the management of the companies it buys "act as partners to build long-term value for these businesses," Hilsenrath Decl., Ex. 21, this does not establish that Candover maintained "control of the subsidiar[ies'] internal affairs or daily operations" as required for alter ego status. Doe, 248 F.3d at 926.

The Court grants Candover's motion to dismiss for lack of personal jurisdiction.

II.    Jardine Matheson Holdings Limited

Jardine moves to dismiss the complaint against it for lack of personal jurisdiction and for failure effectively to serve it.

A.    General Jurisdiction

According to company secretary Charles Wilken, Jardine is a Bermuda company that has never conducted business or had property, bank accounts, assets, offices, officers, directors, agents or employees in California. Wilken Decl. ¶¶ 3, 4. As with Candover, Plaintiffs allege that the Court has general jurisdiction over Jardine because it is the "owner" of various companies that do business in the United States. However, Wilken declares that Jardine has no involvement in the day-to-day operations of the

9

1  companies Plaintiffs cite.  Wilken Reply Decl, ¶¶ 3-6.  Jardine

2  does not have sufficient contacts with California to support

3  general jurisdiction over it.

4      B.   Specific Jurisdiction

5      Plaintiffs argue that "Janvrin, Crossgar and Ryburn were owned

6  and operated by Jardine Matheson" during 2000.  Opposition at 16.

7  However, the unauthenticated document they cite in support of this

8  argument shows only that a company called C N Limited held one

9  share in Ryburn in trust for the Matheson Trust Company (Jersey)

10  Limited.  Hilsenrath Decl., Ex. 7.  This share was worth $1.00.

11  Id.  Even assuming that Matheson Trust Company is the same as

12  Jardine Matheson, that Matheson Trust company had one share held in

13  trust for it is insufficient to establish that it owned and

14  operated Ryburn.  Further, Wilken declares that "Jardine has never

15  owned or operated Janvrin, Ryburn, or Crossgar."  Wilken Reply

16  Decl. ¶ 2.

17      Plaintiffs also argue, "Under Jardine Matheson they negotiated

18  the original securities of Janvrin et al. [sic]."  Opposition at

19  16.  Neither of the unauthenticated documents cited in support of

20  this argument mentions Janvrin, Ryburn or Crossgar.

21      The Court grants Jardine's motion to dismiss for lack of

22  personal jurisdiction.  Because the Court finds that it does not

23  have jurisdiction over Janvrin, it need not reach the argument that

24  Plaintiffs failed properly to serve Jardine.

25  III. Insinger de Beaufort Holdings S.A.

26      IBH moves to dismiss the complaint against it for lack of

27  personal jurisdiction and for failure effectively to serve it.

28                          10

United States District Court
For the Northern District of California

A.   General Jurisdiction

According to Chief Financial Officer Robert Mooij, IBH is a holding company with its principal place of business in Luxembourg. Mooij Decl. ¶ 2.  IBH is not licensed or registered to do business in California and has no offices, property, bank accounts, employees or officers in California.  Id. at ¶ 3-5.  IBH does not advertise in California and does not have any contracts with California companies.  Id. at ¶ 6.  Plaintiffs argue that the Court has general jurisdiction over IBH because it is "an intensive player in the US federal legal system."  Opposition at 26. However, each of the unauthenticated documents cited in support of this argument concern various IBH subsidiaries' contacts with the State of New York and the United States in general.  Mooij declares that IBH "does not manage the affairs of its subsidiaries or investments," Mooij Decl. ¶ 1, and Plaintiffs do not provide any evidence that it does.

B.   Specific Jurisdiction

Plaintiffs argue that "in the 2001/2 time frame [Janvrin, Crossgar and Ryburn] were operated and owned by Insinger de Beaufort."  Opposition at 16.  In support of this argument, the Hilsenraths submit documents indicating that the director of Insinger de Beaufort in Jersey approved the settlement at issue in the 2002 suit and participated in the meeting in London at which Equity Trust allegedly improperly disclosed Plaintiffs' confidential personal information.  Hilsenrath Decl., Exs. 41, 44. Even assuming that these documents are sufficient to establish jurisdiction over Insinger de Beaufort in Jersey, Plaintiffs have

11

United States District Court
For the Northern District of California

1  not established that IBH is involved in the day-to-day operations

2  of Insinger de Beaufort in Jersey.   Therefore, there is no basis on

3  which to exercise specific jurisdiction over IBH.

4       Because the Court grants IBH's motion to dismiss for lack of

5  personal jurisdiction, it need not address the alternate ground for

6  dismissal based on failure properly to serve IBH.

7  IV.  Equity Trust, Kalman, Perkins, Bougeard, Brown and Austin

8       The remaining Defendants are Equity Trust and former and

9  current Equity Trust employees and officers (collectively, the

10 Equity Trust Defendants).   Equity Trust is a Jersey company and the

11 individuals are Jersey residents.   The Equity Trust Defendants each

12 move to dismiss the complaint based on improper venue, lack of

13 personal jurisdiction, defective service and the doctrine of <u>forum</u>

14 <u>non conveniens</u>.   In addition, the individuals argue that Plaintiffs

15 have failed to state a claim against each of them.

16      Although personal jurisdiction is generally a threshold issue

17 to be determined before any other consideration of a case and all

18 of the Equity Trust Defendants have argued that the Court lacks

19 personal jurisdiction over them, the Court dismisses the claims

20 against them on the basis of <u>forum non conveniens</u> without first

21 determining questions of personal jurisdiction.   The Supreme Court

22 recently held that "where subject-matter or personal jurisdiction

23 is difficult to determine, and <u>forum non conveniens</u> considerations

24 weigh heavily in favor of dismissal, the court properly takes the

25 less burdensome course."   <u>Sinochem Int'l Co. v. Malay. Int'l</u>

26 <u>Shipping Corp.</u>, 127 S. Ct. 1184, 1194 (2007).

27      The Court finds that it would not be able to determine whether

28                                 12

it has personal jurisdiction over the Equity Trust Defendants
without granting the parties additional opportunities to supplement
the record.[6]  Further, the Court finds that the factors it must
consider in making a <u>forum non conveniens</u> determination weigh
heavily toward dismissal.

Under the doctrine of <u>forum non conveniens</u>, the district court
has discretion to decline to exercise jurisdiction in a case where
litigation in an alternative forum would be more convenient for the
parties.  Dismissal based on <u>forum non conveniens</u> is "an
exceptional tool to be employed sparingly."  <u>Ravelo Monegro v.</u>
<u>Rosa</u>, 211 F.3d 509, 514 (9th Cir. 2000).  The Supreme Court
instructs that dismissal is ordinarily appropriate only where "the
plaintiff's chosen forum imposes a heavy burden on the defendant or
the court, and where the plaintiff is unable to offer any specific
reasons of convenience supporting his choice."  <u>Piper Aircraft Co.</u>
<u>v. Reyno</u>, 454 U.S. 235, 249 (1981).

---

[6]As mentioned above, pro se Plaintiffs have filed extensive
documents in support of their opposition to the motions to dismiss.
And, as Defendants note in their joint evidentiary objections, the
majority of those documents are not properly authenticated.  In
order to determine personal jurisdiction with respect to the Equity
Trust Defendants, the Court likely would have to allow Plaintiffs
an opportunity to re-submit and authenticate the evidence filed in
support of their opposition to the motions to dismiss.  Further,
the Court would have to expend considerable effort determining the
corporate structure of Equity Trust, a Jersey corporation.  As
discussed below, the Court finds that the agreements between Equity
Trust and the Hilsenraths, and therefore the Hilsenraths'
allegations which stem from those agreements, are governed by
Jersey law.  Therefore, the Court would have to determine Equity
Trust's corporate structure based on Jersey law in order to decide
whether it has personal jurisdiction over Equity Trust.  This
weighs toward dismissing this case on the basis of <u>forum non</u>
<u>conveniens</u> without reaching the question of personal jurisdiction.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    In deciding whether to dismiss an action due to <u>forum non</u>

2  <u>conveniens</u>, the district court must "consider the availability of

3  an adequate alternative forum, and then . . . whether several

4  'private' and 'public' interest factors favor dismissal." <u>Leetsch</u>

5  <u>v. Freedman</u>, 260 F.3d 1100, 1103 (9th Cir. 2001).  There is a

6  strong presumption in favor of a domestic plaintiff's choice of

7  forum, which can be overcome only when the private and public

8  interest factors clearly point towards trial in the alternative

9  forum.  <u>Piper Aircraft</u>, 454 U.S. at 265-66; <u>Ravelo Monegro</u>, 211

10  F.3d 509 at 514.

11    The Equity Trust Defendants argue that Jersey is the proper

12  forum for this case and that the Jersey courts provide a sufficient

13  "avenue for redress."  <u>Creative Tech., Ltd. v. Aztech System PTE,</u>

14  <u>Ltd.</u>, 61 F.3d 696, 702 (9th Cir. 1995).  Although the Ninth Circuit

15  has never addressed the ability of the Jersey courts to provide

16  plaintiffs with an adequate remedy, other federal courts have.

17  <u>See, e.g.</u>, <u>Kovzac Ltd. v. Westway Trading Corp.</u>, 2003 U.S. Dist.

18  LEXIS 10767 (E.D. La.); <u>Mayo Assoc. v. Union Bank of Switzerland</u>,

19  1998 U.S. Dist. LEXIS 7791 (S.D.N.Y.).

20    Further, the Equity Trust Defendants argue that both private

21  and public interest factors weigh in favor of dismissing this case.

22  The Ninth Circuit holds that the private interest factors to be

23  considered include:

24        (1) the residence of the parties and the witnesses;
         (2) the forum's convenience to the litigants; (3) access
25        to physical evidence and other sources of proof;
         (4) whether unwilling witnesses can be compelled to
26        testify; (5) the cost of bringing witnesses to trial;
         (6) the enforceability of the judgment; and (7) all
27        other practical problems that make trial of a case easy,

28                                   14

United States District Court
For the Northern District of California

1    expeditious and inexpensive.

2    <u>Lueck v. Sundstrand Corp.</u>, 236 F.3d 1137, 1145 (9th Cir. 2001)

3    (internal quotations omitted).  All of the Equity Trust Defendants

4    are Jersey residents.  Further, the conspiracy that Plaintiffs

5    allege only includes one California participant, the non-party law

6    firm Nixon Peabody.  Therefore the private interest factors related

7    to the accessibility of witnesses and physical evidence weigh in

8    favor of resolving this case in Jersey.  As Equity Trust argues, it

9    appears that the vast majority of the witnesses involved in the

10   case would be outside this Court's subpoena power.  <u>See</u> Fed. R.

11   Civ. P. 45.  Plaintiffs counter, "The events, the witnesses, the

12   documentation and the agents of the US government who will be

13   called to testify are all in California."  Opposition at 41.

14   However, Plaintiffs do not indicate who these witnesses are or what

15   this evidence is.

16        The public interest factors to be considered are:

17        (1) local interest of lawsuit; (2) the court's
          familiarity with governing law; (3) burden on local
18        courts and juries; (4) congestion in the court; and
          (5) the costs of resolving a dispute unrelated to this
19        forum.

20   <u>Id.</u> at 1147.  Again, these factors weigh heavily in favor of

21   resolution of this case in the Jersey courts.  At the core of the

22   case are allegations of a breach of fiduciary duties arising out of

23   the CMAs, which specifically provide that they

24        shall be governed by[,] construed and interpreted in
          accordance with the laws of the Island of Jersey, and all
25        parties shall submit to the jurisdiction of the courts of
          the said Island.

26

27

28
                                   15

**United States District Court**
For the Northern District of California

1    Austin Decl., Ex. F at 4; <u>Id.</u>, Ex. G at 5.[7]  Not only are the

2    Jersey courts better equipped to resolve the questions of Jersey

3    law governing claims arising out of the Equity Trust agreements,

4    but they have a stronger interest than this Court in the resolution

5    of a dispute arising out of a Jersey corporation's agreement with

6    an individual who held himself out to be an Israeli citizen at the

7    time the agreement was made.

8        Plaintiffs argue that these forum selection clauses should not

9    control because they were contained in adhesion contracts.

10   However, the California courts have held, "A forum selection clause

11   within an adhesion contract will be enforced as long as the clause

12   provided adequate notice to the party that he was agreeing to the

13   jurisdiction cited in the contract."  <u>Intershop Communic. AG v.</u>

14   <u>Super. Ct. of San Francisco</u>, 104 Cal. App. 4th 191, 201 (2002)

15   (internal quotations and alterations omitted).  Plaintiffs have not

16   provided any evidence that they did not have adequate notice of the

17   import of the forum selection clause.

18       The Court acknowledges that this case is based in part on

19   _____

20       [7]Equity Trust also argues that this clause requires a finding
     that venue is only proper in Jersey.  However, Ninth Circuit case
21   law clearly holds that such language is permissive rather than
     mandatory.  <u>See, e.g.</u>, <u>Hunt Wesson Foods, Inc. v. Supreme Oil Co.</u>,
22   817 F.2d 75, 76-78 (9th Cir. 1987) (interpreting a similar clause
     indicating that a certain court "shall have jurisdiction" over the
23   parties in any dispute arising out of the contract as permissive);
     <u>see also</u> <u>Northern Cal. Dist. Council of Laborers v. Pittsburg-Des</u>
24   <u>Moines Steel Co.</u>, 69 F.3d 1034, 1036-37 (9th Cir. 1995).  Although
     this provision might prevent Plaintiffs from contesting personal
25   jurisdiction if Equity Trust brought a suit against them in the
     Jersey court and it requires any interpretation of the agreements
26   to be made under Jersey law, it does not require any case arising
     out of the contract to be tried in the courts of the Island of
27   Jersey.

28                                16

1   facts related to earlier cases decided by this Court.  However, the
2   Court finds that the required application of Jersey law, the Jersey
3   court's interest in the resolution of this case and the likely
4   increase in cost associated with litigating in California outweigh
5   this Court's interest in maintaining jurisdiction over any
6   overlapping disputes.  Further, neither Equity Trust nor any
7   Individual Defendant was a party to any of those lawsuits.

8                              CONCLUSION

9        For the foregoing reasons, the Court grants Defendants'
10  motions to dismiss (Docket Nos. 4, 21, 40, 41, 45, 70, 83).  The
11  dismissal is without leave to amend and without prejudice to
12  refiling in the appropriate jurisdiction or jurisdictions.

13       The Court DENIES as moot Defendants' objections to the
14  exhibits filed in support of Plaintiffs' oppositions to the motions
15  (Docket No. 84).  The Court did not rely on any improper or
16  inadmissible evidence in deciding these motions.

17       IT IS SO ORDERED.

18            3/18/08

19  Dated: _____    _____
20                                        CLAUDIA WILKEN
                                          United States District Judge

*United States District Court*
*For the Northern District of California*

17